# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|                                          |   |                        |
|------------------------------------------|---|------------------------|
|                                          | * |                        |
| In re: VIOXX Products Liability Litigation | * | MDL No. 1657          |
|                                          | * |                        |
| This Document Relates to:                | * | SECTION L              |
|                                          | * |                        |
| State of Utah v. Merck, et al.           | * | JUDGE ELDON E. FALLON  |
|                                          | * |                        |
|                                          | * | MAGISTRATE JUDGE       |
|                                          | * | KNOWLES                |
|                                          | * |                        |
|                                          | * |                        |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## PLAINTIFF, STATE OF UTAH'S SUPPLEMENTAL MOTION IN OPPOSITION TO CONTEMPT CITATION

### Introduction

Federal Rule 501 provides that Utah law with respect to privilege and confidentiality will be applied in the federal courts in civil cases in which Utah law provides the rule of decision. Utah law on waiver of privilege varies from the federal standard in that present URE 510(a) provides that if a party discloses a "significant part" of the matter, confidentiality of the subjects discussed is waived in its entirety.[1]

Such disclosure occurred in this case when Merck published the 1400 page Martin Report which relied upon and included confidential material. Utah law does not allow Merck to make truth claims based upon documents in the Martin report and still retain confidentiality with respect to those documents. Merck cannot use the documents relied upon by Martin as a sword

---

[1] Merck does not dispute that disclosed documents are not confidential. See letter to the court, page 3, footnote one, attached hereto as Exhibit A.

and a shield.

Because of the extensive disclosures of the Martin report, Merck no longer has confidentiality with respect to any documents relating to the subjects of the Martin report including the Appendices.  All must be disclosed and all such documents are not confidential pursuant to the unique Utah Rule 510(a).  We do not discuss inadvertent waiver as Merck acted deliberately when disclosing the Martin report.

## I.   Federal Rule 501 provides that Privilege and Confidentiality is to be determined by State Law

### A.   State Law Governs Privilege

**Rule 501** of the Federal Rules of **Evidence** provides that "in a civil case, **state law** governs privilege regarding a claim or defense for which **state law** supplies the rule of decision." *The Shaw Group v. Zurich American Insurance,* 2014 WL 1784046 (M.D. La.) *See Also In Re Lipre,* 480 B.R. 658 (W.D. La. 2012).  As this Court recognized in *In re Vioxx Products Liability Litigation,* 478 F.Supp.2d 649 (E.D. La. 2011), the MDL court must apply the law of the transferor forum, that is, the law of the state in which the action was filed, including the transferor forum's choice-of-law rules. *See* <u>Ferens v. John Deere Co., 494 U.S. 516, 524, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990)</u>.

### B.  Utah is the Forum State

Utah is undoubtedly the forum state.  The action was filed in Utah State Court.  Alleged federal question jurisdiction does not displace the law of Utah with respect to the "rule of decision."  The Federal Government has disavowed any financial interest in this litigation as it settled such questions with Merck at the time Merck pled guilty.  There is, therefore, no federal

interest in vindicating Medicaid protection of money. [2]

### C.  A Utah False Claims Act is brought under the State Spending Powers.

The Utah False Claims Case is distinct from all other cases found in the MDL.  Rather than the State's police power which supports the Consumer Protection States, this action is based upon the spending powers of the Utah Legislature.  The Legislature has allocated state money to Utah Medicaid.  The legislature and Utah Medicaid set rules by which pharmaceutical companies might access that money.  Long ago, Justice Holmes said that individuals who seek government money "must turn square corners." *Rock Island A & L.R. Co. v. United States*, 254 U.S. 141 (1920).  Merck did not turn square corners with respect to Vioxx.  It caused a defective drug to come onto the market when it knew that there were significant risks of cardiovascular events.  It knew that those risks had not been resolved.  Later, when it received evidence in VIGOR and elsewhere that the risks were real, it hid behind the naproxen fable to keep the drug on the market in spite of unresolved cardiovascular risks.  Keeping the drug on the market cost Utah Medicaid a significant amount of money estimated by Dr. Dennis Tolley at more than 120 million dollars.  Protection of Utah tax dollars is beyond doubt a Utah concern and not the concern of any other jurisdiction, federal or state.

Thus, federal law does not displace Utah law under the Utah choice of law provisions.

