**EXHIBIT A**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005-2111
───
TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

DIRECT DIAL
(202) 371-7410
DIRECT FAX
(202) 393-5760
EMAIL ADDRESS
JOHN.BEISNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
───
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON
───
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

April 9, 2014

<u>VIA E-MAIL</u>

Honorable Eldon E. Fallon
United States District Court
500 Poydras Street, Room C-456
New Orleans, LA 70130

RE:   <u>Vioxx Confidential Documents – Dr. David Egilman</u>

Dear Judge Fallon:

      I am writing in response to Alexander Reinert's April 8th letter in which he: (1) requests a six-week postponement for oral argument on Merck's motion for sanctions against Dr. Egilman from April 23 to June 6; and (2) argues that Dr. Egilman is entitled to a copy of Merck's confidentiality log in order to "defend against Merck's" charges that he improperly disseminated confidential information in a recent *Wall Street Journal* article. Both of these requests should be denied.

      *First*, Mr. Reinert's request for a six-week extension is unreasonable. While Mr. Reinert may have a busy academic schedule, he has chosen to represent a client and therefore should make himself available in a reasonable time period. I also note that just yesterday, Ann Oldfather noticed a motion for Mr. Reinert's admission pro hac vice in Judge Shepherd's court in Kentucky (attached as Ex. 1), requesting that the motion be heard next week. To the extent Mr. Reinert seeks to represent Dr. Egilman in two proceedings, he presumably expects to have some time available between now and June. Moreover, there is some urgency with respect to these issues that makes delay inappropriate. Mr. Reinert has stated that Dr. Egilman's conduct did not violate PTO 13. That means unless the Court addresses these issues

Honorable Eldon E. Fallon
April 9, 2014
Page 2

immediately, Dr. Egilman may continue to leak confidential information from this proceeding pending a Court hearing.

A timely hearing is all the more critical given Dr. Egilman's continued and flawed argument that his deposition and related exhibits are no longer confidential. In another letter to the Court just ten days ago, Mr. Reinert vigorously argued that Dr. Egilman's recent deposition in the AG cases – along with all of the exhibits used in that deposition – is not confidential because Merck did not "submit a letter within 30 days of the deposition clearly designating which portions of the deposition or exhibits attached thereto are confidential." (Letter from Alexander A. Reinert to Hon. Eldon E. Fallon, Mar. 26, 2014 ("Reinert 3/26 Ltr."), at 1.) According to Mr. Reinert, such a letter is required under ¶ 8(b) of the Protective Order, and Merck's failure to submit the letter irrevocably strips the deposition and the exhibits of confidential status – even though some of the exhibits were designated confidential at the time of their production and it is conceded that all parties involved understood the entire deposition to be designated as confidential. (*See id.*) If that is Mr. Reinert's and Dr. Egilman's position, it is critical for the Court to address these issues long before June.

In reality, PTO 13 does not ordain such a result. As a preliminary matter, exhibits are not covered by the provision Mr. Reinert invokes. Paragraph 8 instead speaks consistently of designating a deposition *transcript* as confidential – rather than the exhibits. (PTO 13 ¶ 8(b).) The limitation of ¶ 8(b) to transcripts makes sense; after all, a separate process for designating documents confidential is provided for elsewhere in the Order. (*See id.* ¶ 6.) It would be redundant, burdensome, and counter to the efficiencies that MDL proceedings are supposed to promote to require re-designation of confidential documents every time they are used at a deposition. *Cf., e.g., In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 721 (E.D. La. 2012) (noting the "substantial discovery" in the *Vioxx* litigation, including "[t]housands of depositions"). Thus, Merck's alleged failure to comply with ¶ 8(b) simply has no bearing on the exhibits used at Dr. Egilman's deposition.

In any event, Merck has complied with ¶ 8. As Mr. Reinert acknowledged in his March 26th letter (Reinert 3/26 Ltr. at 1), Merck made clear at the outset of the deposition that it viewed its entire contents as confidential. Consistent with that statement, the title page of the deposition is marked "CONFIDENTIAL." As such, compliance with ¶ 8(b) – which refers to the practice for designating "*portions* of [a] transcript" (emphasis added) – would be superfluous and unnecessary. Paragraph 8(b)'s requirement of a letter specifying confidential portions of transcripts only makes sense when less than the entire transcript is to be designated confidential. In that situation, the parties and the Court would be left to guess at which parts are

Honorable Eldon E. Fallon
April 9, 2014
Page 3

covered and which are not without a letter specifying the pages or lines of the transcript that are confidential. No such guesswork is necessary in the event of a blanket designation, and insistence that a letter be filed in such circumstances would serve no purpose. That is particularly so here, where it is undisputed that all parties, including Dr. Egilman, were on notice of the confidential nature of the transcript.[1]

Given the need to address not only Merck's motion for sanctions but also Dr. Egilman's misguided view that his deposition and the accompanying exhibits are no longer confidential, the Court should not delay a hearing on these issues until June.

***Second***, Mr. Reinert's argument that the Court should order Merck to produce its confidentiality log to Dr. Egilman should be rejected. According to Mr. Reinert, Merck should produce the log because Dr. Egilman needs it "to determine whether Merck has incorrectly identified as confidential documents which are in fact in the public record" and because this Court has already ordered Merck to produce the log. (Letter from Alexander A. Reinert to Hon. Eldon E. Fallon, Apr. 8, 2014 ("Reinert 4/8 Ltr."), at 1.) He is wrong on both counts.

