**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX® | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| *This document relates to* | * | **JUDGE FALLON** |
| | * | |
| *Jo Levitt v. Merck & Co., Inc.* | * | **MAGISTRATE JUDGE KNOWLES** |
| 2:06-cv-09757-EEF-DEK | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**MERCK SHARP & DOHME CORP.'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, through her counsel of record, respectfully submits the following Opposition to Defendant Merck Sharp & Dohme Corp. ("Merck")'s Motion for Summary Judgment:

**I.      BACKGROUND**

Defendant Merck's Motion for Summary Judgment relies on the faulty premise that Plaintiff Jo Levitt has identified no expert who will testify on causation. As this is simply incorrect, Defendant's Motion for Summary Judgment must be denied.

Merck's motion contains incomplete if not misleading information concerning the nature of Plaintiff's claims, her medical history, her usage of Vioxx and the opinions of her experts and treating physicians. Merck has improperly narrowed the nature of the allegations concerning Plaintiff's injuries.  It is true that the original petition filed by Plaintiff's prior attorneys simply states that Plaintiff suffered two heart attacks as a result of taking Vioxx.  And while it is not necessarily pertinent to the Court's evaluation of the issue at bar, it is important to direct the Court's attention to the fact that Merck is well aware that the nature of Plaintiff's alleged cardiac injuries is more complicated than merely summarizing them as "heart attacks" and attaching an internet based

definition in order to attempt to couch the issue.

Plaintiff has submitted a Plaintiff Profile Form ("PPF") as well as an Amended and Supplemental Plaintiff Profile Form ("ASPPF").  PSMF 2.  Presumably for tactical purposes, Defendant failed to include Plaintiff's ASPPF as an exhibit to the Motion for Summary Judgment filed in this case.  PSMF 3.  The ASPPF is far more extensive and detailed than the preliminary PPF attached to Defendants' motion.  Defendant knew about and deposed Plaintiff on the contents of her ASPPF which was attached as an Exhibit to her Deposition which was taken on July, 23, 2012. PSMF 4.

Under Section D. Claim Information, Plaintiff identifies the following bodily injury which she claims resulted from use of Vioxx: "ASC/MI . . . stents less than 3 mos . . . asc/mi, Cabg, reduced ejection fraction, new plaque in arties not there less than 3 mos. before.  diagnosis (sic) of very Aggressive (sic) heart disease."  PSMF 5.  Plaintiff identified the dates of these incidents under subsection 2: "March 10, 2000 stent/balloon to lad.  May 26, 2000 double bypass"  PSMF 6**.** Plaintiff identified the medical professionals she believed diagnosed the above conditions under subsection 3: "Dr. Hartman, Dr. Rosamond, Dr. Tadros, Dr. Gordon".  PSMF 7.  In fact, under Section II.I of her ASPPF, Plaintiff specifically put Defendant on notice that she had spoken with Dr. Rosamond about her injury and whether it was related to Vioxx.  PSMF 17.

On or about September 11, 2009, Dr. Thomas Rosamond, Plaintiff's cardiologist authored a letter specifically addressing  Jo Levitt's medical history, risk factors, her cardiac disease and its relation to her ingestion of the Vioxx.  PSMF 18.  A copy of this letter was provided to this Court on April 28, 2010 as an Exhibit to Plaintiff's Motion to Set Aside Order of Dismissal and Reinstate Case on Active Docket of the Court.  PSMF 19.

At the outset of his letter, Dr. Rosamond stated "In brief, I think it is likely that Vioxx therapy contributed significantly to the aggressive presentation of her coronary artery disease". PSMF 20. Defendant's recitation of Plaintiff's medical history is misleading, incomplete and in dispute to say the least. While it is not germane to the issue of whether or not Plaintiff has an expert to sustain her causation opinions, Dr. Rosamond's note specifically stated that Plaintiff had **mild** hypercholesterolemia and a remote history of smoking. PSMF 25. Also not particularly germane to the issue at bar, however further evidence of Defendant's lack of candor, Dr. Rosamond also noted that her "family history was not particularly positive for coronary disease at an early age, although she had some elderly family members that had known coronary disease." PSMF 27. Also contrary to Merck's suggestions, Plaintiff was taking vioxx for musculoskeletal **and** osteoarthritic pains. PSMF 28.

