# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  VIOXX®** | **MDL Docket No. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | **SECTION L** |
| | **JUDGE FALLON** |
| | **MAG. JUDGE KNOWLES** |

**This Document Relates to:**     ***Com. of Kentucky v. Merck & Co., Inc.,*** No. 19-CI-1671 (Franklin Circuit Court, and formerly No. 2:10-cv-1115 (E.D. La.)

## MEMORANDUM OF LAW IN OPPOSITION TO MERCK'S MOTION TO ENJOIN DR. DAVID EGILMAN AND HIS COUNSEL

Ann B. Oldfather
OLDFATHER LAW FIRM
1330 South Third Street
Louisville, Kentucky 40208
(502) 637-7200
aoldfather@oldfather.com

and

Alexander A. Reinert
55 Fifth Avenue, Room 1005
New York, New York  10003
(212) 790-0403
areinert@yu.edu

*Co-Counsel for Dr. David Egilman*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

    I.    MERCK FAILS TO ACKNOWLEDGE THE ADVERSE AND CONTROLLING CASE LAW THAT IMPOSES BARRIERS TO GRANTING AN INJUNCTION HERE .......... 3

    II.    THERE IS NO CONFLICT BETWEEN THE PENDING STATE COURT LITIGATION AND THE MDL ........................................................................................ 5

    III.    ENTERING AN INJUNCTION IS NOT NECESSARY TO AID THIS COURT'S JURISDICTION ...................................................................................................... 12

    IV.    ENTERING AN INJUNCTION IS NOT NECESSARY TO PROTECT THIS COURT'S JUDGMENTS ...................................................................................................... 17

    V.    MERCK HAS WAIVED ITS RIGHTS TO CONTEST CONFIDENTIALITY UNDER PTO 13 ......................................................................................................... 19

CONCLUSION ........................................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281 (1970).. 3, 4, 13

*Carlough v. Amchem Products, Inc.*, 10 F.3d 189 (3d Cir. 1993) .......................................... 13, 14

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) ................................................................ 4, 17

*Coastal Petroleum Co. v. U.S.S. Agri-Chemicals*, 695 F.2d 1314 (11th Cir. 1983).................... 10

*In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981) ........................ 14, 17

*In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002) ........................................................................ 13, 14

*In re Vioxx Products Liab. Litig.*, 869 F. Supp. 2d 719 (E.D. La. 2012)...................................... 15

*Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389 (5th Cir. 2013) ................................ 4, 5

*Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091 (9th Cir. 2008).............................................. 4, 14

*Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003)............................................................... 16, 17

*Prudential Ins. Co. of Am. v. Nelson*, 11 F. Supp. 2d 572 (D.N.J. 1998) ..................................... 15

*Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004) ........ 4

*Roman Catholic Diocese of Lexington v. Noble*, 92 S.W.3d 724 (Ky. 2002)................................ 7

*Royal Ins. Co. of Am. v. Quinn–L Capital Corp.*, 960 F.2d 1286 (5th Cir.1992)........................ 13

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831 (9th Cir. 2005) ....... 14

*Seattle Times Co. v. Rhinehart*, 467 U.S. 34 (1984)..................................................................... 7

*Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011) ...................................................................... 17, 18

*Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653 (D.D.C. 1986).......................................... 7

*Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir.1988) ................................... 8, 18

*Texas v. United States*, 837 F.2d 184 (5th Cir.1988)............................................................... 3, 14

*Williams v. McKeithen*, 939 F.2d 1100 (5th Cir. 1991)................................................................ 3

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) .................................................... 15, 16


## STATUTES

28 U.S.C. § 1651................................................................................................................ 1

28 U.S.C. § 2283................................................................................................................ 2

INTRODUCTION

This Memorandum of Law is submitted on behalf of Dr. David S. Egilman and his counsel in opposition to Defendant Merck Sharp & Dohme Corp.'s ("Merck") Motion to Enjoin Dr. David Egilman and His Counsel from Pursuing an Order from Kentucky State Court That Would Declare Protected Documents Non-Confidential ("Motion to Enjoin"). Merck's motion has no basis in fact or law. Merck declines to cite or accurately describe controlling and adverse Fifth Circuit and Supreme Court authority. Controlling legal principles establish that none of the reasons offered by Merck justify the extraordinary measure of essentially staying a pending state court proceeding. The All Writs Act, 28 U.S.C. § 1651, does not apply here, where there is no risk of conflict arising between state and federal court judgments. Even if there were a risk that the state court's treatment of confidential documents would conflict with this Court's orders, Section 1651 does not permit issuance of an injunction solely to prevent a state court from resolving confidentiality issues before this court does, even if its resolution will affect the treatment of documents currently classified as confidential here.

