IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re: VIOXX | ) | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | ) | SECTION: L |
|  | ) | JUDGE FALLON |
| THIS DOCUMENT RELATES TO: | ) |  |
| *Com. of Kentucky v. Merck & Co., Inc.*, | ) |  |
| No. 09-CI-1671 (Franklin Cir. Ct.) | ) |  |
| And formerly No. 2:10-cv-1115 (E.D. La.) | ) |  |

**COMBINED REPLY IN SUPPORT OF MOTION TO ENJOIN DR. DAVID EGILMAN AND HIS COUNSEL FROM PURSUING AN ORDER FROM KENTUCKY STATE COURT THAT WOULD DECLARE PROTECTED DOCUMENTS NON-CONFIDENTIAL**

The fundamental message of Dr. Egilman's response is that the Court should not enter a writ because it is entirely proper for the Kentucky state court to release documents that were designated confidential in this MDL proceeding. According to Dr. Egilman, paragraph 23 of PTO 13 provides that de-designation in the MDL proceeding follows as a matter of course from de-designation in Kentucky.

This Court has already heard and rejected Dr. Egilman's argument. During the February 28 hearing, Kentucky Assistant Attorney General Liz Natter quoted paragraph 23 of PTO 13, and Dr. Egilman expressly asked whether Judge Shepherd, the Kentucky state-court judge, could "rule on any MDL documents that were used in the Kentucky case?" The Court responded that Judge Shepherd was free to rule, but "[i]f those documents are also under the MDL protective order, then I'm going to have to weigh in on that." (2/28 Hr'g Tr. 16:4-20:10 (attached as Ex. 1).) Dr. Egilman calls this response "ambiguous" (Egilman Opp'n at 7), but in truth, it was clear as day.

1160243v1

So is PTO 13. While Dr. Egilman tries to suggest that Paragraph 23 gives state courts the power to abrogate the MDL protective order, the language in that paragraph clearly extends only to federal transferor courts that might, after remand, remove a designation from a confidential document. This is evident by the fact that the paragraph refers to designations of "Confidential Information," a term that is defined in paragraph 5 of the order to mean information that is "subject to protection under Fed. R. Civ. P. 26(c)(7)" – a determination that a state court would never make. It is also evident from PTOs 13A and 13B, which expressly provide that plaintiffs, counsel and all persons acting on their behalf in the AG cases must maintain confidentiality "unless provided for by subsequent order of *this Court*." (PTO 13B, § III (emphasis added); *see also* PTO 13A (containing similar language).)

Dr. Egilman's efforts to twist the MDL PTOs into an invitation that state courts override MDL court decisions is particularly troubling because the documents at issue have only a tenuous connection to Kentucky. As Merck has previously explained, the documents that Dr. Egilman wishes to publish were not even produced in Kentucky – and were never intended by Merck to be covered by the Kentucky protective order. Rather, Dr. Egilman brought these protected documents to his Kentucky deposition last year, and they were marked solely for identification purposes at the close of the deposition – apparently as part of a forum-shopping strategy by Dr. Egilman to try to escape the MDL protective order. If Dr. Egilman prevails on his position that parties or their experts can easily thwart MDL discovery orders by running to state court and obtaining a preemptive ruling that the MDL court is powerless to address or prevent, it will become much more difficult to foster federal-state cooperation over discovery issues in future multidistrict litigation. Thus, Dr. Egilman's strategic efforts to escape the MDL protective order only highlight the need for a writ to be issued, stopping those efforts.

