## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| *This document relates to* | * | **JUDGE FALLON** |
| | * | |
| *Jo Levitt v. Merck & Co., Inc.* | * | **MAGISTRATE JUDGE KNOWLES** |
| **2:06-cv-09757-EEF-DEK** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFFS' SUR REPLY IN OPPOSITION TO DEFENDANT MERCK'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, by and through counsel, and for her Sur Reply in Opposition to Defendants Merck's Motion for Summary Judgment states:

## I.   ARGUMENT

### A.   Merck Has Been Put on Notice of Plaintiff's Heart Disease

Merck has now attempted to convince the Court that Plaintiff's Opposition to Merck's Motion for Summary Judgment on May 19th was the first time Merck was ever made aware of Plaintiff's contention that Vioxx caused her to suffer coronary artery disease and cardiovascular disease.  In her Opposition, Plaintiff directed the Court's attention to her Amended PPF which provided substantially more detail regarding her cardiovascular injuries than her original PPF.[1]

Merck's Reply completely sidestepped the supplemental PPF and complained that it was not signed.  Apparently Merck is now under the impression that it can turn a blind eye to something as significant as "notice" simply because a *Pro Se* Plaintiff forgot to sign her discovery responses.   Plaintiff should be commended, not punished for providing the

---

[1] Merck is well aware of the fact that like the original petition for damages, Plaintiff's initial PPF was prepared by her first set of attorneys who were part of a consortium of firms that filed countless cases and PPFs.  The original Petition was virtually "canned" and the initial PPF was cursory at best.  In fact, Plaintiff did not even recall ever seeing the original PPF submitted by her first set of attorneys.  (**Exhibit A**, Deposition of Jo Levit, Pp. 77-80.)

supplemental PPF in the first place.  Plaintiff believed that she was required to supplement her PPF based on her understanding of the Court's Orders.  Not only did Plaintiff take on the challenge but she managed to provide much more detail and context regarding her injuries than her prior attorneys had in their original PPF submission.

Merck has known for years that Plaintiff had not signed her Supplemental PPF.  That did not stop Merck from continuing to litigate and conduct discovery based on the information she provided in her Supplemental PPF.  Moreover, as noted in her Opposition, that did not stop Merck from verifying the information provided and asking Plaintiff extensive questions about her Supplemental PPF in her deposition.[2]  (**Exhibit A**, Deposition of Jo Levit, Pp. 81-131.)

The amended PPF clearly puts Defendants on notice that she is alleging "aggressive heart disease."  Plaintiff expounded on this in her deposition, to wit:  "In other words, I guess I had to just learn to live with whatever was going on in my heart. I mean, I thought I was going to die, I mean, because all of the sudden I have aggressive heart disease, and I never had aggressive heart disease in my life." (**Exhibit A**, Deposition of Jo Levitt, 126:6-10). Further still, Dr. Rosamond's 2009 letter to the Court stated that Vioxx contributed to Plaintiff Jo Levitt's "aggressive coronary artery presentation."

The examples of Merck's knowledge of Plaintiff's claim of heart disease continue: Dr. Shapira's report (which Merck argues was the lynchpin of Plaintiff's causation evidence) states: "Vioxx was a significant factor in the causation of her clinical <u>coronary artery disease</u> highlighted by her presentation with acute coronary syndrome, severe lesions in the left anterior

---

[2] The public policy behind signature verification for discovery responses is to ensure that the party, not the attorney, is the ultimate source of the information.  The issue of "verification" is not really a concern here because Plaintiff was Pro Se and the information clearly came from her.  Moreover, Defendant verified the provided information in its interrogation of her during her *pro se* deposition.  (**Exhibit A**, Deposition of Jo Levit, Pp. 81-131.)   To be sure, if at any time Defendants had any objections to Plaintiff's Supplemental PPF they should have filed a motion with this Court demanding a signature.

descending artery. . ." Thus, Dr. Shapira's own report put Merck on notice of Plaintiff Jo Levitt's heart disease. The report by Dr. Shapira, which Merck argues is the <u>only</u> causation opinion available to prove Jo Levitt's case, only mentions heart attacks once. The report is similarly reflective of Plaintiff's heart disease.

