UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * KNOWLES |
| 2:06-cv-09757-EEF-DEK | * |
| | * |

******************************************************************************

**DEFENDANT MERCK SHARP & DOHME CORP.'S RESPONSE TO
PLAINTIFF'S SUR-REPLY OPPOSING SUMMARY JUDGMENT**

Vioxx litigation has been proceeding in this Court for more than nine years, including Ms. Levitt's case for almost eight of those years. Although Ms. Levitt's current counsel has previously represented dozens of clients in the MDL, they entered an appearance in her case only in July 2013.[1] By that time, there had already been significant discovery and related activities in the case. Yet, Ms. Levitt's counsel is essentially trying to start over, particularly in its various assertions and requests presented in Plaintiff's sur-reply brief. But, it is far too late to re-write history. Merck has presented a meritorious motion for summary judgment that should be granted. In support of its motion, Merck further states as follows:

1. Merck voluntarily withdrew Vioxx from the market on September 30, 2004, based on preliminary data from one of its ongoing clinical trials—the APPROVe study—that

---

[1] This is Mrs. Levitt's third set of counsel. She was also represented by counsel from September 2006 (when she filed her Complaint) until March 2008 and from March 2010 until January 2012. (Rec. Docs. 13617, 37496, 63618.)

showed an increased occurrence of heart attacks after 18 months of use in the Vioxx arm of the trial. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2014 WL 3093501, at *1 (E.D. La. July 7, 2014) (Fallon, J.).

2. Throughout this litigation, the tens of thousands of claims have been categorized into two broad groups – one group containing plaintiffs alleging MI (or heart attacks), stroke, and sudden cardiac death ("SCD"), and the second group containing all alleged "other injuries." *See, e.g.,* PTO No. 18; PTO No. 28; November 2007 Settlement Agreement; PTO No. 58.[2] Ms. Levitt's claim has always been presented as a heart attack case. Although there may have been times where additional descriptors tagged along with her heart attack allegations, the primary claim was always heart attack:

- That is what she alleged in her initial complaint. *See* Compl. ¶ 36 ("As a direct and proximate result of Plaintiff's ingestion of Vioxx, Plaintiff suffered heart attacks in March 2001 and June 2001.").

- That is what she alleged in her first Plaintiff Profile Form in 2007. Notably *only* plaintiffs who alleged MI, stroke or SCD were supposed to complete the initial PPF. *See* PTO No. 18, at 1. Ms. Levitt submitted her completed profile form on or about March 12, 2007. She answered "Heart attacks" in response to the question regarding "your understanding of the bodily injury you claim resulted from your use of Vioxx." See Merck MSJ, Ex. E at p. 2 § C.1.a.

- Later that year, she renewed that allegation in response to a deficiency letter regarding her PPF. She was asked to identify the "number of heart attacks you claim occurred," and she responded "Two (one in March 2000 and another in June 2000)." *See* Deficiency Response verified by Ms. Levitt on October 18, 2007 (attached as Exhibit A).

- She continued to characterize her alleged injury as one involving heart attacks in the 2009 Amended PPF that she submitted. Specifically, she identified her alleged injuries as "ASC/MI … stents" and "ASC/MI CABG." Pl. Opp'n, Ex. A.

---

[2] PTO No. 58 further split the "Other Injury" group into "VTE" and "Other Injury." But Ms. Levitt has never alleged a VTE, and on the exhibits to PTO No. 58, she continued to be listed in the category that included "MI" injuries.

- She continued to characterize her alleged injury as an MI in February 2013 when she asked the Court to require Merck to admit that "Vioxx was more likely than not the cause of my MI." (Rec. Doc. 64276-1, at 2).

- When she submitted expert reports in December 2013, she asked her experts to proffer opinions based on the assumption that she had suffered a heart attack. For instance, the report of her vocational rehabilitation expert, Terry L. Cordray summarizes several interviews he had with Ms. Levitt where she continued to refer to her alleged injuries as heart attacks. "Ms. Levitt is currently involved in litigation with Merck over her loss of ability to perform her usual occupation as a business owner subsequent to heart attacks and damage after taking the medication, Vioxx." Merck Reply, Ex. A, at 1.

3. Until faced with Merck's motion for summary judgment, Ms. Levitt at no point indicated that she had abandoned her claimed injury of heart attacks, and was instead proceeding with a claim of exacerbated cardiovascular disease.

