# ADMINISTRATIVE AGREEMENT

This Administrative Agreement ("Agreement") is entered into by and between: (a) BrownGreer PLC, a Virginia professional limited liability company located at 250 Rocketts Way, Richmond, VA 23231 ("BrownGreer"); and (b) the Parties to the Settlement Agreement referred to in Section 1.01.  In consideration of the mutual promises and obligations set out in this Agreement, the parties to this Agreement agree as follows.

# I.  BACKGROUND RECITALS

**1.01** *Settlement Agreement.*  In July 2013, Sherrill Herke, on behalf of herself and as Representative of the Class ("Plaintiff"), by and through Class Counsel ("Class Counsel"), and Merck Sharp & Dohme, Corp. f/k/a Merck & Co., Inc. ("Merck", and collectively with Plaintiff and Class Counsel, the "Parties"), entered into the Settlement Agreement Related to Consumer Class Actions (the "Settlement Agreement") which established the Vioxx Resolution Program (the "Program") to resolve consumer economic injury claims relating to Vioxx.

**1.02** *Purpose of this Agreement.*  The Parties are retaining the services of BrownGreer to perform the role of Claims Administrator under the Settlement Agreement and BrownGreer agrees to perform those functions.

# II.  DEFINITIONS

**2.01** *Incorporation of Definitions in the Settlement Agreement.*  All capitalized terms used in this Agreement have the meanings ascribed to them in the Settlement Agreement unless a different definition is set forth in this Agreement.

**2.02** *Agreement*  means this Administrative Agreement, as it may be amended from time to time in accordance with the terms hereof.

**2.03** *BrownGreer Confidential Information* has the meaning given it in Section 4.04(a) of this Agreement.

**2.04** *Legal Demand* has the meaning given it in Section 4.04(d) of this Agreement.

**2.05** *Services* has the meaning given it in Section 3.01 of this Agreement.

**2.06** *Settlement Agreement* has the meaning given it in Section 1.01 of this Agreement.

**2.07** *Term* has the meaning given it in Section 4.01 of this Agreement.

# EXHIBIT 1

### III.  SERVICES AND COMPENSATION; DUTIES OF BROWNGREER

**3.01   *Services and Compensation*.**  BrownGreer shall provide all services necessary to perform the role of the Claims Administrator under and in accordance with the Settlement Agreement and such other services, if any, as the parties to this Agreement, from time to time, mutually agree in writing (collectively, the "Services").  BrownGreer will minimize out of pocket expenses whenever possible and assign appropriate levels of ability and experience for Services performed.  For the Services, BrownGreer will be paid for fees for actual time incurred at the rates shown in the billing rate schedule attached to this Agreement as Exhibit A, up to a maximum of $1,500,000 in fees (excluding out of pocket expenses), and reimbursed for reasonable out of pocket expenses incurred in connection with the Services, in each case by the Parties from the Common Fund pursuant to Sections 2.5 and 10.5 of the Settlement Agreement.

**3.02   *No Attorney-Client Relationship.*** While the principals of BrownGreer and some of its employees are attorneys licensed to practice law in the Commonwealth of Virginia and other jurisdictions and BrownGreer has legal expertise and experience that improve its ability to provide the Services, BrownGreer shall not have an attorney-client relationship with any of the Parties or any claimants under the Settlement Agreement.  Instead, BrownGreer shall act in a fiduciary capacity as the neutral Claims Administrator.

**3.03   *Billing and Reimbursement of Fees and Expenses*.**  Beginning the first full month after execution of this Agreement, BrownGreer shall submit monthly invoices to the Parties identifying its fees and expenses incurred during the preceding calendar month.  The Parties shall note any objection to such fees and expenses after receipt of each invoice.  On a quarterly basis, the Parties will jointly move for the Court's approval of all fees and expenses to which no Party objections remain outstanding.  Following Court approval of invoiced fees and expenses, the Parties will take the steps required to effectuate payment to BrownGreer from the Common Fund.  Pursuant to Section 10.5 of the Settlement Agreement, Merck shall have the right to approve in advance a budget for administrative expenses (other than costs of the class notice), which shall be subject to Court approval.

**3.04   *Services for Other Clients*.**  BrownGreer shall allocate sufficient resources to fulfill the requirements of this Agreement.  BrownGreer's obligations under this Agreement, however, shall not prevent or prohibit BrownGreer from providing services to other clients; *provided*, *however*, that BrownGreer agrees that none of its other obligations shall interfere in any way, or pose any conflict, with its ability to discharge any of its obligations set forth in this Agreement.

**3.05   *Access to Records and Facilities*.**  Upon reasonable notice, BrownGreer shall permit reasonable access to the Parties and their authorized agents, attorneys and/or representatives during normal working hours to the records and facilities used to provide the Services, for the purpose of reviewing and/or auditing BrownGreer's processes, procedures and work.

**3.06   *Disaster Recovery Plan.***  BrownGreer shall maintain a current written disaster recovery plan to protect the data, records and files it receives or generates in performing the Services and to permit the prompt resumption of Services in the event of a disaster.  The disaster

2

recovery plan (and any updates thereto) shall provide, without limitation, for a "hot" backup site (with computer systems and backups of data), incremental backups of data (daily and weekly), and storage of original documents in secure locations.

**3.07** *Settlement Agreement.* By signing this Agreement, BrownGreer agrees to be bound by, perform and comply with all the terms of the Settlement Agreement as applicable to the Claims Administrator.

## IV.  GENERAL PROVISIONS

**4.01** *Term of Agreement.* The term of this Agreement ("Term") commenced on August 2, 2013, and shall continue until the Services have been concluded, unless previously terminated pursuant to Section 4.05 of this Agreement.

**4.02** *Independent Contractor.* Nothing contained in this Agreement or in the Settlement Agreement shall be deemed or construed to create any partnership, joint venture, employment or agency relationship between BrownGreer, on the one hand, and any of the Parties, on the other hand, it being understood and agreed that, in performing the Services, BrownGreer is and shall be an independent contractor. BrownGreer shall be solely responsible for filing all tax returns and paying any income, government required pension scheme contributions, or other tax levied upon or determined with respect to the payments made to BrownGreer pursuant to this Agreement. Without limitation of the foregoing, BrownGreer shall not hold itself out as having any authority to enter into any contract or create any obligation or liability on behalf of, in the name of, or binding upon the Parties.

**4.03** *Standard of Work Product and Services*. BrownGreer agrees that all Services performed by it under the terms of this Agreement shall: (a) not infringe any copyright, patent, trade secret, or other proprietary right held by any third party; (b) be performed and completed in a diligent, professional and commercially reasonable manner (and in any event using not less than the same degree of skill and care as BrownGreer exercises with respect to its other clients in rendering comparable services); and (c) be in compliance with all applicable laws, rules and regulations.

**4.04** *Confidentiality*.

**(a)** *BrownGreer Confidential Information.* In the course of the administration of the Program, the Parties may gain access to confidential and/or proprietary information relating to the business, business practices and operations of BrownGreer. This confidential and proprietary information is referred to collectively as "BrownGreer Confidential Information."

**(b)** *Non-Disclosure of BrownGreer Confidential Information*. With respect to any BrownGreer Confidential Information, whether furnished before or after the date of this Agreement, the Parties (1) shall hold and treat such BrownGreer Confidential Information in full confidence and (2) subject to Section 4.04(d), shall not use or disclose such BrownGreer Confidential Information except as necessary in connection with the administration of the Program, as required by law or listing agreements, or as may be necessary to enforce, or exercise its rights under, this Agreement and/or the Settlement Agreement.

3

**(c)** *Precautionary Measures*. The Parties shall take commercially reasonable measures to protect the confidentiality of the BrownGreer Confidential Information (and in any event using not less than the same measures as the Parties employ with respect to their own confidential information).

**(d)** *Legal Demand for Disclosure*. If any of the Parties receives a subpoena or other legal demand for disclosure of any of the BrownGreer Confidential Information (a "Legal Demand"), it shall promptly notify BrownGreer of the Legal Demand in writing and inform the requesting party that the information can only be disclosed with the approval of a court with applicable jurisdiction. If BrownGreer does not obtain: (1) the withdrawal of the Legal Demand; or (2) a court order precluding the effectiveness of the Legal Demand, then the Parties may comply with the Legal Demand.

**4.05** *Termination*.

**(a)** *Provisions for Termination.* Prior to the completion of the Services, this Agreement may be terminated by the Parties (1) upon not less than 90 days' written notice to BrownGreer or (2) upon 30 days' written notice to BrownGreer, if BrownGreer has breached any of the terms of this Agreement and such breach is not cured within such 30-day period.

**(b)** *Delivery upon Termination*. Upon a termination of this Agreement pursuant to this Section 4.05, BrownGreer shall deliver to the successor Claims Administrator (or, if a successor Claims Administrator has not yet been named, to the Parties' designee), all data, records, and files obtained by BrownGreer incident to this Agreement, and BrownGreer shall not retain any copies thereof or extracts therefrom. In addition, BrownGreer shall cooperate with the Parties and the successor Claims Administrator to provide an orderly transition of the Services to the successor Claims Administrator. If this Agreement is not terminated pursuant to Section 4.05, then, at the end of the Term, BrownGreer shall handle such data, records and files as directed by the Parties.

**(c)** *Survival and Effect of Termination*. The following provisions of this Agreement shall survive the expiration or termination of this Agreement: Section 3.02, Section 3.03 (with respect to any outstanding invoices), Section 3.05, Section 4.02, Section 4.04, Section 4.05(b), this Section 4.05(c), Section 4.06, and (to the extent applicable to the foregoing provisions) Sections 4.08 through 4.19. Furthermore, upon the expiration or termination of this Agreement, none of the parties to this Agreement shall be relieved or released from liability for any breach of any representation or agreement contained herein.

**4.06** *Indemnification of BrownGreer.* BrownGreer shall be indemnified from the Common Fund Escrow Account for all costs, expenses, fees (including reasonable attorneys' fees), and damages paid or payable to third parties that it incurs as the result of any claim, action, suit or proceeding against BrownGreer arising out of or relating to the provision of the Services pursuant to this Agreement, but only to the extent such costs, expenses, fees and damages do not directly result from a breach by BrownGreer of any of the terms of this Agreement.

**4.07** *BrownGreer's Representations and Warranties.* BrownGreer represents and warrants that:

4

**(a)**     *Valid Company.*  BrownGreer is a professional limited liability company organized under the laws of the Commonwealth of Virginia.

**(b)**     *Authorization.*  The execution, delivery and performance of this Agreement has been duly authorized by all necessary company action on the part of BrownGreer, and this Agreement is a valid and binding obligation of BrownGreer, enforceable in accordance with its terms.

**(c)**     *No Default or Violation.*  The execution, delivery and performance of this Agreement by BrownGreer does not and shall not breach or constitute a default under or result in a violation of any agreement, any applicable law, rule or regulation, or any court or governmental order binding upon BrownGreer.  All approvals, permits and licenses, if any, that are required to be obtained by BrownGreer for the provision of the Services under this Agreement have been so obtained and are in full force and effect.

**(d)**     *No Disqualification.*  BrownGreer is not disqualified from providing the Services under this Agreement.

**4.08**     *Intellectual Property*.  The Parties agree that BrownGreer shall own all right, title and interest in and to all forms of intellectual property conceived, made, discovered or developed by BrownGreer either prior to or during the Term, including without limitation all intellectual property resulting from the Services.

**4.09**     *Entire Agreement*.  This Agreement contains all of the agreements of the parties to this Agreement with respect to the subject matter of this Agreement. No prior or contemporaneous agreement pertaining to such matter shall be effective for any purpose.

**4.10**     *Headings*.  The headings used in this Agreement are inserted for convenience only and shall not affect the construction or interpretation of any provisions of this Agreement.

**4.11**     *Applicable Law and Venue.*  The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the Commonwealth of Virginia (or United States federal law, to the extent applicable), including any applicable statutes of limitation, without regard to any otherwise applicable principles of conflicts of law or choice of law rules (whether of the Commonwealth of Virginia or any other jurisdiction) that would result in the application of the substantive or procedural rules or law of any other jurisdiction. The parties to this Agreement agree that any claim, action, proceeding or suit related to or arising from this Agreement shall be subject to the exclusive jurisdiction of the state and federal courts located in the City of Richmond, Virginia.

**4.12**     *Waiver*.  The failure of any party to insist, in any one or more instances, upon performance of any of the terms or conditions of this Agreement shall not be construed as a waiver or a relinquishment of any right granted under this Agreement.  Unless otherwise expressly agreed to the contrary, a waiver or a relinquishment by any party of any right granted under this Agreement in one or more instances shall not be construed as a continuing waiver or as a waiver in other instances.

  **4.13**  *Amendment*.  No modification or amendment of this Agreement shall be effective unless in writing and signed by Plaintiff and the authorized representatives of each of the other parties to this Agreement.

  **4.14**  *Severability*.  If any portion of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination will not invalidate or render the remainder of this Agreement unenforceable.  Rather, the relevant provision shall be deemed modified to the extent necessary to render it enforceable and, if it cannot be so modified, this Agreement shall be construed as though it never contained the portion that is invalid or unenforceable.

  **4.15**  *Binding Obligation; Assignment*.  This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and permitted assigns; *provided*, *however*, that neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned or delegated by BrownGreer without the prior written consent of the Parties.  Any assignment in violation of this Section 4.15 shall be null and void *ab initio*.

  **4.16**  *No Third Party Beneficiaries.*  No provision of this Agreement is intended to create any third party beneficiary to this Agreement.  Without limitation of the foregoing, nothing in this Agreement confers on any claimant under the Settlement Agreement any privity of contract with, or other right to institute any action against, BrownGreer.

  **4.17**  *Counterparts.*  This Agreement may be executed in any number of counterparts (including via facsimile or the electronic exchange of portable document format [PDF] copies), each of which shall be an original and all of which shall together constitute one and the same instrument.

  **4.18**  *Force Majeure.*  No party to this Agreement shall be liable for failure to perform any of the terms of this Agreement if and to the extent such failure has been caused solely by fire, war, insurrection, government restrictions, act of God, disaster, civil disorders, curtailment of transportation facilities or other emergency beyond the control of the nonperforming party to this Agreement making it illegal or impossible to perform, provided that: (a) the effects of any such cause could not have been reasonably avoided or circumvented by the nonperforming party; and (b) the nonperforming party promptly gives notice to the other party and makes all reasonable efforts to resume performance as promptly as possible and to mitigate the effects of such force majeure.

  **4.19**  *Notices*.  All notices, requests, demands or communications required or permitted under this Agreement shall be in writing and transmitted to the following:

    **(a)**    *Recipients*.

        **(1)** *If to BrownGreer:*

        Orran L. Brown, Sr.
        BrownGreer PLC
        250 Rocketts Way
        Richmond, VA 23231
        E-mail: obrown@browngreer.com

        **(2)** *If to Plaintiff and Class Counsel:*

        Russ Herman
        Herman, Herman & Katz, LLC
        820 O'Keefe Avenue
        New Orleans, LA 70113
        Email: rherman@hhkc.com

        and

        Elizabeth J. Cabraser
        Lieff Cabraser Heimann & Bertstein
        275 Battery Street, 29th Floor
        San Francisco, CA 94111-3339
        Email: ecabraser@lchb.com

        **(3)** *If to Merck:*

        Bruce N. Kuhlik
        Senior Vice President and General Counsel
        Merck, Sharp & Dohme, Corp.
        One Merck Drive
        P.O. Box 100 (WS3A-15)
        Whitehouse Station, NJ 08889-0100
        Email: bruce_kuhlik@merck.com

        and

        John H. Beisner
        Skadden, Arps, Slate, Meagher & Flom LLP
        1440 New York Avenue, N.W.
        Washington, D.C. 20005
        Email: john.beisner@skadden.com

    **(b)**    *Method of Transmission.*  All notices, requests, demands, or communications required or permitted under this Agreement shall be delivered by hand, certified mail (return receipt requested and postage pre-paid), nationally recognized courier service or email.

**(c)** *Change.* Any party to this Agreement may change the address or number for receipt of notices by written notice to the other party to this Agreement given in conformity with this Section 4.19.

[*signatures appear on following pages*]

IN WITNESS WHEREOF, Plaintiff, individually and as Representative of the Class, and duly authorized representatives of BrownGreer, Class Counsel and Merck have executed this Agreement on the dates shown below:

BROWNGREER PLC

By: _____
       (signature)

Name: _____
       (printed or typed)

Title: _____
       (office or position)

Date: _____

PLAINTIFF,
individually and as Representative of the Class

_____
Sherrill Herke

Date: _____

CLASS COUNSEL

Herman, Herman & Katz, LLC

By: _____
       (signature)

Name: _____
       (printed or typed)

Title: _____
       (office or position)

Date: _____

CLASS COUNSEL (continued)

Lieff Cabraser Heimann & Bertstein

By: _____
            (signature)

Name: _____
            (printed or typed)

Title: _____
            (office or position)

Date: _____

MERCK SHARP & DOHME, CORP.

By: _____
            (signature)

Name: _____
            (printed or typed)

Title: _____
            (office or position)

Date: _____

# EXHIBIT A

| | BILLING RATE SCHEDULE FOR VIOXX CONSUMER SETTLEMENT | |
|---|---|---|
| | **Worker Position** | **Hourly Rate for This Program** |
| 1. | Senior Partner | $400 |
| 2. | Partner | $275 |
| 3. | Senior Counsel | $200 |
| 4. | Counsel | $175 |
| 5. | Special Counsel | $130 |
| 6. | Executive Analyst | $140 |
| 7. | Senior Analyst II | $125 |
| 8. | Senior Analyst I | $100 |
| 9. | Business Analyst/Financial Analyst | $100-$125 |
| 10. | Analyst | $85 |
| 11. | Legally Trained Reviewer | $80 |
| 12. | Claims Specialist/Reviewer | $45-$50 |
| 13. | Administrative Assistant | $20 |
| 14. | Director of Information Management | $160 |
| 15. | Senior Project Manager | $145 |
| 16. | Project Manager | $130 |
| 17. | Senior Database Administrator | $120 |
| 18. | Project Team Lead | $120 |
| 19. | Database Administrator | $110 |
| 20. | Senior Programmer Analyst | $120 |
| 21. | Programmer Analyst | $110 |
| 22. | IIS Administrator | $105 |
| 23. | Project Coordinator | $85 |
| 24. | Senior Quality Analyst | $85 |
| 25. | Quality Analyst | $65 |
| 26. | IT Manager | $160 |
| 27. | Infrastructure Manager | $75 |
| 28. | Network Administrator | $75 |
| 29. | Help Desk Technician | $65 |