IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION | MDL NO. 1657 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| SHERRILL HERKE, individually and on behalf of a proposed class of those similarly situated,<br>Plaintiffs, | No. 2:09-cv-07218 |
| | Hearing Date: December 16, 2014 |
| | Time: 9:00 a.m. |
| v. | |
| MERCK & CO., INC.,<br>Defendant. | |

**Class Counsel's Response to Motion Regarding
Telephone Communications with Claimants**

**I.      INTRODUCTION**

Vioxx Consumer Class Counsel hereby respectfully respond to the Motion by Richard Getty Seeking Direct Phone Contact With Claimants [Rec. Doc. 65061].

This Court has twice ruled upon the adequacy of Notice under Rule 23 and its due process requirements. See Order for Preliminary Certification of a Class for Purposes of Settlement and Preliminary Approval of Class Settlement, Class Notice and Related Matters [Rec. Doc. 64526, Filed 08/02/14] ("Preliminary Settlement Order"); and 2) Final Order and Judgment Certifying the Class For Purposes of Settlement, Approving of Class Action Settlement; and Dismissing the Actions with Prejudice [Rec. Doc. 64784, Filed 01/03/14] ("Final Settlement Order") at p. 25.   The instant motion seeks an unusual request: that the court order the Claims Administrator to call any and all claimants who will not receive any recovery under the Court approved settlement..

An order directing additional efforts to encourage and assist with class member claims,

1208269. 4

after implementation of the Notice meeting all Rule 23 requirements and beyond the comprehensive activity and efforts described in this Response and in the Declaration of Orran L. Brown, Sr. (attached hereto as Exhibit A) and 12/1/14 Status of Claimant Activity (attached hereto as Exhibit B) is within the discretion of this Court. However, as this Response and its Exhibits demonstrate, the ongoing efforts made to date to notify potential class members of the settlement, to stimulate the submission of claims, and to assist and facilitate the completion of the claims process by claimants, have been comprehensive and extraordinary.

These claims-related efforts have gone above and beyond those originally described in the Settlement Agreement to which this Court has granted final approval in January of this year. They have included state-of-the-art methods, such as social media and direct e-mail communications, to add outreach to claimants and to encourage the filing of claims. In doing so, these efforts have gone well beyond the due process standards that govern class notice under Fed. R. Civ. P. 23(c) and (e), as to which this Court twice made specific findings. The claims "stimulation" and assistance efforts have gone substantially beyond those to which Defendant Merck originally agreed. Throughout the claims process, Class Counsel have affirmatively developed, considered, implemented and facilitated creative, novel and additional efforts to reach class members, and to encourage, expedite, and simplify the claims process.

We have reported periodically to the Court on these ongoing efforts, as has court-appointed Claims Administrator Orran L. Brown of BrownGreer. The entire sequence of Claims Administration is set forth, for the Court's reference, by the Claims Administrator in Exhibits A and B hereto. The question raised by the instant motion, whether claimants from Kentucky or all claimants should be contacted by telephone regarding their incomplete or deficient claims, is best answered, we respectfully submit, in the context of these efforts, and as follows:

## II. THE CLASS NOTICE AND CLAIMS STIMULATION PROGRAM HAS ALREADY EXCEEDED DUE PROCESS REQUIREMENTS AND UTILIZED STATE-OF-THE-ART CLAIMS STIMULATION TECHNIQUES

Notification of class members regarding class settlements and claims processes is evaluated under the now-familiar "best notice practicable under the circumstances" standard of Fed. R. Civ. P. 23(c)(2)(B).  *See Manual for Complex Litigation* (Fourth Edition, Federal Judicial Center 2004) at §§ 21.31-21.313.  This Court carefully considered whether that standard was met in connection with its preliminary and final settlement approval and class certification decisions.  These decisions were informed by detailed declarations regarding the notice program and claims administration, with which movant takes no issue.

For many reasons that are beyond the ability of the parties or the Court to change, claims have been made by a small percentage of the class.  These factors include the age of the case at the time of settlement, the non-availability of records, and the relatively small payments offered to fully reimburse class members for their relatively small original payments for Vioxx.  The Vioxx Consumer Class Settlement was reached under circumstances in which its very viability was subject to repeated challenge by Defendant, and to potential adverse dispositive adjudication.  Against this backdrop, the negotiation and submission of a Class Settlement Agreement that provided for reimbursement, in many circumstances, for all actual out-of-pocket costs to class members of the drug, and for compensation for medical advice regarding Vioxx replacement, constituted a significant achievement.  Reflecting the quality of the settlement, opt-outs and objections were few and far between, and this Court determined that the settlement readily met Rule 23(e) class settlement criteria in its Final Settlement Order.

The Vioxx Consumer Settlement did not merely offer substantial benefits in theory:  it was accompanied by a robust claims program that featured multimedia outreach, ongoing claims assistance, and supplemental, claims stimulation, notification, including targeted notification via

YouTube, social media, and an AARP email blast.  These claims stimulation efforts were targeted, both in terms of media, content, and placement, to reach a specific audience:  the demographic groups within which Vioxx consumer class members are most likely to be present.

### A. The Class Notice Program.

The parties reported a successful conclusion to long-running consumer claims settlement discussions to this Court in the spring of 2013, after active motions practice on Merck's challenges directed to the consumer claims and class allegations of the Purchase Claims Master Complaint, and to more specific claims, such as those set forth on behalf of consumers in the District of Columbia.  This Court had, on several occasions in open court, expressed its views with respect to the management, certification, and ultimate merits of such claims, and of course these observations were informed not only by briefing, argument, and discovery relating to the Consumer claims, but with respect to related purchase claims, including the settlement of the Third Party Payor claims, and the active litigation (including a bellwether trial) of the various government claims brought by Attorneys General.

Thus, this Court's preliminary review of the proposed consumer settlement, in July 2013, was a thoroughly informed one.  Such information also included detailed information on the proposed class notice program and claims administration process, which the parties, with the help of preeminent experts, designed to be as robust and effective as practicable, in dealing with the specific challenges that existed for the Vioxx consumer claims.  The challenges included the resolution, in 2013-2014, of small purchase claims arising from sales of a drug that was removed from the market as of Fall 2004, in an era in which class member identification and purchase records were generally not created and preserved in the comprehensive, computerized format that at least partially exists today.  Thus, the parties knew that notice and claims information must depend on the effective and creative use of media other than direct mail:  print publication,

broadcast, the Internet, and more novel channels, such as social media. All of these were utilized, in the manner the notice and communications experts deemed them most effective, at various points through the class notice and claims administration cycle.

For example, with respect to the Class Action Settlement Notice Plan, guided by due process principles, Rule 23 of the Federal Rules of Civil Procedure, and Paragraph 5.2 of the Settlement Agreement, Kinsella Media, LLC ("Kinsella") developed a Notice Plan to alert the class to the settlement, as detailed in the July 22, 2013 Declaration of Shannon R. Wheatman (Rec. Doc. 64502-3). That Notice Plan called for: (1) direct mail notice to all counsel in the MDL for the putative consumer classes; (2) paid media through publication in consumer magazines and newspaper supplements and television and Internet advertising; and (3) a comprehensive earned media campaign. (Rec. Doc 64502-3 ¶¶ 16-29.) The Notice Plan and Settlement Agreement further called for the establishment of a Settlement website, toll-free phone number, and post office box to serve as locations where Class Members could obtain or request the Detailed Notice. (Settlement Agreement ¶¶ 5.3-5.5.)

As reported in the December 5, 2013 Declaration of Shannon R. Wheatman (Rec. Doc. 64728-2) and BrownGreer's December 6, 2013 Settlement Administration Status Report (Rec. Doc. 64729), Kinsella and BrownGreer implemented the Notice Plan and Settlement Agreement as approved by the Court in its August 2, 2013 Preliminary Settlement Order. (Rec. Doc. 64526).

B. **The Courtesy Reminder ("Claims Stimulation") Program.**

1. *Courtesy Reminder Development.* Following the Court's December 13, 2013 Final Approval Hearing, at the request of the Parties, BrownGreer developed a set of potential additional services and Settlement Program enhancements designed to stimulate Class Member participation in the Settlement Program. The Parties submitted a 15-part supplemental

plan to the Court on January 23, 2014. This supplemental plan, as described more fully below and in Exhibit A hereto, included a Class Member Reminder Campaign sending courtesy mail and email notifications to individuals who (1) previously reached out to the Program in some way but did not submit a Claim Form or (2) submitted an unsuccessful claim in the Vioxx Personal Injury Settlement Program and did not sign a release in that program, to prompt these known potential Class Members to consider filing a claim with the Program. In addition to the Reminder Campaign, the supplemental plan included additional Class Member communication services and website enhancements not previously called for in the Settlement Agreement.

2.  *Courtesy Reminder Implementation.*  The Parties likewise authorized BrownGreer to implement the Class Member Reminder Campaign on February 12, 2014. Table 1 (taken from the Brown Declaration attached as Exhibit A hereto) identifies the recipient populations and describes each component of the Reminder Campaign:

| Table 1 | CLASS MEMBER REMINDER CAMPAIGN DETAILS | | | |
|---|---|---|---|---|
| **Row** | **Recipient Population** | **Description** | **Number of Addressees** | **Date Implemented** |
| 1. | Vioxx Personal Injury Settlement Program Claimants without binding releases for whom BG has a mailing address. | Mailed a one-page reminder letter, three-page paper Claim Form with each Claimant's name, address and date of birth pre-filled, and a self-addressed return envelope. | 11,226 | 2/18/14 |
| 2. | Law firms who represented Claimants without binding releases in the Vioxx Personal Injury Settlement Program. | Emailed to notify them of the reminder letter sent to their clients. | 411 | 2/18/14 |
| 3. | Claimants who began a Claim Form online but have not completed their Claim. | Emailed to alert them to the steps needed to complete and submit the Claim Form. | 668 | 2/17/14 |

| Table 1 | CLASS MEMBER REMINDER CAMPAIGN DETAILS | | | |
|---|---|---|---|---|
| Row | Recipient Population | Description | Number of Addressees | Date Implemented |
| 4. | Claimants who have registered for Secure Claims Portal access but have not started a Claim Form. | Emailed to alert them to the steps needed to complete and submit the Claim Form. | 5,159 | 2/17/14 |
| 5. | Claimants who requested and were sent a hard copy Claim Form but have not returned a completed Claim Form. | Mailed a letter alerting them to the steps needed to complete and submit the Claim Form. | 3,763 | 2/14/14 |
| | | TOTAL | 21,227 | |

3. *Additional Outreach to the Class*. In conjunction with the Class Member Reminder Campaign, and in response to the Court's concerns, the Parties and BrownGreer made several enhancements to the Class's primary communication vehicles—the Settlement Program website and automated toll-free phone line—to accommodate Spanish-speaking Class Members, make the claim filing process even easier, and provide individualized filing assistance not expressly contemplated in the Settlement Agreement and not required under Rule 23 and related decisional law for preliminary or final approval of this Settlement. The Parties reviewed cost estimates for implementing each new item and approved the additional expenditures as part of the commitment to increase Class Member participation. Tables 2 and 3 summarize these measures:

| Table 2 | ENHANCEMENTS TO THE TOLL-FREE AUTOMATED CALL CENTER | |
|---|---|---|
| Row | Description | Date Implemented |
| 1. | Added to the existing automated call system the option of leaving a message requesting to be called back by a live operator. | 2/12/14 |
| 2. | Added to the existing automated call system the option to choose a Spanish version of the recorded messages on the automated toll-free Call Center for the Settlement Program. | 2/12/14 |

| Table 2 | ENHANCEMENTS TO THE TOLL-FREE AUTOMATED CALL CENTER | |
|---|---|---|
| Row | Description | Date Implemented |
| 3. | Provided Spanish-speaking representatives to return calls. | 2/12/14 |

| Table 3 | ENHANCEMENTS TO THE SETTLEMENT PROGRAM WEBSITE | |
|---|---|---|
| Row | Description | Date Implemented |
| 1. | Added to the Home Page the ability to download a PDF of the Claim Form. | 2/15/14 |
| 2. | Added to the Home Page the option to request that a hard copy Claim Form be mailed to a site visitor. | 2/15/14 |
| 3. | Enhanced the original approved language on the Home Page to emphasize the payments available in the Program. | 2/15/14 |
| 4. | Added to the Home Page a "Do I Qualify for Payment?" function that allows site visitors to answer a series of questions and determine if they are in the Class and potentially eligible for payment (with disclaimers that payment is not guaranteed). | 2/15/14 |
| 5. | Modify the online Claim Form steps to allow a Non-Account Method of claim submission where a Claimant can complete and submit a Claim Form without first establishing a Portal account, and to indicate that he or she does not wish to establish a Portal account with us for future use but instead would like to receive official Settlement Program notices by mail. | 2/15/14 |
| 6. | Made a Spanish language version of the Claim Form available to be downloaded as a printable PDF online and in hard copy form to be mailed to Claimants who request it. | 2/15/14 |
| 7. | Made the Settlement Program website screens available in a Spanish language version, including a Spanish version of the online Claim Form. | 2/28/14 |

C. **The Effectiveness of the Reminder Campaign.**

The Settlement Program experienced a significant increase in participation after the launch of the Class Member Reminder Campaign and the additional services to the Class. Before beginning this supplemental plan, the Program had received a total of 3,137 Claim Forms at an average rate of 131 claims filed per week. After the plan's launch, the Program received 5,620 new Claim Forms through the May 6, 2014 filing deadline at an average rate of 312 claims

per week, representing 64% of all claims filed in the Program. Table 4 illustrates these figures:

| Table 4 | | CLAIM FILING RATES | | |
|---|---|---|---|---|
| Row | Time Period | Average Per Week | Total Claims Filed | Percentage of All Claims |
| 1. | 9/1/13 to 2/16/14 | 131 | 3,137 | 36% |
| 2. | 2/17/14 to 5/6/14 | 312 | 5,620 | 64% |
| | TOTALS | 166 | 8,757 | 100% |

D. **Summary of Claims Submitted and Submission Methods.**

Pursuant to the Settlement Agreement, Claimants could submit claims and supporting documents online at the Settlement website or by mailing hard-copy Claim Forms to the Settlement P.O. Box maintained by BrownGreer. (Settlement Agreement ¶¶ 5.5, 11.6) Table 5 lists the total number of timely Claim Form submissions by filing method:

| Table 5 | | CLAIM FILING RATES | |
|---|---|---|---|
| Row | Item | Total | % of Claims Filed |
| 1. | **Electronic Claim Forms** | 4,939 | 56.4% |
| 2. | **Paper Claim Forms** | 3,818 | 43.6% |
| | TOTALS | 8,757 | 100% |

Class Counsel and Merck conferred with BrownGreer, on an ongoing basis, throughout the months of the claims period, on the status and progress of claims administration. We discussed and addressed particular problems with claims that came to the attention of the Administrator, and he developed solutions and techniques to facilitate the claims process. Among the methodologies that was evaluated and utilized was that of telephone outreach. As this Court is aware, there is and has always been a toll-free telephone number (1-866-439-6932)

that class members can call for assistance with their claims, prominently posted on the official settlement website, www.vioxxsettlement.com.

The parties specifically discussed whether additional affirmative telephonic outreach would be a practical means of resolving deficient claims.  While such outreach is possible for many (by no means all) claimants—those who have provided contact telephone numbers—and BrownGreer has indicated that it is willing and able to do so if this Court so authorizes and directs, the opinion of BrownGreer has been that this is not a particularly effective or cost-effective way to assist claimants.  Instead, other methodologies such as those described in paragraphs 22 – 26 of the Orran Brown Declaration, have been used.

### III.    CONSIDERATIONS REGARDING DIRECT PHONE CONTACT

The final phase of the claims program, which began in fall 2013, was completed on November 30, 2014.  At this point, telephonic outreach would require an extension of the claims program, via Court Order.  While we do not believe either party to the settlement would object to such a Court-ordered extension, of from two weeks to one month, to enable calls to be made, we do have serious reservations as to whether this would be sufficiently productive or useful.  We submit that it is not required, either under the terms of the Court-approved Settlement Agreement, or as a matter of due process.

Specifically, as noted in paragraph 25 of the Brown Declaration, a direct calling campaign would take one or two weeks to complete, and the Administrator expects to be able to reach only approximately 50 per cent of those claimants who have yet to perfect their claims, at least on the first call.  This would require an extension of the response deadline for affected claimants, which in turn would require an order approving the extension, and written notice thereof.  As also explained in the Brown Declaration, a calling campaign, in order to be even marginally effective, must be conducted by professionals who are intimately familiar with all

aspects of the Settlement Agreement, and the requirements and procedures of the claims process, in order to provide accurate, complete, and useful information to claimants, and to have even a remote chance of receiving additional claims information or documentation from the claimants themselves to perfect a claim.

Because the staff at BrownGreer has this knowledge and experience, both generally with respect to large scale settlement administration, and specifically regarding the detailed requirements of the Vioxx consumer settlement, a calling campaign, if performed by BrownGreer, is estimated to cost approximately $15,000 to $20,000. A similar calling campaign attempted by anyone else would simply re-invent the wheel, at substantially more time and expense, and with significantly decreased effectiveness. Moreover, only BrownGreer has the claimants files to refer to in any call.

For the above reasons, such telephonic contact should be made by those most capable of assisting class members with the claims process; that is, those who have been responsible for doing this throughout the claims program: the professionals at BrownGreer. A second choice would be Court-appointed Class Counsel, who are entitled to contact class members and to assist with the process. *See generally*, *Manual for Complex Litigation* at §§ 21.12; 21.33. We do not recommend that non-class counsel or other third parties, who have not been appointed to represent the class, and who have no experience or expertise with respect to claims assistance, be authorized to undertake such a process. This would be the least cost-effective, least susceptible of reporting and monitoring, and most likely to confuse or alienate the claimants themselves.

All that said, given the statistics summarized above, and set forth in greater detail in Exhibits A and B hereto, it is not possible to predict that an increased dollar amount in qualified claims that exceeds the cost of the calling campaign, would occur even under a calling campaign

conducted by BrownGreer.

## IV. CONCLUSION

Accordingly, based upon the foregoing, the orders and documents submitted to and approved by the Court to date with respect to the Vioxx Consumer Settlement, and the Report and Declaration attached hereto as Exhibits A and B, Class Counsel respectfully submit that any further telephonic contact of class member claimants is not required as a matter of due process, is discretionary with this Court, and, if approved, should be accomplished by the Court-appointed Claims Administrator.

DATED:  December 8, 2014					Respectfully submitted,

								*/s/ Annika K. Martin*

| | |
|---|---|
| Russ M. Herman, Esquire | Elizabeth J. Cabraser, Esquire |
| Leonard A. Davis, Esquire | Annika K. Martin |
| HERMAN, HERMAN & KATZ, L.L.C. | LIEFF, CABRASER, HEIMANN & |
| 820 O'Keefe Avenue | BERNSTEIN, LLP |
| New Orleans, Louisiana 70113 | 275 Battery Street, 30th Floor |
| Phone:  (504) 581-4892 | San Francisco, CA  94111-3339 |
| Fax:  (504) 561-6024 | Telephone:  (415) 956-1000 |
| ldavis@hhklawfirm.com | Facsimile:  (415) 956-1008 |
| | ecabraser@lchb.com |

*Vioxx Consumer Settlement Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittmann, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 8th day of December, 2014.

*/s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser