# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX | : | **MDL Docket No. 1657** |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION L** |
| | : | |
| | : | **JUDGE FALLON** |
| | : | |
| | : | **MAGISTRATE JUDGE** |
| | : | **KNOWLES** |

This Document Relates to:  ALL CASES

### DECLARATION OF ORRAN L. BROWN, SR.

I, ORRAN L. BROWN, SR., hereby declare and state as follows:

### I.    INTRODUCTION

1.    *Personal Information.*  My name is Orran L. Brown, Sr.  I am the Chairman and a founding partner of BrownGreer PLC ("BrownGreer"), located at 250 Rocketts Way, Richmond, Virginia 23231.

2.    *The Capacity and Basis of this Declaration.*  I am over the age of 21.  The matters set forth in this Declaration are based upon my personal knowledge and information received from the parties or the docket in this proceeding.  Any opinions presented in this Declaration rest on my training and experience.

3.    *The Purpose of this Declaration.*  BrownGreer is the Claims Administrator of the settlement program (the "Program") created under the July 2013 *In re: Vioxx MDL* Settlement Agreement Related to Consumer Class Actions (the "Settlement Agreement") in this litigation involving Merck and the Consumer Class Plaintiffs (the "Parties").  I submit this Declaration to describe the processes used in this program to alert Claimants of

information or materials required by the Settlement Agreement but missing from their claim submissions, and the opportunities that all such Claimants have had to complete their claims.

## II.    BACKGROUND AND EXPERIENCE

4.    *Summary of My Personal Experience.* I have worked in the mass claims area, including class actions, for over 25 years. I have extensive experience as a lawyer handling class action proceedings, settlements and notices; as a claims administrator designing and implementing class action settlements, notice plans and notices to Claimants and counsel; as a notice administrator; as a trustee or special master involved in multiple claim proceedings; and as an educator on class actions and other complex litigation. My personal biography is attached to this Declaration as Attachment 1.

5.    *General Description of BrownGreer.* BrownGreer has specialized in notice administration and settlement administration since my partner, Lynn Greer, and I founded the firm in 2002. We are experienced in the legal and administrative aspects of the design, approval, and implementation of notice plans, settlement programs and the design, staffing and operation of claims facilities to receive and review claims and provide damages payments, medical monitoring, or other benefits for the resolution of multiple claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles. BrownGreer has performed crucial administration or review roles in over 60 major programs involving nearly 31,000,000 class members and the disposition of over $29 billion in payments to qualifying Claimants. The BrownGreer summary attached as Attachment 2 to this Declaration provides detail on our firm.

2

III.    **THE NOTICE TO THE CLASS OF THE OPPORTUNITY TO SEEK**
**BENEFITS IN THIS PROGRAM**

A.    **The Class Notice Program.**

6.    *Notice Plan Components.*  Pursuant to due process principles, Rule 23 of the
Federal Rules of Civil Procedure, and Paragraph 5.2 of the Settlement Agreement, Kinsella
Media, LLC ("Kinsella") developed a Notice Plan to alert the class to the settlement, as detailed
in the July 22, 2013 Declaration of Shannon R. Wheatman (Doc. No. 64502-3). That Notice
Plan called for: (1) direct mail notice to all counsel in the MDL for the putative consumer
classes; (2) paid media through publication in consumer magazines and newspaper supplements
and television and Internet advertising; and (3) a comprehensive earned media campaign. (Doc.
No. 64502-3 ¶¶ 16-29.) The Notice Plan and Settlement Agreement further called for the
establishment of a Settlement website, toll-free phone number, and post office box to serve as
locations where Class Members could obtain or request the Detailed Notice. (Agmt. ¶¶ 5.3-5.5.)

7.    *Notice Plan Execution.*  As demonstrated in the December 5, 2013 Declaration of
Shannon R. Wheatman (Doc. No. 64728-2) and BrownGreer's December 6, 2013 Settlement
Administration Status Report (Doc. No. 64729), Kinsella and BrownGreer implemented the
Notice Plan and Settlement Agreement as approved by the Court in its August 2, 2013 Order for
Preliminary Certification of a Class for Purposes of Settlement and Preliminary Approval of
Class Settlement, Class Notice and Related Matters (Doc. No. 64526).

B.    **The Courtesy Reminder Program.**

8.    *Courtesy Reminder Development.*  Following the Court's December 13, 2013
Final Approval Hearing, at the request of the Parties, BrownGreer developed a set of potential
additional services and Settlement Program enhancements designed to stimulate Class Member
participation in the Settlement Program. The Parties submitted a 15-part supplemental plan to

3

the Court on January 23, 2014. This supplemental plan, as described more fully below, included a multi-faceted Class Member Reminder Campaign that included sending courtesy mail and email notifications to individuals who (1) previously reached out to the Program in some way but did not submit a Claim Form or (2) submitted an unsuccessful claim in the Vioxx Personal Injury Settlement Program and did not sign a release in that program, to prompt these known potential Class Members to consider filing a claim with the Program. In addition to the Reminder Campaign, the supplemental plan included additional Class Member communication services and website enhancements not previously called for in the Settlement Agreement.

9. **_Courtesy Reminder Implementation._** In consultation with the Parties, BrownGreer began implementing the Class Member Reminder Campaign on February 12, 2014. Table 1 identifies the recipient populations and describes each component of the Reminder Campaign:

| Table 1 | CLASS MEMBER REMINDER CAMPAIGN DETAILS | | | |
|---------|------------------|-------------|--------------------------|---------------------|
| **Row** | **Recipient Population** | **Description** | **Number of Addressees** | **Date Implemented** |
| 1. | Vioxx Personal Injury Settlement Program Claimants without binding releases for whom BG has a mailing address. | Mailed a one-page reminder letter, three-page paper Claim Form with each Claimant's name, address and date of birth pre-filled, and a self-addressed return envelope. | 11,226 | 2/18/14 |
| 2. | Law firms who represented Claimants without binding releases in the Vioxx Personal Injury Settlement Program. | Emailed to notify them of the reminder letter sent to their clients. | 411 | 2/18/14 |
| 3. | Claimants who began a Claim Form online but had not completed their Claim. | Emailed to alert them to the steps needed to complete and submit the Claim Form. | 668 | 2/17/14 |
| 4. | Claimants who had registered for Secure Claims Portal access but had not started a Claim Form. | Emailed to alert them to the steps needed to complete and submit the Claim Form. | 5,159 | 2/17/14 |

| Table 1 | CLASS MEMBER REMINDER CAMPAIGN DETAILS | | | |
|---|---|---|---|---|
| Row | Recipient Population | Description | Number of Addressees | Date Implemented |
| 5. | Claimants who requested and were sent a hard copy Claim Form but had not returned a completed Claim Form. | Mailed a letter alerting them to the steps needed to complete and submit the Claim Form. | 3,763 | 2/14/14 |
| 6. | TOTALS | | 21,227 | |

10.   *Additional Services to the Class.*  In conjunction with the Class Member

Reminder Campaign, the Parties and BrownGreer made several enhancements to the Class's

primary communication vehicles—the Settlement Program website and automated toll-free

phone line—to accommodate Spanish-speaking Class Members, make the claim filing process

even easier, and provide individualized filing assistance not expressly contemplated in the

Settlement Agreement and not required under Rule 23 and related decisional law for preliminary

or final approval of this Settlement.  The Parties reviewed cost estimates for implementing each

new item and approved the additional expenditures as part of the commitment to increase Class

Member participation and voluntarily to address certain objector concerns, as the cumulative

claimed value of the Claim Forms submitted to date did not threaten to exceed the available

settlement funds.  Tables 2 and 3 outline the measures taken:

| Table 2 | ENHANCEMENTS TO THE TOLL-FREE AUTOMATED CALL CENTER | |
|---|---|---|
| Row | Description | Date Implemented |
| 1. | Added to the existing automated call system the option of leaving a message requesting to be called back by a live operator. | 2/12/14 |
| 2. | Added to the existing automated call system the option to choose a Spanish version of the recorded messages on the automated toll-free Call Center for the Settlement Program. | 2/12/14 |
| 3. | Provided Spanish-speaking representatives to return calls. | 2/12/14 |

| Table 3 | ENHANCEMENTS TO THE SETTLEMENT PROGRAM WEBSITE | |
|---|---|---|
| **Row** | **Description** | **Date Implemented** |
| 1. | Added to the Home Page the ability to download a PDF of the Claim Form. | 2/15/14 |
| 2. | Added to the Home Page the option to request that a hard copy Claim Form be mailed to a site visitor. | 2/15/14 |
| 3. | Enhanced the original approved language on the Home Page to emphasize the payments available in the Program. | 2/15/14 |
| 4. | Added to the Home Page a "Do I Qualify for Payment?" function that allows site visitors to answer a series of questions and determine if they are in the Class and potentially eligible for payment (with disclaimers that payment is not guaranteed). | 2/15/14 |
| 5. | Modify the online Claim Form steps to allow a Non-Account Method of claim submission where a Claimant can complete and submit a Claim Form without first establishing a Portal account, and to indicate that he or she does not wish to establish a Portal account with us for future use but instead would like to receive official Settlement Program notices by mail. | 2/15/14 |
| 6. | Made a Spanish language version of the Claim Form available to be downloaded as a printable PDF online and in hard copy form to be mailed to Claimants who request it. | 2/15/14 |
| 7. | Made the Settlement Program website screens available in a Spanish language version, including a Spanish version of the online Claim Form. | 2/28/14 |

11.     *The Effectiveness of the Reminder Campaign.* The Settlement Program experienced a significant increase in participation after the launch of the Class Member Reminder Campaign and the additional services to the Class. Before beginning this supplemental plan, the Program had received a total of 3,137 Claim Forms at an average rate of 131 claims filed per week. After launching the plan, the Program received 5,620 new Claim Forms through the May 6, 2014 filing deadline at an average rate of 312 claims per week, representing 64% of all claims filed in the Program. Table 4 illustrates these figures:

| Table 4 | CLAIM FILING RATES | | | |
|---|---|---|---|---|
| Row | Time Period | Average Per Week | Total Claims Filed | Percentage of All Claims |
| 1. | 9/1/13 to 2/16/14 | 131 | 3,137 | 36% |
| 2. | 2/17/14 to 5/6/14 | 312 | 5,620 | 64% |
| 3. | TOTALS | 166 | 8,757 | 100% |

## IV.   THE CLAIMS SUBMITTED IN THE PROGRAM

12.   *Claims Submitted and Submission Methods.* Pursuant to the Settlement Agreement, Claimants could submit claims and supporting documents online at the Settlement website or by mailing hard-copy Claim Forms to the Settlement P.O. Box maintained by BrownGreer. (Agmt. ¶¶ 5.5, 11.6.) Table 5 lists the total number of timely Claim Form submissions by filing method:

| Table 5 | CLAIM FORMS RECEIVED | | |
|---|---|---|---|
| Row | Item | Total | % of Claims Filed |
| 1. | Electronic Claim Forms | 4,939 | 56.4% |
| 2. | Paper Claim Forms | 3,818 | 43.6% |
| 3. | TOTALS | 8,757 | 100% |

## V.   SETTLEMENT AGREEMENT REQUIREMENTS FOR CLAIMS

13.   *Proving a Valid Claim.* The Settlement Agreement allowed Class Members to seek complete reimbursement of their out-of-pocket Vioxx expenditures if those Class Members could provide certain approved proof:

> (a) a receipt, cancelled check, or credit card statement showing payment for Vioxx and for his/her out-of-pocket expenditures, costs and losses in

7

connection with a Post-Withdrawal Medical Consultation for the
Settlement Class Member;

(b) an EOB (explanation of benefits) from a third-party payor that shows
Vioxx was prescribed for the Settlement Class Member and reflects the
out-of-pocket expense of the Settlement Class Member for such
prescriptions;

(c) an EOB (explanation of benefits) from a third-party payor that shows a
Post-Withdrawal Medical Consultation for the Settlement Class Member
and reflects the out-of-pocket expenses, costs and losses of the Settlement
Class Member for such Post-Withdrawal Medical Consultation; or

(d) records from a pharmacy, PBM or similar entity that shows Vioxx was
prescribed to the Settlement Class Member and reflects the out-of-pocket
expense of the Settlement Class Member for such prescriptions.

(Agmt. ¶ 11.2.) We refer to this benefit as "Option 1a." The Settlement Agreement also

afforded Class Members the opportunity to seek reimbursement up to $75 for Post-Withdrawal

Medical Consultations.[1]  Claimants seeking Post-Withdrawal Medical Consultation

reimbursement were required to include, in addition to proof of the out-of-pocket cost of the

consultation, "an attestation that the medical consultation or diagnostic testing occurring between

September 30, 2004 and November 30, 2004 had not been previously recommended or

scheduled prior to September 30, 2004." (Agmt. ¶ 11.2.) This is the "Option 1b" benefit.  As

an alternative to out-of-pocket cost reimbursement, the Settlement Agreement provides for a

one-time payment of $50 if Class Members cannot provide the required proof of a Vioxx

purchase. These "Option 2" Claimants were required to submit:

(a) healthcare provider(s) records showing a prescription for Vioxx;

[1] A "Post-Withdrawal Medical Consultation" was any office visit to a licensed physician to obtain advice regarding
the Class Member's own use of Vioxx and/or to discuss discontinuing the use of Vioxx and possible alternative
treatments for that Class Member and that occurred following September 30, 2004, which is when Vioxx was
withdrawn from the market, and prior to November 30, 2004. Further, the term Post-Withdrawal Medical
Consultation includes any reasonable and necessary diagnostic testing that is solely the result of the Class Member's
use of Vioxx and recommended by the Class Member's physician at the Post-Withdrawal Medical Consultation,
performed as a result of such recommendation, and occurred after September 30, 2004 but prior to November 30,
2004. (Agmt. ¶ 1.13.) However, the definition of Post Withdrawal Medical Consultation does not include any
office visits or diagnostic testing occurring during the period from September 30, 2004 through November 30, 2004,
that had been scheduled or recommended by the Class Member's physician or licensed prescriber prior to September
30, 2004.  (Id.)

8

      (b) a prescription bottle and visible label evidencing a prescription of Vioxx to the Settlement Class Member and showing the prescribing physician, date, pharmacy, and address; or

      (c) a declaration signed by the submitting Settlement Class Member under the penalties of perjury affirming that (i) Vioxx was purchased and paid for by the Settlement Class Member from personal or family funds, and (ii) that the forms of proof listed in paragraph 11.2 (a), (b), and (d) are not available.

(Agmt. ¶ 11.2.1.)  For either an out-of-pocket reimbursement claim or a one-time alternative payment claim to be valid, in addition to providing the proof outlined above, the claim must have been:

      (1) timely submitted;

      (2) submitted by the individual Settlement Class Member or a family member or legal guardian of such Settlement Class Member (no other third-party submissions);

      (3) timely supplemented with additional information or documentation in response to requests by the Claims Administrator pursuant to a deficiency notice or an audit of the Claim; and

      (4) signed by the submitting Settlement Class Member under the penalties of perjury.

(Agmt. ¶ 11.2.)

## VI.   INITIAL CLAIM REVIEWS AND NOTICES

    14.   ***Claims Found Not Payable in Initial Review.***  BrownGreer thoroughly analyzed all claims received to make eligibility and award determinations in our "Initial Review Process." Applying the Settlement Agreement's proof requirements (described in Paragraph 13 above), BrownGreer identified a timely claim as not payable when the Claimant: (1) submitted a materially incomplete Claim Form;[2] (2) failed to provide valid supporting documentation; (3) fell into one or more categories of excluded individuals as defined in Paragraph 1.2 of the Settlement

---

[2] As determined in consultation with the Parties, the Program defines a materially incomplete Claim Form as one that omits the Claimant's: (1) name; (2) address; (3) Taxpayer Identification Number; and/or (4) signature.

Agreement;[3] or (4) was a duplicate of another claim submitted by the same person.  Table 6

shows the claims determined to be not payable any amount after Initial Review:

| Table 6 | CLAIMS FOUND NOT PAYABLE IN INITIAL REVIEW | | |
|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Claimed |
| 1. | No Documentation | 361 | $128,920.32 |
| 2. | Invalid Documentation | 302 | $114,584.09 |
| 3. | Incomplete Claim Form | 370 | $43,474.12 |
| 4. | Multiple Reasons | 490 | $56,576.50 |
| 5. | Excluded | 110 | $26,170.89 |
| 6. | Subtotal | 1,633 | $369,725.92 |
| 7. | Duplicate[4] | 398 | $26,884.78 |
| 8. | TOTALS | 2,031 | $396,610.70 |

In consultation with the Parties, BrownGreer developed clear and instructive notices that

were mailed to Claimants with incomplete claims (Rows 1-4 of Table 6) and to Claimants

with excluded claims (Row 5 of Table 6), providing each individual with the reason the

claim was incomplete or seemed to be excluded and explaining specifically what that

Claimant needed to do to complete his or her claim or attempt to show that the Claimant was

not excluded, and the deadline by which the Claimant had to respond to the notice.  Each

notice also provided a toll-free number and invited the Claimant to call us if he or she had

---

[3] The Settlement Agreement excludes from this Vioxx Consumer Settlement Class: (1) members of the class previously certified by the Circuit Court of Jackson County, Missouri in the *Plubell* case with respect to purchases made while a resident of the State of Missouri; (2) individuals who purchased Vioxx after September 30, 2004; (3) persons who previously settled Vioxx-related claims, including participants in the Vioxx Resolution Program; (4) any of Merck's directors, officers, employees, or agents; (5) the Court, the judge's immediate family members, and the staff of the Court assigned to work on MDL 1657; (6) those individuals who timely and validly exclude themselves from the Class by means of the Opt Out Procedure. (Agmt. ¶¶ 1.2-1.3.)
[4] We identified 398 claims as duplicative of other claims submitted by the same person. We issued a Notice of Claim Closure to each of these claimants explaining that the claim was a duplicate and would be closed.

any questions or needed help.  Attachment 3 to this Declaration is the initial notice, titled

"Notice Regarding Your Claim," along with eight forms we developed with the Parties to

assist Claimants in perfecting their claims.

15.    *Claims Payable for More or Less than Amount Claimed.*  In addition to the

claims described in Paragraph 14 above that were determined not to be payable any amount,

we also encountered claims that presented valid proof of a Vioxx purchase or prescription and

thus were payable in an amount either greater than the sum the Claimant claimed in his or her

Claim Form, or payable in an amount less than that asserted in the Claim Form.  At the direction

of the Parties, we issued notices to all these Claimants to afford them the opportunity to

receive the maximum award that they could prove by their documentation.  Table 7 provides

detail on this Claimant population:

| Table 7 | PAYABLE CLAIMS RECEIVING A NOTICE FOLLOWING INITIAL REVIEW | | | |
|---|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Claimed | Amount Proven |
| 1. | Payable for Amount Claimed But Deficient for Option 1b[5] | 66 | $18,731.29 | $15,174.45 |
| 2. | Payable for Less Than Amount Claimed | 472 | $333,589.69 | $62,952.64 |
| 3. | Payable for More Than Amount Claimed | 137 | $34,824.37 | $64,782.53 |
| 4. | TOTALS | 675 | $387,145.35 | $142,909.62 |

16.    *Cure Periods.*  From August 22, 2014, to September 23, 2014, BrownGreer

issued a total of 2,338 Initial Notices.  Of them, 1,633 were to the Claimants with not

payable claims and 675 were to Claimants with claims (1) found payable in an amount that

---

[5] These Claimants, and those in Row 1 of Table 11 below, are considered payable for at least the amount already proven under Option 1a and will be paid any additional amount proven under Option 1b.

11

differed from the amount claimed on the Claim Form or (2) found payable in the amount claimed on the Claim Form under Option 1a seeking reimbursement for out-of-pocket Vioxx purchases but found deficient under the Option 1b portion of the claim seeking reimbursement for Post-Withdrawal Medical Consultations, as detailed in Paragraphs 14 and 15 above. The Settlement Agreement required that the Claims Administrator allow all these Claimants 30 days from the date of the notice to cure any deficiency. (Agmt. ¶ 11.7.) Each incomplete claim notices afforded Claimants 30 days to provide supplemental documentation and/or an explanation of their claim filing and provided the exact deadline that the documents were due.

17.     *Response to Initial Notices.* BrownGreer received 690 responses to the 2,338 Initial Notices we issued to Claimants. As expected, we received varying rates of responses from the various categories of incomplete and payable claims. Table 8 details the Initial Notice responses received on not payable claims and provides the rate at which claimants responded to particular deficiencies:

| Table 8 | RESPONSES TO INITIAL NOTICES ON NOT PAYABLE CLAIMS | | | | |
|---|---|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Claimed | Responses Received | Response Rate |
| 1. | No Documentation | 361 | $128,920.32 | 93 | 25.8% |
| 2. | Invalid Documentation | 302 | $114,584.09 | 52 | 17.2% |
| 3. | Incomplete Claim Form | 370 | $43,474.12 | 249 | 67.3% |
| 4. | Multiple Reasons | 490 | $56,576.50 | 91 | 18.6% |
| 5. | Excluded | 110 | $26,170.89 | 13 | 11.8% |
| 6. | TOTALS | 1,633 | $369,725.92 | 498 | 30.5% |

Table 9 shows the total and rate of responses to Initial Notices on payable claims:

| Table 9 | RESPONSES TO INITIAL NOTICES ON PAYABLE CLAIMS | | | | |
|---|---|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Proven | Responses Received | Response Rate |
| 1. | Payable for Amount Claimed but Deficient for Option 1b | 66 | $15,174.45 | 20 | 30.3% |
| 2. | Payable for Less than Amount Claimed | 472 | $62,952.64 | 79 | 16.7% |
| 3. | Payable for More than Amount Claimed | 137 | $64,782.53 | 93 | 67.9% |
| 4. | TOTALS | 675 | $142,909.62 | 192 | 28.4% |

We analyzed all responses received to make updated eligibility and benefit payment decisions.

We found that 83% percent of the responses cured the relevant deficiencies or payment amount

clarification, resulting in an additional $100,433.69 in payable award amounts.

## VII.   REMAINING INCOMPLETE CLAIMS AND SCHEDULE

18.   *Final Notices.*  After the expiration of each Claimant's initial 30-day cure

period, the Settlement Agreement directed the Claims Administrator to issue a "final notice"

if the claim remained deficient or otherwise not payable.  (Agmt. ¶ 11.7.)  We developed with

the Parties and issued a "Final Notice Regarding Your Claim," attached to this Declaration as

Attachment 4, to those Claimants who still required a notice after the expiration of their first

30-day cure period.  This Final Notice advised Claimants what was still missing from their

claims and allowed them another 30 days to furnish the information needed.  The Final

Notice again provided a toll-free number to call us if the Claimant had questions.  From

October 23, 2014, until October 31, 2014, we issued 1,764 of these Final Notices, 1,149 of

which were on not payable claims and 615 of which were on payable claims.  We also were able

to determine from newly submitted information that five claims were in fact duplicates of other

13

claims in the system.  Table 10 provides the breakdown of the number and types of not payable claims that received a Final Notice:

| Table 10 | NOT PAYABLE CLAIMS SENT A FINAL NOTICE | | |
|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Claimed |
| 1. | No Documentation | 282 | $114,940.41 |
| 2. | Invalid Documentation | 253 | $90,775.47 |
| 3. | Incomplete Claim Form | 95 | $5,515.56 |
| 4. | Multiple Reasons | 409 | $46,081.68 |
| 5. | Excluded | 110 | $23,633.08 |
| 6. | Subtotal | 1,149 | $280,942.05 |
| 7. | Duplicate | 5 | $875.00 |
| 8. | TOTALS | 1,154 | $281,821.20 |

Table 11 shows the 615 claims where the Final Notice explained that the claim was payable in an amount that differed from the amount requested on the Claim Form:

| Table 11 | PAYABLE CLAIMS RECEIVING A FINAL NOTICE | | | |
|---|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Claimed | Amount Proven |
| 1. | Payable for Amount Claimed and Deficient for Option 1b | 68 | $12,768.43 | $12,245.02 |
| 2. | Payable for Less than Amount Claimed | 493 | $101,363.95 | $66,118.52 |
| 3. | Payable for More than Amount Claimed | 54 | $4,981.96 | $13,608.48 |
| 4. | TOTALS | 615 | $119,114.34 | $91,972.02 |

19.    *Final Notice Response Deadlines.*  Final Notice response deadlines began to expire on November 22, 2014.  The last 30-day Final Notice response deadline expired on

November 30, 2014. Table 12 shows the daily totals of Final Notice response deadline expiration dates:

| Table 12 | FINAL NOTICE RESPONSE DEADLINES | |
|---|---|---|
| **Row** | **Response Deadline** | **Number of Claims** |
| 1. | Saturday, November 22, 2014 | 4 |
| 2. | Sunday, November 23, 2014 | 198 |
| 3. | Monday, November 24, 2014 | 468 |
| 4. | Thursday, November 27, 2014 | 645 |
| 5. | Friday, November 28, 2014 | 320 |
| 6. | Saturday, November 29, 2014 | 81 |
| 7. | Sunday, November 30, 2014 | 48 |
| 8. | **TOTALS** | **1,764** |

20.     *Final Notice Responses.*  BrownGreer received 344 responses to the 1,764 Final Notices we issued.  As expected, we again received varying rates of responses from the various categories of incomplete and payable claimants.  Table 13 details the Final Notice responses received on  not payable claims and provides the rate at which claimants responded to particular deficiencies:

| Table 13 | RESPONSES TO FINAL NOTICES ON NOT PAYABLE CLAIMS | | | | |
|---|---|---|---|---|---|
| **Row** | **Initial Review Outcome** | **Number of Claims** | **Amount Claimed** | **Responses Received** | **Response Rate** |
| 1. | No Documentation | 282 | $114,940.41 | 62 | 22.0% |
| 2. | Invalid Documentation | 253 | $90,775.47 | 36 | 14.2% |
| 3. | Incomplete Claim Form | 95 | $5,515.56 | 40 | 42.1% |
| 4. | Multiple Reasons | 409 | $46,081.68 | 57 | 13.9% |
| 5. | Excluded | 110 | $23,633.08 | 18 | 16.4% |
| 6. | **TOTALS** | **1,149** | **$280,942.05** | **213** | **18.5%** |

Table 14 shows the total and rate of Final Notice responses received on payable claims:

| Table 14 | RESPONSES TO FINAL NOTICES ON PAYABLE CLAIMS | | | | |
|---|---|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Proven | Responses Received | Response Rate |
| 1. | Payable for Amount Claimed but Deficient for Option 1b | 68 | $12,245.02 | 15 | 22.1% |
| 2. | Payable for Less than Amount Claimed | 493 | $66,118.52 | 87 | 17.6% |
| 3. | Payable for More than Amount Claimed | 54 | $13,608.48 | 29 | 53.7% |
| 4. | TOTALS | 615 | $79,727.00 | 131 | 21.3% |

We analyzed all responses received and performed a final deficiency response review to make updated eligibility and benefit payment decisions. This review found that 84% percent of the responses cured the relevant deficiencies or payment amount clarification, resulting in an additional $17,113.02 in payable award amounts.

21.    *Current Status of Claims.* Of the 8,354 unique claims filed timely in the Program, 7,365 claims (88.2%) are presently payable in the collective amount of $708,708.32. The vast majority of those claims (93.4%) are payable for the amount that the Claimant requested on his or her Claim Form.[6] The other 6.6% of payable claims are presently payable in an amount that differs materially from the amount the Claimant requested on his or her Claim Form. Table 15 shows the current number and status of all claims:

---

[6] The Program does not engage Claimants in the notice and cure process if a Claim is payable for an amount within $10.00 of the amount requested, for this *de minimis* difference did not warrant a notice and cure process.

| Table 15 | CURRENT STATUS OF ALL CLAIMS | | | |
|---|---|---|---|---|
| Row | Status | Number of Claims | Claimed Amount | Payable Amount |
| 1. | Payable | 7,365 | $730,016.98 | $708,708.32 |
| 2. | Not Payable | 989 | $263,759.33 | $0 |
| 3. | Duplicate | 403 | $27,584.78 | $0 |
| 4. | TOTALS | 8,757 | $1,021,361.09 | $708,708.32 |

Though most unique claims are currently payable, 11.8% still are not payable.  Table 16

shows the current number and type of these claims not payable any amount because they

remain incomplete:

| Table 16 | NOT PAYABLE CLAIMS BY CLAIMED OPTION | | |
|---|---|---|---|
| Row | Claimed Payment Options | Number of Claims | Amount Claimed |
| 1. | Claimed Option 1 | 218 | $216,200.31 |
| 2. | Claimed Option 2 | 640 | $32,000.00 |
| 3. | Claimed Both/Neither Options | 131 | $15,559.02 |
| 4. | TOTALS | 989 | $263,759.33 |

These 989 claims remain not payable for varying reasons, as detailed in Table 17:

| Table 17 | NOT PAYABLE CLAIMS BY REASON | | |
|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Claimed |
| 1. | No Documentation | 225 | $116,092.91 |
| 2. | Invalid Documentation | 238 | $83,056.59 |
| 3. | Incomplete Claim Form | 61 | $3,765.56 |
| 4. | Multiple Reasons | 355 | $37,211.19 |
| 5. | Excluded | 110 | $23,633.08 |

| Table 17 | NOT PAYABLE CLAIMS BY REASON | | |
|---|---|---|---|
| Row | Initial Review Outcome | Number of Claims | Amount Claimed |
| 6. | Subtotal | 989 | $263,759.33 |
| 7. | Duplicate | 403 | $27,584.78 |
| 8. | TOTALS | 1,392 | $291,344.11 |

## VIII.   DESCRIPTION OF POTENTIAL CALLING CAMPAIGN  TO CLAIMANTS WITH STILL INCOMPLETE CLAIMS

22.     *Suggested Calling Campaign.*  The Court is reviewing a request that the Claims Administrator attempt to call claimants whose claims remain incomplete to ask them to submit additional records.  I offer these thoughts for the Court's consideration.

23.     *Written Notices as the Best Practice.*  In my experience, it is best to notify claimants in writing of the outcome of the review of a claim in a claims settlement program, whether the result is that a claim is payable, must be denied, or is missing required supporting materials or information.  Written notices are the preferable method of alerting claimants to these outcomes, what the claimant is to do next, and any deadline by which the claimant must act. This applies to programs where claimants are represented by their own counsel, but applies with greater force where claimants are unrepresented, because:

> (a) Written notices can provide information to a claimant more clearly than oral discussions.  The notice can provide greater detail on Settlement Agreement requirements, what is missing from a claim, why the absent information is needed, and any actions the claimant may take in response in a form that can be read and re-read, rather than trying to absorb all the information in an oral conversation.  Written notices reduce the chance of confusion over the message delivered and debates later about what a claimant was told had to be done and by when.

> (b) Claimants can return to the written notice whenever needed as time passes, to refresh himself or herself on the status of the claim and actions needed.  Oral discussions do not provide this recurring reference.

18

(c) Written notices are more effective than telephone efforts at delivering information to unrepresented claimants. We mail written notices to the address provided to us by the claimant, which makes it more likely that the notice will reach the claimant. Written notices can recite that they are official communications and claimants may read them at their convenience. It is difficult to make contact when making telephone calls to claimants, because many persons are away from their phones, decline to answer calls from numbers they do not recognize, or mistrust the nature and purpose of the call and refuse to return messages or to talk when actually reached.

(d) Written notices provide a more accurate record of the information delivered than an oral conversation, where these is no record of what was said by either the claims administrator or the claimant.

(e) Written notices are more likely to treat all claimants uniformly and provide them with equal opportunities to cure problems with their claims. Because we rarely have phone numbers for all claimants and cannot reach them all when we do and attempt to call, telephone programs provide additional assistance to some but not all claimants.

(f) Written notices tend to make it easier for claimants with others in their household to safeguard information regarding their claim that they may wish to keep confidential. While we cannot be sure about who opens the mail delivered to a residence, we do know that the envelope is addressed to a particular recipient and until opened does not reveal anything about a claim. When making telephone calls, conversations are more easily overheard and, because we have to resort to leaving voicemail messages in about 50% of the calls, we must be guarded about the details left in the message out of concern over revealing private information to others in the household with access to the message system, which also dilutes the effectiveness of the message and the likelihood that the intended recipient will trust in the message and make a return call.

24.    *The Potential Efficacy of Outreach Calls.*  That is not to say that telephone outreach efforts to claimants serve no purpose. Such calls, when they follow up on a written notice, and when we are able to reach a claimant, can provide us an opportunity to hear a claimant's questions and assess whether the claimant understands the notice we have sent, what steps are available to the claimant and the deadline by which action must be taken. We do have telephone numbers for approximately 84% of the Claimants who received a Final Notice.

25.    *The Potential Calling Campaign.*  If the Court or the Parties so direct, BrownGreer could undertake a calling campaign to call the Claimants who have yet to

19

perfect their claims and/or whose currently payable claims are payable in an amount other than the claimed amount. Our call center staff would explain the purpose of the call, remind these Claimants of the response deadlines, and provide assistance to those seeking to respond to their Final Notices. If we are unable to contact a Claimant on the first attempt, we would attempt two additional calls before ceasing our efforts. A calling campaign of this size likely would take one to two weeks to complete, as we expect to be able to reach only approximately 50% of these Claimants on the first call. The expired notice response periods make successful implementation of such a calling campaign particularly challenging because the Program has already communicated to affected individuals (1) the existence and nature of a deficiency and (2) the finality of the Notice issued. Therefore, should the Court wish for us to conduct a calling campaign, the Court would need to consider extending the response deadline for affected Claimants, in which case it may be prudent first to issue written notice of the extension for the reasons outlined in Paragraph 23 above.

26. *Additional Program Costs.* The administrative budget that the Court approved on November 18, 2014 (Doc. No. 65064) did not contemplate a calling campaign as described above. These additional claims administrative services would require call center agent time, supervisor coverage, and additional claim file and mail handling, which would incur fees and pass-through costs totaling approximately $15,000 to $20,000.

## IX.   CONCLUSION

27. *Executing the Court's Decision.* We are prepared to execute any plan as approved by the Court to contact Claimants with incomplete claims, if the Court deems it necessary and proper to do so.

I, Orran L. Brown, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on this 5th day of December, 2014.

_____

Orran L. Brown, Sr.

# ATTACHMENT 1



## FOUNDING PARTNER
# ORRAN L. BROWN



BROWNGREER PLC
250 Rocketts Way
Richmond, Virginia 23219-4052
Direct Dial: (804) 521-7201
Facsimile: (804) 521-7299
obrown@browngreer.com

Orran provides guidance on the legal and administrative aspects of the design, approval, and implementation of notice programs and claims facilities for the resolution of mass claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles, and serves as or represents the trustees or directors of such facilities. He has served as a claims administrator, as a trustee directing the implementation of a settlement program, and as a special master presiding over discovery, records collection, and deposition scheduling and calendaring in coordinated multidistrict proceedings.

### *Education*

**Harvard Law School**
J.D. *cum laude,* 1981 (research assistant to Professor Lloyd Weinreb in criminal law and process)

**Hampden-Sydney College**
Hampden-Sydney, Virginia. B.A. *summa cum laude*, Government and Foreign Affairs, 1978 (GPA 4.0 out of 4.0; Co-Valedictorian; Chairman of the Student Court; Baker Scholar; Jefferson Scholar; Phi Beta Kappa; Omicron Delta Kappa; Pi Sigma Alpha; Eta Sigma Phi; received Algernon Sydney Sullivan Medallion for Leadership at graduation)

### *Professional Experience*

**BrownGreer PLC**, Richmond, Virginia.
2002 – Present. Partner and Founder of a law firm that specializes in MDL and multiple claim litigation and the legal and administrative aspects of the design, approval, and implementation of claims facilities to provide damages payments, medical monitoring, or other benefits for the resolution of mass claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles, and in serving as or representing the trustees or directors of such facilities.

**Bowman and Brooke, LLP**, Richmond, Virginia.
1999 – 2002. Partner. Founder and Director of the Mass Claims Resolution Group and member of the firm's Executive Committee. Specialized in mass tort, class action, and other group claims facility matters, proceedings and appeals. Advised management, trustees, and claims



administrators on the efficient design and operation of group claims facilities, strategies for the successful resolution of claims, the negotiation and drafting of resolution plans, legal proceedings to obtain court approval, and compliance with the agreements or court orders governing the claims resolution process. Also handled several litigation matters.

**Adjunct Professor, University of Richmond School of Law.**
1997 – 2004. Taught an upper-level course on MDL proceedings and complex litigation from 2001 through 2004. Taught trial and appellate practice from 1997 through 2001.

**Outside Counsel to the Dalkon Shield Claimants Trust,** Richmond, Virginia.
1990 – Present. Served as the primary outside general counsel to the $3.5 billion trust established in the Chapter 11 bankruptcy proceeding of the A. H. Robins Co. to handle over 400,000 personal injury claims arising from the Dalkon Shield IUD. Advised the Trust's management, trustees, inside counsel, and other outside counsel in the United States and other countries on the legal and managerial aspects of the Trust's fiduciary duties, operations (including employment issues and the Trust's lease, banking, investment and other contractual relationships), claims processing arrangements, and coordination and design of Alternative Dispute Resolution, arbitration, and trial proceedings on Dalkon Shield Claims. Represented the Trustees in the judicial proceedings in the bankruptcy and district courts, and many appeals to the Court of Appeals for the Fourth Circuit, arising out of implementing the bankruptcy Plan. Performed the same role for the two other trust funds created to handle Dalkon Shield Claims. Handled the steps and proceedings to close the three trusts and create insurance coverage and an escrow agent for run-off issues until 2008.

**Christian, Barton, Epps, Brent & Chappell,** Richmond, Virginia.
1986 – 1995. Partner and Member of the firm's Executive Committee. Handled securities fraud class actions, employment, products liability and commercial litigation in state and federal courts in Virginia and elsewhere. Counseled clients on employment law issues. Arbitrator for the American Arbitration Association for securities fraud and construction cases. Joined the partnership in 1990. Began representing the Dalkon Shield Claimants Trust in 1990 while still a member of this firm.

**Litigator in Houston, Texas.**
1982 – 1986. First with Liddell, Sapp, Zively, Brown & LaBoon and then with Miller, Keeton, Bristow & Brown after the Liddell, Sapp Litigation Chairman moved to that firm. General litigation matters, including the *Pennzoil v. Texaco* suit arising from Texaco's acquisition of Getty Oil. Tied for the highest score on the February 1983 Texas bar examination.

**Law Clerk to the Hon. Robert R. Merhige, Jr.**
1981 – 1982. United States District Court for the Eastern District of Virginia, Richmond, Virginia.

*Professional Activities*

- Virginia State Bar
- State Bar of Texas (Inactive status)



- Permanent Member, Fourth Circuit Judicial Conference
- Founding Member, Richmond Inn of Court

## *Bar Admissions*

- Virginia and Texas
- United States District Courts in Virginia and Texas
- United States Supreme Court
- United States Court of Appeals for the Fourth Circuit
- United States Court of Appeals for the Fifth Circuit

## *Selected Speaking and Writing*

- American Conference Institute: *11th Annual Drug and Medical Device Litigation. Making the Decision to Settle and Devising Novel End-Game Strategies.* December 15, 2006.
- American Conference Institute: *Resolving Mass Tort Products Liability Claims. What You Must Know About Settlement Administration.* March 28, 2007.
- American Conference Institute: *Resolving Mass Tort Products Liability Claims. Developing Your Settlement Position with Respect to Mass Tort Product Claims.* March 28, 2007.
- Louisiana State Bar Association's 8th Annual Class Action/Mass Tort Symposium. *The Function and Scope of the Claims Administration Process.* October 17, 2008.
- Center on Civil Justice: *The Future of Class Action Litigation: A View from the Consumer Class.* November 7, 2014.

## *Personal*

- Born in Lynchburg, Virginia, 1956
- Grew up on a family tobacco farm in Bedford County, Virginia, and worked on the farm until law school
- Married to Ellen Firsching Brown  (Former Environmental lawyer with Hunton & Williams, the Office of the Attorney General of Virginia and Dominion Resources; former law clerk to Hon. Frederick P. Stamp, Jr., United States District Judge for the Northern District of West Virginia)
- Four children (Orran, Jr., Carly, Read and Drew)
- Board of Trustees, Hampden-Sydney College, July 2009 – 2013
- Hampden-Sydney College Richmond Alumni Leadership Group, 2006 – present
- City of Richmond Charter Review Commission, 2008 – 2010
- Board of Directors, Housing Opportunities Made Equal, 2014 – present
- Board of Directors, The Corporation for Jefferson's Poplar Forest, February 2009 – present
- Board of Directors, Monument Avenue Preservation Society, 2007 – 2010
- Board of Trustees, The Roller-Bottimore Foundation, 2011 – present
- Boy Scouts Troop 444, Assistant Scout Master, 2014-present
- Various community activities, including coaching youth sports

# ATTACHMENT 2



# FIRM OVERVIEW

## DECEMBER 5, 2014

BROWNGREER PLC
250 Rocketts Way
Richmond, VA 23231
www.browngreer.com



# BROWNGREER PLC

## OUR FIRM

BrownGreer PLC is a premier claims resolution firm that assists clients with the legal and administrative aspects of the design, approval and implementation of claims facilities to provide damages payments, medical monitoring or other benefits for the resolution of mass claims. We also develop and implement the notice campaigns and other communications to the potential and actual claimants involved in such programs. Members of our firm also serve as or represent the trustees or directors of claims facilities.

BrownGreer was formed in 2002, but our principals, Orran Brown and Lynn Greer, have been at the center of some of the most significant multiple claims resolutions for more than 25 years. Since that time, our mission has been to fulfill the responsibilities of any settlement program to the satisfaction of all involved parties, including claimants, counsel, courts and other governmental entities.

As a firm of lawyers, analysts, software programmers and claims reviewers, we combine highly skilled lawyering with a practical understanding of the need for organized and centralized information and data, effective communication, and the administrative processes necessary to resolve multiple claims efficiently.

We administer and process claims for settlements arising from class actions, multidistrict litigation, government enforcement proceedings and other aggregation vehicles. Our court-supervised and voluntary settlement program experience covers causes of action including antitrust, bankruptcy, consumer protection, labor and employment, and products liability.

Our firm handles complex claims administration programs in a variety of industry contexts, including consumer products, food and beverage, financial services, pharmaceuticals and medical devices, and retail.

## OUR SERVICES

- ► Settlement Agreement Consultation
- ► Notice Administration
- ► Claims Processing
- ► Payment Programs
- ► Program Communications Management
- ► Claims Administration Audits
- ► Electronic Discovery
- ► Special Master



# SELECT EXPERIENCE

| SELECT ECONOMIC LOSS SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|
| **PROGRAM DESCRIPTION** | **ROLE** | **APPROX. PROGRAM SIZE** | **APPROX. SETTLEMENT FUND** |
| 1. *Gulf Coast Claims Facility.* Voluntary claims program to resolve economic loss and physical injury claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administrator; Transition Coordinator | 600,000 Claimants | $20 Billion cap; $6.5 Billion disbursed |
| 2. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* **MDL Docket No. 2179 (E.D. La).** Class action settlement to resolve economic loss and property damage claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administrator | 220,000 Claimants | Uncapped Fund; $3.9 Billion disbursed |
| 3. *In re Black Farmer's Discrimination Litigation,* **No. 08-mc-0511 PLF (D.D.C.).** Class action settlement to resolve claims of discrimination against African-American farmers by the U.S. Department of Agriculture regarding farm loans and loan servicing for claimants who had missed deadlines in a prior settlement. | Claims Review and Evaluation | 40,000 Claimants | $1.25 Billion |
| 4. *United States Securities and Exchange Commission v. American International Group, Inc.,* **No. 06-Civ. 100-LAP (S.D.N.Y.).** Securities enforcement action settlement between the SEC and a multinational insurance corporation over allegations of accounting fraud and related shareholder litigation. | Audited the Claims Administrator | 260,000 Class Members | $843 Million |
| 5. *In re Genetically Modified Rice Litigation,* **MDL Docket No. 1811 (E.D. Mo.).** Voluntary claims program to resolve claims concerning genetically modified rice and crop values. | Claims Administrator | 12,000 Claimants | $750 Million |
| 6. *In re Chinese-Manufactured Drywall Products Liability Litigation,* **MDL Docket No. 2047 (E.D. La.).** Class action settlement for the remediation of homes containing defective drywall manufactured in China. | Claims Administrator; Lynn Greer, Special Master | 25,000 Claimants | Blend of Uncapped and Capped Funds; $395 Million disbursed |
| 7. *United States v. National Treasury Employees Union,* **No. 93-1170 (D.C. App.).** Class action settlement between a federal employees' union and the U.S. Government for back payment of wages. | Trustee of Settlement Trust | 212,000 Class Members | $173 Million |
| 8. *Blando v. Nextel West Corp.,* **No. 02-0921-FJG (W.D. Mo.).** Class action settlement by a wireless telecommunications provider to resolve claims under Missouri law involving "cost recovery fees" charged to customers. | Advisor to the Court | 5,000,000 Class Members | $165 Million |
| 9. *In re Capital One Telephone Consumer Protection Act Litigation,* **MDL Docket No. 2416 (N.D. Ill.).** Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Claims Administrator | 17,500,000 Class Members | $75.4 Million |



| | SELECT ECONOMIC LOSS SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **APPROX. PROGRAM SIZE** | **APPROX. SETTLEMENT FUND** |
| 10. | *In re Vioxx MDL Settlement Agreement Related to Consumer Class Actions*, **MDL Docket No. 1657 (E.D. La.).** Class action settlement to resolve consumer protection claims arising from the marketing of prescription painkillers. | Claims Administrator | 8,000 Claimants | $23 Million |
| 11. | *Yarger v. ING Bank, FSB*, **No. 11-154-LPS (D. Del.).** Class action settlement to resolve claims related to advertising fixed rate mortgages under Delaware consumer law. | Notice and Claims Administrator | 115,000 Class Members | $20 Million |
| 12. | *United States of America v. Capital One, N.A.*, **No. 1:12-cv-828 (E.D. Va.).** Consent orders between a financial services company and (1) the Department of Justice and (2) the Office of the Comptroller of the Currency to resolve alleged violations of the Servicemembers Civil Relief Act. | Notice and Claims Administrator | 44,000 Claimants | $15 Million |
| 13. | *Spinelli v. Capital One Bank (USA)*, **No. 8:08-cv-132 (M.D. Fla.).** Class action settlement by a financial services company with credit card holders to resolve claims under the Truth in Lending Act. | Notice and Claims Administrator | 9,000,000 Class Members | $5 Million |
| 14. | *Hankins v. Carmax Inc.*, **No. 03-C-07-005893 CN (Baltimore County Md. Cir. Ct.).** Class action settlement to resolve claims that a retail car company sold used vehicles without disclosing that the vehicles had been used previously as short-term rentals. | Notice and Claims Administrator | 7,300 Class Members | $8 Million |
| 15. | *Cohen v. Warner Chilcott Public Ltd. Co.*, **No. 1:06-cv-00401-CKK (D.D.C.).** Class action settlement to resolve antitrust claims against two pharmaceutical companies regarding the sale of an oral contraceptive. | Notice Administrator | 2,000,000 Class Members | $6 Million |
| 16. | *Morgan v. Richmond School of Health and Technology, Inc.*, **No. 3:12-cv-00373-JAG (E.D. Va.).** Class action settlement by a for-profit vocational college to resolve claims under the Equal Credit Opportunity Act, Title VI of the Civil Rights Act of 1964 and the Virginia Consumer Protection Act. | Notice and Claims Administrator | 4,200 Class Members | $5 Million |
| 17. | *Rogers v. City of Richmond, Virginia*, **No. 3:11-cv-00620 (E.D. Va.).** Class action settlement under the Fair Labor Standards Act and Virginia law involving current and former city police officers alleging unpaid overtime wages. | Claims Administrator | 600 Claimants | $4.6 Million |
| 18. | *Llewellyn v. Big Lots Stores, Inc.*, **No. 09-cv-5085 (E.D. La.).** Class action settlement by a retailer to resolve claims under the Fair Labor Standards Act regarding the classification of assistant store managers. | Claims Administrator | 200 Class Members | $4 Million |
| 19. | *Herron v. CarMax Auto Superstores, Inc.*, **No. 2006-CP-02-1230 (Aiken County S.C. Jud. Dist.).** Class action settlement to resolve claims related to document processing fees charged to customers by a car dealer. | Notice and Claims Administrator | 27,000 Class Members | $3.8 Million |



| | SELECT ECONOMIC LOSS SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **APPROX. PROGRAM SIZE** | **APPROX. SETTLEMENT FUND** |
| **20.** | *Collins v. Sanderson Farms, Inc.,* No. 2:06-cv-02946 (E.D. La.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 21,000 Class Members | $3.1 Million |
| **21.** | *Nader v. Capital One Bank (USA),* No. CV-12-01265-DSF (RZx) (C.D. Cal.). Class action settlement by a financial institution to resolve claims under state privacy and wiretapping laws concerning the alleged recording of outbound customer service calls. | Notice and Claims Administrator | 1,800,000 Class Members | $3 Million |
| **22.** | *In re Children's Ibuprofen Oral Suspension Antitrust Litigation,* No. 1:04-mc-0535 (D.D.C.). Class action settlement to resolve claims of antitrust violations by two manufacturers of over-the-counter children's pain relievers. | Notice Administrator | 10,000 Class Members | $3 Million |
| **23.** | *United States of America v. Chevy Chase Bank, F.S.B.,* No. 1:13-cv-1214 (E.D. Va.). Consent decree between a financial services company and a federal regulatory agency involving allegations under the Equal Credit Opportunity and Fair Housing Acts. | Notice and Claims Administrator | 3,500 Class Members | $2.85 Million |
| **24.** | *Samuel v. EquiCredit Corp.,* No. 00-cs-6196 (E.D. Pa.). Class action settlement by a financial services institution to resolve claims under the Real Estate Settlement Procedures Act regarding the application of loan proceeds to pay mortgage broker fees. | Notice and Claims Administrator | 13,000 Class Members | $2.5 Million |
| **25.** | *Hall v. Capital One Auto Finance, Inc.,* No. 1:08-cv-01181 (N.D. Ohio). Class action settlement by a financial services company to resolve claims related to automobile repossession under Ohio consumer statutes. | Notice and Claims Administrator | 3,400 Class Members | $1.5 Million |
| **26.** | *Watts v. Capital One Auto Finance, Inc.,* No. CCB-07-03477 (D. Md.). Class action settlement by a financial services company to resolve claims related to automobile repossession under Maryland consumer statutes. | Notice and Claims Administrator | 2,700 Class Members | $990,000 |
| **27.** | *Churchill v. Farmland Foods, Inc.,* No. 4:06-cv-4023 (C.D. Ill.). Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Illinois law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 2,300 Class Members | $980,000 |
| **28.** | *Polanco v. Moyer Packing Company,* No. C.P., 1852 (Philadelphia County Pa.) Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Pennsylvania law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,500 Class Members | $850,000 |



| | SELECT ECONOMIC LOSS SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **APPROX. PROGRAM SIZE** | **APPROX. SETTLEMENT FUND** |
| **29.** | *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-0095 (W.D. Mich.). Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Michigan law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $700,000 |
| **30.** | *Santiago v. GMAC Mortgage Group, Inc.*, No. 784574 (E.D. Pa.). Class action settlement by a financial services company to resolve claims under the Real Estate Settlement Procedures Act concerning charges for mortgage settlement services. | Notice and Claims Administrator | 84,000 Class Members | $650,000 |
| **31.** | *Contreras v. PM Beef Holdings, LLC*, No. 07-CV-3087 (D. Minn.). Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Minnesota law for employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $500,000 |
| **32.** | *Morales v. Greater Omaha Packing Co. Inc.*, No. 8:08-cv-0161 (D. Neb.). Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Nebraska law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,000 Class Members | $490,000 |
| **33.** | *Graham v. Capital One Bank* (USA), N.A., 8:13-cv-00743 (C.D. Cal.).  Class action settlement related to claims under the California Unfair Competition Law regarding alleged improper disclosures and charges assessed on credit card accounts. | Notice and Claims Administrator | 22,500 Class Members | $460,000 |
| **34.** | Voluntary payment program by a city government to compensate current and former city police officers for unpaid overtime wages. | Claims Administrator | 175 Class Members | $300,000 |
| **35.** | *In re Moyer Packing Co., P. & S.* Docket No. D-07-0053 (U.S. Dep't Agric.). Consent decision involving a beef processing company to compensate cattle producers for goods sold based on weights derived using an allegedly malfunctioning weight calculation system. | Notice and Claims Administrator | 1,100 Claimants | $300,000 |
| **36.** | *Wilder v. Triad Financial Corp.*, No. 3:03-cv-863 (E.D. Va.). Class action settlement by a financial services company to resolve claims associated with automobile loan applications under the Fair Credit Reporting Act. | Notice and Claims Administrator | 80,000 Class Members | $200,000 |
| **37.** | *Conerly v. Marshall Durbin Food Corp.*, No. 2:06-cv-205 (N.D. Ala.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 1,900 Class Members | $150,000 |



| | SELECT ECONOMIC LOSS SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|---|
| | PROGRAM DESCRIPTION | ROLE | APPROX. PROGRAM SIZE | APPROX. SETTLEMENT FUND |
| 38. | *Ferguson v. Food Lion, LLC*, No. 12-c-861 (Berkeley County W. Va. Cir. Ct.). Class action settlement by a retail company to resolve claims under the West Virginia Wage Payment and Collection Act regarding timing of paychecks issued to discharged employees. | Notice and Claims Administrator | 185 Class Members | $150,000 |
| 39. | Voluntary settlement by a food processing company to resolve claims regarding employee compensation for donning/doffing protective equipment. | Notice Administrator | 670 Class Members | $125,000 |
| 40. | *Cook v. Columbia Freightliner, LLC*, No. 10-CP-02-1987 (Aiken County S.C. Jud. Dist.). Class action settlement to resolve claims regarding a trucking company and the collection of administrative fees in the sale of motor vehicles. | Notice and Claims Administrator | 380 Class Members | $17,000 |
| 41. | Voluntary payments by a financial institution to reimburse fees charged to the credit card accounts of small business owners. | Payment Administrator | 650 Class Members | $16,000 |
| 42. | *Clark v. Group Hospitalization and Medical Services, Inc.*, No. 3:10-CIV-00333-BEN-BLM (S.D. Cal.). Class action settlement by a health insurance provider to resolve claims under the Employee Retirement Income Security Act and California's Unfair Competition Law. | Notice and Claims Administrator | 80 Class Members | $1,300 Disbursed |
| 43. | *Quinn v. BJC Health System*, No. 052-00821A (City of St. Louis Mo. Cir. Ct.). Class action settlement by a healthcare system to resolve claims associated with hospital fees charged to uninsured patients. | Claims Administrator | 26,000 Class Members | Company Did Not Disclose |
| 44. | *Hoseler v. Smithfield Packing Co., Inc.*, No. 7:07-cv-166-H (E.D. N.C.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 12,200 Class Members | Company Did Not Disclose |
| 45. | *Edwards v. Tyson Foods, Inc.*, No. C07-4009 (S.D. Iowa). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 10,000 Class Members | Company Did Not Disclose |
| 46. | *Lopez v. Tyson Foods, Inc.*, No. 8:06-0459 (D. Neb.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Intake – Opt Ins | 8,500 Class Members | Company Did Not Disclose |
| 47. | *Gomez v. Tyson Foods, Inc.*, No. 08-021 (D. Neb.). Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 5,300 Class Members | Company Did Not Disclose |



| | SELECT ECONOMIC LOSS SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **APPROX. PROGRAM SIZE** | **APPROX. SETTLEMENT FUND** |
| **48.** | *Guyton v. Tyson Foods, Inc.*, No. 3:07-cv-00088-JAJ-TJS **(S.D. Iowa)**. Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and the Iowa law for employee compensation for time spent donning/doffing protective equipment. | Intake – Opt Ins | 4,200 Class Members | Company Did Not Disclose |
| **49.** | *Sharp v. Tyson Foods, Inc.*, No. C07-4009MWB **(N.D. Iowa)**.  Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and Iowa law for employee compensation for time spent donning/doffing protective equipment. | Intake – Opt Ins | 3,900 Class Members | Company Did Not Disclose |
| **50.** | *Acosta v. Tyson Foods, Inc.*, No. 8:08-cv-86 **(D. Neb.)**. Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 3,700 Class Members | Company Did Not Disclose |
| **51.** | *Stout v. JELD-WEN, Inc.*, No. 1:08-cv-0652 **(N.D. Ohio)**. Class action settlement by a window manufacturer to resolve claims under Ohio law for the sale of allegedly defective windows. | Notice Administrator | 2,700 Class Members | Company Did Not Disclose |
| **52.** | *Parker v. The Smithfield Packing Co., Inc.*, No. 2:06-cv-468 **(E.D. Va.)**. Voluntary settlement by a pork producer to resolve claims by employees under the Fair Labor Standards Act for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 2,700 Class Members | Company Did Not Disclose |
| **53.** | *Ene v. Maxim Healthcare Services, Inc.*, No. 4:09-cv-02453 **(S.D. Tex.)**. Class action settlement by a healthcare provider to resolve claims under the Fair Labor Standards Act concerning the classification of healthcare recruiters as exempt from overtime pay. | Notice Administrator | 1,600 Class Members | Company Did Not Disclose |
| **54.** | *Colbert v. Marshall Durbin Food Corp.*, **Alabama Arbitration No. 30 160 00132 08 (N.D. Ala.)**. Class action settlement by a poultry processing company to resolve claims by employees under the Fair Labor Standards Act for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 1,300 Class Members | Company Did Not Disclose |
| **55.** | *Betancourt v.  Maxim Healthcare Services, Inc.*, No. 10-cv-04763 **(N.D. Ill.)**. Class action settlement by a healthcare provider to resolve claims under the Fair Labor Standards Act concerning the classification of healthcare recruiters as exempt from overtime pay. | Notice Administrator | 1,200 Class Members | Company Did Not Disclose |
| **56.** | *In re Lehman Brothers Holdings Inc.*, No. 08-13555-JMP **(Bankr. S.D.N.Y.)**. Program to track, monitor and evaluate fees being charged by bankruptcy lawyers in the Lehman Brothers Chapter 11 bankruptcy proceeding. | Fee Committee Assistant | Not Applicable | Not Applicable |



| | SELECT PERSONAL INJURY SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **APPROX. PROGRAM SIZE** | **APPROX. SETTLEMENT FUND** |
| 1. | *In re Vioxx Products Liability Litigation*, **MDL Docket No. 1657 (E.D. La.).** Class action settlement to resolve claims arising from the use of prescription painkillers. | Claims Administrator | 60,000 Claimants | $4.85 Billion |
| 2. | *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, **MDL Docket No. 1203 (E.D. Pa.).** Class action settlement to resolve claims arising from the "Fen-Phen" diet drugs. | Liaison for the Defendant to the Settlement Trust | 600,000 Claimants | $3.55 Billion |
| 3. | *In re A.H. Robins Company Inc., Debtor (In re Dalkon Shield Claimants Trust)*, **MDL Docket No. 211 (Bankr. E.D. Va.).** Class action settlement created in the Chapter 11 bankruptcy proceeding of the A.H. Robins Company to resolve claims arising from the Dalkon Shield intrauterine device. | Counsel to the Settlement Trust | 400,000 Claimants | $3 Billion |
| 4. | *In re DePuy Orthopaedics, Inc., ASR Hip Implant Products*, **MDL Docket No. 2197 (N.D. Ohio).** Voluntary settlement program for claims relating metal-on-metal hip implant devices. | Claims Administrator | 7,500 Claimants | $2.475 Billion |
| 5. | *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, **MDL Docket No. 1203 (E.D. Pa.).** Voluntary settlement program to resolve opt outs from the class action settlement of claims arising from the "Fen-Phen" diet drugs. | Claims Administrator | 66,000 Claimants | $2.63 Billion |
| 6. | Confidential voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 12,000 Claimants | Fund Uncapped; $1.4 Billion Disbursed |
| 7. | *In re Sulzer Orthopedics and Knee Prosthesis Products Liability Litigation*, **MDL Docket No. 1401 (N.D. Ohio).** Class action settlement of claims relating to hip and knee implants. | Claims Administrator | 27,000 Claimants | $1.15 Billion |
| 8. | *In re National Football League Players' Concussion Injury Litigation*, **MDL Docket No. 2323 (E.D. Pa.).** Class action settlement to resolve claims the National Football League ignored and concealed risks of repetitive traumatic brain injuries. | Claims Administrator | TBD | Fund Uncapped |
| 9. | *In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, **MDL Docket No. 2385 (S.D. Illinois).** Class action settlement to resolve claims arising from the use of blood thinning medication. | Claims Administrator | 4,800 Claimants | $650 Million |
| 10. | Confidential voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 2,700 Claimants | Fund Uncapped; $279 Million Disbursed |



| | SELECT PERSONAL INJURY SETTLEMENT PROGRAM EXPERIENCE | | | |
|---|---|---|---|---|
| | **PROGRAM DESCRIPTION** | **ROLE** | **APPROX. PROGRAM SIZE** | **APPROX. SETTLEMENT FUND** |
| 11. | *In re Guidant Implantable Defibrillators Products Liability Litigation Settlement*, **MDL Docket No. 1708 (D. Minn.).** Class action settlement to resolve claims related to a medical device company's cardiac resynchronization therapy devices, implantable cardiac defibrillators and pacemakers. | Advised Defendant and Defense Counsel | 26,000 Class Members | $240 Million |
| 12. | *In re Nuvaring Products Liability Litigation*, **MDL Docket No. 1964 (W.D. Mo.).** Class action settlement to resolve claims concerning a contraceptive device. | Claims Administrator | 3,800 Claimants | $100 Million |
| 13. | *In re Phenylpropanolamine (PPA) Products Liability Litigation*, **MDL Docket No. 1407 (W.D. Wash.).** Class action settlement trust established to resolve claims related to an over-the-counter weight loss product. | Claims Administrator | 500 Claimants | $60 Million |
| 14. | *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, **MDL Docket No. 2100 (S.D. Ill.).** Class action settlement to resolve claims related to a prescription oral contraceptive. | Claims Administrator | 9,000 Claimants | $24 Million |
| 15. | *In re OxyContin Litigation - All Cases*, **No. 2002-CP-18-1756 (Dorchester County S.C. Ct.).** Class action settlement by a pharmaceutical company regarding a prescription pain killer. | Notice and Claims Administrator | 3,600 Class Members | $4.25 Million |
| 16. | *In re Seroquel Products Liability Litigation*, **MDL Docket No. 1769 (M.D. Fla.).** Multidistrict litigation proceedings involving the antipsychotic prescription drug Seroquel. | Special Master; Project Manager | Company Did Not Disclose | Company Did Not Disclose |

# ATTACHMENT 3

 **VIOXX** CONSUMER SETTLEMENT MDL 1657

# NOTICE REGARDING YOUR CLAIM

| DATE OF NOTICE: [Date] | | | DEADLINE FOR RESPONSE: [Date] + 30 |
|---|---|---|---|

## I. CLAIMANT INFORMATION

| **Claimant Name** | Last | First | Middle |
|---|---|---|---|
| **Claimant ID** | | **Law Firm** | |

## II. EXPLANATION

This Notice is an official communication from the Claims Administrator for the Nationwide Vioxx Consumer Settlement Program.

**[INCOMPLETE CLAIM LANGUAGE]**
We reviewed your claim. Unfortunately, it is **incomplete and not yet eligible for payment**.

**[CLAIM QUESTIONS LANGUAGE]**
We reviewed your claim, but we cannot make a final determination on it at this time because the information you provided raised one or more questions that require your attention.

Read below to see why you received this Notice and what you need to do to complete the processing of your claim.

| | REASON FOR NOTICE | WHAT YOU NEED TO DO |
|---|---|---|
| **1.** | | |
| **2.** | | |

## III. HOW TO RESPOND TO THIS NOTICE

If you need to submit additional documentation or claim information, you can do so online, by mail, or by email. To submit online, upload the documentation to your claim file using the Secure Claims Portal available at https://www.vioxxsettlement.com/VioxxSettlement/Logon.aspx. If you have not established a Portal Account, you may mail the Claims Administrator at the address below, and be sure to include your Claimant ID on the top page of all documents you submit.

Vioxx Consumer Claims Administrator
P.O. Box 26882
Richmond, VA 23261

## IV. GET MORE INFORMATION

For questions about this Notice, send an email to **Questions@VioxxSettlement.com**, or call 1-866-439-6932 and be sure to reference your Claimant ID listed above.



# POST-WITHDRAWAL MEDICAL CONSULTATION ATTESTATION

| I. CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | Middle |
| **Claimant ID** | | Law Firm | |

## II. ATTESTATION

Pursuant to Paragraph 11.2 of the Nationwide Vioxx Consumer Settlement Agreement, claims for costs and/or losses in connection with a Post-Withdrawal Medical Consultation must include an attestation that the medical consultation or diagnostic testing occurring between September 30, 2004, and November 30, 2004, had not been previously recommended or scheduled before September 30, 2004. In accordance with this requirement, I declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1. I visited my licensed physician for a Post-Withdrawal Medical Consultation between September 30, 2004, and November 30, 2004; and

2. That visit had not been previously scheduled or recommended before September 30, 2004.

| **Signature** | | | **Date** | ___/___/___ (Month/Day/Year) |
|---|---|---|---|---|
| **Printed Name** | Last Name | First Name | | Middle Initial |

CLAIMANT ID



# SIGNATURE SUPPLEMENT

| I. CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | Middle |
| **Claimant ID** | | **Law Firm** | |

| II. SWORN STATEMENT |
|---|

By signing below, I am declaring under penalty of perjury that I purchased Vioxx for personal or family use on or before September 30, 2004 and that the information in my Claim Form and all other submitted documentation are true and correct to the best of my knowledge.

| **Signature** | | **Date** | _____/_____/_____ <br> (month)  (day)  (year) |
|---|---|---|---|
| **Printed Name** | First | MI | Last |

VCS-01



# SSN/ITIN SUPPLEMENT

| I. CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | Middle |
| **Claimant ID** | | **Law Firm** | |

| II. TAXPAYER IDENTIFICATION INFORMATION |
|---|

In order to receive payment in the Vioxx Consumer Settlement Program, you must provide your complete Social Security Number (SSN) or Individual Taxpayer Identification Number (ITIN).  Your SSN/ITIN and the other personally identifiable information you provide are subject to court protection.

| **SSN/ITIN** | __ __ __ - __ __ - __ __ __ __ |
|---|---|

VCS-02

 **SWORN STATEMENT OF RESIDENCY**

| I. CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | Middle |
| **Claimant ID** | | **Law Firm** | |

## II. Country of Residence at the Time of Vioxx Purchase

Indicate below your country(ies) and state(s)/province(s) of residence at the time of your Vioxx purchase(s) and the location of your Vioxx purchase(s).

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | Country and State/Province of Residence | | Location of Vioxx Purchase (Country and State/Province) | | Date(s) | |
| 2. | Country and State/Province of Residence | | Location of Vioxx Purchase (Country and State/Province) | | Date(s) | |
| 3. | Country and State/Province of Residence | | Location of Vioxx Purchase (Country and State/Province) | | Date(s) | |
| 4. | Country and State/Province of Residence | | Location of Vioxx Purchase (Country and State/Province) | | Date(s) | |
| 5. | Country and State/Province of Residence | | Location of Vioxx Purchase (Country and State/Province) | | Date(s) | |

## III. SWORN STATEMENT

I declare under penalty of perjury that the information in this Sworn Statement of Residency is true and correct to the best of my knowledge.

| **Signature** | | **Date** | _____/_____/_____ (month) (day) (year) |
|---|---|---|---|
| **Printed Name** | First | MI | Last |

VCS-08



# SWORN STATEMENT OF RESIDENCY

## I. CLAIMANT INFORMATION

| Claimant Name | Last | First | Middle |
|---|---|---|---|
| | | | |

| Claimant ID | | Law Firm | |
|---|---|---|---|

## II. State of Residence at the Time of Vioxx Purchase

Indicate below your state(s) of residence at the time of your Vioxx purchase(s).

| | State of Residence | | Location of Vioxx Purchase | | Date(s) | |
|---|---|---|---|---|---|---|
| 1. | State of Residence | | Location of Vioxx Purchase | | Date(s) | |
| 2. | State of Residence | | Location of Vioxx Purchase | | Date(s) | |
| 3. | State of Residence | | Location of Vioxx Purchase | | Date(s) | |
| 4. | State of Residence | | Location of Vioxx Purchase | | Date(s) | |
| 5. | State of Residence | | Location of Vioxx Purchase | | Date(s) | |

## III. SWORN STATEMENT

I declare under penalty of perjury that the information in this Sworn Statement of Residency is true and correct to the best of my knowledge.

| Signature | | Date | ____/____/_____ |
|---|---|---|---|
| | | | (month) (day) (year) |

| Printed Name | First | MI | Last |
|---|---|---|---|

VCS-04

 **VERIFICATION OF CLAIMANT IDENTITY**

| I. CLAIMANT AT ISSUE | | |
| --- | --- | --- |
| **Claimant ID** | | |

| II. VERIFY YOUR PERSONAL INFORMATION |
| --- |

Enter below your correct and complete personal information.

| **Name** | Last | First | Middle |
| --- | --- | --- | --- |

| **Address** | Street/P.O. Box | | |
| --- | --- | --- | --- |
| | City | | State | Zip |

| **Date of Birth** | _____/_____/_____ (Month/Day/Year) | **SSN*** | _____ - ____ - _____ |
| --- | --- | --- | --- |

*Your Social Security Number and the other personally identifiable information you provide are subject to court protection.

| III. SWORN STATEMENT |
| --- |

I declare under penalty of perjury that the information in this form and any other information or documentation provided to the Vioxx Consumer Settlement Program is true and correct to the best of my knowledge.

| **Signature** | | **Date** | _____/_____/_____ (month) (day) (year) |
| --- | --- | --- | --- |
| **Printed Name** | First | MI | Last |

VCS-05

 **VIOXX EXPENSES CLARIFICATION FORM**

| I. CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | Middle |
| **Claimant ID** | | **Law Firm** | |

## II. VIOXX EXPENSES

You provided documentation showing a higher amount of Vioxx expenses than you claimed on your Claim Form.

| **1. Amount you claimed on your Claim Form** | One-time $50 Option 2 award. |
|---|---|
| **2. Amount proven by your documentation under Option 1** | [PROVEN AMOUNT] |

Indicate below the reason for this difference:

☐ **I have been reimbursed previously for the amount shown in Item II.2 above, and I selected Option 2 on my Claim Form in order to receive a one-time $50 payment for unreimbursed Vioxx expenses.**

☐ **I have not been reimbursed previously for the amount shown in Item II.2 above, and I selected Option 2 on my Claim Form in error.**

## III. SWORN STATEMENT

I declare under penalty of perjury that the information in this form is true and correct to the best of my knowledge.

| **Signature** | | **Date** | ____/____/____ (month) (day) (year) |
|---|---|---|---|
| **Printed Name** | First | MI | Last |

VCS-06B



# VIOXX EXPENSES CLARIFICATION FORM

| I. CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | Middle |
| **Claimant ID** | | **Law Firm** | |

## II. VIOXX EXPENSES

You provided documentation showing a higher amount of Vioxx expenses than you claimed on your Claim Form.

| | |
|---|---|
| **1. Amount you claimed on your Claim Form** | [CLAIMED AMOUNT] |
| **2. Amount proven by your documentation** | [PROVEN AMOUNT] |
| **3. Difference between amount proven and amount claimed** | [PROVEN AMOUNT] – [CLAIMED AMOUNT] |

Indicate below the reason for this difference:

☐ I have been reimbursed previously for the unclaimed amount shown in Item II.3 above.

☐ I have not been reimbursed previously for the unclaimed amount shown in Item II.3 above, and I entered an incorrect claimed amount on my Claim Form.

☐ I have not been reimbursed previously for the unclaimed amount shown in Item II.3 above, but the amount claimed on my Claim Form reflects my actual out-of-pocket costs for Vioxx.

## III. SWORN STATEMENT

I declare under penalty of perjury that the information in this form is true and correct to the best of my knowledge.

| **Signature** | | **Date** | ____/____/____ <br> (month) (day) (year) |
|---|---|---|---|
| **Printed Name** | First | MI | Last |

VCS-06A



# PAYMENT OPTION 2
# SWORN STATEMENT FORM

| I. CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **Claimant Name** | Last | First | |
| **Claimant ID** | | **Law Firm** | |

| II. SWORN STATEMENT | | | |
|---|---|---|---|

By signing below, I am declaring under penalty of perjury that I purchased Vioxx for personal or family use on or before September 30, 2004 and that other approved forms of proof of payment or proof of prescription are not available.

| **Signature** | | **Date** | ____/____/_____<br>(month) (day) (year) |
|---|---|---|---|
| **Printed Name** | First | MI | Last |

**VCS-03**

# ATTACHMENT 4



# FINAL NOTICE
## REGARDING YOUR CLAIM

**CONSUMER SETTLEMENT**
MDL 1657

| DATE OF NOTICE: [Date] | | | DEADLINE FOR RESPONSE: [Date]+30 |
|---|---|---|---|

### I. CLAIMANT INFORMATION

| Claimant Name | Last | First | Middle |
|---|---|---|---|
| Claimant ID | | Law Firm | |

### II. EXPLANATION

This Notice is an official communication from the Claims Administrator for the Nationwide Vioxx Consumer Settlement Program.  **This is the last Notice that we will send you regarding your claim in this Settlement Program.  Be sure to read it carefully.**

**[INCOMPLETE CLAIM LANGUAGE – NO RESPONSE]**

We previously sent you a Notice Regarding Your Claim explaining that your claim was incomplete and that you needed to submit additional documentation to become eligible for payment.  You did not respond to that Notice.  Accordingly, **your claim is still incomplete and not yet eligible for payment.**

**[CLAIM QUESTIONS LANGUAGE – NO RESPONSE]**

We previously sent you a Notice Regarding Your Claim explaining that we could not make a final determination on your claim because the information you provided raised one or more questions that required your attention.  You did not respond to that Notice.  Accordingly, **your claim still cannot be processed fully.**

**[INCOMPLETE CLAIM LANGUAGE – RESPONSE]**

We previously sent you a Notice Regarding Your Claim explaining that your claim was incomplete and that you needed to submit additional documentation to become eligible for payment.  We received and reviewed the materials you submitted in response to that Notice.  Unfortunately, **your claim is still incomplete and not yet eligible for payment.**

**[CLAIM QUESTIONS LANGUAGE – RESPONSE]**

We previously sent you a Notice Regarding Your Claim explaining that we could not make a final determination on your claim because the information you provided raised one or more questions that required your attention.  We received and reviewed the materials you submitted in response to that Notice.  Unfortunately, **your claim still cannot be processed fully.**

*This is your final opportunity to take additional action in this Settlement Program.*  Read below to see why you received this Notice and what you need to do to complete the processing of your claim.

| | REASON FOR NOTICE | WHAT YOU NEED TO DO |
|---|---|---|
| 1. | | |
| 2. | | |

CLAIMANT ID

| 3. | | |
|----|----|----|
| 4. | | |

| **III.  HOW TO RESPOND TO THIS NOTICE** |
|---|

If you need to submit additional documentation or claim information, you can do so online, by mail, or by email.  To submit online, upload the documentation to your claim file using the Secure Claims Portal available at https://www.vioxxsettlement.com/VioxxSettlement/Logon.aspx.  If you have not established a Portal Account, you may mail the Claims Administrator at the address below, and be sure to include your Claimant ID on the top page of all documents you submit.

Vioxx Consumer Claims Administrator<br>
P.O. Box 26882<br>
Richmond, VA  23261

| **IV.  GET MORE INFORMATION** |
|---|

For questions about this Notice, send an email to **Questions@VioxxSettlement.com**, or call 1-866-439-6932 and reference your Claimant ID listed above.