**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  VIOXX® | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| *This document relates to* | * | **JUDGE FALLON** |
| | * | |
| *Jo Levitt v. Merck & Co., Inc.* | * | **MAGISTRATE JUDGE KNOWLES** |
| **2:06-cv-09757-EEF-DEK** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF JO LEVITT'S OPPOSITION TO DEFENDANT**
**MERCK SHARP & DOHME CORPORATION'S MOTION FOR**
**SUMMARY JUDGMENT REGARDING PROXIMATE CAUSATION**

Plaintiff Jo Levitt, through her counsel of record, respectfully asks this Court to deny Defendant Merck Sharp & Dohme Corp.'s ("Merck") Summary Judgment Regarding Proximate Causation.  In support, Plaintiff states the following:

**I.  INTRODUCTION**

There is no doubt that Merck failed to warn both consumers and physicians about the dangers associated with Vioxx.  After taking Vioxx, Ms. Levitt experienced these dangers first-hand as Vioxx gave her aggressive coronary artery disease and caused her to suffer through multiple heart surgeries.  Merck has now filed a Motion for Summary Judgment on the grounds that, even assuming this is all true, Ms. Levitt cannot establish proximate causation because one of her treating physicians and a paid representative of Merck, testified that he would continue to prescribe Vioxx to Ms. Levitt today if he could.  Dr. Katz did, however, admit that he warns patients of any major risks of medications that he is made aware of.  Ms. Levitt testified that, given her increased risk of heart problems, she would not have agreed to take Vioxx had she been made aware of these risks.  Because the testimony of Dr. Katz, a clearly biased witness,

even if taken at face value does not prevent a jury from finding that an adequate warning would have prevented Ms. Levitt from taking Vioxx, Defendant Merck's Motion must be denied.

## II.  LEGAL AUTHORITY AND ARGUMENT

### A.  Merck's Enormous Burden on Summary Judgment

The Fifth Circuit has explained that summary judgment is a "drastic relief" and must be approached cautiously. *Transource Int'l, Inc. v. Trinity Indus., Inc.,* 725 F.2d 274, 279 (5th Cir. 1984), citing *Solomon v. Houston Corrugated Box Co., Inc.,* 526 F.2d 389, 393 (5th Cir.1976). Summary judgment should <u>only</u> be entered if when viewing the evidence in a light *most favorable* to the non-moving party, it appears from the pleadings, depositions, answers to interrogatories, admissions, and affidavits that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Transource*, 725 F.2d at 279.

Because Merck is seeking summary judgment based on the affirmative defense of the learned intermediary doctrine in a products liability action, its burden is even higher.  First, Merck has the burden to prove that each and every element of the learned intermediary doctrine applies in this case.  "To obtain summary judgment, if the movant bears the burden of proof on an issue because as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the defense to warrant judgment in his favor." *Martin v. Alamo Cmty. Coll. Dist*., 353 F.3d 409, 412 (5th Cir. 2003).  Merck, and not Ms. Levitt, has the burden to present evidence demonstrating that the learned intermediary doctrine applies.  Any gaps in the evidentiary record or unanswered factual questions will therefore serve to defeat Merck's Motion for Summary Judgment.

Second, Summary Judgment is especially disfavored in products liability actions: "The nature of the claims that underlie products-liability actions commonly present complicated factual questions that are inappropriate for resolution without a full trial . . . [Q]uestions, such as whether defendant's product is in fact defective, by their very nature raise difficult factual issues that commonly cannot be determined on summary judgment." Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2729.1 (3d ed.). *See also Kampen v. American Isuzu Motors, Inc.,* 923 F.Supp. 109 (E.D. La. 1996) (summary judgment typically inappropriate for products-liability cases), aff'd in part, remanded in part on other grounds, 119 F.3d 1193 (5th Cir. 1997),rehearing en banc granted and opinion vacated on other grnds., 130 F.3d 656 (5th Cir. 1997); *Davidson v. Stanadyne, Inc.,* 718 F.2d 1334, 1339 (5th Cir. 1983) (summary judgment inappropriate for products liability actions); *Harris v. General Motors Corp*., 201 F.3d 800 (6th Cir. 2000) (conflict in expert testimony makes summary judgment inappropriate for products liability actions).

As the party opposing the motion for summary judgment, Ms. Levitt bears the burden of responding *only after* Merck, as the moving party, meets its burden of coming forward with proof of the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

Merck, therefore, has the burden to present evidence that conclusively establishes that every element of the learned intermediary doctrine is satisfied. Even if it meets this initial burden, Ms. Levitt can overcome the motion by presenting evidence showing there is a genuine dispute as to any one of Merck's material facts. The Court is not permitted to weigh the merits or credibility of the evidence, rather "the evidence of [Plaintiff] is to be believed, and all justifiable inferences are to be drawn in [Plaintiff's] favor." *Eastman Kodak Co. v. Image Technical Services, Inc.* 112 S.Ct. 2072, 2077 (1992). Because the evidence does not establish that the

learned intermediary doctrine applies to this case as a matter of law, Merck's motion must be denied.

**B. This Court Should Not Consider Merck's "Background" Section of Its Brief As It Presents Controverted And Unsupported Facts Irrelevant To The Issue At Hand**

To support its Motion, Merck relies on twenty-three facts and a mere four (4) pages of argument.  In fact, the bulk of Merck's Motion is a ten-page "background" section which attempts to present contested facts immaterial to the motion as a true and accurate history of the case.  In doing so, Merck misrepresents the facts and presents a one-sided and biased version of both the events and Ms. Levitt in an apparent attempt to convince this Court that no great injustice will be had if her case is dismissed.  This is a clear attempt to distract the Court from the reality that neither the facts nor the law supports Summary Judgment.  Merck misrepresents Ms. Levitt's medical history, smoking history, the nature of her business and work life, the nature of her injuries, her recovery, and Ms. Levitt as a person in general.

While none of this is germane to the issues raised by Merck, it is important for the Court to understand that it does not reflect reality.  Ms. Levitt is a hard-working entrepreneur who started two businesses in her garage and built them into successful endeavors employing hundreds of people.  Prior to the cardiovascular events caused by Vioxx, she was a fifteen-year non-smoker who ran dozens of miles each week.  Vioxx robbed her of her health and much of the fruits of her business.  Vioxx has caused permanent and lasting damage to her cardiovascular system.  She continues to suffer from her injuries, including over several million dollars in economic damages alone.  This is not a frivolous case despite Merck's suggestion to the contrary.  Merck has seriously injured Ms. Levitt by callously seeking profit at any cost – including the health of its customers.  When all the evidence is presented to the finder of fact in

this case, it will look nothing like the picture Merck paints in the "background" section of its Motion.

### C.  The Learned Intermediary Doctrine Does Not Apply

There is no dispute that Merck failed to warn Ms. Levitt of the dangers Vioxx posed to her.  Merck relies on the learned intermediary doctrine to argue that it did not have a duty to warn Ms. Levitt.  The learned intermediary doctrine is an affirmative defense under Missouri law, and Merck bears the burden in proving it applies in this case.  *Redd v. DePuy Orthopaedics*, Inc., No. 4:13CV2228 CDP, 2014 WL 4467543, at *8 (E.D. Mo. Sept. 8, 2014).  ("A review of cases discussing Missouri's learned intermediary doctrine indicates that it is typically asserted by a defendant as an affirmative defense to a failure to warn claim.") (internal citations omitted).

If a defendant can prove that the learned intermediary doctrine applies in a case, the defendant is relieved from the duty of directly warning the consumer of the dangers of its drug.  Instead, the defendant will be held to have satisfied its duty to warn if it as given a proper warning to the physicians:

> This doctrine provides that a pharmaceutical manufacturer has a duty to warn a physician of the risks involved with the pharmaceutical, and the physician then acts as a 'learned intermediary' between the manufacturer and the patient's physician. (*Also see Ehlis v. Shire Ridgewood, Inc.*, 367 F.3d 1013, 1016 (8th Cir. 2004).)  Thus, a warning to the [physician] is deemed a warning to the patient; the manufacturer need not communicate directly with all ultimate users of prescription drugs.

*LaChance v. American Home Products Corp., et al.*, 2006 WL 89850 at 2 (W.D. Mo. Jan. 13, 2006),

In *LaChance*, the defendant moved for summary judgment on the learned intermediary doctrine, arguing that it had created "Dear Doc" letters that adequately warned of the risks.  The court denied summary judgment because the defendant had failed to meet its burden of proof

establishing that the plaintiff's physician actually received these letters: "Defendants failed to identify undisputed facts demonstrating physicians were properly warned of the risks associated with [the prescription drug]. . . . Defendants failed to present facts demonstrating [plaintiff's] physician obtained knowledge about the risks of [the drug] outside of the information from the manufacturer. Without such facts, summary judgment cannot be granted on the issue of the learned intermediary doctrine." *Id.* at *3.

Here, Merck does not dispute that it failed to warn Ms. Levitt's physicians of the dangers of Vioxx. Instead, Merck argues that even if it had provided adequate warnings, Dr. Katz would have still prescribed Vioxx. In short, Merck is arguing that even though it did not meet the requirements of the learned intermediary doctrine, this affirmative defense still applies. Merck argues that if it had provided a warning to Ms. Levitt's physicians, these learned intermediaries would have still prescribed her Vioxx, thus allowing Merck to escape liability for its failure to warn either Ms. Levitt or her physicians.

## 1. The Doctrine is Inapplicable Because Merck Failed To Warn Ms. Levitt's Physicians

In order for the learned intermediary doctrine to apply, Merck had to communicate warnings about the dangers of its products to plaintiff's treating physicians: "[T]he sole issue is whether appellant negligently failed to make reasonable efforts to warn appellee's doctors. . . **If appellant did so fail, it's liable regardless of anything the doctors may or may not have done**." *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 151 (Mo. 1967) (emphasis added). By failing to raise the issue Merck concedes for the purposes of this motion that it did not give adequate warnings to Ms. Levitt's physicians. As such, the learned intermediary doctrine cannot apply as a matter of law. *McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir. 2006). ("Even in the

context of a learned intermediary, if the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user.")

> **2. The Learned Intermediary Doctrine Does Not Apply To Plaintiff's Allegations Based On Acts And Omissions Of Merck Beyond A Failure To Warn**

> **a. Ms. Levitt Has Pled Several Theories Beyond Simple Failure To Warn**

Merck admits that the learned intermediary doctrine only applies to failure to warn claims (*See* Merck's Motion, f.n. 11; page 12 "Thus, Ms. Levitt's failure-to-warn claims fail."). Ms. Levitt has alleged that she was harmed not only by Merck's failure to warn, but by its defective design of Vioxx and other negligence, including its failure to properly investigate the safety of Vioxx before bringing it to market.  Merck attempts to avoid this fact by arguing that this Court should lump all of her claims together and read her complaint as stating a single claim for failure to warn.

In attempting to lump Ms. Levitt's claims together, Merck relies on the Eastern District of Texas' decision in *In re Norplant Contraceptive Products Liability Litigation*, 955 F. Supp. 700 (E.D. Tex. 1997). However, a Missouri Court has discussed the *Norplant* decision and found it so distinguishable as to be inapplicable.  In *Hill v. Wyeth, Inc.*, 2007 WL 674251 (E.D. Mo. 2007) the Eastern District of Missouri faced a motion for summary judgment filed by the defendant pharmaceutical company that relied on *Norplant* and argued that all of the plaintiff's claims were premised on an alleged failure to warn. The court denied that portion of the defendant's motion, explaining that a review of the complaint:

> reveals [plaintiff] clearly intends to pursue claims unrelated to [defendant's] failure to warn. For example, in Count I, Plaintiff alleges [defendant] breached its expressed and implied warranties that [the pharmaceutical] was safe for its intended use, and free from manufacturing or production defects. Further, in Count II, Plaintiff alleges [the pharmaceutical] was defective in design and unreasonably dangerous. Finally, in Count IV, Plaintiff alleges [Defendant] breached its duty of reasonable care by failing to, among other things, conduct

> sufficient testing of [the pharmaceutical]. With these allegations, Plaintiff expresses concerns unrelated to [defendant's] alleged failure to warn of the risks associated with [the pharmaceutical].

*Id*. at *2 (internal citations omitted).

Likewise, in *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2009 WL 902351 (E.D. Pa. Apr. 2, 2009), cited and relied upon by Merck for its Motion, the Court specifically stated: "**The learned intermediary doctrine only applies to claims based on a failure to warn theory.**" *Id.* at *3. There, the Court found that a review of the plaintiffs' complaint revealed an intention to pursue claims in addition to the defendant's alleged failure to warn, including counts grounded on negligence and negligence per se; design and marketing defects, strict products liability, and breaches of the implied warranty of merchantability. *Id.* The Court held: "these are independent causes of action and do not appear to be premised on [defendant's] alleged failure to warn. We hold that the learned intermediary doctrine only bars those claims whose gravamen is failure to warn." *Id.*

Like the plaintiffs above, Ms. Levitt has pled several causes of action beyond failure to warn. In Count I, Ms. Levitt alleges that Vioxx was defective in design and unreasonably dangerous (¶ 42). In Count II, Ms. Levitt alleges that Merck breached its duty of reasonable care by failing to, among other things, adequately and properly test Vioxx (¶ 46). Finally, in Counts IV and V, Ms. Levitt alleges that Merck breached its express and implied warranties that Vioxx was safe, effective, and fit and proper for its intended use. As the Courts held in *Hill v. Wyeth* and *In re Diet Drugs Prods. Liab. Litig*, each of these allegations show that Ms. Levitt has expressed concerns unrelated to Merck's alleged failure to warn of the risks associated with Vioxx.

> **b. Ms. Levitt's Claims Based on Actions Other Than The Failure To Warn Are Not Preempted**

8

Ms. Levitt's claims are not preempted by federal law.  In an attempt to avoid the merits of Ms. Levitt's other claims, Merck appears to ask this Court to grant summary judgment on these other claims in a footnote on page 11 of its brief.  Merck claims that, pursuant to *Mut. Pharm. Co. v. Bartlett*, 133 S.Ct. 2466, (2013), "any such claim is preempted because FDA regulations prohibit changes to an approved medication's formula without FDA approval."  The case in *Bartlett* is off-point and easily distinguishable.  It involved a generic drug and the court held that because a generic drug manufacturer does not have the ability to change a warning label without FDA approval, it cannot be held liable under a state law tort claim for failing to do so.  It is not relevant to Ms. Levitt's claims for negligence and design defect against Vioxx, Merck's brand-name drug.

In *Wyeth v. Levine*, 555 U.S. 555, (2009), the Supreme Court of the United States held that state tort claims alleging failure to warn against a manufacturer of a name-brand drug <u>are not preempted by federal law</u>.  The Supreme Court also held that a manufacturer cannot escape liability on the grounds that the FDA has approved the warning label because "it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times."  *Wyeth v. Levine*, 555 U.S. 555, 570-71, (2009).  The Supreme Court rejected the argument that state tort law claims are inconsistent with the purposes of the FDA, holding that Congress "determined that widely available state rights of action provided appropriate relief for injured consumers . . . (i)f Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70–year history."  *Levine*, 555 U.S. at 574.

Since the Supreme Court's holding in *Levine*, courts have recognized that claims against drug manufacturers based on design defect, negligence, and strict liability, like claims based on

9

failure to warn, are not preempted by federal law.  In *Wimbush v. Wyeth*, 619 F.3d 632 (6th Cir. 2010), the Sixth Circuit overturned the district court's grant of summary judgment based on preemption and held that claims for negligence based on actions the manufacturer took prior to a drug's approval by the FDA were not preempted by federal law.  The court held that it "can discern no physical impossibility between complying with a state law duty to exercise reasonable care in the process leading up to placing a drug on the market and complying with the federal government's process for approving drugs."  *Wimbush*, 619 F.3d at 643.  The Sixth Circuit cited *Levine* and concluded that "the FDA traditionally regarded state law as a complementary form of drug regulation."  *Wimbush*, 619 F.3D at 645, citing *Levine* 129 S.Ct. at 1202. *See also, Newman v. McNeil Consumer Healthcare*, No. 10-CV-01541, 2012 WL 39793, at *13 (N.D. Ill. Jan. 9, 2012) (apply the logic in *Levine* to design defect and warranty claims); and *In re Fosamax Products Liab. Litig*., 742 F. Supp. 2d 460, 466 (S.D.N.Y. 2010) (state negligence and strict liability claims not preempted by FDA Regulations).

Merck cannot show it is entitled to judgment as a matter of law.  Ms. Levitt has pled several allegations beyond Merck's failure to warn.  By Merck's own admission, the learned intermediary doctrine can only prevent a plaintiff from pursuing claims based on a failure to warn.  The law is clear that Ms. Levitt's claims of negligence, design defect, strict liability, and breach of warranty are not preempted by FDA regulations, notwithstanding Merck's footnote to the contrary.  Merck has not met its burden and its Motion for Summary Judgment based on the learned intermediary doctrine must be denied.

### 3. Ms. Levitt's Allegations Speak to the Industry As A Whole, Not Merely Her Treating Physician

Merck's Motion additionally fails for the reason that the learned intermediary doctrine clearly does not apply to the allegations in this case. As noted by the Court in *Plubell et al v.*

*Merck* in granting the Plaintiffs' Amended Motion for Class Certification (attached hereto as **Exhibit 12**), "a fundamental requirement for application of the learned intermediary doctrine is full and complete disclosure to doctors." *Id.*, page 18. The plaintiffs in *Plubell* had alleged that Merck withheld information from the "health care industry," and that Merck fraudulently "caused the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld the severity of cardiovascular risks associated with Vioxx. . . ." In discussing the learned intermediary doctrine, the *Plubell* Court stated that "the doctrine may not apply" due to the allegations targeted not only at the plaintiff and her treating physician, but at the healthcare industry as a whole.

Here, Ms. Levitt's Complaint is full of allegations of how Merck marketed and advertised Vioxx not just to Ms. Levitt and her treating physicians, but to the industry as a whole.  Her complaint alleges that Merck engaged in a massive campaign to hide the dangers of Vioxx from the consuming public and healthcare industry as a whole. The learned intermediary doctrine simply does not apply in this case due to these factual allegations. Merck's Motion for Summary Judgment should be denied.

### 4.  Dr. Katz Was Paid By Merck to Prescribe Vioxx to Ms. Levitt and Other Patients

There is an exception to the learned intermediary doctrine when a physician is paid by the offending pharmaceutical company. Here, for a period of approximately six years, Dr. Katz was on the Speaker Bureau for Defendant Merck and specifically spoke on the benefits of Vioxx (SOF 104).

In *Murthy v. Abbott Laboratories*, 847 F. Supp. 2d 958 (S.D. Tex. 2012), the court held that compensation of a prescribing physician for his participation in a clinical trial created an exception to the learned intermediary rule.  The court explained that the learned intermediary

doctrine is based on the assumption of an objective intermediary who exercises independent judgment.  This objectivity and independence is called into question when it is revealed that the defendant is providing money or gifts the physician:   "[W]hen a physician receives compensation or gifts from drug companies, his or her role as the neutral decision-maker is diminished. As such, dismissal of [plaintiff's] failure to warn claim on learned intermediary grounds would not be appropriate at this time."  *Id.*

Here, Dr. Katz' position with Merck as an advocate for Vioxx defeats the learned intermediary doctrine.  For all intents and purposes, Dr. Katz was an agent of Merck. In fact, he was one of Merck's own investigators for the ADVANTAGE study, as shown by the Appendix to Exhibit 14. Dr. Katz's name appears under the State of Kansas for physicians who worked as investigators for Merck.  The presumption that Dr. Katz would use independent judgment about the best course of treatment for Ms. Levitt is nullified by the fact that he was working for Merck at the time he was prescribing Vioxx to Plaintiff. The learned intermediary doctrine does not apply in this scenario.  Dr. Katz receives several benefits, monetary and otherwise, from Merck in order to encourage other physicians to prescribe its products. Human nature dictates that his judgment is clearly influenced by the pharmaceutical company writing him checks.  At the very least Dr. Katz' objectivity is a factual issue for the jury.

### 5.  Merck's Direct-to-Consumer Marketing Creates An Exception to the Doctrine

There is no dispute that Merck failed to warn Ms. Levitt of the dangers of the drug and that, had it warned her, she would not have taken Vioxx.  The learned intermediary doctrine has no application when a pharmaceutical company markets and advertises its product directly to consumers because there is no "intermediary" between the drug manufacturer and the end consumer. Given Ms. Levitt's sworn testimony in this case, both in her deposition (SOF 48) and

her Plaintiff Profile Form (SOF 53), that she first heard of Vioxx directly from Merck, the doctrine does not apply to bar her claims. The fundamental justification for the doctrine—that patients rely solely on their doctors to choose what prescription drugs they should take—simply does not exist in a case such as here where the patient specifically requests a prescription for a certain drug.

In *Perez v. Wyeth Labs. Inc.*, 734 A.2d 1245 (1999), the New Jersey Supreme Court explained that by marketing its drug directly to consumers, a pharmaceutical company disrupts the patient-physician relationship that the learned intermediary doctrine is based on. Thus, when a manufacturer chooses to undermine this relationship by speaking directly to consumers, it cannot rely on the learned intermediary doctrine and has a duty to provide warnings directly to consumers: "Consumer-directed advertising of pharmaceuticals thus belies each of the premises on which the learned intermediary doctrine rests." *Perez*, 734 A.2d at 1256. This is known as the direct-to-consumer exception to the learned intermediary doctrine, and is has been embraced by Missouri courts. *See, Plubell v. Merck and Co Inc.*, 2008 WL 4771525, ("The Court further notes that, given the massive direct-to-consumer advertising alleged here, the fundamental justification for the doctrine - - that patients rely solely on their doctors to choose which prescription drugs they take - - simply may not exist in this case."), citing *Perez* with approval. *See also, Doe v. Miles, Inc.*, No. ED75100, 2000 WL 667383, at *17 (Mo. Ct. App. May 23, 2000) (holding that such exception may exist under Missouri law, but is inapplicable to facts of the case); *Hill v. Searle Laboratories*, 884 F.2d 1064, 1070-71 (8th Cir 1989) (holding that manufacturers of contraceptives are required to warn the consumers of their products based, in part, on the fact that they directly advertise the product to consumers);*Garside v. Osco Drug, Inc.*, 764 F Supp 208, 211 n.4 (D. Mass. 1991) (recognizing the validity of the direct-to-

consumer advertising exception to the learned intermediary doctrine), rev'd on other grounds, 976 F.2d 77 (1st Cir 1992).

If this court believes the learned intermediary doctrine otherwise might apply to this case (it does not as explained above), it should follow the same rationale and holding of *Perez*. When the manufacturer chooses to attempt to directly influence the consumer's choice of drug, the manufacturer assumes a duty to provide accurate, and not misleading, information to the consumer. Merck chose to advertise Vioxx directly to consumers, and as such cannot claim the benefits of the learned intermediary doctrine.

Ms. Levitt testified in her deposition that she first heard of Vioxx **directly from Merck** (SOF 49) She then specifically requested her treating physician, Dr. Hartman, to prescribe her Vioxx.[1] Ms. Levitt testified that she learned of Vioxx through advertisements in magazines, and gained the understanding that Vioxx was similar to a "super aspirin." (SOF 49). On page 5 of the Supplemental Plaintiff Profile Form, that Ms. Levitt filled out, in answering the question "Who prescribed Vioxx for you?" Ms. Levitt answered: "I asked Dr. Hartman to prescribe Vioxx at my annual check up." (SOF 53; Exhibit A to Merck's Motion for Summary Judgment). This request by Ms. Levitt is confirmed in Dr. Hartman's medical records from July, 1999. His records provide "wants to try Vioxx. . ." (SOF 53, citing JL-HMA-00016, enclosed in Exhibit 6).

In this case, as the cases cited above, the learned intermediary doctrine simply does not apply. Because Merck chose to sell Vioxx directly to Ms. Levitt, Merck had a duty to provide adequate warnings directly to Ms. Levitt.   It cannot slice through the doctor-physician relationship to directly offer her misleading information about its product and then hide behind that same relationship when she complains about the very same misleading information.  The learned intermediary doctrine only applies to relieve a manufacturer of its duty to directly warn

---

[1] Merck has purposefully chosen not to depose Dr. Hartman.

the consumer when the manufacturer is not directly selling its product to the consumer.  Because Merck made the choice to advertise in print media and through television commercials to sell Vioxx as a "super aspirin" directly to consumers such as Ms. Levitt, it had a duty to warn her of the dangers it knew Vioxx posed.

### D.  Merck's Motion Relies On Several False Assumptions of Fact

Merck makes several false assumptions of fact in its Motion for Summary Judgment, all of which are fatal to its argument.  Merck assumes the Dr. Katz was Ms. Levitt's first and only prescribing physician.  He was not.  Merck assumes that Dr. Katz would have failed to share any warnings about Vioxx from Ms. Levitt.  He would not.  Merck assumes that Ms. Levitt would have consented to taking Vioxx has she known about the dangers at issue in this law suit.  She would not (SOF 126-132, 134). Merck assumes that Dr. Katz' testimony is uncontroverted.  It is not.  Finally, Merck assumes that any finder of fact must take Dr. Katz at his word and that the credibility of his testimony cannot be called into question.  It can.

### 1.    Dr. Katz Was Not Ms. Levitt's First or Only Prescribing Physician

Merck argues that this Court should prevent Ms. Levitt from continuing to pursue her claims on the grounds that she will be unable to demonstrate that "an appropriate warning would have caused her prescribing physician, Dr. Katz, not to prescribe her Vioxx." (Merck's Motion for Summary Judgment, pages 11-12).  This statement wrongly asserts that Dr. Katz was Ms. Levitt's only "prescribing physician."  This is untrue, as Dr. Hartman, and not Dr. Katz, first prescribed Vioxx to Ms. Levitt (SOF 52).  By the time she became a patient of Dr. Katz, she was already taking Vioxx as prescribed to her by Dr. Hartman.  Dr. Katz merely continued her current meds but was not making independent decisions about these prescriptions (SOF 56). Later, Dr. Hartman switched her prescription from Vioxx to Relafen without including or

consulting with Dr. Katz in this decision (SOF 60). Merck's entire Motion is based on the false assumption that Ms. Levitt's only source of Vioxx was through her prescription from Dr. Katz. This is not so. She had a prescription for Vioxx prior to ever becoming Dr. Katz's patient through a referral from Dr. Hartman. Without testimony from Dr. Hartman that he also would have ignored any warnings from Merck and still prescribed her Vioxx (SOF 52, 60-61), Merck cannot meet its burden and its Motion fails.

### 2.    Dr. Katz' Testimony Conflicts With Other Evidence

Merck then argues that "Dr. Katz's testimony shows, however, that he would have [prescribed Vioxx to Ms. Levitt even had he been given an appropriate warning]. Thus, Ms. Levitt's failure-to-warn claims fail." (Merck's Motion, pages 11-12). Again, this statement has several wrong assertions in it. First, it assumes that Dr. Katz's testimony is uncontroverted. This is not true. Despite Dr. Katz's testimony that he stopped prescribing her Vioxx due to a change in insurance, the evidence shows that it was based on the change in the warning label. Vioxx changed its warning label in April of 2002, the same month Dr. Katz suddenly stopped prescribing Vioxx (SOF 77-79). This new label, although still deficient, did alert physicians that there was a risk of cardiovascular events associated with Vioxx (SOF 25). Dr. Katz tries to explain this as a coincidence. Ms. Levitt's testimony, however, shows this is not the case. Her insurance never told her that it was no longer covering Vioxx (*See* Plaintiff's Response Controverting Merck's Statement of Fact number 13, citing Exhibit 4, deposition of Ms. Levitt at 130:23-131:14). Her pharmacy never offered her to continue filing the prescription on her own dime, an offer it always makes her when her insurance stops covering a medication (SOF 78). Instead, her pharmacy told her the change came from her doctor, not her insurance company (SOF 78). The evidence, when viewed in the light favorable to Ms. Levitt, shows that Dr. Katz

not only *would* have stopped prescribing Ms. Levitt Vioxx based on a cardiovascular warning, but that he actually *did* stop prescribing her Vioxx based on this warning. Given this evidence, Dr. Katz's testimony is insufficient to meet Merck's burden of proof at the summary judgment stage. Merck's Motion for Summary Judgment must be denied.

### 3. Had Merck Provided A Proper Warning To Dr. Katz, He Would Have Shared It With Ms. Levitt And She Would Have Refused To Take Vioxx

Even if Ms. Levitt had no evidence to dispute Dr. Katz's testimony, which she does, his testimony would still not be sufficient grounds for summary judgment. At issue is whether or not a proper warning would have prevented Ms. Levitt from being harmed by Vioxx. Even assuming that Dr. Katz's testimony that he would have still been willing to prescribe her Vioxx in light of this warning is accurate, Ms. Levitt would not have taken Vioxx but for Merck's failure to warn. Missouri, like all states recognizes the doctrine of informed consent which is based on the idea that: "Every human being of adult years and sound mind has a right to determine what shall be done with his own body." *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 269, (1990). True to this principal of medicine, Dr. Katz confirmed that when he prescribes a new medication to his patients he will "try to provide the major risks that I'm aware of." (SOF 128, citing Exhibit 5, Depo of Katz at 20:12-20). It is undisputed, therefore, that had Vioxx provided a warning, Dr. Katz would have made Ms. Levitt aware of it. By her own testimony, had Ms. Levitt been made aware of it, she would have refused to take Vioxx (SOF 126-132, 134). Even if Dr. Katz's testimony shows that he would have been willing to prescribe Vioxx despite a warning, this is not fatal to Ms. Levitt's proximate cause. A warning still would have prevented her from being injured by Vioxx.

### 4. Dr. Katz' Testimony That He Would Prescribe Ms. Levitt Vioxx Today If He Could Is Not Entitled To Be Taken Without Question

Merck also asks this Court to believe that because Dr. Katz testified that he would prescribe Vioxx today if he could that Ms. Levitt cannot prove her claims.  First, Vioxx is not available today.  It was taken of the shelves by Merck because it kills people.  Second, a jury is allowed to disbelieve a doctor who testifies that he would prescribe a drug with a warning that it is contraindicated for patients with heart surgery to a patient undergoing heart surgery (SOF 123). Especially if that doctor is Dr. Katz, who was paid to promote the same drug up until and possibly even after, that drug was taken off the market.  Dr. Katz has a clear bias towards Merck, and his testimony that he would continue to prescribe it even where contraindicated is not credible, and does not have to be taken at face value for purposes of this motion.  Finally, Vioxx is more deadly than Celebrex and there is no evidence that the current Celebrex warning would at all be adequate for Vioxx (SOF 117-124) This alternative universe that Merck has created wherein Vioxx is just as safe as Celebrex and Dr. Katz is prescribing it to Ms. Levitt even though it is contraindicated for her thankfully does not exist.

### 5.    Dr. Katz's Credibility Is An Issue for the Jury

Dr. Katz's credibility is an issue for the jury in this case. His deposition testimony directly contradicts Ms. Levitt's testimony, his own testimony, as well as his own medical records (SOF 56-57, 100-101). Dr. Katz testified that it is hard for him to remember his analysis and decision-making process in prescribing Ms. Levitt Vioxx, as it occurred thirteen years ago (SOF 103). Last and most importantly, Dr. Katz was paid by Merck to participate in its Vioxx trial, spoke on behalf of Merck to market Vioxx to other physicians, and is still currently participating in a trial for Celebrex—the drug Merck argues is comparable to Vioxx (SOF 104-109). Additionally, as confirmed by the online database maintained by the Centers for Medicare and Medicare Services, Dr. Katz continues to receive money and other payments from no fewer

than ten pharmaceutical and drug companies, and received more than $17,500 in 2013 alone (SOF 112-115).

All of these facts call Dr. Katz's credibility into question. As Merck's arguments on summary judgment rest entirely on Dr. Katz's testimony the issue of his credibility is of the upmost importance to the determination of Merck's arguments. What Dr. Katz would have done had he received the necessary warnings of Vioxx's risks of heart attacks and heart disease "presents an issue of credibility that is within the province of the trier of fact." *In re Levaquin Products Liability Litigation*, 726 F.Supp.2d 1025, 1036 (D. Minn. 2010) (applying Minnesota law and denying the defendant's motion for summary judgment based on the learned intermediary doctrine, finding there were genuine issues of material fact as to whether the manufacturer's warnings were adequate, and whether the physician would have altered the course of the plaintiff's treatment had the warning been more explicit). Here, even if Dr. Katz has been completely truthful in all of his testimony, there is no record as to his level of knowledge concerning the documents and studies which explain the risks associated with Vioxx use. Simply put, a jury does not have to believe the testimony of Dr. Katz. Plaintiff reminds the Court that Plaintiff intends to subpoena Dr. Katz to trial and thoroughly cross–examine him on his basis and lack of credibility.

### E.  Merck's Cases Are Distinguishable

Merck cites to a number of cases from varying jurisdictions to support its assertion that since Dr. Katz testified that he would continue to prescribe Vioxx to patients like Ms. Levitt today, Ms. Levitt is unable to prove proximate causation on *any* of her five claims. Unfortunately for Merck, each of the cases it cites are readily distinguishable from the case at bar, and all clearly involve specific failure-to-warn claims.

The case of *Carr-Davis v. Bristol-Myers Squibb Co.*, 2013 WL 322616 (D.N.J. Jan. 28, 2013) centered around a decedent's ingestion of the pharmaceutical Plavix, which contained specific labeling regarding the increased risk of bleeding. The court held that the plaintiff's *failure-to-warn claim* failed, not just due to the learned intermediary doctrine, but due to the fact that the court found that the Plavix label was adequate. "[W]ithout adducing evidence to show that the Plavix warning label is somehow inadequate or inaccurate, Plaintiff fails on this motion to establish the first prong of his failure-to-warn claim." *Id.* at *7. The court's analysis on the learned intermediary doctrine was limited to the failure to warn claim, similar to all the other cases cited by Merck to support its far-reaching theory that the doctrine bars *all* of Plaintiff's claims.

The court likewise granted the defendant's motion for summary judgment on the plaintiff's defective design claim, explaining that since the plaintiff had failed to submit evidence that Plavix was "unreasonably dangerous, and therefore defective," the plaintiff had failed to carry its burden as to that count as well. The court's holding specific to the MMPA claim explained that since "Plaintiff cannot prove that Plavix caused the Decedent's injuries," she could not make a prima facie case under the MMPA.  The Court's analysis went count-by-count of the plaintiff's Complaint. It did not lump all the claims together and call them "failure to warn claims" as Merck asks this Court to do. Applying Missouri law, the court only undertook the learned intermediary doctrine analysis with regards to the plaintiff's failure-to-warn claim. The remaining claims failed not due to the doctrine, but due to the fact that the plaintiff had failed to show that the warning label on the drug was inadequate.

*Carr-Davis* is clearly distinguishable.  At issue is not whether or not Ms. Levitt has presented evidence showing the dangerous nature of Vioxx and the inadequacies in the warnings

provided to her, her physicians, and the medical community at large. She has. At issue in Merck's motion is whether or not Dr. Katz' testimony is sufficient to establish that Merck is entitled to judgment based on the learned intermediary doctrine. Merck is not. *Carr-Davis* does not aide this Court in making its determination.

Also distinguishable is the case of *Eck v. Parke, Davis & Co.*, 256 F.3d 1013 (10th Cir. 2001). There, applying Oklahoma law, the court held that a physician's testimony cannot overcome the presumption that an adequate warning would have been read and heeded unless the physician is a credible witness. The court explained that "[t]he weight we afford to the physicians' testimony depends on the substance of the evidence as well as the credibility and reliability of the treating physician[s]." *Id.* at 1019 (internal citations omitted). The court further explained that to submit the case to the jury, the plaintiffs had to "either discredit the physicians' testimony or call into question the substance of the testimony, or otherwise demonstrate that the alleged failure to warn was the proximate cause of their injuries." *Id.*

Here, Ms. Levitt has done all three of the above. This case must be submitted to a jury. Ms. Levitt has discredited and called into question Dr. Katz's testimony, which was both paid for by Merck. Ms. Levitt has additionally demonstrated that the inadequate warnings accompanying Vioxx directly contributed to cause her injuries.

Additionally distinguishable is the case of *Odom v. G.D. Searle & Co.*, 979 F.2d 1001 (4th Cir. 1992). There, the plaintiff's treating physician testified that the risk of the plaintiff's injury was "common knowledge, not only in the medical literature, but also in the lay literature," and that it was common medical school knowledge that the device that injured plaintiff could cause the injury she suffered from. *Id.* at 1003. Here, the risks associated with Vioxx were *not* common knowledge, as shown by Merck's extensive efforts to keep the true nature of its product

secret. This is simply not the case as in *Odom* where every doctor knew the risks of prescribing Vioxx. The *Odom* holding cannot be further from being applicable to the facts in this case.

**F.  Expert Testimony Presents a Genuine Issue of Material Fact as to the Adequacy of Merck's Warnings**

Ms. Levitt has retained experts who have offered their opinions that Merck failed to provide adequate warnings of the dangers associated with Vioxx.  When a plaintiff has provided such expert opinions, failure to warn claims cannot be dismissed via summary judgment.  In *Hanrahan v. Wyeth, Inc.*, No. 4:04CV01255 ERW, 2012 WL 2395881 (E.D. Mo. June 25, 2012), Eastern District of Missouri denied summary judgment based on the learned intermediary doctrine.  In doing so, the court held that expert testimony existed so as to present a genuine issue of material fact on the adequacy of defendant's warnings: "the record contains admissible expert testimony regarding the warnings Defendant[s] placed on their pharmaceutical products, and the Court finds that it presents a genuine issue of material fact as to whether the Defendants' warnings were inadequate." *Id*. at 9.

Merck does not argue that it is entitled to summary judgment based on the adequacy of its warnings to Ms. Levitt or her physicians.  In fact, overwhelming evidence exists that Merck intentionally failed to share what it knew about the dangers Vioxx posed to the public (*See generally* Section A "Merck's Deceptive Behavior" to Plaintiff's Statement of Material Facts Which Present a Genuine Issue). Plaintiff's expert witness Dr. Egilman and Plaintiff's previous cardiologist Dr. Rosamond will both testify as to how Vioxx caused Ms. Levitt's injuries (*Id*.). Dr. Egilman will additionally testify regarding the inaccuracy and inadequacy of Merck's labeling on Vioxx (*Id*., *see also* SOF 73). Dr. Egilman's testimony will be used to explain complex subjects to the jury, including pharmaceutical conduct in terms of development, promotion, and analysis, as well as medical ethics and Merck's duty to warn.

Dr. Egilman is currently a medical doctor and Clinical Professor of Family Medicine at Brown University's Warren Alpert School of Medicine (Exhibit 1, Egilman Report, ¶ 1). Dr. Egilman is board certified in Internal Medicine and Preventive-Occupational Medicine; he holds a bachelor's degree in Molecular Biology; a medical degree; and has completed a three-year medical residence in internal medicine; a three-year training program in epidemiology; and holds a master's degree in public health (*Id.*, ¶¶ 1-2). Dr. Egilman served for two years at the National Institute for Occupational Safety & Health (NIOSH) and was also responsible for interpreting and implementing certain aspects of the OSHA act of 1971 (*Id.*, ¶ 3).  Dr. Egilman has written a report in this matter describing how Merck launched and sold Vioxx without informing patients *or doctors* that Vioxx increased cardiovascular risks in users, and how Merck intentionally avoided further studying the cardiovascular risks associated with Vioxx (*Id.*, at ¶ 23).   Dr. Egilman's report demonstrates that a triable issue exists as to the adequacy of Merck's warnings.

### III.   Conclusion

Merck had a duty to warn Ms. Levitt of the cardiovascular dangers associated with Vioxx and failed to do so.  The learned intermediary doctrine does not apply to relieve Merck of this duty because Merck chose to market its pharmaceutical product directly to consumers through television commercials and print advertisements in magazines and newspapers.  Even if the learned intermediary doctrine applies, Merck has not proven that proximate causation does not exist.  Dr. Katz admitted that he would have told Ms. Levitt of the dangers had he known of them, and Ms. Levitt has testified that she would not have taken Vioxx had Dr. Katz informed her of these dangers.  Moreover, Dr. Katz was not even the prescribing physician, so it makes no difference whether or not he would have continued to prescribe Vioxx if Merck had told him the truth about its dangers.  Finally, even if Merck's evidence is somehow enough to convince this

Court that Ms. Levitt cannot possibly prevail on her failure to warn claim, she has several other theories still pending which are not preempted by FDA regulations. For all these reasons, Merck's Motion for Summary Judgment must be denied in its entirety by this Court.

Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**


/s/ Daniel A. Thomas
Kenneth B. McClain                    MO #32430
Daniel A. Thomas                      MO #52030
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Statement of Material Facts Which Present a Genuine Issue** has been served on Defense Counsel, Jonathan Williams, and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 24th day of February, 2015.


/s/ Daniel A. Thomas
Kenneth B. McClain          MO #32430
Daniel A. Thomas            MO #52030
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

26