```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


IN RE:  VIOXX PRODUCTS              MDL No. 05-1657
LIABILITY LITIGATION                Section "L"
                                    New Orleans, Louisiana
                                    Thursday, February 26, 2015


***************************************************************

             TRANSCRIPT OF THE STATUS CONFERENCE
          BEFORE THE HONORABLE ELDON E. FALLON,
              UNITED STATES DISTRICT JUDGE.

***************************************************************
```

**APPEARANCES:**

For Plaintiffs:                      Leonard Davis, Esq.
                                     Andy Birchfield, Esq.
                                     Anne Oldfather, Esq.
                                     Elizabeth Cabraser, Esq.


For Merck:                           Douglas Marvin, Esq.
                                     John Beisner, Esq.




**REPORTED BY:**   Mary Thompson, RMR, FCRR
                   500 Poydras Street, Box 2-13
                   New Orleans, Louisiana  70130
                   (504)589-7783

```
                    P R O C E E D I N G S
                         (Call to order of the court.)
           THE COURT:  Okay.  Be seated, please.
           All right.  Do you want to call the case.
           THE CASE MANAGER:  MDL No. 1657, In Re: Vioxx
Products Liability Litigation.
           THE COURT:  Counsel make your appearances for the
record.
           MR. DAVIS:  Morning, Your Honor.  Lenny Davis on
behalf of plaintiffs.
           MS. CABRASER:  Elizabeth Cabraser for the PSC and
consumer class.
           THE COURT:  Okay.
           MR. MARVIN:  Morning, Your Honor.  Douglas Marvin
for Merck.
           THE COURT:  We still have several people on the
phone, but this is getting to the point where for our future
meetings we should do them on the phone.  And I'll give you a
call-in number so that we can deal with that.
           We're getting to the end of the line here.  As I
mentioned a moment ago, I met with liaison lead counsel and
you mentioned that we've had some case now since February 16th
of, what, 2005?
           The good news is that we had -- originally we had
50- or 60,000 cases throughout the United States.  Every state
```

1   had a case; every district had a case.  We've got 94 districts
2   in the United States, and every one of them had one.
3           In addition, we had something like 20 or 25 class
4   actions.
5           In addition to that, we had a couple of dozen states
6   that had made claims for reimbursement of their Medicare
7   claims and Medicaid claims.
8           And then the consumer class and a number of other
9   matters.
10          So with the help of excellent counsel in these
11  matters, we've been able to resolve most of the cases.  We've
12  got just a couple left to try, and we've got some housekeeping
13  matters, but the agenda has gone quite a ways down.
14          Anything on the class actions?
15          MS. CABRASER:  Your Honor, Elizabeth Cabraser for
16  the consumer class.
17          As Your Honor is aware from the claims administrator
18  BrownGreer's report, we're at the end of the claims period,
19  and the checks to the first approximately 7300 currently
20  payable claimants will go out in a week or so with other
21  payments to follow as the final formalities are completed,
22  which is set forth completely in the BrownGreer report.
23          On behalf of the consumer class, we simply wanted to
24  thank Your Honor, thank the claims administrator, BrownGreer,
25  and thank Merck for an extremely high level of cooperation

1   throughout the settlement approval and notice and claims
2   administration process.
3           THE COURT:  Okay.  And the consumer class, those are
4   the class of individuals who did not have any adverse reaction
5   from Vioxx.  In fact, many of them wanted to continue Vioxx
6   and blamed the Court for taking it off of the market.  Of
7   course, I didn't have anything to do with that.  It was taken
8   off of the market before the MDL was even filed.
9           But, in any event, these individuals did not have
10  any adverse action, but they indicated that, had they known
11  there was potential dangers to Vioxx -- to taking Vioxx, they
12  would not have purchased Vioxx in the first place so they
13  wanted their money back for purchasing the Vioxx.
14          And the consumer class was formed, and the parties
15  began discovery and motion practice and eventually the case
16  was resolved.  And that, in effect, gave the parties their
17  money back for purchasing Vioxx.  In addition, it gave them
18  something -- payment for any doctors that helped them get
19  other medications.
20          The claims were made and notices were sent out in
21  several different media forms -- because these days the old
22  idea of putting things in the paper -- fewer and fewer people
23  seem to be reading the newspapers these days, and fewer and
24  fewer papers are still around, so counsel had to come up with
25  creative ways of notifying everybody through social media and

other sources. And the word got out, and people made claims, and we are now in the process of paying out those claims.

         Anything else on pending personal injury cases?

         MR. MARVIN: Your Honor, there are a number of motions that have been filed in the past several months. Many of those are housekeeping motions to clean up the docket. The joint status report lists all of those. It goes on for four page of the motions.

         THE COURT: We had one motion set today for a rule to so cause --

         MR. MARVIN: Yes.

         THE COURT: -- so I'm going to grant that motion because no one has shown up.

         MR. MARVIN: That's correct, Your Honor.

There are only three motions pending. One is the one that you just mentioned, the *Cordel* case, where there was a failure to comply with the show cause order.

         The *Silva* case, and that is something that Anne and I have been talking about and so we'll ask you to withhold any ruling on that case pending those discussions.

         And then the *Levitt* case where there is a motion for summary judgment pending, and my understanding is that is going to be set for a special setting on March 17th, I think it was.

         THE COURT: Right.

```
1              With regard to the first motion, I'll grant the
2    motion and dismiss that case.
3              MR. MARVIN:  Thank you, Your Honor.
4              THE COURT:  Okay.  What about the personal injury
5    cases that are still outstanding?
6              MS. OLDFATHER:  Thank you, Your Honor.  Good
7    morning.  Ann Oldfather, liaison counsel for certain
8    ineligible cases.
9              Your Honor, just to follow up on Mr. Marvin's
10   comments, there are 11 personal injury cases still pending.
11   One of those is the heart attack, and the other ten are BTE
12   cases.  The *Levitt* case is the heart attack case, and you've
13   just heard the status of that.
14             In terms of the BTE cases, all of those are actively
15   under discussion between the plaintiffs and Merck, and they
16   are in various stages of negotiation and/or resolution.  Some
17   of them may or may not be successfully resolved, and we will
18   be approaching the Court with regard to further appropriate
19   motions in those cases.
20             THE COURT:  Okay.  Okay.  All right.
21             I would like to at least finish this whole
22   litigation up certainly this year.  Maybe by the summer we can
23   deal with it, but certainly by the end of the year.
24             MS. OLDFATHER:  Thank you, Your Honor.
25             THE COURT:  Okay.  Any appeals -- reports on appeal?
```

MR. BEISNER: John Beisner on behalf of Merck.

The only appeal that we had out there was the appeal of Your Honor's order approving the terms of the settlement. That appeal, within the last week, was voluntarily dismissed, and the Fifth Circuit has taken that off calendar for oral argument next week and entered a dismissal so that is complete.

THE COURT: Okay. All right. Anything that we haven't covered?

MR. DAVIS: Yes, Your Honor. I just want to report on the status of the depository that we've been maintaining.

That depository has had less and less use over time, and we're basically mothballing it right now. But the information is accessible. We recently renewed the license for the software for an additional year.

And so if there is anyone -- including the Attorney Generals or if there are individuals -- or any other individuals that may want access to the information, I would suggest that they contact us as soon as possible, because we are gearing towards shutting it down hopefully in the next year.

THE COURT: Okay. Dawn, contact the Attorney Generals, particularly the ones that still have the cases outstanding.

And if Merck knows of anybody.

```
09:17:24

09:17:46

09:18:03

09:18:10

09:18:29
```

1   MS. BARRIOS: Yes, Your Honor.
2   THE COURT: Because it gets very costly. It's
3   costly initially to create these kinds of virtual websites and
4   depositories. And then keeping them up is an added expense,
5   input into them and just the maintenance of them. And even in
6   mothballing it, there's still some expense for the software
7   primarily. And sometimes the space also, computer space and
8   whatever.
9   So I don't want to just crash it or anything, but we
10   may have to shift some costs. So if somebody has any need for
11   it, they should come forward.
12   MR. DAVIS: And we still have leased space and the
13   material is there, so if somebody does want it, we need to
14   know. Otherwise we're going to try to box it up and shut it
15   down.
16   THE COURT: At least let's keep it -- you have it
17   for a year so let's keep it that way.
18   MR. DAVIS: Yes.
19   MS. OLDFATHER: Your Honor, just for the record,
20   there are -- I think each of these plaintiffs have reason to
21   want to use those materials. And all of the comments that
22   have been made are certainly appropriate. I do think there's
23   probably a way to maintain it that is not at a significant
24   cost given the amount of common benefit that is discussed, but
25   it is premature to discuss it.

```
 1            THE COURT:  Right.  I think so.
 2            Okay.  Anything further that we need to talk about
 3   that I haven't talked about?
 4            Our next status conference will be by telephone
 5   April 23rd at 9:00, and I'll be giving you a call-in number so
 6   that we can call in.
 7            .  Okay.  All right.  Folks, I have a telephone
 8   conference with the Attorney Generals in some other case.
 9            Thank you.  Court will stand in recess.
10                            (Proceedings adjourned.)
11
12                       * * *
13                     **CERTIFICATE**
14
15      **I hereby certify this 2nd day of March, 2015, that the**
16      **foregoing is, to the best of my ability and understanding, a**
17      **true and correct transcript of the proceedings in the**
18      **above-entitled matter.**
19
20                            */s/ Mary V. Thompson*
21                            **Official Court Reporter**
```