UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * KNOWLES |
| 2:06-cv-09757-EEF-DEK | * |

**************************************************************************

## DEFENDANT MERCK SHARP & DOHME CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT REGARDING PROXIMATE CAUSATION

The only issue that is relevant to the present motion is whether Ms. Levitt has adduced admissible evidence showing that Merck's alleged failure to warn was the proximate cause of her alleged injuries. Merck has proffered the sworn deposition testimony of the prescribing physician who prescribed Ms. Levitt the Vioxx that is at issue in this case, Dr. Arnold Katz. Dr. Katz's testimony clearly establishes that a stronger warning regarding potential cardiovascular risks associated with Vioxx would not have changed his prescribing decision. In response, Ms. Levitt has proffered unsupported, inflammatory attacks against Dr. Katz's integrity, various speculative theories that contradict the contemporaneous medical records, and her own newly-crafted affidavit that contradicts her prior sworn deposition testimony. None of this creates a material factual dispute on the issue of proximate causation. Accordingly, summary judgment should be entered in Merck's favor.

**I.     The Learned Intermediary Doctrine Bars Ms. Levitt's Claims.**

The crux of Ms. Levitt's opposition rests on inaccurate recitation of the learned intermediary doctrine: She contends that the doctrine only applies where a defendant shows that

it provided adequate warnings to the prescribing physician, and that absent evidence of adequate warnings, the learned intermediary doctrine has no relevance to her case. Opp'n at 5-7. Essentially, she conflates the entire doctrine with a single application of that doctrine. The law clearly shows that the learned intermediary doctrine has a broader scope and effect.

Generally, prescription medications are not available to the general public unless and until a licensed health care professional exercises his or her professional judgment to determine that a specific medication is appropriate to treat an individual patient. Thus, the learned intermediary doctrine shifts the focus from the knowledge and actions of the product's end-user (patients or consumers) to the knowledge and actions of the patient's prescribing physician. Accordingly, there are several categories of cases in which the learned intermediary doctrine can defeat liability – where the manufacturer provided an adequate warning to the prescribing physician (*e.g.*, *Johnson v. Upjohn Co.*, 442 S.W.2d 93, 96 (Mo. App. Ct. 1969)); where the prescribing physician had knowledge of the relevant risks from sources other than the manufacturer (*e.g.*, *Kirsch v. Picker Int'l, Inc.*, 753 F.2d 670, 671 (8th Cir. 1985)); where the prescribing physician ignored warnings provided by the manufacturer regardless of their content (*e.g.*, *Carr-Davis v. Bristol-Myers Squibb Co.*, Civ. A. No. No. 07–1098 (FLW), 2013 WL 322616, at *7 (D.N.J. Jan. 28, 2013)); and where the provision of a better warning would not change the physician's prescribing behavior (e.g., *id.*). Ms. Levitt's argument that Merck cannot rely on the learned intermediary doctrine is entirely misplaced.

Stated another way, Ms. Levitt's arguments address one element required to establish a tort case, while Merck's motion is actually directed at an entirely different required element.[1] To recover in tort, a plaintiff must establish the following elements of her case: duty, breach,

---

[1] Likewise, plaintiff's arguments regarding potential testimony from her retained expert that Merck's warnings were inadequate have no bearing on this motion. *See* Opp'n at 22-23.

causation and damages. *E.g.*, *Petrol Props., Inc. v. Stewart Title Co.*, 225 S.W.3d 448, 455 (Mo. App. Ct. 2007). Ms. Levitt directs her arguments to the issue of whether Merck breached a duty that it owed to her – the duty to provide adequate warnings to her prescribing physician. Merck has directed this motion, however, to the element of causation. It has sought summary judgment because there is no evidence that regardless of whether any duty was actually breached, the alleged breach of duty caused the injury that plaintiff asserts. *See, e.g.*, *Carr-Davis*, 2013 WL 322616, at *9 ("In Missouri, in addition to proving inadequacy, Plaintiff has to show that the allegedly defective warning label is the producing cause of Plaintiff's injury."); *see also Sanchez v. Boston Sci. Corp.*, 38 F. Supp 3d 727, 734 (S.D.W. Va. 2014) (rejecting argument "that the learned intermediary doctrine suddenly becomes inapplicable when a plaintiff alleges that warnings are inadequate." ). None of the cases Ms. Levitt cites holds to the contrary, and numerous courts have granted judgment under Missouri law notwithstanding arguably inadequate warnings. See, e.g., *Kirsch*, 753 F.2d at 671 (warnings may have been inadequate, but "no direct evidence" showed physician was unaware of risk).[2]

## II. No Evidence Shows that a Different Warning Would Have Changed the Prescribing Decision of The Relevant Physician, Dr. Katz.

At this stage of the proceedings, Ms. Levitt must identify evidence that, but for Merck's allegedly inadequate warnings, her physician would not have prescribed Vioxx to her.[3] She has failed to do so.

---

[2]  *See also Allgood v. GlaxoSmithKline PLC*, Civ. A. No. 06-3506, 2008 WL 483574, at *4 n.5 (E.D. La. Feb. 20, 2008) (Fallon, J.) (requiring manufacturer to "first demonstrate that the warnings were adequate . . . reverses the applicable burden of proof on the underlying claim.").

[3]  Ms. Levitt mischaracterizes the parties' respective burdens of proof. Opp'n at 2-5. The learned intermediary doctrine is not an affirmative defense. *See Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 207-08 (5th Cir. 2008). Invocation of the learned intermediary doctrine "*does not shift the plaintiff's basic burden of proof*." *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 166 (Tex. 2012). *See also In re Vioxx Cases*, JCCP No. 4247, 2006 WL 6305292 (Cal. Sup. Ct. Dec.

1181342v1

### A.     Speculation About Dr. Hartman Cannot Defeat Summary Judgment.

The only prescribing decision that is material to this case is the decision of Dr. Katz. Although Ms. Levitt had previously obtained some Vioxx from her primary care physician, Dr. Hartman, the record clearly shows that she was no longer taking Vioxx when she sought treatment from Dr. Katz. Katz Dep. (Ex. F) at 27:6–24; Ex. M. Dr. Katz, a rheumatologist with special expertise in fibromyalgia, examined Ms. Levitt and diagnosed her with fibromyalgia in October, 1999. Ex. E, at 1. On that same day, he instructed Ms. Levitt to start taking 25mg of Vioxx daily to treat her fibromyalgia. *Id.*; Katz Dep. (Ex. F) at 26:10-16. Dr. Katz testified that he exercised his independent medical judgment to determine that he would include Vioxx in the prescribed treatment regimen for Ms. Levitt. Katz Dep. (Ex. F) at 44:12–45:21.[4] It was that course of treatment that she alleges resulted in her subsequent cardiac problems.

Moreover, Ms. Levitt offers only speculation about how Dr. Hartman *might* have responded to enhanced warnings, Opp'n at 15-16, but that speculation cannot defeat summary judgment. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("unsupported speculation [is] not sufficient to defeat summary judgment"). Ms. Levitt faults Merck for not deposing Dr. Hartman, Opp'n at 14 n.1, but she offers no excuse for not developing the evidence herself. Although her case has been pending since 2006, Ms. Levitt has adduced absolutely no

---

19, 2006) (same); *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 611 n.3 (S.D.N.Y. 2012) (same). *Redd v. DePuy Orthopaedics, Inc.*, No. 4:13CV2228 CDP, 2014 WL 4467543 (E.D. Mo. Sept. 8, 2014), cited by plaintiff (Opp'n at 5), was decided at the early motions to dismiss stage. *Id.* at 5 n.5.

[4]    Notably, Ms. Levitt had no memory of Dr. Hartman prescribing her Vioxx during her deposition. Ex. N, at 71:13-17.

4

1181342v1

evidence concerning the effect of enhanced warnings on Dr. Hartman. Nothing precluded her from doing so.[5]

### B. Dr. Katz's Testimony Unequivocally Shows that Enhanced Warnings Would Not Have Altered His Decision to Prescribe Vioxx.

Ms. Levitt challenges Dr. Katz's testimony that he would have prescribed Vioxx to Ms. Levitt even if it had a black box warning for cardiovascular risks, like Celebrex. Opp'n at 16, 18-19. Notably, even if Ms. Levitt could discredit Dr. Katz's testimony, doing so would not satisfy her burden to provide affirmative evidence that he would have made a different prescribing decision. *Strumph v. Schering Corp.*, 626 A.2d 1090 (N.J. 1993); *see also Brinkley v. Pfizer, Inc.*, 772 F.3d 1133, 1138 (8th Cir. 2014) (plaintiff's burden to show prescribing decision would have changed under Missouri law).

*First*, Ms. Levitt claims that, contrary to Dr. Katz's testimony and his contemporaneous records, Dr. Katz stopped prescribing Ms. Levitt Vioxx as a result of the 2002 label change. Ms. Levitt's deposition testimony in July 2012 made clear that she *did not know* why Dr. Katz stopped prescribing her Vioxx. After testifying that she "*thought* Dr. Katz wouldn't refill the [Vioxx] prescription anymore after the warning came out on it," she asked, "Am I mistaken?" Levitt Dep. (Ex. N) at 130:12–131:24 (emphasis added). When she was shown Dr. Katz's record indicating that she had been switched to Relafen because her insurance no longer covered Vioxx, she admitted, "I must be mistaken," and concluded, "I guess I was given something else because my insurer wouldn't cover [Vioxx]." Levitt Dep. (Ex. N) at 133:20, 134:8-20.[6] Indeed, Ms.

---

[5] Unlike defense counsel, Ms. Levitt and her counsel have unfettered access to confer with her physicians on an *ex parte* basis. Nevertheless, Ms. Levitt proffers no relevant affirmative evidence to support her claims.

[6] This conclusion is supported by Dr. Katz's testimony that he continued to prescribe Vioxx until it was withdrawn from the market in 2004. Katz Dep. (Ex. F) at 77:12–18.

1181342v1

Levitt also conceded the point in her opposition to Merck's first summary judgment motion. (Rec. Doc. 64966, at 5.) Ms. Levitt has now reversed course, but the law is clear that she cannot avoid summary judgment by summarily contradicting her own previous testimony. *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). *See also In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 195 (2d Cir. 2013) (extended delay in submitting changed testimony until faced with summary judgment showed affidavit "was intended solely to defeat the motion.").

*Second*, Ms. Levitt claims Dr. Katz's testimony cannot be credited because it is hypothetical, after-the-fact testimony. Opp'n at 18. However, "cases governed by the learned-intermediary doctrine often turn on the . . . [prescribing physician's] speculation as to what may have been done differently in various hypothetical situations." *Allgood*, 2008 WL 483574, at *6 n.6 (Fallon, J.). Ms. Levitt's reliance on *In re Levaquin Products Liability Litigation*, 726 F. Supp. 2d 1025 (D. Minn. 2010) (cited at Opp'n at 19), in which the prescriber "expressed uncertainty" and it was unclear how he would have responded to warnings, is misplaced. *See id.* at 1036-37. Here, Dr. Katz's testimony is clear and unequivocal.

*Third*, Ms. Levitt points to Celebrex's contraindication for patients undergoing bypass surgery, alluding to Ms. Levitt's May 2000 bypass surgery. *See* Opp'n at 18. She apparently implies that Dr. Katz would not have prescribed her Celebrex because it would have been contraindicated for her as of May 2000. But, at the time that Dr. Katz initially prescribed Vioxx, she had never had bypass surgery so no contraindication applied. Indeed, Ms. Levitt claims that her Vioxx use *resulted in* the bypass surgery.[7]

---

[7]   Ms. Levitt's assertion that Celebrex presents a different cardiovascular risk than Vioxx, Opp'n at 18, ignores FDA's 2005 conclusion that there was no meaningful difference between the two medications. *See* Mot. at 9-10. Moreover, Dr. Katz testified that he believed the cardiac issues were class-based issues. Katz Dep. (Ex. F) at 83:4–16.

1181342v1

### III. Ms. Levitt's Self-Serving Testimony About What *She* Would Have Done If *Dr. Katz* Had Provided Different Warnings Is Irrelevant.

Ms. Levitt also claims that if *Dr. Katz* had warned *her* about the results of the VIGOR trial or more generally about Vioxx cardiovascular risks, *she* would not have taken Vioxx even if he prescribed it to her. Opp'n at 17. But what Ms. Levitt would have done based on any warning from Dr. Katz is irrelevant to this motion. On the contrary, under the learned intermediary doctrine, "the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, *the treating physician would not have used or prescribed the product*." *Brinkley*, 772 F.3d at 1138 (Missouri law) (emphasis added). Thus, courts have routinely granted summary judgment focusing only on whether the prescribing decision would have changed. Mot. at 12-13. Indeed, courts have granted summary judgment even where the plaintiff claims that a physician would have given information about risks that would have prompted the plaintiff to not take the medication. *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 997 (C.D. Cal. 2001), *aff'd* 358 F.3d 659 (9th Cir. 2004); *Gaghan v. Hoffman-LaRoche Inc.*, 2014 WL 3798338, at *14 (N.J. App. Aug. 4, 2014).

Moreover, Ms. Levitt offers no evidence that Dr. Katz lacked knowledge about VIGOR or potential cardiovascular risks by the time she stopped taking Vioxx in April 2002. *See Kirsch*, 753 F.2d at 671 (affirming directed verdict where plaintiff did not show prescriber was unaware of risk). Dr. Katz testified that he relies on a variety of sources beyond product labeling to stay informed about the medications he prescribes, including the medical literature,[8] Katz Dep. (Ex.

---

[8] VIGOR's results appeared in the *New England Journal of Medicine* in November 2000. Ex. O. And, information about the study's results appeared in the *New York Times* in May 2001. Ex. P (noting that "patients taking Vioxx had four times the risk of heart attacks of patients taking another pain reliever, naproxen").

1181342v1

Q) 73:16-75:3.  VIGOR's results were widely publicized within the medical community and the general public.

IV. **None of Plaintiff's Inflammatory Accusations or Unsupported Speculation Create An Exception To Application Of The Learned Intermediary Doctrine.**

Ms. Levitt proffers several arguments as to why the learned intermediary doctrine should not be applied in her case.  She contends:  (1) Dr. Katz was paid to prescribe Vioxx, Opp'n at 11-12; (2) Merck deceived the broader medical community; and (3) Merck advertised Vioxx directly to consumers, Opp'n at 12-15.  None of these arguments have factual or legal merit.

Plaintiff contends that "there is an exception to the learned intermediary doctrine when a physician is paid by the offending pharmaceutical company," Opp'n at 11, and points to Dr. Katz's prior service on Merck's speaker bureau and his participation as an investigator in a Merck clinical trial.  Ms. Levitt does not, however, proffer any evidence of actual bias.  Notably, Dr. Katz has been a speaker for numerous pharmaceutical companies other than Merck and participated in clinical trials for other companies, including Merck's direct competitors in the NSAID market.  Ex. R (Katz CV).  Thus, there is no evidence that any prior services he may have rendered to Merck influenced him to prescribe Vioxx over other medications.  Indeed, Dr. Katz testified that he has always prescribed a range of NSAIDS and that the selection for a particular patient depends on the circumstances.  Katz Dep. (Ex. F) at 23:13–25:17 .  Absent evidence of actual bias, the learned intermediary still applies.  *See, e.g., In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2011 WL 2117257, at *4 (S.D. Fla. May 23, 2011) (summary judgment proper because no evidence that the prescribing decision "was not an informed one, or that he did not exercise individualized medical judgment in making that decision."); *In re Vioxx Cases*, 2006 WL 6305292 (California) (judgment proper where physician had been paid "hundreds of thousands of dollars over the years to conduct research and give lectures," but the

"plaintiffs presented no evidence of actual bias.") *Murthy v. Abbott Laboratories*, 847 F. Supp. 2d 958 (S.D. Tex. 2010) (cited at Opp'n at 12) is not to the contrary.  Rather, the court held that "[u]nder certain circumstances" a role as learned intermediary "*may be* diminished" and therefore declined to dismiss the case before the "factual circumstances" could be developed.  *Id.* at 972 (emphasis added).

Plaintiff's reliance on *Plubell v. Merck & Co.*, No. 04CV235817-01, 2008 WL 4771525, at *5 (Mo. Circ. Ct. June 12, 2008) is likewise misplaced.  That case, simply acknowledged that when a manufacturer fails to warn the medical community at large, it is likely individual physicians will not know of risks.

*Finally*, Missouri law does not have a direct-to-consumer ("DTC") exception.  Indeed, New Jersey stands nearly alone in recognizing such an exception.  *Centocor*, 372 S.W.3d at 161.  The DTC exception has otherwise been rejected by most other courts because "patients who seek prescription drugs based solely on DTC advertising will obtain them only when the prescribing physician has evaluated the potential risks and benefits for the particular patient."  *Id.* at 165; *see also In re Vioxx Cases*, 2006 WL 6305292. [9]

**V.     No Evidence Supports Any Other Legally Viable Theory of Liability.**

Finally, Ms. Levitt argues that summary judgment based on the learned intermediary doctrine does not end her case.  However, regardless of the labels she affixed to her causes of action, the facts pleaded in her complaint support only a failure-to-warn theory, and in any event, she has identified no evidence that would support any claim other than a failure-to-warn claim.  Furthermore, any claim that would require Merck to have reformulated Vioxx or withdrawn it

---

[9]     "Missouri courts" have not "embraced" such an exception as Ms. Levitt suggests, Opp'n at 13.  *Plubell*, 2008 WL 4771525, at *5, n.5, recognized that the doctrine's applicability was not relevant to its decision.  *Doe v. Miles, Inc.*, No. ED 75100, 2000 WL 667383, at *17 (Mo. App. Ct. May 23, 2000), did not reach the legal issue.

9

from the market is preempted by federal law.  *See Brinkley*, 772 F.3d at 1139-41 (Missouri implied warranty and design defect claims against generic drug manufacturer preempted under *Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013)).  *Bartlett* cannot be limited to the generic drug context because, like generic manufacturers, brand manufacturers cannot reformulate drugs without FDA first obtaining FDA approval.  *See* Mot. at 11 n.11 (citing *Booker v. Johnson & Johnson*, --- F. Supp. 3d ----, 2014 WL 5113305 (N.D. Ohio Oct. 10, 2014)).  Summary judgment should be granted as to all claims.

## CONCLUSION

For the stated reasons, Merck is entitled to summary judgment on all claims.

Dated:  March 13, 2015                                         Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
M. Elaine Horn
Jonathan L. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

1181342v1

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply in Support of Merck Sharp & Dohme Corp.'s Motion for Summary Judgment Regarding Proximate Causation has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(C), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 13th day of March, 2015.

                                                         /s/ Dorothy H. Wimberly
                                                         Dorothy H. Wimberly, 18509
                                                         STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                         546 Carondelet Street
                                                         New Orleans, Louisiana  70130
                                                         Phone:  504-581-3200
                                                         Fax:     504-581-3361
                                                         dwimberly@stonepigman.com

                                                         Defendants' Liaison Counsel

1181342v1