DONALD HARTMAN M.D.   9/17/2015

Page 1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
 2
 3
     In re: Vioxx                  )
 4                                 )
     PRODUCTS LIABILITY            )   MDL Docket No. 1657
 5   LITIGATION                    )
                                   )   SECTION L
 6   Relating to:                  )
                                   )   JUDGE FALLON
 7   Jo Levitt v. Merck Sharp      )
     & Dohme Corp.                 )   MAGISTRATE JUDGE KNOWLES
 8                                 )
     2:06-cv-09757-EEF-DEK         )
 9
10
11
                DEPOSITION OF DONALD HARTMAN, M.D.
12
                 TAKEN ON BEHALF OF THE PLAINTIFFS
13
                      SEPTEMBER 17, 2015
14
15
16
17
18
19
20
21
22
23
24
25
```

**MIDWEST LITIGATION SERVICES**

www.midwestlitigation.com          Phone: 1.800.280.3376          Fax: 314.644.1334

**DONALD HARTMAN M.D.   9/17/2015**

Page 2

```
 1                      I N D E X

 2        WITNESS:                                      PAGE

 3        DONALD HARTMAN, M.D.

 4     EXAMINATION BY MR. THOMAS                          6

 5     EXAMINATION BY MS. PISTILLI                       18

 6

 7                    E X H I B I T S

 8        NO.          DESCRIPTION                      PAGE

 9     Exhibit 1      Document Packet                     9

10     Exhibit 2      New Patient Record                 47

11     Exhibit 3      Medical Records                    53

12     Exhibit 4      Medical Records                    57

13     Exhibit 5      Medical Records                    61

14     Exhibit 6      October 11, 1999, Letter           66

15     Exhibit 7      Medical Records                    69

16     Exhibit 8      November 27, 2000, Letter          76

17     Exhibit 9      September 13, 2002, Letter         80

18     Exhibit 10     Medical Records                    83

19     Exhibit 11     Medical Records                    85

20     Exhibit 12     Medical Records                    90

21     Exhibit 13     Medical Records                    95

22     Exhibit 14     Medical Records                    98

23

24     (Original exhibits are attached to the original

25                    transcript.)
```

```
                                                                 Page 3
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
 2
 3
 4    In re: Vioxx                )
                                  )
 5    PRODUCTS LIABILITY          )   MDL Docket No. 1657
      LITIGATION                  )
 6                                )   SECTION L
      Relating to:                )
 7                                )   JUDGE FALLON
      Jo Levitt v. Merck Sharp    )
 8    & Dohme Corp.               )   MAGISTRATE JUDGE KNOWLES
                                  )
 9    2:06-cv-09757-EEF-DEK       )
10
11        VIDEOTAPED DEPOSITION OF DONALD HARTMAN, M.D.,
12    produced, sworn and examined on September 17, 2015 at
13    the office Hartman Medical Associates, 6600 College
14    Boulevard, Suite 100A, Overland Park, Kansas 66211,
15    before Lauren Lawrence, a Court Reporter and Notary
16    Public within and for the State of Missouri, in a
17    certain cause now pending in the United States
18    District Court, Eastern District of Louisiana, on
19    behalf of the Plaintiffs.
20
21
22
23
24
25
```

```
 1              A P P E A R A N C E S
 2
 3   APPEARING FOR THE PLAINTIFFS:
 4              Mr. Daniel A. Thomas
                HUMPHREY, FARRINGTON & McCLAIN
 5              221 West Lexington
                Suite 400, P.O. Box 900
 6              Independence, Missouri 64050
                816.836.5050
 7              dat@hfmlegal.com
 8
     APPEARING FOR THE DEFENDANTS:
 9
                Ms. Emily Renshaw Pistilli
10              WILLIAMS & CONNOLLY, LLP
                725 12th Street Northwest
11              Washington, D.C. 20005
                202.434.5652
12              apistilli@wc.com
13
14
15
16
17
18
19
20
21
     Court Reporter:
22   Lauren Lawrence, Court Reporter
     Notary Public, State of Missouri
23   Midwest Litigation Services
     1301 Oak Street, Suite B
24   Kansas City, Missouri 64106
     816-221-1160
25   1-800-280-3376
```

Page 5

```
 1        IT IS HEREBY STIPULATED AND AGREED by and between
 2   counsel for the Plaintiffs and counsel for the
 3   Defendants that this deposition may be taken in
 4   shorthand by Lauren N. Lawrence, a Court Reporter and
 5   Missouri Notary Public, and afterwards transcribed
 6   into typewriting; and the signature of the witness is
 7   expressly reserved.
 8                  *     *     *     *     *
 9             (Deposition commenced at 9:09 a.m.)
10             VIDEOGRAPHER:  We're now going on the
11   record.  Today's date is September 17, 2015.  The time
12   is 9:09.  This is the videotaped deposition of
13   Dr. Ronald Hartman in the case of Jo Levitt versus
14   Merck Sharp & Dohme Corporation, Docket Number 1647,
15   in the United States District Court for the District
16   of Louisiana.
17             Would Counsel please state their appearance
18   for the record?
19             MR. THOMAS:  Danny Thomas for Millie Jo
20   Levitt.
21             MS. PISTILLI:  Emily Pistilli here on
22   behalf of the Defendant, Merck.
23             VIDEOGRAPHER:  Would the court reporter
24   please swear in the witness?
25                  RONALD HARTMAN, M.D.,
```

Page 66

1    her samples at this time?

2         A.   Oh, yeah.

3         Q.   Possibly you would have given her a

4    two-week supply of samples to try?

5         A.   Sure, yeah.  If we have them, we -- we will

6    give them.

7         Q.   And you did actually refer Mrs. Levitt to a

8    specialist for her pain; is that right?

9         A.   Let's see.  This is back around 2000.  It

10   would probably be either Dr. Cooley or Dr. Katz.

11        Q.   Okay, well, I'm going to end your suspense.

12        A.   Okay.

13        Q.   I'm going to hand you this.  You can trade

14   that one out.

15        A.   Okay.

16             (Hartman Exhibit 6 was marked for

17   identification.)

18        Q.   (By Ms. Pistilli)  So I'm going to hand you

19   what I just put a sticker on as Hartman 6.

20        A.   Okay.

21        Q.   And --

22        A.   Oh, this is Dr. Katz, okay.

23        Q.   Yeah.  This is a letter from October 11,

24   1999.  So about two -- two months after that exchange,

25   I guess, maybe -- maybe less -- a little bit less than

Page 67

1   two months, after that exchange about Vioxx.  And it
2   looks like, up on the top, he says he's seen her for
3   an initial of musculoskeletal pain on today's date.
4   Do you see that?
5         A.   Uh-huh, yes.
6         Q.   And then down, the third -- third
7   paragraph, he says, "The patient's history and
8   physical findings are consistent with the diagnosis of
9   fibromyalgia.  And, as is typical with this diagnosis,
10  she does have chronic fatigue and a sleep disorder."
11             Is it your understanding that Dr. Katz had
12  diagnosed her with fibromyalgia at this point?
13        A.   Yes.
14        Q.   And he says that the -- so in his last
15  paragraph there, "She was advised to start Vioxx, 25
16  milligrams, daily with food."
17        A.   Yeah.  It was a very popular medicine at
18  that time --
19        Q.   Did --
20        A.   -- and it worked well.
21        Q.   I'm sorry.  Does -- the fact that Dr. Katz
22  says he's starting her on Vioxx, does that indicate to
23  you that she was not taking Vioxx by the time he saw
24  her in October?
25             MR. THOMAS:  Form.  Foundation.  Calls for

Page 68

1  speculation.
2         Go ahead, Doctor.
3     A.   She -- what was the date on the last -- if
4  I'd given her two weeks' worth of something like that,
5  she may have been out by that point.
6     Q.   (By Ms. Pistilli)  Yeah.  So you saw her on
7  **August 24 --**
8     A.   Okay.  So this --
9     Q.   -- and then he had seen her on October 11?
10    A.   So this was two and a half months later.
11 So she's probably out of whatever she was on.
12    Q.   **And at this point from your perspective, is**
13 **Dr. Katz now managing her prescriptions for pain**
14 **relief for her muscle pains that you had sent -- sent**
15 **her to him for?**
16    A.   Yeah.  And I'm -- he was starting her on a
17 therapeutic program of physical therapy and the sorts
18 of things we do.  As I said, the fibromyalgia can be a
19 very vague diagnosis, and the muscle weakness and
20 the -- but she didn't have serologic markers for other
21 connective tissue diseases and did not have the
22 typical features.  So I would agree that that -- that
23 that's a viable diagnosis here, yeah.
24    Q.   **At this point in time, are you deferring to**
25 **Dr. Katz for his treatment of her, what he's diagnosed**

Page 69

```
 1   as fibromyalgia?
 2        A.   Yeah.  I would -- and -- and then we hope
 3   to see good results from that, right.
 4        Q.   Okay.  You can put that one aside.  I'm
 5   going to mark this at Hartman 7.
 6             (Hartman Exhibit 7 was marked for
 7   identification.)
 8        Q.   (By Ms. Pistilli)  I'm going to hand you --
 9   these are more of your records -- what I've marked as
10   Hartman 7.  And this was another example where, in our
11   set of records, these were out of order, and so I
12   actually have included these couple of extra pages
13   around where I wanted to ask you about to try and help
14   figure out what dates we're talking about.  So
15   actually if you flip to the -- it looks like
16   they're -- to me it looks like these are in reverse
17   chronological order.  And so if you go to the back
18   page, I can ask you about that page.
19        A.   Okay.
20        Q.   And what I actually want to do is just see
21   if we can figure out what the dates are on some of
22   these.  I know the dates aren't very clear.
23             So the --
24        A.   Let's see.  It looks like the -- she got a
25   flu vaccine in January of 2000, so that's probably
```

Page 71

1     A.    Sublingual.

2     Q.    "To St. Luke's South ER versus [sic]

3     ambulance."

4     A.    "Via ambulance," yeah.

5     Q.    And so does this ground this visit as being

6     around that time that we had previously discussed when

7     you were talking to Mr. Thomas, in March of 2000, when

8     she had her first cardiovascular event that took her

9     to the hospital?

10    A.    Yeah.  This would be...

11    Q.    And in the left margin, is that your

12    handwriting where --

13    A.    Yes, that's my handwriting.

14    Q.    And it looks like the first note you have

15    is "Vioxx stopped per Dr. Katz."  Do you see that?

16    A.    Uh-huh.

17    Q.    Was it your understanding that Dr. Katz had

18    taken her off her Vioxx prescription at that point in

19    time?

20    A.    Yes.  That would -- it would either be that

21    he hadn't renewed it and so let it lapse, or he had

22    interrupted it.

23    Q.    And you weren't managing the Vioxx

24    prescription at this point in time; is that right?

25    A.    No.  It looks like Dr. Katz was.

DONALD HARTMAN M.D.  9/17/2015

Page 72

```
 1         Q.   Was there any point you recall telling
 2   Mrs. Levitt to stop taking Vioxx?
 3         A.   I would have to look in the record.  I
 4   don't recall ever --
 5         Q.   If you did, is that something that would be
 6   noted in the record?
 7         A.   I think so, if there was some reason she
 8   was having a problem with it.
 9         Q.   And is there any point you recall telling
10   Mrs. Levitt to switch from Vioxx to Relafen -- a
11   medication called Relafen?
12         A.   Oh, let me -- about this time, the Vioxx
13   was a new -- a relatively new drug on the market and
14   was -- when insurance companies roll over their plan
15   years, they do drug buys.  And so nabumetone is also
16   sort of much easier on the stomach.  It's way off all
17   in its own category of NSAIDs.  So it would -- it may
18   have been her insurance company or something that
19   said, "We're not going to Vioxx, but you can have
20   this."  So if they did something like that, I would
21   have said, "Sure.  We don't have a problem with
22   Relafen either."
23         Q.   Would you -- if you did tell her to switch
24   from Vioxx to Relafen, would you have noted that in
25   your record?
```

Page 73

```
 1        A.   Usually, I try to note stuff in my record,
 2   but if I -- if -- if you have a prescription or
 3   something that says I did that, then -- and it's not
 4   here, then I didn't.
 5        Q.   And if --
 6        A.   So --
 7        Q.   If Dr. Katz was managing her Vioxx
 8   prescription at this point in time, would you have
 9   expected him to manage any changes to her Vioxx
10   prescription?
11             MR. THOMAS:  Form.  Foundation.
12        A.   No.  It's -- it's more of a collegial
13   thing.  You know, if -- and we all -- all of us know,
14   this that -- you know, that a patient --
15   unfortunately, we have to do a lot of things that
16   insurance companies tell the patient they have to do.
17   Unless you're independently wealthy, and then you can
18   do whatever you want, but that wouldn't have been an
19   unusual change.  If she were having a problem with
20   Vioxx, then Relafen would have been an easy choice as
21   far as her stomach and that sort of thing.
22             MS. PISTILLI:  Okay.  Do you want to go off
23   the record -- record for one minute?
24             I just have --
25             VIDEOGRAPHER:  We're now going off the
```