UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| | * | |
| | * | MAG. JUDGE KNOWLES |
| * * * * * * * * * * * * * * * * | * | |

THIS DOCUMENT RELATES TO ALL CASES

### SUPPLEMENTAL DECLARATION OF ANN B. OLDFATHER

Declarant, Ann B. Oldfather, having personal knowledge of the facts stated herein, and being of legal age and of sound mind and memory does hereby declare as follows in supplement to my Declaration dated 9/21/2015:

1. I was a Common Benefit Fee Objector in my individual capacity and as one of three attorney members of a group informally known as the Kentucky Vioxx Working Group ("KVWG"). Michael Stratton served as Liaison Counsel for the Common Benefit Fee Objectors.

2. We had a total of 141 cases from which a potential 8% common benefit fee assessment had been withheld at the time of settlement of those cases, and with regard to which we had objected to the PSC's request for an 8% common benefit fee assessment rather than what we believed to be our contractual agreement with the PSC to a 2% common benefit fee assessment.

3. On July 23, 2010, we learned that Michael Stratton was recommending an agreement with the PSC to set the potential common benefit fee assessment for the Objectors at 4%, rather than the potential 8% that was being withheld. Mr. Stratton further suggested that we agree to pay him a fee for his work of 4-5% of the savings he claimed to have effectuated by reducing the common benefit fee assessment from an 8% potential assessment to an agreed 4% assessment. *See* email dated 7/23/2010 from KVWG attorney Leslie Cronen to the KVWG members attached as Exhibit 1.

4. Mr. Stratton had no fee agreement with me, or with any members of the Kentucky Vioxx Working Group, nor did he have any kind of "joint prosecution agreement" or any written or oral agreement with me or the KVWG regarding a fee payment to him.

5. Declarant and the KVWG agreed to the reduction of the common benefit fee assessment from 8% to 4%, and so advised Mr. Stratton in writing, which included the proviso that Mr. Stratton's fee needed to be set by the court, a condition which Mr. Stratton acknowledged. *See* email from Leslie Cronen to Mr. Stratton dated 7/26/2010, with Mr. Stratton's response, attached as Exhibit 2.

6. The Fee Objectors' dispute with the PSC was resolved on the above terms, the PSC reduced its request for common benefit fee assessments of 7.5% for counsel other than Objectors, and the Court later ordered that the common benefit fee assessment would be set at 6.5% [Rec. Doc. 54040] for counsel other than Objectors.

7. In the meantime, the PSC and Mr. Stratton agreed on the list of cases and primary counsel with regard to whom one-half of the withheld 8% potential common benefit fee assessment would be rebated in order to result in a net 4% common benefit assessment. Declarant is not privy to that paperwork or list, but is aware that the gross amount transmitted to Mr. Stratton by BrownGreer was $19,271,639. *See* Court Report No. 30 of BrownGreer, page 4, ftn. 3 [Rec. Doc. 63360] and materials submitted by Mr. Faxon, Attachment 1 [no Rec. Doc. reference exists]).

8. According to our own internal paperwork, the 138 KVWG cases had a total withholding of $2,203,556.38 for the 8% potential common benefit fee assessment, and Declarant's three additional cases had a total withholding of $78,193.76 for the 8% potential common benefit fee assessment. Declarant states on information and belief that these are the exact amounts that BrownGreer and the PSC show as being the 8% potential common benefit fee assessments held by BrownGreer on Declarant's and the KVWG's cases.

9. According to the agreement made by Declarant and the KVWG to pay a total of 4% as a common benefit fee assessment, the amount of common benefit fee assessment to be refunded by BrownGreer to the KVWG was $1,101,778.19 and to Declarant for her three additional cases was $39,096.88. Declarant states on information and belief that these are the exact amounts that BrownGreer delivered to Mr. Stratton for remittal to the KVWG and to Declarant.

10. Instead of remitting these amounts to Declarant and the KVWG, on or about 9/2/2010, Mr. Stratton remitted $1,002,618.15 to the KVWG and $35,578.16 to Declarant. *See* check sent to KVWG attached as Exhibit 3, and screen shot of Declarant's escrow deposit of 10/4/2010 attached as Exhibit 4. These sums are identical to the cancelled checks provided by Joel Faxon as part of his Attachment 2 [no Rec. Doc. Reference exists].

11. Mr. Stratton unilaterally kept $99,160.04 from the KVWG as his unilaterally established "fee" for his services as Liaison Counsel for the Fee Objectors.

12. Mr. Stratton unilaterally kept $3,518.72 from Declarant separately as his unilaterally established "fee" for his services as Liaison Counsel for the Fee Objectors.

13. These two amounts combine for a total of $102,678.76 unilaterally held back by Mr. Stratton from common benefit fee assessment rebates in which Declarant had an interest. These amounts are what Mr. Stratton claims as "his fee."

14. Mr. Stratton never refunded any of the amounts in ¶13 that he held back as "his fee" to me, or, to my knowledge, to any member of the Kentucky Vioxx Working Group.

15. Mr. Stratton did not honor our understanding that he would submit his fees as Liaison Counsel to the Court for approval. Further, the amounts he arbitrarily withheld were more than double the amount he asked Declarant and the

KVWG to agree to pay him as his fee on July 23, 2010 (*see* Exhibit 1), a request with which Declarant and the KVWG expressly did not to agree.

16.     Based on materials filed by Mr. Faxon, Mr. Stratton unilaterally held back the amount of $4,447,444.91 of the $19,271,639 delivered to him in his fiduciary capacity as Liaison Counsel, which equates to a 23% fee unilaterally established by him and then kept by him for his services as Liaison Counsel. None of the materials filed by Mr. Faxon reflect that anyone agreed to that fee. It exceeds by almost six-fold the 4-to-5% Mr. Stratton represented he would claim (*see* Exhibit 1). It exceeds by more than three-fold the common benefit fee assessment awarded the PSC and other attorneys who developed the underlying case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 26, 2015.

/s/ Ann B. Oldfather
Ann B. Oldfather (KY Bar No. 52553)