**EASTERN DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| **In Re: Vioxx Marketing, Sales Practices** | ) | |
| **And Products Liability Litigation** | ) | MDL Case No. 1657 |
| | ) | |
| | ) | SECTION L |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | JUDGE FALLON |
| Linda Isner, Executrix of the Estate of | ) | |
| Jeffrey Isner, M.D, Plaintiff | ) | MAGISTRATE JUDGE KNOWLES |
| | ) | |
| v. | ) | |
| | ) | |
| Seeger Weiss, LLP et al, Defendants | ) | |
| | ) | |
| 2:12-cv-02406-EEF-DEK | ) | |

**MEMORANDUM OF LAW OF THE PLAINTIFF,**
**LINDA ISNER, EXECUTRIX OF THE ESTATE OF JEFFREY ISNER, M.D.,**
**IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**
**OF THE DEFENDANTS, SEEGER WEISS, LLP AND CHRISTOPHER A. SEEGER**

**I.    INTRODUCTION**

The plaintiff, Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D. (Isner), submits this Memorandum of Law in opposition to the Motion for Summary Judgment (Motion) filed by the defendants, Seeger Weiss, LLP and Christopher A. Seeger (hereafter, collectively, Seeger Defendants). As grounds for their Motion, the Seeger Defendants adopt the arguments raised by the Hughes Hubbard Reed (HHR) Defendants and the BrownGreer (BG) Defendants in their respective Motions for Summary Judgment. Accordingly, Isner relies upon, and incorporates herein by reference, the memoranda of law and supporting materials that she filed in opposition to the HHR Motion and the BG Motion.

In the Memorandum of Law filed in support of their Motion, the Seeger Defendants advance the following arguments: (1) the October 30, 2008 Release (Release) executed by Isner bars this action against Seeger Defendants as Negotiating Plaintiffs' Counsel; (2) the

Release language precludes any claims by Isner that she relied upon the representations made to her by the Seeger Defendants; (3) the Seeger Defendants' misrepresentations are not actionable as a matter of law; (4) Isner's claims are barred by a theory of ratification; (5) Isner cannot prove any compensable damages; and, (6) Isner's claims under M.G.L. Chapter 93A are barred as a matter of law because the transaction at issue is not "commercial in nature" and because "[Isner] cannot establish that the Seeger Defendants committed any underlying tort". (Seeger Memorandum of Law, p. 4)

The Seeger Defendants contend that the claims against them are "virtually identical" to the claims brought by Isner against the BG Defendants and the HHR Defendants, and that the claims against the Seeger Defendants must fail as a matter of law. (Id. at p. 3)  As explained in detail below, the fundamental predicate for the Seeger Motion; i.e., the purported identity of the claims against them and those asserted against the co-defendants, is incorrect and contrary to the undisputed facts before the Court. The plaintiff's claims against the Seeger Defendants are materially different from the claims asserted against the HHR Defendants and the BG Defendants, and this Court's ruling on those claims is neither dispositive of, nor relevant to, the claims against the Seeger Defendants. First, the Seeger Defendants are not included as "Released Parties" under the terms of the Release. Second, the conduct of Attorney Seeger at issue in this action was undertaken in his role as counsel for the plaintiff, and Seeger Weiss received a portion of the fees from all of the settlements, including the settlement of Isner's Vioxx claim. Consequently, Attorney Seeger had the duties and obligations of a lawyer acting on behalf of Isner when making representations to her, and in providing her with his advice and counsel.  While an attorney-client relationship did exist between Isner and Attorney Seeger, even if the relationship between Attorney Seeger and Isner is not analyzed under the framework of an attorney-client relationship, Attorney Seeger still owed a duty of reasonable

care to Isner because he had reason to know that she was relying upon his advice in deciding whether to enter the Vioxx Resolution Program. "[A]n attorney owes a duty to nonclients who the attorney knows will rely on the services rendered." Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524, cert. denied, 493 U.S. 894, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989). *See also* Lamare v. Basbanes, 418 Mass. 274, 276 (1994).

The Seeger Motion is not supported by an affidavit executed by anyone affiliated with Seeger Weiss, LLP, and Attorney Seeger has not executed an affidavit denying the facts pertaining to the communications between Attorney Seeger, Isner and Attorney Joseph Doherty as set forth in the Affidavit of Attorney Joseph L. Doherty dated March 27, 2014, filed in this action on March 28, 2014. (Document No. 64882-1). Moreover, the Seeger Motion is devoid of citation to any legal authority that would support the Seeger Defendants' apparent argument that misrepresentations made by an attorney to a client, or a person whom the attorney knows will rely upon his or her advice, which induce that person to enter into a settlement agreement under which the attorney expects to and does in fact receive compensation, are not actionable if the settlement agreement with the tortfeasors which resolves the litigation that was the subject of the representation includes an integration clause. In addition, any argument that the Seeger Defendants cannot be liable for misrepresentation as a matter of law because Isner's reliance upon Attorney Seeger's advice was unreasonable must fail, because the reasonableness of her reliance upon his expertise and assurances presents an issue of fact to be determined by a jury. Finally, the provisions of M.G.L. Chapter 93A apply to Isner's claims against the Seeger Defendants, and there is no requirement under Massachusetts law that this claim be based upon an "underlying tort". For these reasons, as discussed in detail below, the Seeger Defendants have failed to demonstrate that the undisputed

facts establish, as a matter of law, that they are entitled judgment in their favor on any of these grounds. Accordingly, the Motion must be denied.

## II.      PROCEDURAL BACKGROUND AND MATERIAL FACTS

### A.      Procedural Background.

By this action, Isner seeks compensation for damages sustained as a direct and foreseeable consequence of the negligent and/or intentional misrepresentations made to Isner and/or to her attorney, Joseph L. Doherty, Jr. (Attorney Doherty), by the defendants, including Attorney Seeger, acting in his role as a partner of Seeger Weiss, in connection with the settlement of the wrongful death action she brought against Merck & Co., Inc. (Merck) and Kimberly Hendricks in Middlesex Superior Court (the Isner Vioxx Action). In the Isner Vioxx Action, Isner sought an award of damages from Merck and Hendricks under the Massachusetts Wrongful Death Statute, M.G.L. Chapter 229, §§2 and 6.  The damages demanded in her Complaint included both the full and fair compensatory damages suffered by Isner and her three minor children, and punitive damages for the willful, wanton, reckless conduct and gross negligence of the defendants. (*See* Complaint, Exhibit 1 to the Affidavit of Attorney Joseph L. Doherty, Jr. dated March 27, 2014) (hereafter, "Ex. A"). Merck removed the Isner Vioxx Action to the United States District for the District of Massachusetts pursuant to 28 U.S.C. §§1332, 1441, and 1446.  The Isner Vioxx Action subsequently was transferred by the Judicial Panel on Multidistrict Litigation ("Panel") to MDL 1657. (Ex. A, ¶4)

Isner seeks damages from the Seeger Defendants under the common law tort theories of negligent misrepresentation and intentional misrepresentation/deceit. (Complaint, ¶¶39-50) In addition, she alleges that the conduct of the Seeger Defendants constituted unfair and/or deceptive acts or practices in violation of Massachusetts General Laws Chapter 93A, §9, and she seeks damages under that statute. (Complaint, ¶¶51-58)  On May 21, 2012, the co-

defendants removed this action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1332, on the grounds of diversity of citizenship.  This action subsequently was transferred to MDL 1657.

**B.      Undisputed Material Facts**

Attorney Seeger applied to and was appointed by the Court to the Plaintiffs' Steering Committee ("PSC"). (Ex. A, ¶5)  Attorney Seeger subsequently became a member of a group of attorneys referred to as the Plaintiffs' Negotiating Counsel (PNC).   In or about October of 2008, Attorney Seeger made specific representations and assurances to, and agreements with, Isner and her attorney that under the global settlement proposal made by Merck in connection with the Vioxx Claims pending in MDL 1657, Isner would receive a "dollar for dollar" payment in settlement of her Extraordinary Injury Damages ("EI damages"). (Ex. A, ¶ 8-13) Attorney Seeger expressly and unambiguously represented to Isner and Attorney Doherty that Isner would be entitled to full recovery of her decedent's lost earnings, both prior to the date of the settlement and thereafter, through to the end of Dr. Isner's work-life expectancy. (Id.)

More specifically, when the initial settlement proposal was presented, Attorney Doherty was concerned that the language of the proposal would not provide payment of any damages for future lost earnings, which was a substantial component of Isner's claims, in view of the fact that Dr. Isner was a 54 year old physician with significant yearly earnings.  (Ex. A, ¶6)  On October 20, 2008, Isner and Attorney Doherty attended a settlement meeting with Judge Corodemus in New York City. At the conference with Judge Corodemus, Attorney Seeger stated unequivocally that Isner would be entitled to full recovery of Dr. Isner's lost earnings, both prior to the date of the settlement and thereafter, through to the end of Dr. Isner's

work-life expectancy.[1] (Ex. A, ¶7)  Attorney Seeger made express oral representations directly to Isner and Attorney Doherty that the only two contingencies that could potentially reduce that full recovery were a "global cap" and the possibility that Dr. Isner's work-life expectancy could be capped at age 65. (Ex. A, ¶8)

On October 21, 2008 Attorney Doherty sent an e-mail to Attorney Seeger, confirming their conversation outside of the courthouse after the conference when Seeger again assured Isner and Doherty that Isner would be entitled to _all_ past and future lost earnings through to the end of Dr. Isner's work-life expectancy. (Ex. A, ¶10)  Attorney Seeger never suggested that he was unable or unauthorized to make these representations and assurances.  As noted above, Attorney Seeger has not submitted an affidavit disputing the accuracy of the facts set forth above with respect to his communications with Isner and Attorney Doherty, and therefore those facts must be deemed undisputed for the purposes of this Motion. Moreover, it is undisputed that Seeger's representations, assurances and agreements formed a basis for Isner's decision to enter into the proposed settlement.   In reliance upon Attorney Seeger's representations, assurances and agreement, Isner agreed to enter into the proposed settlement on October 31, 2008.  (Ex. A, ¶17)

BrownGreer issued the EI damage award figure to Isner in January of 2010. Brown Greer awarded Mrs. Isner $700,000.00 per year in lost earnings, and Dr. Isner was assigned a retirement age of 66. (Ex. A, ¶18)  Based upon BrownGreer's assessment of yearly income in the amount of $700,000.00, past lost earnings, from the date of Dr. Isner's death through the date of the settlement (10-31-01 through 11-09-07 = 6 years and 9 days), total past damages amount to $4,217,260.20.   Thereafter, Dr. Isner's future lost earnings, from the date of the

---

[1] In accordance with the EI Damages Manual from BrownGreer, which incorporated the Social Security Retirement Statistics at page 19, (IV-B-4), BrownGreer assigned a retirement age of 66 to Dr. Isner, because he was born between 1943 and 1957.

settlement through his 66th birthday (11-09-2007 through 12-17-2013 = 6 years, 1 month and 8 days), amount to $4,273,675.73. The plaintiff alleges that the global cap was never reached, and the Seeger Defendants do not contend otherwise.  Accordingly, Mrs. Isner is entitled to recover "<u>dollar for dollar</u>" EI damages from the date of her husband's death through his 66th birthday, in the amount of $8,490,935.93. (<u>Id.</u>) Contrary to Attorney Seeger's express and unambiguous representations, Isner was not awarded "dollar for dollar" EI damages; rather, the total EI damage award made to Isner was reduced to $5,359,316.74.  (Ex. A, ¶19)  Her past EI damages were reduced by 15.625%, to 84.375% of the total amount of past lost earnings. (Ex. A, ¶19)  In addition, the future damage portion of Isner's EI award was reduced by 50%. (Ex. A, ¶19) After these deductions were applied, the sum awarded to Isner was $3,131,619.19 less than the total amount she was entitled to receive pursuant to the express representations made by the defendants. (Ex. A, ¶20)

## III.    ARGUMENT

**The Seeger Defendants Have Failed To Demonstrate That The Undisputed Facts Establish, As A Matter of Law, That They Are Entitled To Judgment On The Claims Against Them In This Action.**

### A. Standard of Review.

The standard of review to be applied by the Court in considering a motion for summary judgment is well-established. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." <u>Calero-Carats</u> v. <u>U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004), *citing* <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-250 (1986).

## B.  Choice of Law

The Seeger Defendants expressly acknowledge that because this action was originally filed in Massachusetts, this Court must apply Massachusetts choice of law principles to the choice of law issues presented by this diversity action. (*See* BG Motion at p. 15, *citing* In re Vioxx Prods. Liab. Litig., 522 F.Supp.2d 799, 813 (E.D. La. 2007)).  They further concede that application of Massachusetts choice of law principles requires this Court to apply the substantive law of Massachusetts to Isner's tort claims. (BG Motion at p. 15, *citing* Stagecoach Transp., Inc. v. Shuttle, Inc., 50 Mass. App. Ct. 812, 817, 741 N.E.2d 862, 867 (2001)).  Isner agrees that Massachusetts law governs her common law tort claims against the Seeger Defendants, and further states that Massachusetts law also governs her claim for damages pursuant to Massachusetts General Laws Chapter 93A.  *See* Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 742, 746-747 (2002); Crellin Tech., Inc. v. Equipmentlease Corp., 18 F.3d 1, 11 (1st Cir. 1994).

## C.  The Motion Is Not Premised Upon Undisputed Material Facts.

In opposition to the Motion, Isner relies upon, and incorporates herein by reference, her responses to BrownGreer's Statement of Material Facts, her statement of undisputed Material Facts, the Affidavit of Joseph L. Doherty, Jr. dated March 27, 2014 (Doherty Affidavit) and the documents attached to the Doherty Affidavit. For the reasons set forth therein, and as discussed more fully below, the Plaintiff states that the Seeger Motion is not premised upon undisputed material facts and must be denied.

## D.  The Release Executed By Isner Does Not Bar Her Claims Against The Seeger Defendants.

In support of their Motion, the Seeger Defendants argue that Isner's claims against them are barred, in their entirety, by language contained within the Release signed by Isner on October 30, 2008. (Seeger Memorandum of Law, p. 3)  This argument must be rejected because

the claims at issue do not fall within the scope of the Release or the Master Settlement Agreement referenced in the Release. As an initial matter, the "Released Parties" to whom the Release applies do not include either Attorney Seeger or Seeger Weiss. The only "attorneys" who are covered by the release are attorneys "of the parties referred to in this paragraph". A number of parties are referred to in that paragraph, and include, *inter alia*, Merck, all defendants in any pending action concerning Vioxx, and parties acting in concert with those entities. However, the Release cannot be read to include within the scope of the term "Released Parties" the attorneys who represented the Vioxx plaintiffs and/or served in the role of plaintiffs' liaison counsel or plaintiffs' negotiating counsel.

The fact that the Release references the Master Settlement Agreement (Agreement) does not expand the scope of the Release executed by Isner to include claims against the Seeger Defendants. The Release states only that "the terms of the Agreement govern the resolution of my claim." (Release, p. 1, ¶ 1)(Emphasis supplied). This language cannot reasonably be read to encompass a claim that tortious and wrongful conduct on the part of the Seeger Defendants, while acting as counsel for Isner and other plaintiffs, induced Isner to enter into the Program. The Agreement provided for the process by which Vioxx claims would be considered for resolution under the Program, and the mechanism by which claims that were accepted into the Program would be evaluated. Isner's acknowledgement that the terms of the Agreement would govern the resolution of her claim under the Program did not extend further, and therefore does not encompass her tort claims arising out of the wrongful conduct of the Seeger Defendants that induced her to sign the Release, and to accept that the terms of the Agreement would govern the process by which her claim was considered for entry in the Program and, if accepted, evaluated for payment.

Moreover, the terms of the Agreement do not prohibit Isner's suit against the Seeger Defendants.  The language set forth in §16.9.2 of the Agreement only applies to "any proceeding, judicial or otherwise, against Merck, the NPC or any Administrator to enforce or otherwise <u>with respect to this Agreement</u>."  Isner's suit is not an action "with respect to" the Agreement, and her claims against the Seeger Defendants do not arise out of either the administration of the Program or the Agreement. Instead, Isner seeks damages for the Seeger Defendant's tortious and wrongful conduct and misrepresentations that induced her to enter into the Program. Isner has not executed a release of those claims, and the language of the Agreement cannot be read to constitute such a release.

It is well-established under Massachusetts law that "a party to a contract cannot claim shelter by a contractual device, such as an exculpatory or merger provision, against claims of deceit." <u>Greenleaf Arms Realty Trust I, LLC</u>, v. <u>New Boston Fund, Inc.</u>, 81 Mass. App. Ct. 282 (2012). *See also* <u>Granlund</u> v. <u>Saraf</u>, 263 Mass. 76, 79 (1928)("It is a fundamental principle of law, as it is of morals, public policy and fair dealing, that a party cannot contract against liability for his own fraud.")  Even if the exculpatory language of the Release and Agreement could be read to encompass the claims against Seeger Defendants in this action despite the clear language of those documents, it is well-settled Massachusetts law that a party cannot rely upon such a clause as protection against claims based upon fraud or deceit. <u>Sound Tech. Inc</u>. v. <u>Hoffman</u>, 50 Mass. App. Ct. 425, 430 (2000) *citing* <u>Bates</u> v. <u>Southgate</u>, 308 Mass. 170, 182-183 (1941); <u>McEvoy Travel Bureau, Inc</u>. v. <u>Norton Co.</u>, 408 Mass. 704, 712-713 (1990); <u>Sheehy</u> v. <u>Lipton Indus.</u>, 24 Mass.App.Ct. 188, 193 (1987).  "This established rule is an exception to the basic principles concerning the freedom to contract and is grounded upon public policy concerns." <u>Sound Tech.</u>, 50 Mass. App. Ct. at 429.  In <u>Bates</u>, the Massachusetts Supreme Judicial Court

explained the public policy concerns upon which this rule is based, which encompasses exculpatory, integration and merger clauses, as follows:

> "As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. **In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement**. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law."

Bates, 308 Mass. at 182 (Emphasis supplied).

The arguments advanced by the Seeger Defendants in reliance upon the Release and Agreement language are contrary to the interests of public policy as articulated by the Massachusetts Supreme Judicial Court in Bates because the Seeger Defendants seek to be relieved of liability for misrepresentations made to Isner by Attorney Seeger while he was acting in a fiduciary capacity to Isner, and upon which she based her decision to enter the Program.

### E.   The Release Language Does Not Preclude Isner's Claims That She Relied Upon The Misrepresentations Made To Her By The Seeger Defendants.

The Seeger Defendants argue that Isner's claims against them are barred, in their entirety, by language contained within the Release signed by Isner which constitutes a merger clause or integration clause. (Seeger Memorandum of Law, p. 3)  The Seeger Defendants contend, *inter alia*, that they are absolved of liability for misrepresentation in this action

because the Release disclaims reliance upon any representations and includes the following language: "there is no guarantee that I will receive any settlement payment or, if any settlement payment is made, the amount thereof".   (Id.) This argument must be rejected because, as explained above, it is well-established under Massachusetts law that "a contracting party may not rely upon such a clause as protection against claims based upon fraud or deceit." Sound Tech., 50 Mass. App. Ct. at 430.   To the contrary, "it is the established policy of the Commonwealth to refuse to enforce a merger clause for purposes of protecting a party from liability on account of his own fraud and deceit." Id.

Here, Isner does not contend that she relied upon Seeger's representations as to the total settlement payment she would receive under the Program, and acknowledges that the final number was to be determined through the process outlined in the Agreement. However, her claims in this action against the Seeger Defendants do not pertain to the total sum that Isner would receive under the Agreement, but instead the manner in which the elements of her claim would be evaluated and compensated under the Program; i.e., that her claims for Dr. Isner's past lost wages and future lost earning capacity would be compensated on a "dollar for dollar" basis.   Accordingly, Isner did not specifically disclaim reliance upon the misrepresentations at issue in this action by entering the Program and executing the Release.   It is wholly illogical for the Seeger Defendants to argue that any misrepresentations that they made to induce Isner to enter into the settlement are without consequence as a matter of law because she could have received no compensation under the Release and Agreement in exchange for releasing her valuable claims against the Merck defendants in the Isner Vioxx Action.   If Attorney Seeger could not speak to the manner in which Isner would be compensated for Dr. Isner's past lost wages and future earnings when questioned about this issue, it was incumbent upon him to refrain from giving specific assurances to Isner in this regard. A statement is actionable "where

the opinion is 'reasonably interpreted by the recipient to imply that the speaker knows facts that justify the opinion.'" Stolzoff v. Waste International Sys., Inc., 58 Mass. App. Ct. 747, 760 (2003) *quoting* Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990).  Attorney Seeger opted to give specific assurances to Isner, and cannot now be heard to argue that these representations are of no legal consequence and that Isner could not reasonably have relied upon his statements based upon the language of the Agreement.  Any such construction of the Release and Agreement would render the entire Release and the Agreement illusory and unenforceable as a matter of public policy.  Accordingly, Massachusetts law precludes the Seeger Defendants from relying upon the exculpatory language cited in the Motion as a defense to Isner's claims alleging deceit.

As established by the Doherty Affidavit, the undisputed material facts are that Seeger directly and unambiguously responded to inquiries regarding the manner in which elements of damages would be awarded under the Program, and that Seeger, as plaintiffs' liaison counsel and negotiating counsel, was in a position to have superior knowledge regarding the matters at issue. (Ex. A, ¶¶14, 15) At a minimum, a genuine issue of material fact exists that would preclude entry of summary judgment on this defense; that is, whether Isner reasonably relied on these misrepresentations, thereby precluding the Seeger Defendants from relying on the disclaimer language contained in the Agreement and Release.

### F.      The Seeger Defendants Made Factual Misrepresentations To Isner That Are Actionable Under Massachusetts Law.

As grounds for their Motion, the Seeger Defendants assert that "no actionable misrepresentations were made" to Isner. (Seeger Memorandum of Law, p. 3)  This argument is not supported by Massachusetts law, and therefore the Motion must be denied. Under Massachusetts law, representations about future events may be actionable where one party to a transaction had, or was in a position where he or she should have had, superior knowledge

about the matters to which the misrepresentations related. <u>Gopen</u> v. <u>Am. Supply Co</u>., 10 Mass. App. Ct. 342, 345 (1980). The Doherty Affidavit establishes that Attorney Seeger was in a position to have superior knowledge about the matters to which his representations related; that is, the factors to be used to calculate an award of damages under the Agreement, and the Motion is not supported by any evidence to the contrary. (Ex. A, ¶¶15, 16)  Moreover, the only reasonable inference to be drawn from the record before this Court is that Seeger knew that Isner and Doherty were looking to him, in his superior role as plaintiffs' negotiating counsel, for important information that Isner needed in order to make an informed and intelligent decision as to whether to enter the Program, and to release her substantial claims against Merck in exchange for an award of damages under the Program. Accordingly, any "predictive" element to the representations does not bar Isner's claims under Massachusetts law.

Moreover, Massachusetts law permits a plaintiff to recover damages for intentional misrepresentation/deceit upon a showing "that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied on such representation as true and acted on it to his damage." <u>Barrett Assocs., Inc</u>. v. <u>Aronson</u>, 346 Mass. 150, 152 (1963). A party to a transaction who chooses to either volunteer information or respond to a request for particular information is obligated to speak honestly and to divulge all material facts within his or her knowledge. <u>Kannavos</u> v. <u>Annino</u>, 356 Mass. 42, 48, 50 (1969).  The statement on which liability for misrepresentation may be based must be one of fact—that is, something "susceptible of knowledge." <u>Zimmerman</u> v. <u>Kent,</u> 31 Mass. App. Ct. 72, 77 (1991). Furthermore, a statement of present intention as to a future act is a statement of fact that may form the basis for a misrepresentation claim. <u>Barrett Assocs., Inc</u>., 346 Mass. at 152.  In order to recover damages

for deceit under Massachusetts law, a plaintiff need not prove that the maker knew that the statement was false. Powell v. Rasmussen, 355 Mass. 117, 118 (1969); Zimmerman v. Kent, 31 Mass. App. Ct. 72, 81 (1991).  *See* Acushnet Fed. Credit Union v. Roderick, 26 Mass. App. Ct. 604, 605 n.1 (1988) (knowledge of falsity not required where accurate facts reasonably available to speaker).  In this case, it is clear at a minimum that Attorney Seeger made factual statements about the methodology by which the payments would be calculated that he  did not know to be true, and that were false.  As such, those are actionable.

The speaker need not know that the statement is false if the truth is reasonably susceptible of actual knowledge; that is, "if, through a modicum of diligence, accurate facts are available to the speaker." Acushnet Fed. Credit Union, 26 Mass. App. Ct. at 605 n.1. Where the plaintiff proves "a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge[,] . . . it is not necessary to make any further proof of an actual intent to deceive." Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444 (1975). Furthermore, the plaintiff in a fraudulent misrepresentation case is not necessarily required to show that a misstatement was made with the specific purpose of inducing his or her reliance. Reisman v. KPMG Peat Marwick LLP, 57 Mass. App. Ct. 100, 109 (2003) (citing Restatement (Second) of Torts § 531 (1977) ("One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced."); *see also* Int'l Totalizing Sys. v. PepsiCo, Inc., 29 Mass. App. Ct. 424, 431 n.12 (1990).

The issue of whether a false statement was made with intent to induce reliance generally is a question of fact. *See* Yorke v. Taylor, 332 Mass. 368, 371 (1955); Rousseau v. Gelinas, 24 Mass. App. Ct. 154, 157 (1987). For example, in Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991), and Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444–45 (1975), the Massachusetts Appeals Court analyzed the particular circumstances under which the representations at issue were made and concluded that the facts warranted a finding of such intent. In each case, the plaintiff purchased property from a defendant whose statements were made in such a way as to lull the buyer into trusting and placing confidence in the seller's representations. Snyder v. Sperry & Hutchinson Co., 368 Mass. at 444–45; Zimmerman v. Kent, 31 Mass. App. Ct. at 80.  Here, the circumstances under which Attorney Seeger's representations were made warrant a finding of an intent to induce reliance, because of the magnitude of Isner's claim and the resulting importance for her to be part of the Program. The undisputed facts would warrant a finding by a jury that the manner in which the representations were made lulled Isner into trusting and placing confidence in Attorney Seeger's representations. At a minimum, genuine issues of material fact exist as to whether the Seeger Defendants made a false statement to Isner with the intent to induce her reliance.  Accordingly, the Motion should be denied.

## H.   The Affirmative Defense Of "Ratification" Has No Application To Plaintiff's Claims.

The Seeger Defendants argue that Isner's tort claims against them are barred, as a matter of law, under the doctrine of ratification. (Seeger Memorandum of Law, p. 4; BG Motion, p. 24-28).  This argument is founded upon a contention that she cannot pursue her tort claims against them because she did not seek to rescind or repudiate the Release that she signed and the Master Settlement Agreement.  (BG Motion, p. 24-25) This argument is misplaced because Isner is not seeking to challenge the amount of the award that she received under the Program, she is not

seeking relief from the operative effect of the Release that she signed, and she does not claim that she is entitled to receive additional proceeds to be paid under the Program. Instead, Isner seeks tort damages from the Seeger Defendants for the loss she sustained as a consequence of their wrongful conduct and deceit that induced her to enter the Program. Therefore, the doctrines of rescission and repudiation have no bearing on this action.

The Seeger Defendants do not cite any legal authority in support of their contention that Isner has "waived the right to challenge the award produced by the procedures of the Vioxx Resolution Program when she decided to accept and retain her multi-million dollar award." (Seeger Memorandum of Law, p. 4)  There is no support for the argument that Isner cannot recover damages from the Seeger Defendants without repudiating her agreement to participate in the Program.   This argument must be rejected.

## I.    The Plaintiff Has Sustained Compensable Damages.

The Seeger Defendants argue that they are entitled to judgment as a matter of law because Isner cannot establish that she sustained compensable damages. (Seeger Memorandum, p. 4; BG Motion, pp. 27-31) This argument is premised upon an assertion that "the question of whether Ms. Isner was damaged must be evaluated from the standpoint of what position she would have been in had she not entered the Program." (BG Motion, p. 28)  No case law is cited in support of this proposition, which is contrary to controlling and well-established principles of Massachusetts law governing the proper measure of damages in a misrepresentation action. The measure of damages for intentional misrepresentation under Massachusetts law is the "benefit of the bargain." GTE Prods. Corp. v. Broadway Elec. Supply Co., 42 Mass. App. Ct. 293, 296 (1997). That is, the plaintiff is entitled to recover "the difference between the value of what he has received and the actual value of what he would have received if the representations had been true." Rice v. Price, 340 Mass. 502, 507 (1960). Benefit of the bargain damages must be proved

with reasonable certainty. Id. at 510; see also Restatement (Second) of Torts § 549(2) (1977)(applying benefit-of-the-bargain recovery to parties in business transactions where damages are proved with reasonable certainty). The plaintiff in an action for negligent misrepresentation is entitled to recover damages in the amount necessary to compensate her for the pecuniary loss caused by the misrepresentation. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 82 (1991); Danca v. Taunton Sav. Bank, 385 Mass. 1, 9 (1982). Here, the plaintiff can establish, with certainty, the difference between the amount of damages that she was awarded, and the value of what she would have received if the representations made to her had been true.

Because the Seeger Defendants' argument is premised upon an erroneous legal argument with respect to the proper measure of damages under Massachusetts law, any further claim that "she cannot prove that she is 'worse off' today than she would have been had she gone to trial and prevailed" (BG Motion, p. 31) is misplaced and irrelevant.  In addition, this argument lacks any factual foundation.  In support of their argument, the Seeger Defendants purport to evaluate the amount of damages that Ms. Isner would have been entitled to receive for Dr. Isner's lost income under the Massachusetts Wrongful Death Statute. (BG Motion, p. 29-30)  This argument is not supported by undisputed facts before the Court, relies wholly upon unsubstantiated speculation, and for these reasons alone must be rejected. Furthermore, this argument focuses on only one of the many elements of damages at issue in the Isner Vioxx Action, and ignores the undisputed fact that her wrongful death claim included other items of damages recoverable under Massachusetts law to compensate herself and her three minor children for the loss of the companionship, society and support of her husband and their father.  In addition, Isner asserted a claim for punitive damages under M.G.L. Chapter 229. By agreeing to participate in the Program, Isner agreed to a compromise of her claims and specifically agreed that to release her claim for punitive damages.  Viewed in this context, the purported calculation of only one of the

elements of damages sought in the Isner Vioxx Action is entirely misplaced. In sum, there is absolutely no factual or legal basis for the Seeger Defendants' apparent position that the undisputed facts establish, as a matter of law, that Isner cannot prove a right to recover damages in this action.

### J.     The Plaintiff's Claims Under M.G.L. Chapter 93A Are Not Barred As A Matter Of Law.

The Seeger Defendants further argue that they are entitled to judgment as a matter of law on the plaintiff's claims under Chapter 93A because "the transaction at issue was not commercial in nature." (Seeger Memorandum of Law, p. 4) This assertion is contrary to well-established Massachusetts law, which holds that "the practice of law constitutes 'trade or commerce' for purposes of liability under c. 93A." Brown v. Gerstein, 17 Mass. App. Ct. 558, 570 (1984). Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Engaging in "trade or commerce" requires that a party act "in a business context", as opposed to engaging in a purely private transaction. Peabody N.E., Inc. v. Marshfield, 426 Mass. 436, 439 (1998), citing Lantner v. Carson, 374 Mass. 606, 611 (1978).

The Seeger Defendants' further argument that Isner's claim under Chapter 93A must fail as a matter of law because she cannot establish "an underlying tort" is erroneous and misapprehends the nature of a claim under this statute. In enacting Chapter 93A, the Massachusetts Legislature "created new substantive rights in which conduct heretofore lawful under common and statutory law is now unlawful". Nei v. Burley, 388 Mass. 307, 314-315 (1983). The statutory prohibition against "unfair and deceptive practices" is "not limited by traditional tort and contract law requirements." Id. at 312-313. As explained by the Massachusetts Supreme Judicial Court, "although certain consumer violations are perhaps rooted in common law claims, the Legislature left the terms sufficiently open-ended to embrace

causes of action for which there are no common law analogies." Id. Accordingly, "a plaintiff in a c. 93A case, for example, need not prove the existence of a contract, the defendant's intent to misrepresent, or his own reliance on the misrepresentation, all traditionally issues of fact for the jury." Id. Accordingly, a claim under Chapter 93A is a "sui generis" cause of action for unfair or deceptive practices in the conduct of trade or commerce. There is no requirement that a plaintiff bringing such a claim establish the elements of an "underlying tort", as suggested by the Seeger Defendants. Id. In addition, a valid common law claim for misrepresentation ordinarily furnishes a basis for liability under Chapter 93A. Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). For the reasons set forth above, the Seeger Defendants have failed to demonstrate that the undisputed facts establish, as a matter of law, that they are entitled to summary judgment on Isner's tort claims against them alleging misrepresentation and deceit. Accordingly, they are not entitled to summary judgment on Isner's claims under Chapter 93A.

**III.   CONCLUSION**

      For the reasons set forth above, the Plaintiff requests that the Motion be denied.

               Respectfully submitted,


               /s/Philip E. Murray, Jr.
               Philip E. Murray, Jr.

               /s/ Carol Ann Kelly
               Carol Ann Kelly
               Murray, Kelly & Bertrand, P.C.
               300 Trade Center, Suite 2700
               Woburn, Massachusetts 01801
               Telephone No. (781) 569-0020
               Fax No. (781) 569-0022
               Email:  ckelly@mkblegal.com
               Counsel for the Plaintiff,
               Linda Isner, Executrix of the Estate
               Of Jeffrey Isner, M.D.


Dated:  October 14, 2015

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum Of Law Of The Plaintiff, Linda Isner, Executrix of the Estate of Jeffrey Isner, M.D., In Opposition To The Motion For Summary Judgment Of The Defendants, Seeger Weiss, LLP and Christopher A. Seeger, has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and email or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 14th day of October, 2015.

/s/ Carol Ann Kelly
Carol Ann Kelly
Murray, Kelly & Bertrand, P.C.
300 Trade Center, Suite 2700
Woburn, Massachusetts 01801
Telephone No. (781) 569-0020
Fax No. (781) 569-0022
Email: ckelly@mkblegal.com
Counsel for the Plaintiff,
Linda Isner, Executrix of the Estate
Of Jeffrey Isner, M.D.