UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX
    PRODUCTS LIABILITY LITIGATION

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

THIS DOCUMENT RELATES TO:     *Jo Levitt v. Merck Sharp & Dohme Corp.*, 06-9757

## ORDER & REASONS

Before the Court is Plaintiff Jo Levitt's Motion to Take Deposition. (Rec. Doc. 65256).

**I.   BACKGROUND**

To put this matter in perspective, a brief review of this multidistrict litigation ("MDL") is appropriate. This litigation involves products liability claims pertaining to the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration ("FDA") approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (that is, heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims.

On September 29, 2006, Jo Levitt brought this action against Merck in the United States District Court for the Western District of Missouri. In her complaint, she alleges that she suffered

two heart attacks in 2001 as a result of taking Vioxx and seeks compensatory and punitive damages, as well as interest, costs, attorneys' fees and any other available relief. On November 8, 2006, the matter was transferred to this Court for inclusion in the *Vioxx* MDL.

Following six "bellwether" trials in this proceeding—as well as trials in other proceedings in Alabama, California, Illinois, Florida, New Jersey, and Texas—the negotiating plaintiffs' counsel ("NPC") and Merck's counsel engaged in protracted settlement discussions over the course of a year, conducting hundreds of in-person and telephone meetings. On November 9, 2007, the parties announced a $4.85 billion master settlement agreement ("MSA") that intended to—and actually did—resolve most Vioxx-related claims through a resolution program. In its recitals, the MSA expressly states that its purpose was to "establish a pre-funded, structured private settlement program . . . to resolve . . . claims against Merck involving heart attacks, ischemic strokes and sudden cardiac deaths." This was an "opt-in" program, meaning an interested claimant had to take affirmative steps to enroll in it. Ms. Levitt chose not to enroll, and instead proceeded to litigate her claim. This Court retained jurisdiction for the discovery phase of this case.

On November 14, 2013, this Court ordered that Ms. Levitt designate expert witnesses and provide their reports on or before December 13, 2013. (Rec. Doc. 64688). Ms. Levitt timely designated five expert witnesses. Of those, Dr. Jay Schapira addressed specific causation with regard to her two heart attacks, and according to Ms. Levitt, Dr. David Egilman addressed specific causation with regard to her other injuries (the remaining expert witnesses addressed only general causation and damages). Ms. Levitt also disclosed Dr. Thomas Rosamond, her cardiologist, and reserved the right to call any and all treating physicians and other providers as fact or expert witnesses regarding the nature and extent of her injuries and resulting damages. Of

her treating physicians, Merck only deposed Dr. Arnold Katz, her rheumatologist, who testified, inter alia, that he would have prescribed Vioxx even if he were told that Vioxx increased the risks of heart attacks in a certain segment of the population. Notably, Plaintiff never deposed Dr. Katz during the applicable discovery period, but Merck deposed Dr. Katz twice. Ms. Levitt was *pro se* during the original discovery period.

The Court denied two Motions for Summary Judgment filed by Merck in this matter, and has reopened discovery. R. Doc. 65200. The second motion for summary judgment concerned the learned intermediary doctrine. R. Doc. 65200 at 11. The motion was partly denied on the grounds that a reasonable juror could question the testimony of Dr. Katz due to credibility issues raised in Plaintiff's Opposition, which revealed that Dr. Katz was a paid speaker and investigator for Merck. R. Doc. 65200 at 12, 16. Ms. Levitt contended that Dr. Katz was on the Speaker Bureau of Merck for approximately six years, and specifically spoke on the benefits of Vioxx. R. Doc. 65166 at 11.

**II.     PRESENT MOTION**

Ms. Levitt now has counsel and the Levitt case is in the final stage of the discovery phase. On September 14, 2015, Jo Levitt moved to take the deposition of Dr. Arnold Katz. R. Doc. 65256. Ms. Levitt seeks to explore the facts surrounding Dr. Katz's treatment of Ms. Levitt, and any potential bias Dr. Katz may have had at the time of his physician-patient relationship with Ms. Levitt. Counsel for Merck called the Court and stated that they intended to oppose the motion. The Court gave Merck ten days to file a response. R. Doc. 65263. Merck timely filed its response. R. Doc. 65269. Feeling that it was not adequately briefed on the issues raised in Merck's response, the Court ordered counsel for Ms. Levitt to file a reply by October 8, 2015. R. Doc. 65274. Ms. Levitt through counsel timely replied. R. Doc. 65288.

### A.     Ms. Levitt's Motion to Take Deposition (R. Doc. 65256)

Ms. Levitt argues that she is entitled to depose Dr. Katz because she has not yet had an opportunity to depose Dr. Katz, and Merck has deposed Dr. Katz twice. Ms. Levitt insinuates that Merck's deposition strategy thus far has been strategic; Merck conducted both of its depositions in the wake of the withdrawal of Ms. Levitt's attorney. R. Doc. 65256 at 2. Now that discovery has been reopened and Ms. Levitt is represented by new counsel, she seeks the same discovery opportunities which were given to Merck.

Ms. Levitt points out that the credibility of Dr. Katz is crucial to her case. Ms. Levitt met her burden regarding the learned intermediary doctrine for purposes of summary judgment, and the Court noted in its Order that "Further fact investigation into [Dr. Katz's] alleged biases could ultimately thwart application of the learned intermediary doctrine." R. Doc. 65200 at 16. Ms. Levitt contends that she is entitled to the "[f]urther fact investigation" contemplated by the Court.

### B.     Merck's Response to Plaintiff's Motion to Take Deposition (R. Doc. 65269)

Merck does not oppose a limited deposition of Dr. Katz. Merck instead asks the Court to limit the scope of the deposition, or otherwise provide guidance on the matter. Merck first contends that the request to depose Dr. Katz is too broad. Ms. Levitt seeks to explore "the facts surrounding [Dr. Katz's] treatment of Plaintiff [and] his relationship with the Defendant" in addition to "exploring her prescription of, and treatment with, the subject pharmaceutical Vioxx." R. Doc. 65269 at 2–3. Merck asks the Court to limit the deposition to credibility issues relating to whether Dr. Katz exercised his independent judgment when deciding to prescribe Vioxx to Ms. Levitt. R. Doc. 65269 at 3.

Merck also asks this Court to protect Dr. Katz as a third party to this litigation. Merck notes that the Court conjectured that Dr. Katz may have breached his duty to Ms. Levitt, and

4

argues that he should be warned that these facts could support a cause of action against him directly. R. Doc. 65269 at 3. Noting that Dr. Katz is not represented by counsel, Merck also asks the Court to provide Dr. Katz with a copy of its April 21, 2015 Order & Reasons, and a copy of plaintiff's motion for leave to depose. R. Doc. 65269 at 3.

Merck additionally requests that Merck be allowed to meet with Dr. Katz prior to his deposition if Plaintiffs intend to do so. Merck notes that Ms. Levitt met with Dr. Hartman, the doctor who initially prescribed Ms. Levitt Vioxx, prior to his deposition. Merck argues that given these circumstances and the possible claim of breach of duty, Merck should be allowed to attend any meetings between Mr. Levitt and Dr. Katz before the formal deposition of Dr. Katz.

### C. Ms. Levitt's Reply (R. Doc. 65288)

Ms. Levitt replies with three primary arguments. First, Ms. Levitt reiterates that discovery has been reopened without any qualifications, and that Ms. Levitt is entitled to an opportunity to depose Dr. Katz under the same scope and rules which applied during Merck's deposition of Dr. Katz. R. Doc. 65288 at 2–4. Second, Ms. Levitt contends that there is no substantive law supporting Merck's contention that a third-party witness is entitled to copies of a deposition request. R. Doc. 65288 at 13. Ms. Levitt also contests whether Dr. Katz is a vulnerable third party who deserves protection, given that the statute of limitations has run on any possible claim against Dr. Katz. R. Doc. 65288 at 13. Third, Ms. Levitt strenuously objects to any *ex parte* communication with Dr. Katz by Merck. R. Doc. 65288 4–12.

### III. ANALYSIS

#### A. Merck's Request to Limit Discovery

Merck asks the Court to limit the scope of discovery to "credibility issues relating to whether Dr. Katz exercised his independent judgment when deciding to prescribe Vioxx to Ms. Levitt." R. Doc. 65269 at 3. The Court cannot support limiting the scope of Ms. Levitt's

5

deposition request in such a manner.  Merck deposed Dr. Katz twice during the initial discovery period in this matter, and there were no restrictions placed on the scope of said depositions.  Ms. Levitt was represented *pro se* at this time, so her failure to arrange for a deposition is understandable.  Now that discovery is reopened, the Court finds the penalization of a former *pro se* plaintiff an insufficient reason to deny Ms. Levitt the broad scope of discovery afforded by Federal Rule 26(b)(1).

> **B.    Merck's Request to Provide Dr. Katz Copies of the Plaintiff's Motion for Leave to Depose (R. Doc. 65256) as Well as This Court's April 21, 2015 Order & Reasons (R. Doc. 65200)**

Merck argues that Dr. Katz is entitled to some degree of protection due to Ms. Levitt's allegations concerning his conduct.  The Court agrees.  While the applicable statute of limitations may have run regarding any claims against Dr. Katz personally, his reputation is implicitly bound to Ms. Levitt's claim against Merck.  Further, providing Dr. Katz with knowledge of the context of this litigation is a slight burden when compared with the implications of Ms. Levitt's theory of the case for Dr. Katz's reputation in the community and practice as a physician.  Principles of fairness support granting Dr. Katz some forewarning of these allegations.

> **C.    Merck's Request to Be Present at any Pre-Deposition Meetings Between Ms. Levitt and Dr. Katz**

The Court construes Merck's Opposition as a request to deny Ms. Levitt the right to engage in *ex parte* pre-deposition meetings with Dr. Katz, rather than a request for Merck to engage in *ex parte* meetings with Dr. Katz.  Thus, the public policy concerns supporting Ms. Levitt's cited case law are not implicated by Merck's request.  R. Doc. 65288 at 4–12.  Ms. Levitt is correct to note that the Court has allowed for *ex parte* communication between Plaintiffs and treating physicians in the past, but the Court finds that the specific circumstances of this case justify a deviation from its earlier ruling.  R. Doc. 729 at 5.  In the interests of fairness and

protecting the interests of a third-party witness whose professional reputation is linked to Plaintiff's theory of the case, the Court finds that neither party should engage in *ex parte* pre-deposition meetings with Dr. Katz.

## IV.  CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Y&S's Motion to Take Deposition of Dr. Katz (R. Doc. 65256) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk will serve on Dr. Katz a copy of the Motion to Take Deposition as well as the Court's April 15, 2015, Order & Reasons.  R. Docs. 65256, 65200.

**IT IS FURTHER ORDERED** that neither party shall engage in any pre-deposition *ex parte* meetings with Dr. Katz.

New Orleans, Louisiana, this 23rd day of October, 2015.

                                        _____
                                        UNITED STATES DISTRICT JUDGE