UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX
   PRODUCTS LIABILITY LITIGATION

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

THIS DOCUMENT RELATES TO:    *Linda Isner v. Seeger Weiss, LLP, et al.,* **12-2406**

## ORDER & REASONS

Before the Court is Defendants Seeger Weiss, LLP and Christopher A. Seeger's (collectively, "the Seeger Defendants") Motion for Summary Judgment. R. Doc. 65252. This matter was set for oral argument. The Plaintiff was represented by counsel. The Defendant made no appearance. Having considered the parties' memoranda and the applicable law, the Court now issues this order.

### I. BACKGROUND

Mrs. Isner enrolled in the Vioxx resolution program on October 30, 2008. Isner was given multiple opportunities to terminate her association with the resolution program and proceed in tort. Isner did not elect to do so. Isner instead received a base award of $1,573,602.19 and $5,359,316.74 for special economic damages for a total of $6,932,918.93.

Isner executed a release of all claims when she joined the resolution program. The release pertained to Administrators such a BrownGreer, Defendants such as Merck, and negotiating plaintiff's counsel such as Christopher Seeger. Isner also acknowledged that there was no guarantee that she would receive any settlement payment, or any specific amount if payment if she were awarded damages.

However, prior to her enrollment, the Seeger Defendants allegedly made representations to Isner's counsel, Mr. Doherty, regarding Isner's potential recovery if she were to join the resolution program. Isner specifically alleges that the Seeger Defendants told Isner that she would receive a "dollar for dollar" payment in settlement of her Extraordinary Injury Damages. R. Doc. 65289-1 at 5. Mr. Seeger attended a settlement conference with Mr. Doherty and Judge Coremus on October 20, 2008, and allegedly stated that Isner would be entitled to all past and future lost earnings through to the end of Dr. Isner's work-life expectancy. R. Doc. 65289-1 at 5. Mr. Doherty sent Mr. Seeger an email confirming Mr. Doherty's understanding of their discussion regarding past and future lost earnings on October 21, 2015. R. Doc. 65289-1 at 6.

Following this interaction and many others with representatives of BrownGreer and Merck, *see* R. Doc. 64882-3, Isner decided to enroll in the resolution program. In doing so, she executed a release on October 30, 2008, which barred:

> (1) any and all rights, remedies, actions, claims, demands, causes of actions, suits at law or in equity, . . . of any kind whatsoever . . . , which I . . . may have ever had, may now have or at any time hereafter may have . . . and (ii) any and all debts, liabilities, obligations, covenants, promises, contracts, agreements and/or obligations, of any kind whatsoever . . . , which any Released Party[1] may have ever had, may now have or at any time hereafter may have to me . . . to any extent, or in any way, arising out of, relating to, resulting from and/or connected with VIOXX and/or with any injury I . . . have ever claimed, or may at any time hereafter claim, VIOXX caused in whole or in part.

R. Doc. 64823-6 at 3. It also provided:

> ACKNOWLEDGMENT OF COMPREHENSION; NO GUARANTEE OF PAYMENT. I AM ENTERING INTO THIS RELEASE FREELY AND VOLUNTARILY, WITHOUT BEING INDUCED, PRESSURED OR INFLUENCED BY, AND WITHOUT RELYING ON ANY REPRESENTATION OR

---

[1] The term "released party" is defined broadly as "all the parties, past, present and/or future, in any way and/or at any time connected with VIOXX and/or with any injury I . . . have ever claimed, or hereafter claim, VIOXX caused in whole or in part." (Id.). For instance, this specifically includes "attorneys" and "agents." (*Id*. at 4).

2

>OTHER STATEMENT MADE BY OR ON BEHALF OF,
>MERCK OR ANY OTHER PERSON. . . . I ACKNOWLEDGE
>THAT I HAVE READ THIS RELEASE AND THE [MSA], AND
>I HAVE HAD AN OPPORTUNITY TO OBTAIN ADVICE
>FROM, AND ASK QUESTIONS OF, COUNSEL OF MY
>CHOOSING REGARDING THE TERMS AND LEGAL EFFECT
>OF THESE DOCUMENTS AND MY DECISION TO ENROLL
>TO PARTICIPATE IN THE [RESOLUTION] PROGRAM. . . . I
>FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS
>RELEASE AND THE [MSA] AND THAT THERE IS NO
>GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT
>PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE,
>THE AMOUNT THEREOF.

R. Doc. 64823-6 at 3. In addition to Isner's signature, the release also contained a certification signed by Mr. Doherty. In that certification, he stated that he had "discussed with [Mrs. Isner] the terms and legal effect" of the release and MSA and that neither had "any objection to the terms." R. Doc. 64823-6 at 11. Further, under the express terms of the MSA itself, claimants are barred from "institute[ing] any proceeding, judicial or otherwise, against Merck, the NPC or [BrownGreer] to enforce, or otherwise with respect to, [the MSA]." MSA § 16.9.2; *see also* MSA § 17.1.6.

Following her award of $6,932,918.93, Isner appealed to the special master. She contended that her extraordinary injury award of $5,359,316.74 was improperly reduced to maintain the relative standing among claimants and was also improperly reduced to account for the uncertainty of future lost income. Her appeal was denied. Isner then collected, accepted, and retained the award.

Isner filed the present action in state court in Massachusetts. It was removed and then transferred to this Court for inclusion in the *Vioxx* MDL. In her Complaint, Isner asserts that the Seeger Defendants were negligent and fraudulent representations and violations of Massachusetts' consumer protection laws.

3

The Court has already ruled on similar motions for summary judgment brought by BrownGreer and Hughes, Hubbard, & Reed ("HHR"). The claims against the Seeger Defendants are the same as those which were brought against BrownGreer and HHR. The Court found that Isner's release of claims barred actions against BrownGreer and HHR. The Court then ruled that even if Isner's action were not barred by the express terms of the MSA, any reliance on statements outside of the terms of the MSA would be unreasonable. Lastly, the Court held that none of the statements by BrownGreer or HHR were misrepresentations.

## II.    PRESENT MOTION

### A.    The Seeger Defendants' Motion for Summary Judgment

The Seeger Defendants now move for summary judgment. R. Doc. 65252. Their arguments are mirror-images of those presented in BrownGreer's motion for summary judgment. R. Doc. 65823. First, they argue that Isner executed a release that bars any claims against the Seeger Defendants, including those seeking enforcement of the settlement. R. Doc. 65252-1 at 3. Second, the Seeger Defendants argue that, in her release, Isner disclaimed that she had relied on representations or statements of others in enrolling in the resolution program and acknowledged that it was uncertain that she would receive any award or, if she did, what the amount of that award would be. R. Doc. 55252-1 at 3. They contend that this release functionally bars Isner's misrepresentation claim. Third, the Seeger Defendants argue that no actionable misrepresentation occurred because they had not made any sweeping assurances and that, even if the assurances they did make were considered sweeping, they were not false. (R. Doc. 55252-1 at 4. Fourth, they argue that Isner waived any right to challenge her award under the resolution program by accepting a $6,932,918.93 award. R. Doc. 55252-1 at 4. Fifth, the Seeger Defendants argue that the award Isner seeks exceeds the damages available under Massachusetts law. R. Doc. 55252-1 at 4. Sixth, the Seeger Defendants also contend that Isner's

4

consumer protection claim fails because the underlying transaction is not commercial in nature and does not involve a tort. R. Doc. 55252-1 at 4.

    B.    **Isner's Opposition**

Isner responds. First, Isner alleges that there are genuine issues of material fact that support Isner's claim of reliance and preclude summary judgment. R. Doc. 65289-1 at 8, 13–16. Isner contends that the Seegers did, in fact, make actionable misrepresentations because, under Masachusetts law, the Seegers had superior knowledge about the matters about which the statements were made. Second, Isner argues that neither the release nor the settlement agreement itself bar her claim that the Seeger's alleged tortious conduct induced her to enroll in the resolution program. Isner cites Massachusetts law, averring that a party may not rely on a release as a defense against claims of fraud or deceit. R. Doc. 65289-1 at 8–13. Third, Isner contests the Seeger Defendant's argument that she ratified the amount of settlement moneys she received when she did not seek to rescind or repudiate the Release and the Master Settlement Agreement. R. Doc. 65289-1 at 16–17. Fourth, Isner claims that she has sustained compensable damages, and therefore summary judgment is not precluded. R. Doc. 65289-1 at 17–19. Fifth, Isner claims that her Chapter 93consumer protection claims, because the Seeger Defendant's actions constitute the practice of law. R. Doc. 65289-1 at 19–20.

    C.    **The Seeger Defendants' Reply**

The Seeger Defendants timely reply. They restate their position that Isner's claims are barred by the release and the settlement agreement itself. R. Doc. 65292-2 at 3–8.

### III.    LAW AND ANALYSIS

    A.    **Standard of Review**

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  When the moving party has met its Rule 56(c) burden, the non-movant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir. 2000).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).  In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant.  Anderson, 477 U.S. at 255.

      B.      **Analysis**

Isner's claims are barred if the terms of the MSA preclude her action.  Pursuant to the MSA, Isner agreed to refrain from "institut[ing] any proceeding, judicial or otherwise, against Merck, the NPC or any Administrator to enforce, or otherwise with respect to, [the MSA]."  MSA § 16.9.2 (emphasis added); *see also id.* § 17.1.6. (The release itself incorporates the MSA.).  Isner has unambiguously stated elsewhere in this litigation that she considers both the MSA and the release enforceable. R. Doc. 64822 at 23.  Isner's present action is brought with respect to the MSA, *see* R. Doc. 64996 at 13, and it is brought against a member of the NPC and his firm.  As such, her claims are barred by the terms of the MSA.

Even if Isner's claims were not precluded by the MSA, her claims against the Seeger Defendants are legally indistinguishable from her already-dismissed claims against BrownGreer and HHR. For Isner to succeed on a claim of misrepresentation, she must prove that any reliance on the Seeger Defendants' "representation[s] [were] reasonable and justifiable." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 50 (Mass. 2009). But "reliance on supposed misrepresentations that contradict the terms of the parties' agreement is unreasonable as a matter of law and so cannot support a fraudulent-inducement claim." *HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 571 (1st Cir. 2014). As this Court held in its July 7, 2014, Order & Reasons, Isner waived any reliance claims she may have had when she expressly indicated that her decision to be bound by the terms of the MSA and the release was made "WITHOUT RELYING ON ANY REPRESENTATION OR OTHER STATEMENT MADE BY OR ON BEHALF OF, MERCK OR ANY OTHER PERSON." R. Doc. 64823-6 at 3. This superseding act, which is valid under Massachusetts law, disproves any argument that she relied on the statements of the Seeger Defendants in enrolling in the resolution program.

Even if one discounts the waiver affected by the disclaimer, Isner's reliance is implausible given the context in which the alleged representations that gave rise to her reliance were made. Isner, through her counsel Mr. Doherty, engaged in extensive discussions with HHR, BrownGreer, and the Seeger Defendants regarding the terms of the MSA. *See, e.g.*, R. Doc. 64822-3 at 1, 36–8. At the conclusion of these negotiations, she voluntarily agreed to be bound by the MSA and the Release. Isner points to some representations by the Seeger Defendants which concern dollar-for-dollar recovery, but in the context of uncertainty surrounding the extended negotiations at issue these representations are insufficient to create an issue of fact. Tellingly, Isner's counsel, Mr. Doherty, remarked on the lack of clarity in an email

7

to Theodore Mayer, counsel for Merck, three days after the alleged representations by the Seeger Defendants. "[W]e acknowledged that there were also many issues that involved 'un-knowable' factors, at this time, which will not be resolved prior to October 30th." R. Doc. 65292-2 at 6.

If the risk of relying on the Seeger Defendant's statements in the context of these "un-knowable" factors was not already apparent, any reliance interest evaporated when Isner examined the Release. The Release explicitly states that a participant, such as Isner, might receive a less-than-expected share of settlement funds, or no funds at all. "I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THE [MSA] AND THAT THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF." R Doc. 64823-6 at 3. Isner could not acknowledge this language without similarly acknowledging that the process of compromise that accompanies a settlement agreement might somewhat reduce the recovery she estimated from any alleged discussions with the Seeger Defendants. A reliance claim premised on statements made in a context of acknowledged uncertainty, coupled with a disclaimer of entitlement to a specific amount of funds, cannot survive summary judgment. *Cf. Turner v. Johnson & Johnson*, 809 F.2d 90, 97–98 (1st Cir. 1986) (A party that has engaged in negotiations "should not sign a contract that conflicts with [their] understanding of the agreement.").

Isner was presented with multiple opportunities to forego participation in the resolution program, and chose not to do so. The Court reiterates its position that while Isner may have received greater recovery in tort, she voluntarily chose to mitigate the risk of trial by binding herself to the resolution program. Isner must accept the consequences of her compromise.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants Seeger Weiss, LLP and Christopher A. Seeger's Motion for Summary Judgment (R. Doc. 65252) is hereby **GRANTED** and Isner's claims against them are **DISMISSED**.

New Orleans, Louisiana, this 9th day of November, 2015.

*Eldon E. Fallon*
UNITED STATES DISTRICT JUDGE