```
                         UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF LOUISIANA
 ***************************************************************

 In re:  VIOXX PRODUCTS
 LIABILITY LITIGATION                    Docket No. 05-MD-1657
                                         Section "L"
                                         New Orleans, Louisiana
                                         Wednesday, November 4, 2015

 THIS DOCUMENT RELATES TO:

 12-CV-2406 LINDA ISNER V.
 SEEGER WEISS, LLP, ET AL
 ***************************************************************


                    TRANSCRIPT OF MOTION PROCEEDINGS
                HEARD BEFORE THE HONORABLE ELDON E. FALLON
                       UNITED STATES DISTRICT JUDGE



 APPEARANCES:

 FOR THE PLAINTIFF:               HERMAN, HERMAN & KATZ
                                  BY:  LEONARD A. DAVIS, ESQ.
                                       PATRICK R. BUSBY, ESQ.
                                  820 O'Keefe Avenue
                                  New Orleans, LA 70130




 Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR, RMR
                                  500 Poydras Street, B-275
                                  New Orleans, Louisiana 70130
                                  (504) 589-7776



   Proceedings recorded by mechanical stenography, transcript
 produced by computer.
```

```
                    P R O C E E D I N G S

                  (WEDNESDAY, NOVEMBER 4, 2015)

                     (MOTION PROCEEDINGS)


     (OPEN COURT.)
           THE COURT:  Lastly we have an argument involving Vioxx.
Call the case, please.
           THE DEPUTY CLERK:  MDL-1657, in re: Vioxx Products
Liability Litigation.
           THE COURT:  Counsel make their appearance for the record.
           MR. DAVIS:  Good morning, your Honor, Leonard Davis, I'm
here with Patrick Busby from my office.
           THE COURT:  Anybody from the defendant?
           MR. DAVIS:  Your Honor, I have not seen -- it's actually
the plaintiff in this matter, I'm the defendant.
           THE COURT:  I am familiar with the case, it's an outgrowth
of the Vioxx litigation.  The individual filed a claim in the Vioxx
litigation and enrolled in the settlement program.  She was to
receive, or has received $1,573,602.19, an award under the program;
plus an additional EI award of $5,359,316.74, so it's about
$7 million thereabouts.  And she indicates that Mr. Seeger, who was
a member of the negotiation team for the plaintiffs committee, made
certain representations to her that led her to believe that she
would receive more than that.
           But she signed a release in the case.  The release signed
```

```
10:07:20   1   by the plaintiff provided that entering into this release she freely
10:07:26   2   and voluntarily, without being induced, pressured, or influenced by
10:07:31   3   and without relying on any representation or other statement made by
10:07:35   4   or on behalf of Merck or any other person she indicates that.  And
10:07:41   5   then she acknowledges that I understand this release and the
10:07:45   6   settlement agreement, and there's no guarantee that I will receive
10:07:49   7   any settlement payment or in any settlement payment even if it's
10:07:57   8   made.
10:07:58   9            So I have a difficulty understanding her position that,
10:08:06  10   notwithstanding the fact that she read the release, had an attorney,
10:08:10  11   this is not somebody who was pro se, sophisticated litigant, she was
10:08:17  12   a doctor as I remember, very well educated and knowledgeable.
10:08:25  13            And I confronted this case once before when she filed
10:08:31  14   suit against some other people involved in the litigation, and I
10:08:35  15   treated it seriously because she's obviously sustained significant
10:08:41  16   injuries, but I also think she's received significant compensation
10:08:47  17   for those injuries, had an opportunity to review the contract, had
10:08:54  18   the advice of counsel in reviewing the contract, and voluntarily
10:08:59  19   signed the contract.
10:09:01  20            Has she received the money, do you know?
10:09:03  21            MR. DAVIS:  Yes, your Honor.
10:09:06  22            THE COURT:  Now takes the position that she is entitled to
10:09:08  23   more, not from Merck but from Mr. Seeger for saying certain things
10:09:15  24   that she interpreted to indicate that she was entitled to more EI
10:09:23  25   payments.  But the EI payments were very difficult to ascertain
```

```
10:09:29   1    because there was a certain amount of EI total and it had to be
10:09:38   2    proportioned so that it took into consideration everybody's claim,
10:09:46   3    but everybody had to understand that it would be increased or
10:09:48   4    decreased depending upon how much was left in the pot.  That's the
10:09:55   5    way it is.
10:09:56   6             I'll issue something on it and we'll see where we go.
10:10:00   7    But I am going to take the same position that I did with the claim
10:10:06   8    against Orran Brown's firm for the same reasons.
10:10:15   9             But I also am disappointed that I set the matter for oral
10:10:20  10    argument, everybody had an opportunity to appear, and the plaintiff,
10:10:22  11    notwithstanding notice, didn't show up and made no attempt to
10:10:27  12    contact the Court to indicate what their position was other than
10:10:31  13    filing a brief.
10:10:33  14             MR. DAVIS:  Your Honor, I appreciate that you set it for
10:10:38  15    oral argument.  My client appreciates it as well.
10:10:43  16             And I will tell you that counsel for the plaintiff reached
10:10:50  17    out to us sometime ago and asked for an extension on the briefing,
10:10:54  18    which we provided to them.  We did push back the briefing times.  I
10:11:00  19    had every expectation that counsel would be here for oral argument,
10:11:04  20    and I am prepared to make oral argument; because, as your Honor
10:11:10  21    noted prior in Record Doc. 64996 an order was issued as to
10:11:20  22    BrownGreer and Hughs, Hubbard & Reed and Ted Mayer.  This is a
10:11:26  23    similar type argument on Chris Seeger.  You did note that Chris
10:11:30  24    Seeger and the Seeger Weiss firm, who are the named defendants, were
10:11:34  25    part of the negotiating committee, which they were.
```

10:11:38  1        I also point out that Mr. Seeger was lead counsel and part
10:11:42  2   of the Plaintiff Steering Committee.
10:11:46  3        And as your Honor pointed out, this was, in fact, an award
10:11:49  4   of approximately 6.9 or $7 million, which was the highest award in
10:11:55  5   the program.  And at all times the plaintiff had a voluntary choice,
10:12:02  6   and that was a voluntary choice to be in the program.  And as your
10:12:06  7   Honor is aware, claimants had an opportunity to opt out even during
10:12:11  8   as they went through gates at different stages depending upon the
10:12:14  9   terms of the Master Settlement Agreement.
10:12:19 10        The claim here revolves around alleged statements that
10:12:28 11   were made by Ted Mayer and Chris Seeger.  And as your Honor is well
10:12:36 12   aware, there were multiple meetings throughout the country with
10:12:42 13   judges, because there were a number of judges the Court brought in,
10:12:45 14   state court as well as the federal court, as well as individuals
10:12:50 15   from both sides, to explain items in settlement.  But no
10:12:56 16   representations were to be relied upon.
10:12:58 17        And, in fact, this individual claimant had their own
10:13:03 18   counsel.  And, in fact, specifically, the MSA, as well as the
10:13:09 19   release, provided that there were no reliances and that the
10:13:17 20   individual claimant had the opportunity to enter freely after having
10:13:22 21   discussions with their own individual counsel.
10:13:28 22        It was understood, it was entered freely, there was no
10:13:33 23   guarantee, there was no pressure, it was voluntary, and there were
10:13:36 24   no representations.
10:13:38 25        I will not go into the argument, the full argument, your

```
10:13:42   1   Honor, I've realized that the Court's fully aware of the issues, and
10:13:46   2   I appreciate the opportunity to come before you.
10:13:48   3              THE COURT:  All right.  Okay.  Thank you very much.  The
10:13:50   4   Court will stand in recess.  I'll issue my order on this one.  Thank
10:13:54   5   you.
10:13:55   6              MR. DAVIS:  Thank you.
10:13:57   7              THE COURT:  The court will stand in recess.
10:13:59   8              THE DEPUTY CLERK:  All rise.
           9         (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)
          10
          11                              * * * * *
          12
          13                         REPORTER'S CERTIFICATE
          14
          15        I, Karen A. Ibos, CCR, Official Court Reporter, United
          16   States District Court, Eastern District of Louisiana, do hereby
          17   certify that the foregoing is a true and correct transcript, to the
          18   best of my ability and understanding, from the record of the
          19   proceedings in the above-entitled and numbered matter.
          20
          21
          22                        /s/ Karen A. Ibos
          23                        Karen A. Ibos, CCR, RPR, CRR, RMR
          24                        Official Court Reporter
          25
```