**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: Vioxx | * MDL Case No. 1657 |
| | * |
| PRODUCTS LIABILITY | * SECTION L |
| LITIGATION | * |
| | * JUDGE FALLON |
| *This document relates to* | * |
| | * MAGISTRATE JUDGE |
| ***Jo Levitt v. Merck Sharp & Dohme Corp.***, | * KNOWLES |
| **2:06-cv-09757-EEF-DEK** | * |
| | * |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**DEFENDANT MERCK SHARP & DOHME CORP.'S MOTION TO MAINTAIN**
**CONFIDENTIAL DOCUMENT DESIGNATIONS UNDER PRETRIAL ORDER 13**
**AND FOR A PROTECTIVE ORDER BARRING SIMILAR REQUESTS**

Merck filed its Motion to Maintain Confidential Document Designations Under Pretrial

Order 13 (Rec. Doc. 65337) on March 28, 2016, and it is currently noticed for submission on

May 25, 2016.  That motion responded to Plaintiff Jo Levitt's February 2016 request, made in

connection with her retention of Dr. David Egilman as an expert witness, that Merck remove any

confidential document designations on "any and all Vioxx documents relating to marketing,

research, science, studies, testing, production etc."—in other words, essentially all documents

designated confidential by Merck during the course of this twelve-year litigation.  In the weeks

following the filing of that motion, Mrs. Levitt's counsel has made seriatim requests to de-

designate thousands of additional confidential documents.  Notably, Mrs. Levitt's largest request

involving approximately 3,000 confidential documents duplicates the challenge that Dr. Egilman

pursued in Kentucky state court before he was enjoined by this Court.  *See generally* Summary

of De-Designation Requests (attached as Ex. 1); *see also* Apr. 12, 2016 Email and Attached

Spreadsheet (attached as Ex. 2).

Once again, Merck must seek the assistance of this Court in addressing challenges to the

confidentiality status of thousands of Vioxx documents—challenges that Merck first faced from Dr. Egilman and which have followed him into Mrs. Levitt's case.  No explanation has been provided in the seven requests to date for why Mrs. Levitt believes the de-designation of these documents is useful for the prosecution of her case.  Mrs. Levitt and her counsel have full access, for the purposes of this case, to each of the confidential documents that they have identified. They have been free to use them in depositions, and will be able to use them at trial (to the extent admissible).  *See* Pretrial Order No. 13 ("PTO 13").  Similarly, no justification has been offered as to why Merck should be required to shoulder the substantial cost and burden of re-reviewing the confidentiality of such of documents.  Indeed, the only suggestion of Mrs. Levitt's purpose is a stray reference to avoiding the obligation to supervise Dr. Egilman's access to confidential Merck documents, which was ordered by this Court.  *See* Stipulation Concerning Enforcement of PTO 13 and in Furtherance of This Court's June 6, 2014 Preliminary Injunction of David S. Egilman, M.D., dated Sep. 12, 2014 (Rec. Doc. 65025) ("Egilman Stipulation") (attached as Ex. 3).  That this new wave of challenges comes after the close of fact discovery in in the last Vioxx personal injury lawsuit in this MDL and after submission of Dr. Egilman's expert reports and completion of his expert deposition, demonstrates how unnecessary and unwarranted these costly challenges are to trial preparation of the *Levitt* case or the core mission of this MDL.

Given that Plaintiff's counsel has neither identified nor provided any litigation-related basis for Mrs. Levitt to have these confidential designations removed, Merck can only assume that her current quest is either (1) harassment aimed at wasting Merck's attorney resources, (2) a continuation of her expert Dr. Egilman's campaign, begun in the Attorney General action in Kentucky state court, to employ discovery in legal proceedings to pursue his public attacks on Vioxx and Merck, and/or (3) an attempt to shift onto Merck the cost and burden of Dr. Egilman's

compliance with the Stipulation entered by this Court.  Each of these objectives is at odds with the parties' duty of good faith in conducting discovery, the plain language of PTO 13, and the Egilman Stipulation.  Moreover, even if Mrs. Levitt could articulate any litigation-driven justification for her requested confidentiality re-review of thousands of documents, the immense cost and burden of that process is grossly disproportionate to the needs of the *Levitt* case, and Mrs. Levitt's requests should therefore be denied.  *See* Fed. R. Civ. P. 26(b)(1).

As this Court is well aware, the Vioxx MDL is eleven years old.  This is the last MDL personal injury case.  Discovery in Mrs. Levitt's case is close to completion—only two expert depositions remain to be concluded.  The resources of the parties should be focused on preparing their final round of Daubert and dispositive motions, and on otherwise getting this case trial-ready—not on a completely unnecessary sideshow.  Accordingly, and as further set forth below, Merck respectfully requests that this Court enter an order maintaining the confidentiality designations of the documents encompassed by Mrs. Levitt's pending requests, and also barring Mrs. Levitt from submitting additional de-designation requests in the future, absent a submission to the Court signed by counsel that is specifically tied to and supported by the facts and needs of the *Levitt* case.

## BACKGROUND

### *Pretrial Order 13.*

Over the course of this MDL proceeding, Merck has produced millions of pages of documents to the PSC and other plaintiffs' counsel.  *See generally, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 869 F. Supp. 2d 719, 721 (E.D. La. 2012).  Many of these documents contain or constitute commercially sensitive information that Merck designated as confidential.  On May 24, 2005, the Court issued a protective order, PTO 13, to "facilitate a timely and efficient discovery process" in the Vioxx MDL proceeding while addressing the confidentiality concerns of all parties.  *See*

3

PTO 13.  PTO 13 "govern[s] all documents, the information contained therein, and all other information produced or disclosed during th[e] [MDL] Action whether revealed in a document, deposition, other testimony, discovery response or otherwise, by any party in this Action[.]" *Id.* ¶ 1.  Under PTO 13, "[a] party . . . may designate as Confidential Information any document or information produced by or testimony given by any other person or entity that the party reasonably believes qualifies as such party's Confidential Information pursuant to th[e] Protective Order." *Id.* ¶ 9.  Documents designated as confidential are protected from dissemination, and must be used "only in connection with this Action or an action in which the Receiving Party is permitted by this Order to use Confidential." *Id.* ¶ 14.

"Umbrella" protective orders similar to PTO 13, which allow parties to designate confidential documents at the time of production, are widespread in litigation and are "essential to the functioning of civil discovery." *Holland v. Summit Autonomous, Inc.*, No. CIV. A. 00-2313, 2001 WL 930879, at *2 (E.D. La. Aug. 14, 2001) (quoting *Bayer AG and Miles, Inc. v. Barr Labs.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)).  They allow for the orderly production of documents, while permitting parties to shield from disclosure documents that they believe in good faith contain confidential information, including trade secret or other confidential research, development, or commercial information.  *See* Fed. R. Civ. P. 26(c)(1)(G).  Such protective orders are particularly important in complex and multidistrict litigation, such as this one, where the scope of discovery and the volume of confidential material may be very large.  As noted by the Manual for Complex Litigation, such orders "expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication," and should when possible be addressed at an early stage in the litigation, so as not to later "disrupt the discovery schedule." *See* Manual for Complex Litigation, 4th ed., §§11.43 and 11.432.

4

In accordance with these principles, PTO 13 was one of the earliest case administration orders negotiated by the PSC and Merck counsel in the MDL, and similar orders were negotiated and entered in other coordinated Vioxx proceedings. Pursuant to PTO 13, during the time that document productions were ongoing in the Vioxx litigation, counsel for Merck created and produced in this MDL a monthly log reflecting current confidentiality status of all documents produced in the Vioxx litigation. Any disputes about document confidentiality in the MDL have been addressed by the parties on a document-by-document basis, and where documents were de-designated in other Vioxx matters, Merck also applied those de-designation determinations in the MDL. During the course of six MDL bellwether trials, one bench trial regarding a lawsuit brought by the Louisiana Attorney General, and a number of significant rulings, this Court has never been imposed upon to rule on the confidentiality of individual Merck documents.

***Dr. Egilman's Previous Confidentiality Challenges in the Vioxx Litigation.***

As this Court is aware, Dr. Egilman has previously been retained as an expert witness in a number of personal injury cases and Attorney General actions within the Vioxx MDL, as well as in other Vioxx proceedings. The general report that Dr. Egilman has produced in the *Levitt* matter is substantially similar to previous reports he has submitted in other Vioxx matters.[1] As an expert witness, he has been bound by PTO 13 to protect confidential documents from disclosure, and use them only for litigation purposes.

It is undisputed that Dr. Egilman failed to adhere to these court-imposed obligations. Beginning in 2014, Dr. Egilman embarked on a protracted campaign to challenge the confidential status of vast swaths of documents produced by Merck in the Vioxx litigation. In

---

[1]     Dr. Egilman has also submitted a case-specific report discussing Mrs. Levitt's medical records and background. This report does not discuss Merck documents.

addition, Dr. Egilman has acknowledged that he improperly disseminated confidential

information in violation of PTO 13 by referencing confidential Vioxx documents in his own

publications, and by describing such documents to a *Wall Street Journal* reporter for use in an

article published in March 2014.  *See* Feb. 17, 2014 Submission of David Egilman to the Hon.

Phillip Shepherd, Franklin Co, Kentucky, Circuit Court (attached as Ex. 4) at 2; Ed Silverman,

*More Disclosure Coming in Merck's Decade-Long Vioxx Nightmar*e, Mar. 26, 2014,

http://blogs.wsj.com/corporate-intelligence/2014/03/26/more-disclosure-coming-in-mercks-

decade-long-vioxx-nightmare (attached as Ex. 5).

  Dr. Egilman first took his de-designation campaign to the state court in Franklin County,

Kentucky.  In those proceedings, Dr. Egilman made his intent clear:  He sought de-designation of

these materials so that he could "publish additional papers based on documents that Merck has

improperly [in his view] stamped 'confidential.'"  *See* Ex. 4 at 2.  Because the vast majority of

the documents for which Dr. Egilman sought de-designation in Kentucky state court were

actually produced in this MDL (not Kentucky) and protected by this Court's PTO 13, Merck

moved this Court to enjoin Dr. Egilman from pursuing an order there that would allow the

publication of documents that retained the confidential designation in the MDL under PTO 13.

*See* Rec. Doc. 64947-1.  (Merck also sought sanctions against Dr. Egilman for his violations of

PTO 13 based on disclosure of confidential information to the *Wall Street Journal*.  *See* Rec.

Doc. 64894-1.)[2]

---

[2]  This was not the first instance in which a federal court had found that Dr. Egilman had
violated protective orders.  *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 395 (E.D.N.Y.
2007) (ordering Dr. Egilman to return all confidential documents to Eli Lilly after finding that
Dr. Egilman had "deliberately thwarted a federal court's power to effectively conduct civil
litigation"); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 192 (2d Cir. 2010) ("[T]he record is
unequivocal that Gottstein schemed with Egilman to bypass the protective order and, in fact,
aided and abetted the latter's violation of the same."); *see also Kuiper v. Givaudan, Inc.*, 602 F.

In June 2014, this Court entered a preliminary injunction, finding that "Dr. David Egilman may have acted in derogation of his responsibilities under Pretrial Order 13 by making the disclosure of confidential information and also seeking the designation of confidential information outside of the proper disclosure mechanism." *See* Rec. Doc. 64973 at 2.  Under this Order, Dr. Egilman was prohibited from "[d]isclosing, disseminating, discussing, referencing, or using for his own purpose or any other purpose" confidential information covered by PTO 13, as well as from "[a]ccessing, studying, or taking notes regarding the same confidential information." *Id.*

The dispute with Dr. Egilman over the public disclosure and de-designation of confidential documents was ultimately resolved by a stipulation negotiated between Dr. Egilman and Merck, and entered by this Court in September 2014.  *See* Egilman Stipulation (Ex. 3). Under the Egilman Stipulation, Dr. Egilman agreed to turn over to his personal counsel (an attorney not otherwise involved in any Vioxx litigation) all documents then in his position that were designated confidential under PTO 13, and not to come into actual or constructive possession of such confidential documents in the future except under certain circumstances set forth in the Stipulation.  *See id.* ¶¶ 2, 5.  Dr. Egilman *is* explicitly permitted to review confidential documents in the presence of counsel in any currently pending actions in the Vioxx MDL in preparation for testimony at trial or deposition in a matter where he has been disclosed as an expert.  *See id.* ¶ 5(c).  Accordingly, Dr. Egilman is not prevented from reviewing confidential Merck documents as necessary for him to prepare for trial in the *Levitt* matter,

---

Supp. 2d 1036, 1050 (N.D. Iowa 2009) (noting that Dr. Egilman had been sanctioned in a state court proceeding, where "the trial court found Dr. Egilman 'knowingly, deliberately, intentionally and willfully' violated a previous order of that court prohibiting certain extrajudicial statements") (quoting *Ballinger v. Brush Wellman*, No. 96- CV-2532 (Colo. Dist. Ct. Jefferson Cnty., June 21, 2001)).

provided that review is done in the presence of counsel.  Importantly, Dr. Egilman's deposition in the *Levitt* matter has already concluded.

**Mrs. Levitt's Pending De-Designation Requests.**

Mrs. Levitt alleges that Vioxx caused her to experience two cardiovascular events in March and May of 2000 after she had taken Vioxx for a few months.  *See* Rec. Doc. 64965. Extensive fact discovery was conducted by the parties in this case and concluded in January 2016, encompassing the depositions of nine fact witnesses.  The parties collectively designated a total of nine experts, and seven expert depositions have been completed.  There is a joint proposal before the court calling for completion of expert discovery by May 27, 2016, with briefing on Daubert and dispositive motions and motions in limine to occur over the summer. *See* Rec. Doc. 65342.  Following the disposition of such motions, this case will be ready to proceed to trial.

Now, at this late stage of both the Vioxx litigation generally and of her case specifically, Mrs. Levitt and her counsel have apparently picked up Dr. Egilman's campaign to de-designate confidential documents that he was forced to abandon in Kentucky two years ago:  Her request for de-designation of confidential documents made on April 12, 2016 simply attached a consolidated spreadsheet, originally prepared by Merck counsel, listing the confidentiality status of over 12,000 documents that Dr. Egilman had challenged in the Kentucky proceeding.[3]  *See* Ex. 2.  Mrs. Levitt's counsel has generally requested the "de-designation of every document on the . . . spreadsheet that is listed as Confidential."  *Id.* at 1.  Counsel for Merck has endeavored to parse out the specific material in Mrs. Levitt's request and determined that 4,487 of the 12,274

---

[3]     This 303-page spreadsheet was previously submitted to this Court by Dr. Egilman as an exhibit to his May 29, 2014 opposition to Merck's motion for sanctions against him for the violation of PTO 13.  *See* Rec. Doc. 64957-2; Ex. 2.

documents were marked as confidential, of which 2,978 documents appear to be unique. No reason was provided by Mrs. Levitt for this voluminous and burdensome request, and her counsel also declined to engage in the meet-and-confer process set out in PTO 13, declaring the parties' negotiations over the 3,000-document request over before they had begun: "Since you haven't negotiated in good faith, pursuant to PTO 13, this will serve as written notice that our negotiations have ended. It is your burden to prove the confidential designation of these documents to the Court."[4] *Id.*

The April 12 de-designation request was just one in a series of similar requests from Mrs. Levitt's counsel over the past five months: De-designation requests were lodged on December 31, 2015; February 25, 2016; March 29, 2016; March 31, 2016; April 12, 2016; April 14, 2016; and May 5, 2016. *See generally* Correspondence Related to Requests (attached as Ex. 6). In none of this correspondence has Mrs. Levitt provided a reason or justification why a particular document should be de-designated. The only explanation for the requests that has been given is that Dr. Egilman's preparation was made more onerous because he could not view confidential documents without counsel present—an important term in his Stipulation resulting from his own failure to comply with a Protective Order. *See* Dec. 31, 2015 email from D. Thomas to E. Pistilli (Ex. 6 at 1) (Counsel noting "we have additional materials we would like to provide to Dr. Egilman, however, our ability to do so is severely restricted by the Stipulation.").

---

[4]     This allegation of "bad faith" appears to stem from Plaintiff's March 29, 2016 request for de-designation—a request served one day after Merck filed its first motion regarding its confidential documents. In the March 29 request, Merck was asked to "address the confidentiality designation" of a new list of over 900 documents. *See* Ex. 6 at 7. Merck responded on April 4, 2016, noting that many of the documents on Plaintiff's March 29 list had never been designated confidential in the Vioxx litigation, and requesting specific identification of the confidential documents that Mrs. Levitt intended to challenge. *See* Ex. 6 at 10. Plaintiff's counsel never responded to this correspondence.

## ARGUMENT

### I.    Plaintiff's Requests Violate Rule 26's Proportionality Requirement.

Plaintiff's de-designation requests violate the proportionality requirement of Rule 26.

Rule 26 requires that a party's discovery requests be "proportional to the needs of the case[.]"

*See* Fed. R. Civ. P. 26(b)(1).  The Rule weighs, among other things, "the parties' relative access

to relevant information" and "the importance of the discovery in resolving the issues" against

"the burden or expense of the proposed discovery[.]"  Fed. R. Civ. P. 26(b)(1).  Rule 26 supports

"Rule 1's promise of 'just, speedy and inexpensive' litigation."  *In re: Xarelto (Rivaroxaban)*

*Products Liab. Litig.*, 313 F.R.D. 32, 35 (E.D. La. 2016).  Plaintiff already has access to every

confidential document produced by Merck in this MDL.  Whether those documents remain

designated as confidential does not contribute to the resolution of any legal or factual issue in the

case.  Plaintiff points to nothing specific to justify the extraordinary burden and expense that her

blanket request entails, and has made no claims as to why the de-designation of these documents

is necessary to pursue her case at this point.

Plaintiff's requests serve no purpose in this litigation.  She—along with her counsel, her

experts, her fact witnesses, and "any third party for whom there is a *litigation need* to disclose

the information"—already has full access to the thousands of confidential Merck documents at

issue.  *See* PTO 13 ¶ 10 (emphasis added).  With that access, Plaintiff may use Merck's

confidential information for any proper litigation purpose.  And since filing her complaint, she

has done so.  Plaintiff has retained five expert witnesses, all of whom have submitted reports,

and her counsel has defended their depositions.  *See* Rec. Doc. 65342.  She has deposed four of

her treating physicians and three of Merck's four expert witnesses.  She has participated in fact

discovery and opposed summary judgment.  For nearly ten years, Plaintiff has pursued this

litigation without being hindered in any fashion by the provisions of PTO 13.  The re-review and

potential de-designation of any of these documents will provide no litigation benefit to Plaintiff.

That position stands in stark contrast to the effort, burden, and costs that will be imposed upon on Merck if Merck's counsel is now required to re-review thousands of documents.  The documents at issue in Plaintiff's request were already the subject of litigation in 2014, when Dr. Egilman requested their de-designation in connection with settled Vioxx litigation in Kentucky. The work previously done by Merck's counsel in Kentucky provides some measure of the potential costs to Merck to investigate and address the present challenges.  Between 2013 and 2014, Dr. Egilman requested that Merck review and de-designate documents appearing at approximately 12,275 Bates ranges.  *See* Ex. 2.  Merck did so, first verifying the provided Bates ranges to identify confidential documents and then substantively reviewing the continuing basis for each designation.  Merck's review (conducted less than two years ago) included each of the 2,978 documents that are the subject of Mrs. Levitt's April 12, 2016 request.  The overall cost to Merck was approximately $208,000.  As such, the potential cost to Merck to address just the pending challenges from Mrs. Levitt in the MDL would be in the range of approximately $150,000 to $250,000, plus any counsel fees associated with briefing, argument, and negotiations with respect to particular documents.  Obviously, absent some limitation on future requests, these costs to Merck would continue to accrue.

In addition, because the Vioxx MDL is largely resolved and document production completed, the document review infrastructure created to manage the production process is no longer active.  The last Vioxx document productions were completed nearly three years ago in 2013.  Assuming that the original stored images can still be accessed, any documents in storage would then need to be brought back into an active review environment.  The documents themselves would then need to be substantively re-reviewed.  Finally, the entire production

11

apparatus—the mechanism by which stored images can be annotated with appropriate Bates numbers, redactions, and confidentiality legends and then transmitted in a useable form to plaintiffs—would need to be re-built in order to potentially produce documents with new images (*i.e.*, without a confidentiality stamp or with new or different redactions). All of this work would be time-consuming and costly, particularly on the scale demanded by Mrs. Levitt's counsel. And it would duplicate an effort that once served the document production demands of more than 50,000 plaintiffs in this MDL during its waning days.

Accordingly, the enormous cost and burden on Merck arising from Plaintiff's requests is out of proportion to any utility it could possibly provide in the *Levitt* case, and thus violates Rule 26.

## II.   Plaintiff's Requests Are for an Improper Non-Litigation Purpose.

Both Rule 26 and PTO 13 require that Plaintiff's discovery requests and use of discovery materials be for a proper *litigation* purpose. *See* Fed. R. Civ. P. 26(b)(1) (requiring that a request be "proportional to the needs of the case," not to the extrajudicial interests of the parties); PTO 13 ¶ 14 ("The Receiving Party shall use confidential information only in connection with this Action[.]"). Plaintiff offers no purpose whatsoever for her serial requests, let alone one based on the needs of this case.

In the absence of a stated litigation purpose, the only conclusion that can be drawn is that these requests seek to use the documents for non-litigation purposes. As Dr. Egilman told this Court, he is "the only one who has asked for de-designation, as far as [he] know[s], in this [Vioxx MDL] litigation in general." Rec. Doc. 64947-8 at 20:22-24. Dr. Egilman has long "intend[ed] to publish additional papers" based on confidential Merck documents, Ex. 4 at 2, and to share those documents with his co-authors, Ex. 5 at 2. Plaintiff is fully aware of Dr. Egilman's longstanding efforts to contest Merck's confidentiality designations. When Dr.

12

Egilman's disclosure of confidential information to the *Wall Street Journal* forced Merck to seek sanctions, Mrs. Levitt—though not a party to the motion—filed a response in opposition to Merck. *See* Rec. Doc. 64953. Plaintiff's current de-designation requests serve only to further Dr. Egilman's purposes and his personal campaign for de-designation. The request is improper under both Rule 26 and PTO 13.

## III. The Court Should Not Allow Plaintiff and Dr. Egilman to Circumvent or Nullify the Court-Approved Stipulation.

By agreement of the parties and an order of this Court, because of Dr. Egilman's past conduct, he is not allowed unsupervised access to confidential information in the Vioxx MDL. *See* Egilman Stipulation (Ex. 3). The limits placed upon Dr. Egilman arose out of his prior improper conduct, were negotiated by the parties (including Dr. Egilman and his personal attorney), and found proper by this Court. They are neither "severe" nor inappropriate, as counsel for Mrs. Levitt has suggested. *See* Dec. 31, 2015 email from D. Thomas to E. Pistilli (Ex. 6 at 1) (indicating that counsel's ability to provide Dr. Egilman with materials "is severely restricted by the Stipulation"). Dr. Egilman has full access to the documents and counsel is fully able to "review with Dr. Egilman in person, in preparation for his testimony at trial or deposition . . . documents and data designated confidential in these MDL proceedings[.]" *See* Egilman Stipulation (Ex. 3) at 6–7. Rather than complying with the stipulation, Plaintiff seeks essentially to nullify it by to shifting all of the burdens and consequences of the Egilman Stipulation onto Merck. While Plaintiff's counsel characterizes the review (i) of a limited set of documents (ii) in person with their retained expert (iii) for the purpose of a deposition (which has already happened) as too "severe," it pales in comparison to the review by Merck (i) of 3,000 documents (ii) on a decommissioned server (iii) for no stated purpose. The purpose of the stipulation was to *protect* Merck's confidential information against the abuses that Dr. Egilman was threatening.

With this sweeping request for de-designation, Plaintiff seeks to make it prohibitively expensive for Merck to retain the protections this Court ordered.  Nor is there any indication that these 3,000 documents represent the entire universe of documents of which Plaintiff will later request review.  With each seriatim request, the purpose remains silent but the scope and burden of the review multiplies.

## IV.    Merck Requires Protection from Plaintiff's Harassing Requests.

Litigants have an obligation to refrain from abusive discovery requests.  Plaintiff's request will only work to consume substantial Merck resources without producing any new information to aid Plaintiff in the prosecution of her case.  Such harassing requests violate the Federal Rules and counsel's duty of good faith.  *See* Fed. R. Civ. P. 26(g)(1)(B)(ii) (no request shall be made "for any improper purpose, such as to harass"); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 71 (1991) (collecting sources of authority to curb, among other things, discovery abuses that result in "mountainous expense and waste of financial resources").

## CONCLUSION

For the foregoing reasons, Merck respectfully asks the Court to enter an order maintaining the confidentiality designations of the documents encompassed by all of Mrs. Levitt's pending requests, and also barring Mrs. Levitt from submitting additional de-designation requests in the future, absent a submission to the Court signed by counsel that is specifically tied to and supported by the facts and needs of the *Levitt* case.  A Proposed Order is included herewith.


Dated:  May 10, 2016                              Respectfully submitted,

                                                        By: */s/ Dorothy H. Wimberly*
                                                            Phillip A. Wittmann, 13625
                                                            Dorothy H. Wimberly, 18509

STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Phone: 504-581-3200
Fax:    504-581-3361

Defendants' Liaison Counsel

—and—

Douglas R. Marvin
M. Elaine Horn
Emily R. Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: 202-434-5000
Fax:    202-434-5029

Attorneys for Merck Sharp & Dohme Corp.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of May, 2016.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Phone:  504-581-3200
Fax:      504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel

16