# EXHIBIT 4



David Egilman, M.D., M.P.H.
8 North Main Street, Suite 404
Attleboro, Massachusetts 02703
Telephone 508-226-5091 Fax 425-699-7033

February 17, 2014

*Via Electronic Mail* - juliataylor@kycourts.net and Overnight Mail

Hon. Phillip Shepherd
Franklin Circuit Court
Franklin County Courthouse
222 St. Clair Street
Frankfort, KY 40601

Re: *Commonwealth of Kentucky v. Merck & Co., Inc.*, Franklin Circuit Court, Division I, Civil Action No. 09-CI-1671

Dear Judge Shepherd:

I submit this in response to Merck & Co., Inc.'s ["Merck"] motion filed February 14, 2014 at 4:09 PM.

Facts:

I would add the following to Merck's description of the facts of the case and purpose of my motion:

This case is about 60,000 US (including Kentucky) residents who died as a result of taking Vioxx and at least three times that many who suffered heart attacks, strokes or other serious adverse health outcomes. [1] *Commonwealth of Kentucky v. Merck & Co., Inc.* is a case brought by a government entity on behalf of the public. The public has the right to evaluate the

---

[1] Graham DJ, Campen D, Hui R, Spence M, Cheetham C, Levy G, et al. Risk of acute myocardial infarction and sudden cardiac death in patients treated with cyclo-oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs: nested case-control study. Lancet. 2005;365(9458):475-81.

1

appropriateness of the settlement agreement and the need for possible changes in law and policy that will prevent future tragedies. To do so, the public must be able to evaluate the extent and nature of Merck's conduct. Much of this information is hidden in confidential documents and depositions. I ask the Court to de-designate documents that Merck has designated confidential that do not qualify for this designation under CR 26.03 (g).

I have standing for six independent reasons:

1. I signed the confidentiality order where standing is granted to third parties.
2. Merck visited my medical practice on at least 33 occasions to provide misinformation on Vioxx.
3. Merck sent me a letter in 2001 which misrepresented the cardiac risk of Vioxx stating that it was more than three times less risky than its study showed.
4. I am a member of the press as the editor of a medical journal.
5. I am the co-author of five peer reviewed medical publications which reported information that Merck had stamped "confidential" that was de-designated during trials. I intend to publish additional papers based on documents that Merck has improperly stamped "confidential." The residents of Kentucky will benefit from my publication of still secret information that relates to risk from consumption of Vioxx and information that will allow them to understand the causes of the Vioxx debacle.
6. I have visited Kentucky and paid sales taxes which contributed to the court system.

I.  All the Vioxx documents subject to this proceeding were brought to and many were marked as exhibits to the deposition of me which Merck took in this case on May 24, 2013.

Merck NEVER designated any of the documents used at my deposition as "CONFIDENTIAL" as required in Paragraph 8 of the Confidentiality Order.  Paragraph 8 of that order states:

"Information disclosed at a deposition taken in connection with this Action may be designated as Confidential Information by:

a) stating on the record during the taking of the deposition that the deposition, or some part of it, may constitute Confidential Information; and

b) designating the portions of the transcript in a letter to be served on the court reporter and opposing counsel within thirty (30) calendar days of the Supplying Party's receipt of the transcript of a deposition.

Merck did neither. Thus because all the documents that are the subject of this proceeding were disclosed at my deposition and because Merck failed to designate any of them CONFIDENTIAL in accordance with the requirements of Paragraph 8 of the Confidentiality Order, there is no basis for arguing that these documents are Confidential and the balance of Merck's arguments about my having standing are Moot. Merck understands that re-designation of exhibits is required to maintain document confidentiality after documents are used at deposition. I attach an exemplar of Merck's process in another case. [Exhibit 1] I request that the Court enter an order that

2

explicitly defines deposition materials as "Information disclosed at a deposition" to comport with past Merck practices.

## II. I have Standing to Challenge the Confidential Status of Documents Produced by Merck.

1. Standing relating to the Confidentiality Order

Merck first argues that I do not have standing to challenge the designation of certain documents as confidential, citing *City of Louisville* v. *Stock Yards Bank & Trust Co.,* 843 S.W.2d 327, 328-329 (Ky. 1992). That case, however, stands for the simple proposition that standing requires a "present and substantial interest in the subject matter of the litigation," as opposed to a "remote and speculative" interest. *Id.* Moreover, this Court has "recognized the difficulty of formulating a precise standard to determine whether a party has standing and [has] held that the issue must be decided on the facts of each case." *Id.* at 329.

In the case at bench, the facts establish that I have standing. Paragraph 22 of the protective order Merck signed states that, "Any party or **a third party with standing** may object to the propriety of the designation (or redesignation) of specific material as Confidential Information by serving a written objection upon the Supplying Party's counsel." [Emphasis added] The ORDER CLARIFYING EFFECT OF AGREED PROTECTIVE ORDER defines third parties with standing, "The protective order entered in this case does not impose new or additional obligations or confidentiality on **third parties (witnesses, consulting experts**, or other parties executing a certification pursuant to the Protective Order) who may have access to documents from other sources." [Emphasis added] Merck claims that I am not a third party; the State of Kentucky says I am. [Exhibit 2]

We both signed the Confidentiality Agreement which is in fact a contract that this Court explicitly administers. Merck has in essence contractually agreed that I have standing. They can do that. Merck agrees that the confidentiality agreement provides that some third-parties" have standing and can challenge the designation of documents. I fall under two of the definitions specifically noted in the agreement, witnesses and consulting experts. The document does not mention or define any other party who might have standing. By default then "third party with standing" must apply to me. Finally I have standing because I am bound by the Confidentiality Agreement which includes a procedure for challenging designations.

Merck states that Kentucky residency is required to grant standing but the confidentiality agreement does not say that.[2] In general Kentucky does not require "residency" or even citizenship to establish standing in application of Kentucky Open Records ACT. The Kentucky AGs office states that, "You may inspect any nonexempt public record regardless of your identity." [Exhibit 3] If Merck believes as they seem to argue that any Kentucky resident has standing then I have standing because I have been to Kentucky and residency is not defined by citizenship or even legal status in Kentucky public access law.

2. Standing relating to my status as a member of the press

---

[2] In fact I have been to Kentucky on numerous occasions and have paid sales taxes in Kentucky, some of which presumably supported the Court system.

3

Furthermore I have standing because my access to the documents will benefit the citizens of Kentucky. I intend to publish papers based on the Merck documents that include important public health information on drug toxicity and regulatory policy. I have already co-authored five papers based on de-designated documents. Kentucky residents will benefit from these disclosures, which will among other things, inform them of previously undisclosed risks of disease that they developed from Vioxx consumption. In addition I am the editor of a medical journal which publishes on health topics related to corporate corruption of science and consumer health. As a member of the press I have standing to inform the public about issue of relevance to them. Indeed, the Kentucky Supreme Court recognized more than 25 years ago that members of the press have expanded standing when seeking access to confidential materials filed in civil litigation. *See Courier-Journal and Louisville Times Co. v. Peers*, 747 S.W.2d 125, 128 (Ky. 1988) ("In short, 'to preserve higher values,' the news media have been made an exception to the usual rules regarding standing to intervene and standing to seek mandamus where access is denied."); *see also Central Kentucky News-Journal v. George*, 306 S.W.3d 41, 44 (Ky. 2010) (news media have standing to seek access to sealed settlement agreement). In Kentucky, the right of access to civil court records has been recognized both under the common law and under the First Amendment. *Roman Catholic Diocese v. Noble*, 92 S.W.3d 724, 732 (Ky. 2002) ("the most compelling reasons" can justify denial of access). It is important to note that Merck never argues that disclosure will in any way harm them financially. This is not a surprise since Vioxx has been off the market for 10 years. Merck claims disclosure will "embarrass" them. Embarrassment is defined as a "feeling of shameful discomfort."
(http://en.wiktionary.org/wiki/embarrassed#English)

While corporations are "human beings" under the law, they do not have "feelings" and thus they cannot argue that they will suffer embarrassment. These are not "compelling reasons." More importantly rather than emphasizing the genuine nature of its designations, Merck expresses concern that release of its documents will "embarrass" them. This is an admission that Merck has improperly abused the Confidentiality order. Fear of "embarrassment" is not a basis for confidentiality designation. If the documents are embarrassing it is because they indicate that Merck committed acts that were socially unacceptable. This is the strongest argument in favor of disclosure. Absent any argument of harm, judicial balancing favors disclosure.

In addition I have standing under KRS 61.872. The confidentiality order specifically acknowledges this right in paragraph 19.

"Notwithstanding the above, the Attorney General's office document retention shall be governed by its document retention schedule. In the event that the Attorney General receives a request for records pursuant to KRS 61.872, or subpoena or discovery request, the Attorney General will provide Merck with a copy of the request, and Merck will notify the Attorney General in writing whether Merck maintains that the requested documents constitute or contain Confidential Information, and may take other action to protect its rights to confidentiality."

Merck also relies on *Bailey* v. *Pres. Rural Rds. Of Madison County, 394* S.W.3d 350, 355 (Ky. 2011), for its argument that I do not have standing to maintain the instant challenge, but that case is factually inapposite. It involved an individual who sought to challenge the erection of gates on

4

a county road, on the theory that the road met a public need, he often used the road as a shortcut and used of the road was important for him to gain access to "important to his family history." *Id.* at 355. Although the court recognized that keeping the road open might be a "convenience" to the challenger and the public, it found that the individual lacked standing because his injury was no different from the injury to any member of the public. *Id.* at 355-56. The injury to me, by contrast, is easily differentiated from that of the general public: as a physician, researcher, and member of the press, I am uniquely injured by the confidentiality designations at issue in this case.

    3. Standing relating to Misstatements Merck made to me personally

For example, Merck specifically lied to me about the side effects and efficacy of Vioxx when I was running a busy medical practice. Merck made and documented at least 33 visits with me to market Vioxx including providing samples in a two year period. [See Exhibit 4][3] In addition when I questioned the cardiac toxicity of the drug they mailed me a letter that lied about the magnitude of the cardiac risk, stating, "…the rate of cardiovascular events was 0.5 percent among patients taking VIOXX." [Exhibit 5] The actual rate was more than three times higher (1.7%). This was form letter and was sent to physicians in Kentucky. To this day Merck has not old physicians that this information was incorrect. Merck pled guilty to a crime for lying about the efficacy of Vioxx. [Exhibit 6]

    4. Standing relating to benefits that will accrue to Kentucky residents

I have co-authored a peer reviewed paper, that shows that Vioxx side effects persist for years after patients stop taking the drug.[4] The Merck documents include information on Vioxx side effects that are not in the public domain. My patients and other patients and physicians and policy makers have the right to know this information. This information gap is the most important basis for granting me standing.

I have a track record of publishing previously secret information on Vioxx.[5] [Exhibit 7a-f] The physicians and residents of Kentucky who were subject to Merck's misrepresentations will thus benefit from disclosure to me.

---

[3] Typical of Merck's abuse of the designation process Merck stamped this non-trade secret document confidential but it was used in litigation without objection and is now on the internet at HTTP://dida.library.ucsf.edu/pdf/oxx08k10.

[4] Egilman DS, Presler AH. Report of specific cardiovascular outcomes of the ADVANTAGE trial. Ann Intern Med. 2006;144(10):781.

[5] Egilman DS, Presler AH. Report of specific cardiovascular outcomes of the ADVANTAGE trial. Ann Intern Med. 2006;144(10):781.
Krumholz HM, Ross JS, Presler AH, Egilman DS. What have we learnt from Vioxx? Bmj. 2007;334(7585):120-3.
Hill KP, Ross JS, Egilman DS, Krumholz HM. The ADVANTAGE seeding trial: a review of internal documents. Annals of internal medicine. 2008;149(4):251-8.
Ross JS, Madigan D, Hill KP, Egilman DS, Wang Y, Krumholz HM. Pooled analysis of rofecoxib placebo-controlled clinical trial data: lessons for postmarket pharmaceutical safety surveillance. Arch Intern Med. 2009;169(21):1976-85.
Ross JS, Madigan D, Konstam MA, Egilman DS, Krumholz HM. Persistence of cardiovascular risk after rofecoxib discontinuation. Arch Intern Med. 2010;170(22):2035-6.

**II.     All Of The Documents Sought To Be Disclosed Were Produced In The Kentucky Litigation. This Is The Appropriate Venue For Resolution Of Any Dispute Related To The Confidentiality Order Issued In This Case**

Merck claims that the MDL is the appropriate forum for de-designation. This is not true. The ORDER CLARIFYING EFFECT OF AGREED PROTECTIVE ORDER states that, "Any dispute over whether privilege applies in this case shall be brought before this Court." Therefore this Court is the only appropriate venue to determine the scope and applicability of the Protective order in this case.

This Court understood that documents previously produced in other Vioxx litigation would be used in this case. [Exhibit 10] The "Order Clarifying Effect of Agreed Protective Order" was written to address this issue.

Finally the MDL Court anticipated and explicitly contemplated that various State and Federal courts would de-designate documents in the course of Vioxx Litigation. That Court approved the following language:

Paragraph 23 of the MDL order: "To the extent that any material designated as Confidential Information herein becomes publicly available other than through a violation of this or another protective order, or **has its designation as Confidential Information withdrawn or judicially removed in any U.S. VIOXX action or MDL-1658,** the Confidential Information designation shall be deemed withdrawn from such material and shall, on notice, be removed from the log." [Emphasis added] [Exhibit 11]

**III.    Merck's Claims Concerning Efficiency have Merit**

After more than twenty Federal and state trials and the dedication of two MDL systems, Merck now claims that review of the propriety of its confidentiality designations is "…not an appropriate use of the Court's or the parties' time and resources." Should the Court rule in my favor I am sure Merck will appeal and disclosure will be delayed and additional resources will be expended. Therefore to promote efficiency and to fulfill its obligation to protect the public's interest, the Court on its own, should review the propriety of Merck's designations. This will save time and money.

"The public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First National Bank of Princeton v. Cincinnati Insurance Company, 178 F. 3d 943 (7th CIR. 1999).* [Exhibit 12] Whatever my status, the Court has the responsibility to protect the public's interest. ("The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected unless the media are interested in the case and move to unseal. The judge is the

---

Egilman DS, Ardolino E. The Pharmaceutical Industry, Disease Industry: A Prescription for Illness and Death. In: Wiist W, editor. The Bottom Line or Public Health: Tactics Corporations Use to Influence Health and Health Policy, and What We Can Do to Counter Them: Oxford University Press; 2010.

6

primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it)." *ID*.

### IV.   Merck has Abused the Court's Confidentiality Order

To provide the court with an understanding of Merck's abuse of the confidentiality process I attach a portion my report in the State MDL Vioxx case which is not confidential. [Exhibit 13] Merck marked almost every document I cited "confidential." Unless Merck argues that manipulating study data, hiding information from the FDA and lying to physicians are "trade secrets" these documents were improperly designated.  In addition, as noted above, Merck pled guilty to the crime of off-label marketing of Vioxx. The final plea agreement cited portions of notes from Merck's sale representatives as evidence. [Exhibit 14 at PDF pages 17-18] These were all marked "Confidential" and in fact remain confidential.  Thus Merck has designated and continues to designate documents that are evidence of criminal conduct "Confidential." The Judge in the federal MDL reviewed 31,846 documents (over 500,000 pages) that Merck did not fully disclose due to a claim of privilege.  Judge Fallon upheld Merck's claim as to 491 documents. [Exhibit 15] The Fifth Circuit found fault with Judge Fallon's process and ordered that he adopt a different method for review. [Exhibit 15] A sample of about 2000 documents was re-reviewed by a special master. The special master denied Merck's claim of privilege on many of these documents.

Merck's treatment of my testimony in a recent deposition is instructive of its (Alice in Wonderland like[6]) abuse of confidentiality orders. Merck freely summarizes a portion of my testimony that it designated confidential while telling the court in footnote 8 that, "Merck is unable to provide a transcript of the relevant testimony, as Dr. Egilman's deposition has been designated confidential under the MDL Protective Order."  Merck designated the entire transcript "confidential" and can at any time de-designate any of it.  Merck's designation of my testimony relating to my plans to publish, exemplifies their abuse of the confidentiality orders. Merck has no basis to designate my plans to publish "confidential."  The Confidentiality Order states that the designation only applies to CR 26.03 (g) which describes the nature of material that may be deemed confidential.  (A trade secret or other confidential research, development, or commercial information).  Similarly in their Alice in Wonderland way, Merck states that a document they designated confidential MRK-014201155573 and MRK-PLBAJ000040 which is not confidential "are the same document, they contain different information and were created at different points in time." Merck attached MRK-PLBAJ000040 to their motion and the court can see that it does not contain "a trade secret or other confidential research, development, or commercial information." [Exhibit 8]The document is a form that an investigator filled out to report adverse events experienced by US or foreign residents who volunteered to serve as research subjects. Differences in these documents which list diagnosis, dates, relationship to drug use etc., ("different information and were created at different points in time") cannot be a basis

---

[6] **March Hare:** …Then you should say what you mean.
**Alice:** I do; at least - at least I mean what I say -- that's the same thing, you know.
**Hatter:** Not the same thing a bit! Why, you might just as well say that, 'I see what I eat' is the same as 'I eat what I see'!
**March Hare:** You might just as well say, that "I like what I get" is the same thing as "I get what I like"!
**The Dormouse:** You might just as well say, that "I breathe when I sleep" is the same thing as "I sleep when I breathe"!

for designating the information "confidential" on one form and non-confidential on another on the same patient. MRK-PLBAJ000040 is a document that shows that Merck misrepresented the cause of death of a patient (Case 5005) in a published paper and letter. [Exhibit 7a] Due to the Confidentiality designation I cannot explain the significance of the differences (as described by Merck, "While the identified pages are the same document, they contain different information and were created at different points in time" but "confidential" MRK-014201155573. Here again Merck apparently believes that the disclosure of the contents of a document does not violate the Confidentiality Order.

More importantly Merck fails to explain why it never produced MRK-PLBAJ000040 in this litigation. In my Kentucky deposition, I discussed this and other documents Merck produced in the Missouri consumer protection litigation. [Exhibit 16] Merck explains MRK-014201155573 is "the same document" with "different information" as MRK-PLBAJ000040. However Merck does not explain why they failed to produce it in this litigation even after I told them I relied on MRK-PLBAJ000040 at my deposition. Unlike MRK-014201155573, MRK-PLBAJ000040 is not even marked confidential. Merck seeks to benefit from its failure to produce relevant documents by telling the Court it should not evaluate the legitimacy of the Confidentiality designation of other PLBAJ documents that I relied on and produced in the Kentucky litigation. The Court should not permit this.

Merck questions my motivation for pursuing this action. While this is, as far as I can tell, not a legal argument that needs to be addressed, I feel obligated to repond. I have no vendetta. Over 60,000 US residents died as a result of taking Vioxx and at least three times that many had heart attacks strokes or other serious adverse health outcomes. [7] The least we can do is use the information on how and why this occurred to prevent future similar tragedies and fully inform Vioxx treated patients of potential risks that they continue to carry as a result of past use. The citizens of Kentucky have the right to know how and why Merck misrepresented the risks of Vioxx. As Edmund Burke noted "Those who don't know history are doomed to repeat it." In 1978 I took an oath which read in part, "I solemnly pledge to dedicate my life to the care of the sick, the promotion of health and the service of humanity." Unlike most physcan oaths my oath specified that I have an obligation to promote health in the general community. I take that oath seriously.

Therefore I respectfully request that this Court reject Merck's untimely assertion that I do not have standing and de-designate the documents at issue since Merck has failed to comply with the procedures for de-designation of documents as specified in your Order. (Paragraph 22) As Merck correctly noted I filed my request for de-designation on October 29, 2013 and they failed to respond according to procedure set forth in the Confidently Agreement. They did not seek to stay the operation of the order until the standing question was resolved nor did they seek to resolve it with the Court. If I have standing I had it from the date I signed the Order and therefore the Court should order that the documents be de-designated. In addition I urge the Court to adopt Merck's de-facto interpretation of the Confidentiality Order which indicates that documents and depositions can be summarized but not quoted. I respectfully request that the Court issue a

---

[7] Graham DJ, Campen D, Hui R, Spence M, Cheetham C, Levy G, et al. Risk of acute myocardial infarction and sudden cardiac death in patients treated with cyclo-oxygenase 2 selective and non-selective non-steroidal anti-inflammatory drugs: nested case-control study. Lancet. 2005;365(9458):475-81.

8

statement that adopts Merck's interpretation of the meaning of the confidentiality designation. I request that the Court clarify that the Confidentiality Order applies to all documents that were produced by any party as it says it does. Finally I request that the Court on its own evaluate Merck's compliance with CR 26.03 (g) in designating documents confidential.

Sincerely yours,

*David Egilman MD, MPH*

David Egilman, MD, MPH