# EXHIBIT 5

CORPORATE INTELLIGENCE

# More Disclosure Coming in Merck's Decade-Long Vioxx Nightmare

By **ED SILVERMAN**
Mar 26, 2014 12:41 pm ET

In a little-noticed ruling, a Kentucky state judge has permitted a Brown University professor to seek disclosure of countless Vioxx documents that were marked as confidential during years of litigation over the controversial painkiller.

Vioxx, you may recall, was a highly controversial and widely prescribed painkiller that Merck withdrew a decade ago over links to heart attacks and strokes. However, the documents allegedly contain fresh information about the extent to which the drug maker disclosed side effects on a timely basis and its handling of clinical trial data.

"In general, there's information on the toxicity of the drug that's not been previously published by Merck and there is information that Merck published that misrepresents the health effects of the drug," says David Egilman, a clinical professor of family medicine who has regularly served as an expert witness for plaintiffs' lawyers in Vioxx litigation in a half dozen state courts over the past several years.

A Merck spokeswoman declined to comment, although the drug maker has the right to negotiate with Egilman over which documents are held back and return to court to have the confidentiality designations upheld if an agreement cannot be reached.

Egilman has previously used his perch to co-author papers that examined Merck research practices and the risks of the painkiller, which became a sort of poster child in the debate over drug safety and regulatory oversight. In 2011, Merck agreed to pay $950 million and plead guilty to a criminal misdemeanor to resolve government allegations that Vioxx was promoted illegally and deceived the government about the drug's safety.

For its part, the drug maker has repeatedly maintained that Vioxx was withdrawn as soon as worrisome cardiovascular signals were detected. Following the recent court ruling, the Merck spokeswoman said that "from a transparency perspective, we provided all the information in a timely manner to the FDA and stand behind the actions we did, from approval to the time we pulled it off the market."

Egilman, however, believes otherwise. After having an insider's look at various Merck documents that were designated confidential and, therefore, kept out of courtrooms, he says that raw study data, company emails and internal analyses "provide new information on the health hazards of the drug and evidence of fraud in the conduct of the studies. I've been able to see documents few others have." The Merck spokeswoman declined to comment.

Egilman served as a paid expert witness in a lawsuit that had been filed by Kentucky Attorney General Jack Conway, who alleged the drug maker violated consumer protection laws. The litigation was settled last November for $23 million, although Egilman continued to battle Merck over access to documents, some of which he argues demonstrate a failure to properly inform research subjects of side effects and risks. He declined to say how much he was paid for his work in Kentucky.

In reaching his decision, Franklin Circuit Court Judge Phillip Shepherd wrote that Egilman has standing to seek disclosure of the documents as a third party and that "important public policy questions regarding consumer protection and public health have been raised. The public has an interest in evaluating Dr. Egilman's opinions and the documents on which they were based."

But if Egilman ultimately prevails, he says he plans to provide documents to the FDA and the Yale University Open Data Access Project, which coordinates efforts to independently review clinical trial data. The project is overseen by Yale cardiology professor Harlan Krumholz, who co-authored two Vioxx papers with Egilman.

Egilman, by the way, has famously tussled before with a drug maker over documents marked confidential as part of litigation. In 2007, he agreed to pay $100,000 after admitting to violating a protective order for leaking documents about the Zyprexa anti-psychotic pill that that made their way to the New York Times, although he did not admit to any illegal activity. Eli Lilly later reached a $1.4 billion settlement and pled guilty to promoting the drug for unapproved uses.

Copyright 2014 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.