## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | SECTION L |
| LITIGATION | * | |
| | * | JUDGE FALLON |
| This document relates to | * | |
| | * | MAGISTRATE JUDGE |
| ***Jo Levitt v. Merck Sharp & Dohme Corp.***, | * | KNOWLES |
| **2:06-cv-09757-EEF-DEK** | | |

*********************************************************************************

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### DEFENDANT MERCK SHARP & DOHME CORPORATION'S ("MERCK") MOTION
### TO MAINTAIN CONFIDENTIAL DOCUMENT DESIGNATIONS UNDER PRETRIAL
### ORDER 13, SUBMITTED MARCH 28, 2016 (DOC.65337)

### AND

### DEFENDANT MERCK SHARP & DOHME CORPORATION'S  ("MERCK") MOTION
### TO MAINTAIN CONFIDENTIAL DOCUMENT DESIGNATIONS UNDER PRETRIAL
### ORDER 13, AND FOR A PROTECTIVE ORDER BARRING SIMILAR REQUESTS,
### SUBMITTED MAY 10, 2016 (DOC. 65349)

### <u>INTRODUCTION</u>

Plaintiff Jo Levitt respectfully submits this memorandum of law in opposition to

Defendant Merck Sharp & Dohme Corporation's ("Merck") Motion to Maintain Confidential

Document Designations Under Pretrial Order 13, submitted March 28, 2016 ("March 28

Motion"), and Merck's Motion to Maintain Confidential Document Designations Under Pretrial

Order 13 and for a Protective Order Barring Similar Requests, submitted May 10, 2016 ("May

10 Motion").  Merck's March 28 motion must be denied because Merck has failed to shoulder its

burden of establishing that four documents should retain their confidential status. Most critically,

it has failed to provide any evidence that the allegedly confidential documents are protected

"trade secrets."  Merck's May 10 Motion also contains no factual (or even conclusory) assertion

of the grounds for maintaining the confidentiality of any document.  Under well-established law, Merck's motion to retain the confidentiality of the documents therefore cannot be granted

Rather than seek to justify the confidentiality of the vast majority of the documents that Plaintiff has sought to be de-designated, Merck engages in a scurrilous attack on Plaintiff and one of her experts, Dr. David Egilman.  Disregarding the facts and the law, because neither tilts in Merck's favor, Defendant has decided to follow Carl Sandburg's advice and "pound on the table and yell . . . ."  Carl Sandburg, *The People, Yes*, in COMPLETE POEMS OF CARL SANDBURG 439, 551 (1970).  Defendant faults Plaintiff for not having a good enough reason to seek de-designation, and accuses her of continuing Dr. Egilman's "campaign" to seek de-designation, (May 10 Motion at 13), while rehashing false accusations against Plaintiff's expert.  In the end, Merck asks this Court to create a whole new protective order, applicable only to Plaintiff, that would conflict with the Federal Rules and the specific procedures contemplated by PTO 13.  Merck has no basis for this radical request, because all Plaintiff has done is invoke the procedures agreed to by the parties for de-designating confidential material.

This Court should reject Defendant's attempts to obfuscate the dispute.  As a legal matter, Defendant is obliged to provide "good cause" for why documents it allegedly designated confidential in good faith should remain private.  Defendant must do so through a specific factual showing, supported by affidavit or other similar evidence.  Defendant has completely failed to do so.  This failure should be no surprise, because over the course of every dispute over the status of confidential documents, defendant has shown utter disdain for this Court's PTO 13, disregarding its obligations at every turn.  As this Court has observed before in this case, at some point one would expect stale documents about a discontinued product to be publicly available, especially as this litigation comes to a close.  (Tr. of Feb 28, 2014, Hearing, at 17, attached hereto as

Exhibit 1 ("There is a time when some documents that have no reason for being kept under a protective order ought not to be allowed . . . . That's not the way that courts ought to operate."). For the documents that are the subject of Merck's motions, that time has arrived.

Plaintiff's reasons for seeking de-designation, while irrelevant to the issues at hand, are perfectly legitimate: she wants the public to know about Merck's wrongdoing. After all, Merck pleaded guilty to a federal crime and paid $969 million in penalties based on documents that were marked confidential and that remain confidential in this case. Exposing illegal and wrongful conduct is one traditional goal of litigation, and Merck has no basis for casting aspersions on Plaintiff's goals. For all of these reasons, amplified below, Merck's motions should be denied and the confidentiality designation removed as to all of the subject documents.

## STATEMENT OF FACTS

Pretrial Order No. 13 ("PTO 13") sets forth several obligations relevant to this dispute. At the outset, the burden is on Merck to determine, when producing a document in discovery, whether it "constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. O. 26(c) (7)."  (PTO 13 ¶ 5).  Should Merck determine over the course of the litigation that a document no longer may be classified as confidential, it may indicate that the document is dedesignating it "by notifying counsel for each party in writing of such redesignation and simultaneously producing a re-designated copy of such material."  ((PTO 13 ¶ 21).  Moreover, Merck is obliged to produce and update on a monthly basis the confidentiality status of documents produced in discovery. (PTO 13 ¶ 26).  Finally, if a receiving party objects to the designation of "specific material" designated as confidential, the supplying party (in this instance, Merck) "bears the burden of proving that the material" is properly designated confidential.  (PTO 13 ¶ 22).

Although the language of PTO 13 is clear, Merck has consistently refused to abide by its clear terms, and the motions before this Court make this clear.  For example, Plaintiff has challenged the confidentiality designation of almost 4,000 documents, yet Merck has seen fit to only address the status of forty-one (41) documents.  Of these, Merck maintains that only four remain confidential.  (March 28 Motion at 1-2).  As demonstrated below, Merck has not met its burden as to those four, but Merck's response as to the other documents is telling.

In responding to Plaintiff's initial request, for instance, Merck complains that Plaintiff's request was too broad because it did not identify specific documents.  (March 28 Motion at 3). Yet when plaintiff submitted more recent requests specifically identifying the documents she sought to de-designate, Merck simply failed to respond at all, again flouting its obligations under

PTO 13.  (*See generally* May 10 Motion).  And although Plaintiff specifically requested that Merck provide an updated confidentiality log so that counsel could accurately identify which documents Merck maintains are still confidential, Merck ignored the request.  This Court noted more than two years ago that in order to resolve challenges to Merck's confidentiality designations, Merck would have to produce updated logs and meet its burden of proving why a document should remain confidential, but Merck has to date consistently failed to abide by either instruction.  (Tr. of Feb. 28, 2014, Hearing at 19, attached hereto as Exhibit 1 ("At least if it comes to me in a motion, I will need a log showing which documents should continue, according to the moving party, under protective order and what they are and why they should remain under the protective order.").  It is evident from this pattern that Merck has no intention or desire to follow the rules that it agreed to as a condition of receiving protection for the documents it has produced in this action.

Instead, Merck has tried to shift the focus to other actors, namely Plaintiff's expert, Dr. David Egilman.  Although this attempt to change the topic of conversation is legally irrelevant, as detailed below, Merck has misled this Court on the facts.  Merck claims that Dr. Egilman conceded that he violated PTO 13, but in fact that is not the case.  Indeed, although Merck has asserted before this Court that Dr. Egilman revealed specific PTO 13-protected document to *The Wall Street Journal*, Merck admitted to Dr. Egilman's counsel that Merck could not identify any specific document that Dr. Egilman had disclosed.  (*See* Affirmation of Alexander A. Reinert ("Reinert Decl.") dated May 27, 2016, ¶¶ 7-8 & Exs. A & B attached thereto).  There is indeed no evidence that Dr. Egilman ever disclosed any confidential information to The Wall Street Journal – the vague statements he made disclosed nothing confidential, especially when compared to the far more specific descriptions of confidential documents that the parties in this

case have made publicly available through their own filings.  (*See* Affirmation of Alexander A. Reinert dated May 27, 2016, ¶¶ 9-10 & Exs. C, D & E attached thereto).

The facts show that it is Merck who has abused the privilege accorded to it by PTO 13. And the law, as developed below, demonstrates that Merck's current request for confidentiality cannot be sustained.

## **ARGUMENT**

### I.    DEFENDANT HAS NOT DEMONSTRATED "GOOD CAUSE" TO MAINTAIN CONFIDENTIALITY OF ANY OF THE SUBJECT DOCUMENTS

Unless documents are legitimately confidential, public access to discovery produced in federal court is presumed.  *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Pan Am. Life Ins. Co.*, No. CIV. A. 90-411, 1992 WL 125329, at *3 (E.D. La. May 22, 1992); *see also Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding."); *Certain Underwriters at Lloyd's v. United States*, No. 2:08-CV-841, 2010 WL 2683142, at *1 (S.D. Ohio July 1, 2010) (describing public's interest in discovery documents); *Abbott v. Lockheed Martin Corp.*, No. 06-CV-701MJR, 2008 WL 5221096, at *2 (S.D. Ill. Dec. 12, 2008) (court has a duty to ensure that protective orders balance public interest in having access to non-confidential material against parties' interest in protecting documents "unsuited for public disclosure"); *Swink v. AT&T*, No. 4:07CV01942 ERW, 2008 WL 1767046, at *1 (E.D. Mo. Apr. 11, 2008) (declining to approve blanket protective order because of public's interest in accessing discovery).  This is especially the case where, as here, public entities such as States have been involved in the proceeding.  *Cf. Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) ("The interest of the public and press in access to civil proceedings is at

its apex when the government is a party to the litigation."); *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987) (holding that public had interest in viewing documents relied upon by government agency in agreeing to consent decree, even where documents were not submitted to court).

Even if there were no presumption of public access, a party who wishes to keep discoverable documents confidential must demonstrate "good cause" under Fed. R. Civ. P. 26(c) (1). Good cause is established by making "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." 8A Wright & Miller, Federal Practice & Procedure § 2035 (3d ed. 1998-2016) (cited with approval in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)). Therefore, to satisfy its burden Merck cannot rest on "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (internal quotation marks omitted) (cited with approval in *Zurich Am. Ins. Co. v. SDT, Inc.*, No. CA 14-2522, 2016 WL 892577, at *2 (E.D. La. Mar. 9, 2016) (Fallon, J.)). This burden is not diminished by the fact that the parties originally agreed to a blanket protective order. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). To maintain a protective order, Merck must be able to show "for each particular document it seeks to protect ... that specific prejudice or harm will result if no protective order is granted." *Id.* at 1130. The provisions of PTO 13 which govern this motion are in accord with this framework, and contrary to the general tone of Defendant's moving papers, it places the burden squarely on Merck to justify the designation of any document produced in this litigation as confidential. If a receiving party objects to the designation of "specific material" designated as confidential, the supplying

party (in this instance, Merck) "bears the burden of proving that the material" is properly designated confidential.  (PTO 13 ¶ 22).

A producing party meets its burden of proof with traditional means: by supplying evidence, not argument.  Therefore, a party's failure to support its "good cause" argument with "affidavits or other evidence" is fatal.  *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998); *Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D. Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").  Indeed, as this Court noted in an analogous situation, when a defendant seeks the protection offered by Rule 26, it bears a "burden of <u>proof</u>" that cannot be met by unsworn references in a brief to particular information being commercially sensitive.  *Zurich Am. Ins. Co.*, 2016 WL 892577, at *2 (Fallon, J.) (rejecting defendants' request to permit redaction of disclosures because defendants had offered no proof of any kind).  Merck cannot meet its burden with a "bare assertion" that information sought is confidential and proprietary.  *Freeport McMoran Sulpher, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. CIV.A.03-1496, 2004 WL 595236, at *10 (E.D. La. Mar. 23, 2004).  The Fifth Circuit has held that a district court abuses its discretion if it grants a request for protective order under Rule 26(c) without some factual showing.  *See Terra*, 134 F.3d at 306 (granting mandamus relief because district court's grant of protective order in the absence of affidavits or other evidence constituted a "clear" abuse of discretion); *see also Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (party with burden of establishing "good cause" must "specifically demonstrate[] that disclosure will cause a clearly defined and serious injury.").

**A. Merck Has Failed to Offer Any Evidence in Support of Its "Trade Secrets" Claim**

Consistent with Rule 26(c)(1) and PTO 13's requirements, Merck's claim that a document contains a trade secret requires a specific factual showing. *Kforce Inc. v. Beacon Hill Staffing Grp. LLC*, No. 4:14 CV 1880 CDP, 2015 WL 128060, at *8 (E.D. Mo. Jan. 8, 2015) ("Evidence of purported 'trade secrets' must be more than general assertions, but must be sufficiently specific to allow a determination by the court."). A party can support an assertion that a document is a trade secret through affidavits establishing the economic value of the information contained therein and the party's attempts to keep such information confidential. *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 740 (Fed. Cir. 1987) (finding trade secret where assertions were supported by an affidavit); *In re Subpoena To Boardwalk Storage Co., LLC*, No. CV 11-803-JJB-EWD, 2016 WL 1357747, at *3-4 (M.D. La. Apr. 5, 2016) (finding trade secrets claim supported by detailed affidavit), *cf. Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 332-33 (5th Cir. 2013) (noting that party claiming trade secrets had submitted affidavits demonstrating that information "was not generally known" to outsiders and that the party "had taken measures to keep its confidential information secret"); *Morton v. Cooper Tire & Rubber Co.*, 288 F.R.D. 126, 129 (N.D. Miss. 2012) (referring to affidavit in support of trade secrets claim).

The Federal Circuit's decision in *American Standard Inc.* offers just one example of how parties typically meet their burden of establishing that a document contains a trade secret. In *American Standard*, the party submitted an affidavit specifying how much money it spent developing certain information contained in the subject documents, how that information had affected sales, and the specific measures the party had taken to prevent disclosure of the

information contained in the documents.  828 F.2d at 740.[1]  Similarly, where a party provides evidence, through affidavit, of the effort and expense undertaken to develop specific information, a court may conclude that the party has met its burden of establishing the existence of trade secrets.  *Burlington N. R. Co. v. Omaha Pub. Power Dist.*, 888 F.2d 1228, 1232 (8th Cir. 1989).

If a movant only makes "conclusory" allegations, however, without providing "affidavits and concrete examples" of "significant harm," a claim to trade secrets protection should be rejected.  *Deford*, 120 F.R.D. at 653.  In *Deford*, although the defendant provided affidavits purporting to support its trade secrets claim, the court rejected the claim for reasons that resonate here: (1) the defendant provided "no specific information" regarding the documents at issue, including the steps taken to limit access to the materials; (2) the defendant provided only a "speculative showing" of potential harm; (3) the information related to a product that had not been marketed for several years and many of the documents were over ten years old; and (4) the defendant had not made a "specific showing of present harm" to overcome the presumption against protecting stale information.  *Id.* at 653-54; *see also In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 1660386, at *7 (S.D.W. Va. Apr. 22, 2014) (rejecting trade secrets claim, in part because party failed to make concrete showing of *present* harm).

Applying these principles to Merck's submissions, Defendant's Motions should be denied.  In its March 28 brief, Merck maintains that four documents should remain confidential because they contain "trade secrets."[2]  (March 28 Motion at 7).  Two of the documents allegedly contain a discussion about a potential use for Vioxx that has not been made public and therefore

---

[1] *Am. Standard* involved Indiana trade secrets law, which is substantially similar to Missouri's.
[2] Plaintiff assumes that the definition of "trade secret" found in Missouri's Uniform Trade Secrets Act, Mo. Ann. Stat. § 417.453(4),  applies here, under the *Erie* doctrine, but given Merck's failure of proof its claim should be rejected under any definition of the term.

could be competitively-sensitive, one document discloses "the identity of and information about a Merck thought leader," and one document contains policies regarding adverse experience reporting, containing information about other Merck drugs. (*Id*.). Merck submits no affidavits showing how disclosure of the information in these documents might lead to a competitive injury, nor does Merck provide any evidence as to the steps it has taken to keep this information confidential.

Merck relies instead on unsworn and vague allegations in its motion papers. Therefore, it has not even come close to shouldering its burden of establishing that any of the subject documents contain trade secrets. *See FieldTurf USA, Inc. v. Tencate Thiolon Middle E., LLC*, No. 4:11-CV-050-TWT, 2012 WL 844671, at *2-3 (W.D. Tex. Mar. 12, 2012) (rejecting trade secrets claim because party "failed to provide the Court with any evidence or supporting affidavits showing that the information sought contains trade secrets."); *Charvat v. EchoStar Satellite, LLC,* 269 F.R.D. 654, 656 (S.D. Ohio 2010) (noting the absence of any affidavit establishing efforts to maintain confidentiality of information); *McLaurin v. Detroit Entm't, LLC*, No. CIV.A. 09-CV-13174, 2010 WL 750194, at *2 (E.D. Mich. Mar. 3, 2010) (rejecting trade secrets claim where defendant "has not made specific allegations of potential harm or provided support for the same."); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D. Tex. 1990) (rejecting trade secrets claim because no affidavit had been filed in support of claim); *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981) (rejecting trade secrets claim where defendant did not show "how individual documents will cause flagrant harm" to party's economic interest). Merck cannot justify maintaining confidentiality simply because it deems certain business information to be sensitive. *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2014 WL 360013, at *2 (S.D. Ohio Feb. 3, 2014).

Merck's failure to provide any evidence in support of its trade secrets claim is all the more remarkable given that Merck cannot claim ignorance of this requirement.   In its submissions before this Court, Merck cites numerous cases in which a court considered claims to confidentiality based on a full factual record.   (March 28 Motion at 6-7).   In *Riverkeeper v. Taylor Energy Co.*, LLC, 309 F.R.D. 381 (E.D. La. 2015), for example, the court cited *In re Terra*, 134 F.3d at 306, which establishes the burden of proof on parties like Merck, and then considered affidavits and specific documents submitted by the defendant in support of the defendants' request for confidentiality.   309 F.R.D. at 385-91.   After an extensive review of the documents alleged to be confidential, the court rejected almost in full defendant's contentions. *Id.* at 391.   The other cases cited by Merck similarly establish the insufficiency of Merck's submission here.   *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 698 (D. Nev. 1994) ("A generalized, self-serving, conclusory assertion of protection or privilege is without merit."); *Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW (PVT), 2008 WL 2811968, at *2 (N.D. Cal. July 21, 2008) (noting that movant has burden of establishing substantial harm through specific factual showing and demonstration of efforts made to maintain confidentiality).

Even had Merck made an attempt to produce facts supporting its "trade secrets" claim, one would have to consider such a claim with skepticism.   After all, two of the documents involve discussions of a potential use of Vioxx that has not been made public, but Vioxx was taken off the market more than 10 years ago.   Merck makes no effort to explain how discussions about potential uses of a drug withdrawn from the market many years ago could possibly contain competitive information. *See Deford*, 120 F.R.D. at 653-54 (rejecting trade secrets claim where documents related to product that had not been marketed for several years);   *Exxon Corp.*, 94

F.R.D. at 251-52 (rejecting claim where much of the information was at least five years old); *Parsons v. Gen. Motors Corp.*, 85 F.R.D. 724, 726 (N.D. Ga. 1980) (rejecting motion for protective order because movant did not show that information was still confidential after ten years and because no evidence was provided as to how documents were protected).  As for the information about Merck's "thought leader," Merck cites no authority for the proposition that disclosing the identity of such a person will damage Merck competitively, nor does Merck provide any specific assertions about what harms would flow from the disclosure.[3]  *See Ohio Valley Environmental Coalition v. Elk Run Coal Co., Inc.*, 291 F.R.D. 114, 121 (S.D. W. Va. 2013) ("A factually unsupported contention that research could potentially be used by a competitor, and the competitor would benefit by not having to incur the expense of conducting the research, is insufficient to establish actual and severe financial and competitive harm.").  Finally, as to the Medical Affairs Policy document regarding adverse experience reporting, Merck claims the document is "confidential" without explaining why.  This is simply legally insufficient.   Merck has identified nothing specific about the subject documents that relates to any "process or device for *continuous use* in the operation of [its] business." Restatement (First) of Torts § 757 (1939) (emphasis added) (cited in *Brown v. Rollet Bros. Trucking Co., Inc.*, 291 S.W.3d 766, 779 (Mo. Ct. App. 2009)).

### B.  Merck Has Failed to Offer any Justification for Confidentiality of the Documents that Are the Subject of Merck's May 10 Motion

Merck's May 10 submission is even less compelling, because Merck does not even bother to explain the grounds for keeping the subject documents confidential.  *Exxon Corp.*, 94 F.R.D. at 251 (noting that party "has not even bothered to furnish a general rationale for placing

---

[3] Plaintiff notes that, pursuant to federal law, payments to "thought leaders" must be disclosed and made publicly available.  *See* Physicians Payments Sunshine Act, 42 U.S.C. § 1320a-7h.

restrictions on 160 of the documents they initially indicated are confidential"). Instead, Merck teeters between providing excuses for its failure to abide by PTO 13 and taking potshots at the Plaintiff for making her request. Neither is a sufficient ground for maintaining confidentiality.

As to Merck's excuses, Merck claims that it cannot meet its obligations because Plaintiff has requested that too many documents be de-designated. (May 10 Motion at 11). But the bare contention that the subject documents "are too voluminous to summarize" does not excuse defendant from meeting its obligation to concretely and factually demonstrate how the documents implicate a trade secret or commercially sensitive information. *De La Torre v. Swift Transp. Co.*, No. 2:13-CV-1786 GEB, 2014 WL 3695798, at *4 (E.D. Cal. July 21, 2014). Merck had an obligation under PTO 13 to designate confidential documents in good-faith. (PTO 13 ¶ 5). Presumably it considered the status of each of these documents when it decided to stamp them "confidential." All Plaintiff is asking here is that Merck provide that basis for a subset of these documents to this Court, or agree that the documents are not legitimately confidential (as Plaintiff believes to be true). That Merck contends that it cannot do so without expending considerable resources calls into question whether Merck ever designated documents in good faith. After all, had Merck complied with its obligations under Paragraph 5, it would not be unduly burdensome to state clearly and concisely the basis for the designation of any particular document as confidential.

Even in seeking to excuse its failure to meet the burden called for by PTO 13 and Rule 26(c), Merck undermines its claim of burden. Merck states that it already reviewed the vast majority of the subject documents approximately two years ago, in connection with Dr. Egilman's de-designation requests. (May 10 Motion at 11). During that review, Merck reports that it "substantively review[ed] the continuing basis for each designation." (*Id.*). If that is the

case, Merck already has done the work that it claims is so burdensome now.  Merck nonetheless refuses to come forward with the results of that review, nor supply a factual basis for continuing to designate the relevant documents as confidential.

This failure is part of a broader pattern of noncompliance by Merck.  Merck has failed to meet its ongoing obligations to provide updated logs and notice to counsel when it has determined that a document no longer merits designation as confidential.  This is evidenced by the fact that Merck now concedes that many documents that it once designated as confidential should now be considered non-confidential.  For instance, before this Court and Kentucky State Court, Merck affirmatively represented, while seeking sanctions against Dr. Egilman and defending their confidentiality designations, that the following documents were confidential: MRK-01420115559; MRK-01420115573; MRK-01420115583; MRK-AJA0092876-98.   (*See* Ex. A to Affirmation of Alexander A. Reinert dated May 28, 2014, at 7, 32 (Rec. Doc. 64957)). Now Merck states that these documents are not confidential.  Merck nowhere explains what has happened in the past two (2) years that has rendered these documents no longer confidential, nor what justified their initial designation as confidential.  One is left to surmise that Merck had not even considered the confidentiality of the documents until Plaintiff made her most recent requests to remove the confidentiality documents as confidential.[4]  Of course, when Merck was before this Court defending its confidentiality designations in the past, and seeking affirmative sanctions against Dr. Egilman, it explicitly maintained that it had adopted its confidentiality designations in good faith, but these events call that into question.  It is no wonder then, that

---

[4] This is a recurring pattern, as Merck exhibited the same behavior when Dr. Egilman challenged certain document designations in Kentucky state court.  This is evident when one considers that Merck originally designated many documents as confidential under Kentucky's protective order, only to change that designation when challenged by Dr. Egilman.   Therefore, it appears that Merck only considered the validity of their confidentiality designation in response to Dr. Egilman's request and not when they originally designated them confidential, as required by the governing protective order.

during its meritless attempt to obtain sanctions against Doctor Egilman, it could not identify a single confidential document that was allegedly disclosed by Dr. Egilman.

## II.   THE REMAINDER OF MERCK'S ARGUMENTS ARE IRRELEVANT AND PATENTLY INCORRECT

Instead of meeting its obligations under PTO 13, Merck seeks to rewrite the Order it agreed to and this Court entered, by insisting that plaintiff have some specific litigation-based reason for seeking de-designation.  (March 28 Motion at 4-5; May 10 Motion at 12).  But the reasons why a plaintiff might wish to remove confidentiality designations are simply irrelevant to the initial good cause determination.  *In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *7 (N.D. Fla. Jan. 13, 1992) ("Because defendants bear the burden of proving why the designation should remain, however, it is not incumbent upon plaintiff to particularize a need for disclosure.").  A defendant cannot support its argument for "good cause" on the plaintiff's alleged failure to set forth a reason for lifting the confidentiality designation. *Id.*  If the defendant has not supported its "good cause" argument with sufficiently specific facts, as is the case here, the reason for lifting confidentiality is simply irrelevant.

In any event, Plaintiff has provided legitimate reasons why she is seeking disclosure of these documents: she believes that it is important for the public to know about Merck's wrongdoing (*See* Affidavit of Jo Levitt, at ¶¶ 3-4, attached hereto as Exhibit 2); and de-designating documents will facilitate the work of her expert witness, Dr. Egilman.  Many courts have noted that there is no burden on the party seeking openness to demonstrate that some "public interest" will be vindicated by public disclosure, absent a demonstration of a "specific, cognizable injury" from widespread dissemination.  *Glenmede Trust Co.*, 56 F.3d at 484-85 ("Federal courts should not provide a shield to potential claims by entering broad protective

orders that prevent public disclosure of relevant information. The sharing of information among current and potential litigants is furthered by open proceedings."); *De La Torre*, 2014 WL 3695798, at *3 ("In this regard, '[t]he federal rules do not foreclose collaboration among litigants, and the court does not consider the possibility that plaintiff will share the results of discovery with any other litigant any part of defendant's showing of good cause to justify a protective order.'"); *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002) ("In the absence of a showing of good cause for confidentiality, the parties are free to disseminate discovery materials to the public."); *Deford*, 120 F.R.D. at 654 (finding nothing improper in plaintiff's desire to share information with others); *Farnum v. G.D. Searle & Co.*, 339 N.W.2d 384, 390 (Iowa 1983) ("If disclosure is otherwise warranted, however, it should not be precluded merely because of a party's desire to keep adverse information from reaching the public or to bar the information from being used in other cases.");.[5]

If this Court were to accept Merck's claim that Plaintiff needs a "litigation-related" purpose to seek de-designation, it would render PTO 13's procedures meaningless.  For according to Merck, so long as plaintiff has access to the documents necessary to prosecute her case in court, she can have no litigation-related purpose to seek de-designation.  (May 10 Motion at 10-11).  But the de-designation procedures in PTO 13 are not intended to facilitate a party's access to documents, but to serve as a check on a producing party's excessive use of the privilege to designate documents as confidential.  (Tr. of Feb. 28, 2014, Hearing at 17-19, attached hereto as Exhibit 1 (indicating that documents are not meant to be confidential forever and that the producing party has the burden of demonstrating confidentiality).  If Merck is right, no party

---

[5] That PTO 13 limits the use of confidential information to litigation purposes only is neither here nor there.  The questions is what may be done with non-confidential documents; nothing in PTO 13 prohibits Plaintiff from seeking to broadly disseminate information that has not been properly designated confidential.

would ever be able to seek de-designation under PTO 13, because by definition the party already has access to the documents necessary to litigate this matter.

Defendant's related claim that they are not required to meet their obligations under the Federal Rules or PTO 13 because of the proportionality guidance found in Rule 26(b)(1) fares no better.  Rule 26(b)(1) by its terms relates to the scope of discovery, not to the good cause requirement under Rule 26(c).  As the Advisory Committee Notes indicate, the goal of the recent amendments to Rule 26 was to "restore[] the proportionality factors to their original place in defining the scope of discovery."  *See* Advisory Committee Notes to 2015 Amendments.  This dispute does not relate to the scope of discovery, but to Merck's obligations under PTO 13 and Rule 26(c).

Merck's claimed burden is also suspect, given its concession that it already has reviewed the bulk of these documents for whether they should remain confidential, but has refused to expose that review to the scrutiny of Plaintiff or this Court.  (May 10 Motion at 10).[6]  Moreover, if there is a burden from responding to Plaintiff's request, it is a self-imposed product of Merck's own abuse of PTO 13.  Merck has consistently over-used the confidentiality designations permitted by PTO 13, has failed to update its confidentiality logs, and therefore now cannot in good-faith offer justifications for its abuse of a procedure that Merck itself agreed to.  Merck's basic argument is that, because it has designated too many documents as confidential, it should be excused from meeting its obligations under PTO 13 to justify keeping documents secret.  Accepting Merck's argument would incentivize parties like Merck to continue to over-classify documents as confidential.

---

[6] Notably, Merck has claimed undue burden solely from being asked to redact two of the confidential documents at issue in the March 28 Motion, raising the question of whether Merck believes that it has even de minimus obligations under PTO 13 at this stage of the case.

Finally, Merck's invocation of Dr. Egilman is both irrelevant and bordering on fraudulent.  It is irrelevant because, as detailed above, the burden is on Merck to justify its confidentiality designations.  It is specious because Merck recklessly makes false claims against Dr. Egilman that it has never been able to support.  Dr. Egilman has never conceded that he violated PTO 13 – indeed, Merck specifically acknowledged this when Dr. Egilman and Merck agreed to resolve their differences before this Court.  (*See* Stipulation Concerning Enforcement of PTO 13 and in Furtherance of This Court's June 6, 2014 Preliminary Injunction of David S. Egilman, M.D., dated Sep. 12, 2014 (Rec. Doc. 65025), at 3 attached as Ex. 3 to Merck's May 10 Motion).  Dr. Egilman disclosed no confidential PTO 13 material to *The Wall Street Journal* – Merck conceded that it could not identify any confidential material disclosed by Dr. Egilman's vague statements to the journal.  (Reinert Decl., ¶¶ 7-8 & Exs. A & B).  And Merck never was able to show how any of Dr. Egilman's statements offered more detail than the statements made by the parties, including Merck, that already had been placed in the public record.  (Reinert Decl. ¶¶ 9-10, Exs. C, D & E).  Merck's attempt to smear Dr. Egilman is a transparent run around its own failure to abide by PTO 13's requirement and should not be countenanced here.

### III.   MERCK'S RADICAL REQUEST TO CREATE A PROTECTIVE ORDER APPLICABLE SOLELY TO PLAINTIFF SHOULD BE REJECTED

Merck claims that, because Merck thinks Plaintiff has no litigation-based purpose for requesting de-designation of the subject documents, this Court should craft an entirely new protective order applicable solely to Plaintiff Levitt that would prevent her from seeking de-designation of any additional documents without making a submission to this Court imposing multiple conditions, none of which is supported by the law or the facts.  Of course, as established

above, Plaintiff does not need a litigation-based purpose to seek disclosure, but she has articulated legitimate ones, fatally undermining the premise of Merck's request.

Merck's request is remarkable for additional reasons, however.  Consider the sequence of events in this case.  When Merck complained that Plaintiff's initial request was too broad because it did not identify specific documents, (March 28 Motion at 5-6), Plaintiff provided narrower and more focused requests for de-designation.  Merck's response was not to engage Plaintiff on the confidentiality of the documents, but to claim that it cannot be burdened with justifying their designation.  When Merck objected that some of the documents contained competitively-sensitive information, Plaintiff agreed that Merck could redact the competitively-sensitive portions.  (*See* E-mail from Danny Thomas to Emily Pistilli dated March 31, 2016, attached as Exhibit 6 to Merck's May 10, 2016 Motion).  Merck responded that it would not do so because it would serve no litigation-related purpose.  (*See* E-mail from Emily Pistilli to Danny Thomas dated April 4, 2016, attached as Exhibit 6 to Merck's May 10 Motion).  Merck also claimed that it was improper to request de-designation of only a portion of a document that contains confidential material, (*id.*) but the case law cited by Merck itself contradicts this assertion.  *See Riverkeeper*, 309 F.R.D. at 389 (finding two paragraphs of a subject document confidential, but finding the remainder of the document non-confidential).  If any party is guilty of abusing the privilege provided by PTO 13, it is Merck, not Plaintiff.

Plaintiff Levitt has demonstrated significant restraint in addressing Merck's alleged confidential documents.  Plaintiff has explained to Merck that part of the reason that she is confused about the status of documents is that Merck has identified some documents on its lists as non-confidential, at the same time that the document bears a "confidential" stamp.  (*See* E-mail from J'Nan Kimak to Emily Pistilli dated May 5, 2016, attached as Ex. 6 to Merck's May

10 Motion).  Furthermore, Plaintiff has shown herein that two years ago Merck designated some documents Confidential that it now says are Non-Confidential, without providing any explanation as to the shift.  And Merck has admitted that it has failed to abide by its obligations to maintain a log of which documents continue to be considered confidential in this litigation. Thus, Plaintiff cannot be blamed for providing lists of documents that she believes are confidential but that Merck knows to be non-confidential.  Without an updated privilege log, Merck cannot expect Plaintiff to predict the status of such documents.  Therefore, Merck's request that Plaintiff undertake reasonable efforts to verify the status of particular documents is inapposite – Plaintiff has done so in this very case and all she has received in return is outrage from Merck that she would dare make such a request.

The requirement that there be a litigation purpose for a de-designation request is inconsistent with PTO 13, federal law, and the presumed openness of federal courts.  Despite what Merck may desire, secrecy is not the starting point – it is secrecy, not openness, that must be justified and Merck continually refuses to justify secrecy here.  Merck would prefer to evade the procedures that it agreed to in the PTO 13 – it never wants to have to justify the broad invocations of confidentiality it has engaged in in this case.  But this Court should not protect Merck from an Order that has served the test of time and that is fully consistent with federal law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Merck's March 28 and May 10 Motions be denied.

Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**

*/S/ DANIEL A. THOMAS*

| Kenneth B. McClain | MO #32430 |
| Daniel A. Thomas | MO #52030 |

221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

22

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiff's Memorandum in Opposition to Defendant Merck's Sharp & Dohme Corporation's ("Merck") Motion to Maintain Confidential Documents Designations Under Pretrial Order 13, Submitted March 28, 2016 (Doc. 65337) and Defendant Merck's Motion to Maintain Confidential Document Designations Under Pretrial Order 13, And For A Protective Order Barring Similar Requests Submitted May 10, 2016 (Doc. 65349) has been served on Defense Counsel, Jonathan Williams, and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 27th day of May, 2016.

/S/ DANIEL A. THOMAS
Kenneth B. McClain          MO #32430
Daniel A. Thomas            MO #52030
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**