# EXHIBIT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  VIOXX                    *         MDL No. 1657
PRODUCTS LIABILITY LITIGATION *
                                 *         Section L
                                 *
* * * * * * * * * * * * * * * *  *         February 28, 2014



STATUS CONFERENCE BEFORE
THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE



Appearances:                     Dawn Barrios, Esq.
                                 Leonard Davis, Esq.
                                 John Beisner, Esq
                                 David Egilman, M.D.
                                 William Garmer, Esq.
                                 Ben Barnett, Esq.
                                 Liz Natter, Esq.
                                 Sean Deskins, Esq.
                                 Michael Hasken, Esq.
                                 Doug Marvin, Esq.


Official Court Reporter:         Toni Doyle Tusa, CCR, FCRR
                                 500 Poydras Street, Room HB-406
                                 New Orleans, Louisiana 70130
                                 (504) 589-7778
                                 Toni_Tusa@laed.uscourts.gov




Proceedings recorded by mechanical stenography; transcript
produced by computer.

**PROCEEDINGS**

**(February 28, 2014)**

THE COURT:  Good afternoon, everyone.  This is
Judge Fallon.  I apologize for keeping you waiting.  I had
another matter that grabbed me.

I have the following on the line:  Dawn Barrios,
Lenny Davis, John Beisner, David Egilman, William Garmer,
Ben Barnett, Liz Natter, Sean Deskins, Michael Hasken, and
Doug Marvin.  Did I miss anyone?

MR. DAVIS:  No, Your Honor.

THE COURT:  This conference is actually precipitated
by a letter which I received from John Beisner on February 26
of this year.  Mr. Beisner advises me that Dr. David Egilman,
who acted as a testifying expert in the Kentucky litigation
which is now settled and dismissed, has asked the Kentucky
state court that oversaw the Kentucky AG cases to order the
release of certain Merck documents that were produced with
confidential designations.

The documents, as I understand them, are
documents that were involved in the Kentucky litigation, some
16 of those documents, and the remaining of about 400 documents
or thereabouts were the documents that were part of the MDL
litigation.  I received those documents and a protective order
was issued indicating the confidentiality of those documents.

As I understand it, the doctor wishes to utilize

01:44  1   those documents in connection with an article or discussion
01:45  2   that he intends to have or do.  He also wants to call those
01:45  3   documents to the attention of Merck's people and also various
01:45  4   other people, including the FBI.  Merck is concerned about the
01:45  5   responsibilities that everyone has under the protective order
01:45  6   which I issued in connection with the MDL case, which is still
01:45  7   in force and effect.
01:45  8             The purpose of the call is to discuss this
01:45  9   issue.  I don't have it as a motion at this point.  I just felt
01:45  10  that it would be helpful to get everybody on the line so that I
01:45  11  could get their views of it and then act accordingly.  The
01:45  12  purpose, as I say, is to discuss the vitality of PTO 13, 13-A,
01:46  13  and 13-B, which places a number of these documents under a
01:46  14  confidentiality order.
01:46  15            John, I will hear from you.  You are the one
01:46  16  that wrote the letter.
01:46  17            MR. BEISNER:  Yes, Your Honor.  Actually, Mr. Barnett
01:46  18  will be addressing that, so let me turn it to Ben at this
01:46  19  point.
01:46  20            THE COURT:  Okay.
01:46  21            MR. BARNETT:  Good afternoon, Your Honor.
01:46  22            THE COURT:  Good afternoon, Ben.
01:46  23            MR. BARNETT:  So there's a fairly narrow issue before
01:46  24  the Court.  You have done a good job summarizing the
01:46  25  background.

01:46  1      Dr. Egilman has objected to Merck's designation

01:46  2  of a number of Vioxx documents in Kentucky.  Those documents,

01:46  3  some of them were produced directly in Kentucky -- and we're

01:46  4  prepared to addressed those in front of Judge Shepherd next

01:46  5  Wednesday -- but there were other documents that were produced

01:47  6  in the Vioxx MDL, in the Vioxx securities case, different Vioxx

01:47  7  matters.

01:47  8      The reason for reaching out to the Court is to

01:47  9  get the Court's guidance in terms of the documents that were

01:47  10 actually produced under the various MDL protective orders,

01:47  11 particularly for the documents that were made available to

01:47  12 potentially Kentucky counsel or other AG counsel through the

01:47  13 PSC depository.

01:47  14      It's our view that the plain language of those

01:47  15 protective orders that were negotiated and entered in the MDL

01:47  16 makes clear that this Court retains jurisdiction over those

01:47  17 documents and that that jurisdiction and authority extends

01:47  18 beyond remand.  In our view, that's the clear, plain language

01:47  19 in PTO 13-A, which was entered to address discovery in the AG

01:48  20 cases, as well as PTO 13-B, which was entered to govern access

01:48  21 to the depository that was set up for Vioxx documents by the

01:48  22 PSC.

01:48  23      In preparing for the hearing next week, we just

01:48  24 want to make sure that we are correct in our views in terms of

01:48  25 this Court's retaining jurisdiction postremand.  And then

1   second, that separate and apart from any decision by another

2   Vioxx court regarding de-designation, that ultimate

3   de-designation for a document produced in the MDL under the MDL

4   protective order requires following the procedures in

5   paragraph 22 of PTO 13 and ultimately approval of this Court.

6           We think if we can get guidance from the Court,

7   either on this call or in a subsequent minute entry, it would

8   help all the parties prepare for the hearing before

9   Judge Shepherd next Wednesday, March 5.

10          **THE COURT:**  Doctor, I asked that you be present at

11  the call so that you can give us your views too.  I know you

12  are not a party to this litigation, but you're involved in it,

13  and I'm interested in your views.

14          **DR. EGILMAN:**  First, factually it was my

15  understanding -- and certainly I did rely on the MDL

16  repository, and it was my understanding the repository was set

17  up to facilitate discovery in all the Vioxx litigation

18  certainly that started with the MDL.

19          So I relied on the MDL documents in the Kentucky

20  case.  They are a part of my reliance materials.  I brought

21  them to my deposition.  Some were marked at my deposition.

22  Then there was a smaller subset of documents that were not

23  produced in the MDL that related specifically to the Kentucky

24  litigation.  So it seems to me that both the MDL documents and

25  the Kentucky documents are the same set with respect to the

01:50  1    matter in Kentucky.

01:50  2            There is a precedent for that, and that's also
01:50  3    dealt with in paragraph 23 of your PTO.  The precedent is in
01:50  4    the state litigation, for example, in New Jersey the MDL
01:50  5    documents were used.  Both the federal MDL and the state MDL
01:50  6    documents were used.  As far as I know, Merck never objected to
01:50  7    any document that was ever entered that had been stamped
01:50  8    confidential retaining that status.  But nonetheless, whether
01:50  9    they did or not, most of the documents that were used in that
01:50 10    litigation went in and became public documents and then were
01:50 11    de-privileged based on your order, paragraph 23.

01:51 12            Then the last issue is -- just to facilitate
01:51 13    matters -- your order, paragraph 26, states that Merck has to
01:51 14    maintain a database and a log so that we can figure out --
01:51 15    someone like me, who is subject to your order and to the
01:51 16    state's order and subject to sanctions, etc., from you.  So it
01:51 17    would be my view that this relates to me directly since I could
01:51 18    be sanctioned for releasing a document.

01:51 19            Paragraph 26 says that Merck should maintain a
01:51 20    log of those documents.  There is no such log.  They haven't
01:51 21    maintained one, and so it makes it difficult for me to know
01:51 22    what documents are or are not confidential in the first place.

01:51 23            Those would be my views on Merck's statements.
01:51 24    So I disagree with them as to the factual matter whether the
01:51 25    MDL documents that were used in Kentucky are some separate set

1    somehow and not subject to a separate confidentiality order

2    that was written and -- I think it was drafted by Merck, signed

3    by Merck, signed by the state, signed by me, and the judge

4    pursuant to the -- and different from your order in a couple

5    ways.

6         One, I think it gives -- it specifically says

7    third parties have standing.  The matter on Wednesday is just

8    going to deal with a single issue of whether or not I have

9    standing.  If, as Merck says, all of those documents are

10   subject only to your review -- in other words, no matter what a

11   state judge says, they have to come back to you -- I have no

12   standing, clearly, under your order except I would get standing

13   if I released the documents and they sought sanctions, which is

14   what I'm trying to avoid here.  And then presumably then the

15   matter would come to you in the first instance as to whether or

16   not the document was actually properly marked confidential.

17        I would just add parenthetically, there are

18   documents in the database that are still confidential that form

19   the basis of the guilty plea agreement that Merck signed, a

20   criminal plea that they took in Massachusetts, and there are 10

21   documents, parts of which were part of that record, and the

22   entire documents remain confidential in the MDL database.  I

23   haven't been able to get them.  I asked for them, and Merck

24   refused to let the federal U.S. attorney release them.

25        So there are, in fact, documents that are not

01:53    1    hypothetically potentially evidence of criminal conduct.  There
01:53    2    are documents in that database that are evidence of criminal
01:53    3    conduct that Merck took a plea on.
01:53    4              So that's the end of what I have to say.
01:53    5              THE COURT:  Okay.  Thank you.
01:53    6              Anyone else want to indicate anything?
01:54    7              MR. GARMER:  Your Honor, this is Bill Garmer from
01:54    8    Lexington representing the commonwealth, if I could say a few
01:54    9    things.
01:54   10              THE COURT:  Sure.
01:54   11              MR. GARMER:  I just want to kinda clarify a few
01:54   12    things.
01:54   13              The commonwealth, of course, has an interest in
01:54   14    this in regards to the fact that the commonwealth has these
01:54   15    documents.  Being a state agency, if we were to receive an open
01:54   16    records request, we want to make sure that when we respond to
01:54   17    that, we don't violate any possible conflicting orders that
01:54   18    come out of this over the documents.  So that's our primary
01:54   19    interest, that we may well be subject to open records requests.
01:54   20    We want to know where we stand in terms of the designation of
01:54   21    the documents.
01:54   22              Then just as a note, really, that Dr. Egilman
01:54   23    brought up is that paragraph 23 of PTO 13 provides that if the
01:54   24    confidentiality designation of a document is removed by another
01:54   25    court, then the confidential information shall be removed from

01:55    1    the documents so that there wouldn't be a conflict with your

01:55    2    order.

01:55    3            THE COURT:  At least to those 14 documents.

01:55    4            MR. GARMER:  Yes.

01:55    5            And then finally, I think Ms. Natter has

01:55    6    requested of Mr. Barnett a log of the confidential or

01:55    7    nonconfidential status.  To my knowledge, we have not received

01:55    8    that log.  So that would be helpful.

01:55    9            THE COURT:  Okay.

01:55   10            MR. DAVIS:  Your Honor, this is Leonard Davis just on

01:55   11    behalf of the PSC.

01:55   12            As the Court knows and the various AGs know, the

01:55   13    PSC maintains a depository and did, as well as the Seeger Weiss

01:55   14    firm in New York.  As you know, we coordinated and assisted the

01:55   15    AGs to gain access to documents.  The PSC abides by and will

01:55   16    continue to abide by Your Honor's orders.  I will point out

01:56   17    that throughout the litigation there were logs that were

01:56   18    produced, and I believe Ben Barnett has those logs.

01:56   19            MR. BARNETT:  Your Honor, if I could --

01:56   20            THE COURT:  Go ahead, Ben.

01:56   21            MR. BARNETT:  -- just address that point briefly and

01:56   22    then maybe a couple of others that Dr. Egilman raised.

01:56   23            With respect to Mr. Garmer's last response, I

01:56   24    know that when we were before Judge Shepherd on February 18,

01:56   25    Ms. Natter was there and mentioned something in passing about a

1   log.  I did not take that as a formal request in part because

2   the matter is now closed and, as I understood it, beyond the

3   third-party standing issue, it was my understanding the

4   Kentucky attorney general was not taking any position with

5   respect to the de-designation of these documents.

6           The fact of the matter is that Mr. Davis is

7   correct.  There was a period of time where we produced on a

8   regular basis an objective coding report that contained the

9   confidential status of those documents.  I can't tell you when

10  the last one we did was because, quite frankly, at some point

11  nobody was asking for them and it wasn't an issue.  But the

12  suggestion that we did not comply with the requirements of

13  PTO 13 and produce those reports on a regular basis is simply

14  wrong.

15          In terms of the use of confidential documents

16  between the MDL and New Jersey, there were a number of

17  occasions where counsel who were counsel of record to parties

18  in the matter asked us to de-designate documents, and we tried

19  to work through it with them and to resolve those issues.  The

20  important distinction there, Your Honor, is the use of the

21  documents was for litigation purposes, and the purposes for

22  which Dr. Egilman is seeking to depose these documents are

23  clearly not related to litigation.  They are related to other

24  publications or disclosures.

25          And then finally, in terms of the designations

of the documents in the depository, those were done specifically under PTO 13 and PTO 13-B such that they could be used in any of the AG matters, including Kentucky, but it doesn't change the fact that they were produced under the MDL protective order and, our view, remain under your jurisdiction and authority.

**THE COURT:**  Okay.  Let me just make some comments to put this thing at least in perspective and tell you the way I look at it.

When litigation occurs and there's an issue of protective order, it's always a tug of war between the First Amendment and the Sixth or Seventh Amendment, in this case the Seventh Amendment.  I'm always torn between putting something out of the sphere of the public and at the same time facilitate the development of the litigation between and among the parties, and there's a tug of war for that.

Both of those amendments are significant.  You can't run a democracy without having people informed.  The freedom of speech, the freedom of the press, all of the freedoms that we enjoy as a result of that First Amendment are critical to our government functioning.

At the same time, the Seventh Amendment gives parties a right to a fair and expeditious and appropriate trial.  In these days and times, discovery plays a vital if not essential role in assuring a fair trial to the litigants.

02:00    1             When I'm confronted with this conflict between

02:00    2   the First and the Seventh Amendment, I don't throw either one

02:00    3   of them out, but it seems to me that the Seventh preempts the

02:00    4   First in the sense that it's important to give the litigants on

02:00    5   both sides some comfort that what they produce by way of

02:00    6   documents are going to be limited to the trial and that they

02:00    7   will be used during the trial.

02:00    8             I find that without a protective order, when we

02:00    9   are dealing with a million or two or three or four million

02:00   10   documents, what happens is that there's such a reluctance to

02:00   11   produce the documents that the trial just goes on for an

02:00   12   interminable period of time and the discovery process consumes

02:01   13   the whole litigation, which is not consistent, in my view, with

02:01   14   the Seventh Amendment's speedy trial requirements.

02:01   15             So I look at these matters first from the

02:01   16   litigation standpoint and I get the parties together, instruct

02:01   17   them to meet and confer, and those documents that would be

02:01   18   produced, work out a protective order for the purpose of

02:01   19   expediting the development of the discovery.

02:01   20             Now, then as time goes on and the litigation

02:01   21   either comes to a period of ending or about to end, these

02:01   22   issues, if they do not just go away or fade into the woodwork,

02:02   23   I have to deal with them, but I have to deal with them by

02:02   24   listening to the parties.

02:02   25             Now, a party who wishes to keep these documents

1    under protective order has some burden to show that there's

2    some reason for it.  Oftentimes documents which are produced

3    have proprietary interests.  They have some interest that is

4    predominantly in favor of keeping them under seal for that

5    reason and for other reasons.  There's some documents that are

6    produced under protective orders that are really probably

7    fodder for various privileges that may keep them forever under

8    seal.  That's the way I look at it.

9          I need to convene a motion to release the

10   documents.  I need to know which documents a party or the

11   parties or whoever wants to release them can release them.

12   Then I give each side an opportunity to brief them, to argue,

13   and then I make my decision on it.

14          We may be getting to the point now where the

15   litigation has arrived at the point where something may come up

16   involving these particular documents, but that's the orderly

17   way that I think we should go about it.  I don't want to just

18   knee-jerk it and say no or knee-jerk it and say yes.

19          It just seems to me that both sides ought to

20   have an opportunity to look at this carefully, give me some

21   indication of which documents.  I don't want to simply say all

22   documents -- that doesn't help me at all -- but which

23   documents.  Then if there are documents that ought to remain

24   under protective order, I will so rule.  If there are documents

25   that there's no reason at this point to have them under

02:04  1    protective order, I will so rule.

02:04  2              That's the way that I see it proceeding.  Until

02:04  3    that's done, my protective orders have to be in force.  I

02:04  4    entered them.  They just don't go away, but I can modify them.

02:04  5    That's the point of the protective orders.  I always have in

02:04  6    the protective orders that I can modify it, amend it, change it

02:04  7    because what was good yesterday changes and needs to be updated

02:04  8    today or tomorrow.

02:04  9              So the protective orders are in force, but they

02:04  10   are not written in stone.  If any party wishes to change them,

02:05  11   file a motion and I will expedite it.  I'm not going to hold it

02:05  12   forever.  I will expedite it and call everybody and get some

02:05  13   quick briefing schedule, expedite it, and I will hear from you,

02:05  14   and then I will rule.

02:05  15             Anybody have any question as to what I just

02:05  16   said?

02:05  17        DR. EGILMAN:  This is Dr. Egilman.  Does that mean I

02:05  18   can do that?

02:05  19        THE COURT:  Dr. Egilman, from your standpoint, you

02:05  20   are going to have to at least talk -- I thought we had somebody

02:05  21   who was interested in at least having me look at the documents.

02:05  22   Was it Ms. Oldfather's firm?  I'm not quite sure.  She's not on

02:05  23   the phone.

02:05  24             Sean Deskins, you're on the phone.

02:05  25        MR. DESKINS:  Yes, Your Honor.  Sean Deskins.

1    We have joined Dr. Egilman's motion in the state
2  court proceeding in the Kentucky circuit court and we have
3  sought to intervene.  We agree that Dr. Egilman has standing.
4  We also believe that, as a Kentucky citizen, Ms. Oldfather has
5  standing to intervene in a suit involving documents that were
6  part of the reason that the commonwealth itself settled.
7  There's a public interest in the attorney general's case
8  because it involves public funds and the public's right to
9  pursue that lawsuit.  So on those reasons and because of the
10 fact that it may affect some of our clients in Kentucky,
11 Ms. Oldfather has sought to join that case.
12     It's our position that Judge Shepherd has
13 entered that order, the agreed protective order which Merck
14 requested in the AG's case, and that governs those documents.
15 So Judge Shepherd should be permitted to rule on those
16 documents, and his ruling should determine whether those
17 documents either continue their confidential designation or are
18 de-designated.
19     THE COURT:  Well, it depends upon whether or not they
20 are part of my order too.  It may be that we both have some
21 say-so in that.  You are also a participant in the MDL, so I
22 would assume that your position would be the same on the MDL's
23 documents.
24     MR. DESKINS:  Yes, Your Honor.
25     THE COURT:  Go ahead.  Who is this?

02:07 1    **MS. NATTER:**  This is Liz Natter.  I'm an assistant
02:07 2    attorney general here in the Commonwealth of Kentucky.
02:07 3          **THE COURT:**  Go ahead, Liz.
02:07 4          **MS. NATTER:**  First of all, thank you very much.  That
02:07 5    was a helpful explanation of your approach to these matters.
02:08 6          I guess I would ask, paragraph 23 of the order
02:08 7    which I agreed to on behalf of the commonwealth -- this is your
02:08 8    PTO 13 -- provides that "to the extent any material designated
02:08 9    as confidential information herein becomes publicly available,"
02:08 10   and then there's a paragraph about other than through a
02:08 11   violation of this order, "or has its designation as
02:08 12   confidential information withdrawn or judicially removed in any
02:08 13   U.S. Vioxx action," and then it says "the confidential
02:08 14   information designation shall be deemed withdrawn from such
02:08 15   material."
02:08 16         This is why I was under the impression that your
02:08 17   order had addressed precisely this situation.  We are not
02:08 18   asking for those documents to be globally de-designated, but it
02:08 19   was our understanding that Judge Shepherd would have
02:08 20   jurisdiction pursuant to your order.
02:08 21         **THE COURT:**  Over the 14?  Is that what we are talking
02:08 22   about?
02:09 23         **MS. NATTER:**  Actually, this is in your order, PTO 13.
02:09 24   It says "to the extent any material designated as confidential
02:09 25   information."  I thought that referred to material designated

as confidential in the MDL.  The paragraph appears to me to suggest that when that designation is judicially removed in any U.S. Vioxx action, the confidential information designation shall be deemed withdrawn.  However, I'm here to be instructed.

**THE COURT:**  I think that's a legitimate point.  I think that that ought to be raised when anybody wishes to have the documents that are governed by this protective order removed or withdrawn.  I think I would need to know which documents are there.  I'll make a decision on that, but I will also make a decision as to which documents that were not introduced in Kentucky but are part of the MDL could or should be removed at this point.

From Ms. Oldfather's standpoint with the MDL documents, she should have access to them because she's an active litigant in a proceeding.  The issue is whether or not, outside of the litigation, other people ought to have access to it.  That's a legitimate point, particularly if the litigation is over.  There is a time when some documents that have no reason for being kept under a protective order ought not to be allowed.  I have to look at those things because I don't think things just ought to be deep-sixed, so to speak, forever and a day, destroyed.  That's not the way that courts ought to operate.

There are some documents, frankly, that are proprietary in nature, that have some attorney-client privilege

1 or have some other privilege that should be kept from public
2 view.  I have to look at them.
3     **MR. BARNETT:**  Your Honor, it's Ben Barnett again,
4 just briefly.
5         We have made clear to many if not most of the
6 individuals on the phone that we have no objection to resolving
7 issues related to the MDL documents produced in the MDL subject
8 to the MDL protective order in the MDL.  What we don't think
9 would be appropriate is to have documents that weren't actually
10 produced in another matter de-designated under that matter's
11 protective order.  We think that you, as the judge who entered
12 the protective order and retained authority, really has the
13 final say regarding de-designation.
14     **THE COURT:**  I don't disagree with that.  I am
15 interested in giving everybody an opportunity to tell me why
16 the documents should be kept under designation.
17         And, of course, you having the documents, or at
18 least the party with the greatest interest in keeping them
19 under the protective order, you have the burden of showing why
20 they should be kept.  If there's no reason that they should be
21 kept, then they shouldn't be kept under the protective order.
22     **DR. EGILMAN:**  Your Honor, this is Dr. Egilman.
23         I'm not so clear exactly what you just said,
24 maybe because I'm not a lawyer.  Does that mean you're
25 instructing the judge, Judge Shepherd, to not rule on any MDL

1    documents that were used in the Kentucky case?

2         **THE COURT:**  I think that the judge ought to be ruling

3    on the documents that the judge has used in his litigation.

4    I'm not, as a federal court, going to instruct a state court

5    judge not to act on material that he had, but I don't think

6    that his ruling on them is necessarily the only ruling that's

7    necessary.  If those documents are also under the MDL

8    protective order, then I'm going to have to weigh in on that.

9         Now, I'm going to certainly take into

10   consideration the fact that a state court colleague felt that

11   it ought to be released.  Under Rule 23 that is very persuasive

12   to me, that he felt it should be released, but I don't think

13   that he would wish to try to release documents in the MDL

14   proceeding, documents that were not even involved in the

15   Kentucky litigation.  I don't think he would feel comfortable

16   doing that.  I would urge him to not deal with documents that

17   were not introduced in his litigation.

18        Let me go back to the log because I think that

19   it is necessary to have some logs of these documents.  We can't

20   just dump them.  We ought to have a log of those documents.  At

21   least if it comes to me in a motion, I will need a log showing

22   which documents should continue, according to the moving party,

23   under protective order and what they are and why they should

24   remain under the protective order.

25        It's not as if at this point we don't know what

02:15   1   the documents are.  So it's not like a privilege where you say

02:15   2   very little about the document and the other person responding

02:15   3   knows very little about the document.  Here, everybody knows

02:15   4   what the documents are, and the only issue is whether or not

02:15   5   they should be released to the public.

02:15   6            So just in summary, the documents that my

02:15   7   protective order are covering are still under the protective

02:15   8   order.  If anyone wishes that the documents under the

02:16   9   protective order be removed from the protective order, then a

02:16   10   motion should be made.

02:16   11            Doctor, from your standpoint, I don't have any

02:16   12   problem if an attorney on your behalf moves, but there is an

02:16   13   issue as to whether or not you have standing, and I'll have to

02:16   14   deal with that issue.  What I'm hearing is that whether or not

02:16   15   you have standing, Ms. Oldfather's position may have standing.

02:16   16   So if she's on the same motion that you are on, then I guess to

02:16   17   some extent your standing is mooted.

02:16   18            DR. EGILMAN:  Right.  That's the difference between

02:16   19   your order and the state's order.  The judge specifically wrote

02:16   20   in third-party standing in the state order.  He is going to

02:16   21   determine whether that will apply to me on Wednesday.  That's a

02:16   22   huge difference.  I'm the only one who has asked for

02:17   23   de-designation, as far as I know, in this litigation in

02:17   24   general.

02:17   25            THE COURT:  All right.  I have a transcript of this

1    discussion and it's available for anyone who wishes to have it.

2    Thank you everyone.  I apologize for keeping you waiting at the

3    outset.  Thank you.

4              (Proceedings adjourned.)

5                        * * *

6                    <u>**CERTIFICATE**</u>

7              I, Toni Doyle Tusa, CCR, FCRR, Official Court

8    Reporter for the United States District Court, Eastern District

9    of Louisiana, certify that the foregoing is a true and correct

10   transcript, to the best of my ability and understanding, from

11   the record of proceedings in the above-entitled matter.

12

13

14                        <u>*s/ Toni Doyle Tusa*</u>
                          Toni Doyle Tusa, CCR, FCRR
15                        Official Court Reporter

16

17

18

19

20

21

22

23

24

25

**1**

10 [1]  7/20
13 [7]  3/12 5/5 8/23 10/13 11/2 16/8
16/23
13-A [1]  3/12
13-B [1]  3/13
14 [2]  9/3 16/21
16 [1]  2/21
1657 [1]  1/5
18 [1]  9/24

**2**

2014 [2]  1/7 2/2
22 [1]  5/5
23 [5]  6/3 6/11 8/23 16/6 19/11
26 [3]  2/12 6/13 6/19
28 [1]  1/7 2/2

**4**

400 [1]  2/21
406 [1]  1/20

**5**

500 [1]  1/20
504 [1]  1/20
589-7778 [1]  1/21

**7**

70130 [1]  1/20
7778 [1]  1/21

**A**

abide [1]  9/16
abides [1]  9/15
ability [1]  21/10
able [1]  7/23
about [9]  2/21 3/4 9/25 12/21 13/17
16/10 16/22 20/2 20/3
above [1]  21/11
above-entitled [1]  21/11
access [4]  4/20 9/15 17/14 17/16
according [1]  19/22
accordingly [1]  3/11
act [2]  3/11 19/5
acted [1]  2/14
action [2]  16/13 17/3
active [1]  17/15
actually [6]  2/11 3/17 4/10 7/16 16/23
18/9
add [1]  7/17
address [4]  4/19 9/21
addressed [2]  4/4 16/17
addressing [1]  3/18
adjourned [1]  21/4
advises [1]  2/13
affect [1]  15/10
afternoon [3]  2/3 3/21 3/22
AG [2]  2/16 4/12 4/19 11/3
AG's [1]  15/14
again [1]  18/3
agency [1]  8/15
agree [1]  15/3
agreed [2]  15/13 16/7
agreement [1]  7/19
AGs [2]  9/12 9/15
ahead [3]  9/20 15/25 16/3
all [8]  5/8 5/17 7/9 11/19 13/21 13/22
16/4 20/25
allowed [1]  7/20
also [7]  3/2 3/3 6/2 15/4 15/21 17/10
19/7
always [3]  11/11 11/13 14/5
am [1]  18/14

amend [1]  14/6
amendment [3]  11/22 11/22 12/2
Amendment's [1]  12/14
amendments [1]  11/17
among [1]  11/15
another [4]  2/5 5/1 8/24 18/10
any [11]  5/1 6/7 8/17 10/4 11/3 14/10
14/15 16/8 16/12 16/24 17/2 18/25
20/11
anybody [2]  14/15 17/6
anyone [4]  2/9 8/6 20/8 21/1
anything [1]  8/6
apart [1]  5/1
apologize [2]  2/4 21/2
Appearances [1]  1/13
appears [1]  11/15
apply [1]  20/21
approach [1]  16/5
appropriate [2]  11/23 18/9
approval [1]  5/5
are [48]
argue [1]  13/12
arrived [1]  13/15
article [1]  3/1
as [34]
ask [1]  16/6
asked [5]  2/15 5/10 7/23 10/18 20/22
asking [2]  10/11 16/18
assistant [1]  16/1
assume [1]  15/22
assuming [1]  11/25
at [26]
attention [1]  3/3
attorney [6]  7/24 10/4 15/7 16/2 17/25
20/12
attorney-client [1]  17/25
authority [1]  4/17 11/6 18/12
available [3]  4/11 16/9 21/1
avoid [1]  7/14
away [2]  12/22 14/4

**B**

back [2]  7/11 19/18
background [1]  3/25
Barnett [6]  1/16 2/8 3/17 9/6 9/18 18/3
Barrios [2]  1/13 2/6
based [1]  6/11
basis [3]  7/19 10/8 10/13
be [40]
became [1]  6/10
because [9]  10/1 10/10 14/7 15/8 15/9
17/14 17/20 18/24 19/18
becomes [1]  14/9
been [2]  6/7 7/23
before [4]  1/10 3/23 5/8 9/24
behalf [3]  9/11 16/7 20/12
being [2]  8/15 17/19
Beisner [4]  1/14 2/7 2/12 2/13
believe [2]  9/18 15/4
Ben [7]  1/16 2/8 3/18 3/22 9/18 9/20
18/3
Ben Barnett [1]  2/8
best [1]  21/10
between [6]  10/16 11/11 11/13 11/15
12/1 20/18
beyond [2]  4/18 10/2
Bill [1]  8/7
both [6]  5/24 6/5 11/17 12/5 13/19 15/20
brief [1]  13/12
briefing [1]  14/13
briefly [1]  9/21 18/4

brought [2]  5/20 8/23
but [17]  4/5 5/12 6/8 10/11 11/3 12/3
12/23 13/16 13/22 14/4 14/9 16/18 17/9
17/11 19/5 19/12 20/12

**C**

call [5]  3/2 3/8 5/7 5/11 14/12
can [7]  5/6 5/11 6/14 13/11 14/4 14/6
14/18
can't [3]  10/9 11/18 19/19
carefully [1]  13/20
case [8]  3/6 4/6 5/20 11/12 15/7 15/11
15/14 19/1
cases [2]  2/16 4/20
CCR [3]  1/19 21/7 21/14
certain [1]  2/17
certainly [3]  5/15 5/18 19/9
CERTIFICATE [1]  21/6
certify [1]  21/9
change [3]  11/4 14/6 14/10
changes [1]  14/7
circuit [1]  15/2
citizen [1]  15/4
clarify [1]  8/11
clear [4]  4/16 4/18 18/5 18/23
clearly [2]  7/12 10/23
client [1]  17/25
clients [1]  15/10
closed [1]  10/21
coding [1]  10/8
colleague [1]  19/10
come [4]  7/11 7/15 8/18 13/15
comes [2]  12/21 19/21
comfort [1]  12/5
comfortable [1]  19/15
comments [1]  11/7
commonwealth [6]  8/8 8/13 8/14 15/6
16/2 16/7
comply [1]  10/12
computer [1]  1/25
concerned [1]  3/4
conduct [2]  8/1 8/3
confer [1]  12/17
conference [2]  1/10 2/11
confidential [17]  2/18 6/8 6/22 7/16 7/18
7/22 8/25 9/6 10/9 10/15 15/17 16/9
16/12 16/13 16/24 17/1 17/3
confidentiality [4]  2/24 3/14 7/1 8/24
conflict [2]  9/1 12/1
conflicting [1]  8/17
confronted [1]  12/1
connection [2]  3/1 3/6
consideration [1]  19/10
consistent [1]  12/13
consumes [1]  12/12
contained [1]  10/8
continue [3]  9/16 15/17 19/22
convene [1]  13/9
coordinated [1]  9/14
correct [3]  4/24 10/7 21/9
could [6]  3/11 6/17 8/8 9/19 11/2 17/11
counsel [4]  4/12 4/12 10/17 10/17
couple [2]  7/4 9/22
course [2]  8/13 18/17
court [19]  1/1 1/19 2/16 3/24 4/8 4/16
5/2 5/5 5/6 8/25 9/12 15/2 15/2 19/4
19/4 19/10 21/7 21/8 21/15
Court's [2]  4/9 4/25
courts [1]  17/22
covering [1]  20/7
criminal [3]  7/20 8/1 8/2
critical [1]  11/21

**D**

database [4]  6/14 7/18 7/22 8/2
David [3]  1/15 2/7 2/13
Davis [4]  1/14 2/7 9/10 10/6
Dawn [2]  1/13 2/6
day [1]  17/22
days [1]  11/24
de [10]  5/2 5/3 6/11 10/5 10/18 15/18
 16/18 18/10 18/13 20/23
de-designate [1]  10/18
de-designated [3]  15/18 16/18 18/10
de-designation [5]  5/2 5/3 10/5 18/13
 20/23
de-privileged [1]  6/11
deal [5]  7/8 12/23 12/23 19/16 20/14
dealing [1]  6/3
dealt [1]  6/3
decision [4]  5/1 13/13 17/9 17/10
deemed [2]  16/14 17/4
deep [1]  17/21
deep-sixed [1]  17/21
democracy [1]  11/18
depends [1]  15/19
depose [1]  10/22
deposition [2]  5/21 5/21
depository [4]  4/13 4/21 9/13 11/1
designate [1]  10/18
designated [6]  15/18 16/8 16/18 16/24
 16/25 18/10
designation [14]  4/1 5/2 5/3 8/20 8/24
 10/5 15/17 16/11 16/14 17/2 17/3 18/13
 18/16 20/23
designations [2]  2/18 10/25
Deskins [4]  1/17 2/8 14/24 14/25
destroyed [1]  17/22
determine [2]  15/16 20/21
development [2]  11/15 12/19
did [7]  2/9 5/15 6/9 9/13 10/1 10/10
 10/12
difference [2]  20/18 20/22
different [2]  4/6 7/4
difficult [1]  6/21
directly [2]  4/3 6/17
disagree [2]  6/24 18/14
disclosures [1]  10/24
discovery [5]  4/19 5/17 11/24 12/12
 12/19
discuss [2]  3/8 3/12
discussion [2]  3/1 21/1
dismissed [1]  2/15
distinction [1]  10/20
DISTRICT [5]  1/1 1/2 1/11 21/8 21/8
do [3]  3/2 12/22 14/18
doctor [3]  2/25 5/10 20/14
document [7]  5/3 6/7 6/18 7/16 8/24
 20/2 20/3
documents [94]
Does [2]  14/17 18/24
doesn't [2]  11/4 13/22
doing [1]  19/16
don't [14]  3/9 8/17 12/2 13/17 13/21
 14/4 17/20 18/8 18/14 19/5 19/12 19/15
 19/25 20/11
done [3]  3/24 11/1 14/3
Doug [2]  1/18 2/9
Doug Marvin [1]  2/9
Doyle [4]  1/19 21/7 21/14 21/14
Dr [1]  14/17
Dr. [9]  2/13 4/1 8/22 9/22 10/22 14/19
 15/1 15/3 18/22
Dr. David [1]  2/13
Dr. Egilman [7]  4/1 8/22 9/22 10/22
 14/19 15/3 18/22

**E**

Mr. Birchfield [1]  drafted [1]  7/2
drafted [1]  7/2
dump [1]  19/20
during [1]  12/7

**E**

each [1]  13/12
EASTERN [2]  1/2 21/8
effect [1]  3/7
Egilman [19]  1/15 2/7 2/13 4/1 8/22 9/22
 10/22 14/17 14/19 15/3 18/22
Egilman's [1]  15/1
either [4]  5/7 12/2 12/21 15/17
ELDON [1]  1/10
else [1]  8/6
end [2]  8/4 12/21
ending [1]  12/21
enjoy [1]  11/20
entered [7]  4/15 4/19 4/20 6/7 14/4
 15/13 18/11
entire [1]  7/22
entitled [1]  21/11
entry [1]  5/7
Esq [9]  1/13 1/14 1/14 1/15 1/16 1/16
 1/17 1/17 1/18
essential [1]  11/25
etc [1]  6/16
even [1]  19/14
ever [1]  6/14
everybody [4]  3/10 14/12 18/15 20/3
everyone [3]  2/3 3/5 21/2
evidence [2]  8/1 8/2
exactly [1]  18/23
example [1]  6/4
except [1]  7/12
expedite [3]  14/11 14/12 14/13
expediting [1]  12/19
expeditious [1]  11/23
expert [2]  2/14
explanation [1]  16/5
extends [1]  4/17
extent [3]  16/8 16/24 20/17

**F**

facilitate [2]  5/17 6/12 11/14
fact [6]  7/25 8/14 10/6 11/4 15/10 19/10
factual [1]  6/24
factually [1]  5/14
fade [1]  12/22
fair [2]  11/23 11/25
fairly [1]  3/23
FALLON [2]  1/10 2/4
far [2]  6/6 20/23
favor [1]  11/4
FBI [1]  3/4
FCRR [3]  1/19 21/7 21/14
February [4]  1/7 2/2 2/12 9/24
February 18 [1]  9/24
February 26 [1]  2/12
federal [3]  6/5 7/24 19/4
feel [1]  19/15
felt [3]  3/9 19/10 19/12
few [2]  20/8 11/1
figure [1]  6/14
file [1]  14/11
final [1]  18/13
finally [2]  9/5 10/25
find [1]  12/8
firm [2]  9/14 14/22
first [5]  5/14 6/22 7/15 11/11 11/20 12/2
 12/4 12/15 16/4
fodder [1]  13/7

14/19 15/3 18/22
Mr. Birchfield [1]  6/20

following [2]  2/6 5/4
foot [1]  3/7 3/7 21/9
foregoing [1]  21/9
forever [3]  13/7 14/12 17/21
form [1]  7/18
formal [1]  10/1
four [1]  12/9
frankly [2]  10/10 17/24
freedom [2]  11/19 11/19
freedoms [1]  11/20
front [1]  4/4
functioning [1]  11/21
funds [1]  15/8

**G**

gain [1]  9/15
Garmer [3]  1/15 2/7 8/7
Garmer's [1]  9/23
general [3]  10/4 16/2 20/24
general's [1]  15/7
get [8]  3/10 3/11 4/9 5/6 7/12 7/23 12/16
 14/12
getting [1]  13/14
give [5]  5/11 12/4 13/12 13/20
gives [2]  7/6 11/22
giving [1]  18/15
globally [1]  16/18
go [7]  9/20 12/22 13/17 14/4 15/25 16/3
 19/18
goes [2]  12/11 12/20
going [8]  7/8 12/6 14/11 14/20 19/4 19/8
 19/9 20/20
good [5]  2/3 3/21 3/22 3/24 14/7
govern [1]  4/20
governed [1]  17/7
government [1]  11/21
governs [1]  15/14
grabbed [1]  2/5
greatest [1]  18/18
guess [2]  16/6 20/16
guidance [2]  4/9 5/6
guilty [1]  7/19

**H**

had [5]  2/4 6/7 14/20 16/17 19/5
happens [1]  12/10
has [18]  2/15 3/5 4/1 6/13 8/13 8/14 9/5
 9/18 13/1 13/15 15/3 15/4 15/11 15/12
 16/11 18/12 19/3 20/22
Hasken [2]  1/17 2/8
have [46]
haven't [2]  6/20 7/23
having [3]  11/18 14/21 18/17
HB [1]  1/20
HB-406 [1]  1/20
he [7]  3/2 3/2 19/5 19/12 19/13 19/15
 20/20
hear [2]  3/15 14/13
hearing [4]  4/23 5/8 20/14
help [2]  5/8 13/22
helpful [3]  3/10 9/8 16/5
here [4]  7/14 16/2 17/4 20/3
herein [1]  16/9
him [1]  19/16
his [4]  15/16 19/3 19/6 19/17
hold [1]  14/11
Honor [11]  2/10 3/17 3/21 8/7 9/10 9/19
 10/20 14/25 15/24 18/3 18/22
Honor's [1]  9/16
HONORABLE [1]  1/10
However [1]  17/4
huge [1]  20/22
hypothetically [1]  8/1

**I**

I'll [2]  17/9 20/13
I'm [15]  5/13 7/14 11/13 12/1 14/11
14/22 16/1 17/4 18/23 18/24 19/4 19/8
19/9 20/14 20/22
if [21]  5/6 7/9 7/13 8/8 8/15 8/23 9/19
11/24 12/22 13/23 13/24 14/10 17/17
18/5 18/20 19/7 19/21 19/25 20/8 20/12
20/16
important [2]  10/20 12/4
impression [1]  16/16
in [100]
including [2]  3/4 11/3
indicate [1]  8/6
indicating [1]  2/24
indication [1]  13/21
individuals [1]  18/6
information [6]  8/25 16/9 16/12 16/14
16/25 17/3
informed [1]  11/18
instance [1]  7/15
instruct [2]  12/16 19/4
instructed [1]  17/4
instructing [1]  18/25
intends [1]  3/2
interest [5]  8/13 8/19 13/3 15/7 18/18
interested [3]  5/13 14/21 18/15
interests [1]  13/3
interminable [1]  12/4
intervene [2]  15/3 15/5
into [2]  12/22 19/9
introduced [2]  17/11 19/17
involved [3]  2/20 5/12 19/14
involves [1]  15/8
involving [2]  13/16 15/5
is [50]
issue [11]  3/9 3/23 6/12 7/8 10/3 10/11
11/10 17/15 20/4 20/13 20/14
issued [2]  2/24 3/6
issues [3]  10/19 12/22 18/7
it [52]
it's [8]  4/14 11/11 12/4 15/12 18/3 19/25
20/1 21/1
its [1]  16/11
itself [1]  15/6

**J**

jerk [2]  13/18 13/18
Jersey [2]  6/4 10/16
job [1]  3/24
John [4]  1/14 2/7 2/12 3/15
join [1]  15/11
joined [1]  15/1
judge [17]  1/11 2/4 4/4 5/9 7/3 7/11 9/24
15/12 15/15 16/19 18/11 18/25 18/25
19/2 19/3 19/5 20/19
Judge Fallon [1]  2/4
Judge Shepherd [1]  5/9
judicially [2]  16/12 17/2
jurisdiction [5]  4/16 4/17 4/25 11/5 16/20
just [21]  3/9 4/23 6/12 7/7 7/17 8/11
8/22 9/10 9/21 11/7 12/11 12/22 13/17
13/19 14/4 14/15 17/21 18/4 18/23
19/20 20/6

**K**

keep [2]  12/25 13/7
keeping [4]  2/4 13/4 18/18 21/2
Kentucky [21]  2/14 2/15 2/16 2/20 4/2
4/3 4/12 5/19 5/23 5/25 6/1 6/25 10/4
11/3 15/2 15/4 15/10 16/2 17/11 19/1
19/15

kept [6]  17/19 18/1 18/16 18/20 18/21
18/24
kinda [1]  8/11
knee [2]  13/18 13/18
knee-jerk [2]  13/18 13/18
know [11]  5/11 6/6 6/21 8/20 9/12 9/14
9/24 13/10 17/8 19/25 20/23
knowledge [1]  9/7
knows [3]  9/12 20/3 20/3

**L**

laed.uscourts.gov [1]  1/21
language [2]  4/14 4/18
last [3]  6/12 9/23 10/10
lawsuit [1]  9/9
lawyer [1]  18/24
least [6]  9/3 11/8 14/20 14/21 18/18
19/21
legitimate [2]  17/5 17/17
Lenny [1]  2/7
Leonard [2]  1/14 9/10
let [4]  3/18 7/24 11/7 19/18
letter [2]  2/12 3/16
Lexington [1]  8/8
LIABILITY [1]  1/5
like [2]  6/15 20/11
limited [1]  12/6
line [2]  2/6 3/10
listening [1]  12/24
litigant [1]  17/15
litigants [2]  11/25 12/4
litigation [24]
little [2]  20/2 20/3
Liz [4]  1/16 2/8 16/1 16/3
log [9]  6/14 6/20 6/20 9/6 9/8 10/1 19/18
19/20 19/21
logs [3]  9/17 9/18 19/19
look [7]  11/9 12/15 13/8 13/20 14/21
17/20 18/12
LOUISIANA [3]  1/2 1/20 21/9

**M**

M.D [1]  1/15
made [3]  4/11 18/5 20/10
maintain [2]  6/14 6/19
maintained [1]  6/21
maintains [1]  9/13
make [6]  4/24 8/16 11/7 13/13 17/9
17/10
makes [2]  4/16 6/21
many [1]  18/5
March [1]  5/9
March 5 [1]  5/9
marked [2]  5/21 7/16
Marvin [2]  1/18 2/9
Massachusetts [1]  7/20
material [5]  16/8 16/15 16/24 16/25 19/5
materials [1]  5/20
matter [11]  2/5 6/1 6/24 7/7 7/10 7/15
10/2 10/6 10/18 18/10 21/11
matter's [1]  18/10
matters [5]  4/7 6/13 11/3 12/15 16/5
may [7]  8/19 13/7 13/14 13/15 15/10
15/20 20/15
maybe [1]  9/22 18/24
MDL [31]
MDL's [1]  15/22
me [20]  2/5 2/13 3/18 5/24 6/15 6/17
6/21 7/3 11/7 12/3 13/19 13/20 13/22
14/21 17/1 18/15 19/12 19/18 19/21
20/21
mean [2]  14/17 18/24
mechanical [1]  1/24

meet [1]  12/17
Merck [12]  2/17 3/4 6/6 6/13 6/19 7/2
7/3 7/9 7/19 7/23 8/3 15/13
Merck's [3]  3/3 4/1 6/23
Michael [2]  1/17 2/8
million [2]  12/9 12/9
minute [1]  5/7
miss [1]  2/9
modify [2]  14/4 14/6
mooted [1]  20/17
most [2]  6/9 18/5
motion [7]  3/9 13/9 14/11 15/1 19/21
20/10 20/16
moves [1]  20/12
moving [1]  19/22
Mr. [5]  2/13 3/17 9/6 9/23 10/6
Mr. Barnett [2]  3/17 9/6
Mr. Beisner [1]  2/13
Mr. Davis [1]  10/6
Mr. Garmer's [1]  9/23
Ms. [7]  9/5 9/25 14/22 15/4 15/11 17/13
20/15
Ms. Natter [2]  9/5 9/25
Ms. Oldfather [2]  15/4 15/11
Ms. Oldfather's [3]  14/22 17/13 20/15
much [1]  16/4
my [15]  5/14 5/16 5/20 5/21 5/24 6/17
6/23 9/7 10/3 12/13 13/13 14/3 15/20
20/6 21/10

**N**

narrow [1]  3/23
Natter [5]  1/16 2/8 9/5 9/25 16/1
nature [1]  17/25
necessarily [1]  19/6
necessary [2]  19/7 19/19
need [4]  13/9 13/10 17/8 19/21
needs [1]  14/7
negotiated [1]  4/15
never [1]  6/6
New [4]  1/20 6/4 9/14 10/16
New Jersey [2]  6/4 10/16
New York [1]  9/14
next [3]  4/4 4/23 5/9
no [10]  1/5 2/10 6/20 7/10 7/11 13/18
13/25 17/18 18/6 18/20
nobody [1]  10/11
nonconfidential [1]  9/7
nonetheless [1]  6/8
not [40]
note [1]  8/22
now [6]  2/15 10/2 12/20 12/25 13/14
19/9
number [3]  3/13 4/2 10/16

**O**

objected [2]  4/1 6/6
objection [1]  10/8
objective [1]  10/8
occasions [1]  10/17
occurs [1]  11/10
Official [3]  1/19 21/7 21/15
Oftentimes [1]  13/2
Okay [4]  3/20 8/5 9/9 11/7
Oldfather [2]  15/4 15/11
Oldfather's [3]  14/22 17/13 20/15
on [35]
one [6]  3/15 6/21 7/6 10/10 12/2 20/22
only [4]  7/10 19/6 20/4 20/22
open [2]  8/15 8/19
operate [1]  17/23
opportunity [3]  13/12 13/20 18/15

or [33]
order [45]
orderly [1] 13/16
orders [9] 4/10 4/15 8/17 9/16 13/6 14/3 14/5 14/6 14/9
Orleans [1] 1/20
other [10] 3/4 4/5 4/12 7/10 10/23 13/5 16/10 17/16 18/1 20/2
others [1] 9/22
ought [10] 13/19 13/23 17/6 17/16 17/19 17/21 17/22 19/2 19/11 19/20
our [9] 4/14 4/18 4/24 8/18 11/5 11/21 15/10 15/12 16/19
out [7] 4/8 6/14 8/18 9/16 11/14 12/3 12/18
outset [1] 21/3
outside [1] 17/16
over [4] 4/16 8/18 16/21 17/18
oversaw [1] 2/16

**P**
paragraph [9] 5/5 6/3 6/11 6/13 6/19 8/23 16/6 16/10 17/1
paragraph 22 [1] 5/5
parenthetically [1] 7/17
part [7] 2/22 5/20 7/21 10/1 15/6 15/20 17/11
participant [1] 15/21
particular [1] 13/16
particularly [2] 4/11 17/17
parties [8] 5/8 7/7 10/17 11/16 11/23 12/16 12/24 13/11
parts [1] 7/21
party [8] 5/12 10/3 12/25 13/10 14/10 18/18 19/22 20/20
passing [1] 9/25
people [4] 3/3 3/4 11/18 17/16
period [3] 10/7 12/12 12/21
permitted [1] 15/15
person [1] 20/2
perspective [1] 11/8
persuasive [1] 19/11
phone [3] 14/23 14/24 18/6
place [1] 6/22
places [1] 3/13
plain [2] 4/14 4/18
plays [1] 11/24
plea [3] 7/19 7/20 8/3
point [13] 3/9 3/19 9/16 9/21 10/10 13/14 13/15 13/25 14/5 17/5 17/12 17/17 19/25
position [4] 10/4 15/12 15/22 20/15
possible [1] 8/17
postremand [1] 4/25
potentially [2] 4/12 8/1
Poydras [1] 1/20
precedent [2] 6/2 6/3
precipitated [1] 2/11
precisely [1] 16/17
predominantly [1] 13/4
preempts [1] 12/3
prepare [1] 5/8
prepared [1] 4/4
preparing [1] 4/23
present [1] 5/10
press [1] 11/19
presumably [1] 7/14
primary [1] 8/18
privilege [3] 17/25 18/1 20/1
privileged [1] 6/11
privileges [1] 13/7

probably [1] 13/6
problem [1] 20/12
procedures [1] 5/4
proceeding [4] 14/2 15/2 17/15 19/14
proceedings [4] 1/24 2/1 21/4 21/11
process [1] 12/12
produce [3] 10/13 12/5 12/11
produced [15] 1/25 2/17 4/3 4/5 4/10 5/3 5/23 9/18 10/7 11/4 12/18 13/2 13/6 18/7 18/10
PRODUCTS [1] 1/5
properly [1] 7/16
proprietary [2] 13/3 17/25
protective [32]
provides [2] 8/23 16/8
PSC [5] 4/13 4/22 9/11 9/13 9/15
PTO [11] 3/12 4/19 4/20 5/5 6/3 8/23 10/13 11/2 11/2 16/8 16/23
PTO 13 [7] 3/12 5/5 8/23 10/13 11/2 16/8 16/23
PTO 13-A [1] 4/19
PTO 13-B [2] 4/20 11/2
public [6] 6/10 11/14 15/7 15/8 18/1 20/5
public's [1] 15/9
publications [1] 10/24
publicly [1] 16/9
purpose [3] 3/8 3/12 12/18
purposes [2] 10/21 10/21
pursuant [2] 7/4 16/20
pursue [1] 15/9
put [1] 11/8
putting [1] 11/13

**Q**
question [1] 14/15
quick [1] 14/13
quite [2] 10/10 14/22

**R**
raised [2] 9/22 17/6
RE [1] 1/5
reaching [1] 4/8
really [1] 8/22 13/6 18/12
reason [4] 4/8 13/2 13/5 13/25 15/6 17/19 18/20
reasons [2] 13/5 15/9
receive [1] 8/15
received [2] 2/12 2/23 9/7
record [3] 7/21 10/17 21/11
recorded [1] 1/24
records [2] 8/16 8/19
referred [1] 16/25
refused [1] 7/24
regarding [2] 5/2 18/13
regards [1] 8/14
regular [2] 10/8 10/13
related [4] 5/23 10/23 10/23 18/7
relates [1] 6/17
release [6] 2/17 7/24 13/9 13/11 13/11 19/13
released [4] 7/13 19/11 19/12 20/5
releasing [1] 6/18
reliance [1] 5/20
relied [1] 5/19
reluctance [1] 12/10
rely [1] 5/15
remain [4] 7/22 11/5 13/23 19/24
remaining [1] 2/21
remand [1] 4/18
removed [7] 8/24 8/25 16/12 17/2 17/8 17/12 20/9
report [1] 10/8
Reporter [3] 1/19 21/8 21/15

reports [1] 10/13
represent [1] 8/8
representing [1] 8/8
request [2] 8/16 10/1
requested [2] 9/6 15/14
requests [1] 8/19
requirements [2] 10/12 12/14
requires [1] 5/4
resolve [1] 10/19
resolving [1] 18/6
respect [3] 5/25 9/23 10/5
respond [1] 8/16
responding [1] 20/2
response [1] 9/23
responsibilities [1] 3/5
result [1] 11/20
retained [1] 18/12
retaining [2] 4/25 6/8
retains [1] 4/16
review [1] 7/10
right [4] 11/23 15/8 20/18 20/25
role [1] 11/25
Room [1] 1/20
rule [3] 13/24 14/1 14/14 15/15 18/25 19/11
Rule 23 [1] 19/11
ruling [4] 15/16 19/2 19/6 19/6
run [1] 11/18

**S**
said [2] 14/16 18/23
same [5] 5/25 11/14 11/22 15/22 20/16
sanctioned [1] 6/18
sanctions [2] 6/16 7/13
say [9] 3/12 8/4 8/8 13/18 13/18 13/21 15/21 18/13 20/1
say-so [1] 15/21
says [6] 6/19 7/6 7/9 7/11 16/13 16/24
schedule [1] 14/13
seal [2] 13/4 13/8
Sean [4] 1/17 2/8 14/24 14/25
second [1] 5/1
Section [1] 1/6
securities [1] 4/6
see [1] 14/2
Seeger [1] 9/13
seeking [1] 10/22
seems [3] 5/24 12/3 13/19
sense [1] 12/4
separate [3] 5/1 6/25 7/1
set [4] 4/21 5/16 5/25 6/25
settled [2] 2/15 15/6
Seventh [6] 11/12 11/13 11/22 12/2 12/3 12/14
shall [3] 8/25 16/14 17/4
she [1] 17/14
she's [3] 14/22 17/14 20/16
Shepherd [7] 4/4 5/9 9/24 15/12 15/15 16/19 18/25
should [15] 6/19 13/17 15/15 15/16 17/11 17/14 18/1 18/16 18/20 18/20 19/12 19/22 19/23 20/5 20/10
shouldn't [1] 18/21
show [1] 13/1
showing [2] 18/19 19/21
side [1] 13/12
sides [2] 12/5 13/19
signed [4] 7/2 7/3 7/3 7/19
significant [1] 11/17
simply [2] 10/13 13/21
since [1] 6/17
single [1] 7/8
situation [1] 16/17

**S**

sixed [1]  17/21
Sixth [1]  11/12
smaller [1]  5/22
so [28]
some [21]  2/20 4/3 5/21 6/25 10/10 11/7
12/5 13/1 13/2 13/3 13/5 13/20 14/12
15/10 15/20 17/18 17/24 17/25 18/1
19/19 20/17
somebody [1]  14/20
somehow [1]  7/1
someone [1]  6/15
something [3]  9/25 11/13 13/15
sought [3]  7/13 15/3 15/11
speak [1]  17/21
specifically [4]  5/23 7/6 11/2 20/19
speech [1]  11/19
speedy [1]  12/14
sphere [1]  11/14
stamped [1]  6/7
stand [1]  8/20
standing [12]  7/7 7/9 7/12 7/12 10/3
15/3 15/5 20/13 20/15 20/17 20/17
20/20
standpoint [2]  12/16 14/19 17/13 20/11
started [1]  5/18
state [10]  2/16 6/4 6/5 7/3 7/11 8/15
15/1 19/4 19/10 20/20
state's [2]  6/16 20/19
statements [1]  6/23
states [4]  1/1 1/11 6/13 21/8
status [1]  1/10 6/8 9/7 10/9
stenography [1]  1/24
still [3]  3/6 7/18 20/7
stone [1]  14/10
Street [1]  1/20
subject [6]  6/15 6/16 7/1 7/10 8/19 18/7
subsequent [1]  5/7
subset [1]  5/22
such [4]  6/20 11/2 12/10 16/14
suggest [1]  17/2
suggestion [1]  10/12
suit [1]  15/5
summarizing [1]  3/24
summary [1]  20/6
sure [4]  4/24 8/10 8/16 14/22

**T**

take [2]  10/1 19/9
taking [1]  10/4
talk [1]  14/20
talking [1]  16/21
tell [3]  10/9 11/8 18/15
terms [4]  4/9 4/24 8/20 10/15 10/25
testifying [1]  2/14
than [1]  16/10
thank [4]  8/5 16/4 21/2 21/3
that [159]
that's [15]  4/18 6/2 8/4 8/18 13/8 13/16
14/2 14/3 14/5 17/5 17/17 17/22 19/6
20/18 20/21
their [2]  3/11 15/17
them [27]
then [23]
there [20]  4/5 5/22 6/2 6/20 7/17 7/20
7/25 8/1 9/1 9/17 9/25 10/7 10/16 10/20
13/23 13/24 17/9 17/18 17/24 20/12
there's [10]  3/23 11/10 11/16 12/10 13/1
13/5 13/25 15/7 16/10 18/20
thereabouts [1]  2/22
these [11]  3/13 8/14 10/5 10/22 11/24
12/15 12/21 12/25 13/16 16/5 19/19

they [22]
King [unk]
things [4]  8/9 8/12 17/20 17/21
think [16]  5/6 7/2 7/6 9/5 13/17 17/5
17/6 17/8 17/20 18/8 18/11 19/2 19/5
19/12 19/15 19/18
third [3]  7/7 10/3 20/20
third-party [2]  10/3 20/20
this [35]
those [28]
thought [2]  14/20 16/25
three [1]  12/9
through [3]  4/12 10/19 16/10
throughout [1]  9/17
throw [1]  12/2
time [6]  10/7 11/14 11/22 12/12 12/20
17/18
times [1]  11/24
today [1]  14/8
together [1]  12/16
tomorrow [1]  14/8
Toni [5]  1/19 1/21 21/7 21/14 21/14
too [2]  5/11 15/20
took [2]  7/20 8/3
torn [1]  11/13
transcript [3]  1/24 20/25 21/10
trial [6]  11/24 11/25 12/6 12/7 12/11
12/14
tried [1]  10/18
true [1]  21/9
try [1]  19/13
trying [1]  7/14
tug [1]  11/11 11/16
turn [1]  3/18
Tusa [5]  1/19 1/21 21/7 21/14 21/14
two [1]  12/9

**U**

U.S [2]  16/13 17/3
U.S. [1]  7/24
U.S. attorney [1]  7/24
ultimate [1]  5/2
ultimately [1]  5/5
under [26]
understand [2]  2/19 2/25
understanding [5]  5/15 5/16 10/3 16/19
21/10
understood [1]  10/2
UNITED [3]  1/1 1/11 21/8
Until [1]  14/2
up [4]  4/21 5/17 8/23 13/15
updated [1]  14/7
upon [1]  15/19
urge [1]  19/16
us [2]  5/11 10/18
use [2]  10/15 10/20
used [6]  6/5 6/6 6/9 6/25 11/3 12/7 19/1
19/3
utilize [1]  2/25

**V**

various [4]  3/3 4/10 9/12 13/7
very [4]  16/4 19/11 20/2 20/3
view [6]  4/14 4/18 6/17 11/5 12/13 18/2
views [5]  3/11 4/24 5/11 5/13 6/23
violate [1]  8/17
violation [1]  16/11
VIOXX [10]  1/5 4/2 4/6 4/6 4/6 4/21 5/2
5/17 16/13 17/3
vital [1]  11/24
vitality [1]  3/12

**W**

waiting [2]  2/4 21/2

want [7]  4/24 8/6 8/11 8/16 8/20 13/17
wants [2]  3/2 13/11
war [2]  11/11 11/16
was [25]
wasn't [1]  10/11
way [6]  11/8 12/5 13/8 13/17 14/2 17/22
ways [1]  7/5
we [38]
we're [1]  4/3
Wednesday [4]  4/5 5/9 7/7 20/21
week [1]  4/23
weigh [1]  19/8
Weiss [1]  9/13
well [4]  4/20 8/19 9/13 15/19
went [1]  6/10
were [31]
weren't [1]  18/9
what [15]  6/22 7/10 7/14 8/4 12/5 12/10
14/7 14/15 16/21 18/8 18/23 19/23
19/25 20/4 20/14
when [9]  8/16 9/24 10/9 11/10 12/1 12/8
17/2 17/6 17/18
where [6]  8/20 10/7 10/17 13/14 13/15
20/1
whether [11]  6/8 6/24 7/8 7/15 15/16
15/19 17/15 20/4 20/13 20/14 20/21
which [20]  2/12 2/15 3/6 3/6 3/13 4/19
4/20 7/13 7/21 10/22 12/13 13/2 13/10
13/21 13/22 15/13 16/7 17/8 17/10
19/22
who [9]  2/14 6/15 10/17 12/25 14/21
15/25 18/11 20/22 21/1
whoever [1]  13/11
whole [1]  12/13
why [4]  16/16 18/15 18/19 19/23
will [14]  3/15 3/18 9/15 9/16 12/7 13/24
14/1 14/11 14/12 14/13 14/14 17/9
19/21 20/21
William [2]  1/15 2/7
wish [1]  19/13
wishes [6]  2/25 12/25 14/10 17/6 20/8
21/1
withdrawn [4]  16/12 16/14 17/4 17/8
without [2]  11/18 12/8
woodwork [1]  12/22
words [1]  7/10
work [2]  10/19 12/18
would [18]  3/10 5/7 6/17 6/23 7/12 7/15
7/17 9/8 12/17 15/22 15/22 16/6 16/19
17/8 18/9 19/13 19/15 19/16
wouldn't [1]  9/1
written [2]  7/2 14/10
wrong [1]  10/14
wrote [2]  3/16 20/19

**Y**

year [1]  2/13
yes [5]  3/17 9/4 13/18 14/25 15/24
yesterday [1]  14/7
York [1]  9/14
you [30]
you're [3]  5/12 14/24 18/24
your [34]
Your Honor [10]  2/10 3/17 3/21 8/7 9/10
9/19 14/25 15/24 18/3 18/22
Your Honor's [1]  9/16