UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
-------------------------------------------------------------x
In re: VIOXX PRODUCTS LIABILITY
LITIGATION                                                    MDL NO. 1657 (EEF)

THIS DOCUMENT RELATES TO                                      SECTION L

*Jo Levitt v. Merck Sharp & Dohme Corp.*,
2:06-cv-09757-EEF-DEK

                                                     AFFIRMATION OF ALEXANDER
                                                     A. REINERT
-------------------------------------------------------------x

      **ALEXANDER A REINERT**, an attorney admitted *pro hac vice* for the practice of law in this Court, affirms under penalty of perjury as follows:

      1. I represent Dr. David S. Egilman in this Multi-District Litigation, and as such am fully familiar with the facts and circumstances of this case. I make this affirmation in support of Plaintiff's Memorandum of Law in Opposition to Defendant Merck Sharp & Dohme Corporation's ("Merck") Motion to Maintain Confidential Document Designations Under Pretrial Order 13, submitted March 28, 2016 ("March 28 Motion"), and Merck's Motion to Maintain Confidential Document Designations Under Pretrial Order 13 and for a Protective Order Barring Similar Requests, submitted May 10, 2016 ("May 10 Motion").

      2. Merck's May 10 Motion makes numerous false and misleading statements about Dr. Egilman in relation to documents protected by Pretrial Order No. 13 ("PTO 13").

      3. Specifically, Merck claims (1) that it is "undisputed" that Dr. Egilman has failed to adhere to PTO 13, (2) that Dr. Egilman "has acknowledged" that he disseminated confidential documents in his publications and to *The Wall Street Journal*, and (3) that the Stipulation entered

1

between Dr. Egilman and Merck was a product of "his prior improper conduct." (May 10 Motion at 6, 13). None of these contentions is supported by any facts.

    4. As to the claim that it is "undisputed" that Dr. Egilman has failed to adhere to PTO 13, Merck has never provided any such facts. Indeed, this Court refused to enter a sanctions order at Merck's request because Merk had not demonstrated that Dr. Egilman violated PTO 13.

    5. The reason is simple: Merck has never told this Court or any other court what PTO 13-protected documents were disclosed by Dr. Egilman. It did not do so by its initial motion for sanctions filed in this Court on April 4, 2014 or in any subsequent proceedings.

    6. Notably, when Dr. Egilman and Merck began discovery relating to Merck's claim that Dr. Egilman had violated PTO 13 by disclosing the contents of specific information, the undersigned served a notice for a Rule 30(b)(6) deposition in which Dr. Egilman sought to depose a representative from Merck who could identify the documents allegedly disclosed by Dr. Egilman. *See* Notice of Deposition, attached hereto as Exhibit A (July 3, 2014). Because Merck bore the burden of establishing Dr. Egilman's noncompliance with PTO 13, and because Merck had stated to this Court that it filed its motion "based on what appeared in the [*Wall Street Journal*] article," (Merck's Combined Reply in Support of Its Motion for Sanctions Against Dr. David Egilman (June 4, 2014), at 3 (Rec. Doc. 64970)), the undersigned assumed that Merck would be able to supply such a witness.

    7. Merck's response to Dr. Egilman's Notice of Deposition was telling. In a letter dated July 9, 2014, Merck conceded that Dr. Egilman sought information relevant to its sanctions motion, but claimed that it could not provide a witness because no one at Merck had any knowledge of what documents were disclosed by Dr. Egilman because *The Wall Street Journal*

2

article "does not identify the source documents." *See* Letter from John Beisner to Ann B. Oldfather and Alexander A. Reinert dated July 9, 2014, attached hereto as Exhibit B.

8. Of course, this admission by Merck is flatly inconsistent with the position it has taken before this Court and markedly consistent with Dr. Egilman's position throughout this litigation: his statements to *The Wall Street Journal* were too general to be considered as making reference to any confidential document and did not constitute a disclosure of any such document.

9. As further evidence undermining Merck's allegations that *The Wall Street Journal* comments broke new ground, Dr. Egilman's expert report, filed by the parties, not Dr. Egilman, in the MDL action and available on PACER, contains numerous assertions that relate to Merck's fraud, misrepresentation, and failure to disclose relevant health effects. A true and correct copy of Dr. Egilman's report is attached hereto as Exhibit C; a true and correct copy of Dr. Egilman's amendment to his report is attached hereto as Exhibit D.

10. Attached as Exhibit E are four tables. The first cross-references the documents relied upon by Dr. Egilman for his expert opinions with the MDL documents that Merck agreed two years ago were not confidential under this Court's protective order. The next three tables list detailed statements in Dr. Egilman's expert report regarding fraud, misrepresentation, and VIOXX health effects and which also are fully supported by non-confidential documents. This comparison shows that Dr. Egilman's specific statements regarding fraud, misrepresentation, and the cover-up of health effects in his expert report are supported by documents conceded to be non-confidential by Merck, even as they are far more detailed than the more general comments contained in *The Wall Street Journal* article.

11. Rather than indicate a disregard for PTO 13, all of Dr. Egilman's acts have been consistent with an abiding goal of complying with PTO 13.

12. For example, Dr. Egilman consistently requested assistance from Merck in clarifying which PTO 13 documents remained confidential and which had been de-designated, but despite repeated requests Merck failed to provide any confidentiality log to counsel for Dr. Egilman. (*See* Letter from Alexander A Reinert to The Honorable Eldon E. Fallon dated April 10, 2014, at 3-4, attached hereto as Exhibit F).

13. Dr. Egilman has regularly sought permission, through Merck's counsel, to discuss in published articles or other statements any materials that Merck had designated as confidential. Attached as Exhibit G are examples of such correspondence with Merck's counsel. These show, for example, that on April 9, 2007, Merck's counsel Theodore Mayer emailed Dr. Egilman to respond to his inquiries regarding the confidentiality of certain internal Merck documents. And on April 3, 2012, Merck counsel R.J. Cinquegrana provided another response to Dr. Egilman's questions regarding the confidential status of certain documents. Dr. Egilman also solicited comments from Merck on drafts of his articles, both for their substance and to ensure that Dr. Egilman did not reveal any confidential information. Included in Exhibit F is a March 23, 2007, letter from Mr. Mayer to Dr. Egilman providing Merck's comments on a draft article Dr. Egilman had sent to Mr. Mayer. The undersigned recently made a similar request to Mr. John Beisner on April 28, 2016, included in Exhibit F, but no response has been forthcoming.

14. The letter to Judge Shepherd which Merck claims shows that it is "undisputed" that Dr. Egilman has violated PTO 13 in fact demonstrates the opposite. In that letter, Dr. Egilman states that he has published papers based on documents that once were designated confidential

4

but which had their confidentiality designation removed. He never concedes that he disclosed confidential documents and indeed his letter was an attempt to follow the procedures in Kentucky governing the de-designation of confidential documents.

15. Nor is the Stipulation agreed to between Dr. Egilman and Merck any evidence that Dr. Egilman violated PTO 13. In that Stipulation, Merck acknowledges that Dr. Egilman denies any wrongdoing with respect to the alleged violation of PTO 13. (*See* Stipulation Concerning Enforcement of PTO 13 and in Furtherance of This Court's June 6, 2014 Preliminary Injunction of David S. Egilman, M.D., dated Sep. 12, 2014, at 3 (Rec. Doc. 65025)).

16. Accordingly, it is simply incorrect to state that the restrictions on Dr. Egilman's access to PTO 13 documents are a product of his "prior improper" conduct. (May 10 Motion at 13). The restrictions are a product of the Stipulation between Merck and Dr. Egilman, which was the outcome of an arm's length negotiation between Merck and Dr. Egilman, but not of any improper conduct by Dr. Egilman.

**WHEREFORE**, affirmant respectfully requests that this Court deny Merck's March 28 and May 10 motions.

Dated: New York, New York
       May 27, 2016

                                    s:/Alexander A. Reinert
                                    ALEXANDER A REINERT