# EXHIBIT F

ALEXANDER A. REINERT
ATTORNEY AT LAW
c/o Benjamin N. Cardozo School of Law*
55 Fifth Avenue, Room 938
New York, New York 10003

(212) 790-0403
Fax (212) 790-0805
areinert@yu.edu

April 10, 2014

**By electronic mail**

The Honorable Eldon E. Fallon
United States District Court, Eastern District of Louisiana
500 Poydras Street, Room C-456
New Orleans, Louisiana 70130

RE:   Vioxx Confidential Documents – Dr. David Egilman

Dear Judge Fallon:

I represent Dr. David Egilman in the above-referenced matter and write in reply to Merck Sharp & Dohme Corp.'s ("Merck") April 9, 2014, letter opposing two requests: (1) that the April 23 hearing be adjourned to the next-scheduled status conference set for June 6, and (2) that the Court order Merck to produce an updated confidentiality log to the undersigned at least two weeks prior to the deadline for filing Dr. Egilman's opposition to the pending Motion for Sanctions. In sum, Merck's opposition to the adjournment is based on a factually misleading rendition of Dr. Egilman's conduct in this litigation and its opposition to providing a confidentiality log is based on a Kafkaesque notion of the procedural requirements that it must satisfy here.

Merck's opposition to the adjournment appears based on its belief that Dr. Egilman will disclose confidential information to the public in the interim. Contrary to Merck's representation, however, Dr. Egilman has not leaked any confidential material to anyone. As I explain below, he has in fact provided even less detail about the content of documents Merck claims to be confidential than the parties in this case have provided through their public filings. Indeed, his actions in this proceeding and in the Kentucky state court litigation are indicative of his caution in releasing to the public any of this material, including material that he believes is unprotected by PTO 13. Dr. Egilman seeks to de-designate allegedly confidential documents in Kentucky state court through traditional legal means: by challenging their designation through the process contemplated by the protective order in effect in the state litigation. In the Kentucky litigation, Dr. Egilman first approached Merck to attempt to determine which documents Merck maintains to be confidential, but Merck refused to discuss the matter with him. Pursuant to the protective order in place, he subsequently requested judicial intervention in Kentucky state court. In this Court, Dr. Egilman has appeared and argued that certain documents and testimony are not protected by PTO 13, but he has taken absolutely no steps to make public any of this material. Ironically, Merck asks this Court to hold against Dr. Egilman the fact that he has made arguments here and in Kentucky about the extent to which Merck's documents remain protected

* This matter is not under the auspices of the Benjamin N. Cardozo School of Law

Hon. Eldon E. Fallon
April 10, 2014
Page 2 of 5

under PTO 13. As both proceedings have progressed, however, Dr. Egilman has steadfastly abided by this Court's and Judge Shepherd's rulings regarding the confidential status of Merck's documents.

Moreover, Merck's arguments about urgency are difficult to square with the parties' conduct in this litigation. According to Merck, Dr. Egilman's statements to *The Wall Street Journal* are sanctionable because they reveal his opinion that unspecified documents at issue in the Kentucky litigation demonstrate fraud, misrepresentation, and undisclosed health effects. For several years now, however, information available in the public record provides even greater detail about the content of documents that Merck claims are confidential than was provided by Dr. Egilman to *The Wall Street Journal*. Some examples, all of which rely on and summarize documents that Merck has designated confidential and Dr. Egilman has asked to be de-designated, include:

- In 2008, a study was published based on documents and data that Merck claims to be confidential (and are the subject of Dr. Egilman's request in Kentucky) which concluded that Merck had failed to adequately inform the public and the FDA about mortality results in its own internal studies. *See* Bruce M. Psaty and Richard A. Kronmal, *Reporting Mortality Findings in Trials of Rofecoxib for Alzheimer Disease or Cognitive Impairment: A Case Study Based on Documents From Rofecoxib Litigation*, 299 JAMA 1813, 1816 (2008). Contemporaneous press accounts describe the study as providing evidence of fraud and deception by Merck. *See*, *e.g.*, *Maker of Vioxx is Accused of Deception*, WASH. POST (April 16, 2008), *available at* http://www.washingtonpost.com/wp-dyn/content/article/2008/04/15/AR2008041502086.html.

- In April 2012, the State of Utah filed an amended complaint against Merck, based in part on documents that Merck claims to be confidential, alleging that Merck failed adequately to inform the public about the dangers of Vioxx, made false statements about its efficacy and safety, and covered up information about health hazards associated with the drug. *See* Amended Complaint in State of Utah v. Merck, et al., MDL No. 1657 (filed April 17, 2012). Similar allegations, also based on documents that Merck purports to be confidential, were made by the State of Kentucky. *See* Complaint in Kentucky v. Merck & Co., Inc., No. 09-CI-1671 (filed Sept. 28, 2009).

- On July 25, 2013, Dr. David Madigan's expert report, based in large part on documents that Merck maintains to be confidential, was made available to the public, giving anyone with a PACER account access to Dr. Madigan's conclusions that Merck made misleading statements about Vioxx's health effects, failed to disclose highly relevant evidence of cardiovascular health risks, and obscured the public's understanding of the true risk posed by Vioxx. *See* Expert Report by Dr. David Madigan ¶¶ 251-57, filed in 2:05-md-01657, Doc. No. 64508-1.

Merck's contention of urgency becomes even more incredible when one considers the statements by Dr. Egilman that the parties, including Merck, have placed into the public record. In particular, Dr. Egilman's original expert report, placed in publicly accessible court files on July 25, 2013, contained the following opinions: (1) that Merck was aware of data "linking increased

Hon. Eldon E. Fallon
April 10, 2014
<u>Page 3 of 5</u>

incidents of cardiovascular events with VIOXX usage" (Expert Report by Dr. David Egilman ¶20, filed in 2:05-md-01657, Doc. No. 64508-7); and (2) that Merck "misrepresented, concealed, suppressed, and omitted material facts regarding VIOXX's risks" of causing many serious health effects (*Id.* ¶24). Dr. Egilman's corrections to his original expert report provide additional opinions regarding Merck's attempts to mislead the public regarding the actual health effects of VIOXX. *See* Plaintiff's Notice of Correction to Expert Report, at 6-8 (Nov. 11, 2013), filed in 2:05-md-01657, Doc. No. 64683. That these opinions were based at least in part, if not entirely, on documents that Merck designated confidential, is confirmed by even a casual perusal of Dr. Egilman's reports. Finally, Merck itself has introduced into the public record Dr. Egilman's statements describing the contents of the documents at issue in the Kentucky litigation, statements that are in sum and substance identical to Dr. Egilman's comments to *The Wall Street Journal*. On December 10, 2013, Merck filed a letter in Kentucky state court, attaching as an exhibit Dr. Egilman's private letter to Merck in which he explained that he was requesting that certain documents be de-designated as confidential because they show Merck's fraud, misrepresentation, and because de-designation of the documents will further the public's understanding of Cox-2 drugs in general. *See* October 29, 2013 Letter from Dr. David Egilman to Susan Pope, attached hereto as Exhibit A.

The upshot of all of these publicly available documents, none of which was entered into the public record by Dr. Egilman, is that anyone with access to a computer or court files could have accessed far more detailed descriptions of documents that Merck asserts to be confidential than was revealed by *The Wall Street Journal* article. Indeed, *The Wall Street Journal* could have quoted Dr. Egilman's expert opinions themselves and revealed much greater detail than was disclosed by the comparably general statements made by Dr. Egilman. Nothing would prevent any journalist from doing the same regardless of when the hearing on Merck's sanctions motion is heard. It is this fundamental truth which renders Merck's requested sanctions barred by both PTO 13 and the First Amendment, and also makes its claim of urgency implausible.

Finally, although nothing Dr. Egilman said to *The Wall Street Journal* revealed any confidential information, to assuage any concerns about the impact of a delay to June 6, I represent to the Court that Dr. Egilman will make no public comments of any kind regarding the documents and will await this Court's resolution of this matter. Of course, should the Court determine that June 6 is too long to wait, I am happy to make myself available within a reasonable time period. My request to adjourn the motion to June 6 was based on many factors, including (1) the hope that the Court and opposing counsel would as a courtesy take at face value that arranging to appear on April 23 would pose a difficulty for me; (2) being informed by counsel involved to date in the MDL that the Court had granted similar requests in the past, (3) the desire to adjourn the hearing to a date that would minimize disruptions for other counsel who already had planned to be available on June 6, and (4) the intuition that it might require some period of time for Merck to provide a confidentiality log in support of its request for sanctions. Should this Court determine that June 6 poses too long of a delay, I also would be available on Friday May 2 or Tuesday May 6. Should even those dates pose too long of a delay, I will appear on April 23.

Merck also finds Dr. Egilman's request for a confidentiality log to be "preposterous" and "inappropriate," arguing that requiring such a step "would flip the process contemplated by the Court on its head." *See* Letter to Court from John H. Beisner at 3, 5 (April 9, 2014). Instead,

according to Merck, Dr. Egilman should proceed through counsel to seek to understand which documents remain confidential. *Id.* at 4. Putting aside that this is precisely what Dr. Egilman attempted to do in Kentucky, only to be met with Merck's refusal to discuss the status of any documents, it is Merck which seeks to turn this process on its head. For Merck has asked this Court to sanction Dr. Egilman, without providing any evidence that Dr. Egilman revealed any information from any document purported to be covered by PTO 13.[1] Accordingly, Merck has the burden of proof, by clear and convincing evidence, of establishing that Dr. Egilman violated PTO 13. *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir.1996). It is mystifying that Merck believes it can do so without providing a log of the documents it purports to be confidential as part of establishing Dr. Egilman's failure to comply with PTO 13.

Relatedly, Merck continues to maintain that it has complied with PTO 13 despite its failure to specify which portions of Dr. Egilman's deposition are to be considered confidential. From Merck's perspective, it has designated the entire deposition and its exhibits confidential. In defense of its failure to send a follow-up letter as required by PTO 13, it has shifted from its prior explanations and now maintains that Paragraph 8(b) does not actually require such a letter when Merck declares that the entire deposition is confidential even before it has asked a single question. Merck offers no explanation for how it could maintain in good faith that the entirety of Dr. Egilman's deposition is confidential, or how it could rely on this blanket assertion of confidentiality to make confidential documents that had never been designated confidential before. Thus, Dr. Egilman violates PTO 13 and is subject to a sanctions motion when he repeats his name, shares his CV, or discusses the published medical literature that is included in the deposition exhibits, among other things. If this position seems unreasonable, at least Merck is being consistent, given that its pending sanctions motion seeks to have Dr. Egilman reprimanded for disclosing less to *The Wall Street Journal* than the parties have disclosed to the public through their Court filings. As Merck would have it, Dr. Egilman is the only person involved in this case who cannot repeat statements that already are in the public record.

Finally, I will not presume to know what the Court meant when it described the log as "necessary," or stated that it would "need" a log to determine which documents should remain under protective order. Tr. of Feb. 28, 2014 Hearing at 19. I will note, however, that Merck's claim that the Court was referring to a movant seeking to de-designate documents appears inconsistent with the following language: "I will need a log showing *which documents should continue, according to the moving party*, under protective order and what they are and why they should remain under the protective order." *Id.* (emphasis added). This language appears to contemplate that the party making use of the log would be a party seeking to justify to the Court why a document should be protected by PTO 13 (*i.e.*, Merck). Merck has failed to even attempt

---

[1] Merck's statement that a log is unnecessary because Dr. Egilman described the Kentucky documents as "confidential" is without any merit. First, nowhere in *The Wall Street Journal* article does Dr. Egilman state that the documents are "confidential" or, more importantly, confidential under PTO 13. The premise of Dr. Egilman's challenge in Kentucky is that Merck has treated as confidential numerous documents that have either lost their confidential status or were never validly designated confidential. Although these are documents that few people have seen, that does not make them confidential under PTO 13. Moreover, his challenge involves numerous categories of documents, only some portion of which Merck claims to be confidential under PTO 13. Merck has simply provided no evidence that Dr. Egilman's statements refer to any documents covered by PTO 13.

Hon. Eldon E. Fallon
April 10, 2014
Page 5 of 5

to shoulder this burden in this proceeding, either with respect to Dr. Egilman's deposition and exhibits or with respect to its request for sanctions

For the foregoing reasons, I respectfully request that the Court adjourn the hearing on Merck's motion for sanctions to June 6, 2014 or another reasonable date, and order Merck to produce an updated confidentiality log to the undersigned at least two weeks prior to the deadline for filing Dr. Egilman's response.

Respectfully submitted,

Alexander A. Reinert (SDNY Bar No. AR 1740)
Counsel for Dr. David Egilman

cc:   John H. Beisner (by e-mail)
      Dawn Barrios (by e-mail)
      Leonard Davis (by e-mail)
      William R. Garmer (by e-mail)
      Russ Herman (by e-mail)
      Ann B. Oldfather (by e-mail)
      Dorothy H. Wimberly (by e-mail)
      Phillip Wittman (by e-mail)

# EXHIBIT A (AS FILED)



"Statistics are human beings with the tears wiped away."
- Irving J. Selikoff, M.D.

David Egilman, M.D., M.P.H.
8 North Main Street, Suite 404
Attleboro, Massachusetts 02703
Telephone 508-226-5091 Fax 425-699-7033

October 29, 2013

Susan J. Pope
Frost Brown Todd LLC
250 West Main Street, Suite 2800
Lexington, K Y 40507-1749

Dear Ms. Pope:

I am writing to object to the propriety of the confidentiality of the following documents under paragraph 22 of the Kentucky confidentiality order. In addition to my status as an expert witness I am the editor in chief of the International Journal of Occupational and Environmental Health. I thus also objecting as a member of the press since I intend to publish articles based on these documents.  Some of these documents are evidence that Merck provided fraudulent information in testimony to the Federal District Judge in Boston when it pled guilty plea for criminal conduct related to off label marketing of Vioxx. Finally some of these documents indicate that Merck manipulated data in its drug trials. I intend to share these documents with Merck's corporate integrity officer, the FDA and the FBI. More importantly the study data and Merck's analysis of its own data which has remained secret or which Merck misrepresented in published medical literature (Advantage and 078 letters and publications and others) have important public health implications that relate to Cox-2 health effects in general.  These results are relevant to the assessment of risks associated with Cox-2 drugs that remain on the market.  I agree to redact or receive redactions of the names or identification of any individual who is not a Merck employee or contractor.  I am not asking for any marketing contracts or related documents between Merck and hospitals or third party payers.

As you know I have already co-authored peer reviewed papers on Vioxx which have appeared in some of the most important medical journals in the world.

Ross JS, Madigan D, Konstam MA, Egilman DS, Krumholz HM. Persistence of Cardiovascular risk after rofecoxib discontinuation. Arch Intern Med. 2010 Dec 13;170(22):2035-6. doi: 10.1001/archinternmed.2010.461. Erratum in: Arch Intern Med. 2011 Feb 28;171(4):305. PubMed PMID: 21149763; PubMed Central PMCID: PMC3024905.

2: Ross JS, Madigan D, Hill KP, Egilman DS, Wang Y, Krumholz HM. Pooled analysis of rofecoxib placebo-controlled clinical trial data: lessons for postmarket pharmaceutical safety surveillance. Arch Intern Med. 2009 Nov 23;169(21):1976-85. doi: 10.1001/archinternmed.2009.394. PubMed PMID: 19933959; PubMed Central PMCID: PMC2830805.

3: Hill KP, Ross JS, Egilman DS, Krumholz HM. The ADVANTAGE seeding trial: a review of internal documents. Ann Intern Med. 2008 Aug 19;149(4):251-8. Review. PubMed PMID: 18711155.

4: Ross JS, Hill KP, Egilman DS, Krumholz HM. Guest authorship and ghostwriting in publications related to rofecoxib: a case study of industry documents from rofecoxib litigation. JAMA. 2008 Apr 16;299(15):1800-12. doi: 10.1001/jama.299.15.1800. PubMed PMID: 18413874.

5: Krumholz HM, Ross JS, Presler AH, Egilman DS. What have we learnt from Vioxx? BMJ. 2007 Jan 20;334(7585):120-3. Review. PubMed PMID: 17235089; PubMed Central PMCID: PMC1779871.

I request that Merck remove the confidentially assertion for all documents which were marked as exhibits in Dr. Madigan and my Kentucky Vioxx related depositions. I ask for the same with respect to all documents that have been marked in Dr. Madigan's securities litigation report and deposition. In addition I specifically request that the following documents be de-privileged. Some of these have been admitted as exhibits in Vioxx litigation.

 MRK-PLBAJ0000001-MRK-PLBAJ0000076
 MRK-ACD0079561-MRK-ACD0079624624
 MRK-01420115559-MRK-01420115603
 MRK-AJA0092876-  MRK-AJA0092898
 MRK-01420094346-MRK-01420097186
 MRK-AD10009109-MRK-ADI0009117
 MRK-ABW0004799
 MRK-NJ0208942-MRK-NJ0208943
 MRK-NJ0209955-MRK-NJ0209973
 MRK-ACR0009287-
 MRK-ABH00I5578
 MRK-ACR0009151-MRK-ACR0009152
 MRK-ACR0014514
 MRK-ACD0079561-MRK-ACD0079624
 MRK-01420115573

MRK-AFV0210573-MRK-AFV0210577
MRK-PLBAJ0000021
MRK-PLBAJ0000043
MRK-PLBAJ0000047
MRK-GUE0008582-MRK-GUE0008583
MRK-ACF0000845-MRK-ACF0000924
MRK-GUE0017779-MRK-GUE0017812
MRK-NJ0089972-MRK-NJ0090021
MRK·ABS0212961-MRK·ABS0212985
Mrk-ACD0118967-acd0119115
MRK-N0520018536-MRK-N0520018571
MRK-AFT0005926-AFT005927

| Bates Range |
| --- |
| MRK-AAC0068928 |
| MRK-AAO0000119 |
| MRK-AAU0000001 |
| MRK-ABP0016640 |
| MRK-ABP0016648 |
| MRK-ABW0005623 |
| MRK-ABW0018150 |
| MRK-ABY0079740 |
| MRK-ACD0083803 |
| MRK-ACD0118967 |
| MRK-AFO0189484 |
| MRK-AFT0005928 |
| MRK-AFV0056036 |
| MRK-AFV0210573 |
| MRK-AHD0001996 |
| MRK-AJU0002625 |
| MRK-AKC0002623 |
| MRK-I2220003389 |
| MRK-I2220003997 |
| MRK-I8940072038 |
| MRK-JAH0000382 |
| MRK-NJ0120240 |

| MRK-NJ0152895 |
| --- |
| MRK-NJ0363443 |
| MRK-PLBAH0000001 |
| MRK-PLBAH0000156 |
| MRK-PLBAH0000433 |
| MRK-PLBAH0001295 |

| |
|---|
| MRK-PLBAH0001839 |
| MRK-PLBAH0003170 |
| MRK-PLBAH0003634 |
| MRK-PLBAH0004223 |
| MRK-PLBAH0005545 |
| MRK-PLBAH0006743 |
| MRK-PLBAH0009148 |
| MRK-PLBAH0010140 |
| MRK-PLBAH0012702 |
| MRK-PLBAH0014032 |
| MRK-PLBAH0014536 |
| MRK-PLBAH0014929 |
| MRK-PLBAH0015207 |
| MRK-PLBAH0015806 |
| MRK-PLBAH0017265 |
| MRK-PLBAH0019614 |
| MRK-PLBAH0020104 |
| MRK-PLBAH0024589 |
| MRK-PLBAH0024854 |
| MRK-PLBAH0024956 |
| MRK-PLBAH0025650 |
| MRK-PLBAH0026207 |
| MRK-PLBAH0027776 |
| MRK-PLBAH0028455 |
| MRK-PLBAH0029211 |
| MRK-PLBAI0004603 |
| MRK-PLBAI0004676 |
| MRK-PLBAI0004684 |
| MRK-PLBAI0007005 |
| MRK-PLBAI0008536 |
| MRK-PLBAU0008484 |
| MRK-PLBAU0013815 |

Sincerely yours,

*[signature: David Egilman MD, MPH]*

David S. Egilman, MD, MPH