UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S MOTION TO EXCLUDE EXPERT
OPINION OF THOMAS ROSAMOND, M.D.**

Dr. Thomas Rosamond is a Kansas City cardiologist who treated Jo Levitt in connection with the events that form the basis of this lawsuit. Dr. Rosamond never has provided—and never has intended to provide—a Rule 26(a)(2)(B) report. Instead, Dr. Rosamond submitted a *Lone Pine* letter that does not meet the standards for expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Accordingly, Dr. Rosamond should be precluded from offering opinions formed outside of, or subsequent to, his medical care of Ms. Levitt.

Moreover, Dr. Rosamond has not meaningfully reviewed data related to the cardiovascular effects of Vioxx, much less endeavored to conduct a comprehensive review of data related to causation. Therefore, any opinions Plaintiff may seek to elicit from Dr. Rosamond on those subjects should be excluded. *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 552–54 (E.D. La. 2015) ("[A] generally accepted methodology for determining general causation" entails that an expert "(1) identify *all relevant studies*; (2) read and critically evaluate all the relevant studies; (3) *evaluate all the data* based upon recognized scientific factors" before exercising "best professional judgment in reaching a conclusion[.]"), *aff'd per curiam*, --- F. App'x ---, 2016 WL 2989261 (5th Cir. May 23, 2016); *see also Brock v. Merrell Dow Pharm.*,

*Inc.*, 874 F.2d 307, 313, 315 (5th Cir. 1989) (finding lack of support in epidemiological data "fatal" to causation theory).

## BACKGROUND

Dr. Rosamond treated Ms. Levitt on March 9, 2000 at St. Luke's Hospital South, where she presented with acute unstable angina—i.e., chest pain likely caused by ischemia. *See* Sept. 11, 2009 Letter from Dr. Rosamond ("*Lone Pine* Letter") (attached as Ex. A) at 1. Dr. Rosamond subsequently provided occasional follow-up care for Ms. Levitt after her coronary artery bypass surgery in May 2000.[1] *Id.* at 2.

Many years later, in 2009, Ms. Levitt came to Dr. Rosamond, *not* for medical treatment, but to request a letter summarizing whether he thought Vioxx "was an issue" in her March and May 2000 cardiovascular events, and whether Vioxx "contributed to her medical course." *See* Rosamond Dep. (Sep. 11, 2015) (attached as Ex. B) 20:10–18; 24:8–12. Ms. Levitt's request was prompted by this Court's entry of Pretrial Order No. 28 ("PTO 28"), which required plaintiffs in the Vioxx MDL to provide a case-specific statement, commonly referred to as a *Lone Pine*. *See* PTO 28 (Nov. 9, 2007) (Rec. Doc. 12962) at §II.A.8. Dr. Rosamond's two-page *Lone Pine* Letter contains the following unsupported assertion:

> Given the course of events, it seems likely based upon [Ms. Levitt's] historical information and what we now know in retrospect about Vioxx, that Vioxx likely contributed to her aggressive coronary artery presentation.

*Lone Pine* Letter (Ex. A) at 1. Dr. Rosamond's letter did not elaborate on what he "know[s] in

---

[1] Though his *Lone Pine* Letter states that he last treated Ms. Levitt in 2002, a note in Dr. Rosamond's records from September 30, 2002, indicates that Ms. Levitt had not been seen by Dr. Rosamond in almost two years (i.e., since sometime in 2000). *See* GortonMMD-00035 (attached hereto as Ex. C). At his deposition, Dr. Rosamond testified that he does not have any independent memory of the times and dates when he treated Ms. Levitt other than what is included in his electronic medical records. Rosamond Dep. (Ex. B) 33:3–34:9; *see also id.* at 66:8–22.

2

retrospect about Vioxx," did not reference any literature or other materials relied on for the formation of this opinion, and did not set forth any basis for his opinion that Vioxx "likely contributed" to Ms. Levitt's cardiovascular events. *Id.*

At his deposition, Dr. Rosamond explained that he did not believe that Vioxx had anything to do with Ms. Levitt's cardiovascular events at the time he treated her, and that his statement was based on (i) Vioxx's subsequent voluntary withdrawal from the market in 2004; (ii) unspecified publications, which Dr. Rosamond agreed he had not necessarily read, related to Vioxx and cardiovascular mortality; and (iii) the "contemporaneous coincidence" that Ms. Levitt was taking Vioxx when her acute unstable angina occurred. *See* Rosamond Dep. (Ex. B) 75:15–76:2; 76:1–12; 12:11–13:2. Dr. Rosamond did not specifically review any medical literature relating to Vioxx before preparing his 2009 *Lone Pine* Letter and has never rigorously reviewed data concerning the cardiovascular effects of Vioxx. *Id.* at 23:13–18; 77:23–78:8.

**ARGUMENT**

**I.    Dr. Rosamond Cannot Offer Expert Opinions Concerning Vioxx Formed Outside of, or Subsequent To, His Medical Treatment of Ms. Levitt Because He Was Not Designated as a Rule 26(a)(2)(B) Expert.**

Plaintiff did not designate Dr. Rosamond as a Rule 26(a)(2)(B) expert in this matter. To the contrary, Plaintiff has explicitly indicated that Dr. Rosamond, along with her other treating physicians, would testify only as to "the subject matter of Jo Levitt's medical condition, medical care and/or medical treatment," and that "their testimony will be consistent with their records." Pl.'s Designation of Expert Witnesses (Dec. 13, 2013) (attached hereto as Ex. D) at 2.

It is well established that, unless designated as a Rule 26(a)(2)(B) expert, a treating physician's testimony about a plaintiff's injuries must be "based on ***knowledge acquired during the course of his treatment*** of the plaintiff." *Knorr v. Dillard's Store Servs., Inc.*, 2005 WL 2060905, at *3 (E.D. La. Aug. 22, 2005) (emphasis added). If a treating physician offers

3

opinions based on "subsequent evaluation" outside the treatment of the plaintiff, that physician is akin to an expert retained for purposes of litigation, and a Rule 26(a)(2)(B) expert report is required. *Id.* (citing *Gray v. Vastar Offshore, Inc.,* 2005 WL 399396, at *1 (E.D. La. Feb.14, 2005).[2]

Dr. Rosamond is not a retained expert and he has never submitted (and did not intend to submit) a Rule 26(a)(2)(B) expert report. Accordingly, any testimony that he provides must be "only about the actual treatment [he] rendered to plaintiff and opinions derived directly therefrom." *Gray*, 2005 WL 399396, at *1.

The statement expressed in Dr. Rosamond's *Lone Pine* Letter—that Vioxx "likely contributed to [Plaintiff's] aggressive coronary artery presentation"—doesn't qualify. Dr. Rosamond has clearly indicated that he reached this conclusion only many years *after* he last treated Ms. Levitt, for the purposes of this litigation, and based on information he gained "in retrospect." *See Lone Pine* Letter (Ex. A); Rosamond Dep. (Ex. B) 22:20–22. Accordingly, this opinion is not permissible expert testimony and should be excluded. *See, e.g., Rea v. Wis. Coach Lines, Inc.*, 2014 WL 4981803, at *2 (E.D. La. Oct. 3, 2014) (holding that where a treating physician's opinions pertain to "causation," or were "prepared in anticipation of litigation," or rely "on sources other than those utilized in treatment," that witness is impermissibly acting as a retained expert); *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 811 (6th Cir. 2005) (excluding

---

[2]   *See also Cooper v. Wal-Mart Transp., LLC*, 2009 WL 290447, at *1 (S.D. Tex. Feb. 5, 2009) ("[D]istrict courts in this circuit agree that the treating-physician exception to the expert report requirement applies only when the treating physician's opinion testimony is based on personal knowledge obtained from examining and treating an individual. If the physician's opinion testimony is based on information learned outside the course of treatment, a written report is required."); *Kim v. Time Ins.*, 267 F.R.D. 499, 502 (S.D. Tex. 2008) ("[W]here a treating physician has prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like a retained expert . . . .").

non-retained treating physician's causation opinion when there was "no evidence that [he] reached the same conclusions regarding causation at the time he treated [the plaintiff]"); *Gray*, 2005 WL 399396, at *1 ("Plaintiff's treating physicians may testify . . . only about the actual treatment they rendered to plaintiff and opinions derived directly therefrom."); *Knorr*, 2005 WL 2060905, at *3 (restricting treating physician's testimony to "knowledge acquired during the course of his treatment of the plaintiff.").

Dr. Rosamond's September 2009 *Lone Pine* Letter does not satisfy the requirement for a Rule 26(a)(2)(B) expert report. As this Court has previously stated, a *Lone Pine* "case-specific expert report is not a *Daubert* report. Rather, it is intended to be only a preliminary showing that a case potentially has merit . . . ." *In re Vioxx Prods. Liab. Litig.*, 2012 WL 1398622, at *4 (E.D. La. Apr. 23, 2012).

Indeed, Dr. Rosamond's letter does not resemble a Rule 26(a)(2)(B) expert report in virtually any respect. Rule 26(a)(2)(B) requires a report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Dr. Rosamond's letter does not meet any of these requirements. In particular, Dr. Rosamond has not provided any basis or reason for his opinion that "Vioxx likely contributed to [Plaintiff's] aggressive coronary artery presentation" other than a vague reference

5

to "what we now know in retrospect about Vioxx." *See Lone Pine* Letter (Ex. A). Nor does Dr. Rosamond list the facts or data he considered in forming his opinion about Vioxx. *Id.*

Because Dr. Rosamond's 2009 *Lone Pine* Letter is not, and was never intended to be, a Rule 26(a)(2)(B) expert report, Dr. Rosamond's opinions should be restricted to those concerning his actual treatment of Ms. Levitt.

## II.     Dr. Rosamond's Causation Opinion Is Not Reliable.

Even if Dr. Rosamond's causation opinion had been properly designated and disclosed, it would not be admissible under *Daubert* because his methodology for arriving at this opinion is manifestly unreliable. Dr. Rosamond's review of the scientific data concerning the cardiovascular effects of Vioxx has been superficial at best. His opinions do not meet the standards of relevance or reliability required for admission at trial.

Federal Rule of Evidence 702 allows for the admission of scientific, technical, and other expert evidence to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Such evidence is admissible only if (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." *Id.* Congress enacted the current version of Rule 702 in response to the Supreme Court's opinion in *Daubert*, 509 U.S. 579, which held that trial courts may not admit scientific testimony without first determining that the testimony is both "reliable" and "relevant" to the facts at issue. *Daubert*, 509 U.S. at 589; *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (en banc); *Black v. Johnson & Johnson (In re Propulsid Prods. Liab. Litig.)*, 261 F. Supp. 2d 603, 605–06 (E.D. La. 2003).

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is "derived by the scientific

6

method" and "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590, 592–93.  Scientific testimony is irrelevant, and therefore inadmissible, when there is "too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Rosamond's statement that "Vioxx likely contributed to [Plaintiff's] aggressive coronary artery presentation" is neither relevant nor reliable under *Daubert* and Rule 702.  Dr. Rosamond has not identified:

- any specific epidemiological data, or any scientific methods or procedures that he relied upon in forming his opinion (Rosamond Dep. (Ex. B) 23:13–18; 77:23–78:8);

- any data linking the use of Vioxx for less than twelve months to cardiac events of any kind (*id.* at 82:5–18)[3];

- any data relating specifically to the cardiovascular events experienced by Ms. Levitt (*id.* at 82:21–83:7); or

- his definition of "aggressive coronary artery presentation," or any Vioxx clinical study that examined such an endpoint.

Instead, Dr. Rosamond relies on his general understanding that Vioxx was "implicated in increased cardiovascular events," combined with the fact that Ms. Levitt was taking Vioxx at the time she experienced her alleged injuries.  *See id.* at 76:1–12; 11:22–13:2.  But "speculation unconfirmed by epidemiologic proof cannot form the basis for causation in a court of law."  *See Brock*, 874 F.2d at 315.  This coincidence of temporal proximity does not meet the standards for reliable scientific methodology required by *Daubert*.  *See Moore*, 151 F.3d at 278 (upholding district court's opinion that an expert's substantial reliance on "temporal proximity between exposure and symptoms" was "not supported by appropriate validation" as required by *Daubert*, and was "ultimately unreliable" (internal quotation marks omitted)).

---

[3] Ms. Levitt began taking Vioxx in approximately August of 1999, about six months before her March 2000 angioplasty.  *See Lone Pine* Letter (Ex. A) at 1.

A physician such as Dr. Rosamond, who has not endeavored to conduct a comprehensive review of the clinical data, cannot opine on causation.  *See Burst*, 120 F. Supp. 3d at 553–54; *see also Brock*, 874 F.2d at 313 (finding lack of support in epidemiological data "fatal" to causation theory).  "[A] generally accepted methodology for determining general causation" requires that an expert "(1) identify ***all relevant studies***; (2) read and critically evaluate all the relevant studies; [and] (3) ***evaluate all the data*** based upon recognized scientific factors" before exercising "best professional judgment in reaching a conclusion[.]"  *Burst*, 120 F. Supp. 3d at 552 (emphases added).  Because Dr. Rosamond has not undertaken any of these steps, his purported causation opinion is unreliable.

"[A] scientific opinion, to have evidentiary relevance and reliability, must be based on scientifically valid principles."  *Moore*, 151 F.3d at 276.  Dr. Rosamond's causation opinion, even if it had been properly designated and disclosed, falls far short of these standards.

## CONCLUSION

For the foregoing reasons, Dr. Rosamond should be precluded from offering any opinions at trial that do not derive from information learned during actual treatment of Plaintiff, including his opinion that "Vioxx likely contributed to [Plaintiff's] aggressive coronary artery presentation," and any other causation opinion he may seek to offer.  Merck respectfully requests that this Court enter an order prohibiting Plaintiff from offering such evidence at trial.

Dated:  June 27, 2016	Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130

8

      Phone: 504-581-3200
      Fax:    504-581-3361

*Defendants' Liaison Counsel*

—and—

Douglas R. Marvin
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of June, 2016.

                                              */s/ Dorothy H. Wimberly*
                                              Dorothy H. Wimberly, 18509
                                              STONE PIGMAN WALTHER WITTMANN L.L.C.
                                              546 Carondelet Street
                                              New Orleans, LA 70130
                                              Phone:  504-581-3200
                                              Fax:     504-581-3361
                                              dwimberly@stonepigman.com

                                              Defendants' Liaison Counsel