**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| ***This document relates to*** | * | JUDGE FALLON |
| | * | |
| ***Jo Levitt v. Merck Sharp & Dohme Corp.*, 2:06-cv-09757-EEF-DEK** | * | MAGISTRATE JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT MERCK'S REPLY BRIEF IN SUPPORT OF ITS MOTIONS TO MAINTAIN CONFIDENTIAL DOCUMENT DESIGNATIONS UNDER PTO 13 AND FOR A PROTECTIVE ORDER BARRING SIMILAR REQUESTS**

Plaintiff's Opposition makes clear that her current de-designation requests encompassing more than 3,000 Merck documents serve no litigation purpose. Instead, the sole rationale presented to this Court is her desire to make the Merck Vioxx documents produced in this litigation available to the public. Pl.'s Opp'n ("Opp'n"), Rec. Doc. 65358, at 3. Her extensive requests amount to a parallel campaign—one remarkably similar to Dr. Egilman's previous efforts to de-designate documents marked confidential in this litigation—that has nothing to do with her ability to pursue or prosecute the claims against Merck stated in her Complaint. Addressing her requests would potentially consume hundreds of hours of Merck employee and counsel time and would have no impact on the resolution of this case. Plaintiff's current requests are actually only a starting point as Plaintiff has identified these documents as a subset of those she ultimately seeks to de-designate.[1] Her stated goal—to require Merck to defend or withdraw

---

[1] Her counsel "believe[s] that it is ludicrous that *any* Merck documents are still confidential." *See* Email from D. Thomas to E. Pistilli (Dec. 31, 2015) (emphasis added) (attached to Merck's Mar. 28, 2016 Motion, Rec. Doc. 65337, as Ex. B); *see also* Email from D. Thomas to E. Pistilli (Feb. 25, 2016) (attached to Rec. Doc. 65337 as Ex. A) (asserting that "none" of the "documents relating to marketing, research, science, studies, testing, production,

the confidentiality designation of virtually every confidential document produced in the Vioxx litigation—would negate all the benefits provided by this Court's umbrella Protective Order (PTO 13) that has been in place for over a decade.

Plaintiff's arguments against Merck's motions to maintain documents as confidential make three broad mistakes of law:[2]

***First***, the documents subject to Plaintiff's requests are confidential documents produced in discovery, not records filed with the Court. Confidential documents produced in discovery are presumptively private, especially when they are subject to an existing protective order.

***Second***, the Federal Rules prohibit discovery requests, like Plaintiff's, that are unrelated to resolving the legal and factual issues of a dispute. Under PTO 13, Plaintiff may use the confidential documents *for any litigation purpose* in preparing and trying her case. The request to de-designate thousands of documents—especially given the extraordinary burden involved—is therefore not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

***Third***, Plaintiff's vast and seemingly open-ended requests frustrate the central purpose of PTO 13, which this Court entered to facilitate "a timely and efficient discovery process[.]" PTO 13, at 1. During that process, the parties relied on PTO 13's terms in forgoing potentially burdensome litigation over the confidentiality of material as it was being produced. PTO 13 set

---

etc." should be confidential and requesting that Merck "first address" a subset of such documents).

[2] On March 28, 2016, Merck filed its Motion to Maintain Confidential Document Designations Under Pretrial Order 13, following Plaintiff's request to remove confidential document designations from "any and all Vioxx documents relating to marketing, research, science, studies, testing, production, etc." *See* Rec. Doc. 65337 at 1. After receiving additional requests from Plaintiff for the removal of confidentiality designations, Merck filed its Motion to Maintain Confidential Document Designations Under Pretrial Order 13 and For a Protective Order Barring Similar Requests on May 10. *See* Rec. Doc. 65349. Plaintiff filed a consolidated opposition to both of Merck's motions on May 27, Rec. Doc. 65358, and this Reply is filed in further support of both motions.

forth a process by which the parties could shield from public disclosure documents that they believed in good faith contained information that would be considered confidential under Federal Rule of Civil Procedure 26. Now, Plaintiff—the last personal injury plaintiff in this MDL—seeks to make Merck bear that very burden and re-examine vast swaths of documents that were produced up to a decade ago. This sideshow merely distracts from the substantive issues in Plaintiff's case in its final stages, and should be rejected.

**I. Discovery Material Is Presumptively Private, Not Public.**

Plaintiff confuses discovery material with court records when she asserts that "public access to discovery produced in federal court is presumed." Opp'n at 6. It is not. Court records (as opposed to discovery materials) are subject to the public's qualified right of access. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Discovery materials become court records only after being filed with the court for some purpose. *See Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("When discovery material is filed with the court, however, its status changes."). The subject of Plaintiff's requests are discovery materials, to which the public right of access argued in Plaintiff's brief does not apply.

This Court recognized concerns for information traditionally in the "sphere of the public" when addressing Dr. Egilman's previous efforts to publicize confidential information in 2014. Hr'g Tr. (Feb. 28, 2014) (attached as Ex. 1 to Opp'n) at 11:14. But the Supreme Court has made clear that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). The public sphere, on the other hand, encompasses documents that are used at trial or "'made part of a dispositive motion'" that "'adjudicates substantive rights'" of the parties. *Foltz*, 331 F.3d at 1135–36 (quoting *Rushford v. New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir.

1988)).[3] The public's right does not extend to unfiled material, since "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Rhinehart*, 467 U.S. 20 at 33. Plaintiff's requests here target the "'raw fruits of discovery' . . . [that] enjoy protected status" and should be denied. *Foltz*, 331 F.3d at 1136 (quoting *Rushford*, 846 F.2d at 252).

Plaintiff's presentation of the case law on this point is particularly misplaced. *See* Opp'n at 6–7 (discussing cases). The only in-circuit case Plaintiff cites is inapposite, as it merely interprets the statutory meaning of "public" for a jurisdictional bar under the False Claims Act. *See U.S. ex rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Pan Am. Life Ins. Co.*, 1992 WL 125329, at *4 (E.D. La. May 22, 1992). To the extent *Stinson* is relevant, it explicitly refutes her position: "[i]n the Eastern District of Louisiana . . . discovery responses are not to be filed unless ordered by the court, [so] discovery would not be 'public.'" *Id*.

Plaintiff then relies on out-of-circuit authority from the Seventh, Fourth, and First circuits—none of which support Plaintiff's position. Plaintiff directs this Court to *Citizens First* from the Seventh Circuit and three district court opinions that cite the same case. *See* Opp'n at 6 (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins.*, 178 F.3d 943, 944 (7th Cir. 1999)). But *Citizens First* has been abrogated and is no longer good law.[4] Subsequent cases

---

3 The proper method to facilitate the public's right of access to court records is through a challenge to a sealing order. *See, e.g.*, *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 850 (5th Cir. 1993) (reversing sealing order on settlement records filed with the court). Seeking to lift a protective order to make documents publically available is an abuse of discovery. *See, e.g.*, *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 685 n.29 (5th Cir. 1985) ("The contention that the protective order should be lifted so as to enable plaintiffs to communicate the protected information to various governmental authorities in furtherance of the public interest is without substance." (internal quotation marks omitted)); *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 547 (N.D. Ind. 1991) (collecting cases and noting that litigation is not merely a vehicle for engaging in discovery).

4 The district court opinions also lend no support to Plaintiff's position. *See Certain*

from within that circuit have recognized that "[t]he Seventh Circuit no longer endorses a rule that discovery materials are presumptively accessible to the public." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 309 n.6, 312 (S.D. Ind. 2016) (noting that *Citizens First* has been abrogated); *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) ("Secrecy is fine at the discovery stage[.]"); *Abbott v. Lockheed Martin Corp.*, 2008 WL 5221096, at *3 (S.D. Ill. Dec. 12, 2008) ("Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court."). Plaintiff's discussion of Fourth Circuit authority relates to "the public's First Amendment right of access" to sealed court records—and not to discovery materials. *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014). Finally, Plaintiff asserts that the First Circuit found a public interest in disclosure "even where documents ***were not submitted*** to [the] court." Opp'n at 7 (emphasis added). But the First Circuit actually found that the documents at issue "***were duly submitted*** to the court in the course of that [settlement approval] process," unlike "[t]hose documents which play no role in the adjudication process, . . . such as those used only in discovery, [that] lie beyond reach." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408, 410 (1st Cir. 1987) (emphasis added).

Plaintiff's exaggerated arguments about the public interest simply have no legal foundation. She seeks a massive modification of confidentiality designations on previously produced discovery materials. Her request is governed in the first instance not by the First Amendment but by Federal Rule of Civil Procedure 26.

---

*Underwriters at Lloyd's v. United States*, 2010 WL 2683142, at *1 (S.D. Ohio July 1, 2010) (discussing sealed court filings, not discovery documents); *Abbott v. Lockheed Martin Corp.*, 2008 WL 5221096, at *3 (S.D. Ill. Dec. 12, 2008) (The "primary public policy concern [is with] . . . the *sealing* of documents in the record of a case."); *Swink v. AT&T*, 2008 WL 1767046, at *1 (E.D. Mo. Apr. 11, 2008) (declining only to enter an overly broad protective order that "allows either party to designate '*any* information or document' confidential" (emphasis added)).

**II. Plaintiff's Request Violates the Proportionality Requirement of Rule 26.**

A request to modify the status of discovery material under the terms of PTO 13 is a discovery request subject to Rule 26. This Court entered PTO 13 to facilitate "a timely and efficient discovery process[.]" PTO 13, at 1. Discovery requests must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A request is proportional when "the importance of the discovery in resolving the issues" in the case outweighs "the burden or expense of the proposed discovery," considering "the parties' relative access to relevant information." *Id*. The revision of Rule 26(b)(1) to emphasize proportionality "'reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections.'" *Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 467 (N.D. Tex. 2015) (emphasis omitted) (quoting Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment).

Plaintiff has not provided any litigation justification for her requests and cannot in good faith suggest that her requests are proportional to the needs of her case. "Liberal discovery is provided for *the sole purpose* of assisting in the preparation and trial, or the settlement, of litigated disputes." *Rhinehart*, 467 U.S. at 34 (emphasis added). That purpose has been satisfied here because Plaintiff already has access to every page of confidential material produced by Merck. She may share those documents with "any third party for whom there is a litigation need to disclose the information." PTO 13, ¶ 10. The Fifth Circuit has upheld similar protective orders, finding no prejudice where "plaintiffs were free to use any discovery materials in the development of their case." *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989).

Plaintiff argues that Merck's position threatens to "render PTO 13's procedures meaningless." Opp'n at 17. But Plaintiff misunderstands the effect of PTO 13 on this motion. Her request must be justified by a litigation purpose that is "proportional to the needs of the case" and aids in "resolving the issues" as required by Rule 26. *See* Fed. R. Civ. P. 26(b)(1).

Making a request without such a purpose violates Rule 26. Thus, the relevance of PTO 13 is not the conduct it restricts (*i.e.*, broad dissemination of confidential information), but rather the conduct it explicitly allows: Plaintiff may already use confidential documents *for any litigation need*. PTO 13, ¶¶ 14, 10(g). Plaintiff's request—with the tremendous burden on Merck that it would entail—is neither related to nor proportional to the needs of the case.

The proper remedy for a violation of the proportionality requirement of Rule 26(b)(1) is a protective order under Rule 26(c). Accordingly, Merck seeks a protective order to stop Plaintiff's series of de-designation requests because they violate Rule 26(b). Plaintiff argues, without support, that the two provisions are unrelated. *See* Opp'n at 18. But the two function in tandem: "Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." *Rhinehart*, 467 U.S. at 34. A violation of Rule 26(b) is good cause to issue a protective order. *See, e.g.*, *Garcel, Inc. v. Hibernia Nat'l Bank*, 2002 WL 100605, at *2 (E.D. La. Jan. 24, 2002) (granting Rule 26(c) protective order where "information sought . . . is not reasonably calculated to lead to the discovery of relevant evidence," the pre-amendment standard in Rule 26(b)). "The court can issue a Rule 26(c) protective order to enforce limits on discovery provided by Rule 26(b)." *Noble Roman's*, 314 F.R.D. at 308.

Plaintiff argues further that a protective order may only issue upon a document-by-document justification for continuing confidentiality. *See* Opp'n at 7 (asserting that moving party must justify confidentiality "'for each particular document'" (quoting *Foltz*, 331 F.3d at 1130)). Merck has, consistent with the holding in *Foltz*, provided "'specific demonstrations of fact'" that demonstrate Plaintiff's request is unduly burdensome, as that request applies to *every* document. *Foltz*, 331 F.3d at 1130–31 (quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648,

653 (D. Md. 1987)). Merck need not evaluate the content of each document to demonstrate that the request violates Rule 26(b). Indeed, Plaintiff's proposed standard would moot the relief Merck seeks—such a review is precisely the unreasonable burden that would be barred by the proposed protective order.

**III. Plaintiff Seeks to Subvert the Purpose of Pretrial Order 13.**

Plaintiff's de-designation requests abuse the process laid out in PTO 13. Absent a protective order, the burden is traditionally on the supplying party to seek the court's protection and provide good cause for a document produced in discovery to be made confidential. To facilitate the speedy production of millions of documents requested by plaintiffs in this litigation, PTO 13 inverted that arrangement. The parties in the MDL produced, evaluated, and designated such documents without having to individually litigate the confidentiality of each one. Confidentiality of documents in the Vioxx litigation generally has only been contested in a small number of instances, and the parties have thus been able to address any concerns on a document-by-document basis, just as PTO 13 contemplated. Now, Plaintiff seeks to invoke the provisions of PTO 13 to challenge the confidentiality of at least *thousands* of documents, and potentially every confidential document produced in this litigation. *See* Rec. Doc. 65337 at 1 (noting Plaintiff's initial request to de-designate "any and all Vioxx documents relating to marketing, research, science, studies, testing, production, etc."). In doing so, she seeks to require that Merck litigate essentially every confidentiality designation it has made in good faith throughout the course of this litigation—as if PTO 13 had never existed.[5]

---

[5] Allowing such late-stage, nearly universal challenges to confidentiality designations would create a troubling precedent. Umbrella protective orders like PTO 13 are essential to the smooth functioning of complex MDL proceedings. If mass challenges to confidentiality can be threatened by plaintiffs without any litigation-based justification, protective orders could become tools for mass tort plaintiffs to apply meritless settlement pressure. As such, future mass tort parties may be discouraged from entering into protective orders in the first instance.

Plaintiff misses the forest for the trees when she argues that "the de-designation procedures in PTO 13 are not intended to facilitate a party's access to documents[.]" Opp'n at 17. The "sole purpose" of discovery is to provide the parties access to documents, so that they may resolve their dispute. *Rhinehart*, 467 U.S. at 34; *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) (the "very purpose of discovery" is to prepare parties for trial). To facilitate "a timely and efficient discovery process," the parties agreed to forgo costly litigation of each request in reliance on the promise of confidentiality where they believed, in good faith, that it was required. PTO 13, at 1. Plaintiff—having receiving the benefit of the bargain—now seeks to make Merck bear the costly and unnecessary burden of individually re-evaluating each of those documents.

During the telephonic hearing on February 28, 2014—when the parties convened to discuss Dr. Egilman's attempts to publicize documents in this MDL through the Kentucky proceedings—this Court made clear that "as time goes on and the litigation either comes to a period of ending or about to end," the Court will "have to deal with" the confidential documents. Hr'g Tr. (Feb. 28, 2014) (attached to Opp'n as Ex. 1) at 12:20–24. The Court indicated that the proper mechanism for such consideration is through the party's proper invocation of the de-designation provisions. To be clear: Plaintiff's requests are ***not*** such a request. In presiding over this MDL, the Court shouldered a burden of overseeing a sprawling litigation in which millions of confidential documents were produced. To aid in that process and to facilitate speedy discovery, the parties entered into PTO 13, which required good faith designations and cooperation where differences arose. That arrangement successfully served the MDL litigation—until now. Plaintiff has not meaningfully considered the documents and found reason to contest their designation. Rather, she protests the very fact that *any* document could be

confidential.[6] A party genuinely concerned with the proper designation of documents would submit—first to the other party and then to this Court—a considered request with an intentionally drafted list of documents that she believes are improperly designated. Plaintiff merely borrowed hers from Dr. Egilman.[7] *See* Summary of De-Designation Requests (attached as Ex. 1 to Rec. Doc. 65349).

Merck and Ms. Levitt are engaged in this lawsuit to resolve the merits of her Complaint. The speedy resolution of that dispute is in their interest. Dr. Egilman's interest, in contrast, has long been in contesting corporate confidentiality, in whichever venue he may find.[8] As a witness, he discussed with the press documents which he identified as confidential. *See* Ed

---

6 *See* Email from D. Thomas to E. Pistilli (Dec. 31, 2015) (Ex. 6 to Rec. Doc. 65349) at 1 ("Frankly, I personally believe that it is ludicrous that any Merck documents are still confidential.").

7 The 303-page spreadsheet submitted as Plaintiff's most recent de-designation request was previously submitted to this Court by Dr. Egilman as an exhibit to his May 29, 2014 opposition to Merck's motion for sanctions against him for the violation of PTO 13. *See* Ex 2 to Rec. Doc. 64957; *see also* Email from D. Thomas to E. Pistilli (Apr. 12, 2016) (Ex. 2 to Rec. Doc. 65349) (submitting Dr. Egilman's spreadsheet as a de-designation request).

8 Dr. Egilman has represented that his sole interest is in publication. It is not. Dr. Egilman has managed to publish extensively notwithstanding constraints imposed by this Court and others. An author would seek de-designation of specific materials on which he seeks to rely. But Dr. Egilman seeks the de-designation of *all* confidential documents. Among his existing publications are: Kevin P. Hill et al., *The ADVANTAGE Seeding Trial: A Review of Internal Documents*, 149 Annals Intern. Med. 251 (2008); Joseph S. Ross et al., *Guest Authorship and Ghostwriting in Publications Related to Rofecoxib: A Case Study of Industry Documents from Rofecoxib Litigation*, 299 J. Am. Med. Ass'n 1800 (2008); Joseph S. Ross et al., *Persistence of Cardiovascular Risk After Rofecoxib Discontinuation*, 170 Arch. Intern. Med. 2035 (2010); Joseph S. Ross et al., *Pooled Analysis of Rofecoxib Placebo-Controlled Clinical Trial Data: Lessons for Postmarket Pharmaceutical Safety Surveillance*, 169 Arch. Intern. Med. 1976 (2009); Harlan M. Krumholz et al., *What Have We Learnt from Vioxx?*, 334 Brit. Med. J. 120 (2007); Samuel D. Krumholz et al., *Study of Neurontin: Titrate to Effect, Profile of Safety (STEPS) Trial: A Narrative Account of a Gabapentin Seeding Trial*, 171 Arch. Intern. Med. 1100 (2011); David Egilman, *Merck-y Ethics and Sacrificing Health for Profit: ADVANTAGE Vioxx Trial Demonstrates a Profile of Deceit*, Presentation at the American Public Health Association Annual Meeting (Nov. 4–8, 2006)

Silverman, *More Disclosure Coming in Merck's Decade-Long Vioxx Nightmare*, Mar. 26, 2014, Wall St. J. (attached as Ex. 5 to Rec. Doc. 65349). As a third-party, he sought standing in this Court to contest the scope of PTO 13. *See* Tr. (Feb. 28, 2014) at 20:11–14. As the recipient a subpoena that he himself arranged, Dr. Egilman "distributed a large volume of documents" in a "clandestine production" to a colleague in a different pharmaceutical litigation. *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 189–190 (2d Cir. 2010).

The lengths to which Dr. Egilman is willing to go to seek the public release of all the confidential Merck documents are perhaps best reflected in his self-designation as an alleged "victim" of Merck and effort to interject himself into a plea agreement between Merck and the United States. *See* Victim Impact Statement of D. Egilman (attached as Ex. A). Dr. Egilman argued to Judge Saris that "part of the restitution should be that the documents, all of the documents that Merck considers confidential" be made public. *See* Plea Hr'g Tr. (Mar. 16, 2012) (excerpts attached as Ex. B) at 38:22–25; *see also* Victim Statement (Ex. A) at 2 (seeking "exposure" of documents). The United States opposed his request. *See* Gov't Opp'n (attached as Ex. C) at 3 ("[G]iven that Dr. Egilman has served for years as a retained expert for plaintiffs in the Vioxx civil litigation, his effort to acquire victim status bears particular scrutiny. Even if Dr. Egilman were a victim, which the United States believes he is not, restitution is not available to him[.]").

Two years later, in 2014, Dr. Egilman made a similar effort in the Commonwealth of Kentucky, which ultimately required intervention from this Court. *See* Def. Mot. (May 10, 2016), Rec. Doc. 65349, at 5–7. Now Dr. Egilman comes before this Court again through his counsel's request—as an affiant, not as a party to the motion—that this Court deny Merck's motions to maintain confidentiality designations. *See* Reinert Aff. (Ex 2. to Opp'n) at 5.

**IV. The Four Identified Documents Should Maintain Their Confidentiality Designation.**

Lastly, Merck has met its burden to maintain the confidentiality designations in place on the four specific confidential documents identified in Plaintiff's original request. *See* Rec. Doc. 65337 § II.

Under Fifth Circuit law, a protective order should be denied when the motion is bereft of any support. *See In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (reversing protective order issued "solely on the basis of stereotyped and conclusory statements" (internal quotation marks omitted)); *see also United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir. 1978) (holding protective order inappropriate where government moved "without mentioning any facts or circumstances" in justification). District courts have broad discretion to issue such orders, which are routinely upheld by the Fifth Circuit. *Scott*, 868 F.2d at 792 (citing *Sanders v. Shell Oil Co.*, 678 F.2d 614 (5th Cir. 1982)).

Plaintiff mischaracterizes the standard this Court should apply. *See* Opp'n at 8. The Fifth Circuit did not, for example, hold in *In re Terra* that "a party's failure to support its 'good cause' argument with 'affidavits or other evidence' is *fatal*." Opp'n at 8 (emphasis added) (quoting *In re Terra*, 134 F.3d at 306). Rather, the Fifth Circuit reasoned that bald claims of "camaraderie" among employee witnesses were "stereotyped and conclusory statements" that did not merit a protective order because "[t]o conclude otherwise would indicate that good cause exists . . . any time fact witnesses in a case are employed by the same employer[.]" *In re Terra*, 134 F.3d at 306–07 (internal quotation marks omitted). Nor does this Court's opinion in *Zurich* represent "an analogous situation[.]" Opp'n at 8 (citing *Zurich Am. Ins. v. SDT, Inc.*, 2016 WL 892577 (E.D. La. Mar. 9, 2016)). In *Zurich*, this Court entered a protective order, which—as here—protected confidential information. Defendants then sought "to show that the redacted information is so confidential that the existing protective order is insufficient to protect it."

*Zurich*, 2016 WL 892577, at *2. The *Zurich* defendants failed this more stringent test because they offered "no proof of any kind[.]" *Id.* (emphasis omitted). The Court agreed, however, that the existing protective order—like the one here—properly "restrict[ed] access to this information" and properly required that it only be used for purposes of the litigation. *Id.* Indeed, Plaintiff already has the exact relief that the plaintiff in *Zurich* was seeking: unfettered access to unredacted, confidential discovery materials for the purposes of litigating her case.

The Court noted in *Zurich* that defendants sought additional protection for categories of information—like the "purchase price for the business" and the "salaries of executives"—for which the "commercially sensitive or proprietary nature . . . is neither self-evident nor self-proving." *Id.* In contrast, Merck has identified the specific, well-settled categories of confidential information to which each document belongs: Document MRK-AJU0000016 contains sensitive marketing information. "Courts have consistently held that marketing information is confidential commercial information and have afforded it some protection from discovery." *Duracell, Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578 (N.D. Ga. 1989). Documents MRK-ABS0212961 and MRK-ABF0004419 contain potential uses for Vioxx that have not been disclosed. These documents contain sensitive scientific and technical information about potential research and development projects. "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (collecting cases). Likewise, document MRK-AAU0000029 contains information about another of Merck's pharmaceutical products, disclosure of which implicates sensitive scientific or technical information.

## CONCLUSION

Merck respectfully asks the Court to enter the Proposed Order attached to Merck's motion of May 10, which maintains existing confidentiality designations and bars Plaintiff from submitting additional de-designation requests absent a signed submission to the Court that justifies the requests with reference to the needs of the *Levitt* case.

Dated: July 27, 2016

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*

Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361

*Defendants' Liaison Counsel*

—and—

Douglas R. Marvin
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Phone: 202-434-5000
Fax: 202-434-5029

Benjamin R. Barnett
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Phone: 215-994-4000
Fax: 215-994-2222

*Attorneys for Merck Sharp & Dohme Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 27th day of July, 2016.

*/s/ Dorothy H. Wimberly*

Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361
dwimberly@stonepigman.com

*Defendants' Liaison Counsel*