# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| *This document relates to* | * | **JUDGE FALLON** |
| | * | |
| *Jo Levitt v. Merck & Co., Inc.* | * | **MAGISTRATE JUDGE KNOWLES** |
| **2:06-cv-09757-EEF-DEK** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE
### EXPERT OPINIONS OF DAVID MADIGAN Ph.D.


Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**


*/s/ Daniel A. Thomas*
Kenneth B. McClain                    MO #32430
Daniel A. Thomas                      MO #52030
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 5

II.   LEGAL STANDARD................................................................................................. 6

III.  ARGUMENT .............................................................................................................. 7

  1.  Medical Expertise is Not Required for Dr. Madigan's Opinions ........................................ 7

  2.  Factual Narratives Are Proper if they Assist the Jury........................................................ 13

  3.  Merck Has Suffered No Prejudice by Dr. Madigan's Recently-Conducted Statistical

  Analysis.................................................................................................................................... 15

IV.   CONCLUSION.......................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Bureau v. State Farm Fire & Cas. Co.*, 129 Fed. Appx. 972 (6th Cir. 2005) ................................ 7

*Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194 (5th Cir. 2016) .................................. 9

*Chaplin v. City of Muskogee*, CIV-11-158-KEW, 2012 WL 768041, at *2 (Mar. 8, 2012) ........ 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d
    469 (1993) ........................................................................................................ 6, 7, 14

*Edmonds v. Illinois Cent. Gulf R. Co.*, 910 F.2d 1284 (5th Cir. 1990).................................... 9, 10

*Falcon v. State Farm Lloyds*, 1:12-CV-491-DAE, 2014 WL 2711849 (W.D. Tex. June 16, 2014)
    .................................................................................................................................... 9

*FNB Bank v. Park Nat'l Corp.,* 996 F.Supp.2d 1187 (S.D.Ala.2014) ................................... 14, 15

*Gebhardt v. Mentor Corp.*, 15 Fed. Appx. 540 (9th Cir. 2001)...................................................... 9

*Hernandez v. Schering Corp.,* 2011 IL App (1st) 093306, 958 N.E.2d 447 ............................... 11

*Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777 (3d Cir. 1996) ................................................ 12, 13

*Duling v. Domino*'s Pizza, LLC, 1:13-CV-01570-LMM, 2015 WL 3407602 (N.D. Ga. Jan. 13, 14

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liab. Litig.*, 3:11-MD-2244-K,
    2014 WL 3557345 (N.D. Tex. July 18, 2014) .......................................................... 15

*In re Pfizer Inc. Se*c. Litig., 04CIV.9866(LTS)(JLC), 2010 WL 1047618 (S.D ........................... 5

*In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004).................................. 11

*King v. Synthes (U.S.A.)*, 532 F. Supp. 2d 828 (S.D. Miss. 2006)................................................. 9

*Kourkounakis v. Russo*, 167 Fed. Appx. 255 (2d Cir. 2006) ......................................................... 9

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).. 7

*Rheinfrank v. Abbott Laboratories, Inc.*, 119 F. Supp. 3d 749 (S.D. Ohio 2015) ....................... 11

*S.E.C. v. Tourre,* 950 F.Supp.2d 666 (S.D.N.Y.2013).......................................................... 13, 14

*Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254 (5th Cir. 2002) ............................... 10, 11

*Ullman v. Auto-Owners Mut. Ins. Co.*, 502 F. Supp. 2d 737 (S.D. Ohio 2007) ........................... 7

*United States v. Martinez*, 588 F.3d 301 (6th Cir. 2009) ................................................................. 7

*United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006) ........................ 10, 14

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ............................................................ 14

**<u>Rules</u>**

Fed. R. Evid. 702 ........................................................................................................... 6, 11, 12

## I.       INTRODUCTION

This is a complex pharmaceutical litigation with many separate issues that require expert testimony to explain to a jury. One issue that must be addressed by an expert witness is the statistical critique of Merck's studies and analyses of its drug Vioxx. Plaintiff has retained Dr. David Madigan, Ph.D. to compare the _true_ statistical findings of Merck's studies with what Merck actually disclosed. These statistical opinions regarding Merck's studies, analyses, and clinical trials do not require medical testimony, as Merck suggests.  Dr. Madigan's opinions are thorough (his Expert Report is two-hundred and thirty-seven (237) paragraphs long) and are necessary to aid the jury in understanding complex statistical issues.

Merck has now moved to exclude the opinions of Dr. Madigan, a renowned statistician with impeccable credentials. As the District Court for the Southern District of New York explained:

> Dr. David Madigan holds a doctorate in statistics, and is currently Professor in and Chair of the Department of Statistics at Columbia University. Dr. Madigan has taught and published extensively in the field of statistics. He has served as Director of Rutgers University's Rutgers Institute of Biostatistics and currently serves as an editor of a peer-reviewed academic statistics journal, _Statistical Science._ Dr. Madigan has consulted for various pharmaceutical companies and otherwise applied his scientific training to questions of drug safety and public health. . . Dr. Madigan's credentials as a statistician amply qualify him to testify as an expert with respect to his interpretation of the data he analyzed. Plaintiffs have met their burden with respect to the qualifications of Dr. Madigan.

_In re Pfizer Inc. Sec. Litig._, 04CIV.9866(LTS)(JLC), 2010 WL 1047618, *4 (S.D.N.Y. Mar. 22, 2010).

As explained more fully below, Dr. Madigan's opinions should not be stricken in this case. Medical expertise is not required for his opinions, nor does he seek to opine as to what physicians would have done if Merck had placed an appropriate label on Vioxx. Instead, Dr. Madigan opines to the studies and analyses conducted by Merck itself, and contrasts what Merck

5

learned from its studies with what it actually disclosed to patients, physicians, the FDA, and the public at large. Dr. Madigan's "narrative testimony" is entirely proper and will aid the jury in understanding complex scientific and statistical issues. Merck has suffered no prejudice by the fact that Dr. Madigan had not completed the analysis requested by Dr. Egilman at the time he wrote his report or gave his deposition, and Plaintiff will agree to make him available for a second deposition if this Court deems fit. For all these reasons, Merck's Motion should be denied.

## II.  LEGAL STANDARD

To be admissible, expert testimony must be relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Expert testimony is relevant if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Relevant expert testimony is admissible if offered by "a witness qualified as an expert by knowledge, skill, experience, training, or education" and "if (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

The "trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Bureau v. State Farm Fire & Cas. Co.*, 129 Fed. Appx. 972, 975 (6th Cir. 2005) quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). However, the Court's role as a "gatekeeper" is not intended to replace the adversary system contemplated by a jury trial. *Ullman v. Auto-Owners Mut. Ins. Co.*, 502 F. Supp. 2d 737, 743 (S.D. Ohio 2007) citing *Daubert*, 509

U.S. at 596. Cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the appropriate means for attacking admissible evidence, the weight of which is ultimately determined by a jury. *Id.; United States v. Martinez*, 588 F.3d 301 (6th Cir. 2009) citing *Daubert*, 509 U.S. at 596.

### III.    ARGUMENT

#### 1.    <u>Medical Expertise is Not Required for Dr. Madigan's Opinions</u>

Merck first asks this Court to exclude Dr. Madigan's opinions arguing that he is a mere statistician, and as such he cannot opine on whether Merck's disclosures regarding its studies were misleading to physicians (Merck's Motion, page 2). In its attempt to exclude Dr. Madigan's opinions, Merck attempts to paint a dramatic picture by likening Dr. Madigan's opinions to cases where experts were opining to the ultimate issue of medical causation, where statisticians were offered to testify to causation and medical issues, or where experts sought to testify as to what physicians would have done differently if a different label or warning had been provided. Dr. Madigan's opinions are simply not analogous to any of these scenarios. To be sure, <u>nowhere</u> in Dr. Madigan's Report does he even mention physicians or what they would have believed or done after reading the Vioxx label. Merck's arguments regarding Dr. Madigan needing "medical expertise" are therefore disingenuous.

As for Merck's assertion that Dr. Madigan's lack of experience in epidemiology should bar him from testifying regarding Merck's design of its studies, Dr. Madigan specifically testified that he has expertise in epidemiology (See Dr. Madigan's Deposition, attached to Merck's Motion as Exhibit 2, at 29:13-15 ("So I have experience in statistics, in biostatistics, in epidemiology, in clinical trials, in pharmacoepidemiology.")).

Q.      In what way do you mean that you have expertise in epidemiology?

> A.    So I have worked in areas of epidemiology for close to 20 years. I've taught quite a lot of short courses in epidemiology and published extensively.
>
> Q.    When you say you've published extensively, do you mean to say that you have published extensively on the topic of epidemiology itself or you have just applied epidemiological concepts in the publications that you have authored?
>
> A.    Both, I think. So I have published methodology pieces in epidemiology journals and then I have published epidemiological analyses, if you will.

(*Id.* at 30:13-31:2).

Merck additionally alleges that Dr. Madigan has no "experience in designing or conducting clinical trial." (Merck's Motion, page 8). Again, this is simply not true. To support its assertion, Merck cites testimony from a 2011 deposition in another case where Dr. Madigan merely confirmed that he was not a board-certified epidemiologist (ERISA Madigan Deposition, attached to Merck's Motion as Exhibit 4, 10:20-21). To the contrary, Dr. Madigan has extensive experience in clinical trials, as confirmed in both his deposition (Exhibit 2 to Merck's Motion, 29:13-15 ) ("So I have experience in statistics, in biostatistics, in epidemiology, **in clinical trials**, in pharmacoepidemiology.") (emphasis added) and in his expert report (Exhibit 1 to Merck's Motion, ¶ 1) ("I am a practicing statistician with considerable experience working in both academia and with the pharmaceutical industry and government in the area of drug safety, **including clinical trials**, observational studies, and drug safety surveillance.") (emphasis added). Dr. Madigan's curriculum vitae additionally confirms that he is <u>published</u> in the area of clinical trials[1] and has presented on the subject as well.[2] Dr. Madigan is clearly qualified to render his opinions regarding Merck's clinical trials in this case.

---

[1] *See* Dr. Madigan's CV, attached hereto as **<u>Exhibit A</u>**, ¶ 17 ("Bayesian Methods for Design and Analysis of Safety Trials"); ¶ 40 ("Bayesian Approaches to Aspects of the Vioxx Trials: Non-ignorable Dropout and Sequential Meta-Analysis").

[2] *Id.* at page 21 (Cambridge University, Statistical Laboratory, "Noncompliance in clinical trials," October 1997).

Merck alleges that Dr. Madigan's opinions regarding the adequacy of Merck's disclosure necessarily requires medical testimony, citing the following cases: *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 200 (5th Cir. 2016) (chiropractor not qualified to provide medical causation testimony) (citing *Edmonds v. Illinois Cent. Gulf R. Co.*, 910 F.2d 1284, 1286-87 (5th Cir. 1990) (psychologist, as not a medical doctor, could not testify about the medical causation of a patient's heart disease); *Kourkounakis v. Russo*, 167 Fed. Appx. 255, 257 (2d Cir. 2006) (doctor who had not practiced medicine since the mid-1990s, did not have a valid medical license, and who never performed a LASIK surgery was not qualified to testify as to the defendant's departure from accepted LASIK practice); *Gebhardt v. Mentor Corp.*, 15 Fed. Appx. 540, 542 (9th Cir. 2001) (expert with no medical training was not qualified to opine how a warning label would have affected a surgeon's decision to use the device at issue); *Falcon v. State Farm Lloyds*, 1:12-CV-491-DAE, 2014 WL 2711849, at *20 (W.D. Tex. June 16, 2014) (industrial hygienist not qualified to opine as to what caused the plaintiff's health symptoms); *King v. Synthes (U.S.A.)*, 532 F. Supp. 2d 828, 832 (S.D. Miss. 2006) (Ph.D. in medical technology studies not qualified to opine to causal connection between plaintiff's injury and the failure of the medical device at issue).

In all of these cases cited by Merck, the plaintiff was attempting to utilize an unqualified expert witness to opine to the <u>causation</u> of the plaintiff's injury. Here, it is undisputed that Dr. Madigan is not seeking to opine regarding the causal link between Ms. Levitt's injuries and her intake of VIOXX. As such, all of the cases above are distinguishable and inapplicable.

Merck next cites a string of cases that allegedly held that statisticians specifically are not qualified to offer medical testimony: *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 453 (D.D.C. 2006), *on reconsideration in part, United States v. Philip Morris USA, Inc.*, 783 F.

Supp. 2d 23 (D.D.C. 2011) ("because he is a statistician, and neither an epidemiologist nor a medical doctor, Dr. Wecker is 'not able to offer opinions as to causation' relating to the relative health effects of low tar cigarettes."); *Edmonds*, 910 F.2d at 1287 (clinical psychologist not permitted to testify as to causation of plaintiff's coronary artery disease).

Again, Ms. Levitt is not offering Dr. Madigan as an expert to opine that Vioxx caused her injuries. Instead, he is offering opinions to the inadequacy of Merck's internal meta-analysis and studies that attempted to quantify Vioxx's cardiovascular risks, and the errors Merck committed when it produced the results to the FDA, physicians, and the public at large. A medical degree is simply not required in order to qualify Dr. Madigan to express these opinions.

To bolster its argument that medical expertise is required to qualify Dr. Madigan to give his opinions in this case, Merck cites *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 265 (5th Cir. 2002), with the confusing explanatory parenthetical of "holding that testimony 'as to the adequacy of the warning contained in a drug label' need not extend to 'expertise outside the treating physician's field." (Merck's Motion, page 6). The actual citation from the case reads: "This court has previously recognized that a treating physician does not necessarily testify in an expert capacity when he or she testifies as to the adequacy of the warning contained in a drug label. Indeed, no expertise outside the treating physician's field is required for such an assessment." *Stahl*, 283 F.3d at 265. This case does not help Merck, and is inapplicable to the determination of whether Dr. Madigan is qualified to render his opinions in this case.

Merck additionally provides a long string of citations to support its assertion that courts routinely prohibit experts from opining about the adequacy of a manufacturer's disclosures about drug risks when the witness "lacks requisite expertise:" *Chaplin v. City of Muskogee*, CIV-11-158-KEW, 2012 WL 768041, at *2 (Mar. 8, 2012) (expert witness not qualified to opine that

police officers in excessive force case failed to provide adequate medical treatment); *In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 557 (S.D.N.Y. 2004) (excluding expert testimony as to what physicians would do if different information had been provided on a drug label); *Rheinfrank v. Abbott Laboratories, Inc.*, 119 F. Supp. 3d 749, 773 (S.D. Ohio 2015), (specifically permitting expert to opine on the medical facts and science regarding the risks and benefits of the drug at issue compared with what was provided by the manufacturer on the label); *Hernandez v. Schering Corp.,* 2011 IL App (1st) 093306, ¶ 41, 958 N.E.2d 447, 455 (expert not permitted to testify as to adequacy of warning, or what a practicing physician would consider an adequate warning).

Again, all of the cases cited by Merck are distinguishable. Dr. Madigan is not seeking to opine what physicians would have done had Merck placed a different label on Vioxx. Instead, he is a statistician offering opinions on the true statistical results of Merck's studies versus what Merck actually disclosed to physicians and the public. This type of testimony was explicitly approved of by the *Rheinfrank* decision, cited by Merck. There, the Southern District of Ohio relied on the case of *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *11 (E.D.Pa. June 20, 2000), where the court "allow[ed] the experts to offer opinions concerning medical facts and science regarding the risks of the drugs in question, and to compare that knowledge with what was provided in the drug label and warning." *Rheinfrank,* 119 F. Supp. 3d at 773. The *Rheinfrank* Court permitted the plaintiff's expert to "opine[] on the medical facts and science regarding the risks and benefits of [the drug at issue] and compare[] that knowledge with what was provided in the test of the labeling" *Id*. This Court should permit Dr. Madigan to similarly opine.

Under Rule 702, a proffered witness must be an expert. This requirement has been liberally construed. "We have held that a broad range of knowledge, skills, and training qualify an expert as such, and have eschewed imposing overly rigorous requirements of expertise." *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 781 (3d Cir. 1996) (internal citations omitted).

In *Holbrook*, the 3rd Circuit overturned the district court's decision to exclude the plaintiff's treating physician, who specialized in internal medicine, from testifying regarding the plaintiff's mesothelioma because the expert was not an oncologist or specialist in cancer diagnosis. *Id.* The Court explained:

> Because of our liberal approach to admitting expert testimony, most arguments about an expert's qualifications relate more to the weight to be given the expert's testimony than to its admissibility. Thus, witnesses may be competent to testify as experts even though they may not, in the court's eyes, be the "best" qualified. Who is "best" qualified is a matter of weight upon which reasonable jurors may disagree.

*Id.* at 782. The Court further explained that "insistence on a certain kind of degree or background is inconsistent with our jurisprudence in this area. The language of Rule 702 and the accompanying advisory notes make it clear that various kinds of 'knowledge skill, experience, training or education,' Fed.R.Evid. 702, qualify an expert as such." *Id.* (internal citation omitted). "Following this logic, it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id.*

The fact that Dr. Madigan does not have a medical degree does not disqualify him from providing his opinions in this case. The issue of whether Dr. Madigan is the "best qualified" to provide his opinions is an issue for the jury.

As is clear from reading Dr. Madigan's report and the citations to it contained in Merck's own Motion, Dr. Madigan is not offering medical opinions. Instead, he has reviewed what

Merck's studies actually show, and compared those true results with what Merck chose to disclose. This is well within his expertise as a statistician. He is additionally qualified to testify regarding endpoints and the data Merck chose to use in its studies. Merck's Motion should be denied.

### 2.  Factual Narratives Are Proper if they Assist the Jury

Merck next seeks to exclude Dr. Madigan's "narrative opinions." Merck's argument is entirely regarding Dr. Madigan's recitation of the facts underlying his own opinions—specifically the facts known to Merck at the time of its studies and analysis, based on Merck's own documents and the testimony of Merck employees. Merck argues that by providing this background, Dr. Madigan is attempting to "summarize and synthesize the record for the jury, thereby usurping its role at trial." (Defendant's Motion, page 12).

However, none of Dr. Madigan's testimony can be considered "mere narration." To the contrary, it represents "opinions based upon facts that could be accepted by the jury." *Duling v. Domino's Pizza, LLC*, 1:13-CV-01570-LMM, 2015 WL 3407602, at *13 (N.D. Ga. Jan. 14, 2015) (emphasis in original).  In *Duling*, the Court explained:

> As a general matter, it is "inappropriate for experts to become a vehicle for factual narrative." *S.E.C. v. Tourre,* 950 F.Supp.2d 666, 675 (S.D.N.Y.2013). Simply put, an expert cannot act "simply as a narrator of the facts" as such testimony would fail to "convey opinions based on an expert's knowledge and expertise." *Id.* However, as opposed to providing a mere factual narrative, and (*sic*) expert is allowed to articulate the "factual underpinning" upon which he bases his opinion. *FNB Bank v. Park Nat'l Corp.,* 996 F.Supp.2d 1187, 1190 (S.D.Ala.2014). This makes logical sense, as "[a]n expert is ... permitted to base his opinion on a particular version of the disputed facts and the weight to be accorded to that opinion is for the jury."

*Duling*, 2015 WL 3407602, at *12 (internal citations omitted).

Here, as the Court held in *Duling*, and "[a]s expressed in *FNB Bank*," Dr. Madigan is "allowed to articulate the 'factual underpinning' upon which [his] opinions are based." *Id.* at

*13. As such, Dr. Madigan's descriptions of the version of facts upon which he based his expert opinions are not improper. *Id.* Additionally, just because Merck may disagree with the version of the facts that Dr. Madigan bases his opinions on, that does not mean his opinions must be excluded. This "can be properly brought to the jury's attention by Defendants through cross-examination." *Id.* at *13, citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); and *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (explanatory parentheticals in original). Here, due to Merck's ability to cross examine Dr. Madigan regarding his opinions and the facts upon which they are based, "there is no risk that the jury in this case will fail to understand [Dr. Madigan's] opinions are based on a *version* of facts that the parties dispute." *Id.* (emphasis in original).

Dr. Madigan should be permitted to discuss the complex and highly technical facts and documentation underlying his opinions, and his expertise will help the jury understand how to utilize the facts in their deliberations. *FNB Bank*, 996 F. Supp. 2d at 1190 (testimony did not "constitute a 'factual narrative,'" but "provide[d] the necessary factual underpinning for [the expert's] opinions"); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liab. Litig.*, 3:11-MD-2244-K, 2014 WL 3557345, at *7 (N.D. Tex. July 18, 2014) ("Expert narrative testimony is entirely permissible where the documents . . . the expert is reviewing are complicated, voluminous, or involve scientific or technical data and such narrative summary would assist the trier of fact in understanding the documents," and collecting cases).

Merck's Motion to Exclude Dr. Madigan's "narrative testimony" should therefore be denied.

**3.** **Merck Has Suffered No Prejudice by Dr. Madigan's Recently-Conducted Statistical Analysis**

Merck lastly complains that Dr. Madigan "failed to comply with his discovery obligations," so his recently-completed statistical analysis of Vioxx data should be excluded. Dr. Madigan's report was completed on December 8, 2013. Dr. Madigan was deposed on March 7, 2016. Dr. Egilman was deposed on April 12, 2016, where he testified that he had asked Dr. Madigan "to run the placebo data for acute coronary syndrome. . . that he has from all the Merck studies. . . **this week**." (Deposition of Dr. Egilman, attached hereto as **Exhibit B**, at 39:14-18) (emphasis added). It has been several months since Merck learned of Dr. Madigan's analysis, yet it has never asked to re-depose him, hoping instead that this Court will merely exclude the introduction of the analysis altogether.

It is within this Court's discretion to allow Dr. Madigan's statistical analysis into evidence. "Statistical analysis, like other expert testimony, must be "both relevant and reliable," and "[d]etermining the validity and value of statistical evidence is firmly within the discretion of the district court." *Lewis v. Ascension Par. Sch. Bd.*, 806 F.3d 344, 360 (5th Cir. 2015) (internal citation omitted). Here, Merck's complaints regarding Dr. Madigan's statistical analysis are not that the analysis is not relevant or reliable, but rather that it was merely late, in that it was conducted after Dr. Madigan's deposition.

To begin, if Merck's main complaint is that Dr. Madigan had not completed the analysis at the time of his deposition, then it is free to re-depose him on that limited issue. Merck was able to question Dr. Egilman about the analysis at length, and Plaintiff intends that it will be Dr. Egilman, and not Dr. Madigan, who testifies regarding the results of this analysis at trial.

This Court should not exclude Dr. Madigan's analysis at trial. Merck has not been prejudiced, as it was able to question Dr. Egilman regarding the study the very week he asked that it be completed. Plaintiff is willing to re-produce Dr. Madigan for deposition should this Court deem that necessary. Alternatively, Plaintiff will only elicit opinions regarding Dr. Madigan's analysis from Dr. Egilman, so as to cure any alleged prejudice or surprise on the part of Merck. The analysis should not be completely excluded however.

**IV.    CONCLUSION**

Merck has failed in its burden to show that Dr. Madigan is unqualified to render his opinions in this case. All of Dr. Madigan's opinions fall within his expertise, and his opinions regarding Merck's studies and analysis of Vioxx do not require "medical testimony," as Merck argues. The "narration testimony" that Merck complains of is instead merely the factual underpinnings Dr. Madigan's opinions, and will assist the jury in their determination of the facts in this case. The recent analysis conducted by Dr. Madigan at the request of Dr. Egilman simply was not available at the time Dr. Madigan gave his report and deposition years ago, and as Dr. Egilman has already testified at length regarding the study, it should not be excluded. Alternatively, Merck should re-depose Dr. Madigan to eliminate all concerns about surprise at trial. For all these reasons, Merck's Motion to Exclude the Opinions of Dr. Madigan should be denied.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Plaintiff's Opposition to Defendant's Motion to Exclude the Expert Opinions of David Madigan Ph.D.** has been served on Defense Counsel, Elaine Horn and Emily Pistilli and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 27th day of July, 2016.

*/s/ Daniel A. Thomas*
Kenneth B. McClain                MO #32430
Daniel A. Thomas                  MO #52030
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**