# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | MDL Docket No. 1657 |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck & Co., Inc.* | * | MAGISTRATE JUDGE KNOWLES |
| **2:06-cv-09757-EEF-DEK** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF DR. THOMAS ROSAMOND M.D.

Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**

*/s/ Daniel A. Thomas*

| | |
|---|---|
| Kenneth B. McClain | MO #32430 |
| Daniel A. Thomas | MO #52030 |

221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 4

II.    ARGUMENT ..................................................................................................................... 5

   1.   Dr. Rosamond, as Plaintiff's Treating Physician, Did Not Have to Submit an Expert Report.................................................................................................................................. 5

   2.   Merck Has Had Ample Notice of Dr. Rosamond's Opinions ............................................. 9

   3.   Dr. Rosamond's Letter Satisfies the Expert Report Requirement ..................................... 11

   4.   Dr. Rosamond Explained the Bases for his Opinion in his Deposition, and His Opinion is Reliable. ............................................................................................................................. 12

III.    CONCLUSION ................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

*Anders v. Hercules*, 311 F.R.D. 161 (E.D. La. Nov. 12, 2015) ............................................... 10, 11

*Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.,* 73 Fed. R. Serv. 3d 252(E.D. La. 2009) ......................................................................... 12

*Boudreaux v. Ace Am. Ins. Co., CIV.A. 11-1213*, 2013 WL 3440027 (E.D. La. July 9, 2013) .... 11

*Boudreaux v. J.P. Morgan Chase & Co.,* 2007 WL 4162908 (E.D.La. Nov.21,2007) ................. 12

*Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307 (5th Cir. 1989) .......................... 13, 14

*Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547 (E.D. La. 2015).................................................... 14, 15

*Gray v. Vastar Offshore*, CIV.A. 04-1162, 2005 WL 399396 (E.D. La. Feb. 14, 2005) ........... 6, 7

*Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. Appx. 444 (5th Cir. 2013) .............................. 11

*Knorr v. Dillard's Store Services, Inc.*, CIV.A. 04-3208, 2005 WL 2060905 (E.D. La. Aug. 22, 2005) ..................................................................................................................................... 6, 12

*Martin v. CSX Transp., Inc.*, 215 F.R.D. 554 (S.D. Ind. 2003) ...................................................... 8

*Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804 (6th Cir. 2005)................................................ 6

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) ....................................................... 14

*Phillips v. Occidental Chem. Corp.*, CIVA99-828, 2000 WL 1092857 (E.D. La. Aug. 2, 2000).. 7

*Rea v. Wisconsin Coach Lines, Inc.*, CIV.A. 12-1252, 2014 WL 4981803 (E.D. La. Oct. 3, 2014) ................................................................................................................................................. 6, 10

**Rules**

Federal Rule of Civil Procedure 26 ................................................................................... 5, 11, 12

Federal Rule of Evidence 702, 703, or 705; and (ii)............................................................. 11, 13

Rule 26(a)(2)(A) ........................................................................................................................... 11

Rule 26(a)(2)(B)................................................................................................................... 6, 9, 11

Rule 26(a)(2)(C)................................................................................................... 7, 11, 12, 13

## I. INTRODUCTION

Defendant Merck's Motion to Exclude the Expert Opinions of Dr. Thomas Rosamond, M.D. gives off the distinct sensation of déjà vu. Merck has already filed this Motion, on March 28, 2014 when it filed its first (of three) Motion for Summary Judgment (ECF # 64878). Plaintiff filed an Opposition to this Motion on May 9, 2014 (ECF # 64965), Merck filed a Reply on May 16, 2014 (ECF # 64931), Plaintiff filed a Sur-Reply on June 30, 2014 (ECF # 64994), and Merck filed a Response to Plaintiff's Sur-Reply on July 22, 2014 (ECF # 65005). On March 17, 2015, the Court heard oral argument on the Motion (and Merck's second Motion for Summary Judgment). On April 21, 2015, this Court issued a nineteen-page Order, denying both of Merck's Motions (ECF # 65200).

One of the various issues raised in Merck's first Motion for Summary Judgment was regarding Plaintiff's treating physician Dr. Thomas Rosamond, and Merck's arguments there were identical to the Motion it recently filed to exclude Dr. Rosamond's opinions. As the Court explained in its April 21, 2015 Order:

> Specifically, Merck explains that Dr. Rosamond is unable to act as an expert witness because he formed his opinions regarding specific causation after he had ceased to be Ms. Levitt's treating physician. It also suggests that Dr. Egilman's expert witness report is unreliable because it is devoid of any methodology on the issue of specific causation.

(Order, attached hereto as **Exhibit 1** at page 7). This Court further explained Plaintiff's response in opposition:

> Ms. Levitt argues that pursuant to Federal Rule of Civil Procedure 26, she is not required to obtain an expert report from Dr. Rosamond because he was her treating physician. Ms. Levitt argues that this is the case even if Dr. Rosamond testifies about information he obtained after his treatment of Ms. Levitt. Ms. Levitt further argues that Dr. Rosamond provided a written letter that set forth the subject matter on which he is expected to testify, which satisfies the Federal Rule of Civil Procedure requirement.

(Order, attached hereto as Exhibit 1 at page 8).

As such, both parties have already fully briefed the issues that Merck now re-raises in its Motion to Exclude the Expert Opinion of Dr. Rosamond and this Court has already ruled on the matter. Merck fails to present any new facts or law that should cause this Court to reconsider its previous rejection of Merck's argument.

**II.     ARGUMENT**

As explained more fully below, Merck's Motion to Exclude Dr. Rosamond's Opinions should be denied. Dr. Rosamond is Plaintiff's **treating physician.** He is not a retained expert, and as such, a formal Rule 26(a)(2)(B) Report is not required of him. Even if a report was required, Dr. Rosamond's Lone Pine Report from 2009 satisfies the disclosure requirements for non-retained expert witnesses. Additionally, Dr. Rosamond's opinion is reliable, and it is not true—as Merck suggests—that he failed to review any literature regarding Vioxx prior to forming his causation opinion in this case.

> **1.  Dr. Rosamond, as Plaintiff's Treating Physician, Did Not Have to Submit an Expert Report**

In its Motion, Merck attempts to convert Dr. Rosamond from Plaintiff's treating physician into an expert witness she retained specifically for this litigation. Merck continuously cites the requirements for retained expert witnesses in its Motion to Exclude. Dr. Rosamond is Ms. Levitt's treating physician, and not an expert witness retained in anticipation of litigation. He therefore does not have to provide an expert report. While experts retained by a party must provide expert reports pursuant to Rule 26(a)(2)(B), treating physicians do not have to produce such reports, and may testify to the facts or data they learned during treatment of the plaintiff. *Rea v. Wisconsin Coach Lines, Inc.*, CIV.A. 12-1252, 2014 WL 4981803, at *2 (E.D. La. Oct. 3, 2014) (internal citations omitted) (cited by Merck).

5

Merck argues that Dr. Rosamond cannot provide opinions in this case because his 2009 "Lone Pine" report came after his medical treatment of Plaintiff ceased. Merck cites a number of cases in support of this proposition, all of which are clearly distinguishable. Merck's cases either denied similar requests by defendants to strike the opinions of treating physicians (*See Gray v. Vastar Offshore*, CIV.A. 04-1162, 2005 WL 399396, at *1 (E.D. La. Feb. 14, 2005) (denying defendants' request to strike plaintiff's treating physicians); *Knorr v. Dillard's Store Services, Inc.*, CIV.A. 04-3208, 2005 WL 2060905, at *3 (E.D. La. Aug. 22, 2005) (same)), or dealt with physicians who based their opinions on information obtained from sources other than the plaintiff. *See Rea*, 2014 WL 4981803, at *5 (physician's opinion came in the form of an affidavit prepared in anticipation of litigation by the plaintiff's attorney); *Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804, 810 (6th Cir. 2005) (physician's opinion was based on his viewing of a videotape of plaintiff's injury, not merely his personal observations during treatment)).

In *Knorr*, 2005 WL 2060905, cited by Merck, the defendant similarly moved to strike plaintiff's treating physicians, arguing that they had not produced expert reports. *Id*. at *2. The plaintiff there, like Ms. Levitt here, responded that the treating physicians were not specially retained expert witnesses who necessarily had to prepare expert reports. *Id*. The Eastern District of Louisiana **agreed**: "The Court will not strike plaintiff's treating physicians based on plaintiff's failure to provide written expert reports. A treating physician may testify to his opinions about a plaintiff's injuries if his testimony is based on knowledge acquired during the course of his treatment of the plaintiff." *Id*. at *3.

In *Gray*, 2005 WL 399396, likewise cited by Merck, the Court's scheduling order specifically required expert reports from plaintiff's treating physicians. *Id*., at *1. There, the defendants moved to strike the plaintiff's treating physicians because they had not provided

6

expert reports. *Id*. The court denied the defendants' motion: "The Court will not strike plaintiff's treating physicians based on plaintiff's failure to provide written reports. Plaintiff's treating physicians may testify, however, only about the actual treatment they rendered to plaintiff and opinions derived directly therefrom." *Id*.

The "subsequent evaluation" language Merck cites *Gray* for can be found in the court's explanation that "Courts have held that written reports are not required for treating physicians whose testimony and opinions derive from information learned during actual treatment of the patient, rather than from subsequent evaluation as a specially retained expert." *Id*., citing *Phillips v. Occidental Chem. Corp.*, CIVA99-828, 2000 WL 1092857, at *2 (E.D. La. Aug. 2, 2000) ("Case law has held that to the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient, **as opposed to being subsequently supplied by an attorney involved in litigating the case** involving the condition or injury, then no comprehensive written report signed by the witness is required.") (emphasis added).

As is clear, the cases cited by Merck directly contradict its argument that Dr. Rosamond—Ms. Levitt's treating physician—was required to submit an expert report. The cases instead hold the opposite and support Plaintiff's contention here—Dr. Rosamond is entitled to testify to his opinions derived from his treatment of Ms. Levitt. Nothing in his deposition nor his report suggests that his causation opinions in this case were supported by anything supplied by Ms. Levitt's attorney in anticipation of litigation.

Nor are Dr. Rosamond's opinions necessarily "retained expert" opinions merely because he testifies to causation issues. In *Martin v. CSX Transp., Inc.*, 215 F.R.D. 554 (S.D. Ind. 2003) the court held that the expert disclosure requirements were inapplicable because the treating

7

physician formed the causation opinion during the care and treatment of the plaintiff, not in anticipation of litigation:

> The nature of these opinions derives specifically from personal knowledge acquired through the course of treatment. It is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination. To assume otherwise is a limiting perspective, which narrows the role of a treating physician. Instead, to properly treat and diagnose a patient, the doctor needs to understand the cause of a patient's injuries. As such, a physician "whose proposed opinion testimony will come from his knowledge acquired as a treating physician, is *not* someone from whom a Rule 26(a)(2)(B) report is required.

*Martin*, 215 F.R.D. at 557 (internal citations omitted).

Applying all of these principles to Dr. Rosamond, it is clear that his causation opinions were directly related to his treatment of Ms. Levitt. While Merck makes the bald, unsupported assertions that Dr. Rosamond reached his causation conclusions "for the purposes of this litigation," (Merck's Motion, page 4) and at "Ms. Levitt's request [which] was prompted by this Court's entry of Pretrial Order No. 28," there is no evidence that this is true. Instead, Dr. Rosamond testified that he **"saw her in 2009 as a patient in our office"** (Deposition of Dr. Rosamond, Attached to Merck's Motion as Exhibit B, at 20:10-11) (emphasis added) where Ms. Levitt asked Dr. Rosamond to "write a letter summarizing her medical care and whether **or not** [he] thought Vioxx was an issue." (*Id.* at 20:16-18) (emphasis added). His report can be found in the collection of Ms. Levitt's medical records, and is directly following an "Office Visit" the same day his report was written, wherein Dr. Rosamond conducted an examination of Ms. Levitt, as his patient, including discussing her medications, and taking her vital signs (See medical records of Ms. Levitt, attached hereto as **Exhibit 2**, bates numbers JL-MAC-000186-000188).

Dr. Rosamond never testified that he provided conclusions "for the purposes of this litigation" or due to "this Court's entry of Pretrial Order No. 28," as Merck suggests. Instead, he merely testified that he recalls Ms. Levitt "said that it was part of a probable lawsuit." (*Id.* at

8

22:20-22). Dr. Rosamond readily admitted in his deposition that he was there to testify because he was Ms. Levitt's treating physician, and that he has never provided expert testimony (*Id.* at 4:23-5:3). Dr. Rosamond additionally confirmed that he is not an expert specially retained by Plaintiff's attorneys for the purposes of this litigation, as he had never met or spoken to any of the attorneys for Ms. Levitt before his deposition (*Id*. at 6:19-21).

Additionally, it is clear from the face of Dr. Rosamond's September, 2009 "Lone Pine" Report that his opinions and conclusions were derived from information he learned **during his treatment of Plaintiff**: "I hope this review of our previous experience with Ms. Levitt is helpful. I have used our primary documents from that interaction to review the medical record." (Dr. Rosamond's Report, attached to Merck's Motion as Exhibit A). Additionally, Dr. Rosamond confirmed in his deposition that while his Report was written in 2009, and he had not seen Ms. Levitt as a patient since 2002, his opinions were all based on only his treatment of her, and not on subsequently-learned information: "The Vioxx information I included in my letter was all taken directly from our EMR, not from information she gave me at the time of the letter in 2009." (Deposition of Dr. Rosamond, attached to Merck's Motion as Exhibit B, at 26:21-24).

Dr. Rosamond, as Plaintiff's treating physician rather than a retained expert, is not required to submit an expert report, and is entitled to provide causation opinions derived from his treatment of Plaintiff. As confirmed in both his Report and at his deposition, his 2009 "Lone Pine" Report was based on his prior treatment of Plaintiff. As such, Defendants' Motion to exclude his testimony should be denied.

### 2. Merck Has Had Ample Notice of Dr. Rosamond's Opinions

As noted above, Dr. Rosamond was not required to provide a written report. As such, Rule 26(a)(2)(C) "creates a separate requirement [for] expert witnesses who do not provide a

written report, such as treating physicians." *Anders v. Hercules*, 311 F.R.D. 161, 162 (E.D. La. Nov. 12, 2015) (citing *Rea v. Wisconsin Coach Lines, Inc.*, CIV.A. 12-1252, 2014 WL 4981803, at *5 (E.D. La. Oct. 3, 2014) (internal citations omitted). Plaintiff also directs the Court's attention to footnote 4 in the *Anders* Opinion which cites an Advisory Committee Note for Fed. R. Civ. P. 26(a)(2)(B):

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

In lieu of an expert report, "Rule 26(a)(2)(C) requires the Plaintiff to submit a disclosure of [Dr. Rosamond's] expert testimony stating (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." *Anders*, 311 F.R.D. at 163 (internal citation omitted). Here, plaintiff submitted the following disclosure regarding Dr. Rosamond, and others, on December 13, 2013:

> The following persons are Jo Levitt's treating physicians and professional care providers. It is expected that they will testify on the subject matter of Jo Levitt's medical condition, medical care and/or medical treatment.  It is expected that their testimony will be consistent with their records.  None of the following potential witnesses are retained experts.  None have been hired by Plaintiffs.  The addresses of the persons named below have been provided in Plaintiff's Plaintiff Profile Form and again below.

(Plaintiff's expert disclosures, attached to Merck's Motion as Ex. D). Merck tacitly admits that Plaintiff has complied with Rule 26(a)(2)(C), as it did not argue to the contrary in its Motion. Merck was absolutely on notice that Plaintiff intended to introduce Dr. Rosamond to talk about Plaintiff's medical condition, medical care, and/or medical treatment.

The "basic purpose of Rule 26 is to prevent prejudice and surprise." *Anders,* 311 F.R.D. at 164 (citing *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. Appx. 444, 446 (5th Cir. 2013)). Here, Merck has absolutely no grounds to claim unfair surprise. Merck was provided a detailed Lone Pine report from Dr. Rosamond in 2009. Merck was provided an expert disclosure in 2013. And, Merck was able to fully depose Dr. Rosamond on all of his opinions in 2015.

Even if the Court were to find a Plaintiff's expert disclosure, in and of itself, was not technically in sync with the procedural requirements of Rule 26(a)(2)(C), there is no unfair surprise here. The basic tenets of Rule 26 have been served and there are no grounds that would warrant the exclusion of Dr. Rosamond's testimony. In *Anders*, the Court found that "while the manner in which plaintiff disclosed 'a summary of the facts and opinions to which [Dr. Lee] is expected to testify' may not have been the preferred method, it was not so deficient as to warrant exclusion of Dr. Lee's testimony." *Anders,* 311 F.R.D. at 164 (citation omitted).

### 3. Dr. Rosamond's Letter Satisfies the Expert Report Requirement

Treating physicians have traditionally been exempt from Rule 26 reporting requirements for expert witnesses. *Boudreaux v. Ace Am. Ins. Co., CIV.A. 11-1213*, 2013 WL 3440027, at *3 (E.D. La. July 9, 2013). The exemption for treating physicians from Rule 26's reporting requirements is "based on Congress's effort in Rule 26 'to balance the fulsome and efficient disclosure of expert opinions with a concern that reports should not be required in all situations.'" *Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.,* 73 Fed. R. Serv. 3d 252 at *4 (E.D. La. 2009), citing *Boudreaux v. J.P. Morgan Chase & Co.,* 2007 WL 4162908, *2 (E.D. La. Nov. 21, 2007). This reporting requirement distinction between retained experts and treating physicians reflects the drafters'

concern "about the resources that might be diverted from patient care if treating physicians were required to issue expert reports as a precondition to testifying." *Id*. (internal citations omitted).

In 2010 the Federal Rules were amended, in part changing the Rule 26 report requirements. *Boudreaux,* 2005 WL 2060905 at *3. These notes do not require expert reports from treating physicians, but the notes to Rule 26(a)(2)(C) mandate that a witness who does not provide a written report must provide a disclosure that states: (i) the subject matter on which the witness is expected to give under Fed. R. Evid. 702, 703, or 705; and (ii) a summary of facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C) Advisory Committee Note.

Even if the Court were inclined to entertain Merck's recycled arguments, Merck seems to ignore the fact that Dr. Rosamond provided a written account setting forth his opinions; the basis for those opinions; and the facts and data relied upon in reaching those opinions. This letter sets forth the subject matter on which he is expected to testify, and a summary of his facts and opinions. This is sufficient under the Federal Rules.

### 4. Dr. Rosamond Explained the Bases for his Opinion in his Deposition, and His Opinion is Reliable.

Merck next moves to exclude Dr. Rosamond's opinions because he "did not specifically review any medical literature relating to Vioxx before preparing his 2009 Lone Pine Letter and has never rigorously reviewed data concerning the cardiovascular effects of Vioxx." (Merck's Motion, page 3). However, even a cursory review of Dr. Rosamond's deposition testimony shows that Merck's assertions are false.

When asked what he meant when he wrote "what we now know in retrospect about Vioxx" in his Report, Dr. Rosamond explained:

> Its subsequent removal from the market. And on the basis of higher cardiovascular **end point data**, and the contemporaneous coincidence that she was on it during that time of her presentation. Well, at the time – the letter's 2009. So I would have been familiar **with several of the publications referring to Vioxx and cardiovascular mortality in points at the time I crafted this letter**.

(Deposition of Dr. Rosamond, attached to Merck's Motion as Exhibit B, at 76:4-12) (emphasis added).

Merck's statement that Dr. Rosamond had not reviewed any literature at the time he wrote his report is simply not true. Dr. Rosamond explained:

> I was aware of the research on Vioxx at the time of this letter. It wasn't just Vioxx in isolation that made me think that it caused it. It was—and I state this specifically in the letter, 'We now know in retrospect.' So 'we now know' is based on the literature on Vioxx at the time in 2009 that I had it in my mind.

(*Id.* at 80:1-8).

Specifically, Dr. Rosamond had reviewed Eric Topol's article, which he believed was published in 2002 (*Id.* at 76:17-21), when it first came out (*Id.* at 11:22-12:8); the VIGOR study in the New England Journal (*Id.* at 77:6-12); an article in the New England Journal from 2005 (*Id.* at 12:11-13); and an article in the Lancet in 2007 (*Id.* at 12:14-15). All in all, "it was well-known by 2009 that Vioxx was implicated in increased cardiovascular events." (*Id.* at 77:13-15).

Merck's cited cases on this issue are distinguishable as well. In *Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307 (5th Cir. 1989), the Court held that the expert's "theory regarding the effects of doxylamine on acetylcholine, the nervous system and, ultimately, tissue development is nothing more than unproven medical speculation **lacking any sort of consensus**. Assuredly, one day in the future, medical science may have a clearer understanding of the mechanics of tissue development in the fetus. However, that is not the case today, and speculation unconfirmed by epidemiologic proof cannot form the basis for causation in a court of

law." *Id.* at 314-15 (emphasis added) Here, Dr. Rosamond's opinion that Vioxx causes cardiovascular events does not lack a consensus. The link is proven, and has been studied dozens of times and written in numerous published papers—even by Merck itself in its VIGOR and APPROVe trials. Medical science today, and in 2009, <u>does</u> have a clear understanding of the mechanics of Vioxx causing cardiovascular events. *Brock* is distinguishable and does not help Merck.

> In *Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998), the Court held:
>
> **In the absence of an established scientific connection** between exposure and illness, or compelling circumstances such as those discussed in Cavallo, the temporal connection between exposure to chemicals and an onset of symptoms, **standing alone,** is entitled to little weight in determining causation.

*Id.* at 278 (emphasis added). This is also not the situation here. It is not the case that Dr. Rosamond is the only person to ever opine to a link between Vioxx and cardiovascular events. There <u>is</u> an established scientific connection, and there was in 2009 at the time Dr. Rosamond wrote his report, hence his "we now know in retrospect" language. The temporal connection between Ms. Levitt's Vioxx intake and her coronary artery presentation is not "standing alone." *Moore* similarly does not help Merck.

> In *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547 (E.D. La. 2015), the plaintiff's expert opined that benzene, including gasoline, could cause AML, and claimed that he had reviewed the medical and scientific literature on benzene. *Id.* at 552. However, the expert had only reviewed benzene-specific scientific literature, but not studies pertaining to gasoline exposure, which was the product relevant to the lawsuit. *Id.* The Court held: "[Plaintiff's expert] has made no attempt to demonstrate why benzene-specific studies can reliably support the conclusion that gasoline can cause AML." *Id.* This holding is clearly distinguishable as well. It is not the case that Dr.

14

Rosamond reviewed literature on some other medication causing cardiovascular events. He reviewed Vioxx-specific studies, that all supported his conclusion.

Dr. Rosamond's causation opinion in this case is reliable. He reviewed the relevant studies and literature explaining the link between Vioxx and cardiovascular events prior to forming his conclusion. There is a consensus that these studies are sound, and some of the studies come from Defendant Merck itself. Its Motion to Exclude Dr. Rosamond's Opinions should be denied.

## III.    CONCLUSION

Merck continues to cite inapplicable and distinguishable caselaw and misquote the reports and deposition testimony of Plaintiff's witnesses, in a clear attempt to mislead this Court. This Court should not be fooled. Dr. Rosamond, as Plaintiffs' treating physician, is not a retained expert from whom a formal expert report is required. Merck has been on notice of Dr. Rosamond's opinions and testimony since 2009, and his "Lone Pine" report complies with the Federal Rule regarding disclosures for non-retained expert witnesses. Dr. Rosamond's opinions are reliable and derive from his treatment of Ms. Levitt and his review and research of the relevant scientific studies and publications. Merck's Motion to Exclude the Opinions of Dr. Rosamond should therefore be denied.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Plaintiff's Opposition to Defendant's Motion to Exclude the Expert Opinions of Dr. Thomas Rosamond M.D. has been served on Defense Counsel, Elaine Horn and Emily Pistilli and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 27th day of July, 2016.

*/s/ Daniel A. Thomas*
Kenneth B. McClain           MO #32430
Daniel A. Thomas             MO #52030
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile
**ATTORNEYS FOR PLAINTIFFS**