# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX® | * | **MDL Docket No. 1657** |
| | * | |
| **PRODUCTS LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| *This document relates to* | * | **JUDGE FALLON** |
| | * | |
| *Jo Levitt v. Merck & Co., Inc.* | * | **MAGISTRATE JUDGE KNOWLES** |
| **2:06-cv-09757-EEF-DEK** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S OPPOSITION TO DEFENDANT MERCK'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S BUSINESS DAMAGES CLAIMS

Respectfully submitted,

**HUMPHREY**, **FARRINGTON** & **McCLAIN, P.C.**

*/s/ Daniel A. Thomas*
Kenneth B. McClain                     MO #32430
Daniel A. Thomas                       MO #52030
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 5

II.   LEGAL STANDARD ........................................................................................... 5

III.  BACKGROUND FACTS ...................................................................................... 6

IV.   ARGUMENT ........................................................................................................ 7

    1.  This Court Should Not Consider Merck's "Background" Section of Its Brief As It
        Presents Controverted And Unsupported Facts Irrelevant To The Issue At Hand ............. 7

    2.  Merck's Motion is Not a Proper Motion for Summary Judgment ...................................... 8

    3.  Evidence Regarding Ms. Levitt's Business Losses is Admissible ..................................... 9

    4.  Ms. Levitt's Business Losses Are Relevant to Determining Her Personal Pecuniary Losses
        .......................................................................................................................................... 11

    5.  Ms. Levitt's Losses Are Not Speculative ......................................................................... 16

    6.  Determining Ms. Levitt's Damages is a Question for the Jury.......................................... 19

    7.  Ms. Levitt Did Not Intentionally Destroy Evidence, Therefore No Sanction for Spoliation
        is Warranted ...................................................................................................................... 19

V.    CONCLUSION ................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Baldridge v. Dir. of Revenue, State of Mo.*, 82 S.W.3d 212 (Mo.App. W.D. 2002) ................... 20

*Bass v. Gen. Motors Corp.*, 929 F. Supp. 1287 (W.D. Mo. 1996) ............................................... 21

*Bischoff v. Dodson*, 405 S.W.2d 514 (Mo. App 1966) ................................................................. 14

*Bova v. Gary*, 843 N.E.2d 952 (Ind. Ct. App. 2006) ............................................................ 14, 15

*Brissette v. Milner Chevrolet Co.*, 479 S.W.2d 176 (Mo. App 1972) ......................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................... 6

*Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993)........................................... 19, 21

*Eastman Kodak Co. v. Image Tech. Services, Inc.*, 504 U.S. 451, 112 S. Ct. 2072, 119 L. Ed. 2d

    265 (1992) ........................................................................................................................... 6, 9

*Fairbanks v. Weitzman*, 13 S.W.3d 313 (Mo.App. E.D. 2000) ............................................. 16, 19

*Ganz v. Metro. St. R. Co.*, 220 S.W. 490 (Mo. 1920) .................................................................. 18

*Gildersleeve v. Overstolz*, 90 Mo. App. 518 (1901) .................................................................... 18

*Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752 (Mo. 2010).................................................... 18

*McDonald v. Missouri-Kansas-Texas R. Co.*, 401 S.W.2d 465 (Mo. 1966) ............................... 16

*Messina v. Prather*, 42 S.W.3d 753 (Mo.App. W.D. 2001) ........................................................ 18

*Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73 (Mo.App. W.D. 1995)............................... 20

*Perez-Velasco v. Suzuki Motor Co., Ltd.*, 266 F. Supp. 2d 266 (D.P.R. 2003) .......................... 20

*Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522 (Mo.App. E.D. 1998).................................... 20

*Seymour v. House*, 305 S.W.2d 1 (Mo. 1957) ..................................................................... passim

*Solomon v. Houston Corrugated Box Co., Inc.*, 526 F.2d 389 (5th Cir. 1976) ............................. 5

*Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004). ...................................... 20

*Terry v. Houk*, 639 S.W.2d 897 (Mo.App. W.D. 1982) ............................................. 9, 12, 13, 14

*Transource Int'l, Inc. v. Trinity Indus., Inc.*, 725 F.2d 274 (5th Cir. 1984).................................. 5, 6

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) ............. 20

*Weindel v. DeSoto Rural Fire Prot. Ass'n, Inc.*, 765 S.W.2d 712 (Mo.App. E.D. 1989)............. 16

## **<u>Rules</u>**

Rule 56(c)................................................................................................................................... 6

Rule 56(a)................................................................................................................................... 8

## I.      INTRODUCTION

This is the third time Merck has moved for summary judgment in this case. This Court should deny Merck's third attempt at summary judgment, just as it did for Merck's previous two Motions. Merck now moves for summary judgment on Plaintiff's "Business Damages Claims." Merck asks this Court to issue two rulings. First, that as a matter of law, Plaintiff cannot receive any damages as a result of her lost business income. Second, that as a matter of law, all such evidence regarding Ms. Levitt's lost businesses is irrelevant and inadmissible. Both of Merck's arguments fail.

First, the evidence in this case supports a finding that Plaintiff can recover damages beyond her salary for her lost wages and lost earning capacity. Second, Merck's Motion is not a true Motion for Summary Judgment, but is instead a Motion *in Limine* seeking to prevent Plaintiff from introducing evidence at trial regarding how her businesses failed once her injuries from Vioxx prevented her from working at her previous level. Plaintiff's business losses are relevant in determining her personal pecuniary loss, and this Court should not limit evidence regarding Plaintiff's lost earnings or lost earning capacity to only the salary she chose to pay herself. These losses are not speculative, and are supported by financial statements created contemporaneously with the timeframes they report. A jury should determine Ms. Levitt's damages in this case, and Merck's Motion for Summary Judgment must be denied.

## II.     LEGAL STANDARD

The Fifth Circuit has explained that summary judgment is a "drastic relief" and must be approached cautiously. *Transource Int'l, Inc. v. Trinity Indus., Inc.*, 725 F.2d 274, 279 (5th Cir. 1984), citing *Solomon v. Houston Corrugated Box Co., Inc.*, 526 F.2d 389, 393 (5th Cir. 1976). Summary judgment should <u>only</u> be entered when, viewing the evidence in a light *most favorable*

to the non-moving party, it appears from the pleadings, depositions, answers to interrogatories, admissions, and affidavits that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Transource Intern., Inc.*, 725 F.2d at 279. As the party opposing the motion for summary judgment, Ms. Levitt bears the burden of responding *only after* Merck, as the moving party, meets its burden of coming forward with proof of the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The Court is not permitted to weigh the merits or credibility of the evidence, rather "the evidence of [Plaintiff] is to be believed, and all justifiable inferences are to be drawn in [Plaintiff's] favor." *Eastman Kodak Co. v. Image Tech. Services, Inc.*, 504 U.S. 451, 112 S. Ct. 2072, 2077, 119 L. Ed. 2d 265 (1992). Because the evidence does not establish that the Merck is entitled to judgment as a matter of law on Plaintiff's claim for business damages, Merck's motion must be denied.

## III.     BACKGROUND FACTS

Plaintiff Jo Levitt was the creative and driving force behind her businesses for three decades before Merck's defective Vioxx medication robbed her of her ability to work. These two businesses—a hotel in Nebraska and a children's clothing business—were profitable and successful until Ms. Levitt's cardiovascular injuries caused by her ingestion of Vioxx. There is testimony from Ms. Levitt, her husband and co-owner in these businesses, and other employees that Ms. Levitt's cardiovascular injuries directly contributed to cause the downfall of these family businesses. Ms. Levitt was a co-owner of both businesses, and additionally set up a subchapter S Corporation whereby all profits would flow directly through to her and her husband.

6

Ms. Levitt and her husband arbitrarily picked amounts to pay themselves in salaries. Merck now asks this Court to limit Ms. Levitt's damages for her lost earnings and lost earning capacity to this figure that the Levitts themselves chose. This salary amount, however, is not the true measure of Ms. Levitt's damages, when considering the large amount of income she received as a 50% shareholder in her family's businesses.

Ms. Levitt is entitled to recover her true economic damages. A jury should be the one to decide this figure, after hearing all the evidence regarding Ms. Levitt's failed businesses. The amount of income Ms. Levitt received from her companies should be included when determining her pecuniary loss.

## IV.   ARGUMENT

### 1.   This Court Should Not Consider Merck's "Background" Section of Its Brief As It Presents Controverted And Unsupported Facts Irrelevant To The Issue At Hand

As it did with its previous Motion for Summary Judgment on Proximate Causation, Merck inappropriately includes a large "background" section which attempts to present contested facts immaterial to its Motion as a true and accurate history of the case.  In doing so, Merck misrepresents the facts of this case and presents a one-sided and biased version of both the events and Ms. Levitt. This is a clear attempt to distract the Court from the reality that the facts do not support Summary Judgment.  Merck misrepresents Ms. Levitt's medical history, the nature of her business and work life, the nature of her injuries, and Ms. Levitt as a person in general.

Ms. Levitt is a hard-working entrepreneur who started two businesses in her garage and built them into successful endeavors. Prior to the cardiovascular events caused by Vioxx, she was a fifteen-year non-smoker who ran dozens of miles each week.  Vioxx robbed her of her health and much of the fruits of her business.  Vioxx has caused permanent and lasting damage

to her cardiovascular system.  She continues to suffer from her injuries, including millions of dollars in economic damages alone.  This is not a frivolous case. Merck has seriously injured Ms. Levitt by callously seeking profit at any cost – including the health of its customers.  When all the evidence is presented to the finder of fact in this case, it will look nothing like the picture Merck paints in the "background" section of its Motion.

### 2.  Merck's Motion is Not a Proper Motion for Summary Judgment

Rule 56(a) provides that "a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." This, Merck has failed to do. Its Motion for Partial Summary Judgment does not identify any specific <u>claim</u> made by Plaintiff. Instead, Merck has moved for partial summary judgment on Plaintiff's "Business Damages Claims." Merck has identified two statements made by Plaintiff when she was representing herself *pro se* in this litigation in support of its argument that Plaintiff is seeking "business damages."

On Plaintiff's Amended  Profile Form, she was asked to:

State the total amount of time you have lost from work as a result of any condition that you claim or believe was caused by your use of Vioxx and the amount of income that you claim you lost

(See Ex. 14 to Merck's Motion, page 30). Plaintiff responded: "10 years salary is small part. Company Cash flow & earnings." Merck's third Interrogatory to Plaintiff asked:

Provide the factual basis and a computation for each category of damages you claim and identify all documents upon which you will rely in support of each category of damages.

(See Ex. 15 to Merck's Motion, page 5). Plaintiff responded in pertinent part:

I am neither a lawyer or expert, therefore I do not believe Merck would accept a computation from me on determination of damages. In 2000 our net worth of approx 20 million. I've lost my business and in process of losing my home.

(*Id.*).

Merck extrapolates these two statements made by Plaintiff to mean that Plaintiff "believes that she should recover up to $20 million for business losses sustained by her family's corporations." (Merck's Motion, page 1). Merck's Motion is so ambiguous as to be entirely unhelpful in narrowing the issues for trial. Merck's Motion for Partial Summary Judgment is more like a Motion *in Limine*. Indeed, section C to Merck's Motion asks this Court to "preclude the Levitts from offering evidence about their alleged business losses." (Merck's Motion, page 18).

Additionally, in the cases cited by Merck to support its assertion that a personal injury plaintiff cannot recover "business damages," the Court did not prospectively limit the plaintiff's testimony prior to trial by way of a Motion for Summary Judgment. Instead, the courts cited by Merck ruled specific testimony inadmissible at trial. *See Terry v. Houk*, 639 S.W.2d 897, 899 (Mo.App. W.D. 1982); *Seymour v. House*, 305 S.W.2d 1 (Mo. 1957). Merck's cited cases do not support its request here—for the Court to rule upon a motion for summary judgment to keep out any evidence regarding a plaintiff's lost profits or "business damages" before trial even begins. This Court should do as the courts cited by Merck, and rule on the evidence as it comes in at trial.

As Merck's Motion does not seek summary judgment on any of Plaintiff's identified claims or defenses, it should be denied.

### 3. Evidence Regarding Ms. Levitt's Business Losses is Admissible

Merck attempts to confuse the standards for summary judgment and admissibility at trial in a clear attempt to muddy the waters and fool this Court. Merck hopes this Court will exclude relevant and admissible evidence in response to its Motion for Summary Judgment. In reality,

regardless of whether or not this Court believes that Ms. Levitt is entitled to recover "business damages," evidence regarding her pecuniary losses is admissible at trial. First, as will be explained more fully below, evidence and testimony regarding Ms. Levitt's failed businesses is relevant and admissible to support her economic damages, in that such evidence will show Ms. Levitt's lost earnings and lost capacity to earn. Second, such evidence additionally supports Ms. Levitt's claims for noneconomic damages, as the loss of her businesses and her subsequent mental anguish goes directly to her quality of life.

As explained by the Missouri Supreme Court in a case cited by Merck: "[T]he true rule is that evidence of loss of profits is *admissible* where it would have a material bearing on the actual value of plaintiff's own services and work in the business and the pecuniary value of his lost time, but not as proof of a distinct element of damage in and of itself." *Seymour*, 305 S.W.2d at 4 (emphasis added). As such, even if this Court holds that evidence of Plaintiff's business losses is not itself a distinct element of her damages, such evidence remains admissible to show the value of Ms. Levitt's services, work in her businesses, and the value of her lost time.

The evidence of Ms. Levitt's business losses is also relevant in order to place Plaintiff's expert economist's testimony into context for the jury. Merck relies heavily on the fact that Dr. Ward declined to opine as to the loss of Plaintiff's family businesses (Merck's Motion, pages 1, 2, 8, 13, 14). His report, however, makes clear that in addition to the base salary Ms. Levitt would have likely paid herself if she continued to operate her businesses: "Mrs. Levitt had historically earned substantial business profits and financial gains in the assets that she purchased and then later sold. Mr. and Mrs. Levitt are best suited to report those past financial economic losses directly to the trier of fact." (Plaintiff's Statement of Fact (hereafter "PSOF") No. 31, Dr. Ward's Report, page 2).

Dr. Ward testified and opined in his report that because Ms. Levitt set her own salary amount, this was not the true value of her earning capacity. He offers a second estimate of her earning capacity based upon the median annual wage and salary earnings of Chief Executives (*Id.*). Dr. Ward testified at his deposition that even the larger second estimate of her earning capacity he used in his calculations was still low in determining Ms. Levitt's damages:

> The role of the chief executive is the creative force of the company, makes the company work, as opposed to a department head that's in charge of a line function, like accounting, or production, or whatever it might be. She was actually involved in all aspects. She was involved in creation of the designs, the manufacturing, supervision of manufacturing. She did all those sorts of things, according to her. Now, could you hire someone for that -- $123,000 to perform all those functions? I really doubt it. That's a very low salary for a chief executive. But that is the one that's reported at the median level. That's the one we use.

(PSOF No. 32) (Depo of Dr. Ward, Exhibit H, 84:3-18).

Merck additionally challenged Dr. Ward's valuations of Ms. Levitt's lost earnings during his deposition with respect to whether the true value of Ms. Levitt's earnings was more or less than the salary she chose to pay herself, and whether that salary was dependent on her companies' earnings (PSOF No. 30). As such, Ms. Levitt must be able to introduce testimony regarding her companies' earnings, to explain Dr. Ward's opinions at trial.

Evidence regarding Ms. Levitt's businesses and business losses is admissible to support Dr. Ward's opinions and theories, to show her true pecuniary loss, and to fully apprise the jury of the true nature of Plaintiff's damages in this case. This Court should therefore not limit the testimony Ms. Levitt may introduce at trial in response to a Motion for Summary Judgment.

### 4. <u>Ms. Levitt's Business Losses Are Relevant to Determining Her Personal Pecuniary Losses</u>

As acknowledged by Merck in its Motion, "evidence of lost profits may be relevant to show the pecuniary value of a plaintiff's own individual personal services, but it is not the profits

that are being recovered in such case, but rather the lost earning capacity." (Merck's Motion, page 9, citing *Terry*, 639 S.W.2d at 900. Here, any evidence regarding the loss of Plaintiff's businesses can be introduced in order to show her lost earning capacity. As explained above, Ms. Levitt was the creative and driving force behind her companies (PSOF No. 1). Once Ms. Levitt became ill due to her ingestion of Vioxx, her companies quickly began to experience difficulties, that without Ms. Levitt, they were unable to recover from (PSOF Nos. 12–15). A jury should be entitled to consider the skills, knowledge, and creativity that caused these companies to be so successful in determining Ms. Levitt's damages.

Under Missouri law, a plaintiff "may prove a resulting loss of time, and a consequent loss of personal earnings or wages as an item of special damages" and may recover for loss of future earnings due to impairment of the plaintiff's earning capacity. *Seymour*, 305 S.W.2d at 3 (cited by Merck).

> If plaintiff can make a substantial showing that the capital invested in this business was relatively insignificant, and that the success of the business was predominantly dependent upon his personal efforts, initiative and services, a proper showing of a loss of profits might be admissible. This is not to say that plaintiff can recover a loss of profits, as such, as an element of special damages, but it would be admissible, if at all, solely as bearing upon the pecuniary value of plaintiff's services in the business.

*Id.* at 5.

Here, while Merck may want this Court to limit Ms. Levitt's lost earnings to the mere $72,000 per year that she decided to allot herself from her companies' revenues, the record in this case shows that amount to be only a fraction of her "services in the business" and her true "earnings." Plaintiff's expert economist testified that Ms. Levitt had additionally "earned substantial business profits and financial gains in the assets that she purchased and later sold."

(PSOF No. 31; Dr. Ward's Report, Exhibit K at page 2).[1] Also, Ms. Levitt was paying herself only $72,000 per year at the time she was injured by Vioxx, the evidence in this case shows that she previously paid herself much more, $109,000 in 1991 and $118,000 in 1992 (PSOF No. 33; Social Security Earnings Summary, Exhibit L).

Additionally, there is testimony from both Mr. Levitt and Mr. Bazan that Mr. and Mrs. Levitt personally received the income that the subchapter S Corporation "Chocolate Soup Retail" earned, and that their personal earnings were dependent on the subchapter S Corporation's earnings (PSOF No. 26). Mr. Levitt estimated that the highest salary he and Ms. Levitt received would have been approximately $1 million dollars in the 1990s (PSOF No. 25). The Levitts did not need to pay themselves large salaries, because if they needed more money, they could get it out of their companies (PSOF No. 27). Ms. Levitt and her husband personally guaranteed the loans that were made to their companies, so when the companies were unable to pay their bills, the banks were able to go after the Levitts directly for the money (PSOF Nos. 36–40). A jury should be entitled to hear this evidence in determining Ms. Levitt's lost earnings and lost earning capacity. It is clear that the $72,000 per year that she and her husband arbitrarily decided to pay her is not a true measure of her income.

This scenario—with income flowing through the subchapter S Corporation to Mr. and Mrs. Levitt—is distinguishable from the cases cited by Merck. In *Terry v. Houk* the Plaintiff introduced evidence at trial regarding the profits his store lost during his absence due to his injuries. The Court held:

> No comparative figures as to sales, purchases or any other pertinent element from previous weekends or holidays were ever offered. There was no evidence that the claimed lost profits of $300 to $400 were related to Warren's being incapacitated or to other possible causative factors. What the evidence shows is a bare assertion

---

[1] Significantly, Dr. Ward opined that "Mr. and Mrs. Levitt [are] best suited to report those past financial economic losses directly to the trier of fact"—the jury (PSOF 31; Dr. Ward's Report, Exhibit K, page 2).

by Warren of this claimed loss. There was no evidence either descriptive or
supportive of the value of his services.

*Terry*, 639 S.W.2d at 900.

Here, it is not simply a "bare assertion" by Ms. Levitt of claimed loss. Her husband and

business partner, James Levitt, as well as their companies' CPA, Mr. Bazan, confirmed that the

businesses failed because of Ms. Levitt's cardiovascular injuries (PSOF Nos. 12–15) and

comparative figures <u>are</u> available from the company's tax records and balance sheets (PSOF No.

21). There is evidence, therefore, both descriptive and supportive of the value of Ms. Levitt's

services. Here, it is clear that the success of the Levitts' family businesses "was predominantly

dependent upon [Ms. Levitt's] personal effort, service, and initiative." *Terry*, 639 S.W.2d at 900,

citing *Bischoff v. Dodson*, 405 S.W.2d 514, 519 (Mo. App 1966).

In *Seymour v. House* the Court held it was error to allow the plaintiff to introduce

evidence of what he had to pay a replacement employee to fill in for him as a concrete finisher

while he was injured. 305 S.W.2d 1, 5 (Mo. 1957). There, the plaintiff had continued to

supervise and run the business, and the court held that "he may have earned more for his

business by increased activities in management than he lost by refraining from the physical

labor. . . he was presumably utilizing the extra time he gained by not working as a cement

finisher." *Id.* at 4–5.  Here, the undisputed evidence shows that Ms. Levitt did not continue to run

or manage the business following her injuries, but rather that her cardiovascular injuries had an

immediate impact on her work. She was no longer able to work at the level she had before, and

the quality and production levels at her business immediately declined (PSOF Nos. 12–15).

In *Gaerte v. Great Lakes Terminal & Transp. Corp.*, applying Indiana law (and thus not

binding on this Court), that plaintiff argued that the exception to the general rule that business

profits cannot be collected as damages in a personal injury case laid out in *Bova v. Gary*, 843

N.E.2d 952 (Ind. Ct. App. 2006) applied to him. *Gaerte v. Great Lakes Terminal & Transp. Corp.,* 506 F. Supp. 2d 271, 274 (N.D. Ind. 2007). The *Gaerte* Court found that the *Bova* case was distinguishable from the plaintiff, because the plaintiff had failed to present enough facts in order to argue that he was the alter ego of his company, as opposed to the plaintiff in *Bova*, who "did all of his corporation's 'purchasing and selling' oversaw 'accounting and was involved in production.' He also owned 100% of his corporation, was the company's president and primary decision maker, oversaw day-to-day operations of the business, and was personally liable for the corporation's secured debt." *Id.* at 275 (internal citations omitted). In *Gaerte* the Plaintiff argued that he was the person in charge of the day-to-day operations, but failed to provide any evidence to support that assertion. *Id.* at 276. The Court held that while the company had been named after the plaintiff "acting as the public face of the corporation differs markedly from controlling its decisions. Merely claiming plaintiff is Gaerte Engines' alter ego does not make it so." *Id.*

Here, Plaintiff Jo Levitt is able to produce much more evidence in support of the idea that she should be considered her companies' "alter ego" than the plaintiff in *Gaerte*. Specifically, Ms. Levitt did all of her clothing corporation's "purchasing and selling," (PSOF Nos. 2–3); oversaw production (PSOF No. 2–3); and in fact when she was unavailable, production completely halted (PSOF Nos. 12–13). She was in charge of the day-to-day operations, and has provided this Court with extensive evidence to support this assertion (PSOF Nos. 1–3, 5–6). Ms. Levitt was in fact the "alter-ego," there has been extensive testimony that "she was the business." (PSOF No. 1).

This case is not like *Gaerte*, but rather like *Bova*. Ms. Levitt's subchapter S Corporation's losses should be considered when determining her pecuniary damages, and a jury should be

afforded the opportunity to hear evidence regarding Ms. Levitt's failed businesses, as she was personally responsible for the business debts.

### 5.  Ms. Levitt's Losses Are Not Speculative

Under Missouri law, a plaintiff "may prove a resulting loss of time, and a consequent loss of personal earnings or wages as an item of special damages" and may recover for loss of future earnings due to impairment of the plaintiff's earning capacity. *Seymour*, 305 S.W.2d at 3 (cited by Merck). To recover for such losses, the evidence of value must be reasonably certain and must not be speculative, or, in other words, it "must afford a basis for a reasonable estimate of the amount of the loss." *Id.* at 3–4. Thus:

> [I]f one cannot measure the damages exactly, the law only requires that the evidence, with such certainty as the evidence will permit, lay a foundation to enable the jury to make a fair and reasonable estimate.... A plaintiff need only produce the best evidence available such that it is sufficient to afford a reasonable basis for estimating the damages.

*Fairbanks v. Weitzman*, 13 S.W.3d 313, 320 (Mo.App. E.D. 2000) (quoting *Weindel v. DeSoto Rural Fire Prot. Ass'n, Inc.*, 765 S.W.2d 712, 714 (Mo.App. E.D. 1989)). Evidence may include the injured plaintiff's earnings before the injury and after the injury. *McDonald v. Missouri-Kansas-Texas R. Co.*, 401 S.W.2d 465, 471 (Mo. 1966).

As stated above, Ms. Levitt's earnings prior to her injury in 2000 were not limited to the salary she decided to pay herself, but additionally the revenues and investments that were returned to her as a result of her successful businesses. Merck argues that Ms. Levitt cannot produce a reliable figure showing the amount of her business losses.  This is not true. Plaintiff does have reliable evidence that establishes the amount of her losses. Her husband prepared yearly financial statements that summarized the Levitts' holdings in their two companies, and prepared the statements around the time each statement is dated (PSOF No. 41–42). He did this

16

at the request of lenders, and combined the Levitts' investments in Chocolate Soup and American XO into one "Investment" figure (PSOF Nos. 41, 43). Mr. Levitt did not prepare these financial statements at the request of Plaintiff's attorneys, or in anticipation of litigation, but rather to give to the lenders of Plaintiff's businesses. These statements are therefore reliable, and are in fact relied upon by Merck itself (See Merck's Motion, page 18 and Merck's Statement of Fact number 46, relying on the financial statements prepared by Mr. Levitt to argue that Plaintiff's net worth ranged from $9 million to $11 million during the pertinent time period, and more than half of the net worth was attributed to investments and assets unrelated to Plaintiff's two businesses).

The investment schedules show that the Levitts' combined investments in the two companies was $4,500,000 in 1999 (PSOF No. 44), the year directly preceding Ms. Levitt's cardiovascular injuries, but fell to only $3,000,000 in 2001, the year after her injuries (PSOF No. 45), and fell further still to $580,000 in 2005 (PSOF No. 46). While Merck complains that "no back-up materials exist that correspond to the valuations that Mr. Levitt assessed on her personal net worth statements," (Merck's Motion, p. 17), this is a proper subject for cross-examination, not a reason for exclusion. Merck has the Levitts' personal financial statements, and Merck has the financial statements for the Levitts' businesses (See extensive financial documentation attached collectively as Exhibit J, produced by Mission Bank in response to Merck's subpoena). Merck will be able to cross-examine Plaintiff and her husband regarding the valuation of their companies. A jury should be afforded the opportunity to weigh this evidence, however, and it should be a jury who decides what weight to give the financial statements prepared by Mr. Levitt showing the Levitts' investments in their companies.

None of the cases cited by Merck provide guidance on how a Plaintiff is to provide evidence of harmful results to their business that would not be held too speculative.

> When is the evidence as to harmful results to a business positive enough to be weighed by the jury and when too vague? In the nature of the case, the only way ordinarily available to prove the damages is by a comparison of the profits before and after the tort. Applying these principles to the case at bar, we think it was proper to permit the plaintiff to prove the net income of his business before the defendant wrongfully dispossessed him, as a criterion of what he lost by said dispossession.

*Ganz v. Metro. St. R. Co.*, 220 S.W. 490, 495 (Mo. 1920), citing *Gildersleeve v. Overstolz*, 90 Mo. App. 518, 531 (1901).

Contrary to Merck's assertion, Ms. Levitt does not necessarily need the testimony of her economic expert in order to provide a valuation as to her damages. Missouri law does not require expert testimony in order to introduce evidence concerning all or some aspect of Plaintiff's lost wages, past and present. *Messina v. Prather*, 42 S.W.3d 753, 764–65 (Mo.App. W.D. 2001) (lay witness can establish foundation for lost wage claim); *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 761–762 (Mo. 2010)(expert testimony is not necessary to prove future wage loss and future wage loss need not be reduced to present value in order to be admissible at trial).

Here, Plaintiff has sufficient evidence to provide a basis for a jury's reasonable estimate of her losses. Her losses should not be limited to the salary she chose to pay herself, but should also include the investment income she received from her subchapter S corporation. The financial statements prepared each year by her husband at the request of their lenders shows the decrease in her investments in her companies, and it should be up to the jury to weigh this evidence with the evidence Merck can elicit through cross-examination or through the use of the companies' financial statements (which Merck has due to its subpoena of Plaintiff's bank). Merck's Motion for Summary Judgment should therefore be denied.

**6.   Determining Ms. Levitt's Damages is a Question for the Jury**

A jury should be entitled to hear the evidence regarding Ms. Levitt's failed businesses, and it should be up to the jury to decide whether or not to allocate any damages for her lost earnings and lost ability to earn because of her companies' failures.

> Importantly, [t]he assessment of damages is primarily the function of the jury. Due to the importance of weighing witness credibility and testimony in setting damages, the determination as to the amount of damages awarded in a personal injury action falls primarily within the discretion of the jury. A jury's damage award may be upheld if substantial evidence supports the verdict and the damages were awarded on any rational assessment of the evidence.

*Fairbanks*, 13 S.W.3d at 321 (internal citations omitted). This Court should therefore deny Merck's Motion for Partial Summary Judgment, rule on the testimony regarding Ms. Levitt's companies and businesses when it is presented at trial, and the jury should be the one to decide whether or not to award damages due to Ms. Levitt's companies' failures.

**7.   Ms. Levitt Did Not Intentionally Destroy Evidence, Therefore No Sanction for Spoliation is Warranted**

Merck lastly makes the bold and untrue assertion that "Ms. Levitt destroyed the business records that would refute her claim for business losses." (Merck's Motion, page 15). As Merck is well aware, Ms. Levitt did not "destroy" anything. Rather, when her businesses closed, the records were lost. This was not due to any intentional action of Ms. Levitt, and she cannot be faulted, as a pro se litigant, for not understanding that PTO 28's requirement to notify employers extended to her own companies.

Merck requests this Court to nonetheless sanction Plaintiff for spoliation. Indeed, in the cases cited by Merck, the defendants sought sanctions for spoliation (See *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993) (Plaintiffs argued that district court erred in allowing defendant's counsel to repeatedly argue misconduct and spoliation of the evidence, and

instructing jury it could draw adverse inference from plaintiffs' failure to produce evidence); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) (defendant filed counterclaim in tort against plaintiff for spoliation of evidence); *Perez-Velasco v. Suzuki Motor Co., Ltd.*, 266 F. Supp. 2d 266, 267 (D.P.R. 2003) (Defendants filed Request for Sanctions based on plaintiffs' spoliation of evidence)).

In order to apply the spoliation doctrine, as Merck requests, this Court must find that "there is evidence of an intentional destruction of the evidence indicating fraud and a desire to suppress the truth." *Baldridge v. Dir. of Revenue, State of Mo.*, 82 S.W.3d 212, 223 (Mo.App. W.D. 2002), quoting *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 77 (Mo.App. W.D. 1995)). The Eighth Circuit explained in *Stevenson v. Union Pacific R. Co.* that the standard for spoliation "is the same under either state or federal law-there must be a finding of intentional destruction indicating a desire to suppress the truth."  354 F.3d 739, 746 (8th Cir. 2004).

In *Morris,* the Court explained:

> When spoliation is urged as a rule of evidence which gives rise to an adverse inference, it is necessary that there be evidence showing intentional destruction of the item, and also such destruction must occur under circumstances which give rise to an inference of fraud and a desire to suppress the truth.

*Morris*, 895 S.W.2d at 77–78 (internal citation omitted).

Spoliation is a "harsh rule of evidence." *Baldridge*, 82 S.W.3d at 223, (quoting *Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522, 527 (Mo.App. E.D. 1998)). As such, it is "the burden of the party seeking its benefit to make a prima facie showing that the opponent destroyed the missing [evidence] under circumstances manifesting fraud, deceit or bad faith.'" *Id.* "**Simple negligence, however, is not sufficient to apply the adverse inference rule**." *Id.,* citing *Brissette v. Milner Chevrolet Co.*, 479 S.W.2d 176, 182 (Mo. App 1972) (emphasis added). Here, Merck **admits** that Ms. Levitt were merely negligent (Merck's Motion, page 2) ("Ms.

Levitt **negligently** permitted all the relevant business records to be destroyed.") (emphasis added).

Merck has not introduced any evidence indicating that Ms. Levitt intentionally destroyed evidence, or evidence indicating Ms. Levitt's intention or desire to suppress the truth. Instead, the evidence shows that Ms. Levitt's company had to quickly vacate the building which had housed business records, and in the melee the records were somehow lost (PSOF 18-20). Merck has not shown any evidence or testimony that would indicate that Ms. Levitt intentionally destroyed the records, or even knew that the records were being discarded or lost. This fact pattern does not support a finding of spoliation, or the harsh sanction that Merck seeks.

The cases cited by Merck are off-point. In both *Dillon*, 986 F.2d 263 and *Bass v. Gen. Motors Corp.*, 929 F. Supp. 1287 (W.D. Mo. 1996), the plaintiffs' experts were able to inspect the accident vehicles at issue but the defendants' experts were not. Here, Plaintiff has not shared documents with her expert witnesses while keeping them from Merck. Both parties are on even footing, and have the same evidence available to their disposal in presenting Plaintiff's lost earnings and evidence regarding her failed businesses.

It is also not the case that the <u>only</u> evidence to support Plaintiff's claims has been destroyed. While Merck argues that the destroyed material would be necessary for cross examination (Merck's Motion, page 17), it is clear that Merck has already been afforded the benefit of extensive cross examination of Plaintiff, her husband and business partner, and their CPA (See deposition excerpts attached to Merck's Motion as Exhibits 5, 6, 7, and 8). Merck has additionally obtained Plaintiff's bank records from Mission Bank (Exhibit 4 to Defendant's Motion), Plaintiff's loan documents from Citibank (Exhibit 12 to Defendant's Motion), and Plaintiff's own personal financial statements (Exhibit 19 to Defendant's Motion). As such, it is

clear that it is not the case, like the precedent cited by Merck, where the only physical evidence to support Plaintiff's claims has been destroyed. Indeed, Mission Bank produced over 4,500 pages of records, specifically including balance sheets, income statements, and other financial documentation for both of Plaintiff's two companies. Merck has the same evidence at its disposal as Plaintiff, therefore, no sanctions for spoliation are warranted or proper.

## V.        CONCLUSION

For all the reasons set forth more fully above, Plaintiff Jo Levitt respectfully requests that this Court deny the Motion for Summary Judgment filed by Defendant Merck. Merck's Motion is not a proper Motion for Summary Judgment, and even if it were, the controverted material facts show that Ms. Levitt suffered significant lost wages, earnings, and earning capacity beyond the salary she chose to pay herself, which is the value Merck asks this Court to limit her damages to. It should be the jury that determines the true measure of Ms. Levitt's damages, after reviewing the evidence that is available to both parties—the financial statements of Ms. Levitt's two companies, her own personal financial documents, and the testimony of witnesses. The issue of Ms. Levitt's damages should not be taken away from the jury prior to trial. As such, this Court should deny Merck's Motion for Partial Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Plaintiff's Opposition to Defendant Merck's Motion for Partial Summary Judgment on Plaintiff's Business Damages Claims** has been served on Defense Counsel, Elaine Horn and Emily Pistilli and Defendant Liaison Counsel, Dorothy H. Wimberly, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 8B, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 27th day of July, 2016.

*/s/ Daniel A. Thomas*
Kenneth B. McClain                       MO #32430
Daniel A. Thomas                         MO #52030
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
P.O. Box 900
Independence, MO 64051
(816) 836-5050 Telephone
(816) 836-8966 Facsimile

**ATTORNEYS FOR PLAINTIFFS**