UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MERCK'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S BUSINESS DAMAGES CLAIMS

Ms. Levitt seeks to recover $20 million in economic damages based on the fact that several family businesses closed almost a decade after she was treated for unstable angina. But she fails to rebut at least three arguments that require summary judgment to be entered against that damages claim.[1]

- *First*, Missouri law does not allow a personal injury plaintiff to recover economic losses sustained by her business as an element of her own damages. Plaintiff does not contest this point and offers no contrary authority.

- *Second*, Plaintiff admits that her family's businesses required substantial invested capital and relied on the labor of hundreds of other people to operate. This places those businesses outside of the limited exception where business losses may be used as a proxy for a loss of individual earning capacity.

- *Third*, Plaintiff makes no attempt to show with the required *reasonable certainty,* to move beyond mere speculation, that her businesses would have survived numerous debilitating economic challenges over the decade that followed her cardiac events, including surviving a massive recession that closed hundreds of businesses similar to her own. Indeed, Plaintiff does not even attempt to address this point in her brief.

---

[1] The other grounds asserted in Merck's original motion (Rec. Doc. 65379) remain valid. For simplicity, this Reply focuses on the arguments that are most straightforward based on Plaintiff's opposition.

Each of these reasons independently warrants partial summary judgment against Ms. Levitt's claims for recovery of her alleged business losses. Thus, an order of partial summary judgment against her claim for those business damages is appropriate.

## I. THE MOTION FOR PARTIAL SUMMARY JUDGMENT IS PROPERLY BEFORE THE COURT.

Plaintiff contends that Merck is not really moving for summary judgment; rather, she contends that Merck is only seeking to bar certain evidence, and contends that this issue should be addressed at the motions in limine stage or deferred until trial. Opp'n 8–9. On the contrary, Merck's primary argument is that, as a legal matter, certain types of economic damages are not recoverable. Ms. Levitt does not deny that she is seeking to recover for the economic losses associated with the loss of her business. Whether she can do so is a legal question properly resolved by summary judgment. It is a completely separate question as to what evidence could or could not be used to prove such damages, if they were legally recoverable.

Plaintiff further contends that Merck has failed to identify the claim on which it seeks partial summary judgment, and asserts that because "Merck's Motion does not seek summary judgment on any of Plaintiff's identified claims or defenses, it should be denied." Opp'n 9. That argument appears to rest on a misunderstanding of Rule 56.

Motions for *partial* summary judgment are well recognized as an important tool by which the Court can appropriately manage its litigation and control the issues presented to the jury for trial. Rule 56(a) expressly provides that a party "may move for summary judgment identifying . . . . the *part* of each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). Thus, a party may move for and a court may grant partial summary judgment on issues within or elements of a claim or defense. *See, e.g.*, 11-56 Moore's Federal Practice – Civil § 56.122. "The freedom to use summary judgment procedure to address

2

particular issues or elements of a claim is an important feature of Rule 56, making it a much more useful case management device." *Id.*

Motions for partial summary judgment help the court narrow, simplify, and focus the issues for trial. *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993). More specifically, when a court grants partial summary judgment, "the length and complexity of trial on the remaining issues are lessened, all to the advantage of the litigants, the courts, those waiting for trial, and the American public in general." *Id.*

Damages are an essential element of a tort claim, and Ms. Levitt does not deny that she seeks damages as part of her tort claim here. Nor does she deny that the damages she seeks are the economic losses stemming from her closed family businesses. Thus, this is a discrete issue that can be appropriately resolved on summary judgment.

## II. MISSOURI LAW DOES NOT PERMIT AN INDIVIDUAL PERSONAL INJURY PLAINTIFF TO RECOVER FOR ECONOMIC LOSSES SUSTAINED BY A BUSINESS.

By urging the court to focus only on the potential evidentiary issues presented by Merck's motion, Plaintiff completely glosses over the first and primary issue: Missouri law does not permit a personal injury plaintiff to recover, in her own personal injury case, economic losses sustained by her business. *See Terry v. Houk,* 639 S.W.2d 897, 900 (Mo. Ct. App. 1982) (Personal injury plaintiff generally "may not recover the loss of business profits because such profits are wholly speculative, or because such profits arise, in whole or in part, from elements other than his personal efforts and earnings." (alteration and internal quotation marks omitted)). Plaintiff does not cite a single case to the contrary.

Lacking any authority for her damages claim, Ms. Levitt focuses her attention on trying to fit within the limited exception allowing business damages to serve as a proxy for earning capacity. But, in doing so, Ms. Levitt implicitly concedes that if that exception does not apply,

3

she cannot recover those losses.

Although several other issues are presented in the parties' briefing, the Court may grant Merck's motion based on this point alone. Ms. Levitt argues: "[T]he jury should be the one to decide whether or not to award damages due to Ms. Levitt's companies' failures." Opp'n 19. The question before the Court is whether Missouri law allows a jury to make that determination. The Missouri courts clearly have said no.

### III. THE LEVITT FAMILY BUSINESSES ARE NOT A PROXY FOR MS. LEVITT'S INDIVIDUAL EARNING CAPACITY.

As noted above, Plaintiff does not contest that Missouri law bars the recovery of corporate losses in an individual personal injury action. Rather, she argues that her business losses can be used as a proxy for her individual earning capacity because it was her personal efforts that predominantly led to the success of those businesses.[2] Opp'n 12 (citing *Seymour v. House*, 305 S.W.2d 1, 4 (Mo. 1957)). But, the passage Plaintiff quotes from *Seymour* makes clear that such a door is open only to a plaintiff who can make a "substantial showing that the capital invested in this business was relatively insignificant *and* that the success of the business was predominantly dependent upon his personal efforts, initiative and services . . . ." *Id.*; s*ee also id.* (business losses not recoverable where, "the elements of invested capital, employed labor, and other variable factors in the plaintiff's business predominated over the element of personal service").

---

[2] Plaintiff argues that "evidence and testimony regarding Ms. Levitt's failed businesses . . . supports Ms. Levitt's claims for noneconomic damages, as the loss of her business and her subsequent mental anguish goes directly to her quality of life." Opp'n 10. Plaintiff's argument on this point is entirely misplaced. Merck's motion does not seek a limitation on noneconomic damages and does not address what evidence may or may not be admissible to prove those up. Any such purely evidentiary disputes have been reserved for resolution at the appropriate time.

4

Ms. Levitt completely ignores the key requirement for that exception to apply: She must make a "substantial showing" that "capital investment and labor were relatively insignificant." *Terry*, 639 S.W.2d at 900. Indeed, she cannot make the required "substantial showing" because she admits that the opposite is true.

These material facts are undisputed:

- Plaintiff admits that she was not the sole shareholder or the majority shareholder in any of the business that are at issue in this motion. *See* Plaintiff's Responses to Merck's Statement of Undisputed Material Facts ("Pl. SUMF Resp.") at Nos. 6 and 7.

- Plaintiff admits that, collectively, Chocolate Soup Manufacturing and Chocolate Soup Retail employed approximately 120 to 200 people. Pl. SUMF Resp. No. 10.

- Merck pointed to undisputed record evidence that both the hotel and clothing businesses utilized substantial labor from many people other than Ms. Levitt. *See* Merck's Statement of Undisputed Material Facts ("Merck SUMF") at No. 17. Plaintiff "[a]dmitted that the Levitt's businesses operated with the assistance of managers, employees, and other staff." Pl. SUMF Resp. No. 17.

- Merck also pointed to undisputed record evidence that the Levitt businesses employed *hundreds* of people who performed functions *necessary to keep the businesses running*. Merck SUMF No. 18 (emphasis added). Plaintiff likewise admitted this to be true. Pl. SUMF Resp. No. 18.

- Merck pointed to ample undisputed evidence that both "the hotel and clothing businesses also utilized substantial invested capital" including third party inventory and large lines of credit used for working capital. Merck SUMF No. 19. Plaintiff also "admitted" this fact with the qualification that the Chocolate Soup line of clothing was the more valuable inventory in the store. Pl. SUMF Resp. No. 19.

Although in both of her responses to Merck SUMF Nos. 17 and 18, Plaintiff went on to say that she "[d]enied . . . any implication that the success of the family companies was not predominantly dependent upon Ms. Levitt's personal effort, service and initiative," *id.*, this latter qualification is immaterial. Ms. Levitt must show *more* than that the success of the companies was predominantly dependent upon her; she must *also* prove that the labor of others and the invested capital was insignificant. Here, the opposite is true: Both the hotel and clothing

5

businesses utilized substantial labor from many people other than Ms. Levitt, required large of amounts of working capital, and both the labor and capital were necessary for those businesses to operate.

Notably, Plaintiff's own economic expert testified that the value of Ms. Levitt's business losses would not be an appropriate measure of her loss of earning capacity.[3] In his 2016 deposition, Dr. Ward confirmed that while the Levitts had hoped to obtain a valuation for their closed businesses, he did not see that as an appropriate measure of damages in this case: "I didn't see any way to directly relate it to the incident in the year 2000 and subsequent events because there were other things happening, like the economy and many other things. So I didn't -- we chose not to pursue that course." Ward Dep. (Mot. Ex. 17) 46:20–47:8. As he explained in writing to Ms. Levitt's counsel, "One of the problems in looking at the corporation's net income is that in a personal injury case we calculate loss of earnings capacity to the injured person versus lost income to the corporation which is a return to capital. *It would be hard to segregate losses of income due to her depression separate from returns to capital and returns to her husband's effort, as well as market conditions.*" Fax from John Ward (Apr. 2, 2014) (Mot. Ex. 18) at 2 (emphasis added).

Missouri law does not permit Ms. Levitt to use her family's alleged business losses as a proxy for her own individual loss of earning capacity. And, even if it were permissible in this instance, her economic expert has testified that it would not be an appropriate measure of earning

---

[3]   Plaintiff contends that she "must be able to introduce testimony regarding her companies' earnings, to explain Dr. Ward's opinions at trial." Opp'n 11. Dr. Ward expressly testified that any alleged business losses were not part of his opinion in any respect (*e.g.*, Ward Dep. (Mot. Ex. 17) 15:7–17 ("My calculation's based upon her lost earnings capacity as opposed to the lost value of the business."); so, it is unclear how evidence of those losses could be used to "explain" Dr. Ward's opinions at trial.

capacity in this case.[4]  That should be the end of it.  Accordingly, the Court should grant partial summary judgment on this issue:  Ms. Levitt cannot recover the value of her alleged business losses either directly or as a proxy for a loss in earning capacity.[5]

### IV. PLAINTIFF OFFERS NOTING BUT SPECULATION TO SUPPORT HER DAMAGES THEORY.

As explained in Merck's opening brief, Missouri law does not permit a plaintiff to recover speculative lost profits as part of her damages.  Damages can be speculative in two different ways—they can be speculative as to the amount or they can be speculative as to causation.  Either type of speculation is fatal.  *E.g.*, *Jarman v. Griggs*, 31 S.W.3d 465 (Mo. Ct. App. 2000); *Midwest Coal, LLC v. Cabanas*, 378 S.W.3d 367, 374 (Mo. Ct. App. 2012).

In her brief, Plaintiff addresses only the issue of whether the amount of damages is too speculative.  Opp'n 16–18.  Plaintiff's brief does not address the argument that it is pure speculation to link the occurrence of her business losses in 2008 and 2009 to her cardiac events almost a decade earlier.  Plaintiff's complete silence on this point speaks volumes.

The fact of the worldwide economic recession cannot be disputed.  The fact that thousands of business similar to Ms. Levitt's closed around the country during that same time period cannot be disputed.  The fact that, as her own expert readily acknowledged, there is no

---

[4]  Notably, Dr. Ward drew a sharp distinction between Ms. Levitt's actual earning capacity and the value of her business:  "[T]he value of her labor is something that she possesses, and that does have a value separate and distinct from the value of the business.  It's much smaller, obviously.  We're not talking about a $20 million business in terms of failure.  We're talking about 73 to $120,000 a year of potential earnings capacity using replacement cost or actual payment."  Ward Dep. (Mot. Ex. 17) 139:14–21.

[5]  Plaintiff argues that an evaluation of her earning capacity should not be limited to what she chose to pay herself.  Opp'n 12–13.  That is not actually Merck's argument.  Rather, Merck has argued that Ms. Levitt should not be able to assert economic damages beyond those set forth by her expert economist.  Notably, her expert utilized alternative theories other than Ms. Levitt's actual wages to arrive at his opinion on her lost earning capacity.  In his expert opinion, however, he did not believe that business valuation was an appropriate measure.

7

factual basis for distinguishing Ms. Levitt's business from other businesses that closed can also not be disputed. Nor does Plaintiff dispute that her own fact witnesses Bob Bazan and James Levitt—fully supported by contemporaneous documents—clearly testified that the other economic pressures such as foreign imports and local hotel competition negatively impacted the businesses. *See, e.g.*, James Levitt 30(b)(6) Dep. (Mot. Ex. 6) 136:17–21 ("The imports eventually would have just flat put us out of business. I mean, you just can't compete with that.").

Although Plaintiff ignores any discussion of these points in her brief, she does note in her response to Merck's Statement of Undisputed Material Facts that, notwithstanding the existence of these documented and undisputed economic realities, it was still possible that she could have turned things around had she been healthier. *See, e.g.*, Pl. SUMF Resp. No. 22 ("Admitted that the business was experiencing a negative cash flow. Denied as to any implication that the hotel operations would not have rebounded."); Pl. SUMF Resp. No. 24 ("Admitted that the hotel business was no longer profitable after 2001. Denied as to any implication that the hotel operations would not have rebounded."). But her bare assertions that business operations could have "rebounded" over the decade following her cardiac events and survived a worldwide recession that closed hundreds of similar businesses epitomizes pure speculation. Indeed, her expert agreed that there is no factual basis for making such an assertion. Ward Dep. (Mot. Ex. 17) 139:14–21. Given the complete lack of any such factual basis, Plaintiff cannot show with ***reasonable certainty*** that her business would have survived and thrived, and she is required to make such a showing.

Under Missouri law, recovery of lost profits is "prohibited when there is uncertainty or speculation as to whether the loss of profits was the result of the wrong." *Jarman v. Griggs*, 31

8

SW3d at 467 (citations omitted).  "At the very least, [plaintiff] must prove with reasonable certainty the fact of damages . . . [*i.e.*] some loss of net profits that ***it would have realized in the usual course of business absent the defendant's unlawful actions***."  *Metro. Express Servs., Inc. v. City of Kansas City*, 71 F.3d 273, 275 (8th Cir. 1995) (emphasis added); *see also Midwest Coal, LLC v. Cabbanas*, 378 S.W.3d 367, 374 (Mo. App. 2012) ("Recovery of lost profits is prohibited when there is uncertainty or speculation as to whether the loss of profits was the result of the wrong, and whether any such profits would have derived at all." (quotation omitted)).  Given all of the other (undisputed) economic factors at issue during the relevant time period, it is impossible to say with ***reasonable certainty*** that the Levitt family businesses would have remained open and realized net profits.  Absent a showing of "reasonable certainty," Ms. Levitt cannot recover for her alleged lost profits.  This warrants a grant of partial summary judgment on this issue.

## CONCLUSION

For the foregoing reasons and the reasons stated in Merck's opening memorandum, Merck respectfully requests that this Court enter an order granting partial summary judgment as to Ms. Levitt's damages claims based on the economic losses of her family's businesses.

Dated:  August 10, 2016                                 Respectfully submitted,

                                                                        By: */s/ Dorothy H. Wimberly*
                                                                              Phillip A. Wittmann, 13625
                                                                              Dorothy H. Wimberly, 18509
                                                                              STONE PIGMAN WALTHER
                                                                              WITTMANN L.L.C.
                                                                              546 Carondelet Street
                                                                              New Orleans, LA 70130
                                                                              Phone: 504-581-3200
                                                                              Fax:    504-581-3361

                                                                        *Defendants' Liaison Counsel*

—and—

Douglas R. Marvin
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of August, 2016.

                                          */s/ Dorothy H. Wimberly*
                                          Dorothy H. Wimberly, 18509
                                          STONE PIGMAN WALTHER WITTMANN L.L.C.
                                          546 Carondelet Street
                                          New Orleans, LA  70130
                                          Phone:  504-581-3200
                                          Fax:     504-581-3361
                                          dwimberly@stonepigman.com

                                          Defendants' Liaison Counsel