UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION
TO EXCLUDE EXPERT OPINION OF THOMAS ROSAMOND, M.D.**

Ms. Levitt cannot overcome two basic facts that compel exclusion of Dr. Rosamond's expert opinion: (i) he formed his opinion at least seven years after he stopped treating her, and (ii) he based his opinion on a short, litigation visit in his office without analyzing (or even reviewing) the relevant scientific literature. His expert opinion should be excluded because he did not provide the formal expert report required by Federal Rule of Civil Procedure 26(a)(2). Dr. Rosamond provided only a preliminary *Lone Pine* letter, the type of document that this Court has already said does comply with the Rule 26(a)(2) expert report requirement.

Perhaps more importantly, Dr. Rosamond's proffered causation opinion falls far short of the *Daubert* standard for scientific reliability. He readily admits that this opinion was not based on any meaningful review of the relevant scientific literature. (Indeed, Dr. Rosamond was unfamiliar with the APPROVe study, and was unaware of that study's role as a catalyst in Merck's decision to withdraw Vioxx from the market.) Dr. Rosamond's opinion that Vioxx "likely" contributed to Ms. Levitt's "aggressive coronary presentation" relies almost exclusively on the fact that Ms. Levitt had been taking Vioxx at the time of her event and that Vioxx was withdrawn several years later. This basic temporal observation does not amount to a scientifically reliable expert opinion. No jury should be allowed to consider it.

# ARGUMENT

Plaintiff rests her opposition on several misleading assertions. As a preliminary matter, Plaintiff erroneously contends that the Court has already ruled on the issue of whether Dr. Rosamond's opinion testimony is admissible. Opp'n (Rec. Doc. 65408) at 4–5. Not true. In the opinion that Plaintiff references, the Court summarized the parties' various arguments, including the arguments regarding Dr. Rosamond, but never ruled upon the matter.[1] Turning to matters of substance, Plaintiff's arguments in support of Dr. Rosamond's expert opinions likewise rest on erroneous assertions.

### A. Dr. Rosamond Must Satisfy the Requirements Imposed on Retained Experts Because the Vioxx Opinions He Offers Were Formed Outside of His Treatment of Ms. Levitt.

In order to address the failure to provide the expert report required by Rule 26(a)(2), Plaintiff erroneously contends that Dr. Rosamond's opinions regarding causation were formed in the course of his treatment, and suggests that Dr. Rosamond was still *treating* Ms. Levitt at the time that he provided his 2009 *Lone Pine* Letter. Opp'n 8. Dr. Rosamond clearly testified to the contrary.

*Dr. Rosamond testified that Ms. Levitt was not his patient when she appeared in his office in 2009*:

> Q: Sure. So you last treated Mrs. Levitt; is that right?
>
> A: I saw her in 2009 as a patient in our office.
>
> Q: Was it an actual office visit?

---

[1] The dispositive motion then at issue was triggered by Ms. Levitt's withdrawal of the only causation expert, Dr. Schapira, who opined that Ms. Levitt had suffered a myocardial infarction. The Court ruled that Ms. Levitt could continue her claim based on alleged cardiovascular injuries other than a myocardial infarction. The Court noted that it was not necessarily requiring Plaintiff to proffer admissible evidence in opposition to Merck's motion.

> A: No. It was not in the traditional sense. But she did come to me for some requests.
>
> Q: Okay. And what were those requests?
>
> A: She asked me if I would write a letter summarizing her medical care and whether or not I thought Vioxx was an issue.

Rosamond Dep. (Mot. Ex. B) at 20:8–18.

> Q: And at the time that you were preparing the 2009 letter, were you provided any information about Mrs. Levitt's condition post 2002?
>
> A: No. I recall having thought that – I was curious why she was coming to see me because I hadn't really been involved in her care after that, after 2002. Check my dates. There'll be a date from my last office, though, that would corroborate the dating. ***But I don't [think] I was aware of any of her care between 2002 and 2009***.[2]

*Id*. at 26:7–17 (emphasis added).

***Dr. Rosamond testified that he believed that his letter was being requested for litigation purposes***:

> Q: And what was your understanding for why this was being requested?
>
> A: My memory is fragmentary there, but I recall that she said that it was part of a probable lawsuit.

*Id*. at 22:18–22.

***Dr. Rosamond testified that he did not form the opinions he proffered in 2009 while treating Ms. Levitt***:

> Q: . . . The first page. It says, "Given the course of events it seems likely, based upon her historical information and what we now know in retrospect about Vioxx, that Vioxx likely contributed to her aggressive coronary artery presentation."

---

[2] Ms. Levitt sought treatment from two other cardiology practices after Dr. Rosamond stopped treating her, including Dr. Laster from Cardiovascular Consultants in November 2002, and Kramer and Crouse Cardiology in 2005. *See* Rosamond Dep. (Mot. Ex. B) at 67:5–73:16.

> At the time that you treated Mrs. Levitt for these events in March and May of 2000, did you believe that Vioxx had anything to do with her acute presentation?
>
> A:   No.

*Id*. at 75:15–25.

Because Dr. Rosamond's causation opinions were formed several years *after* his treatment of Ms. Levitt, those opinions must satisfy the federal requirements for retained expert opinion testimony.  *See, e.g.*, *Rea v. Wisconsin Coach Lines, Inc.*, No. CIV.A. 12-1252, 2014 WL 4981803, at *2 (E.D. La. Oct. 3, 2014) (where treating physician's opinions pertain to "causation," or were "prepared in anticipation of litigation," or rely "on sources other than those utilized in treatment," that witness is impermissibly acting as a retained expert); *Gray v. Vastar Offshore, Inc.,* No. Civ.A. 04-1162, 2005 WL 399396, at *1 (E.D. La. Feb. 14, 2005) (opinions based on subsequent evaluation outside the treatment of the plaintiff equate to opinions from an expert retained for purposes of litigation).

### B.   Dr. Rosamond Did Not Employ Any Scientifically Reliable Methodology to Formulate His Vioxx Opinions.

Plaintiff erroneously asserts that Dr. Rosamond "reviewed the relevant studies and literature explaining the link between Vioxx and cardiovascular events prior to forming his conclusion."  Opp'n 15.  Dr. Rosamond's deposition testimony, however, flatly contradicts Plaintiff's assertions.  He testified that he did not review *any* scientific literature before forming his opinion on causation, as set forth in his letter:

> Q:   Did you do any research to prepare the letter?
>
> A:   No.  Other than I sat down and reviewed everything in our records that we had in order to craft the letter.  So I didn't go out and search the ***literature before the letter was done.***

Rosamond Dep. (Mot. Ex. B) at 23:13–18 (emphasis added); *see also id.* at 77:16–78:8 ("[T]his

4

was a dictation done the same day I met with her, after an office filled with patients.  So I didn't go search it out.")

While Dr. Rosamond testified that he was generally aware that many published articles existed, he could only identify a handful—specifically, he mentioned a 2002 paper by Eric Topol et al. published in the *Journal of the American Medical Association*, a 2007 article from *The Lancet*, a 2005 article from *The New England Journal of Medicine*, and the VIGOR study.  *See id.* at 75:15–76:2.  Notably, Dr. Rosamond did not contend that he actually read any of those articles other than the Topol article.  *Id.* at 12:9–11 ("I haven't pulled them per se.").

Perhaps most striking, Dr. Rosamond has *never* read the publication of the APPROVe study—the study which prompted the withdrawal of Vioxx from the market in 2004.  *Id.* at 12:20–13:2.

> Q:   Your referenced the APPROVe study earlier.
>
> A.   I don't remember that the APPROVe was out at the time of '09.  It may have been, but the one I'm talking about is – I think Topol's article was out in 2002, I think.  Well before 2009.  In JAMA.
>
> Q.   . . . [W]hat's your understanding for why Vioxx was removed from the market?
>
> A.   Because of the increased cardiovascular end points on those taking Vioxx as opposed to Naprosyn.

Rosamond Dep. (Mot. Ex. B) at 76:15–77:2.

APPROVe, as this Court knows well, was published well before 2009 and it did not compare Vioxx to Naprosyn.  *See In re Vioxx Prods. Liab. Litig.,* 2012 WL 2021945, at *1 (E.D. La. June 5, 2012), *aff'd*, 529 F. App'x 396 (5th Cir. 2013).  Nor was Vioxx removed from the market, as anyone familiar with clinical studies examining Vioxx would know, because of "increased cardiovascular end points on those taking Vioxx as opposed to Naprosyn."

The entire purported methodology on which Dr. Rosamond relies to opine that Vioxx "likely contributed" to Ms. Levitt's aggressive coronary presentation consists of his "awareness" that a handful of articles "implicated" Vioxx in unspecified "increased cardiovascular events" (only one article of which he appears to have actually read), and a temporal association of the use of Vioxx at the time Mrs. Levitt experienced her alleged injuries.  *See* Rosamond Dep. (Mot. Ex. B) at 76:1–12, 11:22–13:2.  This does not suffice as a scientifically valid methodology on which to draw an opinion admissible in a court of law.

Federal Rule of Evidence 702 permits the admission of expert evidence only if (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the witness has applied the principles and methods reliable to the facts of the case."  More specifically, a scientifically reliable methodology for determining causation requires that an expert "(1) identify all relevant studies; (2) read and critically evaluate all the relevant studies; [and] (3) evaluate all the data based upon recognized scientific factors" before exercising "best professional judgment in reaching a conclusion[.]"  *Burst v. Shell Oil Co.*, 120 F.Supp. 3d 547, 552–54 (E.D. La. 2015), *aff'd*, 2016 WL 2989261 (5th Cir. May 23, 2016) (per curiam).

Dr. Rosamond's testimony fails each of these criteria.  By his own testimony, he did not "read and critically evaluate all the relevant studies" before forming his opinion in 2009.  Nor, did he "evaluate all the data based upon recognized scientific factors."  Notably, Dr. Rosamond does not (and cannot) identify any Vioxx clinical study that examined "aggressive coronary artery presentation," or any endpoint that would suggest an increased risk for "aggressive coronary artery presentation."

The *Daubert* standard requires more from an expert than reading one scientific article about a condition tangential to the one being opined upon. Otherwise, any reasonably credentialed person who could read would be entitled to offer expert opinions at trials. *Daubert* also requires more than drawing nebulous inferences based on a perceived temporal association. Courts have repeatedly held that "temporality cannot withstand *Daubert* scrutiny[.]" *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1232 (D. Colo. 1998) (collecting cases); *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) ("The mere coincidence of temporality" is not evidence of causation.); *Cavallo v. Star Enter.*, 892 F. Supp. 756, 773 (E.D. Va. 1995), *aff'd in relevant part*, 100 F.3d 1150 (4th Cir. 1996) (inference from "temporal connection" and "unverified[] belief" is "not the method of science").

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is derived by the scientific method" and "supported by appropriate validation – i.e. 'good ground,' based on what is known." *Daubert*, 509 U.S. at 590, 592-93. A methodology that entails listing some articles from scientific journals and relying on temporal associations is not a "scientific method" from which any reliable testimony can be derived.

## CONCLUSION

Because Plaintiff failed to provide the expert report required by Rule 26(a)(2) and because Dr. Rosamond failed to conduct an analysis with the methodology required by *Daubert*, this Court should grant Merck's motion and preclude Dr. Rosamond from offering any opinions at trial that "Vioxx likely contributed to [Plaintiff's] aggressive coronary artery presentation."

Dated:  August 10, 2016                           Respectfully submitted,

By: /s/ Dorothy H. Wimberly

7

        Phillip A. Wittmann, 13625
        Dorothy H. Wimberly, 18509
        STONE PIGMAN WALTHER
        WITTMANN L.L.C.
        546 Carondelet Street
        New Orleans, LA 70130
        Phone: 504-581-3200
        Fax:    504-581-3361

*Defendants' Liaison Counsel*

  —and—

        Douglas R. Marvin
        M. Elaine Horn
        Emily Renshaw Pistilli
        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street, N.W.
        Washington, DC 20005
        Phone: 202-434-5000
        Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of August, 2016.

/s/ Dorothy H. Wimberly
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

Defendants' Liaison Counsel