
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| *This document relates to* | * | JUDGE FALLON |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, 2:06-cv-09757-EEF-DEK | * | MAGISTRATE JUDGE KNOWLES |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
EXCLUDE EXPERT OPINIONS OF JAY N. SCHAPIRA, M.D.**

The parties agree on three basic principles that apply to Dr. Schapira: (i) an expert wishing to express reliable causation opinions must perform a comprehensive review of the relevant literature; (ii) an expert expressing ever-shifting opinions about a plaintiff's diagnosis manifests an inherent lack of reliability; and (iii) courts must exclude testimony from physicians who opine outside their areas of expertise. Because Dr. Schapira's purported opinions suffer from each of these flaws, they are inadmissible and should be excluded under *Daubert*.

**ARGUMENT**

**I.   DR. SCHAPIRA'S SHIFTING OPINIONS ABOUT THE TYPE OF INJURY PLAINTIFF SUFFERED ARE UNRELIABLE.**

Plaintiff has presented three experts to opine on causation, and each one has offered a different theory about what injury Plaintiff actually sustained. Dr. Egilman claims she suffered unstable angina. Dr. Rosamond says she had an "aggressive coronary artery presentation," which presumably refers to Ms. Levitt's longstanding coronary artery disease. And, Dr. Schapira, after sustained waffling, seemingly has settled on the conclusion that Ms. Levitt experienced a heart attack, the layman's term for myocardial infarction. Plaintiff herself disagrees with Dr. Schapira:

> As previously explained, ACS includes a combination of three separate coronary outcomes, including unstable angina (*which Plaintiff Jo Levitt had*), myocardial infarction, and sudden death.

Egilman Opp'n at 23 (Rec. Doc. 65415) (emphasis added).  Nonetheless, Dr. Schapira persists in his conclusion even though there is no such diagnosis recorded in any of the contemporaneous medical records at any time, and no other doctors—treaters, experts, or otherwise—have diagnosed Plaintiff as having experienced myocardial infarction.  Indeed, Dr. Schapira can't even say with any clarity when the purported heart attack occurred.

Dr. Schapira first opined in his expert report that Plaintiff experienced myocardial infarction in March 2000.  He later amended his report to delete the term "myocardial infarction" (its only appearance in all his report) and state that she instead had experienced "acute coronary syndrome."  And then, at deposition, he reversed back to the position that Ms. Levitt had suffered a myocardial infarction.  Plaintiff contends that no change actually occurred because, she argues, acute coronary syndrome ("ACS") and myocardial infarction are effectively the same thing.  But even Plaintiff's own experts acknowledge that they are different.  Schapira Dep. 98:10–11, 14–16.  ACS is an umbrella term that covers at least three separate medical conditions: unstable angina, myocardial infarction, and sudden cardiac death.  *See* Opp'n 11 (quoting Egilman Dep. 121:2–4).

- Unstable angina is *chest pain* resulting from poor blood flow in the coronary arteries.

- Myocardial infarction is a *heart attack* that involves the death of heart muscle.

- Sudden cardiac death is *death* resulting from the *complete failure* of the heart.

To suggest these are all the *same* indulges a classic logical fallacy:  "Pneumonia makes you cough; therefore, if you cough, you have pneumonia."  *Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2002).  That's why the Fifth Circuit views expert causation opinions that rely

2

on umbrella categories of illness, rather than a plaintiff's specific injury, with disfavor. *See, e.g.*, *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194 (5th Cir. 1996); *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 585 (5th Cir. 2004).

Dr. Schapira himself explicitly contrasted ACS and myocardial infarction, explaining that even though one the preadmission records referenced a "provisional diagnosis" of myocardial infarction, he "thought it was more likely acute coronary syndrome." Schapira Dep. 98:10–11, 14–16. If they are the same, then how could one be "more likely" than the other? The answer, of course, is that they are in fact different. *See also* Defendant's Reply on Egilman Mot. at § II.

To compound the waffling, Dr. Schapira drifts back and forth as to *when* Levitt's supposed myocardial infarction occurred. Plaintiff argues that Dr. Schapira consistently maintained that "he was unable to provide a specific date" for when "Levitt's myocardial infarction occurred." Opp'n 12. But that is demonstrably incorrect. While Schapira testified at the beginning of his deposition that he could not provide a specific date for Plaintiff's injury, Schapira Dep. 100:13–16, he subsequently took two entirely contradictory positions as to the timing. First, he testified that Levitt's myocardial infarction occurred "sometime after March of 2000." *Id* at 100:16–17. He then did another about-face, changing his testimony to say that "she finally came in the hospital I think around March 9th, and she had chest pain all week. And I think that's when she had the infarct[ion], *prior to coming in*." *Id.* at 208:12–15 (emphasis added). This opinion squarely contradicts Dr. Schapira's earlier statement that he could *not* identify a specific date for her injury but that it must have occurred *after* March 2000. It cannot be that Levitt's supposed myocardial infarction occurred both before *and* after March 2000.

Plaintiff does not contest that an expert who waffles between theories "invites the inquiry on whether [the expert's] final [opinions] bear sufficient indicia of reliability to present to a

3

jury." *Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 791 (S.D. Tex. 2000); *see* Opp'n 10–15; *Lemmermann v. Blue Cross Blue Shield*, 713 F. Supp. 2d 791, 807 (E.D. Wis. 2010).  If ever this principle should have meaningful application, it's here.  Dr. Schapira can point to no other doctor who actually treated Plaintiff to confirm his opinion that she suffered a myocardial infarction.  The contemporaneous medical records reflect no such diagnosis, and in fact expressly rule it out.  Plaintiff's argument that a pre-admission, "provisional diagnosis" of myocardial infarction (see Opp'n Ex. D) was subsequently "made absolute" (a claim for which no record was attached) is pure fabrication.  Opp'n 14.  Instead, the records reflect, consistent with every other physician's diagnosis (both contemporaneous and subsequent), that Levitt experienced unstable angina, not a myocardial infarction.

To be clear, the argument here is not that Dr. Schapira gets it wrong.  The argument is that Schapira's lack of clarity and consistency as to *whether* Levitt experienced a heart attack and *when* the supposed heart attack may have occurred, the absence of any confirmatory diagnosis in the contemporaneous medical records, and the contrary opinions from Plaintiff's own experts reveal that his opinions concerning the nature of Levitt's cardiovascular event do not "bear sufficient indicia of reliability to present to a jury."  *Castellow*, 97 F. Supp. 2d at 791.  Accordingly, his testimony should be excluded.  *See* Fed. R. Evid. 702(c).

## II. DR. SCHAPIRA'S "REVIEW" OF THE VIOXX LITERATURE IS NOT SUFFICIENT TO OPINE ON CAUSATION.

Presumably, the reason why Dr. Schapira finally fixed on myocardial infarction as the injury Plaintiff sustained is because the few articles that Dr. Schapira reviewed focused exclusively on the endpoint of myocardial infarctions.  That, too, raises questions about the reliability of Dr. Schapira's opinions—*viz.*, the methodology that he employed to reach his conclusion.

4

The rule, which Plaintiff does not contest, is that an expert cannot opine about causation without conducting a comprehensive review of relevant data.  *See* Opp'n 5; *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 553–54 (E.D. La. 2015), *aff'd*, 2016 WL 2989261 (5th Cir. May 23, 2016) (per curiam).  That of course does not mean an expert must review every single article that is remotely related to the topic in question, Opp'n 5, but it does require that he must review "all *relevant* studies" and then "evaluate all the[ir] data." *Burst*, 120 F. Supp. 3d at 552 (emphasis added).

Dr. Schapira has not done this; he hasn't even come close.  His expert report cites **one** published article related to Vioxx and cardiovascular risk.  Dr. Schapira's consideration of that article, a meta-analysis by Jüni et al., is four sentences long:

> For example, the article by Peter Juni [*sic*] in The Lancet (2004, 364:2021-2029), which established the increased cardiovascular risk.  In the meta-analysis mentioned above, 18 randomized control trials and 11 observational studies were considered.  The relative risk increase from these studies revealed that this increased risk was 2.30.  Therefore, the relative risk of developing a cardiovascular problem was 2.30 times higher for patients who took Vioxx as opposed to the patients who did not take Vioxx.

Schapira Report 7 (Mot. Ex. 3) (emphasis omitted).  Plaintiff contends that reviewing this one article is sufficiently sound methodology because Jüni et al. is a *meta-analysis* that combines data from 18 other clinical studies.  That is absurd.  All of the studies in the analysis were conducted by 2001.  They comprise only a fraction of the available Vioxx clinical trials.  Dr. Schapira apparently did not consider the data from additional important clinical trials conducted after that date, such as the Alzheimer's studies, other than a passing mention of APPROVe.  Neither Plaintiff nor Dr. Schapira explains why he failed to consider these additional studies in forming his causation opinions.  He simply chose not to review them.

Likely recognizing the inadequacy of this response, Plaintiff's next resort is to contend

5

that Dr. Schapira's analysis was more robust than his report lets on. Dr. Schapira, Plaintiff contends, "brought numerous articles and publications that he had reviewed, researched, and relied upon to his deposition." Opp'n 6. As an initial matter, this document dump—one of several during the course of expert discovery, *see, e.g.*, Egilman Motion (Rec. Doc. 65390) at 4—plainly violated Federal Rule of Civil Procedure 26. That Rule required Plaintiff to disclose "a complete statement of all opinions [Dr. Schapira] will express and the basis and reasons for them" *before* his deposition. *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). In the face of this violation, Plaintiff blames Merck's counsel for "not question[ing] Dr. Schapira about these materials" and "not mark[ing] the materials as an Exhibit." Opp'n 6–7. Plaintiff's gamesmanship should not be rewarded. *See* Fed. R. Civ. P. 1. "Litigation is the pursuit of practical ends, not a game of chess." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) (Frankfurter, J.).

In any event, counsel for Merck *did* ask Dr. Schapira about the additional literature at his deposition. *See* Schapira Dep. 21:2–24:25 (Mot. Ex. 1). In response to those questions, Dr. Schapira initially took "almost 6 minutes to look through the stack of documents." *Id*. at 130:11. Then he dug through the articles *again*, "spend[ing] many minutes pouring over the same stack of documents that he'[d] already been through a couple of times." *Id.* at 140:24–141:2; *see also id.* at 141:11–13 ("He's spent over ten minutes flipping through the same stack of documents."). In spite of being provided every opportunity to identify additional studies he was relying on, Dr. Schapira could only identify one more published article.[1] *Id.* at 130:21–131:19 (identifying Mukherjee et al. (2001)). Dr. Schapira did not explain how that article supported his causation

---

[1] His efforts may have been complicated by the fact that Dr. Schapira does not even appear to have selected his own list of articles, as many are stamped as exhibits to Dr. Egilman's prior work. *See* Schapira Decl. 32–37 (Opp'n Ex. B) (pages labeled "Egilman Exhibit").

6

opinions—indeed, he conceded that Mukherjee et al. relied on a composite endpoint, *id.* at 132:12–19, and that he could not "identify any published medical article that establishes a statistically significant association" between Vioxx and unstable angina.  *Id*. at 132:20–133:4.

Even had Dr. Schapira been able to identify additional relevant studies, courts applying the methodological standards of *Daubert* require more than merely printing out literature. "[L]isting numerous articles is hardly a substitute for setting forth a reasoned, scientific analysis of how [an expert] drew [his] conclusions from the documents, literature, and studies cited." *Eggar v. Burlington N. R. Co.*, 1991 WL 315487, at *6 (D. Mont. Dec. 18, 1991), *aff'd*, 29 F.3d 499 (9th Cir. 1994); *see also*, *e.g.*, *Kilpatrick v. Breg, Inc.*, 2009 WL 2058384, at *5 (S.D. Fla. June 25, 2009), *aff'd*, 613 F.3d 1329, 1340–41 (11th Cir. 2010) ("a vague reference to other unnamed articles . . . does not render his methodology reliable"); *Nelson v. Tenn. Gas Pipeline Co.*, 1998 WL 1297690, at *12 (W.D. Tenn. Aug. 31, 1998) (a "mere listing of numerous articles" attached to a *Daubert* opposition does not establish "the methods by which the expert formulated his opinions from the publications cited"), *aff'd*, 243 F.3d 244 (6th Cir. 2001); *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 372 (D.N.J. 1995); *Conde v. Velsicol Chem. Corp.*, 804 F. Supp. 972, 1020 (S.D. Ohio 1992), *aff'd*, 24 F.3d 809 (6th Cir. 1994).

Because Dr. Schapira failed to comprehensively review relevant studies and evaluate their data, his causation opinions are methodologically unsound and inadmissible.  Fed. R. Evid. 702; *Burst*, 120 F. Supp. 3d at 553–54.

### III. DR. SCHAPIRA IS NOT QUALIFIED TO RENDER OPINIONS AS TO PLAINTIFF'S PSYCHOLOGICAL CONDITIONS.

To qualify as an expert witness, a person must have formal education or "skill, experience, [or] training" in the subject matter on which he seeks to opine.  Fed. R. Evid. 702(a); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).  Under this standard, Dr. Schapira is not

7

qualified to opine that Ms. Levitt's heart condition caused a decline in her psychological condition that resulted in a global cognitive disability.  Schapira Dep. 26:10–37:2.  Plaintiff has suffered from serious psychiatric conditions, including clinical depression, her entire adult life.  *See, e.g.*, Records of Dr. Burroughs at 20 (Sep. 16, 1989) (excerpts attached as Ex. 1).  Her condition required referral to a board-certified, practicing psychiatrist for diagnosis, therapy, and treatment, years before she began taking Vioxx.  *See* Records of Dr. Neiburger at 295 (May 18, 1990) (excerpts attached as Ex. 2).  Yet Dr. Schapira—a cardiologist, not a psychologist or a psychiatrist—seeks to opine about the nature and cause of Plaintiff's psychiatric conditions.

Plaintiff suggests that Dr. Schapira is qualified to opine on depression because it is "associated with [] cardiovascular injuries" of the type that "any cardiologist" would consider.  Opp'n 19.  Dr. Schapira claims that, when treating his cardiac patients, he will "additionally diagnose [his] patients with cognitive issues, including depression, associated with their cardiovascular injuries."  Schapira Decl. 1.  This argument has two flaws.  *First*, Dr. Schapira's asserted ability to *treat* depression does not mean is qualified to testify about its *underlying cause*.  "The ability to diagnose and to treat a disease is substantially different from the expertise required to assess its genesis to a reasonable degree of scientific certainty."  *Morin v. United States*, 534 F. Supp. 2d 1179, 1185 (D. Nev. 2005), *aff'd*, 244 F. App'x 142 (9th Cir. 2007).  *Second*, Plaintiff's psychiatric conditions are not mere "co-morbidities of her cardiac situation."  Schapira Dep. 29:23–30:3.  Nor do her psychiatric ailments merely concern her "lifestyle, functionality, occupation, disability, family issues, habits, [or] day-to-day functions."  Schapira Decl. 1.  Her conditions, Dr. Schapira opines, are *globally disabling*—the kind of psychiatric ailment that far surpasses whatever capacity a cardiologist has to assess and treat patients for psychological conditions.

Even if Dr. Schapira were qualified to opine about the cause of Plaintiff's psychological conditions, his opinions on this front would fail to satisfy Federal Rule of Civil Procedure 26. Rule 26 required Plaintiff to provide Merck with "a complete statement of all opinions [Dr. Schapira] will express." *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Dr. Schapira's report, however, does not contain any mention of depression, cognitive ability, psychology, or psychiatry. This violation is not just a technical one—Merck was prejudiced by its inability to prepare for or examine Dr. Schapira's new opinions. As counsel for Merck explained to Dr. Schapira at his deposition, "In fairness, if you had included any section in your report at all about this, then I would have come prepared to talk about the psychiatric records in this matter in a more fulsome way than I've had the opportunity to do." Schapira Dep. 36:8–12. Whether through neglect or by intent, Plaintiff's violations of Rule 26's expert-disclosure requirements are too common to ignore. *See* Egilman Motion (Rec. Doc. 65390) at 4; Madigan Motion (Rec. Doc. 65382) at 8.

Nevertheless, counsel for Merck *did* attempt to ask Dr. Schapira about his new opinion, and his answers revealed that it runs afoul of Federal Rule of Evidence 702 in three ways. *First*, it does not rest on "sufficient facts and data." Fed. R. Evid. 702(b). Dr. Schapira identified no medical or psychiatric records that support his opinion. Schapira Dep. 28:23–29:13, 31:1–33:17. *Second*, it is not "the product of reliable principles and methods." Fed. R. Evid. 702(c); *see, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 580 (1993). Dr. Schapira could not identify any methodology he used in forming his opinions on depression, and referred to only one peer-reviewed article he relied on "[i]n a very indirect, background way." Schapira Dep. 26:14–20. *Third*, Dr. Schapira has not demonstrated that he "reliably applied [his] principles and methods" to the facts of this case. Fed. R. Evid. 702(d). He in truth conceded that he did *not* conduct a comprehensive review of Plaintiff's psychiatric records:

> Q. Have you performed a comprehensive review of Miss Levitt's psychiatric records for purposes of expressing an opinion about the severity of her depression after 2000 compared to the severity of her depression before the year 2000?
>
> A. I reviewed her psychiatric records in order to assess what her functional capacity is, based upon her cardiac situation.
>
> Q. I'm sorry, but that was not my question. . . . Can you please read back my question?
>
> (The court reporter read the requested portion of the record.)
>
> [A.] *Specifically, no*, but that could become a little bit relevant in terms of assessing her functional abilities now.

Schapira Dep. 28:3–29:13 (emphasis added). These problems provide an additional reason to exclude Dr. Schapira's depression-related opinions.

Dr. Schapira is not qualified to opine that Plaintiff's depression was caused by her cardiac events or that her depression caused a global cognitive disability. Even if he were, Plaintiff violated Civil Rule 26 by failing to disclose these opinions, and the opinions themselves do not satisfy Evidence Rule 702. Dr. Schapira's testimony about Plaintiff's depression is inadmissible and should be excluded.

## IV. PLAINTIFF CONCEDES THAT DR. SCHAPIRA CANNOT OFFER BUSINESS-ANALYSIS OPINIONS

In her opposition brief, Plaintiff states that Dr. Schapira "does not intend to testify about" the business-analysis opinions that Dr. Schapira offered in his deposition. Opp'n 19; *see, e.g.*, Schapira Dep. (Mot. Ex. 1) 121:24–123:1. Merck asks this court to enter an order precluding this testimony to prevent the potential need for additional motions practice in the future.

## CONCLUSION

For these reasons, Merck respectfully requests that this Court enter an order prohibiting Dr. Schapira from testifying at trial about general or specific causation related to Vioxx;

10

Plaintiff's supposed myocardial infarction; and Plaintiff's psychological condition, related disability, or businesses.  Merck filed a proposed order with its initial motion.  *See* Rec. Doc. 65387.

Dated:  August 10, 2016

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
     Phillip A. Wittmann, 13625
     Dorothy H. Wimberly, 18509
     STONE PIGMAN WALTHER
     WITTMANN L.L.C.
     546 Carondelet Street
     New Orleans, LA 70130
     Phone: 504-581-3200
     Fax:    504-581-3361

*Defendants' Liaison Counsel*

—and—

Douglas R. Marvin
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of August, 2016.

                                                */s/ Dorothy H. Wimberly*
                                                Dorothy H. Wimberly, 18509
                                                STONE PIGMAN WALTHER
                                                WITTMANN L.L.C.
                                                546 Carondelet Street
                                                New Orleans, LA 70130
                                                Phone:  504-581-3200
                                                Fax:     504-581-3361
                                                dwimberly@stonepigman.com

                                                Defendants' Liaison Counsel