UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO
EXCLUDE EXPERT OPINIONS OF DAVID MADIGAN, PH.D.**

According to Plaintiff's opposition brief, David Madigan is nothing but "a statistician offering opinions on the true statistical results of Merck's studies versus what Merck actually disclosed." Opp'n 11. If true, one wonders why Plaintiff bothered to oppose this motion. The reality is that Madigan opines about matters that go well beyond statistics. Moreover, the eleventh-hour analysis Madigan provided Dr. Egilman is untimely and inadmissible.

**ARGUMENT**

**I.   MADIGAN'S OPINIONS ABOUT MEDICINE AND CLINICAL-TRIAL DESIGN SHOULD BE EXCLUDED.**

An expert witness may not offer an opinion "in a particular field or on a given subject" unless he is "qualified to testify" in that area "by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702). It is true that Madigan has expertise in statistical data analysis, and Merck is not— contrary to Plaintiff's implication—asking the Court to exclude his opinions that fall within the scope of that expertise. Madigan's expertise qualifies him to perform statistical analysis of Vioxx clinical trial data, to calculate risk ratios based on those analyses, and to express opinions

about whether those risk ratios meet broadly accepted standards for statistical significance. *See, e.g.*, Madigan Report ¶ 2(d), (e) (Mot. Ex. 1).

Madigan is not qualified, however, to venture into matters that require knowledge of medicine and clinical-trial design. Because he lacks "knowledge, skill, experience, training, or education" about those topics, he is not qualified to testify about them. Fed. R. Evid. 702(a); *see Wilson*, 163 F.3d at 937.

### A. Madigan Lacks the Medical Expertise Necessary to Offer Several of His Opinions.

Madigan offers several opinions that require medical knowledge. He opines, for example, that:

- Merck "misrepresented" or "obfuscated" Vioxx's medical risks in its disclosures, *see, e.g.*, Madigan Report (Mot. Ex. 1) ¶¶ 2(b), 41, 221;

- certain data would have been "meaningful" or "relevant" to the medical community and should have been disclosed, *id.* ¶¶ 2(e), 107, 233;

- certain "endpoints" (clinical outcomes selected by medical doctors) in the Vioxx clinical trials "w[ere] designed not to measure cardiovascular risk," *id.* ¶ 69; and

- "medical science still does not support" Merck's belief that the "cardioprotective properties" of a comparator used in the clinical trials skewed some of the data, *id.* ¶ 73; *see also id.* ¶ 56.

All of these opinions go well beyond statistics. Determining what information a physician would find relevant, whether data and disclosures accurately portray a drug's medical risks, or whether a medical theory can explain clinical data requires medical experience that Madigan does not have. *See* Madigan Levitt Dep. 27:15–25, 66:5–67:11 (Mot. Ex. 2); *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, 454 (D.D.C. 2006); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 556–57 (S.D.N.Y. 2004). Accordingly, his testimony on these topics are inadmissible. *See Wilson*, 163 F.3d at 937.

2

Plaintiff suggests that an expert does not need medical experience to opine about whether a drug manufacturer's disclosures adequately conveyed certain risks to physicians. Opp'n 9–11. Specifically, Plaintiff contends that *Rheinfrank v. Abbott Laboratories, Inc.*, 119 F. Supp. 3d 749 (S.D. Ohio 2015), "explicitly approved of" expert testimony of this sort. Opp'n 11. Not so. To be sure, the court in *Rheinfrank* permitted an expert to opine "'on the medical facts and science regarding the risks and benefits of [the drug] and compare[] that knowledge with what was provided in the text of the labeling.'" *Id.* (quoting *Rheinfrank*, 119 F. Supp. at 773). But the expert in *Rheinfrank* was **a board-certified neurologist**. 119 F. Supp. 3d at 772. That a *medical* doctor with experience in the relevant field could testify about "medical facts and science" makes sense. Madigan, by contrast, is a statistician with no medical expertise.

Merck's brief cites several cases in support its motion that Plaintiff suggests are "distinguishable" because the experts in those cases were opining about medical *causation* rather than about disclosure of medical *data*. *See* Opp'n 9; Mot. 9–10. But Plaintiff never explains why this distinction matters. As many courts have determined, whether opining about medical causation or about what clinical information medical doctors would find important, actual *medical* expertise is required. *See Cason v. C.R. Bard, Inc.*, 2015 WL 9913809, at *9 (N.D. Ga. Feb. 9, 2015); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 556–557 (S.D.N.Y. 2004); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1243 (D. Colo. 1998); *Lareau v. Page*, 840 F. Supp. 920, 932–33 (D. Mass. 1993), *aff'd*, 39 F.3d 384 (1st Cir. 1994); *see also In re Mirena IUD Prods. Liab. Litig.*, ___ F. Supp. 3d ___, 2016 WL 890251, at *60 (S.D.N.Y. Mar. 8, 2016) (excluding expert testimony on adequacy of drug-related disclosures where expert was "not a medical doctor, clinician or regulatory expert, and acknowledged that she is not an expert on labeling").

3

In the end, Plaintiff falls back on a promise not to elicit medical causation opinions from Madigan, who has admitted that he lacks the qualifications to offer them.  *See* Madigan Levitt Dep. 31:19–22.  To avoid future litigation over the issue, Merck respectfully asks this Court to enter an order preventing him from providing that testimony.  Because Madigan is not a medical doctor, and does not have relevant medical expertise, his opinions on the nature and adequacy of Merck's medical disclosures, its selection of endpoints in the clinical-trial data, and its medical explanations of those data should not be admitted.  *See Wilson*, 163 F.3d at 937.

**B.     Madigan's Opinions About Clinical-Trial Design Should Be Excluded.**

Despite not being a trained epidemiologist, Plaintiff contends that Madigan has expertise in epidemiology that qualifies him to opine on the design of Merck's clinical trials.  This expertise, Plaintiff argues, comes in the form of Madigan's published articles that relate to the field of epidemiology.  Opp'n 7–8.  A review of those articles, however, reveals that they are, true to Madigan's actual expertise, in the field of statistics, not epidemiology.  Two of his "epidemiological" articles discuss the application of "Bayesian methods," a form of *statistical* analysis.  *See* Price et al., *Bayesian Methods for Design and Analysis of Safety Trials*, 13 Pharm. Stud. 13 (2014); Ryan et al., *Learning from Epidemiology: Interpreting Observational Studies for the Effects of Medical Products*, 5 Statistics in Biopharm. Research 170 (2013); *see also* Glickman & Van Dyk, *Basic Bayesian Methods*, 404 Topics in Biostatistics 319–38 (2007) (providing an overview of Bayesian statistical methods), *available at* http://www.glicko.net/ research/glickman-vandyk.pdf.  Madigan's other "epidemiological" article determines statistically that "20%–40% of observational database studies can swing from statistically significant in 1 direction to statistically significant in the opposite direction depending on" which specific "large-scale observational clinical database[]" a study uses.  Madigan et al., *Evaluating the Impact of Database Heterogeneity on Observational Studies*, 178 Am. J. Epidemiology 645,

4

645, 647 (2013).  None of these articles, nor any other part of Madigan's statistical background, qualify him to opine about the design of the Vioxx clinical trials.  *See Wilson*, 163 F.3d at 937.

Madigan offers several opinions critiquing the design of the Vioxx clinical trials.  He opines, for instance, that Merck used "illegitimate endpoints," and speculates about various deficiencies in the adjudicatory methodology applied by the independent, blinded medical doctors who reviewed reported cardiac events.  *See* Madigan Rep. ¶¶ 66, 69, 160, 198, 202, 215, 216, 221 (endpoints); Madigan Levitt Dep. 65:10–74:5 (adjudication).  Only a person with relevant medical expertise, such as a medical doctor, can offer such opinions.  *See In re Lipitor Prods. Liab. Litig.*, 145 F. Supp. 3d 573, 591 (D.S.C. 2015), *amended in other part*, 2016 WL 827067 (D.S.C. Feb. 29, 2016).  That is because "the choice of which data to examine or how best to model a particular process could require subject matter expertise that a statistician lacks." *Id*. (citing *Reference Manual on Scientific Evidence* 215 (3d ed. 2011)).

Madigan is not a medical doctor, nor is he an epidemiologist, the "branch of medical science that deals with the incidence, distribution, and control of disease in a population."  *See Medical Definition of Epidemiology*, Merriam-Webster, http://www.m-w.com/dictionary/epidemiology (last visited Aug. 5, 2016); Madigan ERISA Dep. 10:20–21 (Mot. Ex. 4); Madigan Levitt Dep. 30:4–31:2.  Accordingly, Madigan is not qualified to second guess the judgments of the physicians and scientists who designed and managed the Vioxx clinical trials. *See* Fed. R. Evid. 702; *Wilson*, 163 F.3d at 937.

**II.    MADIGAN'S NARRATIVE TESTIMONY GOES BEYOND MERELY RELAYING THE FACTUAL BASES OF HIS OPINIONS.**

Madigan's expert report includes narrative opinions entirely unrelated to his statistical expertise.  Madigan, for instance, repeatedly highlights testimony by Merck personnel as support for his own judgments about the relative value of data.  He also offers conjecture about the

mental state of Merck and its employees' concerning the cardiovascular risks of Vioxx. Madigan Rep. ¶¶ 114, 200, 202.

These narratives are improper. Experts may offer only opinions based in scientific or technical knowledge beyond the understanding of an ordinary person. Fed. R. Evid. 702; *see, e.g.*, *Theodile v. Delmar Sys., Inc.*, 2006 WL 1751226, at *1–3 (W.D. La. June 21, 2006) (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (per curiam)). They may not provide "merely a narrative of the case which a juror is equally capable of constructing." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (internal quotation marks and citation omitted); *see also, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 1265009, at *11 (N.D. Cal. Mar. 19, 2015) (an expert may not "simply rehash otherwise admissible evidence about which [the expert] has no personal knowledge"). Nor may an expert testify about a party's state of mind. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007).

Plaintiff's opposition briefs seeks to cast Madigan's narratives as nothing more than statements of the factual bases for his opinions. To be sure, Civil Rule 26 and Evidence Rule 1006 allow experts to identify and summarize the "factual underpinnings" of their opinions. *See In re DuPuy Orthopaedics, Inc.*, 2014 WL 3557345, at *7 (N.D. Tex. July 18, 2014). But that does not eliminate Evidence Rule 702's requirement that expert opinions stem from "scientific, technical, . . . or specialized knowledge." Seeing as Madigan is "a statistician offering opinions on the true statistical results of Merck's studies versus what Merck actually disclosed," Opp'n 11, the factual underpinnings of his expert opinions are the incidence rates of cardiovascular events in clinical trials and Merck's public statements about Vioxx's cardiovascular risks. Merck's internal knowledge and state of mind could not reasonably form the basis of Madigan's

6

opinion. His narratives about those topics are inadmissible and should not be admitted. *See, e.g.*, *In re Rezulin*, 309 F. Supp. 2d at 551.

### III. MADIGAN'S UNDISCLOSED STATISTICAL ANALYSIS SHOULD BE EXCLUDED FROM EVIDENCE.

Federal Rule of Civil Procedure 26(a)(2)(B) requires litigants to disclose certain facts to the other parties about their expert witnesses. Those facts include "all opinions the witness will express," "the facts or data considered," and "any exhibits that will be used to summarize or support them." Rule 26(a)(2)(B)(i)–(iii). A party's disclosures must be "complete and detailed" and also must comply with the scheduling orders issued by the Court. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). These "disclosure requirements promote the broader purpose of discovery, which is the narrowing of issues and the elimination of surprise." *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 297 (5th Cir. 2016) (internal quotation marks omitted).

A party who fails to comply with Rule 26's expert-disclosure requirements generally may not use that expert "at a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Although courts may issue alternative sanctions under Rule 37, the "more effective enforcement of the disclosure requirement will be to exclude the evidence not disclosed," as other measures "would neither punish [the party] for its conduct nor deter similar behavior in the future." *Sierra Club*, 73 F.3d at 573; *see also Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990).

The disclosure of Madigan's analysis at Dr. Egilman's deposition did not comply with Rule 26 or this Court's scheduling order. Ms. Levitt's expert disclosures were due January 19, 2016. The scheduling order was clear that "[w]ritten [expert] reports must fully comply with Rule 26(a)(2)." Rec. Doc. 65296. Yet on April 12, 2016, five weeks *after* Madigan's

deposition, Merck learned that Madigan seemingly had performed a brand new analysis. Merck didn't learn about this from opposing counsel or from Madigan himself. Instead, it was revealed through Dr. Egilman, who, *in the middle of his deposition*, retrieved it from the bottom of one of the hundreds of folders he brought with him to his deposition. *See* Dep. of David Egilman (attached as Ex. 4 to Egilman Motion (Rec. Doc. 65390)) 45:4–14. Because Dr. Egilman had only a passing understanding of the methodology underpinning Madigan's "meta-analysis," *see* Egilman Dep. 45:9–54:12, and Madigan had already been deposed, Merck was left unable to adequately explore analysis's nature, scope, and methodological underpinnings.

Plaintiff's gamesmanship should not be countenanced by this Court. This patent disregard for Rule 26 and this Court's scheduling order warrants exclusion of the new analysis, which is the default sanction under Civil Rule 37(c)(1) unless Plaintiff has shown the violation was "substantially justified or harmless." She has not. Madigan and Egilman have both been involved in this case for at least two-and-a-half years. Madigan had access to all the data he used to perform the analysis before his expert report was due, so either he did not take the time to run this analysis or did not consider running it earlier. That is not an adequate reason for delay. *See, e.g.*, *Simmons v. Johnson*, 2008 WL 474203, at *2 (M.D. La. Feb. 14, 2008); *Buxton v. Lil' Drug Store Prods., Inc.*, 2007 WL 2254492, at *5–6 (S.D. Miss. Aug. 1, 2007), *aff'd*, 294 F. App'x 92 (5th Cir. 2008); *Cleave v. Renal Care Grp., Inc.*, 2005 WL 1629750, at *1 (N.D. Miss. July 11, 2005); *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 604 (S.D. Tex. 2001); *see also Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741–43 (7th Cir. 1998).

Moreover, there is no question that Merck has been unfairly prejudiced by Plaintiff's maneuvering. Madigan's analysis forms the primary basis for Dr. Egilman's opinion that Vioxx

is causally associated with unstable angina, the condition that Dr. Egilman claims Plaintiff suffered in this case.[1] Egilman Dep. 147:1–18.

Plaintiff attempts to mitigate the prejudice by suggesting that Madigan be re-deposed. That will not suffice. Merck would of course re-depose Madigan if necessary, but depositions cost significant time and money, and, in this circumstance, would also require that Dr. Egilman also be re-deposed. The Parties potentially would have to restart the process of *Daubert* briefing as to one or both of these experts. No party should have to bear the expense of supplemental expert depositions and briefing for no reason other than a party's failure to follow Rule 26's disclosure requirements, particularly given the increased cost and delay this would impose on the Court. *Cf. Williams v. Gonzales*, 2005 WL 3447885, at *7 (E.D. Tex. Dec. 14, 2005) ("[W]hile continuing the case" to permit a response to an untimely expert report "might diminish the prejudice to [defendant], it would result in increased cost and delay."). This case has gone on long enough as it is.[2]

This last-minute disclosure violates both the letter and the spirit of Civil Rule 26, which is designed to "promote[] fairness both in the discovery process and at trial." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (Selya, J.). "For Rule 26 to play its proper part

---

[1] Madigan's analysis, as noted, focuses on the association between Vioxx use and *acute coronary syndrome*, not *unstable angina*. Because that is so, the analysis is irrelevant to Dr. Egilman's opinion that Vioxx is casually associated with unstable angina. *See* Mot. to Exclude the Expert Ops. of Dr. David Egilman 10–13 (Rec. Doc. 65390).

[2] Notably, Plaintiff wrongly suggests that Merck does not object that "the analysis is not relevant or reliable." Opp'n 15. That is incorrect. To start, Merck noted in its opening brief that "Madigan's analysis is not particular to the cardiovascular event that Dr. Egilman says Ms. Levitt actually experienced." Mot. 13 n.4. What's more, Merck explained at length in its *Daubert* motion for Dr. Egilman that Madigan's analysis and Dr. Egilman's testimony based on it is irrelevant because of its focus on acute cardiovascular syndrome rather than unstable angina. *See* Mot. to Exclude the Expert Ops. of Dr. David Egilman 10–13 (Rec. Doc. 65390).

in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." *Id.*

## CONCLUSION

For these reasons, Merck respectfully requests that the Court grant its motion to exclude the opinions of Plaintiff's statistics expert David Madigan discussed in Merck's motion. Included with that motion is a proposed order. *See* Rec. Doc. 65382.

Dated: August 10, 2016

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax:    504-581-3361

*Defendants' Liaison Counsel*

—and—

Douglas R. Marvin
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 10th day of August, 2016.

                                                  */s/ Dorothy H. Wimberly*
                                                  Dorothy H. Wimberly, 18509
                                                  STONE PIGMAN WALTHER WITTMANN L.L.C.
                                                  546 Carondelet Street
                                                  New Orleans, LA 70130
                                                  Phone:  504-581-3200
                                                  Fax:     504-581-3361
                                                  dwimberly@stonepigman.com

                                                  *Defendants' Liaison Counsel*