UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: VIOXX
    PRODUCTS LIABILITY LITIGATION

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

THIS DOCUMENT RELATES TO:     *Jo Levitt v. Merck Sharp & Dohme Corp.*, 06-9757

## ORDER & REASONS

Before the Court is Defendant's Motion to Maintain Confidential Document Designations, R. Doc. 65337, and Defendant's Motion to Maintain Confidential Document Designations and for a Protective Order Barring Similar Requests. R. Doc. 65349. The Court has reviewed the briefs and the applicable law, and now issues this Order & Reasons.

**I.    BACKGROUND**

To put this matter in perspective, a brief review of this multidistrict litigation ("MDL") is appropriate. This litigation involves products liability claims pertaining to the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration ("FDA") approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (that is, heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed

against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims.

On September 29, 2006, Ms. Levitt brought this action against Merck in the United States District Court for the Western District of Missouri. In her complaint, she alleges that she suffered two heart attacks in 2001 as a result of taking Vioxx and seeks compensatory and punitive damages, as well as interest, costs, attorneys' fees and any other available relief. On November 8, 2006, the matter was transferred to this Court for inclusion in the *Vioxx* MDL.

Following six "bellwether" trials in this proceeding—as well as trials in other proceedings in Alabama, California, Illinois, Florida, New Jersey, and Texas—the negotiating plaintiffs' counsel ("NPC") and Merck's counsel engaged in protracted settlement discussions over the course of a year, conducting hundreds of in-person and telephone meetings. On November 9, 2007, the parties announced a $4.85 billion master settlement agreement ("MSA") that intended to—and actually did—resolve most Vioxx-related claims through a resolution program. In its recitals, the MSA expressly states that its purpose was to "establish a pre-funded, structured private settlement program . . . to resolve . . . claims against Merck involving heart attacks, ischemic strokes and sudden cardiac deaths." This was an "opt-in" program, meaning an interested claimant had to take affirmative steps to enroll in it.  Ms. Levitt chose not to enroll.

On November 14, 2013, this Court ordered that Ms. Levitt designate expert witnesses and provide their reports pursuant to Federal Rule of Civil Procedure 26(a)(2) on or before December 13, 2013. (Rec. Doc. 64688). Ms. Levitt then designated five expert witnesses.  Dr. David Egilman was timely designated as Ms. Levitt's expert concerning non-heart attack related injuries.  In connection with Ms. Levitt's retention of Dr. Egilman, and in anticipation of his upcoming deposition, Ms. Levitt requested on December 31, 2016 that Merck remove

2

confidentiality designations on "any and all Vioxx documents relating to marketing, research, science, studies, testing, production etc." R. Doc. 65349-1 at 2. On February 25, 2016, Ms. Levitt also asked Merck to "address the confidentiality designation" of forty-one specific documents. R. Doc. 65349-2 at 2. Merck found that only five of the forty-one documents are currently designated as confidential, and agreed to de-designate one of the remaining five (Bates number MRK-NJ0061267–68). Merck filed its first Motion to Maintain Confidential Designations, R. Doc. 65337, in response to Ms. Levitt's February 25 request.

Following the filing of Merck's first Motion to Maintain Confidential Designations, Ms. Levitt sought the de-designation of additional documents from Merck. These requests were sent on March 29, March 31, April 12, April 14, and May 5 of 2016. R. Doc. 65349-1 at 2. The requests either sought the de-designation of specific documents, or asked Merck to address the confidentiality of classes of documents. R. Doc. 65349-1 at 2. This second wave of requests concerns approximately 4,000 documents. R. Doc. 65349-1 at 2.

Ms. Levitt's expert, Dr. Egilman, has a history with document de-designation in the Vioxx litigation. In 2014, Dr. Egilman challenged the confidential status of certain documents in a state court in Kentucky, despite the fact that most of the documents were produced through the Vioxx MDL.[1] Merck brought Dr. Egilman's efforts to this Court's attention and, on February 28, 2014, the Court held a telephone conference in which the Court made clear that confidential information subject to Pretrial Order 13 may only be de-designated within the MDL. Furthermore, counsel for Merck alleged that Dr. Egilman made several statements to a reporter

---

[1] Notably, the April 12, 2016, request for the de-designation of 2,978 documents duplicates a spreadsheet prepared by Merck counsel listing the confidentiality status of the over 12,000 documents challenged by Dr. Egilman in the Kentucky proceeding.

3

from the *Wall Street Journal* that purported to summarize the contents of documents covered by Pretrial Order 13.

Due to the allegations of questionable conduct by Dr. Egilman, Merck sought both an injunction to prevent Dr. Egilman from seeking the de-designation of documents as well as sanctions for disclosing confidential matters to the press in violation of Pretrial Order 13. *See* R. Docs. 64947-1, 64894-1. In June 2014, this Court entered a preliminary injunction, finding that "Dr. David Egilman may have acted in derogation of his responsibilities under Pretrial Order 13 by making the disclosure of confidential information and also seeking the designation of confidential information outside of the proper disclosure mechanism." R. Doc. 64973 at 2.

The motions were resolved by a stipulation negotiated between Dr. Egilman and Merck, and entered by this Court in September 2014. *See* R. Doc. 65349-3. Under the Egilman stipulation, Dr. Egilman agreed to restrict his access to confidential documents in the Vioxx litigation to a set of enumerated circumstances. R. Doc. 65349-3.

## II.     PRESENT MOTION

Merck's March 28, 2016, motion asks the Court for an order upholding Merck's current confidentiality designations in response to Ms. Levitt's December 31, 2016, and February 26, 2016 requests. Merck's May 10, 2016 motion asks the Court for an order upholding Merck's confidentiality designations in response to the March 29, March 31, April 12, April 14, and May 5, 2016, requests. R. Doc. 65349. The May 10 motion also seeks a protective order barring similar requests.

### A.     Merck's March 28 and May 10 Motions (R. Docs. 65337, 65349)

Merck's March 28 motion begins by arguing that Ms. Levitt's general request to de-designate "any and all Vioxx documents relating to marketing, research, science, studies, testing, production, etc." is not a proper request under PTO 13. R. Doc. 65337 at 3. Defendant contends

4

that objections may only be raised as to specific materials, because de-designation is an individualized and fact-based inquiry. Defendant notes that Merck produced approximately 3.6 million documents in the instant litigation and roughly 1.3 million documents are currently designated as confidential. Merck maintains that these documents are properly designated as confidential under the terms of Rule 26(c )(1)(G) of the Federal Rules of Civil Procedure, but argues that it would be unreasonable to force Merck to address the propriety of the continued confidentiality of 1.3 million documents through a generalized request such as Ms. Levitt's. R. Doc. 65337 at 3–4. Merck also argues that a generalized discovery attack on 1.3 million documents cannot be justified under Rule 26(c) of the Rules of Civil Procedure. Merck asserts that such a request would be grossly disproportional to the needs of the case. *See* R. Doc. 65337 at 6.

     Merck's March 28 motion next turns to the four confidential documents which Ms. Levitt specifically argues should be de-designated. The Bates numbers for these four confidential documents are (1) MRK-AJU0000016-17; (2) MRK-ABF0004419-44; (3) MRK-ABS0212961-85; and (4) MRK-AAU0000029-94 ("Document #17," "Document #44," "Document #85," and "Document #94" respectively). Merck asserts that each document contains "trade secrets" or "confidential research, development, or commercial information" as used in Federal Rule of Civil Procedure 26(c). In particular, Merck asserts that Document #17 "contains sensitive marketing information, disclosing the identity of and information about a Merck thought leader." R. Doc. 65337 at 7. Document #85 and Document # 44 discuss a "potential use for Vioxx that has not previously been publically disclosed and are therefore competitively-sensitive scientific information." R. Doc. 65337 at 7. Lastly, Document #94 "contains un-redacted information regarding other Merck drugs, and is therefore confidential." R. Doc. 65337 at 7.

In Merck's March 10 motion, Merck levies a more generalized attack against Ms. Levitt's discovery requests. R. Doc. 65349. Merck takes the position that Ms. Levitt's requests "serve no purpose in this litigation." R. 65349 at 10. Per PTO 13, Ms. Levitt, her counsel, her experts, her fact witnesses, and "any third party for whom there is a *litigation need* to disclose the information" already have full access to the documents at issue. R. Doc. 65349 at 10. Merck insinuates that the true purpose of the de-designation is either to harass Merck, to continue Dr. Egilman's campaign of de-designation so that he may "publish additional papers" concerning Merck, or to avoid the costs of compliance with the Egilman Stipulation. R. Doc. 65349 at 2-3, 12. Merck contrasts Ms. Levitt's alleged motives with its own costs—estimating that it would cost approximately $208,000 to address Ms. Levitt's April 12, 2016 alone. R. Doc. 65349 at 11. According to Merck, Rule 26's proportionality requirement for discovery requests cannot support de-designation when Ms. Levitt lacks a litigation purpose for de-designation and Merck faces substantial costs. R. Doc. 65349 at 10–12.

Merck closes its May 10 motion by asking the Court to bar Ms. Levitt "from submitting additional-de-designation requests in the future, absent a submission to the Court signed by counsel that is specifically tied to and supported by the facts and needs of the *Levitt* case." R. Doc. 65439 at 14. Merck contends that Ms. Levitt's discovery requests are abusive, and that further requests will only consume Merck resources without producing new information in support of Ms. Levitt's case. R. Doc. 65439 at 14.

### B.     Levitt's Opposition (R. 65358)

Levitt asserts in opposition that Merck fails to show good cause why the protective order should not be lifted. R. 65358 at 6. Levitt cites case law and argues that the good cause showing must be specific. R. 65358 at 7. According to Levitt, Merck must show that "each particular document" could lead to prejudice or harm. R. 65358 at 7 (citing *Foltz v. State Farm Mut. Auto.*

*Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)).  Levitt argues that Merck must therefore present evidence regarding each document.  R. 65358 at 8.  For example, Levitt contends that Merck's claims of trade secrets may be supported through affidavits establishing the economic value of the information contained therein and the party's attempts to keep such information confidential.  R. 65358 at 9.  Levitt notes that Merck's March 28, 2016, motion does not provide affidavits or other supporting evidence.  R. 65358 at 11.  With this in mind, Levitt characterizes the motions to preserve confidentiality as based on "unsworn and vague allegations."  R. 65358 at 11.  Levitt also casts doubt on the sincerity of Merck's claim to trade secret protection.  Levitt questions whether Merck could suffer cognizable harm by the release of information about a drug that was taken off the market more than ten years ago.  R. 65358 at 12.

Regarding the May 10, 2016, Motion to Preserve Confidentiality, Levitt attacks Merck's claim that the request targets too many documents.  R. 65358 at 14.  Levitt cites case law suggesting that a party may not avoid factually demonstrating good cause by pointing to the breadth of the discovery request.  R. 65358 at 14 (citing *De La Torre v. Swift Transp. Co.*, No. 14-CV-1786 GEB, 2014 WL 3695798, at *4 (E.D. Cal. July 21, 2014).  Levitt also points out that Merck reviewed many of these documents two years ago in connection with a de-designation request by Dr. Egilman.  R. 65358 at 14.  Levitt therefore asserts that Merck overstates the financial burden of the request.  R. 65358 at 14–15.  Additionally, Levitt takes the position that the scope of discovery as defined in Rule 26(b)(1) is irrelevant to the good cause requirement of Rule 26(c).  R. 65358 at 18.

Lastly, Levitt argues that the reasons for the assertion of a de-designation request are irrelevant to the factual determination of good cause.  R. 65358 at 16.  Levitt concedes that she has access to these documents for purposes of her litigation with Merck, but she feels that she

7

owes the public at large a duty to have all documents disclosed. Levitt contends that the purpose of the de-designation is to inform the public of Merck's alleged wrongdoing and to facilitate the personal work of her expert witness, Dr. Egilman. R. 65358 at 16.

### C. Merck's Reply (R. 65406)

Merck timely replies. R. 65406. Merck finds three faults with Levitt's Opposition. First, Merck contends that discovery materials are presumptively private, and that the pertinent standard therefore stems from Rule 26 of the Federal Rules of Civil Procedure and not from the First Amendment. R. 65406 at 3–5. Second, per Rule 26, Merck contends that Levitt's request must be "proportional to the needs of the case" and aid in "resolving the issues." R. 65406 at 6. Merck also notes that Pretrial Order 13 only provides for the production of confidential documents to third parties for a "litigation need." R. 377 at 4. With the preceding in mind, Merck argues that Levitt's failure to present a cognizable litigation purpose for lifting the protective order is a fatal flaw to the request. R. 65406 at 7–8. Third, Merck avers that ordering disclosure under these circumstances would set a troubling precedent. According to Merck, Pretrial Order 13 was implemented to allow for the rapid discovery of a nationwide MDL. Allowing Levitt to bring a wholesale challenge to the confidentiality of the documents in this litigation would frustrate the goals of efficiency and create a mechanism for mass tort plaintiffs to apply meritless settlement pressure. R. 65406 at 8 n.5. Merck points to the fact that this drug has been removed from the market over fifteen years ago and disclosure of this material at this late date can serve no useful purpose.

### III. DISCUSSION

#### A. Applicable Law and Pretrial Orders

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose Mercury News, Inc. v. U.S. Dist. Court--*

*N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (citing *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 944–45 (7th Cir. 1999)). Rule 26(c) of the Federal Rules of Civil Procedure overrides this presumption. The Rule provides that "[a] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." Fed. R. Civ. P. 26(c). To maintain a protective order, a party must show "for each particular document it seeks to protect . . . that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130. If the party seeking to maintain the protective order shows that the information falls within the scope of Rule 26(c) and that harm will result from its disclosure, the burden shifts to the requesting party to show that the interest in disclosure outweighs the harm that disclosure would cause to the person from whom the requesting party is seeking information. *See* 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2043 (3d ed.); *see also* Fed. R. Civ. P. 26(b)(1) (explaining that materials sought through disproportionate discovery demands are outside the scope of discovery).

On May 24, 2005, the Court entered Pretrial Order 13 ("PTO 13"). R. Doc. 377. Pretrial Order 13 is a stipulated protective order designed to facilitate a timely and efficient discovery process. Pursuant to PTO 13, a party may designate as "Confidential Information" any material that the party "believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c)(7)."[2] R. Doc. 377. PTO 13 allows a party to object to the propriety of the designation of specific material as confidential by serving a written

---

[2] The applicable federal rule is now codified in 26(c)(1)(G).

9

objection on counsel for the party classifying the materials as confidential ("the Supplying Party"). R. Doc. 377 at 9. Should the parties continue to disagree on confidentiality designations following good-faith attempts to amicably resolve the matter, the Supplying Party may move the Court for an order upholding the designations. The materials will maintain their confidential status if the Supplying Party "prov[es] that the material is Confidential Information" within the scope of PTO 13. R. Doc. 377 at 9. PTO 13 does not address blanket requests for de-designation. However, PTO 13 does provide for the production of confidential documents for a "litigation need." R. 377 at 4.

### B. Discussion

Merck's March 28 Motion to Maintain Confidential Document Designations, R. Doc. 65337, concerns four documents: Document #17, Document #44, Document #85, and Document #94. The Court may preserve the confidentiality of these documents under the protective order if Merck presents sufficient evidence of Rule 26(c) "good cause." Upon review of Merck's papers, the Court finds good cause to maintain the confidential designation of each of the four documents. The documents contain, among other things, sensitive marketing information, potential alternative uses for Vioxx, and unredacted information regarding unrelated Merck drugs. The presence of this type of material provides good cause to maintain confidential status per Rule 26(c). Thus the plaintiff in this case has access to the documents for her litigation needs.

Having found good cause to maintain confidential status, the Court must determine whether Levitt carries her burden of showing that the harms of disclosure to Merck do not outweigh the benefits of disclosure. *See* Wright & Miller, *supra*, § 2043. Levitt presents no evidence that the public would benefit from the disclosure of these particular documents other than a generalized assertion that the public has a right to know the particulars of the Vioxx

litigation. While this interest carries some weight, it does not compare with Merck's interest in protecting sensitive trade secrets and commercial information. Therefore these documents are to retain their confidential status.

Turning to the May 10 Motion to Maintain Confidential Document Designations, R. Doc. 65349, the Court must determine whether good cause exists to maintain the confidential status of approximately 4,000 documents. Merck failed to present a particularized argument in the record or at oral argument as to why good cause exists to maintain the confidential status of each of these documents. When the confidential designation of documents subject to a pretrial order is challenged, the party providing the documents must make a facial showing of good cause. *See Foltz*, 331 F.3d at 1130; *see also* Fed. R. Civ. P. 26(c). Merck declined to make this showing on the grounds that doing so would be unduly burdensome per Rule 26(b). The Court agrees that Levitt's request would place substantial costs on Merck, but Merck nevertheless has failed to meet its initial Rule 26(c) burden. The Court must therefore determine whether Merck's Rule 26(b) argument is sufficient to alter the present question of confidential status, which is governed not by Rule 26(b) but by Rule 26(c).

When questioned at oral argument, counsel for Levitt stated that the reason for the de-designation request has nothing to do with the goals of the litigation. Levitt's counsel conceded that Levitt has access to the documents for all practical litigation purposes. So Levitt will not be prejudiced at trial if the confidential designations are not lifted. Levitt's counsel instead asserted that Levitt has a strong interest in providing a service to the public—Levitt feels that Merck wronged consumers nationwide, and that the public has a right to know the full circumstances of these alleged wrongs. Levitt's asserted goal of public service is admirable, but the Court finds it fundamentally unfair to impose the costs of Levitt's public spirit on Merck. The documents were

11

produced for a litigation purpose. If the documents are to now serve a charitable purpose, Levitt must be willing to shoulder the burdens of her charitable impulse.

Merck shall prepare an estimate of the costs Merck would undergo in addressing whether the documents at issue in the May 10 Motion to Maintain Confidential Document Designations, R. Doc. 65349, merit protection under Rule 26(c) as trade secrets, business information, or otherwise. Levitt shall then consider whether she is willing to bear the costs of Merck's compliance with this Order & Reasons, including the costs associated with the appointment of a Special Master should such appointment be necessary to review Merck's filing with the Court. The present motion may be dismissed by the Court or withdrawn by Levitt if Levitt is unwilling to accept these costs.

## IV.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Merck's March 28 Motion to Maintain Confidential Document Designations, R. Doc. 65337, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Merck's May 10 Motion to Maintain Confidential Document Designations, R. Doc. 65349, is **DENIED IN PART AND OTHERWISE TAKEN UNDER CONSIDERATION**. The motion is **DENIED** insofar as Merck requests that the Court bar Levitt "from submitting additional-de-designation requests in the future, absent a submission to the Court signed by counsel that is specifically tied to and supported by the facts and needs of the *Levitt* case." R. Doc. 65439 at 14.

**IT IS FURTHER ORDERED** that Merck shall provide Plaintiff on or before August 30, 2016, with an estimate of the costs Merck would bear in addressing whether the documents at issue in the May 10 Motion to Maintain Confidential Document Designations, R. Doc. 65349, merit protection under Rule 26(c) as trade secrets, business information, or otherwise.

**IT IS FURTHER ORDERED** that Levitt shall indicate on or before September 30, 2016 whether she accepts the costs associated with Merck's Rule 26(c) analysis of the challenged documents, as well as the potential costs of the appointment of a Special Master to review the parties' Rule 26(c) arguments alongside the documents at issue, and is willing to post a bond securing the payment of these costs.

New Orleans, Louisiana, this 8th day of August, 2016.

_____
UNITED STATES DISTRICT JUDGE