**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE: VIOXX PRODUCTS LIABILITY LITIGATION**

MDL NO. 1657

SECTION L

JUDGE FALLON
MAG. JUDGE KNOWLES

**THIS DOCUMENT RELATES TO:** ***Jo Levitt v. Merck Sharp & Dohme Corp.*****, 06-9757**

**ORDER & REASONS**

Before the Court is Defendant Merck's Motion for Partial Summary Judgment. (R. Doc. 65379). The Court has reviewed the parties' briefs and applicable law, and having heard oral argument on the motion, now issues this Order & Reasons.

## I. BACKGROUND

To put this matter in perspective, a brief review of this multidistrict litigation ("MDL") is appropriate. This litigation involves products liability claims pertaining to the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration ("FDA") approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (that is, heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims.

On September 29, 2006, Jo Levitt brought this action against Merck in the United States District Court for the Western District of Missouri. In her complaint, she alleges that she suffered two heart attacks in 2001 as a result of taking Vioxx and seeks compensatory and punitive damages, as well as interest, costs, attorneys' fees and any other available relief. On November 8, 2006, the matter was transferred to this Court for inclusion in the *Vioxx* MDL.

Following six "bellwether" trials in this proceeding—as well as trials in other proceedings in Alabama, California, Illinois, Florida, New Jersey, and Texas—the negotiating plaintiffs' counsel ("NPC") and Merck's counsel engaged in protracted settlement discussions over the course of a year, conducting hundreds of in-person and telephone meetings. On November 9, 2007, the parties announced a $4.85 billion master settlement agreement ("MSA") that intended to—and actually did—resolve most Vioxx-related claims through a resolution program. In its recitals, the MSA expressly states that its purpose was to "establish a pre-funded, structured private settlement program . . . to resolve . . . claims against Merck involving heart attacks, ischemic strokes and sudden cardiac deaths." This was an "opt-in" program, meaning an interested claimant had to take affirmative steps to enroll in it. Ms. Levitt chose not to enroll, and instead proceeded to litigate her claim. This Court retained jurisdiction for the discovery phase of this case.

In addition to compensatory and punitive damages, Ms. Levitt seeks to recover damages her businesses allegedly suffered as a result of her injuries. Ms. Levitt is the former owner of two businesses—a high-end children's clothing company, Chocolate Soup, and a corporation that operated a hotel. R. Doc. 65379 at 3. According to Ms. Levitt, these businesses failed after her cardiac injuries decreased her energy level and prevented her from maintaining an active role in business operations, and therefore she is entitled to recover for the lost profits of those businesses.

## II. PRESENT MOTION

Defendant Merck moves for partial summary judgment on Plaintiff's business damages claim. R. Doc. 65379. Ms. Levitt through counsel opposes the motion. R. Doc. 65412. Merck timely replied. R. Doc. 65424.

### A. Merck's Motion for Partial Summary Judgment on Plaintiff's Business Damages Claim (R. Doc. 65379)

Merck makes three arguments against Ms. Levitt's claim for business losses. First, Merck contends that under Missouri law, a personal injury plaintiff generally cannot recover corporate losses, and Ms. Levitt does not fall within the narrow exception to this general rule. Second, Merck avers that even if Ms. Levitt could recover lost profits in this case, there is no factual basis to support these claims, and the amount of damages would be purely speculative. Finally, Merck argues that Ms. Levitt should not be permitted to offer speculative testimony regarding her business losses, as she allowed the destruction of her business records after this suit was filed, thereby prejudicing Merck.

According to Merck, personal injury plaintiffs generally cannot recover lost business profits. (citing *Terry v. Houk*, 639 S.W.2d 897, 900 (Mo. Ct. App. 1982)). While Merck acknowledges that plaintiffs may recover lost profits when "a plaintiff's personal services predominate in operation of the business," they aver that Ms. Levitt does not fall within this exception. Instead, Merck contends that Ms. Levitt relied on her husband and an accountant to run the financial aspects of the corporations, and had hundreds of employees who contributed to the daily operations of the businesses. Additionally, Merck contends that Ms. Levitt cannot recover lost profits because the corporations depended on substantial capital investments, which precludes recovery under Missouri law.

Second, Merck contends that lost profits "are too remote, speculative, and too dependent upon changing economic circumstances to warrant a judgment for their recovery." (quoting *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo. 1968). According to Merck, to recover lost profits, Ms. Levitt will need to prove the lost profits were caused by the defendant's conduct and provide specific facts and data to use as the basis for calculating lost profits. Merck argues that Ms. Levitt's businesses began to decline prior to her cardiac events, and she cannot prove that their failure a decade later was related to her health problems. Instead, Merck avers that the 2008 recession and increased competition in both industries likely led to the ultimate closure of the businesses.

Finally, Merck argues that Ms. Levitt should be prohibited from offering testimony regarding the valuation of her business, because Ms. Levitt permitted the destruction of the relevant business records, and Merck will be prejudiced without evidence to contradict such speculative testimony. Merck contends that Ms. Levitt knew she had a duty to preserve the business records, yet allowed their destruction after she filed this lawsuit. Accordingly, Merck states that admitting Ms. Levitt's testimony in place of these records will be prejudicial, as they have no evidence to use to dispute Ms. Levitt's testimony.

**B. Ms. Levitt's Response to Merck's Motion for Partial Summary Judgment (R. Doc. 65412)**

Ms. Levitt opposes Merck's motion, and argues that Merck's motion for summary judgment is instead a motion *in limine* seeking to exclude any evidence related to Ms. Levitt's business losses. Second, Ms. Levitt contends that she is eligible to recover business losses in this case. Finally, Ms. Levitt argues that her testimony regarding her business losses is not speculative and is based on quantitative facts and data, as she has corporate financial statements to corroborate her testimony.

First, Ms. Levitt argues that Merck's motion is not a proper motion for summary judgment, because it does not address any particular claim, but rather seeks to exclude any evidence related to the business losses in this case. Ms. Levitt contends that the case law Merck cites in support of its motion related to excluding evidence of lost profits by motions *in limine*, rather than summary judgment. According to Ms. Levitt, the question of damages should be decided by the jury; therefore it would be improper to exclude any evidence related to such.

Next, Ms. Levitt takes the position that evidence of her business losses is admissible in this case. Specifically, Ms. Levitt argues that because she was the driving force behind the business, and the businesses only failed after she became sick, lost profits should be recoverable in this case. Additionally, Ms. Levitt contends that even if the Court finds she cannot recover lost profits, evidence regarding her business losses is necessary to prove the value of her time and provide context for Plaintiff's economics expert. Levitt also argues that the business losses are relevant to calculating her lost earning capacity, as these profits constituted much of her compensation.

Ms. Levitt disputes Merck's position that any testimony regarding the lost profits would be speculative. Instead, she explains that her testimony is supported by corporate tax records and balance sheets, which have been provided to Merck. In addition, she avers that her husband's testimony will provide additional evidence and data regarding the losses her business suffered as a result of her injuries. Levitt argues that the absence of business records should be addressed on cross-examination, and any questions regarding the amount of damages in this case should be determined by the jury.

Finally, Ms. Levitt argues that spoliation is not warranted in this case. According to Levitt, spoliation only applies when a party has destroyed the evidence in bad faith. (citing *Baldridge v. Dir. Of Revenue, State of Mo.*, 82 S.W.3d 212, 223 (Mo. App. W.D. 2002)) Ms. Levitt avers that

here, the destruction of the business records was due to negligence, and was not intentional. Therefore, Levitt contends that she should not be barred from testifying regarding her business losses.

**C. Merck's Reply (R. Doc. 65424)**

Merck replies with three primary arguments. First, Merck contends that this motion for summary judgment is properly before the Court, as Merck is seeking to establish that certain damages are not recoverable as a matter of law. Next, Merck restates its position that Missouri law does not permit a personal injury plaintiff to recover business losses as an element of her own damages. Merck contends that because Ms. Levitt's businesses relied on capital investments and many employees, Ms. Levitt does not fall within the exception allowing recovery for lost profits in a personal injury case. Merck argues that the businesses are not relevant to Ms. Levitt's personal pecuniary losses, as they do not directly reflect on her earning capacity.

Finally, Merck argues that Ms. Levitt cannot prove either the amount of lost profits or even the continued success of her business with reasonable certainty. According to Merck, Missouri law prohibits recovery of lost profits where "there is uncertainty or speculation as to whether the loss of profits was a result of the wrong, and whether any such profits would have derived at all." (quoting *Midwest Coal, LLC v. Cabbanas,* 378 S.W.3d 367, 374 (Mo. App. 2012). Merck contends that Ms. Levitt's business losses began prior to her injury, and were later exacerbated by the 2008 recession and increased competition. Therefore, Merck requests partial summary judgment on this issue.

## III. LAW AND ANALYSIS

As a preliminary matter, it is necessary to determine what substantive and procedural law applies to Ms. Levitt's action. In an MDL, a transferee court applies the choice-of-law provisions of the state in which the transferor court is located. Missouri has adopted the Restatment (Second)

on Conflict of Laws, which generally provides that, "[i]n an action for a personal injury, the local [substantive] law of the state where the injury occurred determines the rights and liabilities of the parties." Restatement (Second) of Conflict of Laws § 146 (1971); *see Kennedy v. Dixon*, 439 S.W.2d 173, 184, 713 (Mo. 1969). Ms. Levitt's injury occurred in Missouri and she filed this action in federal court in that state, therefore Missouri substantive law applies. Further, federal procedural law applies because the forum is a federal court.

**A. Summary Judgment Standard**

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." 1 Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, the court must assess the evidence, review the facts, and draw any appropriate inferences based on the

evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

**B. Business Damage Claims Under Missouri Law**

Under Missouri law, personal injury plaintiffs are generally barred from recovering lost profits. *Seymour v. House*, 305 S.W.2d 1, 4 (Mo. 1957); *Terry v. Houk*, 639 S.W.2d 897, 900 (Mo. Ct. App. 1982). However, the Missouri Supreme Court has recognized a limited exception where a plaintiff may recover lost profits if the plaintiff's "personal service predominates" and there are minimal capital and labor investments in the business. *Terry*, 639 S.W.2d at 900. However, unless a plaintiff can demonstrate that the business profits were a direct result of her own "personal service," this exception does not apply. *Id*.

When a court finds that a plaintiff is entitled to lost profits, the plaintiff must provide facts and data to support the amount of losses. Any speculation regarding anticipated profits is inadmissible. "In evaluating the sufficiency of evidence to sustain awards of damages for loss of business profits [Missouri courts] have made stringent requirements, refusing to permit speculation as to probable or expected profits, and requiring a substantial basis for such awards." *Wandersee v. BP Prod. N. Am., Inc.*, 263 S.W.3d 623, 633 (Mo. 2008) (quoting *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005)). Generally, this proof must "include the income and expenses of the business for a reasonable anterior period," in order to establish the net profits prior to the injury. *Thoroughbred Ford, Inc. v. Ford Motor Co.*, 908 S.W.2d 719, 735 (Mo. App. E.D. 1995). Courts have declined to award lost profits when plaintiffs cannot provide sufficient evidence to prove an existing business was profitable prior to the injury. *See, e.g., Midwest Coal, LLC ex rel. Stanton v. Cabanas*, 378 S.W.3d 367, 370 (Mo. Ct. App.

2012); *Gesellschaft Fur Geratebau v. GFG Am. Gas Detection, Ltd.*, 967 S.W.2d 144, 148 (Mo. Ct. App. 1998); *Brown v. McIbs, Inc.*, 722 S.W.2d 337, 341 (Mo. Ct. App. 1986).

**C. Discussion**

It is well-established that under Missouri law, personal injury plaintiffs are generally prohibited from recovering business losses. *Seymour v. House*, 305 S.W.2d 1, 4 (Mo. 1957); *Terry v. Houk*, 639 S.W.2d 897, 900 (Mo. Ct. App. 1982). However, Ms. Levitt argues that she is entitled to lost profits in this case, because she falls within the exception to the general rule. To qualify for this exception, Ms. Levitt would need to demonstrate that the profits her businesses earned were predominately due to her own personal effort and services. *See Terry*, 639 S.W. 2d at 900. However, the facts of this case do not support such a conclusion. Ms. Levitt admits that she relied on hundreds of employees and capital investments to run her business. While she may have played a substantial role in these businesses, the Court finds this is not a case where her businesses' success was based solely, or even predominately, on her own personal efforts. As such, Ms. Levitt cannot recover lost profits as a personal injury plaintiff as a matter of law.

However, Ms. Levitt argues that even if the Court determines she cannot recover for business losses, evidence regarding these losses is still relevant in determining Ms. Levitt's personal pecuniary loss. Relying on *Seymour*, Ms. Levitt argues that evidence of lost profits is admissible if it is necessary to demonstrate her lost earning capacity. *See Seymour*, 305 S.W.2d at 4. However, as Plaintiff admits in her opposition, lost profits can only be used as a measure of lost earning capacity when a plaintiff can prove "the capital invested in the business was relatively insignificant, and the success of the business was predominately dependent upon his personal efforts, initiative, and services." *Id*. at 5. Under *Seymour*, business losses can be used to calculate lost earning capacity *only* if Ms. Levitt can demonstrate she is an exception to the general rule

prohibiting recovery for lost profits.[1] As discussed above, Ms. Levitt does not qualify for this exception, and therefore her business losses cannot be used to determine her personal lost earning capacity.

Even if Ms. Levitt could demonstrate that she fell within the exception allowing her to recover business losses, she cannot prove the amount of those losses with reasonable certainty. Missouri law is clear that lost profits cannot be based on speculation, but must be proved with specific evidence. *See Wandersee v. BP Prod. N. Am., Inc.*, 263 S.W.3d 623, 633 (Mo. 2008) (quoting *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005)). Ms. Levitt cannot prove the exact amounts of business income and expenses during the years before, during, and after her injury, as those records have been destroyed. While she contends that her husband's valuation of the businesses is sufficient data to support her claims, the Court finds that this testimony is also speculative, as Mr. Levitt is unable to explain the reasoning or underlying financial data on which he based his valuations. Additionally, because her business losses began prior to her cardiac events, she cannot demonstrate with reasonable certainty that her injuries actually caused her business losses. Any testimony that her injuries caused her businesses to fail would be purely speculative. Furthermore, any testimony purporting to establish the amount of her business losses would require "speculation as to probable or expected profits," which is inadmissible. *Wandersee v. BP Prod. N. Am., Inc.*, 263 S.W.3d 623, 633 (Mo. 2008). This evidence is too speculative to support an award of lost profits in this case.

---

[1] Additionally, *Seymour* provides that even if a plaintiff demonstrates they are an exception to the general rule, evidence regarding lost profits only *might* be admissible. The Missouri Supreme Court emphasized that "[t]his is not to say that plaintiff *can* recover a loss of profits . . . but [a proper showing of lost profits] would be admissible, *if at all*, solely as bearing upon the pecuniary value of plaintiff's services." *Seymour*, 305 S.W.2d at 5. As Ms. Levitt does not fall within the exception that might allow such evidence, it is not necessary to discuss whether a proper showing of lost profits would be admissible in this case.

During oral argument, Plaintiff cited *Parshall v. Buetzer*, in support of her argument that under Missouri law, a business owner is always allowed to testify regarding lost profits. 195 S.W.3d 515 (Mo. Ct. App. 2006). However, the Court finds the comparison between *Parshall* and this case inapposite. In *Parshall*, the plaintiff owned a concrete plant that was destroyed in a windstorm. *Id*. at 517. Due to an error by the insurance agent, the concrete plant was not covered by a valid policy at the time of the accident. *Id*. After determining that the agent was liable for the resulting losses because of his own negligence, the court found this liability extended to *any* damages as a result of the agent's negligence—including lost profits. *Id*. at 522. Once it was clear that the plaintiff was entitled to lost profits, the court allowed him to testify regarding the amount of those losses. *Id*.

Here, Ms. Levitt argues that because her testimony can be used to establish the amount of lost profits, she is necessarily entitled to recover those lost profits. *Parshall* does not support such a conclusion. In *Parshall*, the plaintiff testified to "a single lost contract for a single job in the year following the plant's destruction." *Id*. at 522. The contractor testified that he "likely would have hired Parshall to supply 20,000 cubic yards of concrete at $70 per yard, if Parshall had the concrete plant to do the job." *Id*. This testimony was further supported by additional evidence that the estimated cost of that lost contract was consistent with the market prices for concrete at that time. *Id*.

In this case, Ms. Levitt's proposed testimony is far more speculative. Ms. Levitt cannot point to a specific contract with an exact amount of lost income that she was unable to fulfill because of her illness. Instead, she purports to testify that her decreased energy level caused her businesses to fail in general—despite the fact that her businesses began to decline prior to her illness. This evidence does not "provide[] an adequate basis for estimating the lost profits with

reasonable certainty." *Id.* at 522 (quoting *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005)).

While the Court sympathizes with the business losses Ms. Levitt incurred, Missouri law does not permit recovery for her business losses. Further, even if lost profits were available in this case, Ms. Levitt has not demonstrated the quantity of the lost profits with reasonable certainty. Instead, her testimony estimates the amount of anticipated profits her businesses might have earned, and speculates that the business losses she did incur were caused by her cardiac events. Such speculative testimony is an insufficient basis for an award of business losses as a matter of law.

**IV. CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that Defendant Merck's Motion for Partial Summary Judgement, R. Doc. 65379, is **GRANTED**.

New Orleans, Louisiana, this 9th day of September, 2016.thx – I'm still

UNITED STATES DISTRICT JUDGE