UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO
*THE NEW ENGLAND JOURNAL OF MEDICINE*'S DECEMBER 2005
EDITORIAL "EXPRESSION OF CONCERN"**

**(MOTION *IN LIMINE* NO. 3)**

Merck moves to exclude an editorial appearing in *The New England Journal of Medicine* ("*NEJM*") on December 9, 2005, titled "Expression of Concern." *See* Ex. A. The *NEJM* editorial is inadmissible because: (1) it is not relevant; (2) it is hearsay; and (3) its admission would unfairly prejudice Merck, lead to juror confusion, and waste judicial resources.

**I.      THIS COURT HAS PREVIOUSLY EXCLUDED THE *NEJM* EDITORIAL.**

Plaintiffs have long sought to introduce the *NEJM* editorial at trial. In each instance, this Court has sustained Merck's objections to the evidence. In *Barnett* and *Smith,* the Court issued orders that reserved ruling on Merck's motion *in limine* but subsequently excluded the editorial from evidence at trial. *See Barnett*, Order re Motions *in Limine* (June 28, 2006), Rec Doc. 5611, at 10; *Barnett,* Trial Tr. (Aug. 14, 2006) (excerpts attached as Ex. B) at 2389:4–2391:21 (allowing testimony of editorial's existence, but excluding testimony of content and exhibit itself); *Smith*, Order re Motions *in Limine* (Aug. 31, 2006), Rec. Doc. 6721, at 14; *Smith*, Trial Tr. (Sep. 16, 2006) (excerpts attached as Ex. C) at 1475:5–18 (striking all testimony concerning *NEJM* editorial). In *Plunkett II*, the Court denied Merck's motion but sustained its objections to

1

plaintiff's designation of portions of Dr. Gregory D. Curfman's testimony, in which he attempted to read the "Expression of Concern" into the record. *Plunkett II*, Order (Feb. 13, 2006), Rec. Doc. 3314-3, at 18. Finally, in *Dedrick*, the Court deferred ruling on the motion until trial. *See Dedrick*, Order re Motions *in Limine* (Nov. 22, 2006), Rec. Doc. 8887-3, at 2. At trial, the Court allowed limited summary testimony concerning the *NEJM* editorial but did not allow its admission as an exhibit. *Dedrick*, Trial Tr. (Dec. 12, 2006) (excerpts attached as Ex. D) at 2868:12–2876:24. The Court should exclude the *NEJM* editorial, consistent with its prior rulings.

## II.  THE *NEJM* EDITORIAL IS NOT RELEVANT.

One of the many clinical trials sponsored by Merck for Vioxx was the "VIGOR" trial. Results from this clinical trial were published in the *NEJM* in November 2000. The jury in this case will hear considerable evidence about the VIGOR trial and the results from that trial.

The "Expression of Concern," written five years later in 2005, is a different matter. It is an editorial addressing the *NEJM*'s November 2000 publication of the VIGOR results. The editorial's core opinion is that Merck did not disclose in the 2000 VIGOR article three non-fatal myocardial infarctions in the Vioxx group that occurred after a pre-specified data cut-off date in the VIGOR trial. These three myocardial infarctions increased the total number of myocardial infarctions in the Vioxx group in the VIGOR trial from 17 to 20 (as compared to four in the naproxen (comparator drug) group).

Ms. Levitt did not experience a myocardial infarction. Thus, the alleged variance in reported myocardial infarctions is not probative of any risk associated with her particular adverse cardiovascular events. The VIGOR results were not available when Dr. Hartman and Dr. Katz first prescribed Vioxx. Moreover, the editorials allegations would not have affected Dr. Katz's choice to prescribe Vioxx. He testified that he would still prescribe Vioxx today (if it were on

the market), even considering the data from *all* of the clinical trials as reflected in an FDA black box warning label.  *See* Dep. of Arnold Katz, M.D. (May 8, 2013) at 84:14–85:23 (attached as Ex. E).  Dr. Katz also testified that he would prescribe Vioxx today to someone in Ms. Levitt's circumstance.  *See* Dep. of Arnold Katz, M.D. (Dec. 14, 2015) at 17:16–18:19 (excerpts attached as Ex. F).  In any event, it is uncontroverted that all three of the post-cut-off myocardial infarctions at issue in the *NEJM* editorial were reported by Merck to the FDA in October 2000, together with the other data from the VIGOR trial.  *See* FDA Memorandum (Feb. 1, 2001) (attached as Ex. G) at 13 (reflecting Merck's report on Oct. 13, 2000 of "20" instances of "MI" in the Vioxx group in VIGOR).

This case is only about the care and treatment of Ms. Levitt; it is not about publishing criteria for a medical journal or the editorial opinions of three persons concerning whether the *NEJM*'s publishing criteria were met (an opinion with which Merck disagrees).  There may be forums where such publishing criteria would be germane, such as if this were a discussion before the academic medical publishing community.  Merck, however, should not have to defend itself from self-serving opinions by journal editors, where the only issues in this case are whether Dr. Katz or Dr. Hartman was properly warned concerning the risks of Vioxx (they were) and whether Vioxx caused Ms. Levitt's adverse cardiovascular event (it did not).  The *NEJM* editorial is irrelevant to these issues and should be excluded.

## III.   THE *NEJM* EDITORIAL IS ALSO INADMISSIBLE HEARSAY.

The *NEJM* editorial also is classic hearsay, independently requiring exclusion.  *See, e.g.*, *Hickok v. G.D. Earle & Co.*, 496 F.2d 444, 446 (10th Cir. 1974) (affirming trial court's refusal in product liability case to allow discussion of a *NEJM* article because "it is well established that medical textbooks, treatises, and professional articles are not freely admissible in evidence to prove the substantive or testimonial facts stated therein, since they are subject to the hearsay

3

rule"); *see also Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980) ("newspaper articles . . . , a lengthy excerpt from a book . . . , and a copy of a complaint . . . [are] hearsay"), *abrogated on other grounds by Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537 n.33 (1983); *ACLU v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1070 (D. Nev. 1998) (concluding statements in published letter to the editor and newspapers constituted inadmissible hearsay); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 1990 WL 126500, at *3 (D. Ariz. July 25, 1990) ("It is axiomatic to state that newspaper articles are by their very nature hearsay evidence[.]").

The editorial does not meet any hearsay exception. For example, the editorial is not a "learned treatise" under Rule 803(18). Editorials lack the rigor necessary to be considered "reliable" because they are opinion pieces that are not peer-reviewed. *See, e.g.*, *United States v. Martinez*, 588 F.3d 301, 312 (6th Cir. 2009) (concluding evidence was inadmissible hearsay where it was "not subjected to peer review or public scrutiny, and it was not written primarily for professionals . . . with the reputation of the writer at stake" (internal citation omitted)); *O'Brien v. Angley*, 407 N.E.2d 490, 494 (Ohio 1980) (per curiam) (admission of editorial in the *Journal of the American Medical Association* was prejudicial error because it was "not an authoritative exposition of medical theory or principle which might be characterized as a 'learned treatise,' but was primarily an expression of opinion by a physician concerning a controversial subject").

Mere publication in a reputable journal does not suffice to qualify as a "learned treatise." Rather, the content itself must be established as "reliable authority." *See, e.g.*, *Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1184 (7th Cir. 1994) (affirming exclusion of article, finding it did not fall within the hearsay exception for learned treatises, explaining that "[i]t is not enough that the journal in which it appeared was reputable; the author of the particular

4

article had to be shown to be an authority before the article could be used"); *Meschino v. N. Am. Drager, Inc.*, 841 F.2d 429, 434 (1st Cir. 1988) (affirming exclusion of published articles; explaining that "an article does not reach the dignity of 'reliable authority' merely because some editor, even a most reputable one, sees fit to circulate it").

 Both the timing and content of the publication further undercut any basis for impartiality or reliability. "[L]earned treatises usually have 'sufficient assurances of trustworthiness'" because "'authors of treatises have no bias in any particular case . . . [and] are acutely aware that their material will be read and evaluated by others in their field, and accordingly feel a strong pressure to be accurate.'" *Martinez*, 588 F.3d at 312 (quoting 2 McCormick on Evidence § 321 (6th Ed. 2006)). With respect to this editorial, however, the authors' peers played the role of audience-to-be-persuaded and not reviewer-to-evaluate; the authors were defending the integrity of their journal, not seeking review of scientific findings. The editorial was released by the *NEJM* on December 9, 2005, just as the jury in the first federal Vioxx trial was beginning its deliberations. The editorial was prepared and released to coincide with the court proceedings, after one of its authors was not called as a witness at that trial.[1] An editorial published "with a view toward litigation" properly is excluded. *O'Brien*, 407 N.E.2d at 494; *see also Baker v. Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006) (finding abuse of discretion for admission of article as a learned treatise, "[g]iven the limited depth of the article and the author's and publisher's [independent financial] interests" in the opinion expressed"). This editorial is an opinion piece concerning publishing criteria for a journal. It is not a peer-reviewed scientific report publishing clinical trial data. Further, it is uncontroverted that the data about which the editorial opines

---

[1] *See* D. Armstrong, *Bitter Pill: How the New England Journal Missed the Warning Signs on Vioxx*, Wall St. J., May 15, 2006 (attached as Ex. H) at A1.

were reported years earlier by Merck to the FDA.  The editorial is hearsay outside the scope of any exception, and it is not properly admissible.

## IV.  ADMITTING THE EDITORIAL WOULD CAUSE UNFAIR PREJUDICE, JUROR CONFUSION, AND DELAY.

The editorial also is inadmissible under Rule 403.  Any relevance it might have would be substantially outweighed by the unfair prejudice to Merck.  Materials published in scientific journals frequently have an aura of authority and reliability, particularly to lay people, regardless of their level of scientific trustworthiness.  This heightened aura of reliability is misplaced in the case of non-scientific opinion pieces, such as the "Expression of Concern," which do not contain facts and are not peer-reviewed, but rather reflect the subjective impressions and biases of their authors.  If admitted, the jury may well attach undue weight to the editorial; they may misunderstand it as a peer-reviewed scientific article, which it is not.  That would unfairly prejudice Merck.

Moreover, admitting the editorial would result in delay and a waste of judicial resources.  Merck would need to respond to the allegations, leading to a "trial within a trial" over the truth of the editorial's assertions.  For example, trial time would be wasted on issues such as (1) why editors of the *NEJM* published "ambiguous" statements erroneously "hinting that serious scientific misconduct was involved" in the VIGOR publication, which was not the case, and later refused to correct or clarify misstatements in the press made in reliance on this ambiguous language; (2) whether the *NEJM* is to blame for lax editorial policies, as members of the medical community have suggested; and (3) how and why the *NEJM* editors "rac[ed] to prepare" their editorial—five years after the publication of VIGOR and more than a year after Merck's withdrawal of Vioxx—to coincide with the jury's deliberations in the first federal Vioxx trial.  *See* D. Armstrong, *Bitter Pill* (Ex. H) at A1.  A debate about medical journal publishing criteria

6

may be of interest in some quarters, but the trial of Ms. Levitt's case, where a jury will be charged with finding facts relating to whether Ms. Levitt's use of Vioxx caused her cardiovascular events, is neither the time nor the place.

Stated simply, the content of the editorial has nothing to do with plaintiff's claims in this case. To the contrary, its admission would divert the jury's focus from the ultimate issues to be decided: whether Dr. Katz or Dr. Hartman were warned of Vioxx's then-known risks and, if not, whether Vioxx caused Ms. Levitt's cardiovascular events. For this reason, the Court should exclude the *NEJM* editorial under Rule 403. *See, e.g.*, *Landrieu Constr., Inc. v. DRC Emergency Servs., LLC*, 2010 WL 1817768, *5 (E.D. La. Apr. 29, 2010) (excluding collateral evidence alleging bad conduct because "[t]he other instances are substantially different and would in effect necessitate a trial within a trial which would be prejudicial and confusing") (Fallon, J.).

## CONCLUSION

For the reasons stated above, Merck respectfully requests that the Court exclude all evidence and argument relating to the *NEJM*'s "Expression of Concern."

Dated: September 30, 2016

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
Phillip A. Wittmann, 13625
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone: 504-581-3200
Fax: 504-581-3361

*Defendants' Liaison Counsel*

—and—

        Douglas R. Marvin
        M. Elaine Horn
        Emily Renshaw Pistilli
        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street, NW
        Washington, DC 20005
        Phone: 202-434-5000
        Fax:  202-434-5029

        *Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 30th day of September, 2016.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

*Defendants' Liaison Counsel*