# Exhibit  C

Page 1362

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


IN RE: VIOXX PRODUCTS          *    MDL DOCKET NO. 1657
LIABILITY LITIGATION           *
                               *
                               *
THIS DOCUMENT RELATES TO       *    SEPTEMBER 16, 2006, 8:00 A.M.
                               *
                               *
ROBERT G. SMITH V. MERCK       *    CASE NO. 05-CV-4379-L
  & CO., INC.                  *
* * * * * * * * * * * * * * * *


VOLUME VI
JURY TRIAL BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:              WATTS LAW FIRM
                                BY:  MIKAL WATTS, ESQ.
                                TOWER II BUILDING, 14TH FLOOR
                                555 NORTH CARANCAHUA STREET
                                CORPUS CHRISTI, TEXAS 78478


FOR THE PLAINTIFF:              WILLIAMS BAILEY LAW FIRM
                                BY:  JOHN T. BOUNDAS, ESQ.
                                     STEVEN J. KHERKHER, ESQ.
                                8441 GULF FREEWAY, SUITE 600
                                HOUSTON, TEXAS  77017


FOR THE DEFENDANT:              BARTLIT BECK HERMAN
                                  PALENCHAR & SCOTT
                                BY:  PHILIP S. BECK, ESQ.
                                     ANDREW L. GOLDMAN, ESQ.
                                     CARRIE A. JABLONSKI, ESQ.
                                54 W. HUBBARD STREET, SUITE 300
                                CHICAGO, ILLINOIS 60601


DAILY COPY

Page 1363

 1

 2   OFFICIAL COURT REPORTERS:    CATHY PEPPER, CCR, RPR, CRR

                                  TONI DOYLE TUSA, CCR, FCRR

 3                                500 POYDRAS STREET, ROOM HB-406

                                  NEW ORLEANS, LOUISIANA 70130

 4                                (504) 589-7778

 5

 6

 7   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

     PRODUCED BY COMPUTER.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DAILY COPY

Page 1364

```
 1                        I N D E X

 2                                                    PAGE

 3   DAVID GRAHAM (BY DEPOSITION)

 4        CROSS-EXAMINATION                           1365

 5        REDIRECT EXAMINATION                        1379

 6

     NED BRAUNSTEIN (BY DEPOSITION)

 7

          DIRECT EXAMINATION                          1381

 8

 9   LEMUEL MOYE

10        VOIR DIRE                                   1391

11        TRAVERSE                                    1405

12        FURTHER VOIR DIRE                           1411

13        DIRECT EXAMINATION                          1411

14

15

16

17

18

19

20

21

22

23

24

25
```

DAILY COPY

Page 1468

1    A.   I AM, SURE.

2    Q.   AND YOU'VE PUBLISHED HUNDREDS OF PEER-REVIEWED ARTICLES?

3    A.   WELL, 126.

4    Q.   TO BE EXACT, 126.  AND SOME HAVE BEEN PUBLISHED IN THE NEW

5    ENGLAND JOURNAL?

6    A.   YES.

7    Q.   AND YOU'VE BEEN A PEER-REVIEWER FOR THE NEW ENGLAND

8    JOURNAL OF MEDICINE?

9    A.   THAT'S CORRECT.  YES.

10   Q.   AND ARE YOU FAMILIAR WITH THE GENERALLY ACCEPTED METHODS

11   FOR DESCRIBING SCIENTIFIC FINDINGS IN A MANUSCRIPT?

12   A.   CERTAINLY.

13   Q.   AND, DOCTOR, WHEN WAS THE ORIGINAL VIGOR STUDY PUBLISHED?

14   A.   NOVEMBER 2000.

15   Q.   AND THAT WAS IN THE NEW ENGLAND JOURNAL?

16   A.   IT WAS.

17   Q.   DOCTOR, WHAT IS AN EXPRESSION OF CONCERN?

18   A.   AN EXPRESSION OF CONCERN IS A STATEMENT BY THE NEW ENGLAND

19   JOURNAL OF EVIDENCE -- NEW ENGLAND JOURNAL OF MEDICINE ABOUT

20   THE CONDUCT OF INVESTIGATORS IN A CLINICAL STUDY.  ESSENTIALLY,

21   IT IS A PROFOUND REPRIMAND.

22        MR. BECK:  YOUR HONOR, I OBJECT TO THIS.  THIS GOES

23   BEYOND -- I OBJECT FOR THE REASONS WE STATED BEFORE, AND I

24   THINK IT GOES BEYOND YOUR RULING.

25        THE COURT:  ALL RIGHT.  I RULED ON IT BEFORE, AND

Page 1469

1    I'LL ALLOW HIM TO TESTIFY, BUT LET'S GET INTO IT AND GET OUT OF

2    IT AS QUICKLY AS POSSIBLE.

3              MR. BOUNDAS:  YES, YOUR HONOR.

4    BY MR. BOUNDAS:

5    Q.   OKAY.  DOCTOR, CAN YOU EXPLAIN AN EXPRESSION OF CONCERN?

6    A.   JUST QUICKLY, A PROFOUND REPRIMAND OF THE INVESTIGATORS OF

7    A MANUSCRIPT BY THE EDITORS OF THE NEW ENGLAND JOURNAL.

8              MR. BECK:  YOUR HONOR, I OBJECT AND I MOVE TO STRIKE.

9    THAT'S --

10             THE COURT:  WELL, THAT COMMENT, MEMBERS OF THE JURY,

11   THAT'S HIS OPINION.

12   BY MR. BOUNDAS:

13   Q.   WHY DON'T WE DO THIS:  HAVE YOU EVER ACTUALLY SEEN THE

14   EXPRESSION OF CONCERN THAT WERE ISSUED RELATED TO THE VIGOR

15   PAPER?

16   A.   I HAVE, SIR.

17   Q.   AND I'M PUTTING UP A DOCUMENT HERE FROM THE NEW ENGLAND

18   JOURNAL DATED DECEMBER 29, 2005.  YOU'VE SEEN THIS BEFORE?

19   A.   I HAVE.

20   Q.   AND SO THIS IS JUST LAST YEAR?

21   A.   YES.

22   Q.   AND WHAT WERE THE CONCERNS OF THE NEW ENGLAND JOURNAL OF

23   MEDICINE WITH REGARD TO THE VIGOR PAPER THAT WAS PUBLISHED FIVE

24   YEARS EARLIER?

25             MR. BECK:  YOUR HONOR, I OBJECT.  I THINK THIS IS

Page 1470

1    SQUARELY WITHIN YOUR HONOR'S RULING THIS MORNING.

2              THE COURT:  LET ME SEE COUNSEL, BOTH OF YOU-ALL, UP

3    HERE.

4              (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT

5    THE BENCH.)

6              MR. BECK:  YES, YOUR HONOR.  FIRST OF ALL, YOU KNOW,

7    HE MADE HIS LITTLE EDITORIAL, WHICH I THINK WAS OUTLANDISH, AND

8    NOW HE'S BEING CALLED UPON TO DO EXACTLY WHAT YOU SAID HE

9    SHOULD NOT DO, WHICH IS TO CHARACTERIZE THE VIEWS OF OTHERS.

10   AND I THINK THAT I'M BEING PUT IN AN UNTENABLE SITUATION WHERE

11   I RAISED IN ADVANCE THE CONCERNS SO THAT WE CAN RESOLVE THEM,

12   WE RESOLVE THEM, AND THEN THE QUESTIONING GOES THE OTHER WAY,

13   AND I'M PUT IN A POSITION OF HAVING TO OBJECT IN FRONT OF THE

14   JURY.  I THINK WE OUGHT TO MOVE OFF THIS TOPIC, GIVEN THE WAY

15   THEY'VE HANDLED IT.

16             MR. BOUNDAS:  JUDGE, I'M DOING EXACTLY WHAT I SAID I

17   WAS GOING TO DO.  I ASKED HIM WHAT THE EXPRESSION OF CONCERN

18   WAS.  HE GAVE AN OPINION, PROBABLY IN STRONGER LANGUAGE THAN I

19   WOULD HAVE LIKED.  THEN I SAID I'M GOING TO GO STRAIGHT TO THE

20   DOCUMENT.  I SAID I WAS GOING TO GO TO THE DOCUMENT.  YOU SAID

21   YOU WERE GOING TO ALLOW IT.

22             MR. BECK:  AND THEN YOU ASKED HIM WHAT WAS THEIR

23   CONCERN, AND NOW HE'S GOING TO TALK ABOUT THEIR CONCERN, AND

24   YOU SAID YOU WOULD NOT ALLOW IT.

25             THE COURT:  JUST TALK TO HIM ABOUT IT.  JUST SHOW

DAILY COPY

Page 1471

1    HIM.  THAT IS FAIR, BUT I DON'T WANT HIM TO EXPRESS HIS OPINION

2    AS TO WHAT THEY MEANT.

3            MR. BOUNDAS:  WHY DON'T I JUST SAY, "LET'S GO THROUGH

4    THE DOCUMENT AND STATE WHAT THEY WERE."  OKAY?

5            THE COURT:  YES.

6            MR. BECK:  AND, YOUR HONOR, CAN I JUST NOTE MY

7    OBJECTION HERE ON THE RECORD, GOING THROUGH THIS DOCUMENT WITH

8    THIS WITNESS.

9            THE COURT:  SURE.  THAT'S FAIR.

10           MR. BECK:  THANK YOU.

11   BY MR. BECK:

12   Q.   DOCTOR, LET'S JUST TALK ABOUT THE EXPRESSION OF CONCERN

13   AND LET'S JUST STICK TO THE LANGUAGE THAT WAS PUBLISHED.  THIS

14   WAS PUBLISHED FOR ALL SCIENTISTS AND DOCTORS TO SEE?

15   A.   YES, THAT'S CORRECT.

16   Q.   AND JUST BRIEFLY, THE NEW ENGLAND JOURNAL STATES:  "WE

17   RECENTLY OBTAINED INFORMATION REGARDING INACCURACIES IN DATA IN

18   THE REPORT OF VIGOR."  IS THAT WHAT THEY ARE SAYING?

19   A.   YES.

20   Q.   AND WHAT IS THE NEW ENGLAND JOURNAL STATING WAS NOT

21   INCLUDED IN THE DATA SUBMITTED TO THE JOURNAL BACK IN 2000?

22   A.   THREE PATIENTS IN THE VIGOR STUDY HAD HEART ATTACKS, AND

23   THOSE HEART ATTACKS WERE NOT REPORTED IN THE MANUSCRIPT.

24   Q.   AND IF WE GO TO THE SECOND PAGE -- I'LL GET THROUGH THIS

25   QUICKLY HERE -- WHAT DID THE NEW ENGLAND JOURNAL SAY ABOUT

Page 1472

1  WHETHER THAT OMISSION MADE THE CALCULATIONS OR THE CONCLUSIONS

2  OF THE ARTICLE CORRECT OR INCORRECT?

3  A.    THEY SAY SPECIFICALLY, HALFWAY DOWN THE PAGE, "LACK OF

4  INCLUSION OF THE THREE EVENTS RESULTED IN AN UNDERSTATEMENT OF

5  THE DIFFERENCE IN RISKS OF MYOCARDIAL INFARCTION BETWEEN THE

6  ROFECOXIB AND THE NAPROXEN GROUPS."

7  Q.    AND THEN THE NEXT SENTENCE HIGHLIGHTED SAYS, "IT RESULTED

8  IN THE MISLEADING CONCLUSION THAT THERE WAS A DIFFERENCE IN MI

9  BETWEEN ASPIRIN-INDICATED AND ASPIRIN NOT INDICATED."  WHAT IS

10  THE SIGNIFICANCE OF THAT IN TERMS OF THE DATA RECORDED IN THE

11  ARTICLE?

12          MR. BECK:  I OBJECT, YOUR HONOR.

13          THE COURT:  LET'S JUST GO WITH WHAT THEY SAID,

14  PLEASE.

15          MR. BOUNDAS:  OKAY.  FAIR ENOUGH.

16          THE COURT:  I SUSTAIN THE OBJECTION.

17          MR. BOUNDAS:  FAIR ENOUGH.  SO IF THEY SAID IT WAS A

18  MISLEADING CONCLUSION, DOCTOR?

19          MR. BECK:  OBJECTION:  ASKED AND ANSWERED, LEADING.

20          THE COURT:  ALL RIGHT.  IT'S ASKED AND ANSWERED.

21  LET'S MOVE ON.

22  BY MR. BOUNDAS:

23  Q.    FINALLY, THEY MENTIONED THAT THEY DETERMINED FROM A

24  COMPUTER DISKETTE THAT SOME DATA WAS DELETED FROM THE

25  MANUSCRIPT TWO DAYS BEFORE INITIALLY SUBMITTED ON MAY 18, 2000.

DAILY COPY

Page 1473

1   IS THAT WHAT THE JOURNAL IS REPORTING TO SCIENTISTS AT THIS

2   TIME?

3   A.   IT IS.

4   Q.   AND FINALLY, WHAT DO THEY SAY ABOUT THE INTEGRITY OF THE

5   DATA AS A RESULT OF THE FAILURE TO PROVIDE THIS INFORMATION?

6   A.   WELL, JUST LOOKING AT THE WORDS HERE, IT JUST CALLS INTO

7   QUESTION -- IT QUESTIONS THE INTEGRITY OF THE DATA.

8   Q.   AND THAT WAS THE MERCK-PUBLISHED VIGOR STUDY?

9   A.   IT WAS.

10  Q.   AND, DOCTOR, DID THE NEW ENGLAND JOURNAL, THEN, THIS YEAR

11  REAFFIRM THAT EXPRESSION?

12           MR. BECK:  YOUR HONOR --

13           THE COURT:  WE DISCUSSED THAT, COUNSEL.  LET'S MOVE

14  ON.

15           MR. BOUNDAS:  CAN WE -- I THOUGHT WE HAD HAD A

16  PREVIOUS --

17           THE COURT:  NO.

18           MR. BOUNDAS:  CAN WE APPROACH?

19           THE COURT:  YES.

20           (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT

21  THE BENCH.)

22           THE COURT:  WE TALKED ABOUT THIS, THAT IT WAS NOT

23  GOING TO BE A PART OF THE TESTIMONY.

24           MR. BECK:  WE DID TALK ABOUT THAT, YOUR HONOR, AND IT

25  WAS NOT AND NOW IT'S BEEN BROUGHT OUT IN FRONT OF THE JURY.

Page 1474

1          MR. BOUNDAS:  I THOUGHT WE TALKED ABOUT IT WAS --

2          THE COURT:  WE TALKED ABOUT IT AND SAID THAT WASN'T

3  GOING TO BE, WAS MY RECOLLECTION.  SO LET'S MOVE ON.

4          MR. BECK:  YOUR HONOR, GIVEN THE WAY THIS HAS BEEN

5  CONDUCTED, CONTRARY TO WHAT WAS -- THE WAY IT WAS SUPPOSED TO

6  BE CONDUCTED, I'M GOING TO ASK YOUR HONOR TO INSTRUCT THE JURY

7  TO DISREGARD THIS TESTIMONY ABOUT THE NEW ENGLAND JOURNAL OF

8  MEDICINE EXPRESSION OF CONCERN, BECAUSE NOW, THE WAY THEY'VE

9  DONE IT, I'M REQUIRED TO GET DEEP INTO IT, AND IT'S SIMPLY NOT

10  FAIR GIVEN THE RULINGS WE HAD BEFOREHAND.

11          MR. BOUNDAS:  JUDGE, WE'RE OFF THE TOPIC.  I

12  UNDERSTAND.

13          MR. BECK:  BUT OFF THE TOPIC, THE DAMAGE HAS BEEN

14  DONE, AND UNLESS IT'S STRICKEN, THEN I'M GOING TO HAVE TO COME

15  BACK IN, AND WE'RE NOT GETTING OUT OF HERE FOR A LONG TIME,

16  BECAUSE I RAISED THIS TO AVOID THE VERY PROBLEMS THAT WE'RE

17  HAVING.

18          MR. BOUNDAS:  JUDGE, THERE WAS NO TESTIMONY ELICITED

19  ABOUT THIS.  I APOLOGIZE.  I SHOULD NOT HAVE -- I HAD IT IN MY

20  MIND --

21          MR. BECK:  BUT APOLOGY ISN'T GOOD ENOUGH.

22          MR. BOUNDAS:  THERE IS NO TESTIMONY IN THE RECORD

23  WHATSOEVER ABOUT IT.  I'LL EVEN STRIKE THE QUESTION.  I'LL MOVE

24  ON.

25          MR. BECK:  NO.  STRIKING THE QUESTION -- HE CAN'T

Page 1475

1   STRIKE THE FIRST QUESTION HE ASKED; HE CAN'T STRIKE THAT

2   QUESTION HE ASKED.  I ASK THAT THE SUBJECT -- THAT THE JURY BE

3   INSTRUCTED TO DISREGARD THE SUBJECT MATTER BECAUSE, OTHERWISE,

4   I'M GOING TO HAVE TO GET INTO IT BIG TIME, YOUR HONOR.

5           THE COURT:  YOU'LL HAVE TO BRING THAT UP WITH

6   SOMEBODY ELSE.  I'LL DO THAT.  I'LL JUST TELL THEM TO -- THE

7   AREA THAT WAS COVERED ABOUT THAT IS NOT -- WE'RE NOT GOING TO

8   ALLOW IT WITH THIS WITNESS.  I'LL TELL THEM TO DISREGARD IT AND

9   THAT'S WITH THIS WITNESS.  YOU CAN DO IT WITH ANOTHER WITNESS,

10  PERHAPS, BUT NOT THIS WITNESS.

11          (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD IN

12  OPEN COURT.)

13          THE DEPUTY CLERK:  MEMBERS OF THE JURY, I'M GOING TO

14  ASK YOU THAT DISREGARD THE TESTIMONY OF THIS WITNESS REGARDING

15  THE NEW ENGLAND JOURNAL OF MEDICINE.  WE MAY BE VISITING THAT

16  ANOTHER TIME, BUT WITH THIS WITNESS, WE WILL DISREGARD IT.  AND

17  WE MAY NOT REVISIT IT, BUT I ASK YOU THAT YOU DISREGARD THAT

18  TESTIMONY.

19  BY MR. BOUNDAS:

20  Q.   DOCTOR, HAVE ALL THE OPINIONS YOU'VE GIVEN TODAY BEEN TRUE

21  TO A REASONABLE DEGREE OF SCIENTIFIC PROBABILITY, BASED ON YOUR

22  EDUCATION, TRAINING, AND EXPERIENCE?

23  A.   THEY HAVE, SIR.

24  Q.   AND IN REACHING YOUR CONCLUSIONS, HAVE YOU APPLIED

25  GENERALLY ACCEPTED SCIENTIFIC AND EPIDEMIOLOGIC METHODS?