# Exhibit D

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


IN RE: VIOXX PRODUCTS          *   MDL DOCKET NO. 1657
LIABILITY LITIGATION           *
                               *
* * * * * * * * * * * * * * *  *
                               *
THIS DOCUMENT RELATES TO:      *   DECEMBER 12, 2006, 8:30 A.M.
                               *
ANTHONY WAYNE DEDRICK V.       *   CASE NO. 05-CV-2524-L
   MERCK & CO., INC.           *
* * * * * * * * * * * * * * *  *



                         VOLUME XIV
                  JURY TRIAL BEFORE THE
                HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE



APPEARANCES:

FOR THE PLAINTIFF:         BEASLEY ALLEN CROW METHVIN
                              PORTIS & MILES
                           BY:  ANDY D. BIRCHFIELD JR., ESQ.
                                P. LEIGH O'DELL, ESQ.
                           234 COMMERCE STREET
                           MONTGOMERY, ALABAMA 36104


FOR THE DEFENDANT:         BARTLIT BECK HERMAN
                              PALENCHAR & SCOTT
                           BY:  PHILIP S. BECK, ESQ.
                                MARK OUWELEEN, ESQ.
                                CARRIE A. JABLONSKI, ESQ.
                           54 W. HUBBARD STREET, SUITE 300
                           CHICAGO, ILLINOIS 60601
```

DAILY COPY

Page 2857

1                           I N D E X
2                                                              PAGE
3    ALISE REICIN
4         CROSS-EXAMINATION                                    2858
5         REDIRECT EXAMINATION                                 2896
6
     PAUL ROACH
7
          DIRECT EXAMINATION                                   2903
8
          VOIR DIRE                                            2903
9
          TRAVERSE                                             2910
10
          DIRECT EXAMINATION                                   2914
11
          CROSS-EXAMINATION                                    2943
12
13   WILLIAM COLTHARP (BY DEPOSITION)
14        CROSS-EXAMINATION                                    2959
15        REDIRECT EXAMINATION                                 2993
16
     OBJECTIONS TO JURY CHARGE                                 3010
17
18
19
20
21
22
23
24
25

Page 2868

1  Q. DR. REICIN, I WANT TO TURN NOW TO THE ISSUE OF THE VIGOR

2  STUDY. YESTERDAY YOU TALKED TO MR. BECK AND TO THE JURY ABOUT

3  THE THREE HEART ATTACKS THAT WERE -- THAT OCCURRED AFTER THE

4  PRESPECIFIED CUTOFF DATE; CORRECT?

5  A. THAT'S CORRECT.

6  Q. I'M GOING TO SHOW YOU WHAT'S MARKED FOR IDENTIFICATION AS

7  PLAINTIFF'S EXHIBIT 2.0236. THE VIGOR STUDY WAS PUBLISHED IN

8  THE NEW ENGLAND JOURNAL OF MEDICINE; CORRECT?

9  A. THAT IS CORRECT.

10 Q. AND YOU WERE ONE OF THE AUTHORS; CORRECT?

11 A. THAT IS CORRECT.

12 Q. AND THE NEW ENGLAND JOURNAL OF MEDICINE ISSUED AN

13 EXPRESSION OF CONCERN REGARDING THE HANDLING OF THOSE THREE

14 HEART ATTACKS; CORRECT?

15 A. THAT IS CORRECT.

16      MR. BIRCHFIELD: MIKE, WOULD YOU PUBLISH 2.0236,

17 PLEASE.

18      MR. BECK: YOUR HONOR, WE NEED TO A APPROACH ON THIS.

19      THE COURT: OKAY.

20      (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT

21 THE BENCH.)

22      MR. BECK: YOUR HONOR, I THINK THIS IS THE FOURTH

23 TRIAL IN A ROW WHERE THE PLAINTIFFS HAVE TRIED TO PUBLISH THIS,

24 AND YOUR HONOR HAS SUSTAINED THE OBJECTION EVERY SINGLE TIME.

25 THIS IS AN EDITORIAL. IT'S THAT'S NOT A LEARNED TREATISE AND

Page 2869

1  IT'S NOT PEER-REVIEW.  YOUR HONOR HAS ALLOWED TESTIMONY ABOUT
2  IT BUT HAS CONSISTENTLY REFUSED TO ALLOW THEM TO PUBLISH THIS
3  TO THE JURY.  YOUR HONOR HAS SUSTAINED OBJECTIONS WHEN THEY
4  TRIED TO HAVE DR. CURFMAN EVEN READ IT TO THE JURY.  SO I
5  OBJECT FOR THE SAME REASONS THAT I HAVE IN EVERY OTHER --
6          THE COURT:  HOW HAVE WE DEALT WITH IT IN THE PAST,
7  ANDY, AS OPPOSED TO DISPLAYING IT?  DID WE ASK QUESTIONS ABOUT
8  IT?  LET'S DO IT THAT WAY, SEE WHERE WE GO.
9          MR. BIRCHFIELD:  YOU HONOR, I CAN JUST READ IT TO HER
10 AND ASK HER QUESTIONS ABOUT IT, BUT FROM A VISUAL STANDPOINT --
11         MR. BECK:  YOU CANNOT READ IT TO HER.  THAT'S WHAT
12 YOUR HONOR HAS RULED.
13         MR. BIRCHFIELD:  THEY SPENT AN ENORMOUS AMOUNT OF
14 TIME YESTERDAY GOING OVER THESE HEART ATTACKS AND HOW THEY
15 HANDLED THEM APPROPRIATELY.  THE NEW ENGLAND JOURNAL OF
16 MEDICINE EDITORS TOOK A COMPLETELY DIFFERENT VIEW, AND WE'RE
17 ENTITLED TO ADDRESS THAT THROUGH THE "EXPRESSION OF CONCERN."
18         MR. BECK:  WELL, YOUR HONOR, IT'S HEARSAY AND NOT A
19 LEARNED PUBLICATION, AND YOUR HONOR HAS RULED THE SAME WAY IN
20 EVERY ONE OF THESE TRIALS.
21         MR. BIRCHFIELD:  IT IS ADDRESSING HER CONDUCT.  WE
22 HAVE THE WITNESS ON THE STAND THAT WAS RESPONSIBLE FOR THIS
23 CONDUCT THAT LED TO THIS "EXPRESSION OF CONCERN."  SHE'S BEEN
24 ABLE TO OFFER ONE SIDE OF HER VIEW; I SHOULD BE ABLE TO OFFER
25 THE COUNTER.

DAILY COPY

1    MR. BECK: YOUR HONOR, WHEN HE SAYS IT'S ADDRESSING
2  HER CONDUCT, WHAT HE'S SAYING IS IT'S OFFERED FOR THE TRUTH
3  THEREIN, AND IT'S HEARSAY AND IT'S NOT A LEARNED TREATISE.
4    THE COURT: LET'S SEE WHERE WE GO WITH IT, ANDY. ASK
5  HER ABOUT THE FACT THAT THERE IS AN "EXPRESSION OF CONCERN" AND
6  SO FORTH, AND WE'LL SEE WHERE WE GO WITH IT.
7  BY MR. BLIZZARD:
8  Q.   DR. REICIN, FOLLOWING THE PUBLICATION OF THE VIGOR STUDY,
9  THE EDITORS OF THE NEW ENGLAND JOURNAL OF MEDICINE ISSUED AN
10 "EXPRESSION OF CONCERN" REGARDING THAT PUBLICATION; TRUE?
11 A.   THAT IS CORRECT.
12 Q.   AND THAT "EXPRESSION OF CONCERN" INVOLVED YOUR
13 PARTICIPATION IN THE PUBLICATION OF THE VIGOR STUDY; CORRECT?
14 A.   I BELIEVE IT WAS FOR -- IT WAS WRITTEN FOR ALL OF THE
15 AUTHORS.
16 Q.   I WANT TO READ A PORTION OF THIS "EXPRESSION OF CONCERN"
17 AND INVITE YOUR COMMENT.
18    MR. BECK: YOUR HONOR --
19    THE COURT: LET'S JUST SUMMARIZE IT, BASICALLY, SO WE
20 CAN GET TO IT.
21 BY MR. BIRCHFIELD:
22 Q.   DR. REICIN, IN FACT, I MEAN, YOU DID -- YOU READ THE
23 "EXPRESSION OF CONCERN"; RIGHT?
24 A.   WHEN IT CAME OUT, CERTAINLY. IT'S BEEN A COUPLE MONTHS.
25 Q.   AND THEN YOU RESPONDED TO THE "EXPRESSION OF CONCERN";

Page 2871

1  CORRECT?

2  A.  YES, I DID.

3  Q.  ALL RIGHT.  IN THE "EXPRESSION OF CONCERN," DID THE

4  EDITORS NOTE THAT THEY HAD RECENTLY OBTAINED INFORMATION

5  REGARDING INACCURACIES IN DATA IN REPORT OF THE VIGOR STUDY; IS

6  THAT CORRECT?

7  A.  THAT'S CORRECT.  REFERRING TO THE THREE MI'S.

8  Q.  AND THEY NOTED THAT THOSE INACCURACIES RAISED CONCERN

9  ABOUT CERTAIN CONCLUSIONS IN THE ARTICLE; TRUE?

10  A.  THAT IS CORRECT.

11  Q.  AND THEN THEY NOTE THAT THE VIGOR STUDY WAS DESIGNED

12  PRIMARILY TO COMPARE GI EVENTS.

13          MR. BECK:  YOUR HONOR, MAY WE APPROACH ON THIS?

14          THE COURT:  ALL RIGHT.

15          (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD AT

16  THE BENCH.)

17          MR. BIRCHFIELD:  YOUR HONOR --

18          THE COURT:  YOU'RE ALMOST THROUGH WITH IT, HUH?

19          MR. BIRCHFIELD:  WELL, I'M ASKING QUESTIONS --

20          MR. BECK:  ACTUALLY, HE'S ON THE THIRD SENTENCE OF

21  IT.  HE'S GOING SENTENCE BY SENTENCE.

22          MR. BIRCHFIELD:  BUT I'M NOT -- I'M NOT READING IT

23  DIRECTLY.  I AM -- I AM ASKING QUESTIONS BASED UPON THEIR

24  FINDINGS AND THE FINDINGS OF --

25          MR. BECK:  HE'S NOT ASKING QUESTIONS.  WHAT HE'S

Page 2872

1  DOING IS HE'S SAYING "DID SOMEBODY ELSE SAY THIS?"
2            THE COURT:  ALL RIGHT.  LET'S SEE IF WE CAN GET
3  THROUGH THIS.  I'LL LET YOU GO ON A BIT ON IT, BUT LET'S JUST
4  SUMMARIZE IT SO WE CAN DEAL WITH IT.
5            MR. BECK:  YOUR HONOR, ALL HE'S DOING IS HAVING HER
6  REPEAT SOMEONE'S HEARSAY THAT YOU'VE RULED OUT.  THAT'S WHAT
7  HE'S DOING NOW.  HE'S NOT ASKING HER WHAT THE SUBJECT WAS AND
8  WHAT HER RESPONSE WAS.  HE'S SAYING "DID THEY SAY THIS?"  "DID
9  THEY SAY THIS?"  "DID THEY SAY THIS?"  HE'S TESTIFYING THROUGH
10 HIS QUESTIONS.
11           MR. BIRCHFIELD:  YOU CAN GET YOUR RESPONSE IN
12 REDIRECT.  YOU SPENT AN ENORMOUS AMOUNT OF TIME -- MERCK SPENT
13 AN ENORMOUS AMOUNT OF TIME DEALING WITH THIS VERY ISSUE IN
14 DIRECT.  THEY SHOULD NOT BE ALLOWED TO ENGAGE IN THIS CONDUCT
15 WITH IMPUNITY.
16           THE COURT:  I UNDERSTAND.  LET'S SEE IF WE CAN GET
17 THROUGH THIS.  TO THAT EXTENT, I'LL OVERRULE THE OBJECTION.
18 BY MR. BIRCHFIELD:
19 Q.   DR. REICIN, DID THE EDITORS OF THE NEW ENGLAND JOURNAL OF
20 MEDICINE NOTE THAT DATA ON THE CARDIOVASCULAR EVENTS WAS
21 OMITTED?
22 A.   THEY WERE REFERRING TO THE THREE MYOCARDIAL INFARCTIONS,
23 THAT'S CORRECT.
24 Q.   NOTED THAT THERE WERE THREE MYOCARDIAL INFARCTIONS, AND
25 THOSE WERE ALL IN THE VIOXX GROUP; RIGHT?

```
                                                          Page 2873
 1   A.   THAT'S CORRECT.
 2   Q.   THEY WERE NOT INCLUDED IN THE DATA THAT WAS SUBMITTED TO
 3   THE NEW ENGLAND JOURNAL OF MEDICINE; TRUE?
 4            MR. BECK:  YOUR HONOR, WE'RE BACK AT EXACTLY THE SAME
 5   PLACE.
 6            THE COURT:  ALL RIGHT.  LET'S TRY TO SUM UP ON THIS,
 7   COUNSEL.  I'LL OVERRULE THE OBJECTION AT THIS TIME.
 8            THE WITNESS:
 9                THAT IS CORRECT.  THE THREE EVENTS THAT CAME IN
10   AFTER THE PRESPECIFIED CUTOFF WERE NOT INCLUDED.
11   BY MR. BIRCHFIELD:
12   Q.   THE NEW ENGLAND JOURNAL OF MEDICINE DID NOT LEARN ABOUT
13   THE NATURE OF THESE EVENTS BEING OMITTED --
14            MR. BECK:  YOUR HONOR --
15            MR. BIRCHFIELD:  YOUR HONOR --
16            THE COURT:  COME ON.  LET'S GET THROUGH WITH IT.  I
17   OVERRULED THE OBJECTION.
18            MR. BECK:  YOUR HONOR, THIS IS ON WHEN THEY KNEW WHAT
19   AND IT'S A DIFFERENT OBJECTION; AND THAT IS, THAT THIS IS
20   SPECULATION AND HEARSAY.
21            THE COURT:  DO YOU KNOW WHEN THEY KNEW WHAT?
22            THE WITNESS:  I BELIEVE THEY KNEW ABOUT THE
23   ADDITIONAL THREE EVENTS IN 2001.
24            MR. BIRCHFIELD:  ALL RIGHT.  YOUR HONOR, BASED ON
25   THAT, I'M ENTITLED TO --
```

DAILY COPY

Page 2874

1  THE COURT: LET'S CONTINUE, COUNSEL. WE'VE GOT TO
2  GET THROUGH WITH THIS. YOU'RE MAKING YOUR POINT, BUT LET'S
3  MAKE IT QUICKLY.
4  BY MR. BIRCHFIELD:
5  Q. THE EDITORS NOTED THAT, UNTIL 2005, DID THEY BELIEVE THAT
6  THOSE -- THAT THOSE MI'S WERE -- WERE JUST LATER EVENTS THAT
7  CAME IN AFTER THE PUBLICATION OF THE ARTICLE; TRUE?
8  A. I DOUBT THAT'S TRUE BECAUSE THEY ARE SAYING THEY KNEW
9  ABOUT IT AT THE TIME OF THE FDA HEARING, AND THAT WAS BEFORE
10 THE PUBLICATION.
11 Q. THE FDA HEARING?
12 A. OH, NO, NO. IT WASN'T. YOU'RE CORRECT. I CAN'T COMMENT
13 ON WHEN THEY THOUGHT WE KNEW ABOUT THEM OR DIDN'T KNOW ABOUT
14 THEM.
15 Q. THE EDITORS OF THE NEW ENGLAND JOURNAL OF MEDICINE BECAME
16 CONCERNED WHEN THEY REALIZED THAT THOSE THREE MI'S WERE KNOWN
17 BY TWO AUTHORS IN JULY OF 2000; CORRECT?
18  MR. BECK: YOUR HONOR, THIS REALLY CALLS FOR
19 SPECULATION, WHEN SOMEBODY ELSE BECAME CONCERNED.
20  THE COURT: OKAY. I UNDERSTAND THE OBJECTION. I'LL
21 OVERRULE IT.
22  DO YOU KNOW THAT?
23  THE WITNESS: I CAN'T COMMENT OTHER THAN WHAT'S
24 WRITTEN HERE.
25

Page 2875

1  BY MR. BIRCHFIELD:
2  Q.   THE EDITORS OF THE NEW ENGLAND JOURNAL OF MEDICINE
3  PUBLISHED TO THE MEDICAL COMMUNITY THAT THEY BECAME CONCERNED
4  WHEN THEY OBTAINED BY SUBPOENA IN JULY 2000 A MEMORANDUM THAT
5  SHOWED TWO AUTHORS OF THE STUDY WERE AWARE OF THESE THREE MI'S
6  MONTHS BEFORE THE PUBLICATION OF THE VIGOR ARTICLE; TRUE?
7            MR. BECK:  NEW OBJECTION.  IT'S FALSE.  THEY DIDN'T
8  SUBPOENA ANYTHING.  YOUR HONOR --
9            THE COURT:  I SUSTAIN THE OBJECTION.  LET'S MOVE ON,
10 COUNSEL.  WE'VE GOT TO GET OFF OF THIS.
11 BY MR. BIRCHFIELD:
12 Q.   WERE YOU AWARE OF THE THREE ADDITIONAL MI'S IN JULY 2000?
13 A.   YES, I WAS.
14 Q.   AND WAS THERE ANOTHER AUTHOR THAT WAS AWARE OF THOSE THREE
15 MI'S IN JULY OF 2000?
16 A.   YES.  THAT'S ALSO TRUE.
17 Q.   AND THAT WAS MONTHS BEFORE THE PUBLICATION OF THE VIGOR
18 ARTICLE; CORRECT?
19 A.   THAT IS TRUE.
20 Q.   THE VIGOR ARTICLE WAS PUBLISHED IN NOVEMBER OF 2000;
21 CORRECT?
22 A.   CORRECT.
23 Q.   AND THE FAILURE TO INCLUDE THOSE THREE MI'S MADE CERTAIN
24 CALCULATIONS AND CONCLUSIONS IN THAT ARTICLE INCORRECT; TRUE?
25           MR. BECK:  YOUR HONOR, I'M GOING TO OBJECT.  I

1  THOUGHT YOU INSTRUCTED HIM TO MOVE TO A DIFFERENT SUBJECT

2  MATTER, AND HE'S COVERED THIS ALREADY.

3            MR. BIRCHFIELD:  YOUR HONOR, THEY SPENT --

4            THE COURT:  I UNDERSTAND.  I'LL OVERRULE THE

5  OBJECTION.

6            THE WITNESS:  NO, THAT IS NOT TRUE.  THE CONCLUSIONS

7  WERE STILL CORRECT.

8  BY MR. BIRCHFIELD:

9  Q.   THAT IS A CONTRARY POSITION TO THE POSITION OF THE EDITORS

10 OF THE NEW ENGLAND JOURNAL OF MEDICINE; CORRECT?

11 A.   I THINK THAT'S WHAT THEY WROTE HERE.  I CAN'T REALLY SPEAK

12 FOR THE EDITORS.  THE CONCLUSIONS -- AND ALL OF THE AUTHORS ON

13 THE PAPER DO NOT BELIEVE THAT THE CONCLUSIONS SUBSTANTIALLY

14 CHANGED, BOTH INTERNAL AND EXTERNAL AUTHORS.

15 Q.   IN RESPONSE TO THE "EXPRESSION OF CONCERN" THAT WAS

16 PUBLISHED IN THE NEW ENGLAND JOURNAL OF MEDICINE, YOU AND OTHER

17 AUTHORS OF THE STUDY RESPONDED; CORRECT?

18 A.   THERE WERE TWO SEPARATE RESPONSES SENT, THAT'S CORRECT.

19 Q.   AND IN REPLY, THE NEW ENGLAND JOURNAL OF MEDICINE EDITORS

20 REAFFIRMED THEIR "EXPRESSION OF CONCERN"; CORRECT?

21 A.   THAT IS CORRECT.

22 Q.   AND THEY CONCLUDED THAT THE INFORMATION --

23            MR. BECK:  YOUR HONOR, I OBJECT.

24            THE COURT:  SUSTAINED.

25