UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN
TESTIMONY RELATED TO THE FRIES LETTER**

**(MOTION *IN LIMINE* NO. 4)**

Merck moves to exclude a January 9, 2001 letter from Dr. James Fries, a professor at Stanford University, written to Raymond Gilmartin, Merck's then-CEO (the "letter" or "Fries letter"). *See* Ex. A. The letter has nothing to do with the diagnosis, care, or treatment of Ms. Levitt. Rather, the letter is rank hearsay with irrelevant, prejudicial, and untrue charges, arising from Dr. Fries' opinions that Merck employees "attacked" certain members of the scientific community. For example, Dr. Fries accuses certain Merck employees of "downplay[ing] some unusual" side effects of Vioxx and "attack[ing] . . . speakers who expressed . . . critical opinions." *Id*. at 4. To that end, he recounts purported conversations with physicians allegedly "attacked" and claims to have spoken with unnamed former Merck employees who, according to him, confirmed the incidents. *Id*. at 3–4.

As the Court has recognized on previous occasions, the letter is inadmissible for at least three independent reasons. First, it is plainly hearsay. Second, it is wholly irrelevant to the facts of this case, as no physician referenced in the letter had any involvement with Ms. Levitt's care, the conduct alleged in the letter had no relation to Dr. Katz's prescription of Vioxx to Ms. Levitt.

1

Third, admitting the letter would unfairly prejudice Merck and cause juror confusion and delay.

I.     **THIS COURT HAS PREVIOUSLY EXCLUDED THE FRIES LETTER.**

The Court granted Merck's motion in limine in *Barnett* and excluded the Fries Letter from evidence. *See Barnett*, Order re Motions *in Limine* (June 28, 2006), Rec. Doc. 5611, at 9 ("This is a 4-page letter. It is a bit rambling. It contains hearsay and hearsay within hearsay."). In *Plunkett*, where the letter was addressed as part of a broader motion on evidence with no nexus to the case, the Court reserved ruling at the pre-trial stage but the document was not introduced at trial. *See Plunkett*, Order re Motions *in Limine* (Nov. 20, 2005), Rec. Doc. 1563, at 2; *Plunkett II*, Order re Merck's Motions *in Limine* (Feb. 3, 2006), Rec. Doc. 3145, at 2. In *Smith*, the Court again reserved ruling on the motion and excluded the document from evidence at trial. *See Smith*, Order re Motions *in Limine* (Aug. 31, 2006), Rec. Doc. 6721, at 13; *Smith*, Trial Tr. (Sep. 19, 2006) (excerpts attached as Ex. B) at 2047:8–13. In both *Mason* and *Dedrick*, the Court again excluded the letter but stated that "some related evidence may be admissible to show action or habit." *Mason*, Order re Motions *in Limine* (Oct. 13, 2006), Rec. Doc. 7993-3, at 3; *Dedrick*, Order re Motions *in Limine* (Nov. 22, 2006), Rec. Doc. 8887-3, at 3.

Consistent with its prior rulings, the Court should again exclude the Fries letter and any related evidence, argument, or reference.

II.    **THE FRIES LETTER IS INADMISSIBLE HEARSAY.**

The Fries letter is classic inadmissible hearsay under Rule 801, as it contains Dr. Fries' out-of-court statements that plaintiffs would offer for their purported truth. Even worse, it is hearsay within hearsay, as the letter recounts statements allegedly made to Dr. Fries by other out-of-court declarants. Under Rule 802, the letter cannot be admitted unless each layer of hearsay

2

qualifies for a hearsay exception. Neither layer in the letter qualifies, and the letter is therefore inadmissible.

The letter itself (the first layer of hearsay) qualifies for no exception to the hearsay rule. For example, it does not fall within the exception for "records of regularly conducted activity" under Rule 803(6), which requires the author to have prepared the document as part of his regular duties. *See, e.g.*, *United States v. Robinson*, 700 F.2d 205, 210 (5th Cir. 1983) (handwritten notes not admissible as business record without showing that author regularly compiled them as part of his duties); *United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) (report excluded "because there was no showing" that the author "had a duty to report"); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984) (audit report excluded because it was "not made or kept in the ordinary course of business"). Here, it is uncontroverted that it was not Dr. Fries' regular practice or duty to prepare this letter; to the contrary, as Dr. Fries stated in the letter, his involvement in the matter was "accidental." Ex. A at 1.

Nor does the letter meet the "trustworthiness" requirement given that it recounts what other persons, many of whom are unidentified, purportedly related to Dr. Fries. *See, e.g.*, *Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1187 n.6 (8th Cir. 1981) (Under business record hearsay exception, where "there is a lack of evidence of the source of the testimony, [a document] is inherently untrustworthy and must be kept out."); *Ricciardi v. Children's Hosp. Med. Ctr.*, 811 F.2d 18, 23 (1st Cir. 1987) (excluding evidence because, inter alia, "[a]n unknown source is hardly trustworthy").

The second layer of hearsay in the letter is even more problematic. No rule allows admitting Dr. Fries' recitation of statements allegedly made to him by others. Examples of the second hearsay layer include statements that: "Dr. Simon believes that one of his two academic

3

appointments has been jeopardized.  Dr. McMillen believes that his VCF appointment at Hershey was revoked because of [Merck's] accusations.  Dr. Petri had a speaking engagement unprofessionally cancelled by Merck and an unrenowned speaker substituted; he was also bothered by phone calls from Merck persons alleging unbalanced presentations."  Ex. A at 3. None of these declarants, who serve as the source for Dr. Fries' opinions, is before this Court. None has been deposed in this case.  There can be no question that these and other statements are hearsay (within hearsay).  Given that many of the statements are also unattributed, it would be impossible to verify the declarants' personal knowledge, even if more witnesses were to be called (and that will not occur).  The hearsay statements within the letter do not qualify for any hearsay exception and must be excluded.  *See, e.g.*, *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987) ("[T]he mere fact that one level of a multiple-level statement qualifies [as admissible under the Rules] does not excuse the other levels from rule 805's mandate that each level satisfy an exception to the hearsay rule for the statement to be admissible.")

### III.   THE FRIES LETTER IS NOT RELEVANT.

The Fries letter should also be excluded under Rule 402 because its opinions and allegations are not relevant to any issue in this case.  Assuming *arguendo* that Merck employees engaged in the conduct alleged in the letter (which they did not), no physician to whom this conduct was allegedly directed had any involvement with the care of Ms. Levitt.[1]  Dr. Katz and Dr. Hartman are not mentioned in the letter and are not the subject of any of the conduct alleged. There is no evidence that Dr. Katz or Dr. Hartman ever had any contact with Dr. Fries, or even know who Dr. Fries is.  While Dr. Fries may have a different opinion, his letter is not probative

---

[1]   Nor is there any evidence that the alleged conduct affected the availability of information to the medical community at large.  For example, there is no evidence that the physicians identified in the Fries letter changed their positions or findings about Vioxx as a result of their purported interactions with Merck.

4

of any issue in this case and it has no relation to Dr. Katz's or Dr. Hartman's care of Ms. Levitt. It is not relevant.

## IV. THE LETTER SHOULD ALSO BE EXCLUDED BECAUSE IT WOULD CAUSE UNFAIR PREJUDICE, JUROR CONFUSION, AND DELAY.

The letter should also be excluded under Rule 403. First, it could lead the jury to attribute culpability based on unsubstantiated allegations of misconduct lacking any nexus to Plaintiff's claims (which would be precisely Plaintiff's improper purpose). The proper issues for the jury's determination are whether Merck adequately warned Dr. Katz and Dr. Hartman of the risks allegedly associated with Vioxx and, if not, whether the absence of an adequate warning and Ms. Levitt's use of Vioxx proximately caused her injuries. Unsubstantiated allegations of distant academic physicians' perceived anti-Merck or anti-Vioxx biases and their interactions with Merck employees unrelated to and, indeed, at odds with the facts of this case would only obfuscate the real issues. Rule 403 mandates that such evidence be excluded.

Second, admitting the letter would necessarily result in delay and a waste of judicial resources. The Fries letter identifies eight investigators who allegedly experienced some form of pressure Merck employees as a result of perceived "anti-Merck bias." Ex. A at 2. If the letter were admitted, Merck would be entitled to call rebuttal witnesses to refute the charges, causing a distracting "trial within a trial." The result would be a series of evidentiary presentations and mini-trials—charge-by-charge and investigator-by-investigator—having no relevance to Plaintiff's claims and wasting the time and resources of the Court, the jury, and the parties. Exclusion is proper in such circumstances. *See, e.g., Landrieu Constr., Inc. v. DRC Emergency Servs., LLC*, 2010 WL 1817768, *5 (E.D. La. Apr. 29, 2010) (excluding collateral evidence alleging bad conduct because "[t]he other instances are substantially different and would in effect necessitate a trial within a trial which would be prejudicial and confusing") (Fallon, J.).

5

## CONCLUSION

For the reasons stated above, Merck respectfully requests the Court exclude the Fries letter and any related evidence or argument about alleged "attacks" by Merck employees on the scientific community.

Dated:  September 30, 2016                                      Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
  Phillip A. Wittmann, 13625
  Dorothy H. Wimberly, 18509
  STONE PIGMAN WALTHER
  WITTMANN L.L.C.
  546 Carondelet Street
  New Orleans, LA 70130
  Phone: 504-581-3200
  Fax:    504-581-3361

*Defendants' Liaison Counsel*

  —and—

  Douglas R. Marvin
  M. Elaine Horn
  Emily Renshaw Pistilli
  WILLIAMS & CONNOLLY LLP
  725 Twelfth Street, NW
  Washington, DC 20005
  Phone: 202-434-5000
  Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 30th day of September, 2016.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

*Defendants' Liaison Counsel*