UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO MERCK'S PROFITS, VALUE, OR FINANCES

### (MOTION *IN LIMINE* NO. 5)

Merck moves to exclude evidence of Merck's financial wherewithal, including Merck's alleged motives in marketing Vioxx, Merck's incentive plans for its sales representatives, and Merck's net worth.

Perhaps no type of evidence is as likely to inflame a jury as is a corporate defendant's financial information. "Obviously, a plaintiff may not present evidence of a defendant's wealth to appeal only to the jury's sympathy." *Hankins v. Ford Motor Co.*, 2012 WL 174793, at *7 (S.D. Miss. Jan. 20, 2012). Fifth Circuit law recognizes that such financial evidence is not relevant to compensatory claims and should not be admitted in the ordinary case. *See O'Malley v. United States Fid. & Guar. Co.*, 776 F.2d 494, 500–01 (5th Cir. 1985) (approving bifurcation of liability and bad faith punitive damage claims); *Parkins v. Brown*, 241 F.2d 367, 368 n.2 (5th Cir. 1957) (holding that "evidence as to the financial condition of defendant" is not admissible to prove compensatory damages); *State Farm Fire & Cas.y v. Woods*, 896 F. Supp. 658, 659–60 (E.D. Tex. 1995) (bifurcating liability and punitive damages issues and noting that evidence of a party's net worth would "severely prejudice" the calculation of actual damages). Even when the

1

narrow exception of a punitive damages claim is properly before the jury, courts limit the type, extent, and method of presenting evidence of financial wherewithal.  *See, e.g.*, *Walford v. Binder, Robinson & Co., Inc.*, 793 P.2d 620, 627 (Colo. App. 1990) (admitting evidence of defendant's financial condition just before closing argument, after court "determined, in the course of denying defendants' motions for directed verdicts, that a prima facie case had been established against each defendant" for punitive damages).  Clearly, once the bell of a corporate defendant's financial wherewithal has been rung before a jury, it can never be unrung.

This case is only about whether Merck's warnings about Vioxx were adequate and, if not, whether Vioxx caused Ms. Levitt's adverse cardiovascular events.  It is not about punishing Merck because it is a large, financially successful corporation.  Specifically, it is not about the profit "motives" of Merck or its employees, how much money Merck's sales representatives might earn if they work hard and succeed in their jobs, or the assets or profitability of Merck.

**I.     PRIOR RULINGS.**

In *Plunkett*, this Court determined that evidence of motive and evidence relating to the assets and profitability of Merck or to the compensation and financial decisions of its employees "may be relevant" "if punitive damage is an issue" or "may also have . . . some relevance in cross-exam if defendant's witnesses introduce good motive in some fashion." *See Plunkett*, Order re Motions *in Limine* (Nov. 20, 2005), Rec. Doc. 1563, at 2.  Otherwise, the Court held that such evidence is irrelevant.  In *Barnett*, *Smith*, *Mason*, and *Dedrick*, the Court adopted the same reasoning and deferred ruling until trial.  *See Barnett*, Order re Motions *in Limine* (June 28, 2006), Rec. Doc. 5611, at 9; *Smith*, Order re Motions *in Limine* (Aug. 31, 2006), Rec. Doc. 6721, at 14; *Mason*, Order re Motions *in Limine* (Oct. 16, 2006), Rec. Doc. 7993, at 3; *Dedrick*, Order re Motions *in Limine* (Nov. 22, 2006), Rec. Doc. 8887-3, at 2.

**II.     MERCK AND ITS EMPLOYEES' PURPORTED "MOTIVES" FOR SALES ARE IRRELEVANT AND INADMISSIBLE.**

If prior Vioxx trials are any guide, Plaintiff will attempt to introduce evidence that she contends shows Merck employees were guided by financial motives—or, pejoratively, that they "placed financial interests ahead of patient care"—in developing and marketing Vioxx.  Plaintiff may argue that Merck rushed Vioxx to market because it needed a new drug to maintain profits from other drugs going off-patent or it feared competition from Celebrex, a similar drug developed by a competitor.  She may argue that Merck's employees sought to benefit financially from the sale of Vioxx through Merck's financial incentive programs.  Indeed, Plaintiff has already previewed these inflammatory attacks in her Complaint, alleging that "Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping profits obtained through its non-disclosure and concealment," which Plaintiff makes sure to note totaled "more than $2 billion in the year 2000 alone[.]"  Compl. ¶ 17.  Plaintiff has since continued to argue that "Merck has seriously injured Ms. Levitt by callously seeking profit at any cost – including the health of its customers."  Pl.'s Opp. to Def. Mot. for Summary Judgment (Feb. 24, 2015), Rec. Doc. 65166, at 4.  Plaintiff's intent is that all of this "evidence [will be] presented to the finder of fact" in making her case.  *Id*. at 4–5.  Such evidence is, however, irrelevant to proving the actual elements of her claim.

First, there is nothing wrong with a for-profit enterprise, such as Merck, seeking to make a fair profit.  *See, e.g.*, *Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 226 (S.D.N.Y. 2009) ("[T]he desire to improve corporate performance is a perfectly proper motive for executives of for-profit enterprises.").

Second, the alleged motives of Merck and its employees do not relate to issues the jury will be asked to decide:  namely, the adequacy of the information Merck gave to Dr. Katz and

3

Dr. Hartman or the cause of Ms. Levitt's adverse cardiovascular events. *See, e.g.*, *In re Norplant Contraceptive Prods. Liab. Litig.*, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997) (excluding evidence of pharmaceutical company's gross profit margins "because the evidence is not relevant to any failure to warn issue"). Courts have squarely held that evidence relating to motive, including financial remuneration, is immaterial to negligence and strict liability claims. *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990) (since "neither motive nor intent are material in a negligence action," evidence "tending to prove a business motive for [defendant's] conduct was excludable as irrelevant." (internal citation omitted)); *Gray v. Hoffman-La Roche*, 82 F. App'x. 639, 651 (10th Cir. 2003) (defendant company's "alleged motive for failing to issue a stronger warning is immaterial to any element of [plaintiffs] . . . causes of action, and is therefore inconsequential to the determination of the case"). Evidence purporting to show Merck and its employees' "motives" has no connection to Plaintiffs' negligence, strict liability, or breach of warranty claims and should be excluded.

Plaintiff cannot logically argue that this evidence is relevant to punitive damages. "The test for punitive damages in Missouri is a strict one." *Drabik v. Stanley-Bostitch, Inc.*, 997 F.2d 496, 510 (8th Cir. 1993) (citing *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 397 (Mo. 1987) (en banc)). "Before punitive damages are warranted in a products liability case, the defendant must have placed an unreasonably dangerous product in commerce with actual knowledge of its defect." *Ford v. GACS, Inc.*, 265 F.3d 670, 678 (8th Cir. 2001) (citing *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164–65 (Mo. Ct. App. 1997)). Additionally, there "must be some element of wantonness or bad motive." *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 208-09 (8th Cir. 1981) (quoting *McClellan v. Highland Sales & Investment Co.*, 484 S.W.2d 239, 242 (Mo. 1972)). As stated, there is no authority for the proposition that a public

4

company's legitimate interest in earning profits can constitute the "wantonness or bad motive" required to support a claim for punitive damages. Merck's purported monetary motive for developing Vioxx, the potential profitability of the drug, or the financial incentives Merck provided its employees are not evidence of an "evil motive." *GACS, Inc.*, 265 F.3d at 676.

### III. EVIDENCE OF MERCK AND ITS EMPLOYEES' PURPORTED "MOTIVES" SHOULD ALSO BE EXCLUDED UNDER RULE 403.

Focus on Merck's profit or the financial incentives Merck offered its employees is likely to invoke latent antipathy, animosity, or resentment that jurors might harbor toward large corporations, to the significant prejudice of Merck. Trial courts recognize that some jurors may be predisposed against corporate defendants and strive to create an environment so such jurors do not act on their prejudices. For example, Pattern Jury Instruction 2.16 in the Fifth Circuit tells jurors: "Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice." *See* Fifth Circuit District Judges Association, *2014 Pattern Jury Instructions (Civil Cases)* at 23. It would be nonsensical to allow Plaintiff indiscriminately to feed juror prejudices that corporate defendants are greedy and the like ("callously seeking profit at any cost – including the health of its customers") while the law seeks to eliminate such prejudices. Courts have held that admitting evidence relating to "profitability" and "motive" is not permitted under Rule 403, as "the risk that the jury would be prejudiced by this reference" to "enormous profitability" is "almost inescapable." *La Plante v. Am. Honda Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994); *see also Georgeson v. Dupage Surgical Consultants, LTD.*, 2007 WL 914207, at *3 (N.D. Ill. Mar. 22, 2007) (noting that "reference to the defendant's financial status can be so harmful and prejudicial as to result in the return of an improper verdict, and therefore constitutes reversible error" (internal quotation marks and citation omitted)).

If the Court nonetheless concludes that evidence of financial motive is admissible, Merck requests a limiting instruction under Rule 105 directing the jury not to consider such evidence in determining liability, causation, or compensatory damages.[1]

**IV.    THE JURY SHOULD BE INSTRUCTED TO CONSIDER EVIDENCE OF MERCK'S NET WORTH, IF ADMITTED, SOLELY FOR THE PURPOSE OF DETERMINING PUNITIVE DAMAGES.**

Merck objects to the introduction of its net worth on constitutional grounds. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421–23, 427 (2003) (prohibiting exemplary damages awards based on conduct bearing no relationship to plaintiff's alleged injury).

Evidence of a party's financial wherewithal is not relevant and not admissible to prove liability, causation, or compensatory damages. *See Parkins*, 241 F.2d at 368 n.2; *Woods*, 896 F. Supp. at 659–60. The rationale is clear: Evidence of financial worth can inject a "foreign, diverting, and distracting issue which may effectuate a prejudicial result." *Blankenship v. Rowntree*, 219 F.2d 597, 598 (10th Cir. 1955). "It is the general rule that . . . the admission of evidence concerning wealth of a party litigant constitutes error." *Id.*; s*ee also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("We agree with the overwhelming majority of courts which have examined this issue and which have disapproved of the use of a defendant's financial condition in determining compensatory damages.").

---

[1]    "If the court admits evidence that is admissible against a party or for a purpose—but not . . . for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. If the Court concludes that motive evidence is admissible to prove liability for punitive damages, Merck requests that the following instruction be read to the jury at the appropriate times throughout trial:

> You have heard [or, you may hear] evidence that Merck and/or its employees had a motive, through financial incentives or otherwise, to increase sales of Vioxx. You may not consider such evidence in determining whether Merck is strictly liable to plaintiffs for failure to warn or whether Merck negligently failed to provide an adequate warning to plaintiffs' physician.

6

We believe that after the Court hears all of the evidence, the Court will find that Plaintiff fails to satisfy the statutory and common law requirements necessary to support an award of punitive damages. *See, e.g.*, Section I, *supra*. Given the well-established rule that evidence of net worth is admissible only to support punitive damages, Merck requests that the Court preclude any reference to Merck's net worth unless and until the Court has heard all of the evidence and determines that the issue of punitive damages will be submitted to the jury. *See, e.g.*, *Walford*, 793 P.2d at 627 (admitting evidence of defendant's financial condition just before closing argument, after court "determined, in the course of denying defendants' motions for directed verdicts, that a prima facie case had been established against each defendant" for punitive damages).

That is a sound approach for several reasons. First, Plaintiff has shown a proclivity for inflammatory rhetoric concerning Merck's financial wherewithal in both her Complaint and arguments on summary judgment. While there is little harm when such rhetoric is addressed to the Court, the same cannot be said when it is addressed to the jury. Second, evidence of Merck's financial wherewithal and accompanying rhetoric is a bell that once rung before the jury cannot be unrung. Finally, the approach suggested in this Motion cannot prejudice Plaintiff. Merck is asking only that the Court function as an informed gatekeeper. If Plaintiff believes that she has presented evidence to assure that the issue of punitive damages will be submitted to the jury, then she can present her arguments to the Court, giving Merck an opportunity to respond. The Court can make an informed and prudent judgment. This approach makes sense.

## CONCLUSION

For the reasons stated above, Merck respectfully requests that the Court exclude evidence and argument relating to Merck's financial wherewithal, including alleged motives in marketing

Vioxx and Merck's incentive plans for its sales representatives.  In addition, if the Court overrules Merck's objection to evidence of Merck's net worth for purposes of determining punitive damages, Merck respectfully requests that the Court preclude any presentation before the jury unless and until the Court determines that the issue of punitive damages will in fact be submitted to the jury (and then that the Court carefully control the content of any such evidence).

Dated:  September 30, 2016

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
   Phillip A. Wittmann, 13625
   Dorothy H. Wimberly, 18509
   STONE PIGMAN WALTHER
   WITTMANN L.L.C.
   546 Carondelet Street
   New Orleans, LA 70130
   Phone: 504-581-3200
   Fax:    504-581-3361

*Defendants' Liaison Counsel*

   —and—

   Douglas R. Marvin
   M. Elaine Horn
   Emily Renshaw Pistilli
   WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
   Washington, DC 20005
   Phone: 202-434-5000
   Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 30th day of September, 2016.

>*/s/ Dorothy H. Wimberly*
>Dorothy H. Wimberly, 18509
>STONE PIGMAN WALTHER
>WITTMANN L.L.C.
>546 Carondelet Street
>New Orleans, LA  70130
>Phone:  504-581-3200
>Fax:     504-581-3361
>dwimberly@stonepigman.com
>
>*Defendants' Liaison Counsel*