UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| 2:06-cv-09757-EEF-DEK | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
RELATED TO STATEMENTS MADE IN POLITICAL DEBATES
OR GOVERNMENT ENFORCEMENT PROCEEDINGS

**(MOTION *IN LIMINE* NO. 6)**

Merck moves to exclude evidence of: (1) verdicts, settlements, or agreements from other Vioxx-related lawsuits or other civil claims and actions, and government investigations pertaining to Vioxx; and (2) statements made in political proceedings and debate regarding Vioxx, such as at Congressional hearings. Both categories of evidence should be excluded. First, neither category is probative of any issue in this case and should be excluded as irrelevant. Second, both categories are inadmissible hearsay. Finally, if admitted, the evidence would unfairly prejudice Merck, lead to juror confusion, and waste judicial resources.

**I.      PRIOR RULINGS.**

In *Plunkett*, this Court granted Merck's motion to exclude the verdicts and results in other proceedings. *See Plunkett*, Order re Motions *in Limine* (Nov. 20, 2005), Rec. Doc. 1563, at 6. The Court reserved ruling as to statements made in political proceedings to allow plaintiff to establish possible grounds for introduction of such evidence under Rule 801(d)(2) or to establish sufficient probative value under Rule 403. *Id*. No such foundation was elicited at trial, and no statements from political proceedings were admitted.

1

## II.  THE COURT SHOULD EXCLUDE EVIDENCE OF VERDICTS, SETTLEMENTS, OR AGREEMENTS IN OTHER VIOXX LITIGATION, CLAIMS, AND ACTIONS, AS WELL AS GOVERNMENT INVESTIGATIONS.

As the Court is aware, there has been extensive litigation around the United States involving Vioxx.  Several cases have resulted in jury verdicts, more favorable to Merck than to plaintiffs.  Many more cases—literally tens of thousands—were resolved in 2007 through a global settlement in which the current Plaintiff refused to participate.  While these were all "Vioxx cases," they are not nearly all the same.  It should go without saying that no other Vioxx case presented Dr. Katz or Dr. Hartman as the prescribing physician, with their particular level of knowledge of Vioxx and their patient, or Ms. Levitt, with her non-MI cardiac events.

Evidence of verdicts, settlements, or agreements from other Vioxx lawsuits—and even the existence of other civil claims or lawsuits relating to Vioxx—is inadmissible because it is irrelevant, constitutes inadmissible hearsay, is improper character evidence, and would unfairly prejudice Merck if admitted.  Evidence of previous investigations regarding Vioxx by governmental bodies (including, for example, the United States Department of Justice or state Attorneys General) is similarly inadmissible.

### A.  Evidence of Verdicts or Settlements from Other Vioxx Lawsuits and the Existence of Other Claims, Actions, or Investigations Involving Merck Are Irrelevant.

Evidence of verdicts or settlements from other lawsuits or the existence of claims and actions filed against Merck involving Vioxx is not probative of any trial issue in this case. Parties claiming injury in other legal actions differ from Ms. Levitt in innumerable ways bearing directly on the circumstances of this action, including by age, medical history, alleged injury, knowledge by the prescribing physician of the patient's condition and the risks of the medicine, the considerations of the physician when prescribing Vioxx, the dose and duration of Vioxx use, the patient's use of other medications, and other available treatment options.  Given these many

differences, whether a jury in a different lawsuit found that a different prescribing physician was inadequately informed of Vioxx's risks or that Vioxx caused injury to someone other than Ms. Levitt is irrelevant.  *See, e.g.*, *Wolf ex rel. Wolf v. Proctor & Gamble Co.*, 555 F. Supp. 613, 620 (D.N.J. 1982) (excluding as irrelevant in product liability case evidence of other acts where circumstances surrounding other acts were insufficiently similar); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 138 (Tex. 2004) ("Proof of what happened in a previous accident does not, without more, prove what happened in a current one."); *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1356-57 (5th Cir. 1983) ("[P]rior jury determinations are not highly probative" and "create[] a high possibility of jury confusion.").  Evidence of settlements from other lawsuits is similarly irrelevant.

*A fortiori*, another litigant's mere allegation of injury while taking Vioxx is irrelevant to whether Vioxx caused Ms. Levitt's injury, and courts routinely exclude such allegations.  *See, e.g.*, *King v. Emerson Elec. Co.*, 837 F. Supp. 1096, 1099 (D. Kan. 1993) (excluding complaints from prior actions because they were "merely proof that someone had accused defendant of manufacturing a defective or dangerous [product], not that the [product] is in fact defective or dangerous").  Just to establish a foundation for such evidence, Plaintiff would need to prove that Vioxx caused the alleged injuries involved in the other lawsuits and claims, and Plaintiff cannot lay this foundation; absent a foundation, alleged incidents in other legal actions are irrelevant.

Likewise, government investigations relating to Vioxx or enforcement proceedings against Merck are irrelevant.  Government investigations often have a broader scope than the disputed facts in a single lawsuit.  Governmental bodies typically are concerned with obtaining information about an alleged series of events in order to craft future legislation or policy solutions to benefit some public interest.  That is not the purpose of a lawsuit brought by an

individual claiming individual injury.[1] Courts similarly exclude grand jury investigations from civil cases. *See, e.g.*, *Stump v. Gates*, 211 F.3d 527, 536–37 (10th Cir. 2000) (holding that failure to exclude grand jury report was reversible error, as it "had minimal probative value, at best," had "high risk" of influencing civil jury, and admission "risked misleading or confusing the trial jury").

> **B.    Evidence of Verdicts, Settlements, or Agreements from Other Vioxx Lawsuits and the Existence of Other Claims, Actions, or Investigations Involving Merck Is Inadmissible Hearsay.**

Evidence from other lawsuits or investigations also must be excluded as inadmissible hearsay. Courts routinely hold such evidence to be inadmissible. It is well established, for example, that allegations in a complaint from another case are hearsay and, therefore, inadmissible as evidence for a court to consider. *See, e.g.*, *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 499 (D. Del. 2005) (excluding as hearsay "the allegations in the complaint . . . of a party unrelated to the instant litigation"); *Wolf*, 555 F. Supp. at 620 (excluding in product liability case evidence of consumer complaints made to defendants as inadmissible hearsay). Any investigation, claim, or complaint against Merck concerning Vioxx is inadmissible hearsay.[2]

---

[1]    For example, the Department of Justice ("DOJ") filed a Statement of Interest in the consolidated federal action against Merck seeking "to recover amounts expended for medical care provided to certain Plaintiffs" who allegedly took Vioxx. The United States Statement of Interest, *In re Vioxx Prods. Liab. Litig.*, (July 13, 2005), Rec. Doc. 624. The DOJ focused on cases in which Medicare funds were used to pay for a patient's Vioxx and the application of federal Medicare law, including 42 U.S.C. § 1395y(b)(2) and 42 C.F.R. § 405.704(b)(13). Those laws and regulations have nothing to do with this case.

[2]    Nor is such evidence admissible for a non-hearsay purpose such as notice. Relevance requires that "(1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981). To satisfy the latter requirement, it is not enough for Plaintiff to claim that Merck was "on notice" of the allegations contained in a complaint or record of investigation; rather, the allegations at issue must have a

4

### C. Evidence of Verdicts or Settlements from Other Vioxx Lawsuits or Investigations Concerning Merck Is Impermissible Character Evidence.

Admitting evidence from other lawsuits or investigations concerning Vioxx would also violate the rule that evidence of other wrongs is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of other acts may be admissible only if: (1) it is relevant to a material issue in dispute other than Merck's "character" and similar in kind; and (2) its probative value is not outweighed substantially by its inherent prejudice. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978).

As discussed above, every Vioxx case involves a unique patient and a unique prescribing physician considering a unique differential diagnosis. Each case rises or falls on its own facts. There will be no evidence here concerning the specific medical condition of other plaintiffs, the scientific literature pertaining to their alleged injuries, or evidence regarding their prescribing physicians' knowledge and rationale for prescribing Vioxx. Thus, the evidence from other cases or claims is inadmissible under Rule 404(b). *See, e.g.*, *Nissan Motor Co.*, 145 S.W.3d at 142 ("[P]roduct defects must be proved; they cannot simply be inferred from a large number of complaints. If the rule were otherwise, product claims would become a self-fulfilling prophecy — the more that are made, the more likely all must be true.").

Any attempt by Plaintiff to circumvent the prohibition on character evidence under Rule 404(b) by claiming to introduce the evidence for "other purposes" (such as proof of motive or intent) would be unavailing. Any such claim would be disingenuous, as Plaintiff would clearly intend to offer evidence of past claims or investigations either for their truth or for the prejudicial

---

nexus to Plaintiff's claim that Ms. Levitt was injured by Vioxx. Here, Plaintiff cannot establish that Merck had notice of any claims before Dr. Katz prescribed Vioxx to Ms. Levitt in 1999. Accordingly, such "notice" is irrelevant.

impact of their sheer number.  More importantly, evidence of Merck's alleged motive or intent is irrelevant to the issues in this case:  the adequacy of the information Merck gave to Dr. Katz and Dr. Hartman, and the cause of Ms. Levitt's adverse cardiovascular events.  For that reason, courts repeatedly have held that evidence relating to motive and intent is immaterial to both negligence and strict liability claims.  *See, e.g.*, *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990) (since "neither motive nor intent are material in a negligence action," trial court "could have concluded that evidence tending to prove a business motive for [defendant's] conduct was excludable as irrelevant" (internal citation omitted)).

      **D.**      **Evidence of Verdicts, Settlements, or Agreements from Other Vioxx Lawsuits and Other Claims, Actions, or Investigations Should Be Excluded Under Rule 403.**

There is a reason trial courts instruct jurors not to read newspapers or engage in their own research of topics in a lawsuit; it is to avoid distraction and unfair prejudice from information other than the facts drawn from the evidence.  Yet this is the type of extraneous information Plaintiff would introduce through evidence of other lawsuits or investigations relating to Vioxx—and it should be excluded under Rule 403.  Juror confusion and unfair prejudice are particularly significant concerns here, where Plaintiff would introduce evidence amounting to alleged bad acts.  Character evidence is presumptively barred because it "is of slight probative value and may be very prejudicial." Fed. R. Evid. 404 (Advisory Committee's Notes) (quoting California Law Revision Commission).  The Fifth Circuit recognizes that other claims against a defendant in a products liability suit constitutes "evidence of such faint probative value and high potential for unfair prejudice" that is properly excluded. *Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1243 (5th Cir. 1974).  "Other-incidents evidence . . . poses a significant risk of confusing the jury and creating prejudice, while its probative value is relatively low." *Nissan Motor Co.*, 145 S.W.3d at 150 (O'Neill, J., concurring); *see also Guy v.*

6

*Crown Equip. Corp.*, 394 F.3d 320, 328-29 (5th Cir. 2004) (reports on dissimilar injuries properly excluded because they were "unfairly prejudicial, would confuse the issues, and would mislead the jury, among other things"); *Johnson*, 988 F.2d at 581 (probative value of evidence of complaints is substantially outweighed by danger of unfair prejudice); *Stump v. Gates*, 211 F.3d 527, 536–37 (10th Cir. 2000) (excluding grand jury report in civil case).

Here, introducing such evidence would inaccurately suggest to the jury that the mere existence of other Vioxx lawsuits, claims, investigations, or verdicts supports a finding of liability. That suggestion clearly is improper. Additionally, admitting information about other lawsuits would require plaintiffs to establish a foundation for the evidence and attempt to prove that Vioxx caused other plaintiffs' claimed injuries. *See, e.g.*, *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408–09 (5th Cir. 2004) (any possible probative value of earlier lawsuits "was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation). This would require specific medical details about other plaintiffs, the scientific literature pertaining to their alleged injuries, details regarding the physicians' knowledge and rationale for prescribing Vioxx, and more. Merck, in turn, would be compelled to delve into the facts of each other case, resulting in a "trial within a trial." This would unnecessarily divert the jury's attention from the issues to be decided: whether Dr. Katz or Dr. Hartman (not some other plaintiff's physician) were adequately warned of Vioxx's risks and, if not, whether Vioxx caused Ms. Levitt's injuries (not a different injury of a different person). The Court should exclude any such evidence under Rule 403. *See, e.g.*, *Landrieu Constr., Inc. v. DRC Emergency Servs., LLC*, 2010 WL 1817768, *5 (E.D. La. Apr. 29, 2010) (excluding collateral evidence alleging bad conduct because "[t]he other instances are substantially different

and would in effect necessitate a trial within a trial which would be prejudicial and confusing") (Fallon, J.).

### III. THE COURT SHOULD EXCLUDE EVIDENCE OF STATEMENTS MADE IN THE COURSE OF POLITICAL PROCEEDINGS AND DEBATE OVER VIOXX.

In November 2004, just weeks after Merck voluntarily withdrew Vioxx from the market, Congress held hearings.  The purpose was to evaluate whether the FDA had properly discharged its duty to ensure that drugs approved for sale to the public were sufficiently safe.  Vioxx was among several drugs discussed.  Predictably, politicians have since drafted legislation, and promised additional legislation.  *See, e.g.*, Food and Drug Administration Safety Act, S. 930, 109th Cong. (2005); Enzi, *Kennedy Working on Bill to Address Drug Safety Concerns*, FDA Week, Apr. 29, 2005.  In addition, various other politicians, including Congressman Henry Waxman from California, offered their opinions through public statements, speeches, and articles.  Some of their opinions about Merck, Vioxx, and the FDA's drug-approval and field-use monitoring practices have been more informed; some have been less informed; none has anything to do with this case and should have no place in the courtroom.

The inevitable political debate following a high profile issue like Vioxx must be excluded:  It is inadmissible hearsay; it is irrelevant; and, if admitted, it would unfairly prejudice Merck, lead to juror confusion, and waste judicial resources.

#### A. Political Statements Are Inadmissible Hearsay.

Out-of-court statements made in connection with Congressional hearings or other political inquiries must be excluded as hearsay for which no exception applies.

Such statements "are frequently marred by political expediency and grandstanding." *Anderson v. City of N.Y.*, 657 F. Supp. 1571, 1579–80 (S.D.N.Y. 1987) (excluding Congressional Report).  They lack the trustworthiness to fall within the "public records" exception to the

8

hearsay rule, Rule 803(6). For that reason, courts routinely hold such evidence to be inadmissible hearsay. *See, e.g.*, *id.*; *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) (report of Congressional investigation "lacks the trustworthiness necessary to bring Rule 803(8)(C) into play").[3]

Congressional hearings and related political discussion, debate, and inquiry concerning Vioxx are no different. None of the procedural protections applicable at a trial was available in the Congressional hearings on Vioxx and the FDA. For example, Merck had no opportunity to examine witnesses. Unauthenticated documents became part of the hearing record, and purported scientific testimony was allowed without regard to the safeguards and standards applied in a court. Moreover, the hearings were highly publicized and politically charged, and they involved testimony from self-interested witnesses and statements by politicians who were championing legislative agendas. For example, the hearings apparently were influenced by individuals working on behalf of plaintiffs' counsel in various Vioxx lawsuits. Indeed, one of Ms. Levitt's own expert witnesses met privately with members of Congress and their staffs before the February 2005 hearings to discuss Vioxx and provide Congressmen with Merck documents selected by plaintiffs' litigation counsel. *See* Dep. of David Egilman in *Ernst v. Merck* (June 13, 2005) (excerpts attached as Ex. A) at 126:24–128:16. The positions of Congressmen and statements criticizing Merck after these hearings, including by Congressmen such as Mr. Waxman, were inevitably influenced by such biased information. This is typical of

---

[3] *See also Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1, 2 (N.D. Miss. 1980) (excluding report of Congressional investigation, because it lacked the indicia of reliability required by Rule 803(8)(C) and was based "on evidence which would clearly be inadmissible if independently offered" at trial); *Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 814 (D.D.C. 1987) (excluding Congressional subcommittee report because it was "mostly comprised of the Subcommittee's subjective comments, criticisms, arguments, and evaluations").

the political process but foreign to the judicial process. Statements emanating from such a flawed process plainly do not fit the public records exception.

For the same reason, political statements do not fall within the "business records" exception, which requires the same degree of evidentiary trustworthiness as the public records exception. *See* Rule 803(6). Moreover, given their ad hoc, interest-driven nature, reports and records created by members of Congress do not constitute records made in the course of a regularly conducted business activity pursuant to a regular practice of that business activity. *See, e.g., Knight Publ'g Co. v. U.S. Dep't of Justice*, 631 F. Supp. 1175, 1178 (W.D.N.C. 1986) (excluding from evidence a Congressional report because, *inter alia*, congressional committee hearings are politically motivated "for the benefit of constituents back home," "are oft time conducted in a circus atmosphere," and therefore unlikely to produce "any facts which would persuade the Court one way or the other"). Accordingly, evidence of politically-motivated statements remains inadmissible hearsay and must be excluded.

      **B.**    **Political Statements Are Irrelevant.**

Statements made as part of the political process should be excluded because they are irrelevant to plaintiffs' claims. None of these statements concerns whether Merck adequately warned Dr. Katz or Dr. Hartman; none concerns whether Vioxx caused Ms. Levitt's injures. Absent these essential connections, statements made in Congressional hearings or other political settings should be excluded under Rule 401.

      **C.**    **Political Statements Should Be Excluded Under Rule 403.**

Statements made in connection with Congressional hearings or other political inquiries must also be excluded under Rule 403.

As discussed above, Congressional hearings do not proceed according to the rules of evidence or the procedures applicable in a court of law. *See, e.g., Anderson*, 657 F. Supp. at

1579; *Fowler*, 92 F.R.D. at 2.  In Congressional hearings, statements of purported fact are made by persons who have no personal knowledge.  Unauthenticated documents are used, and testimony is not subject to cross-examination.  A jury will not understand the importance of the procedural protections afforded by court rules and, instead, may incorrectly credit political statements, lacking safeguards, with the same reliability as sworn testimony.

Moreover, a jury may attach undue significance to statements made in connection with a Congressional hearing because they are infused with the imprimatur of Congress and couched in terms of "findings."  *See, e.g.*, *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984) (per curiam) (excluding Congressional report because "[t]here was a substantial danger of unfair prejudice because the jury may have been influenced by the official character of the report to afford it greater weight than it was worth"); *Pearce*, 653 F. Supp. at 816 (finding "there is the danger of unfair prejudice" because "of the undue weight that a jury is likely to attach to the official reports from Congress and the often inflammatory or exaggerated statements made in testimony before Congress or by a political official").

Admitting political statements also will result in undue delay and a waste of time. Merck would be forced to introduce additional evidence to place such statements in proper context and to show error where error occurred (and there was plenty in the political arena).  The resulting sideshow would divert the jury's focus from the pertinent issues to be decided at this trial.  The Court should exclude such evidence under Rule 403.

## CONCLUSION

For the reasons stated above, Merck respectfully requests that the Court exclude any evidence or argument concerning other Vioxx lawsuits, claims, government investigations,

11

agreements, or settlements involving Vioxx and any statements made in the course of political proceedings and debate related to Merck, Vioxx, or the FDA.

Dated:  September 30, 2016

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, LA 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

   *Defendants' Liaison Counsel*

   —and—

   Douglas R. Marvin
   M. Elaine Horn
   Emily Renshaw Pistilli
   WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, NW
   Washington, DC 20005
   Phone: 202-434-5000
   Fax:    202-434-5029

   *Attorneys for Merck Sharp & Dohme Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 30th day of September, 2016.

*/s/ Dorothy H. Wimberly*
Dorothy H. Wimberly, 18509
STONE PIGMAN WALTHER
WITTMANN L.L.C.
546 Carondelet Street
New Orleans, LA  70130
Phone:  504-581-3200
Fax:     504-581-3361
dwimberly@stonepigman.com

*Defendants' Liaison Counsel*