UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Vioxx | * | MDL Case No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| *This document relates to* | * | JUDGE FALLON |
| | * | |
| *Jo Levitt v. Merck Sharp & Dohme Corp.*, | * | MAGISTRATE JUDGE |
| **2:06-cv-09757-EEF-DEK** | * | KNOWLES |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### DEFENDANT'S MOTION FOR LEAVE TO REOPEN EXPERT DISCOVERY AND TO DEPOSE DAVID MADIGAN, PH.D.

Merck moves for leave to depose David Madigan, Ph.D., on his statistical analysis concerning Vioxx and acute coronary syndrome ("ACS"). This analysis was not disclosed when Merck deposed Madigan on March 7, 2016. Indeed, it *had not even been conducted at the time*.

In opposing Merck's *Daubert* motions, Plaintiff conceded that "if Merck's main complaint is that Dr. Madigan had not completed the analysis at the time of his deposition, then it is free to re-depose him on that limited issue." Madigan Opp'n at 15 (Rec. Doc. 65407). Plaintiff also advised the Court that she "will agree to make him available for a second deposition if this Court deems fit." *Id*. at 6.

The deposition is needed. Because the analysis had not been performed at the time of Dr. Madigan's deposition, Merck was unable to explore anything about it—its nature, scope, methodological underpinnings, etc. Merck has requested that Plaintiff stipulate to the second deposition, but Plaintiff has not responded. Merck now seeks the Court's leave to conduct a limited deposition on those topics. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii).

**I.    LEGAL STANDARD.**

Rule 30 requires that a party "must obtain leave of court" where "the deponent has

already been deposed in the case" and the parties have not stipulated to a second deposition. Fed. R. Civ. P. 30(a)(2)(A)(ii). Where the deposition is proper under Rule 26, "the court must grant leave[.]" Fed. R. Civ. P. 30(a)(2). Courts regularly allow subsequent depositions when an expert belatedly discloses an additional opinion. *See, e.g.*, *Hidalgo v. Cooley Godward Castro Huddleson & Tatum*, 2004 WL 936859, at *2 (N.D. Tex. Apr. 1, 2004) ("[I]t is fundamentally unfair and unduly prejudicial not to allow Defendant to redepose [plaintiff's expert] on his 'new' opinions and conclusions which were not included in his original expert report"); *Stokes v. Terrebonne Par. Sheriff's Office*, 2013 WL 1948120, at *4 (E.D. La. May 9, 2013) ("allow[ing] the plaintiff to depose [late-disclosed expert] after the discovery deadline"); *Fisher v. United States*, 2011 WL 232181, at *4 (E.D. La. Jan. 24, 2011) (inviting a motion "to reopen discovery for the limited purpose of allowing the [defendant] to investigate and respond to [the expert's new] opinions") (Fallon, J.)

## II. A SECOND DEPOSITION IS NECESSARY TO ESTABLISH THE SCOPE AND BASIS OF MADIGAN'S ACS OPINIONS.

The Madigan ACS analysis features prominently in Plaintiff's case. Dr. Egilman relies on it for his causation opinion. Plaintiff has identified no other study that purports to show a statistically significant causal association between Vioxx and ACS on the basis of randomized controlled clinical trial data. Madigan's analysis is the only one.

Merck attempted to elicit testimony on this topic at Madigan's original deposition. Merck asked expressly whether he had conducted any ACS meta-analysis. He had not:

> Q. Have you performed any analyses of the Vioxx data on the subject of acute coronary syndrome?
>
> A. In isolation[?]
>
> Q. Have you looked at that specific endpoint, acute coronary syndrome?

> A. Only insofar as it's part of, you know, a composite.  I don't even know sitting here this minute whether it is or it isn't.

Madigan Dep. (Mar. 7, 2016) at 38:18–39:1 (excerpts attached as Ex. A).  At that time, Madigan did not "understand . . . in any detail what [ACS] means." *Id*. at 38:15–16.  Merck asked further whether Madigan was aware of "any studies that do show a statistically significant relationship" between Vioxx and ACS.  *Id*. at 116:3–10.  He was not.  *Id*.  Merck concluded Madigan's deposition with record testimony that no such analysis existed.

Five weeks later, Dr. Egilman revealed that he had—sometime in the preceding days—instructed Madigan to conduct the ACS meta-analysis.

> Q. And what have you communicated with Dr. Madigan about that you understand to be specific to Ms. Levitt?
>
> A. Well, I got him to run the placebo data for acute coronary syndrome over the -- all the placebo data that he has from all the Merck studies.
>
> Q. When did you ask him to do that?
>
> A. This week.

Egilman Dep. (Apr. 12, 2016) at 39:11–18 (excerpts attached as Ex. B).  In the middle of his deposition, Dr. Egilman retrieved a bulleted summary of Madigan's analysis from the bottom of a folder and offered it to defense counsel.  *See* Ex. C.  Merck has received no formal disclosure of Madigan's analysis.

Merck was unable to meaningfully examine Dr. Egilman about the analysis that Madigan conducted.  Everything was relayed second-hand.  Dr. Egilman could not provide Madigan's own report of the results.  *See* Egilman Dep. at 43:12–44:3 (testifying that he likely deleted correspondence with Madigan).  He could not describe Madigan's methodology for selecting data points.  He could not testify to the type of statistical analysis Madigan used.  He could not tell Merck what opinions, if any, Madigan had formed upon conducting the analysis.

3

Merck would be severely prejudiced if forced to proceed to trial without adequate information about Madigan's ACS analysis. For these reasons, Plaintiff conceded in expert-related briefing that she will make Madigan available. Madigan Opp'n at 6 (Rec. Doc. 65407).

## CONCLUSION

For the reasons stated above, Merck respectfully requests that the Court grant Merck leave to depose Madigan on his statistical analysis concerning Vioxx and acute coronary syndrome.

Dated:  October 5, 2016

Respectfully submitted,

By: /s/ Dorothy H. Wimberly
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, LA 70130
    Phone: 504-581-3200
    Fax:    504-581-3361

*Defendants' Liaison Counsel*

—and—

Douglas R. Marvin
M. Elaine Horn
Emily Renshaw Pistilli
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: 202-434-5000
Fax:    202-434-5029

*Attorneys for Merck Sharp & Dohme Corp.*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing Motion has been served on Liaison Counsel, Russ Herman, Ann B. Oldfather, and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 5th day of October, 2016.

                   /s/ *Dorothy H. Wimberly*
                   Dorothy H. Wimberly, 18509
                   STONE PIGMAN WALTHER
                   WITTMANN L.L.C.
                   546 Carondelet Street
                   New Orleans, LA 70130
                   Phone:  504-581-3200
                   Fax:     504-581-3361
                   dwimberly@stonepigman.com

                   *Defendants' Liaison Counsel*