# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-31070
Summary Calendar

D.C. Docket No. 2:05-MD-1657
D.C. Docket No. 2:12-CV-2406

United States Court of Appeals
Fifth Circuit
**FILED**
October 11, 2016
Lyle W. Cayce
Clerk

IN RE: VIOXX PRODUCTS LIABILITY LITIGATION

-----------------------------------------

LINDA ISNER, Executrix of the Estate of Jeffrey Isner, M.D.,

      Plaintiff - Appellant

v.

SEEGER WEISS, L.L.P.; CHRISTOPHER A. SEEGER; HUGHES HUBBARD & REED, L.L.P.; THEODORE V.H. MAYER; BROWNGREER, P.L.C.; ORRAN L. BROWN,

      Defendants - Appellees

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, DENNIS, and COSTA, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.



Certified as a true copy and issued
as the mandate on Nov 02, 2016

Attest:

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-31070
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
October 11, 2016
Lyle W. Cayce
Clerk

IN RE: VIOXX PRODUCTS LIABILITY LITIGATION

-----------------------------------------

LINDA ISNER, Executrix of the Estate of Jeffrey Isner, M.D.,

    Plaintiff - Appellant

v.

SEEGER WEISS, L.L.P.; CHRISTOPHER A. SEEGER; HUGHES HUBBARD, & REED, L.L.P.; THEODORE V.H. MAYER; BROWNGREER, P.L.C.; ORRAN L. BROWN,

    Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-MD-1657
USDC No. 2:12-CV-2406

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-31070

Linda Isner appeals the grant of summary judgment disposing of her misrepresentation and consumer protection claims against a number of attorneys and law firms. These attorneys and firms played leading roles, some on the side of the plaintiffs and others on the side of the defendant, in organizing a national settlement between users of the drug Vioxx and its manufacturer Merck & Co. Isner, whose physician husband died from a heart attack after taking Vioxx, opted to release her claims against Merck in order to participate in the settlement which resulted in her receiving approximately $6.9 million. She now argues that the defendants misrepresented how the compensation would be calculated. Because her claims are barred by the terms of the settlement agreement, we conclude that summary judgment was proper.

## I.

Vioxx, a once popular anti-inflammatory and analgesic drug, was withdrawn from the market after it was linked to an increased risk of heart attack and stroke. Isner, like many other Vioxx users and their families, sued Merck, and her case was consolidated for multidistrict litigation in the Eastern District of Louisiana. Attorneys for Merck and the plaintiffs crafted a master settlement agreement (MSA) under which Merck provided a compensation fund that plaintiffs could access if they agreed to release their claims against the company.

Theodore Mayer and his firm Hughes, Hubbard, & Reed represented Merck in the MDL and settlement negotiations. Christopher Seeger, an attorney at Seeger Weiss, was a member of the Plaintiff's Steering Committee and a Negotiating Plaintiffs' Counsel (NPC) for the MDL plaintiffs. Orran Brown and his firm BrownGreer were selected by Merck and the NPCs to act as Claims Administrator under the MSA.

Those with Vioxx claims wishing to enter the settlement had to first apply and demonstrate their eligibility with evidence that they or their family

Case: 15-31070   Document: 00513744348   Page: 3   Date Filed: 11/02/2016
Case 2:05-md-01657-EEF-DEK   Document 65483   Filed 11/09/16   Page 5 of 9

No. 15-31070

members had used the drug in close proximity to suffering a heart attack or stroke. If admitted, claimants were next assigned a certain number of points based on the strength of their claims and the severity of their injuries. This point system would be used to calculate a claimant's base monetary award, though the exact dollar value of a given amount of points was not known to claimants before enrolling since actual payments would depend upon the number of other enrollees and their own points assessments.

In addition to a claimant's base award, he or she might also be eligible for an extraordinary injury (EI) award. EI awards were for claimants who suffered economic damages (like lost wages or medical bills) in excess of $250,000. A portion of the total settlement pool was set aside for EI awards. The MSA itself contained few details about how the EI funds would be allocated among claimants and individual payouts determined but gave the Claims Administrator discretion to set binding criteria.

Isner was counseled by her attorney Joseph Doherty in deciding whether to join in the MSA. In making her choice, she was especially concerned with obtaining compensation for the loss of her husband's sizable earnings as a physician. Compensation under the MSA for such a large economic loss would come only in the form of an EI award. Doherty, consequently, sought information from Mayer, Seeger, Brown, and their firms about how EI awards would be calculated and paid.

The ensuing communications gave rise to the alleged misrepresentations. To cite just one example, Doherty wrote an email to Seeger following a settlement conference to request confirmation that EI payments would include "both past and future lost earnings through to the end of Dr. Isner's work-life expectancy." Doherty also sent an email to Mayer requesting confirmation that "dollar-for-dollar," past and future lost earnings would be included in EI awards. When Mayer replied, he confirmed that both

3

Case: 15-31070     Document: 00513744348     Page: 4     Date Filed: 11/02/2016
Case 2:05-md-01657-EEF-DEK   Document 65483   Filed 11/09/16   Page 6 of 9

No. 15-31070

past and future lost earnings would be included. He stated that the awards will be "dollar for dollar subject to 1) disability benefits . . . 2) I believe, discount to present value as of the payment date . . . and 3) any proration that may prove necessary under Section 4.2.8 [the global cap]." Mayer couched these assertions in admissions of uncertainty and doubt, stating that "Brown Geer has not yet established all the criteria for EI awards" and that the "process does not allow prediction of the recovery amount with precision."

Isner ultimately decided to enroll in the MSA program, agreeing to both the MSA and a release. When the Claims Administrator announced the criteria for fixing EI awards and her own payment was calculated, Isner was disappointed. The Administrator found that her husband's expected annual earnings were $700,000 and set his retirement age at sixty-six. According to Isner, a simple calculation using this yearly income and the amount of time between her husband's passing and his hypothetical retirement age would yield an award of $8,490,935. The Claims Administrator, however, applied two deductions: a "standard discount" of 50% to account for present day value and the uncertainty that the deceased would have continued to work until his projected retirement date and a "relative points value adjustment" that took into account the points score used to measure the strength of her claim and the severity of her husband's injury. Using this method, Isner was assigned a $5,359,316.74 EI award that brought her total award to $6,932,918.93. Though she appealed this determination to a special master, the master affirmed that her award was calculated correctly according to the EI criteria released by the Claims Administrator.

Isner collected her award but filed suit in Massachusetts state court alleging that the defendants had negligently or intentionally misrepresented how her EI award would be calculated and thereby also violated Massachusetts' consumer protection statute. *See* Mass. Gen. Laws ch. 93a, § 9.

4

Case: 15-31070    Document: 00513744348    Page: 5    Date Filed: 11/02/2016
Case 2:05-md-01657-EEF-DEK   Document 65483   Filed 11/09/16   Page 7 of 9

No. 15-31070

The defendants removed the action to federal court, and it was transferred to the Louisiana district court that hosted the MDL. The defendants successfully moved for summary judgment on several grounds, including that language in the MSA and release barred the claims Isner was asserting.

## II.

We review a summary judgment ruling de novo. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014). We interpret all facts and draw all reasonable inferences in favor of the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). Summary judgment is appropriate only when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The defendants argue that summary judgment was appropriate because Isner agreed to relinquish any claims she might have against them related to the settlement or Vioxx when she executed the MSA and release. The MSA provides that "no Program Claimant . . . shall have any right to institute any proceeding, judicial or otherwise, against Merck, the NPC or any Administrator to enforce, or otherwise with respect to, this Agreement." Likewise, by executing the release, Isner abandoned "any and all rights, remedies, actions, claims, demands, causes of action, suits at law or in equity . . . in any way, arising out of, relating to, resulting from and/or connected with VIOXX."

This language is broad enough to encompass all of Isner's claims against all of the defendants. Looking to the MSA first, we note that each of Isner's three claims is a claim "with respect to" the MSA: the factual allegation supporting all three of her causes of action is that the defendants misrepresented to her how her EI award would be calculated if she accepted the MSA. The MSA identifies three entities or persons against whom Isner may not bring a claim: the NPC (Negotiating Plaintiffs' Counsel), Merck, and

Case: 15-31070 Document: 00513744348 Page: 6 Date Filed: 11/02/2016
Case 2:05-md-01657-EEF-DEK Document 65483 Filed 11/09/16 Page 8 of 9

No. 15-31070

any Administrator. BrownGreer was the Claims Administrator, Seeger was one of the NPC, and Hughes, Hubbard, & Reed represented Merck. Turning to the release executed by Isner, we find equally comprehensive language without a restriction of parties. We thus conclude that Isner's claims are connected or relate to Vioxx; each of them is predicated on the defendants' alleged misrepresentations about how she would be treated under a nationwide settlement of the claims of Vioxx users and their families.

Isner argues that the defendants cannot invoke the text of the release and MSA to defeat her claims because Massachusetts law does not allow such exculpatory language in a contract to defeat a claim in tort based on fraud or deceit. For example, Massachusetts courts have held, "[A] party to a contract with another cannot claim shelter by a contractual device, such as an exculpatory or merger provision, against claims of deceit." *Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc.*, 81 Mass. App. Ct. 282, 288–89, 962 N.E.2d 221, 228 (2012); *see also Granlund v. Saraf*, 263 Mass. 76, 79, 160 N.E. 408, 409 (1928) ("Fraud which enters into the making of the contract cannot be excluded from the reach of the law by any form of phrase inserted in the contract itself.").

The parties dispute whether the law of Massachusetts governs—the defendants contend that the law of New York applies based on a choice of law provision in the MSA. We need not resolve this question, however, because even under the law preferred by Isner, the terms of the release and MSA are sufficient to defeat her claims. Although the case law Isner relies on does correctly state the general rule in Massachusetts—a party to a contract cannot shelter against claims of deceit under an exculpatory provision—this rule is subject to an exception. Namely, "if 'the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the

6

Case: 15-31070     Document: 00513744348     Page: 7     Date Filed: 11/02/2016
Case 2:05-md-01657-EEF-DEK   Document 65483   Filed 11/09/16   Page 9 of 9

No. 15-31070

particular point at issue.'" *Starr v. Fordham*, 420 Mass. 178, 188, 648 N.E.2d 1261, 1268 (1995) (alteration in original) (quoting *Turner v. Johnson & Johnson*, 809 F.2d 90, 97 (1st Cir. 1986)). This rule extends to prior written assertions as well. *See HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 570–571 (1st Cir. 2014) (applying *Starr* and *Turner* to reject a fraud claim based on alleged misrepresentations in an earlier written agreement).

In this case, the particular point at issue was the amount of the EI payment and the method for calculating it. The MSA states that claimants will receive an EI payment under "criteria *to be determined* by the Claims Administrator" and "according to guidelines *to be established* by the Claims Administrator." The method of calculation was thus specifically reserved for the decision of the Claims Administrator at a later date. Furthermore, under the heading "**NO GUARANTEE OF PAYMENT**," the release stated, "**I FURTHER ACKNOWLEDGE THAT I UNDERSTAND THIS RELEASE AND THE AGREEMENT AND THAT THERE IS NO GUARANTEE THAT I WILL RECEIVE ANY SETTLEMENT PAYMENT OR, IF ANY SETTLEMENT PAYMENT IS MADE, THE AMOUNT THEREOF.**" Any allegedly false representation by defendants as to how EI payments would be calculated and the ultimate amount that Isner would receive are inconsistent with these contract provisions, which specifically state that both method and amount were up in the air when Isner entered the agreements and received the challenged communications from the defendants.

* * *

The judgment is AFFIRMED.