---

[2] Utah has previously briefed the lack of federal question jurisdiction.  If there was a basis for federal question jurisdiction, that issue was determined by *Gunn v. Minton,* 133 S.Ct. 1059 (2012) where the Supreme Court held that no federal question jurisdiction exists where the case decision would have no further effect in the federal system.  A Utah case, protecting Utah tax spending, under a Utah statute is never going to support federal question jurisdiction in any other action, federal or state.  This Court does not need to rely upon *Gunn* v. *Minton* to find that Utah and not federal law applies to the action.  In *Arkansas Dept. of Health and Human Services v. Ahlborn*, 547 U.S. 268, 126 S.Ct. 1752 (2006), the Court recognized that Congress had instructed the States to collect Medicaid monies from liable third parties and to do it under State law.  The Court noted that State law was controlling because Congress did not give the State's a federal statute allowing the collection

## II. The Utah Law of Waiver is Unique.

### A. Privilege is waived by disclosure of a significant part of the matter or communication.

Rule 510(a) of the Utah Rules of Evidence is unique.  It provides:

**(a) Waiver of Privilege.** A person who holds a privilege under these rules waives the privilege if the person or a previous holder of the privilege:

(1) voluntarily discloses or consents to the disclosure of any significant part of the matter or communication, or

(2) fails to take reasonable precautions against inadvertent disclosure.

This privilege is not waived if the disclosure is itself a privileged communication.

Privilege in Utah is waived if the holder of the privilege voluntarily discloses or consents to the disclosure of any significant part of the matter or communication.  The commentary to the Rule discloses that the rule was taken from proposed federal rules that were not adopted.  The question under Utah law is if Merck has voluntarily disclosed a significant part of the matter. The commentary to Section A is helpful.

> **Subparagraph (a).** Since the purpose of evidentiary privileges is the protection of some societal interest or confidential relationship, the privilege should end when the purpose is no longer served because the holder of the privilege has allowed disclosure or made disclosure. For the same reason, although Rule 37 required a knowing waiver of the privilege, Rule 510(a) as drafted does not require such knowledge. A stranger to the communication may testify to an otherwise privileged communication, if the participants have failed to take reasonable precautions to preserve privacy.

### B. Merck waived confidentiality as to all documents disclosed in the Martin Report.

Utah Courts give this Court guidance as to what is considered a "significant part of the matter." In *State v. Patterson,* 2013 UT App 11, 294 P.3d, the Defendant was charged with

sexual abuse of a child.  Defendant confessed the crime to his Pastor (Bishop).  With the

Defendant's permission, the Bishop discussed the matter with a doctor hired by the State.  The

Utah Court of Appeals held:

> Likewise, even if Doctor's communication with Bishop did not waive the privilege in and of
> itself, the fact that Patterson reviewed the psychosexual evaluation with Doctor and trial counsel
> before permitting the evaluation to be disclosed to the State essentially amounts to his
> "consent[ing] to the disclosure of a[ ] significant part of the ... [privileged] communication," *see
> id.* R. **510**(a) (1), with that "significant part" being the implication of his having confessed to
> Bishop.

In the present case, Merck has disclosed a significant part of the communications as well as

significant parts of the case itself.  In particular, Merck commissioned the Martin Report.  In

1400 pages, Judge Martin discussed his investigation into liability of the company officers.  In

doing so, he touched upon every aspect of the development and sale of Vioxx.  He discussed

adverse cardiovascular information that Merck had prior to the drug going on the market.  He

fully discussed the VIGOR study and how it showed that patients in the Vioxx arm suffered five

times the heart attacks as patients in the naproxen arm of the study.  He discussed the company

reactions to the study whereby the chief scientific officers believed that Vioxx was pro-

thromboembolic. .  He discussed the naproxen theory that naproxen was cardio-protective rather

than Vioxx cardio-toxic.  He discussed the lengths Merck went to try and find evidence (which

was lacking) to support the naproxen story.  He discussed the 4% aspirin indicated story whereby

Merck's chief scientists tried to blame the VIGOR results on a small group of patients that

Merck said in hindsight should have been taking low dose aspirin because of cardio risk.  He

described how Merck was forced to abandon that theory.  He discussed scientific reports of

cardiovascular risk as well as Merck's public relations response to those reports.  He discussed

the false New England Journal of Medicine article.  He discussed Merck's practice of ghost-writing scientific articles.  He discussed the neutralization of adverse witnesses.  He discussed "Dodge Ball."  He discussed the statistical analysis of risk known to Merck and its employees. He discussed the allegations that the ADVANTAGE trial was a public relations exercise that merely showed that the VIGOR cardiovascular result was real.  He discussed Merck's last fable which was that patients did not develop toxic risk until they had 18 months experience with the drugs.  There was no part of this controversy not discussed by Judge Martin.

In making these disclosures, Martin photocopied, quoted, cited, and paraphrased "millions of pages" of documents Merck claims to be confidential.  There could not have been a more substantial disclosure of the underlying documents.  Martin also disclosed the contents of otherwise protected conversations with Merck management and employees.  In sum, the disclosure was not merely substantial, it was in the words of Merck's Board "comprehensive."

The disclosure was not a one-time event with a small number of individual recipients.  Merck and its lawyers put the report with twenty appendices on the internet.  The report is still found on the internet. The full appendices remained on-line for six years. Other than removing the Martin report appendices six years later, Merck did nothing to keep the report and the appendices from the general public.  The Merck Board invited all interested persons to read not only the report but the appendices as well.

### C.  **Merck waived confidentiality with respect to other evidence.**

If the Martin Report was not a disclosure of a significant part of the matter, we must consider other Merck actions such as the use of confidential material in the depositions of the expert witnesses in this case.  The Utah Supreme Court has also found that the use of confidential

material in depositions and discovery without specific objection is a waiver of confidentiality. *Gold Standard, Inc. v. American Barrick Resource Corp.,* 805 P.2d 164 (Utah 1990).

Rather than do the work of designation which portions of the depositions were to be kept as confidential, Merck's lawyers fell into the lazy trap of designating the entire deposition as "confidential" and "forgetting" to send the thirty day letter noticing which portions of the deposition were considered "confidential." Merck's only response is the claim that all of the deposition parts would be considered confidential under their interpretation of the rules. That interpretation is not consistent with imposing confidentiality on the smallest portion of documents and testimony found in PTO 13, 13A and 13C.

The Utah rule is that nothing is confidential unless the rules are strictly followed. Again, through massive disclosure, Merck has made public "significant portions" of the matter. Merck also demonstrates that a significant portions of the matter was disclosed when it refuses to provide "confidentiality" logs to counsel. This is an admission that the prior documentation of Merck's culpability is a "significant" part of the record.

Merck made other significant disclosures. For example, in response to the Rule 9 pleading of the complaint, Merck did not deny the existence of the documents or their contents. Merck admitted the documents exist and only disputed their interpretation. Further, Merck placed its expert reports on the internet. Those reports again discussed every aspect of this matter. The Merck witnesses relied and quoted the documents now claimed confidential. Lisa Rarick, MD is a prime example. We attach the portion of her reliance list where she lists the Merck documents. Merck claims confidentiality for all of these documents. *See* Exhibit B, attached hereto. Merck did not file its expert reports under seal again disclosing "significant" portions of the record of

this matter.   Likewise, Merck had no objection to Utah filing its expert reports without designation of confidentiality into the public record.   In Kentucky, Merck filed into the public record, a letter sent by Dr. Egilman to counsel setting forth his opinion of what the previously disclosed record showed.

### D.  Other Utah Rules indicate waiver of confidentiality.

#### 1.   There is no requirement that Merck Intended to Waive Confidentiality.

Other Utah Rules are important in the allocation of the burden of proof.  For example, "it is not necessary under **Rule 510** to show that a [privilege holder] intended to waive the privilege but only that she intended to make the disclosure." *Doe v. Maret,* 1999 UT 74, ¶ 19, 984 P.2d 980, *overruled on other grounds by Munson v. Chamberlain,* 2007 UT 91, 173 P.3d 848.  *See State v. Patterson*, 2013 UT App 11 #13, 294 P.3d 662.

Thus, Merck's actions in publishing the Martin report may not have considered the issue of waiver of confidentiality but the undisputable evidence is that the Merck Board intended to make the disclosure when it directed the publication on the internet.

#### 2.   Producing Privileged Documents Waives Confidentiality and the Work Product Doctrine

A party that produces privileged documents in response to discovery request thereby waives attorney-client and work product privileges if it intended to disclose documents, but was merely unaware of legal consequences or nature of document produced. Lifewise Master Funding v. Telebank, 206 F.R.D. 298(D. Utah 2002). (Interpreting URE 510).  See Also *Gold Standard, Inc. v. American Barrick Resources Corp.,* 805 P.2d 164 (Utah 1990).; *State v. McNearny*, 110 P.3d 183(Utah App. 2005).

### 3. Mingling Confidential and non- Confidential   Material Waives Privilege with respect to Non-Confidential Material.

Mingling of privileged and unprivileged material waives the confidentiality of the unprivileged material.  In *Patterson,* the defendant failed to take reasonable precautions against inadvertent disclosure and thus waived his clergy-penitent privilege with respect to a statement made to ecclesiastical leader in which he apparently confessed to child sex abuse, where defendant offered clergy's name as a character reference to the medical professional retained by trial counsel to prepare a psychosexual evaluation of defendant, and defendant reviewed the psychosexual evaluation with doctor and trial counsel before permitting the evaluation to be disclosed to the state. State v. Patterson, 2013, 294 P.3d 662, 725 Utah Adv. Rep. 32, 2013 UT App 11, certiorari denied 304 P.3d 469.

Production of document protected by attorney-client privilege was not inadvertent, so as to compel its return pursuant to protective order, where document was clearly marked for "attorneys' eyes only," and was not inadvertently included in vast materials; rather, document was Bates stamped and voluntarily produced. Transonic Systems, Inc. v. Non-Invasive Medical Tech., 2000, 192 F.R.D. 710.

Mingling work product in the Martin Report with documents waived work product in Utah not withstanding that work product is protected in Civil Rule 26 rather than the Rules of Evidence.  Any divergence with federal law on this point is an additional reason for remand to Utah state courts.

### 4. Merck cannot use the documents disclosed in the Martin Report as both a sword and a shield.

Waiver of Privileged communications is presumed when the holder of the privilege seeks to

use the privileged communications as both a sword and a shield.  That is what happened in this case when Merck through the Martin report alleged its innocence but also designated the documents as confidential.  Such conduct in Utah waives the Privilege.  *Terry v. Bacon,* 269 P.3d 188 (UT App 2011).

### 5.  The burden of showing existence of privilege and lack of waiver is on Merck and not the State.

It is clear under Utah law and consistent with PTO 13, 13(A) and 13(C), that Merck bears the burden of showing that each document claimed as privileged comes within the protection of Rule 26.  It is not Utah's burden to show otherwise.  Likewise it is Merck's burden to show that confidentiality was not waived.

Federal Judge Boyce considered the allocation of the burden of proof in Utah with respect to the existence of a privilege of confidentiality and the waiver of that privilege in *Lifewise Masters Funding v. Telebank,* 206 F.R.D. 298 (D. Utah 2002).  "The burden of proof to establish the Attorney/Client privilege is on the privilege claimant, *In re Foster,* 188 F.3d 1259, 1264 (10th Cir.1999). *In re Santa Fe International Corporation,* 272 F.3d 705, n. 5, (5th Cir.2001) and the claimant also has the burden to show the privilege was not waived."


### Conclusion

The voluntary disclosure of a substantial amount of evidence concerning this matter in the John Martin report waives confidentiality as to documents relating to the entire case.  The failure to comply with PTO 13 with respect to the response to questions involving confidentiality in deposition means that under Utah law, there is also no confidentiality in the factual portions of the depositions.

Utah waiver law does not follow Federal common law or statute.  It focuses upon the amount and quality of the disclosure.  It is beyond argument that the Martin report was comprehensive as Merck itself claimed.  Having made comprehensive disclosure of fact and document, Merck cannot hide from the Utah consequences.

There are no confidential documents in the Utah litigation.  Utah is therefore free to use any document in any way desired.

DATED this 28th day of May, 2014.

        */S/*
Joseph W. Steele
Kenneth D. Lougee
SIEGFRIED & JENSEN
5664 South Green Street
Salt Lake City, UT  84123

        */S/*
Richard W. Schulte
812 E. National Road, Suite A
Vandalia, OH  45377

        */S/*
Eric H. Weinberg
THE LAW OFFICES OF ERIC H. WEINBERG
149 Livingston Avenue
New Brunswick, NJ  08901

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **PLAINTIFF, STATE OF UTAH'S SUPPLEMENTAL MOTION IN OPPOSITION TO COMTEMPT CITATION** has been served on Liaison Counsel, Russ Herman, Phillip Wittmann and Ann Oldfather, by U.S. Mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 28th day of May, 2014.

_____/S/_____