The claim that Dr. Egilman needs access to the confidentiality log to respond to Merck's motion for sanctions is preposterous. Confidential documents are self-identifying because they are marked "Confidential – Subject to Protective Order." (PTO 13 ¶ 6.) Moreover, Dr. Egilman himself boasted to the *Wall Street Journal* writer that his comments were based on confidential information. (*See, e.g.*, Mot. for Sanctions Ex. 8 at 3, Dkt. No. 64,894-9 (filed Apr. 4, 2014) (asserting, based on having "'been ***able to see documents few others have***,'" that "raw study data, company emails and internal analyses 'provide ***new information*** on the health hazards of the drug and evidence of fraud in the conduct of the studies'") (emphases added).) For purposes of the sanctions motion, that knowledge is all that matters;

---

[1] Mr. Reinert alternatively contends that Merck "waived any claim" of confidentiality by "summarizing the deposition in related litigation before" Judge Shepherd in Kentucky. (Reinert 3/26 Ltr. at 2.) This argument makes no sense. By design, PTO 13 contemplates a party's use of its own confidential information ***in Vioxx proceedings*** without waiver of confidentiality. (*See, e.g.*, PTO 13 ¶¶ 10(c)-(d), 11, 14.) And in any event, the document in question does not purport to summarize the deposition. At most, it discloses that Dr. Egilman "largely deflected questions about his plans for publishing articles," and it expressly notes that no more could be said because "Dr. Egilman's deposition has been designated confidential under the MDL Protective Order." (Reinert 3/26 Ltr. Ex. C at 5 & n.8.) Thus, any "waiver" would extend only to Dr. Egilman's statements refusing to describe what he intends to publish.

Honorable Eldon E. Fallon
April 9, 2014
Page 4

whether Dr. Egilman questions the confidential nature of the information is irrelevant. This Court has specified the procedure for challenging confidentiality designations. Not surprisingly, that procedure is properly initiated by negotiations between the parties and, if necessary, the intervention of the Court – not the unilateral disclosure of the designated information to the *Wall Street Journal*. (*See* PTO 13 ¶ 22.) And contrary to Mr. Reinert's suggestion (Reinert 4/8 Ltr. at 1), the fact that this Court has set out a procedure that must be followed before an individual takes it upon himself to discuss information designated confidential has nothing to do with the First Amendment – particularly where, as here, Dr. Egilman agreed to be bound by the order prior to receiving confidential information (PTO 13 ¶ 13). *See, e.g.*, *Whitehead v. Gateway Chevrolet, Oldsmobile, Inc.*, No. 03 C 5684, 2004 U.S. Dist. LEXIS 11979, at *12-15 (N.D. Ill. June 28, 2004) (party who "unilaterally" violated protective order rather than first seeking judicial remedy could not complain that sanctions violated First Amendment or due process rights where he had agreed to be bound by protective order).

In any event, access to the confidentiality log is not going to aid Dr. Egilman in his purported effort to determine whether any of the information that he told the *Wall Street Journal* was confidential no longer is confidential. Indeed, the term "confidentiality log" is somewhat misleading in that it suggests a manageable, self-contained document like a privilege log, which it is not. Rather, the confidentiality log is actually a massive database that, unlike a privilege log, provides fourteen (14) fields of information (including confidentiality) for *all* of the documents that Merck produced in the MDL litigation and is not limited to the subset of documents to which Dr. Egilman has been exposed. Given the size of Merck's document productions, the confidentiality log consists of two separate databases in Microsoft Access® format that together contain 3,623,839 records, comprising 2.2 gigabytes of information. Moreover, the log is not designed for use as a standalone product. Rather, it was built for use in conjunction with the litigation document depository maintained by the PSC.

Furthermore, the confidentiality database was never intended to be used for the purpose proposed by Mr. Reinert. Instead, it was crafted (consistent with the requirements of ¶ 26 of the Protective Order) to facilitate litigation purposes. The parties never intended this database to become a tool for Dr. Egilman to defend or promote his anti-business vigilante quests. For all of these reasons, it would be *far* more efficient – and appropriate – for Dr. Egilman to work through counsel of record to simply ask counsel for the PSC (or Merck) whether any particular document that he may have questions about remains designated as confidential.

Nor is there any merit to Mr. Reinert's suggestion that the Court has already ordered Merck to produce the log to Dr. Egilman. (*See* Reinert 4/8 Ltr. at 1.) Mr.

Honorable Eldon E. Fallon
April 9, 2014
Page 5

Reinert contends that "this Court has stated that it is 'necessary' to have a log of documents Merck claims to be confidential" and that "'if it comes to me in a motion, I will need a log showing which documents should continue, according to the moving party, under protective order and what they are and why they should remain under the protective order.'" (*Id.*)  But the Court did not suggest that Merck would *ever* have to produce a log *to Dr. Egilman*; nor did it order Merck to produce a log to anyone else at this stage.  Rather, the Court simply stated that *it* would need a log *if* it were presented with a request to de-designate particular documents. (2/28/14 Hr'g Tr. 19:18-20:10.)  No one has made such a request in this Court.  Instead, Dr. Egilman simply went ahead and shared confidential information with the *Wall Street Journal*.  Asking for a log at this stage in a belated attempt to ratify his misconduct flips the process contemplated by the Court on its head and is entirely inappropriate.

                              Sincerely,

                              John H. Beisner

cc:    Dawn Barrios
       Russ Herman
       Leonard Davis
       Alexander Reinert