Dr. Rosamond stated that when he first saw Plaintiff in March of 2000 her EKGs were consistent with high-grade proximal LAD stenosis and the subsequent heart catheterization showed a high-grade stenosis of the proximal LAD just beyond the first diagonal which was also stenosed at 60%. PSMF 21. Dr. Rosamond opined that his clinical findings suggested an "acute plaque rupture while she was on Vioxx." PSMF 23.

In his own words, Dr. Rosamond was surprised to see that in May of 2000, Plaintiff had developed an early stent restenosis. PSMF 29. Dr. Rosamond was surprised by the amount of the restenosis and the fact that it had occurred so quickly following the March procedures performed by him and Dr. Tadros. PSMF 30

Plaintiff was subsequently seen by Dr. Gordon who performed a LIMA graft procedure to address the aggressive restenosis. PSMF 31. Dr. Rosamond concluded as follows: "Given the

course of events, it seems likely based upon her historical information and what we now know in retrospect about Vioxx, that Vioxx likely contributed to her aggressive coronary artery presentation. PSMF 32.

On December 13, 2013, Plaintiff provided her Designation of Expert Witnesses wherein she specifically disclosed, among others, Dr. Thomas Rosamond M.D./Cardiologist, Dr. Peter Tadros M.D./Cardiologist, Dr. Michael Gorton, M.D./Thoracic Surgeon and Dr. Ronald Hartman M.D./Internal Medicine.   PSMF 33.   In her expert disclosures, Plaintiff specifically stated the following with regard to her treating physicians:

> "to the extent she has not already done so, Plaintiff reserves the right to call and may call any and all treating physicians, nurses, care providers, pharmacists or any other medical personnel involved in her care to testify as fact witnesses or expert witnesses regarding the nature and extent of each Plaintiff's injuries and damages."

PSMF 34.

Merck never deposed Dr. Hartman, Dr. Tadros, Dr. Gordon or Dr. Rosamond.   PSMF 16. Defendant had years to depose any and all of Plaintiff's treating physicians.   PSMF 12.   Plaintiff represented herself as a pro se litigant during considerable stretches of time during this litigation. PSMF 13.   At no time while she was purportedly represented by counsel did Merck engage in deposition discovery.   PSMF 14.   Instead, Merck waited until Plaintiff's prior attorney filed a motion to withdraw before initiating any deposition discovery.   PSMF 15.

Of all of Plaintiff's medical doctors who could have and should have been deposed, Merck

chose to depose only one, Dr. Arnold Katz, Plaintiffs' Rheumatologist.[1]   In fact, though it did not

obtain leave of Court as required, Merck deposed Dr. Katz twice.  Plaintiff did not have counsel at

the time of these depositions and she was not present during these depositions.

It is no surprise that of all Plaintiff's treating doctors, including the team of cardiologists and

surgeons who actually treated her coronary conditions, Merck chose to depose Dr. Katz only.  Katz

is a known friend of the pharmaceutical community and defense bar in general throughout the

Kansas City region.

In fact, he is or has been a paid speaker for the following pharmaceutical companies - Pfizer,

Takeda, Abbot, Forest and Genzyme.  PSMF 40.  More importantly, from 2000 through

approximately 2006, Dr. Katz was on the Speaker Bureau for Defendant Merck and specifically

spoke on the benefits of Vioxx.  PSMF 41.  Throughout the entire time he was treating Plaintiff and

prescribing her Vioxx, Katz never disclosed the fact that he was a paid speaker for the Defendant

drug company.

There are several other discrepancies in Merck's Statement of Facts.  Like most of the

averments in Defendant's Motion, these discrepancies involve factual disputes which are actually

not germane to the issue in Defendant's Motion.  However, Plaintiff would be remiss if she didn't

address at least a few of the more glaring inaccuracies.  Contrary to Merck's representations, Plaintiff

took Vioxx consecutively from August of 1999 through March of 2002 when her insurance company

refused to cover the treatment.  PSMF, 8 9, 19 and 21.  She was originally prescribed Vioxx by Dr.

Hartman, her primary care physician whom Merck chose not to depose.  Plaintiff was prescribed

_____

[1]      Merck also deposed one of Plaintiff's mental health professionals, Dr. Mittleman
who is also a medical doctor, however he had not involvement in the diagnosis or treatment of
Plaintiff's cardiologic injuries.

Vioxx for arthritis and fibromyalgia.  PSMF 11.

Plaintiff has presented a prima facie case to support her allegations, injuries and damages.

## II.    STANDARD FOR SUMMARY JUDGMENT

The standard that must be met to grant summary judgment in Missouri is high. "Summary judgment is an extreme and drastic remedy and should be utilized with great care." *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264, 268 (Mo. Ct. App. 1989).  Both trial courts and appellate courts review motions for summary judgment in the same manner. *Theerman v. Frontenac Bank*, 308 S.W.3d 756, 758 (Mo. Ct. App. 2010).  The record is viewed in the light most favorable to the non-moving party. *Dilley v. Valentine*, 401 S.W.3d 544, 547 (Mo. Ct. App. 2013).   In addition, when a motion for summary judgment is being considered, the non-moving party receives the benefit of all reasonable inferences that may be drawn from the record.  *Id.*

Summary judgment should only be granted when "the defendant demonstrates, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Chochorowski v. Home Depot U.S.A.,* 404 S.W.3d 220, 226 (Mo. 2013).  Defendant, as the moving party, bears the burden of 1) establishing the absence of any genuine issue of material fact; and 2) a legal right to judgment as a matter of law.  *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 674 (Mo. 2011).   "The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question."  *Deer Run Property Owners Ass'n v. Bedell*, 52 S.W.3d 14, 17 (Mo. Ct. App. 2001).

"A genuine issue of material fact exists when the record shows two plausible, but contradictory, accounts of the essential facts. *DeBaliviere Place Ass'n*, 337 S.W.3d at 674; *see also*

*Theerman*, 308 S.W.3d at 758.  "A genuine issue of fact exists when there is the slightest doubt about a fact."  *Kansas City*, 778 S.W.2d at 268.

### III.   ARGUMENT

The entire premise for Defendant's Motion for Summary Judgment is fatally flawed. While Defendant Merck is correct in stating that Plaintiff must provide expert evidence or testimony that Vioxx caused her injuries under Missouri law,[2] Defendant fails to appreciate that Plaintiff has identified Plaintiff's treating physicians including but not limited to Dr. Thomas Rosamond, a cardiologist who specifically wrote a letter addressing causation in this case..

Plaintiff has also identified Dr. Egilman, a retained expert who has still not been deposed because of Defendant's incessant delay tactics, who has clearly offered opinions regarding causation in this case.  Specifically, Dr. Egilman's report states the following:

> 82. Based on the hypothetical it is my opinion that Ms. Levitt's previous history of ASCVD and Vioxx contributed to the heart disease she suffered after taking Vioxx.
>
> 83. Her baseline I0 year risk based on the current NIH risk calculator (http://cvdrisk.nhlbi.nih.gov/evalData.asp) for a 56 year old female, with a total cholesterol of 205 and a systolic BP of 121 and a non-current smoker is I% or one per hundred. Based on the Approve results her increase in risk prior to her first cardiac event (3/9/00) was 2.55 (0.92, 8.09) This is based on unpublished analysis of the Approve trial that Merck has not published. (Exhibits 13, 14 and 15 to the Quan deposition of3/14/16, MRK-ABY0188384 and MRK-AHD0075800-l) Concurrent low dose aspirin consumption did not materially affect risk of MI for patients treated with Vioxx ( 1.89 off aspirin vs. 2.06 on aspirin.) Therefore contrary to information implied in the Merck label, Ms. Levitt's consumption of aspirin did not reduce her risk of ASCVD. Finally risk for patients who has symptomatic ASCVD prior to treatment had the highest increased risk of thrombotic events of any subgroup 9.59

---

[2] "In a multi-district litigation case, the transferee court applies the choice of law rules of the state in which the action was filed." *In re Checking Acc't Overdraft Litig.*, 718 F.Supp.2d 1352, 1355 (S.D.Fla.2010). As this case was filed in Missouri, Missouri choice-of-law principles apply. Under Missouri choice of law rules, the law of the state with the "most significant relationship" to the alleged tort governs. *See Pony Computer, Inc. V. Equus Computer Sys. Of Missouri*, 162 F.3d 991, 995 (8th Cir. 1998). As Plaintiff's injuries occurred in Missouri and because Plaintiff is a resident of Missouri, Missouri has the most significant relationship to, and interest in, the case at bar.

(1.36- 416.3). Therefore following her first symptomatic episode Vioxx consumption increased her risk of ASCVD by 9.59 fold.  Thus Vioxx contributed to her second cardiac event on 5-26-00. Her Vioxx use thus was a significant contributing factor for her heart disease during and after Vioxx consumption. All Merck analyses of thrombotic risk evaluated risk after discontinuation of therapy. This period included at least one week of time where Vioxx would not be present in any patient's blood or serum. Also see, Ross JS, Madigan D, Konstam MA, Egilman DS, Krumholz HM, Arch Intern Med. 2010 Deci3;170(22):2035-6. Persistence of cardiovascular risk after rofecoxib discontinuation and Afilalo J, Coussa-Charley MJ, Eisenberg MJ. The Long-term risk of ischemic stroke associated with rofecoxib, Cardiovasc Drugs Ther. 2007 Apr;21(2):117-20, Baron JA, Sandler RS, Bresalier RS, Lanas A, Morton DG, Riddell R, Iverson ER, Demets DL. Cardiovascular events associated with rofecoxib: final analysis of the APPROVe Trial, Lancet. 2008 Nov 15;372:1756-64. The prolonged effect of Vioxx therapy on risk is also supported by the impact of systolic BP elevations on risk. It is unclear how much Bextra she consumed after 7/12/2002.

PSMF 43.

The entirety of the precedent cited by Defendant Merck in support of its Motion is thus inapplicable to the present case. All of the cases cited by Defendant are readily distinguishable from the present scenario, even upon first glance. The Court in *In re Trasylol Prod. Liab. Litig.*, No. 08-MD-01928, 2011 WL 7109295 (S.D. Fla. Feb 4, 2011) found that the Plaintiff's expert's opinions should have been excluded because his methodology was unreliable. *Id*. at *2. There, as the Plaintiff's expert's specific causation testimony was inadmissible **and** because none of the Plaintiff's treating physicians identified the pharmaceutical at issue as causing the Plaintiff's injuries, summary judgment was properly granted in that the Plaintiff could not meet his burden as to causation. *Id*. at *10.

Similarly, the Court in *In re Baycol Products Litigation*, No. 05–2578 (MJD/SRN), 2009 WL 8154265, at *5 (D. Minn. Apr. 8, 2009) found that the Plaintiff's expert's opinions needed to be excluded because it was lacking a differential diagnosis. *Id*. at *5. There, once Plaintiff's expert was stricken, he was unable to demonstrate that the pharmaceutical at issue caused his injuries, and thus

summary judgment was granted in favor of the Defendant. *Id*. In *Eppler v. Ciba-Geigy Corp.*, 860 F.Supp. 1391 (W.D. Mo. 1994), the Plaintiff's experts had apparently all produced affidavits or had given depositions. The Court found that since the Plaintiff's designated experts had failed to testify, through depositions or affidavits, that the pharmaceutical at issue caused her injuries, summary judgment was proper. *Id*. at 1395.

The Plaintiffs in *Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592 (Mo. Ct. App. 1999) did not present expert testimony at all, but instead argued that they were entitled to rely on the "sudden onset" rule which provides that lay testimony may be sufficient to permit a finding of a causal relationship between an accident and a medical condition. *Id*. at *596. Likewise, the Plaintiff in *Knipp v. Nordyne, Inc.*, 969 S.W.2d 236 (Mo. Ct. App. 1998) failed to produce any experts at all to testify as to causation.

Here, it is true Plaintiff must provide competent expert testimony to support her claim that Vioxx caused her injuries. She plans to do so through her retained expert, Dr. Egilman and her non-retained experts including but not limited to, Dr. Rosamond. This is thus not like the cases cited by Defendant, as outlined more fully above, where Plaintiff has either failed to produce any experts to testify as to causation, or that all relevant expert testimony has been stricken due to unreliability. Plaintiff has an expert, who she properly disclosed, who will testify that Vioxx was the proximate cause of her injuries.

While it is obvious that Defendant Merck has overlooked the opinions of Dr. Egilman, it also did not even consider that Plaintiff's non-retained experts may offer causation opinions linking Vioxx to her injuries, Missouri law does not limit the opinions of non-retained experts in such a way. Missouri Rule 56(b)(5) indicates that one simply has to identify a non-retained expert who is going

to have opinions. It does not say in any way, shape, or form as to what manner those opinions are to be limited. Presumably, those opinions would arise out of the care and treatment and the expert's personal knowledge and skill, as indicated by the Rule.

Additionally, as provided by controlling Missouri precedent in *Tompkins v. Cervantes*, non-retained experts are permitted to testify as to causation. 917 S.W.2d 186, 190 (Mo. App. E.D. 1996) ("One could conclude that Dr. Resnik's testimony is contradictory.  However, given our standard of review for summary judgment (recited above), **we must conclude that Dr. Resnik's testimony sufficiently links Steven's flight from the police to Dr. Kusama's negligence**." *)*(emphasis added).

Furthermore, in case Merck tries to argue argue otherwise, treating physicians are **not** required to testify to a reasonable degree of medical certainty, as they are not likely to ever uses that phrase in their profession. In *Topkins*, the Missouri Court of Appeals permitted the plaintiff's treating physician to testify that it was his opinion that it was "more likely than not" that the defendant doctor's negligence caused the plaintiff's injuries. *Id*.  This holding is on-point to Dr. Rosamond's expected trial testimony. Medical testimony given to a "more likely than not" standard is sufficient evidence.

As further indicated by Rule 56(b)(5), if Defendant Merck wanted to find out what Dr. Rosamond or any of Plaintiffs pertinent treating physicians' opinions were on the matter of causation, it should have deposed them when it had the chance instead of cherry-picking a friendly witness whom they knew they had in their back pocket.  Defendant Merck chose not to depose Dr. Rosamond or any of Plaintiff's surgeons or cardiologist. Its failure to do so does not present an opportunity for a grant of summary judgment. This contradictory account of the essential facts

-10-

presents a genuine issue of material fact. As such, Defendant's Motion for Summary Judgment should be denied under Missouri law.

**IV.    CONCLUSION**

Plaintiff properly disclosed her retained and non-retained experts.  Defendant has been on notice for years that Plaintiffs cardiologists and surgeons likely had opinions on her injuries. Defendant was specifically on notice that Dr. Rosamond had causation opinions based on his letter from September of 2009.  Defendant's failure to depose these doctors or further discover their opinions through the discovery process should not act to bar Plaintiff's ability to pursue this case, nor does it lead to an undisputed right to judgment as a matter of law. Defendant's Motion for Summary Judgment must therefore be denied.

Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**

/s/ Daniel A. Thomas
Kenneth B. McClain            MO #32430
Daniel A. Thomas              MO #52030
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

-11-

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Opposition to Defendant Merck sharp & Dohme Corp.'s Motion for Summary Judgment** has been served on Defense Counsel, Jonathan Williams, and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 9th day of May, 2014.

/s/ Daniel A. Thomas
Kenneth B. McClain                    MO #32430
Daniel A. Thomas                       MO #52030
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**