There is no risk of conflict between this Court's decisions and the Kentucky state court's decisions, because the issues presented in Kentucky – whether internal Vioxx documents are protected from disclosure under the governing protective order in that litigation – are different from the issues that may be presented in this litigation – whether internal Vioxx documents should remain confidential even after Merck has withdrawn or lost any claim for confidentiality in other litigation. Resolution of the Kentucky matter will be made solely by reference to state law and a state protective order. Resolution of the issue of confidentiality here will be made solely by reference to PTO 13. Unlike every other case relied upon by Merck in its motion, this

is not a situation in which the Kentucky proceeding threatens to undermine in any way this Court's resolution of the MDL.

Merck muddles the distinction between the Kentucky proceeding and this proceeding by confusing the *consequences* here of de-designation in Kentucky with actual conflict between this Court and Kentucky.  By its plain language, Pretrial Order No. 13 ("PTO 13") does not protect any document that has been lawfully de-designated elsewhere, whether through a withdrawal of a claim for confidentiality, a judicial order de-designating a document as confidential, or any other event that makes the document publicly available.  *See* PTO 13 ¶ 23.  Thus, PTO 13 clearly lays out the cooperative relationship between the multiple courts hearing Vioxx actions.  Where other courts already have determined the confidential status of documents, there is no need for this Court to entertain a claim for confidentiality because the parties and this Court, through PTO 13, already have made the determination that a document cannot be public in one jurisdiction and confidential in another.  It helps that the consequences mandated by PTO 13 ¶ 23make practical sense and are consistent with constitutional principles, but the bottom line is that this Court can take solace in the fact that Merck has had an opportunity in state court to contest the confidentiality of the relevant documents.  Given that the Anti-Injunction Act, 28 U.S.C. § 2283, presumes the competence of state courts to decide issues of federal law, let alone the state law issues presented in Kentucky, this Court furthers the federalism goals embodied by Section 2283 by giving effect to de-designation in Kentucky.

Nor are the facts of any assistance to Merck.  Merck's motion is based on wishful thinking about what has been established by the record in this proceeding and in Kentucky.  Although Merck has been given numerous opportunities in this proceeding and in Kentucky, it has consciously declined to provide any court with any reason to protect MDL documents as

confidential.  The All Writs Act is not intended to serve as a second chance for parties to correct

their own strategic mistakes.  *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) ("The

mere fact that a party may be better able to effectuate its rights or duties if a writ is issued never

has been, and under the language of the [All Writs Act] cannot be, a sufficient basis for issuance

of the writ.") (internal quotation marks omitted) (alterations in original).  If state court

proceedings provide an alternative to the All Writs remedy, then the party must take advantage

of the opportunities available in state court.  It would be a perverse result to permit a party to

intentionally scuttle its state court remedies and then obtain the intervention of federal court to

avoid the consequences of its strategic behavior in state court.  Moreover, as other submissions

before this Court demonstrate, Merck has taken actions that directly undermine any assertion of

confidentiality it may claim in MDL-produced documents.  For these reasons, we respectfully

request that Merck's motion be denied.

I.   MERCK FAILS TO ACKNOWLEDGE THE ADVERSE AND CONTROLLING CASE
     LAW <u>THAT IMPOSES BARRIERS TO GRANTING AN INJUNCTION HERE</u>

Merck's motion faces several substantial hurdles.  One must start with the presumption,

unacknowledged by Merck, *against* using the All Writs Act to enjoin state court proceedings.

*Texas v. United States,* 837 F.2d 184, 186 (5th Cir.1988) (federal courts must be "cautious about

infringing on the legitimate exercise of state judicial power.").  This is because the Anti-

Injunction Act's exceptions are based on "the fundamental constitutional independence of the

States and their courts," and creates a presumption in favor of permitting state court litigation to

progress "unimpaired by intervention of the lower federal courts, with relief from error, if any,

through the state appellate courts and ultimately this Court."  *Atlantic Coast Line R.R. Co. v.

Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 286-87 (1970).  Thus, if there are "*[a]ny

doubts* as to the propriety of a federal injunction against state court proceedings," they must be

3

resolved against Merck's request.  *Id.* at 297.  In short, "the fact that an injunction *may* issue

under the Anti–Injunction Act does not mean that it *must* issue." *Chick Kam Choo v. Exxon*

*Corp.*, 486 U.S. 140, 151 (1988) (emphasis in original).

Thus, the Anti-Injunction Act's exceptions cannot be invoked simply because the

Kentucky litigation "might have some effect" on these proceedings.  *Negrete v. Allianz Life Ins.*

*Co.*, 523 F.3d 1091, 1101-02 (9th Cir. 2008).  It does not permit federal courts to invoke the

extraordinary powers of the All Writs Act in order to make matters more convenient in federal

litigation.  *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 430 (2d

Cir. 2004).  Nor may parties use the All Writs Act to try to convince a district court that the state

court judge's resolution of a particular question was wrong.  *Atlantic Coast*, 398 U.S. at 293.

And it is clear that a district court "has no interest—no interest that can be vindicated by the

exercise of the federal injunction power—in being the *first* court" to resolve a particular issue

that also is pending before a state court.  *Retirement Systems*, 386 F.3d at 429 (emphasis in

original).

Moreover, the Fifth Circuit, in a case ignored by Merck, has recently outlined the narrow

circumstances under which issuance of an injunction pursuant to the All Writs Act is appropriate.

First, and most important to this proceeding, Merck must demonstrate that it has "no other

adequate means to attain the relief [it] desires." *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F.

App'x 389, 396-98 (5th Cir. 2013) (internal quotation marks omitted).  In *Moore*, the Fifth

Circuit found that non-parties who had been enjoined by a district court under the All Writs Act

showed a likelihood of success on the merits of their appeal because one alternative means of

relief that the movants had was to avail themselves of relief in state court.  *Id.* at 397.  The

second requirement is that the party seeking the writ must show that it has a "clear and

indisputable" right to the writ.  *Id.* at 397 (internal quotations marks omitted).  Finally, Merck must show that the writ is appropriate under the circumstances.  *Id.* at 398.

None of these requirements is met here.  Notably, Merck had an opportunity to pursue relief in state court and it deliberately waived that right.  As such, Merck has created the conditions by which the state court decision may ultimately affect how this Court deals with confidential documents.  Merck cannot seek issuance of a writ based on an exigency that it created.  Just as in *Moore*, here Merck is really seeking the writ not to enjoin violations of federal law but to address a "quintessentially state issue," *Moore*, 507 F. App'x at 394 – namely how documents produced in state court litigation should be treated under a state court's confidentiality order.

## II.   THERE IS NO CONFLICT BETWEEN THE PENDING STATE COURT LITIGATION AND THE MDL

The first reason that the extraordinary remedy provided by the All Writs Act is inappropriate is because, contrary to Merck's assumption, there is no conflict present between the Kentucky proceeding and this Court's jurisdiction over the MDL.  It is true that Dr. Egilman has argued here and in Kentucky that de-designation in state court will result in de-designation here, by operation of this Court's Protective Order.  But rather than present a conflict between the Kentucky proceeding and this Court, this actually reflects well-functioning federalism and is a consequence of the bargain that the parties struck here with the Court's explicit approval.

The Protective Order entered in this Court clearly delineates what happens when a document that has been designated confidential here is found not to be confidential by another court hearing a Vioxx matter.  Paragraph 23's states as follows:  "To the extent that any material designated as Confidential Information herein . . . has its designation as Confidential Information *withdrawn or judicially removed* in any U.S. VIOXX action or MDL-1658, the Confidential

Information designation shall be deemed withdrawn from such material and shall, on notice, be removed from the [confidentiality"] log."  PTO 13 ¶ 23 (emphasis added).  The Kentucky action is a U.S. Vioxx action, and Merck has conceded that, to the extent any document was produced in Kentucky subject to the governing protective order there, it has withdrawn any claim to confidentiality in Kentucky.  *See* Ex. 17 to Mot. to Enjoin at 7.  Therefore, the direct result of Paragraph 23 is that the documents withdrawn by Merck in Kentucky can no longer be considered confidential here.

Merck somehow argues that because of this, the Kentucky proceedings present a threat to the integrity or jurisdiction of this MDL.  But if that is so, it would appear that Paragraph 23 – negotiated by the parties and entered by this Court – would be rendered a nullity.  For every time another court was entertaining a motion to de-designate a document that also has been protected in the MDL, under Merck's theory, it would have to be enjoined.  Similarly, every time a state court was prepared to enter into evidence a document that also is protected in the MDL, it would have to be enjoined until this Court ruled on the matter.  But this is precisely the opposite of the clear intention of the parties and this Court, as reflected in Paragraph 23.  For if state courts were enjoined in every instance in which they were considering de-designation or publication of documents or depositions also designated confidential here, Paragraph 23 would never come into operation.

Contrary to Merck's argument, Paragraph 23 is actually key to reducing conflict between state and federal courts.  It ensures that this Court need not revisit the confidentiality of documents when another court – presumed to be competent in issues of state and federal law – has found arguments for confidentiality lacking.  And it protects the sovereignty of States who may have made a substantive judgment to value openness more than the federal system – under

the Rules Enabling Act, federal rules of procedure cannot abridge or modify that substantive judgment.  *See* <u>Roman Catholic Diocese of Lexington v. Noble</u>, 92 S.W.3d 724, 731 (Ky. 2002) (describing common law right of access to courts and court documents).  It also is consistent with constitutional principles, for a document that is public in one jurisdiction cannot be made confidential in another.  *See Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 660-61 (D.D.C. 1986) (a protective order cannot  "prevent . . . anyone . . . from disseminating the substance of information already in the public domain, by virtue of its inclusion in the open trial record or other sources.")(*citing Seattle Times Co. v. Rhinehart*, 467 U.S. 34 (1984)).  Finally, it is the most practical way to deal with the fact that different jurisdictions may have protected the same set of documents from disclosure, but may find it necessary at different times to make those documents publicly available (at trial, for instance).  Absent a provision such as Paragraph 23, a document subject to multiple protective orders (as is true of many internal Vioxx documents) could not be used in particular litigation without obtaining clearance from every single protective order that covers the document.  It cannot be that this Court sits to approve any other court's determination that a confidential Vioxx document is relevant and admissible at trial or in some other publicly available proceeding.  But that is the reading Merck asks this Court to adopt.

Merck has, notably, offered no defense of its contrary reading of Paragraph 23 – it has offered no explanation of what the words in Paragraph 23 could mean other than their plain meaning.  Instead, Merck clings to ambiguous statements made by this Court at a February 28, 2014, telephone conference, which was prompted by a letter from Merck that made no reference to Paragraph 23 at all.  But Merck has not shouldered its burden of showing that this Court

decided the issue as Merck wishes it did.  *See Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d

491, 499 (5th Cir.1988) (en banc).  Rather, this Court made several things clear:

First, it stated that it would not interfere with the Kentucky proceedings underway, even

though all present were aware that the Kentucky court was considering Dr. Egilman's request for

de-designation.  Tr. 19 ("I'm not, as a federal court, going to instruct a state court judge not to act

on material that he had, but I don't think that his ruling on them is necessarily the only ruling

that's necessary").  Had Merck believed that seeking de-designation in Kentucky threatened the

integrity of the MDL proceedings, this would have been its opportunity to make that argument.

Second, as to what additional steps this Court believed were "necessary" after the state

court ruled on the documents, there is much ambiguity.  In response to Ms. Natter's argument to

the Court that PTO 13 specifically provides that MDL documents are de-designated when

confidentiality is removed in another Vioxx action, the Court stated:

> I think that's a legitimate point. I think that that ought to be raised when anybody
> wishes to have the documents that are governed by this protective order removed
> or withdrawn. I think I would need to know which documents are there. I'll make
> a decision on that, but I will also make a decision as to which documents that
> were not introduced in Kentucky but are part of the MDL could or should be
> removed at this point.

Tr. 16-17.

Mr. Barnett then articulated Merck's concern in response to Ms. Natter's argument,

stating "What we don't think would be appropriate is to have documents that weren't actually

produced in another matter de-designated under that matter's protective order. We think that you,

as the judge who entered the protective order and retained authority, really has the final say

regarding de-designation."  Tr. 18.  The Court reminded Merck that "you having the documents,

or at least the party with the greatest interest in keeping them under the protective order, you

have the burden of showing why they should be kept [confidential]."  Tr. 18.

8

These colloquies suggest that both Merck and the Court were concerned with the Kentucky court acting on documents that never had been "involved in" or produced in Kentucky. Merck's current motion does not discuss any of those excerpts to the Court, instead focusing on the following statement by the Court:

> I think that the judge ought to be ruling on the documents that the judge has used in his litigation. I'm not, as a federal court, going to instruct a state court judge not to act on material that he had, but I don't think that his ruling on them is necessarily the only ruling that's necessary. If those documents are also under the MDL protective order, then I'm going to have to weigh in on that. Now, I'm going to certainly take into consideration the fact that a state court colleague felt that it ought to be released. Under Rule 23 that is very persuasive to me, that he felt it should be released, but I don't think that he would wish to try to release documents in the MDL proceeding, ***documents that were not even involved in the Kentucky litigation***. I don't think he would feel comfortable doing that. I would urge him to not deal with documents that were not introduced in his litigation.

Tr. 19 (emphasis added).

According to Merck, this excerpt establishes that "the Court made clear that, regardless of what transpired in Kentucky, any information designated as confidential in the MDL proceeding cannot be disclosed unless and until the Court determines that such information is not confidential."  Motion to Enjoin 5.  On our reading of the excerpt, in context, the effect is far from clear.  First, as discussed above, it is clear that this Court did not believe it had the power to tell the Kentucky judge what to do, but it expressed the hope that the Kentucky court would not act on documents that had not even been "involved in the Kentucky litigation."  This resolves Merck's current motion to enjoin the state court proceedings.  At the same time, the Court indicated that even if the Kentucky judge declared the documents non-confidential, this Court would have to weigh in on their protection under PTO 13.  The Court never stated, however, that it would conduct a *de novo* determination of whether documents de-designated in Kentucky were

nonetheless confidential under PTO 13.  The Court recognized that Paragraph 23 required it to be deferential to the judgment of the Kentucky state court.

With almost all of this, we have no quarrel.  We agree that the Kentucky state court has no power over documents that were not produced or involved in the Kentucky litigation.  We simply have a difference of opinion with Merck as to which documents were involved or produced in Kentucky.  Resolving this controversy is a matter of state law and the proper interpretation of the governing protective order in state court.  This Court, which already has determined that the Kentucky litigation was improperly removed to federal court by Merck, certainly has no jurisdiction to decide which documents were produced or introduced in Kentucky state court and subject to protective order there.  *Coastal Petroleum Co. v. U.S.S. Agri-Chemicals*, 695 F.2d 1314, 1319 (11th Cir. 1983) (holding that there was no basis for issuing injunction where district court would be compelled to apply state law in the same manner as the state court).  Merck may not like the arguments that Dr. Egilman is making in state court on this issue, but its proper recourse is the state court and Kentucky's appellate process, not a federal court that has no subject matter jurisdiction over the action.

We also agree that it is for this Court to determine the consequence in the MDL of any decision by the Kentucky court to de-designate documents that also have been designated in the MDL.  We have taken the same position in the Kentucky state court, where we explicitly disclaimed any request that the Kentucky court "make any findings regarding the consequences of de-designation for the status of the documents under other governing protective orders" and noted that "Judge Fallon is in charge of his own Orders."  *See* Reply to Defendant's Opposition to Motion to Declare Documents Non-Confidential Due to Non-Compliance with Court's Order

at 2-3, attached as Exhibit A.[1]  Again, Merck's complaint is that we are arguing, as a matter of straightforward interpretation of Paragraph 23 of PTO 13, that this Court already has determined the impact of any such decision in Kentucky – it will result in de-designation here.  We certainly recognize that this Court could decide the issue differently, although we differ from Merck in our assessment of whether this Court actually already has come to that conclusion.  As discussed above, our reading of the transcript indicates that this Court was more concerned with preserving for itself the ability to determine the status of documents produced in the MDL and not involved in the Kentucky litigation.  But, as we have indicated in past correspondence, we will not presume to decide what the Court meant when it uttered those words at the February 28 hearing and will happily address this issue with the Court on June 6.  If this Court finds that it did in fact interpret Paragraph 23 of PTO 13 as Merck insists, we respectfully request that the Court reconsider its decision.  The plain language of PTO 13, the practical implications of disregarding its plain language, and the constitutional difficulties that would arise from Merck's preferred interpretation all counsel in favor of reconsideration.

        None of this, however, is a justification for the extraordinary remedy sought by Merck.  For if Merck is right that de-designation in Kentucky does not mean de-designation in the MDL, this Court can announce that ruling clearly and the parties can proceed from there.  Moreover, because Merck already has withdrawn the documents from protection in Kentucky, this Court need not await a decision from the Kentucky state court to offer a clear interpretation of Paragraph 23.  Even absent Merck's withdrawal, the fact that the Kentucky court might

---

        [1] Although Merck attached other pleadings from Kentucky state court to its motion to enjoin, it surprisingly did not include Dr. Egilman's reply, in which he specifically foreswore the argument Merck now attributes to him.

hypothetically decide to de-designate documents also protected in the MDL does not justify an injunction – it simply calls for a ruling from this Court s to the meaning of Paragraph 23.

Merck may argue that Dr. Egilman's request that the Court order the documents be made publicly available goes beyond a request for de-designation.  Of course, the state court is free to decide as a matter of state law how best to effectuate the goal of ensuring that members of the Kentucky public are able to access documents that are presumptively public under state law.  *See* March 10, 2104, Order in *Commonwealth v. Merck*, No. 09-CI-1671, at 1, attached as Ex. 9 to Merck Mot. to Enjoin ("The public has an interest in evaluating Dr. Egilman's opinions and the documents on which they are based.").  But even the risk that the state court will make public documents currently protected under PTO 13 does not create enough of a conflict to justify the Court's intervention.  For this Court has not found that any of the subject documents are confidential.  Indeed, it has stated that Merck has to justify the assertion of confidentiality, an opportunity that Merck has foregone in this venue and in Kentucky.  This Court also has stated that Merck's maintenance of a confidentiality log is necessary to resolving disputes about confidentiality, another step that Merck has refused to comply with.  And Merck has waived claims to confidentiality by discussing confidential documents openly in the public eye.  Thus, Merck has taken no steps to protect the confidentiality of its documents in this Court.

III.   ENTERING AN INJUNCTION IS NOT NECESSARY TO AID THIS COURT'S JURISDICTION

Even if the Kentucky court's decision to make non-confidential documents publicly available posed a tension with this Court's orders, that also is not a sufficient reason to enjoin state court action.  An injunction is not *necessary* to aid this Court's jurisdiction because the confidential status of particular Vioxx documents does not affect this Court's ability to resolve the matters pending before it.  When considering whether to find an exception in aid of this

12

Court's jurisdiction, "it is not enough that the requested injunction is related to that jurisdiction," but it must be "*necessary* to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast*, 398 U.S. at 295 (emphasis added).  a court may not enjoin state court proceedings "merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Id.* at 294.[2]  Nor is it enough that a state court action "will deprive a federal court of the opportunity to resolve the merits of a parallel action in federal court" – the state court proceeding "must not simply threaten to reach judgment first, it must interfere with the federal court's own path to judgment." *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002); *see also Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 203-04 (3d Cir. 1993) (affirming injunction where state court was being asked to consider the validity of a federal class-action settlement in which the opt-out period had not yet expired).  This is so even if the state court may reach a conclusion that differs from how this Court would resolve the issue.  *See Royal Ins. Co. of Am. v. Quinn–L Capital Corp.,* 960 F.2d 1286, 1298 (5th Cir.1992).

Merck waves its hands at justifying an injunction under this exception, vaguely suggesting that if the Kentucky court finds certain documents confidential, it will interfere with this Court's "core function" of coordinating discovery.  Mot. to Enjoin at 13.  But in so doing, Merck ignores the well-established law described above (and also ignores that this "core function" is compete, or substantially complete, as far as document production is concerned).  Merck argues, for instance, that the Kentucky proceeding must be enjoined because it "'threaten[s] to interfere with [this] [C]ourt's determinations as to whether those documents are

---

[2] Although Merck cites to *Atlantic Coast*, it fails to draw the Court's attention to any of these limitations set forth by the Supreme Court.

confidential under the MDL Protective Order." *Id.* (alternations in original).  But even if this were the case this is not a sufficient reason to resort to the extraordinary relief Merck seeks here. *See Texas*, 837 F.3d at 186 n.4 ("In no event may the 'aid of jurisdiction' exception be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the federal court's decision.").  After all, no further discovery of internal Vioxx documents appears contemplated by the parties, so the confidential status of any particular documents will not impact this Court's management of discovery.

    None of the case law relied upon by Merck is to the contrary.  To the extent that courts have applied the Anti-Injunction Act to protect the integrity of class actions or complex multi-district litigation such as this, it has generally been when the state court proceeding threatens to undermine the finalization of "complicated, comprehensive settlements" that are the product of significant expenditures of time and resources.  *See In re Diet Drugs*, 282 F.3d 220, 235-36 (3d Cir. 2002) (collecting cases); *see also Negrete*, 523 F.3d at 1102-03; *Carlough*, 10 F.3d at 203. If the pending state court action "would clearly interfere with the multidistrict court's ability to dispose of the broader action pending before it," for instance, an injunction may be appropriate. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334-35 (5th Cir. 1981).  But if the state court action does not threaten this Court's jurisdiction over this matter as a whole, then an injunction is not appropriate.  *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 844-46 (9th Cir. 2005).  Just as in *Sandpiper*, here the litigation is not at a "sensitive stage"; indeed, it appears that most cases have settled or will be remanded with very little left for this Court to do.  428 F.3d at 845-46.

    This Court's prior treatment of an All Writs motion in this proceeding is consistent with the foregoing.  This Court found sufficient grounds for invoking the extraordinary power of the

All Writs Act because the state court litigation threatened to undermine imminent or completed

settlement in the federal action.  *In re Vioxx Products Liab. Litig.*, 869 F. Supp. 2d 719, 728-30

(E.D. La. 2012) ("Parallel state court litigation that nominally pursues separate claims but

functionally would require Defendants to pay twice on the same claims would severely hinder

the incentive to settle, to the detriment of all involved.").  Here, none of the arguments made by

Dr. Egilman and counsel in state court will threaten an impending judgment or settlement.  In

general, when it comes to questions of privilege or confidentiality, federal courts have

recognized that state courts are as competent as they are to adjudicate such issues.  *Prudential*

*Ins. Co. of Am. v. Nelson*, 11 F. Supp. 2d 572, 581 (D.N.J. 1998).  As was the case in *Nelson*,

here the protective order specifically contemplates that other courts are competent to resolve the

confidentiality of documents that are protected by orders entered in the MDL and other Vioxx

litigation.  *Id.* ("No provisions in the Consent Decree direct or require the Court to be the sole

arbiter of privilege issues.").

There is one case that involved the rare situation in which a district court was found to

have acted within its discretion by enjoining a state court proceeding because of concerns about

discovery.  *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996).  In *Winkler*, however, the

court was "quite reasonably" concerned that the litigants were using state court to conduct an end

run around an unfavorable discovery ruling in federal court.  *Id.* at 1202.  This kind of forum-

shopping, the Seventh Circuit stated, was directly implicated by the purposes of the Anti-

Injunction Act.  *Id.*  Even so, however, the Seventh Circuit noted that a district court exceeded its

injunctive authority when it sought to enjoin parties who were not properly part of federal

multidistrict litigation, or to enjoin cases like this one that "had been wrongly removed to federal

court and over whom the district court never had jurisdiction."  *Id.* at 1203.

*Winkler* thus is plainly inapposite to the instant case.  Here it is defendants who are seeking to engage in forum-shopping to undermine the integrity of state court proceedings, fleeing a jurisdiction in which they were compelled to provide a justification for their confidentiality designation for this Court, where until recently no party sought to challenge Merck's designation of documents as confidential.  And there is no worry here, as there was in *Winkler*, that the Kentucky state court decision will render an order of this Court a nullity – if there is an impact on the designation of documents in the MDL, it will be *because* of this Court's Protective Order, not in spite of it or in conflict with it.  And, of course, it bears noting that the Kentucky litigation was improperly removed by Merck to this Court, thus begging the question whether this Court may invoke the "in aid of jurisdiction" exception to enjoin a proceeding over which it clearly lacks jurisdiction.

Merck also misleadingly suggests that the Fifth Circuit's decision in *Newby v. Enron Corp.*, 338 F.3d 467, 473 (5th Cir. 2003), supports the motion to enjoin here.  In *Newby*, two sets of orders by the district court were at issue.  First, the district court, relying on its authority under the Private Securities Litigation Reform Act, had entered an order staying discovery in a parallel state court proceeding. 338 F.3d at 470-71.  Although the Fifth Circuit upheld the district court's stay, it was not on any basis that is applicable here, because the PSLRA has a specific provision granting authority to stay discovery in state courts in certain circumstances.  *Id.* at 470-73.  Merck, however, implies that this portion of the Fifth Circuit's opinion approved of a stay of state-court discovery as one of the exceptions to the Anti-Injunction Act.  Mot. to Enjoin at 13.  In fact, the Fifth Circuit's Anti-Injunction Act holding related to the district court's order forcing them to withdraw their motions for temporary injunction to freeze defendants' assets and preserve documents and barring them from returning to the state court for other temporary

16

injunctions without leave of the federal court. *Newby*, 338 F.3d at 473. The Fifth Circuit upheld this assertion of power because the state court action threatened to "interfere with the federal court's orderly handling of the massive federal litigation" and because the orders sought in state court were entirely duplicative of the orders already entered in federal court. *Id.* at 474-75. Moreover, there was a concern about "duplicate and inconsistent injunctive relief." *Id.* Merck has not met its burden of showing any such risk here. As explained above, the relative roles of the state and federal courts here are perfectly clear and not in conflict.

IV. ENTERING AN INJUNCTION IS NOT NECESSARY TO PROTECT THIS COURT'S JUDGMENTS

Merck also invokes the Anti-Injunction Act's "relitigation exception," which is "designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo*, 486 U.S. at 147. This exception is "heavy artillery," such that "close cases have easy answers: The federal court should not issue an injunction, and the state court should decide the preclusion question." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375, 2382 (2011). In the Fifth Circuit, the movant "must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981) (internal quotation marks omitted). A requirement *sine qua non* "is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Chick Kam Choo*, 486 U.S. at 148. Determining what has been "actually decided" requires recourse to the record and on what the earlier federal court *actually said,* not on the court's *post hoc* judgment as to what the previous judgment was intended to say. *Id.* Any doubt as to whether the federal court

17

order precludes state court litigation of subsequent claims must be resolved in favor of allowing the state court to proceed. *Texas Employers' Ins. Ass'n*, 862 F.2d at 499.

Merck's argument under this exception is based on the same faulty reasoning that informs its attempt to create a conflict between PTO 13 and the Kentucky proceeding. Mot. to Enjoin at 14-15. As explained above, however, the Kentucky proceedings are not in conflict with PTO 13; they are specifically contemplated by this Court's Order. This Court decided as much when it determined that it would not interfere with the state court's resolution of Dr. Egilman's de-designation motion. Tr. 19.

There also is substantial doubt that any of the requirements of issue preclusion have been met here, so as to bar the state court's decision regarding the confidentiality of documents produced in Kentucky. For instance, the issue in Kentucky – whether particular documents have been produced in Kentucky and validly designated confidential – is not the same as the issue before this Court – whether documents that are de-designated elsewhere retain protection under PTO 13. The Supreme Court's recent decision in *Smith* is instructive  -- there the Court found that an injunction was unavailable to bar a state court from considering a motion to certify a class even after a federal court denied a similar motion involving an identical proposed class, because the standards for certification under state law were different than the standards under federal law. 131 S. Ct. at 2379 ("A federal court and a state court apply different law. That means they decide distinct questions."). There also is reason to doubt that this Court has decided the issue consistent with Merck's revisionist reading of the February 28 conference. For all of these reasons, an injunction is not necessary to protect the integrity of this Court's judgments.

V.   MERCK HAS WAIVED ITS RIGHTS TO CONTEST CONFIDENTIALITY UNDER
     <u>PTO 13</u>

Even if one accepts Merck's argument that the protective order in this Court – not in

Kentucky – is the only order under which the confidentiality of MDL documents (whether

produced in Kentucky or elsewhere) can be litigated, its request for an injunction should be

rejected.  For if Merck is correct, then it already has waived any confidentiality objections under

PTO 13 because it failed to file any response to Dr. Egilman's and Ms. Oldfather's objection to

the designation of MDL documents as confidential.

PTO 13 requires the Designating Party to justify any assertion of confidentiality within

10 days of a party challenging such designation.  If Merck's argument – namely that the MDL

documents subject to challenge in the Kentucky litigation may only be adjudicated here and not

in Kentucky – is correct, then it has been much longer than 10 days since a request was made to

de-designate those documents.  Dr. Egilman, for instance, made his first request on October 29,

2013 and his most recent request on April 9, 2014.  Merck's response to that request, as to all

MDL documents, was to affirmatively decline to provide any basis for confidentiality of the

documents.  Thus, it has been more than 10 days since a request has been made to de-designate

documents that Merck asserts can only be de-designated pursuant to PTO 13.  If Merck is correct

that the MDL, not Kentucky, is the proper venue for resolving challenges to MDL documents,

then it has sat upon its rights.

Merck might argue that Dr. Egilman has no standing to make such a request, but that

argument is hardly credible given that Merck is seeking to sanction Dr. Egilman for allegedly

disclosing documents protected by PTO 13.  Dr. Egilman would appear to at least have standing

to challenge the designation of documents that Merck believes it has disclosed (although we note

that Merck still has failed to identify those documents).

19

Even if Dr. Egilman lacks standing, however, Ms. Oldfather had standing to seek de-designation.  Ms. Oldfather intervened to support Dr. Egilman's request for de-designation on February 17, 2014.  She withdrew her request on March 28, 2014, but by that time more than 10 days had passed without any assertion by Merck of the basis for the confidentiality of these documents.  Thus, if Merck sincerely interpreted the Kentucky requests to be directed towards documents protected by PTO 13, its failure to comply with the procedures set forth in PTO 13 has resulted in a waiver of any confidentiality claim.

Merck's goal throughout these related matters appears to be simple: avoid having to justify the confidentiality of subject documents at all times.  Its failure to provide a basis for confidentiality in Kentucky, its refusal to address objections to its confidentiality orders in this Court, and its insistence that it need not produce a confidentiality log despite crystal clear obligations, all suggest that Merck has no interest in defending its confidentiality designations.  Its request for an injunction here is consistent with that goal.  For if it is successful, it can continue to treat documents as confidential without ever having to justify that designation.  Notably, Merck has asked this Court to put a stop to Dr. Egilman's de-designation request in Kentucky, even as it has resisted any attempt by Dr. Egilman to seek de-designation in this proceeding.  It is well to remember that Merck improperly removed the Kentucky litigation to this Court in the first place.  Had Merck not improperly removed the Kentucky litigation, there would be no question that the Kentucky court would be free to decide for itself which internal Vioxx documents relevant to the litigation should be available to Kentucky citizens.  Merck should not be permitted to compound its intrusion on Kentucky's sovereignty by asking this Court to enjoin a state court proceeding that threatens no decision or judgment here.

CONCLUSION

Merck's contentions reduce to two complaints, neither of which justifies the extraordinary remedy it seeks.  First, Merck wants to decide for itself (or have this Court decide) what it means for a document to have been involved in (and hence protected by the governing protective order) in the Kentucky litigation.  But that question is the subject of competing arguments in state court, and properly a matter for state court interpretation.  Even if this Court were to consider the issue, it would be bound by state law – given that a Kentucky court is currently considering the question, intruding on that decision violates principles of comity and federalism.  Second, Merck wants to rewrite the Protective Order that it agreed to and that this Court entered.  Merck's position on the meaning of Paragraph 23 is ironic – it is trying to take ambiguous remarks from this Court during a hearing in which its meaning was not the focus and turn those comments into a clear holding, at the same time as it has ignored indisputably clear direction from this Court to provide a confidentiality log.  For all of these reasons, we respectfully request that this Court deny Merck's motion to enjoin proceedings in the Kentucky state court.

Dated:      June 4, 2014
            New York, New York

Respectfully submitted,

*/s/ Ann B. Oldfather*

_____

Ann B. Oldfather
OLDFATHER LAW FIRM
1330 South Third Street
Louisville, Kentucky 40208
(502) 637-7200
aoldfather@oldfather.com

*/s/ Alexander A. Reinert*

_____

Alexander A. Reinert
55 Fifth Avenue, Room 1005
New York, New York 10003
(212) 790-0403
areinert@yu.edu

*Co-Counsel for Dr. David Egilman*

## CERTIFICATE OF SERVICE

I hereby certify that the above has been served upon Liaison Counsel, Phillip Wittmann and Russ Herman, by U.S. Mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 4th day of June,2014.

*/s/ Ann B. Oldfather*

_____

Ann B. Oldfather

22