1160243v1

Dr. Egilman also argues that there is no compelling need for an injunction because he has only requested de-designation, not publication, and that this Court will be free to weigh in notwithstanding a Kentucky state court ruling in Dr. Egilman's favor. (*See, e.g.*, Egilman Opp'n at 11 & n.1.) This argument simply misrepresents the record. Dr. Egilman expressly asked the Kentucky court to publish the documents, not just de-designate them, on multiple occasions, including in his opening brief (Mot. Ex. 16 at 14 (claiming that relief would mean that the documents are "publicly available in Kentucky")); in the proposed order attached to it (*id.* at 22 (proposing that the documents "be declared public and open to disclosure")); in his reply brief (Egilman Opp'n Ex. A at 2 (stating that "once one court allows publication of a document, then there is nothing left to protect")); and at the hearing on the motion (Mot. Ex. 18 (argument of Ms. Oldfather acknowledging that "the next step of our relief . . . is that these documents be made public in some way, [such as] by being on a CD and filed in the court record")). To the extent Dr. Egilman is running away from these prior requests, it betrays his understanding that the relief he seeks in state court – publication of the documents – poses a concrete and immediate threat to this Court's jurisdiction over confidentiality issues and to its protective order.

For these reasons, and those discussed below, Dr. Egilman's arguments fail, and Merck's motion should be granted.

## ARGUMENT

An injunction against Dr. Egilman and his counsel is justified under both exceptions to the Anti-Injunction Act, notwithstanding any of the arguments offered by Dr. Egilman or Utah. ***First***, an order enjoining Dr. Egilman and his counsel from seeking de-designation or publication of confidential MDL information in Kentucky state court would aid the Court's jurisdiction over the Vioxx MDL proceeding generally and over its discovery process specifically. (*See* Mot. at 10.) ***Second,*** such an injunction would protect and effectuate the MDL Protective Order entered

by this Court. (*See id.* at 14.) **Third**, Dr. Egilman's argument that Merck waived the protections of PTO 13 is frivolous. And ***fourth***, Utah's additional arguments reflect confusion over the difference between confidentiality and privilege and the basis of this Court's power under the All Writs Act.

I. **THE COURT SHOULD ENTER AN INJUNCTION IN AID OF ITS JURISDICTION.**

As Merck set forth in its opening brief, an MDL court has authority to enjoin state-court litigation that threatens to interfere with its ability to efficiently manage the MDL proceeding. Because "[a] court's power to guide discovery is concomitant with its duty to provide effective management of complex litigation," this authority includes the power to issue an injunction "to protect the integrity of a discovery order." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201-02 (7th Cir. 1996).[1] Here, Dr. Egilman threatens to undermine the MDL protective order by pursuing a state-court order that de-designates documents produced as confidential in this proceeding. (*See generally* Mot. at 10-14.) In response, Dr. Egilman argues that an injunction is unnecessary because: (1) courts only enter injunctions when state-court litigants "undermine the

---

[1] Dr. Egilman accuses Merck of "declin[ing] to cite or accurately describe controlling and adverse Fifth Circuit and Supreme Court authority" regarding the All Writs Act. (Egilman Opp'n at 1.) This assertion is meritless. Dr. Egilman first contends that Merck failed to "[]acknowledge" a "presumption . . . against using the All Writs Act to enjoin state court proceedings," citing *Texas v. United States*, 837 F.2d 184 (5th Cir. 1988). But *Texas* does not refer to any such "presumption"; it states only that the All Writs power should be exercised cautiously, which does not contradict Merck's position that this is a proper case for the exercise of that power. Dr. Egilman also asserts that Merck "ignored" *Moore v. Tangipahoa Parish School Board*, 507 F. App'x 389 (5th Cir. 2013) (per curiam), an unpublished and nonprecedential ruling of the Fifth Circuit. (Egilman Opp'n at 4.) Of course, as an unpublished case, *Moore* is not "controlling," *see* 5th Cir. R. 47.5.4, and it is in any event inapposite. *Moore* did not involve an MDL proceeding or competing parallel state litigation; it merely involved an injunction against a state official and state agencies, barring them from implementing education reform. Dr. Egilman appears to rely on *Moore* primarily for the proposition that Merck has alternative means of relief – specifically, it can proceed in state court. (*See* Egilman Opp'n at 4.) But what Merck seeks to preserve here is its right to a ruling from ***this*** Court on confidentiality designations under ***this*** Court's protective order. Merck insisted that it has this right in state court, but that avenue has been exhausted because the court took Dr. Egilman's request to publish confidential documents under submission. If the Kentucky court accepts Dr. Egilman's position, the next step would be to publish the documents – at which point Merck would have no certain recourse in state or federal court. Dr. Egilman suggests Merck would have an appeal, but there is no guarantee that the state court would stay its order rather than simply proceed to publish the documents.

finalization of complicated, comprehensive settlements (Egilman Opp'n at 14); and (2) there remains "very little left for this Court to do" with discovery, making interference with the Kentucky state court inappropriate (*id.*) (internal quotation marks and citation omitted).  Both arguments lack merit.

*First*, Dr. Egilman contends that an All Writs Act injunction is only justified where a state-court proceeding "threatens to undermine the finalization of 'complicated, comprehensive settlements,'" or "threatens this Court's jurisdiction over this matter as a whole."  (Egilman Opp'n at 14 (citation omitted).)  To be sure, that is a common setting for invocation of the All Writs Act, but it does not mark the limit of an MDL court's power to exercise its authority.  Indeed, the U.S. Court of Appeals for the Fifth Circuit made clear in *Newby v. Enron Corp.*, 338 F.3d 467 (5th Cir. 2003) that All Writs Act injunctions are appropriately used to protect an MDL court's jurisdiction over discovery issues.  And even Dr. Egilman concedes that there is "one case" that upheld the injunction of "a state court proceeding because of concerns about discovery." (Egilman Opp'n at 15-16 (citing *Winkler*, 101 F.3d at 1202-03).)  As the U.S. Court of Appeals for the Seventh Circuit recognized in *Winkler*, an "important aspect" of the Court's control over an MDL proceeding is "to prevent predatory discovery, especially of sensitive documents, ensuring that litigants use discovery properly as an evidence gathering tool, and not as a weapon." *Winkler*, 101 F.3d at 1202.  Thus, "[w]here a litigant's success in a parallel state court action would make a nullity of the district court's ruling, and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Id.*; *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F. Supp. 2d 876, 879-80 (M.D.

Tenn. 2000) (enjoining state court from ruling on plaintiffs' motion to compel in order "to protect [the MDL court's] jurisdiction over discovery in th[e] matter").[2]

Dr. Egilman disputes the relevance of these cases. According to Dr. Egilman, *Newby* does not "support[] the motion to enjoin here" because the state court orders in *Newby* "threatened to 'interfere with the federal court's orderly handling of the massive federal litigation'" and either duplicated or contradicted federal court orders on the same issues. (Egilman Opp'n at 16-17). But that is precisely the case here. The Kentucky order duplicates relief already offered by PTO 13 by presuming to cover thousands of documents produced here (and never formally produced in Kentucky). And if the Kentucky court grants Dr. Egilman the relief he requests, it will also contradict this Court's assertion of authority to decide confidentiality issues before any document produced in the MDL is made public.[3]

Dr. Egilman also contends that *Winkler* is "plainly inapposite" because the litigants there "were using state court to conduct an end run around an unfavorable discovery ruling in federal court," whereas here, it is "defendants who are seeking to engage in forum shopping" by "fleeing a jurisdiction in which they were compelled to provide a justification for their confidentiality

---

[2]  Dr. Egilman claims that "[i]n general, when it comes to questions of privilege or confidentiality, federal courts have recognized that state courts are as competent as they are to adjudicate such issues," citing *Prudential Insurance Co. of America v. Nelson*, 11 F. Supp. 2d 572, 581 (D.N.J. 1998) (*see* Egilman Opp'n at 15). But *Prudential* is inapposite because the consent decree at issue in that case specifically contemplated that any "court of competent jurisdiction" could decide privilege disputes relating to the defendant's testimony. 11 F. Supp. 2d at 581. It did not involve a situation, like this one, where a litigant attempted to divest a federal court from the role it expressly reserved for itself to decide confidentiality disputes as to thousands of documents produced under one of its orders. Further, the *Prudential* court made clear that, pursuant to the All Writs Act, it had "the power to enjoin proceedings in other jurisdictions that threaten[ed] to disrupt the orderly resolution of th[e MDL] litigation," including the authority to "enter orders which restrict state court discovery." *Id.* at 580.

[3]  Dr. Egilman also argues that Merck has somehow misrepresented the holding in *Newby*. (Egilman Opp'n at 16 (contending that Merck "implie[d]" that the "Fifth Circuit's opinion approved of a stay of state-court discovery as one of the exceptions to the Anti-Injunction Act" when the stay was entered under the Private Securities Litigation Reform Act and the All Writs Act relief addressed freezing assets and a document-preservation issue).) This argument ignores Merck's brief. Merck correctly stated that the defendants in *Newby* sought relief "under the All Writs Act with respect to the plaintiffs' requests in the state court for ***an order directing [one party] to preserve documents and an order freezing the defendants' assets.***" (Mot. at 12 (emphasis added).

1160243v1

designation[s]" in the MDL.  (Egilman Opp'n at 15-16.)  This argument strains credibility.  Dr. Egilman took his crusade to state court to seek de-designation of more than 12,000 documents, the vast majority of which were originally produced in this MDL proceeding.[4]  Then, he sought to evade this Court's pronouncement that it should have an independent opportunity to decide the confidentiality of documents produced in the MDL proceeding by asking a state-court judge to publish the documents.  Only after Dr. Egilman made clear that he sought an order that would publish documents designated as confidential under this Court's Protective Order did Merck request relief pursuant to the All Writs Act.  Thus, Dr. Egilman seeks to "conduct an end run around" this Court's authority over MDL discovery.  (*See id*. at 15.)

***Second***, Dr. Egilman argues that, even assuming All Writs Act injunctions in the discovery context are sometimes appropriate, such an injunction is not necessary to protect this Court's jurisdiction because usurpation of the Court's role in deciding confidentiality issues is not a sufficiently substantial interference with the Court's role of coordinating discovery. (Egilman Opp'n at 13 (further noting that "this Court's 'core function' of coordinating discovery" is "comp[l]ete, or substantially complete").)  This argument is meritless.  The threat posed by a state-court proceeding need not implicate the entire discovery process to warrant relief, as conclusively illustrated by *Newby*, which held that a writ was warranted to protect a district court's jurisdiction over a document-preservation order directed at one party.  338 F.3d at 473-74.  (*See* Mot. at 11-12.)

In truth, the discovery issue here is more substantial than the one in *Newby*.  The parties have labored for years to identify and produce confidential documents under the provisions of PTO 13.  Dr. Egilman now challenges the confidentiality of many thousands of these documents,

---

[4]   The 12,000 figure mentioned here and elsewhere includes duplicates.

1160243v1

and this Court has not even begun (or been asked to begin) resolving those issues.  Moreover, the Court made clear in its hearing on February 28, 2014 that it must "weigh in" before any documents governed by the MDL Protective Oder can be publicly disclosed.  (2/28 Hr'g Tr. 19:7-8; *see also id.* 18:11-16 (Mr. Barnett:  "We think that you, as the judge who entered the protective order and retained authority, really has the final say regarding de-designation."  The Court:  "I don't disagree with that.  I am interested in giving everybody an opportunity to tell me why the documents should be kept under designation."); *id.* 20:6-10 ("If anyone wishes that the documents under the protective order be removed from the protective order, then a motion should be made.").)  The relief Dr. Egilman has requested in state court would thwart that intent.

In short, Dr. Egilman has requested relief in Kentucky state court that, if granted, would eliminate any role for this Court in deciding confidentiality issues under PTO 13 as to thousands of documents originally produced in the MDL proceeding ***and never formally produced in Kentucky***.  This bid threatens the Court's well established jurisdiction over discovery and supports issuance of a writ to bar Dr. Egilman from further pursuing such relief.

**II.     THE COURT SHOULD ENTER AN INJUNCTION TO PROTECT AND EFFECTUATE ITS JUDGMENT.**

As set forth in Merck's opening brief, an injunction would also protect and effectuate the MDL Protective Order entered by the Court.  (*See* Mot. at 9.)  According to Dr. Egilman, this exception to the Anti-Injunction Act does not apply because the Court's interpretation of paragraph 23 of the Protective Order at the February 28 hearing is a "post hoc judgment as to what the [Protective Order] was intended to say" and is therefore irrelevant to determining what has actually been decided by the Court.   (*See* Egilman Opp'n at 17 (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988)).)  *Chick Kam Choo* does not support Dr. Egilman's contention.  In that case, the Supreme Court held that the relitigation exception was not

applicable in a case in which a federal district court had ***not*** previously decided a claim asserted by a seamen's widow under Singapore law. *See Chick Kam Choo*, 486 U.S. at 148-50. As a result, the federal court, which had previously dismissed claims under federal maritime law and other federal statutes, could not later enjoin the widow from prosecuting claims in state court based on Singapore law. *Id.* Here, in contrast to *Chick Kam Choo*, the Court ***has*** entered a Protective Order, and has declared that "the documents that [the] protective order [is] covering are still under the protective order." (2/28 Hr'g Tr. 20:6-8.) It is these decided issues regarding the Court's authority that Dr. Egilman is attempting to undo by requesting publication of documents in Kentucky.

Notably, Dr. Egilman ignores the far more analogous case cited by Merck in its opening brief, *ONBANCorp, Inc. v. Holtzman*, No. 96-CV-17000 (RSP/DNH), 1997 U.S. Dist. LEXIS 9502 (N.D.N.Y. June 27, 1997) (cited in Mot. at 14-15). The court in *Holtzman* actually relied on *Chick Kam Choo* in holding that a confidentiality order issued in a federal proceeding "merit[ed] protection" against the threat of disclosure in a parallel state proceeding even though the terms of the order did "not require its entry in the state court action." 1997 U.S. Dist. LEXIS 9502, at *24 (citing *Chick Kam Choo*, 486 U.S. at 148). Because allowing discovery to proceed in the state proceeding "without adher[ence] to the [federal] Confidentiality Order w[ould] render the protection of that order illusory," the court granted the motion for an injunction barring discovery until a confidentiality order was entered. *Id.* at *20. The situation here is no different, and Dr. Egilman's various reasons for "doubt[ing]" that the relitigation exception applies here should be rejected.

### III.    DR. EGILMAN'S WAIVER ARGUMENT IS FRIVOLOUS.

Dr. Egilman also offers the alternative argument that Merck has waived confidentiality. In so arguing, Dr. Egilman invokes the provision of PTO 13 that "requires the Designating Party

- 9 -

to justify any assertion of confidentiality within 10 days of a party challenging such a designation." (Egilman Opp'n at 19.) Dr. Egilman then reasons that, if Merck is right that "the MDL documents subject to challenge in the Kentucky litigation may only be adjudicated here and not in Kentucky," "then it has been much longer than 10 days since a request was made to de-designate those documents" because Dr. Egilman's first letter to Merck was sent October 29, 2013, and his most recent request was made on April 9, 2014. (Egilman Opp'n at 19.)

This argument is frivolous. Dr. Egilman has never invoked PTO 13 in his letters to Merck and never sought to have his challenges heard by this Court, notwithstanding the Court's invitation to him to do so through a partnership with Ms. Oldfather. (*See* 2/28 Hr'g Tr. 20:11-17.) Instead, Dr. Egilman's letters referred specifically to the Kentucky protective order (*see, e.g.*, Letter from David Egilman to Susan J. Pope, Oct. 29, 2013 (attached as Ex. 2)), and his litigation efforts have been focused in Kentucky state court. He cannot now pretend that his objections were actually raised all along under the auspices of this Court's orders.

Moreover, the fundamental premise of Dr. Egilman's waiver argument – that Merck has argued that confidentiality designations "may only be adjudicated here and not in Kentucky" – obfuscates the history of the proceedings. The Kentucky court apparently accepted Dr. Egilman's argument that MDL documents were covered under the Kentucky protective order even though Merck never produced them there, and Dr. Egilman proceeded in Kentucky on that basis. Merck has responded to the arguments Dr. Egilman has made in the forum in which he made them. It simply chose not to defend designations in Kentucky because it never produced or designated most of the MDL-produced documents there in the first place and because it understood – based on statements by this Court *and* Judge Shepherd – that each protective order offered an independent layer of protection. For this reason too, Dr. Egilman's arguments fail.

## IV. UTAH'S ADDITIONAL ARGUMENTS LACK MERIT.

Once again, Utah has weighed in on Dr. Egilman's behalf. The thrust of Utah's position is that: (1) confidentiality questions are governed by state law; and (2) the Court lacks the jurisdiction to issue an injunction against Dr. Egilman.[5] Neither of these arguments has merit.

***First***, Utah repeats the argument it made in opposing Merck's motion for sanctions that confidentiality issues are governed by state law. (Utah Opp'n at 2.) As Merck has already responded, this contention rests on the mistaken assumption that privilege and confidentiality are the same thing. They are not. This Court's confidentiality order is a routine discovery management tool. Federal law obviously governs a federal court's discovery orders. *See Pers. Audio, LLC v. Apple, Inc.*, No. 9:09-CV-111, 2010 U.S. Dist. LEXIS 144281, at *11 n.6 (E.D. Tex. June 1, 2010) ("While this is the law governing discovery in Texas, the Federal Rules of Civil Procedure are applicable to the discovery process in federal court."). Just as "[c]learly, federal law governs [a] discovery dispute" in federal court. *Broussard v. Lemons*, 186 F.R.D. 396, 397 (W.D. La. 1999). (*See also* Merck's Combined Reply In Supp. Of Its Mot. For Sanctions Against Dr. David Egilman at 9-12 & n.8, ECF No. 64,970 (filed June 4, 2014).) To hold otherwise would mean that fifty different states' laws would have to be applied to the 12,000-plus documents at issue here to determine both confidentiality and waiver – a notion entirely at odds with the Federal Rules of Civil Procedure and the fundamental purpose of federal MDL proceedings.

***Second***, Utah's suggestion that this Court cannot act because there is no "federal subject matter jurisdiction over remanded proceedings" (Utah Opp'n at 5) misconceives the basis of the Court's power to act under the All Writs Act. The Court's authority stems from the Vioxx

---

[5] Utah also renews its request for remand (Utah Opp'n at 3), but makes no new arguments. Merck therefore refers the Court to its prior briefing on that subject.

multidistrict litigation it has been overseeing for nearly a decade, litigation over which it unquestionably has subject-matter jurisdiction.  (*See id*. at 3 (acknowledging that the Court has jurisdiction over "most of the cases remaining in this court").)  Thus, while the "All Writs Act does not itself confer subject matter jurisdiction," none is needed.  *Scardelletti v. Rinckwitz*, 68 F. App'x 472, 475-76, 478 n.5 (4th Cir. 2003).  As the Fifth Circuit has expressly stated, because the Court has subject-matter jurisdiction over the MDL proceeding, "[i]t is a given that" it also "ha[s] subject matter jurisdiction to issue an injunction to preserve and protect its jurisdiction" under the All Writs Act.  *Newby v. Enron Corp.*, 302 F.3d 295, 300-01 (5th Cir. 2002); *see also, e.g.*, *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) (an "important feature of the All-Writs Act" is its grant of "authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction").  The Court recognized as much when it issued an injunction against non-parties and counsel in another state Vioxx proceeding in 2012, even though that case had previously been remanded from federal court.  *See In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 726 (E.D. La. 2012).[6]

Utah's sole authority, *Syngenta Crop Protection v. Henson*, 537 U.S. 28 (2002), is off-point.  According to Utah, the U.S. Supreme Court "definitively stated" in *Syngenta* "that the 'All Writs' statute does not confer federal jurisdiction."  (Utah Opp'n at 3-4.)  But that case only held that the All Writs Act does not create an independent basis for ***removal jurisdiction*** over an

---

[6]     Dr. Egilman offers a less developed version of the same argument, claiming that the Court's remand of the case to state court "beg[s] the question" of whether it may "enjoin a proceeding over which it clearly lacks jurisdiction."  (Egilman Opp'n at 15-16 (quoting *Winkler*, 101 F.3d at 1203).)  This argument should be rejected for the reasons explained above, and to the extent Dr. Egilman suggests that *Winkler* holds otherwise, he misreads the case.  *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F. Supp. 2d at 880 (*Winkler* "did not hold that non-parties could not be enjoined, but merely that 'the circumstances in the case at bar [we]re simply not appropriate for such a sweeping injunction.'") (quoting *Winkler*, 101 F.3d at 1203 n.7).

action pending in state court – it did not purport to limit a federal court's power to **enjoin** such a proceeding.  Other courts have distinguished *Syngenta* on this basis, recognizing that "the Supreme Court's analysis focused only on whether the All Writs Act is a valid source of federal removal jurisdiction." *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, No. 2:92-CV-10000-RDP, 2010 U.S. Dist. LEXIS 145069, at *66-67 (N.D. Ala. May 19, 2010).  As these courts have explained, *Syngenta* stands only "for the limited (and unspectacular) proposition" that the All Writs Act "'cannot confer the original jurisdiction required to support removal pursuant to [28 U.S.C.] § 1441.'"  *Id*. (quoting *Syngenta*, 537 U.S. at 33).  As such, reliance on *Syngenta* is "misplaced" where "there is no question that the district court" already has subject-matter jurisdiction over the underlying proceedings, *Scardelletti*, 68 F. App'x at 478 n.5, as is the case here.[7]

---

[7]   To the extent Utah means to argue that this Court lacks personal jurisdiction over Dr. Egilman (*see* Utah Opp'n at 3 (arguing there is no authority "to bring the state court and its participants before the federal court)), that argument too is baseless.  There is no question that Dr. Egilman is subject to the Court's jurisdiction because he signed the certification required by the Protective Order and thereby agreed "to submit to the jurisdiction of this Court for purposes of enforcing the Stipulation and Protective Order."  (*See* MDL Protective Order Ex. A.)  In any event, the Court does not need personal jurisdiction over the subjects of an injunction in order to act.  *See Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 U.S. Dist. LEXIS 52449, at *8 (N.D. Ohio May 17, 2011) (where MDL court had "jurisdiction over [ ] class action" and an interest in effectuating pending settlement, "it d[id] not need a separate basis for personal jurisdiction in order to enjoin the individual [state] lawsuits" that posed a "risk of conflicting orders").

## CONCLUSION

For the foregoing reasons and those set forth in Merck's opening brief, the Court should enter an Order enjoining Dr. Egilman and his counsel from seeking de-designation or publication of documents marked as confidential under the MDL Protective Order in Kentucky state court.

Dated:  June 5, 2014                    Respectfully submitted,

*/s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, DC 20005

John H. Beisner
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005

ATTORNEYS FOR MERCK SHARP &
DOHME CORP.

1160243v1

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing reply has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 5th day of June, 2014.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

1160243v1