Throughout these multiple examples one thing remains clear: Plaintiff's Opposition to Merck's Motion for Summary Judgment is not the first time Merck was presented with the fact of her heart *disease*, and not just heart attacks, contrary to Merck's Reply arguments. Merck should not be permitted to feign surprise when it has been on notice for years.

### 1.    Plaintiff's Complaint Satisfies Federal Notice Pleading

Under the "notice pleading" requirements of federal court, the complaint is only required to contain a short and plain statement showing an entitlement to relief. *See* Rule 8(a)(2), Federal Rules of Civil Procedure.  It is the facts plead, not the legal theories or legal conclusions identified, that give the defendant notice of the claims being asserted. *See Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999).  "A pleader does not have to set forth legal theories and even an incorrect legal theory is not essentially fatal to the pleader."  *Sharbine v. Boone Exploration, Inc.*, No. 09-CV-1025, 2010 WL 892117 at *5 (W.D. Ark. March 9, 2010) (citing *Crull v. GEM Ins. Co.*, 58 F.3d 1386 (9th Cir. 1995) and *Williams v. Seniff,* 342 F.3d 774 (7th Cir. 2003)).

Merck's flagrant citations to outdated, overruled, and unpublished case law shows how clearly against the law its position really is.  Merck first cites to *Cutrera v. Bd. Of Supervisors of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005) for the proposition that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." However, in so stating, the Court was discussing an entirely separate claim. In *Cutrera*, the District Court had granted summary judgment on the plaintiff's §

1983 claim. In her opposition to the defendant's motion for summary judgment, the plaintiff raised for the first time a separate First Amendment retaliation claim. The Court held that this was improper. This holding is clearly distinguishable from both the case at bar, and from the proposition which Merck cites this case to support. Jo Levitt is not seeking to insert an entirely new claim.  If anything, she is merely providing a more descriptive explanation of her injuries versus a generic reference to the term "heart attack".

Next, Merck cites to *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. Ap'x 200 (5th Cir. 2012) for the argument that this Court should not permit Ms. Levitt to "allege a different injury." However, this unpublished Fifth Circuit opinion once again surrounds the dismissal of legal theories, claims, or actual counts which were not described with any particularity in the complaint. While in *Cutrera* it was a First Amendement retaliation claim, in *De Franceschi* the Court dismissed theories of breach of contract and wrongful disclosure. Here, as explained already above, Ms. Levitt is not seeking to interject an entirely new theory or claim, but merely to expand the description of her injury. Neither *De Franceschi* nor *Cutrera* stand for the proposition that a civil litigant is prevented from re-alleging and re-specifying their injury allegations in a response to a motion for summary judgment.

Lastly, Merck cites to *Offshore Marine Contractors, Inc. v. Palm Energy Offshore LLC*, 2012 WL 6161937 (E.D. La. Dec. 11, 2012). While Merck wishes this Court to believe that *Offshore* "refus[ed] to allow new injury to be specified in opposition to summary judgment," the facts of the case do not support Merck's present argument. There, after realizing that the third-party Defendant (the movant for summary judgment) had no connection to the oil wells forming the basis of the case, the opposing party (the defendant in the underlying suit) then changed its tune and discussed events which occurred at a completely separate set of oil wells, which the

third-party defendant had also worked on. The Court found that since the opposing party did not raise any issues involving these new oil wells in its complaint, this new set of facts was improperly before the court. It is therefore clear that *Offshore* is also distinguishable.

As set forth above, Ms. Levitt is not claiming a completely new set of facts or injuries, such as a stroke or diabetic attack. Her alleged injuries all arise out of the exact time frame and events which were set forth in her original complaint, her subsequent discovery responses and her depositions testimony.  The technical, if not semantic, distinctions between heart attack, coronary artery disease, cardiovascular disease, tissue death and the like should be left for the experts and treating physicians to articulate.  Defendants can hardly claim surprise or that they lacked sufficient notice of the nature of the claims being asserted.

### 2.    Merck Has Acquiesced To Plaintiff's Claimed Injuries

As explained in the very precedent cited by Merck, *Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.,* 117 F.3d 180, 193-94 (5th Cir. 1997), pursuant to Federal Rule 15(b), "if issues not raised by the pleadings"—the equivalent of 'notice'—are tried instead by 'express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.'"  Here, it is clear that notice of Jo Levitt's coronary heart disease was given to Merck years before the present Motion for Summary Judgment.

Merck attempts to convince the Court that Plaintiff's Opposition to Merck's Motion for Summary Judgment on May 19th was the first time Merck was ever made aware of Plaintiff's contention that Vioxx has caused her to suffer coronary heart disease.  The amended PPF referenced above which alleged "aggressive heart disease" was provided to Merck on September 28, 2009.  This was the same time that Dr. Rsamond's letter, which stated that Vioxx contributed

to Plaintiff Jo Levitt's "aggressive coronary artery presentation," was produced.[3]   Further, Plaintiff's deposition testimony on July 23, 2012 was exactly consistent with the information provided in her Supplemental PPF – that she had "aggressive heart disease" which she believed was caused by Vioxx.  (Exhibit A, Deposition of Jo Levitt, 126:6-10). Plaintiff's also direct the Court's attention that Defendant never filed any objections or moved to strike the portions of Dr. Schapira's expert report which set forth opinions consistent with Plaintiff's claim of "aggressive heart disease."

Furthermore, the 5th Circuit has applied Rule 15(b) at the summary judgment stage. *See United States ex rel. Canion v. Randall & Blake,* 817 F.2d 1188, 1193 (5th Cir.1987). Thus, when "both parties squarely address[ ] [a claim] in their summary judgment briefs," it may be argued that the complaint was constructively amended. *Handzlik v. United States*, 93 F. App'x 15, 17 (5th Cir. 2004), *citing Whitaker v. T.J. Snow Co.,* 151 F.3d 661, 663 (7th Cir.1998).

### 3.    Alternatively, Plaintiff Seeks Leave to Amend under F.R.C.P. 16(b)

Defendant Merck's argument to this Court is based upon a mere technicality—that Jo Levitt has not specifically alleged an injury of heart *disease*, and has instead pled heart *attacks*. Merck argues that Ms. Levitt cannot now amend her complaint to specifically allege her injury of heart disease. As shown above, Merck has impliedly consented to Ms. Levitt's claims of heart disease under Federal Rule 15(b). However, should this Court hold otherwise, Plaintiff respectfully requests that this Court alternatively grant her leave to file an Amended Complaint under Rule 16(b) to more specifically allege her injuries. The 5th Circuit has explained that Rule 16(b) governs the amendment of pleadings after a scheduling order deadline has expired. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).

---

[3]  Plaintiff's Supplemental PPF, Plaintiff's Deposition and the submission of Dr. Rosamond's letter were all provided before Plaintiff ever retained expert witnesses who could provide expert analysis of her injuries and claims. Moreover, they were all provided during the time in which Plaintiff was acting *pro se*.

**B.** **Plaintiff Is Not Required To Obtain A Report From Dr. Rosamond**

Dr. Rosamond was Plaintiff's treating cardiologist during the period when her cardiovascular disease presented. Plaintiff adequately disclosed Dr. Rosamond in her Rule 26 disclosure, which explained "it is expected that [her treating physicians] will testify on the subject of Jo Levitt's medical condition, medical care, and/or medical treatment. It is expected that their testimony will be consistent with their records."

Pursuant to Rule 26(a)(2)(B), Dr. Rosamond is qualified and permitted to testify on causation in this matter. A party is only required to obtain a written report from a treating physician if that physician was "retained or specially employed to provide expert testimony." *Fielden v. CSX Transp., Inc.,* 482 F.3d 866, 869 (6th Cir. 2007). At the time he wrote his letter, Plaintiff had not retained or employed Dr. Rosamond in any way. The same is true as of the date of Plaintiff's expert disclosures.

As a U.S. Magistrate Judge explained in allowing causation testimony without a treating physician's prior expert report:

> It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries. *See McCloughan [v. City of Springfield],* 208 F.R.D. 236, 242 [ (C.D.Ill.2002) ] ("doctors do not operate in a vacuum.... Thus, the [c]ourt believes causation, diagnosis, and prognosis would be based on the treating physician's personal knowledge...."). As such, a physician "whose proposed opinion testimony will come from his knowledge acquired as a treating physician, is *not* someone from whom a Rule 26(a)(2)(B) report is required." *Sircher v. City of Chicago,* 1999 WL 569568, *2 (N.D.Ill.1999) (emphasis in original).

*Martin v. CSX Transp., Inc.,* 215 F.R.D. 554, 557 (S.D.Ind.2003); *see also Mackey v. Burlington N. Santa Fe Ry. Co.,* No. 05-4133-SAC, 2006 WL 3512958, at *2 (D.Kan. Nov.29, 2006) (permitting a treating physician to testify as to causation "to the limited extent that opinions

about the cause of an injury are a necessary part of the patient's treatment" (quoting *Starling v. Union Pacific,* 203 F.R.D. 468, 479 (D.Kan.2001))); *Prater v. Consolidated Rail Corp.,*272 F.Supp.2d 706, 712 (N.D.Ohio 2003).

The Rule 26 Advisory Committee Notes also support the conclusion that Plaintiff did not need to file an expert report from Dr. Rosamond, to wit: "[a] treating physician ... can be deposed or called to testify at trial without any requirement for a written report." Fed.R.Civ.P. 26(a), cmt. 1993 Amendments, subdivision (a), para. (2).  Dr. Rosamond is expected to testify within a "permissive core" on issues pertaining to his treatment of Plaintiff Jo Levitt, based on what he learned through actual treatment and from Plaintiff's records. *Fielden*, 482 F.3d at 869.

Merck cites to *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804 (6th Cir. 2005) for the proposition that any opinion by Dr. Rosamond which is based on information obtained after his treatment of Ms. Levitt cannot be characterized as a treating physician opinion. To begin, *Mohney* is an <u>unpublished</u> 6th Circuit opinion, and thus not binding on this Court. Furthermore, *Mohney* has been overruled by statute, as Rule 26 was amended five years after *Mohney* was issued.

In *Wilson v. Hill*, 2:08-CV-552, 2012 WL 1068174 (S.D. Ohio Mar. 29, 2012), the plaintiff attempted to rely on *Mohney* "for the proposition that, to the extent a treating physician expresses a causation opinion articulated outside the scope of treatment, that physician must produce the report of a specially retained expert." The *Wilson* Court found it significant that *Mohney* predated the 2010 amendments to Rule 26, which, added subsection (a)(2)(C) and in fact clarified that a **treating physician is not required to produce the detailed report required of a specially retained expert**. The *Wilson* Court therefore declined to apply *Mohney*. This Court should do the same.

The only other case cited by Merck in support of its assertion that Dr. Rosamond was required to provide a formal Rule 26(a)(2)(b)-compliant expert report is readily distinguishable and does nothing but hurt their argument. In *Benoit v. Nintendo of Am., Inc.*, CIV. A. 01-674, 2001 WL 1524510 (E.D. La. Nov. 28, 2001) the Court discussed that Local Rule 26.3E provides that disclosures under Rule 26 shall be directed by the court in the order issued after the preliminary conference. In *Benoit*, the Court's order provided that all treating physicians were to be treated like experts for report and discovery purposes, and written expert reports were required. Accordingly, under the scheduling order, the Plaintiff's treating physician was to be treated as an expert witness and was required to submit an expert report.  Here, no such scheduling order was entered. As such, no expert report from Dr. Rosamond was mandated under Rule 26(a)(2)(b).

### C.  Dr. Rosamond's Letter Satisfies the Expert Report Requirement

Treating physicians have traditionally been exempt from Rule 26 reporting requirements for expert witnesses. *Boudreaux v. Ace Am. Ins. Co., CIV.A. 11-1213*, 2013 WL 3440027, at *3 (E.D. La. July 9, 2013). The exemption for treating physicians from Rule 26's reporting requirements is "based on Congress's effort in Rule 26 'to balance the fulsome and efficient disclosure of expert opinions with a concern that reports should not be required in all situations." *Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.,* 73 Fed. R. Serv. 3d 252 at *4(E.D. La. 2009), citing *Boudreaux v. J.P. Morgan Chase & Co.,* 2007 WL 4162908, *2 (E.D.La. Nov.21,2007). This reporting requirement distinction between retained experts and treating physicians reflects the drafters' concern "about the resources that might be diverted from patient care if treating physicians were required to issue expert reports as a precondition to testifying." *Id.* (internal citations omitted).

9

In 2010 the Federal Rules were amended, in part changing the Rule 26 report requirements. *Boudreaux,* 2005 WL 2060905 at *3. These notes do not require expert reports from treating physicians, but the notes to Rule 26(a)(2)(C) mandate that a witness who does not provide a written report must provide a disclosure that states: (i) the subject matter on which the witness is expected to give under FRE 702, 703, or 705; and (ii) a summary of facts and opinions to which the witness is expected to testify. FED.R.CIV.P. 26(a)(2)(C) Advisory Committee Note.

Even if the Court were inclined to entertain Defendant's stilted arguments, Merck seems to ignore the fact that Dr. Rosamond provided a written account setting forth his opinions; the basis for those opinions; the facts and data relied upon in reaching those opinions. This letter sets forth the subject matter on which he is expected to testify, and a summary of his facts and opinions. Merck chose not to depose Dr. Rosamond for obvious and strategic purposes.

**D.    Merck's Reply in Support of its Motion for Summary Judgment is a Premature *Daubert* Challenge**

Merck next tries to strike Dr. Egilman's entire causation opinion in "one fell swoop" without even bothering to depose him.   The proper procedure for Merck to challenge the causation opinion of Dr. Egilman would be through an appropriate *Daubert* challenge. Instead, Merck has brought a motion for summary judgment, seeking to disqualify Dr. Egilman as a witness before it has even heard his opinion.  "At the junction where *Daubert* intersects with summary judgment practice, *Daubert* is accessible, but courts must be cautious—except when defects are obvious on the face of a proffer—not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility." *Cortes-Irizarry v. Corporacion Insular De Seguros,* 111 F.3d 184, 188 (1st Cir. 1997); citing Margaret A. Berger, *Procedural Paradigms for Applying the Daubert Test,* 78 Minn. L.Rev. 1345, 1379–80, 1381 (1994). "Because the summary judgment process does not conform well to the

discipline that *Daubert* imposes, the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage." *Cortes-Irizarry, supra,* 111 F.3d at 188.

Here, the parties have not had a full opportunity nor the incentives to develop an adequate record on Dr. Egilman's opinions during the discovery phase, as Merck has chosen not to depose him. As such, disqualifying his causation opinion before it has even been heard is a premature and drastic decision.

E.      **Dr. Egilmann's Report Satisfies Rule 26**

To the extent this Court is inclined to humor Defendant's premature foray into Daubert analysis, Plaintiff directs the Court's attention to the fact that Dr. Egilman's report satisfies the requirements mandated by Federal Rule 26 and in fact comports with the very precedent cited by Merck.

In arguing that Dr. Egilman has failed to rule out other causes of Ms. Levitt's heart disease, Merck cites to *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 804 (E.D. La. 2011). There, the defendants made a similar argument—that the plaintiffs' expert opinions failed to adequately deal with the possibility that the injury was due to an alternative cause or simply to an unknown cause. **The Court did not find this suggestion persuasive.** The Court explained that "if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony." *Id.*, citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001). However, "a medical expert need not 'rule out every possible alternative cause of a plaintiff's illness.'" *Id*. The *Wagoner* Court found persuasive the deposition testimony of the plaintiffs' experts which elaborated on their opinions as to specific causation, and concluded that the plaintiffs' experts had not "utterly failed" to consider the possibility of alternative causes or

of an unknown cause, and thus, their opinions on specific causation were therefore not unreliable.[4]

So too here should this Court find that while Dr. Egilman's report did not rule out every possible alternative cause of Ms. Levitt's coronary artery disease, Dr. Egilman also did not utterly fail to consider the possibility of alternative causes. Indeed, Dr. Egilman's report contains a lengthy differential diagnosis which considers seventeen (17) different causes, including atherosclerosis, diabetes, hypertension, myocarditis, age, gender, and other factors. Dr. Egilman ruled out several causes such as central nervous system diseases, endocrine disorders, and drug-related disorders.

While Merck claims that Dr. Egilman's report "entirely ignores the family history of coronary artery disease," to the contrary, Dr. Egilman's report actually states on page 53 that: "Ms. Levitt had hyperlipidemia, history of smoking, family history of coronary artery disease, and hypertension. . . . All of these contributed to her cardiac disease and subsequent treatment. . . . All of the risk factors increased the contribution of Vioxx to the absolute and relative risk of Mrs. Levitt's developing Acute Coronary Syndrome (ACS)."

As such, Dr. Egilman's report clearly "rules out" the very things Merck seeks to convince this Court that his report is lacking. Contrary to "utterly failing" to consider the possibility of alternative causes of Ms. Levitt's heart disease, Dr. Egilman has in fact provided a lengthy and more than sufficient differential diagnoses. Merck's Motion for Summary Judgment must be denied.

---

[4] Plaintiff reminds the Court that Dr. Egilman has yet to be deposed due to Defendant's own request to stay the litigation.

### F.    Plaintiff Seeks Leave to Re-Designate Dr. Schapira

There are financial and strategic decisions that go into the decision of retaining an expert. As the court is aware, Plaintiff's counsel has been in a unique situation in this case.  Counsel has inherited a case that has been handled by two prior firms at two separate times.  There were long and significant stretches wherein Plaintiff acted *pro se*.  Counsel has done his best to catch this case up to speed and move this case toward a resolution.

As part of his ongoing strategic analysis, Plaintiff's counsel considered Dr. Schapira's continued involvement in the case unnecessary in light of Dr. Egilman's opinions when combined with Dr. Rosamond's.  Expert witnesses can be extremely expensive in cases such as this.  To the extent this Court is in any way inclined to agree with any of Defendant's half-hearted attempts to avoid adjudication on the merits, Plaintiff respectfully requests permission to re-designate Dr. Schapira.

No prejudice will befall any of the parties.  Within weeks of withdrawing Dr. Schapira, Defendant filed a Motion for Summary Judgment and obtained an Order staying the litigation. Plaintiff's other primary witness, Dr. Egilman, has still not been deposed.  Defendant's sole witness, Dr. Pratt, has also not been deposed.

## II.    CONCLUSION

In its initial Motion for Summary Judgment, Merck tried to argue that a genuine issue of material fact somehow ceased to exist because Plaintiff had withdrawn her designation of Dr. Schapira as a retained expert.  Defendant's motion consisted mainly of irrelevant references to Plaintiff's medical records and inaccurate representations regarding her personal health.  The two-paragraph "argument" portion of Defendant's motion was markedly scant on actual analysis to say the least.

13

In response, Plaintiff pointed out the fact that Plaintiff's treating cardiologist had authored a letter/report which specifically established causation and a material fact. Defendant's then filed a reply which set forth a multitude of misguided arguments which are "supported" by legal fallacies, unpublished opinions and bald case citations with absolutely no germane analysis or context.

Defendant has now tried to feign surprise that Plaintiff is claiming coronary artery disease and cardiovascular disease as a result of taking Vioxx. False. Defendant has tried to argue that Plaintiff has not properly disclosed Dr. Rosamond. False. Defendant has tried to argue that Plaintiff is now changing her entire theory of recovery. False. Defendant has tried to argue that Dr. Rosamond is required to submit a new report based on some convoluted interpretation of an out-of-date 6th Circuit case. False. Defendant has tried to argue that Dr. Egillman's report does not satisfy Rule 26. False.

In short, Defendant has tried to every procedural loophole imaginable to avoid adjudication on the merits. Plaintiff has been through hell and back trying to keep her case moving as a *pro se* litigant. Plaintiff's counsel has done his best to get caught up on this case's extensive litigation history and the nuances of this litigation in general. Defendant has absolutely no right to avoid responsibility because Plaintiff's original attorneys pled "heart attack" versus "heart disease". Plaintiff has met her pleading, discovery, evidentiary and expert disclosure requirements. As such, she deserves to have her day in Court.

Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**


/s/ Daniel A. Thomas

Kenneth B. McClain                    MO #32430
Daniel A. Thomas                      MO #52030
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Sur Reply in Opposition to Defendant Merck's Motion for Summary Judgment** has been served on Defense Counsel, Jonathan Williams, and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 30th day of May, 2014.

/s/ Daniel A. Thomas
Kenneth B. McClain                 MO #32430
Daniel A. Thomas                   MO #52030
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**