4. Substantial precedent holds that a plaintiff cannot simply ignore the injury actually alleged in her complaint, as the fundamental purpose of a complaint is "to ensure that the defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense." *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (internal quotation marks omitted). For this reason, the Fifth Circuit refused to allow presentation of a new theory in response to a motion for summary judgment in *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200 (5th Cir. 2012). The court explained, "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.' Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Id.* at 204 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009)).[3] The only injury listed in Ms. Levitt's Complaint is "heart attacks." Compl. ¶ 36.

---

[3] Although Plaintiff characterizes Merck's argument as "flagrant citations to outdated, overruled, and unpublished case law," she cites no contrary authority.

3

5.      After multiple years of litigation, Ms. Levitt cannot now substitute a claim of "exacerbation of heart disease" for her original claim of heart attacks.[4] At this very late state of the proceedings, Merck would be significantly prejudiced by allowing this change in Plaintiff's fundamental theory of the case. This entire case has been litigated, discovery conducted, and experts designated based on an alleged heart attack injury. Merck would have conducted substantially different fact and expert discovery had Ms. Levitt indicated that she was alleging increased cardiovascular disease as an independent injury rather than asserting claims based on an alleged heart attack.[5]

6.      A claim regarding the general state of Ms. Levitt's cardiovascular health necessitates a broader range of discovery into her medical history. As an initial matter, prior to taking Vioxx, Ms. Levitt had several substantial risk factors for cardiovascular disease, a disease that is known to be inherently progressive. *See* Merck MSJ at 3–4 and exhibits cited therein. For instance, as documented in her medical records, she had an extensive family history of cardiac issues which included heart disease in both her mother and father, widespread coronary artery disease in her mother's family, a father with cardiac arrhythmia, a maternal grandmother who had a stroke, and a mother with diabetes. *Id.* Her personal medical history included documented high cholesterol and hypertension, and she was former smoker with a 50-

---

[4] "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also De Franceschi*, 477 F. App'x at 204; *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F. Supp. 2d 866, 873, at *4 (N.D. Tex. 2013); *Hotard Coaches, Inc. v. Caterpillar, Inc.*, Civ. A. No. 3:11–cv–00488–BAJ–RLB, 2013 WL 5327664, at *5 (E.D. La. Sept. 20, 2013); *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, Civ. A. No. 10-4151, 2012 WL 6161937, at *3 (E.D. La. Dec. 11, 2012).

[5] As this Court is aware, in this litigation, the alleged causal link between Vioxx usage and MI events has primarily focused on clots and the mechanism of action for thrombotic events. Generic cardiovascular events encompasses for more than that.

year pack history.  *Id.*; *see also* Merck MSJ, Ex. H (scientific evidence shows that even former smokers who had quit for 20 or more years remained at an increased cardiovascular risk level—potentially as high as 22%).

7.      Moreover, according to medical records, Ms. Levitt experienced numerous episodes throughout her Vioxx usage (including during the years she continued to take Vioxx after receiving her stents and a CABG), and thereafter, which she initially appeared to believe were cardiovascular issues, but were ultimately determined to be something else, and which were generally attributed to other (non-cardiac) conditions with which Ms. Levitt had been diagnosed and received treatment, including an anxiety condition and her fibromyalgia.  *See* Merck MSJ at 5–6 and exhibits cited therein.  For instance, in the latter part of the year 2000, Ms. Levitt made two more visits to the hospital reporting various cardiac symptoms, but on each occasion her doctors concluded that the symptoms were "unlikely cardiac in etiology," "more likely to be nonspecific musculoskeletal complaints," or "panic anxiety episodes."  *Id.*

8.      If the focus of this case were Ms. Levitt's general cardiac health, as opposed to the two alleged acute events in March and May 2000, then discovery as to the numerous health care providers who saw Ms. Levitt over a 20+ year period would be necessary.  Likewise, additional expert opinions would likely be necessary regarding the other significant conditions that Ms. Levitt experienced, such as her fibromyalgia and longstanding depression and anxiety, that would appear to have generated symptoms that could erroneously be characterized as exacerbated cardiovascular disease.  Conversely, a more specific alleged injury can be sufficiently investigated with narrower and more focused discovery—which is what occurred here.

9. For the first time, in her sur-reply to Merck's motion for summary judgment, Plaintiff purports to seek leave to amend her complaint under Rule 16(b).[6] To amend consistent with Rule 16(b), Plaintiff must show that she could not have timely amended her complaint to allege heart disease. *See S&W Enters, LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). Tardy requests for leave to amend are particularly disfavored when they appear calculated to avoid a meritorious motion for summary judgment. *See, e.g.*, *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 & n.2 (5th Cir. 1992).[7]

10. *Little* aptly illustrates why amendment is inappropriate here. In *Little*, the plaintiffs sought damages related to the death of two individuals who died after one lit a cigarette in the presence of propylene gas that he could not smell. Originally, the plaintiffs' causation theory was that the odorizing agent in the gas had oxidized. *Id.* at 846. In response to the defendant's motion for summary judgment, Plaintiff changed her theory to failing to warn about "nasal fatigue" to the oxidizing agent. *Id.* The Fifth Circuit affirmed the decision to deny leave to amend, even though the case had been pending less than two years. *Id.* Discovery had closed, the defendant had moved for summary judgment, and the plaintiffs "offered no evidence that their delay in filing the motions for leave to amend was excusable or a result of mere oversight." *Id.*

---

[6] Rule 16(b) does not allow amendment of a complaint. Rather, Rule 16(b) applies a heightened standard for a party that wishes to file an untimely motion to amend under Rule 15(a).

[7] *See also Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) ("To grant [the plaintiff] leave to amend [in response to a motion for summary judgment] is potentially to undermine the [defendant's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint."); *Hunsinger v. Sko Brenner Am., Inc.*, Civ. A. No. 3:13-CV-0988-D, 2014 WL 1462433, at *14 (N.D. Tex. Apr. 15, 2014) (observing that "[w]hen leave to amend is sought after a summary judgment motion has been filed, courts routinely decline to permit the moving party to amend").

1164217v1

11. Likewise, Ms. Levitt cannot meet the excusable neglect standard, and, as in *Little*, she has not attempted to do so. As late as February 2013, Ms. Levitt reiterated that her claimed injury was a heart attack. (Rec. Doc. 64276-1, at 2.) Ms. Levitt's request to amend should be seen for what it is: an untimely attempt to avoid summary judgment once it became clear she lacks sufficient evidence to show she experienced a heart attack, Vioxx-induced or otherwise. Moreover, for the reasons noted above, amendment at this late date would significantly prejudice Merck and further delay resolution of this case. The Court can and should deny the request for leave to amend.

12. Finally, as another ground for denying the pending summary judgment motion, plaintiff makes the astonishing request that she be allowed to *re-designate* Dr. Schapira as an expert. Such a request makes a mockery of the entire discovery process and the Federal Rules of Civil Procedure. The event that ultimately triggered the filing of this motion was Plaintiff's unexplained withdrawal of Dr. Schapira as an expert and subsequent refusal to provide any insight into plans for proving up causation. *See, e.g.*, Merck MSJ. at 1, 7–8 & n.8 and exhibits cited therein. Many months later, after the preparation and filing of a motion for summary judgment, and after full briefing, additional supplemental briefing, and the attendant expenditure of time, expenses and other resources, for plaintiff to attempt to re-write that history and baldly assert that Merck would not be prejudiced in doing so, ignores reality and/or evidences a disrespect or disregard for the time and resources other parties and the court system. Plaintiff's request should be denied.[8]

---

[8] *See Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (affirming summary judgment after exclusion of late-designated expert as untimely); *see also Con. Env. Mgmt., Inc. v. Zen-Noh Grain Corp.*, 981 F. Supp. 2d 523, 536 (E.D. La. 2013) (Vance, J.) (observing that "the Fifth Circuit has routinely upheld the exclusion of important or

7

13.  In sum, for the foregoing reasons, and the reasons set forth in Merck's prior Memorandum and Reply Memorandum submitted in support of its motion for summary judgment, all of Plaintiff's arguments opposing summary judgment and related last minute requests should be rejected and summary judgment should be granted in Merck's favor.[9]

Dated: July 21, 2014

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
M. Elaine Horn
Jonathan L. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

---

even vital testimony where other considerations weigh in favor of exclusion" and collecting cases in support).

[9] If the Court declines to grant Merck's summary judgment motion at this time, Merck respectfully requests that the Court consider appropriate sanctions or other measures for the delay and expense Plaintiff's withdrawal and attempted re-designation of Dr. Schapira and related actions have caused; and Merck requests an opportunity to be heard on that issue.

8

1164217v1

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Response to Plaintiff's Sur-Reply Opposing Summary Judgment has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 21st day of July, 2014.

/s/ *Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:    504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel