# UNITED STATES COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This Document relates to All Cases | * | |
| | * | MAGISTRATE JUDGE KNOWLES |

## MEMORANDUM IN SUPPORT OF AGGREGATE FEE
## PETITION PURSUANT TO PRE-TRIAL ORDER 59(A)
## BY THE COMMON BENEFIT FEE AND COST COMMITTEE

## INTRODUCTION

In July 2013, a Settlement Agreement related to Consumer Class Actions was presented to the Court for approval [Rec. Doc. 64501-3].  On January 2, 2014, the Court approved the Settlement Agreement [Rec. Doc. 64784], which resolved the claims of all individual consumer purchasers of *Vioxx* in the United States (except members of the Class previously certified by the Circuit Court of Jackson County, Missouri, in the *Plubell* case with respect to purchases made by residents of the State of Missouri).  The Settlement Class is outlined in Section 1.2 of the Settlement Agreement.  A Common Fund Settlement with a maximum payment by Merck of up to $23 million (the "Settlement Amount") for claims made for out-of-pocket expenditures by members of the class and certain other payment obligations is set forth in Section 2 of the Settlement Agreement.  Merck has fulfilled its payment obligations under the Settlement Agreement for claimants, the Claims Administrator, and notice (including the costs for the Notice Expert), and the only remaining issue to be addressed under the Settlement Agreement are fees to Class Counsel and other counsel pursuant to Section 14 of the Settlement Agreement.

Section 14.1 of the Settlement Agreement provides as follows:

14.1   Counsel for the Settlement Class, and any other counsel with a basis to seek the payment of fees and litigation expenses incurred in connection with the litigation of the consumer claims and related putative consumer class action cases involving Vioxx, may apply to the Court for an award of fees and expenses to be paid from the Common Fund in a total aggregate amount for all such counsel not to exceed 32% of the maximum of up to $23 million Settlement Amount (or an aggregate maximum amount of up to $7,360,000). Merck agrees not to oppose an application for fees and litigation expenses consistent with that limitation. However, Merck reserves the right to oppose any application for fees and litigation expenses that is not consistent with that limitation and to appeal any award of fees and litigation expenses that exceed that limitation. The payment of class notice and other administrative expenses of the Settlement pursuant to Section 2.5 of this Agreement are not included in the fees and litigation expenses subject to the 32% maximum set forth in this Section.  The actual award of fees and litigation expenses to Class Counsel or to any other counsel shall be made by the Court following an open and transparent process, including a hearing before the Court open to the public and all Class Members.

On September 23, 2015, the Court entered Pretrial Order No. 59 ("PTO 59") regarding the appointment of Common Benefit Fee and Cost Committee (the "Fee Committee") in connection with the VIOXX MDL Consumer Settlement Agreement and Guidelines for Common Benefit Attorneys Fees and Cost Reimbursement [Rec. Doc. 65267]. Thereafter, this Court issued Pre-Trial Order No. 59(A) (PTO 59(A)) on December 7, 2015 [Rec. Doc. 65311], which set forth the appointment of a Common Benefit Fee and Cost Committee (the "Fee Committee") in connection with the VIOXX MDL Consumer Settlement Agreement and guidelines for common benefit attorney fees and cost reimbursement.  The Court entered Orders on January 27, 2016 [Rec. Doc. 65322], February 23, 2016 [Rec. Doc. 65329], March 21, 2016 [Rec. Doc. 65335], May 4, 2016 [Rec. Doc. 65348], May 31, 2016 [Rec. Doc. 65367], July 11, 2016 [Rec. Doc. 65403], August 9, 2016 [Rec. Doc. 65432], October 11, 2016 [Rec. Doc. 65474] and January 5, 2017 [Rec. Doc. 65489] extending certain deadlines in PTO 59(A). The Fee Committee, in accordance with PTO 59(A), reviewed various applications of time and

expenses made by twelve (12) fee applicants[1] and as maintained on the Philip Garrett Case Cost Management System. The Fee Committee further received Fee Affidavits for Compensation for Common Benefit Time and Reimbursement of Expenses ("Fee Affidavits") from these twelve fee applicants. Fee applicants who timely submitted a Fee Affidavit appeared before the Fee Committee, or a three-member panel of the Fee Committee, to respond to questions of the Fee Committee as to the reasons, grounds and explanation for their entitlement to common benefit fees and reimbursement of expenses. On January 3, 2017, the Fee Committee met and voted unanimously that the entire amount of the common fund, less expenses reimbursed by the Court [Rec. Doc. 65422], be made available for the award of attorneys' fees. In sum, the Fee Committee has fulfilled its duties as set forth in PTO 59(A), and therefore it is now time for the Fee Committee to file an Aggregate Petition for a Common Benefit Fee. This Court has already addressed a cost award [see Rec. Doc. 65422].

The Fee Committee considered the entire history of the consumer claims litigation, including the number of years involved in achieving a settlement, the complexity of the claims at issue, the number of claimants ultimately participating in the claims process, the Settlement Amount obtained for the benefit of the claimants, as well as the significant risks and efforts undertaken by various fee Applicants. The Fee Committee determined that it was appropriate to not only move the Court to establish an amount available for the award of common benefit fees, but that it was also appropriate to make a recommendation to the Court as to the amount of fees

---

[1] A chart prepared by the Certified Public Accounting firm of Philip Garrett, which lists all hours submitted and approved by the Garrett firm, is filed along with each of the twelve Fee Affidavits submitted. Several firms submitted Fee Affidavits listing hours expended but did not submit additional billing records or information regarding the consumer cases to the Garrett firm. Thus, only the firms who submitted such information are listed on the Garrett chart, which is attached as Exhibit A. The Fee Affidavits, which were submitted in January 2016 and which may require updating, are attached as Exhibits B-M. The Fee Committee also requested one-page summaries from each Applicant. Two firms submitted such summaries, which are included with their respective Fee Affidavits. Consistent with PTO 59, those Exhibits are being filed with the Court under seal.

that should be set aside for possible fee awards.  The Fee Committee files this Aggregate Fee Petition and requests that the Court issue an Order setting the amount of attorneys' fees at the maximum amount as set forth in Paragraph 14 of the July 2013 Settlement Agreement.  The Fee Committee therefore requests that the Court issue an award of fees to be paid as a result of the Settlement Agreement related to Consumer Class Action dated July 2013, in a total aggregate amount for all such counsel not to exceed 32% of the maximum of up to $23 million Settlement Amount (or an aggregate maximum amount of up to $7,360,000) less expenses incurred in connection with the litigation of the Consumer Claims and related putative Consumer Class action cases involving Vioxx that were previously approved and disbursed by Order entered August 3, 2016 [Rec. Doc. 65422], in the amount of $185,580.91.  Thus, the Fee Committee presently is seeking an award of fees in the amount of $7,174,419.09.  The Fee Committee's unanimous decision is based upon and supported by a number of factors and applicable case law, all of which are addressed below.

## ARGUMENT

## I.   THE REQUESTED ATTORNEYS' FEE IS REASONABLE AND SHOULD BE AWARDED FROM THE SETTLEMENT FUND.

The Fee Committee has unanimously requested an aggregate fee award of 32% of the Settlement Amount – less reimbursed expenses already approved by the Court and paid to the Applicants.  As explained below, the percentage method is the proper method for awarding counsel's attorneys' fees in this case.  Further, an award of 32% of the entire Settlement Amount is fair and reasonable in light of applicable case law, awards in similar cases, and as confirmed by a lodestar cross-check and consideration of the Johnson[2] factors.

---

[2]     See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1947).  The applicable factors are discussed in further detail in Section I(D), infra.

### A. A Reasonable Percentage Of The Common Fund Is The Appropriate Method For Awarding Counsel's Attorneys' Fees In This Case.

An exception to the "American Rule" – that parties to a lawsuit bear their own attorneys' fees – exists when a litigant or a lawyer recovers a "common fund" for the benefit of persons other than himself or his client.  See Mills v. Elec. Auto-Lite Co., 396 U.S. 375 (1970).  This exception recognizes that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.  The Supreme Court has thus consistently held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (emphasis added).

In common fund cases[3], courts typically use one of two methods for calculating attorneys' fees:  (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier.  Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 642-43 (5th Cir. 2012); see also In re Bayou Sorrel Class Action, 2006 U.S. Dist. LEXIS 80924, *10-11 (W.D. La. Oct. 31, 2016) (noting that "courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured, especially in common fund cases") (citing cases); Manual for Complex Litigation (Fourth) ("MCL") § 14.121 (2004)

---

[3]    This so-called common fund doctrine, as this Court previously explained, is not solely limited to class actions.  See In re Vioxx Prods. Liab. Litig., 760 F. Supp. 2d 640, 647 (E.D. La. 2010) (citing Sprague v. Ticonic Nat'l Bank, 307 U.S. 161 (1939) (employing common benefit doctrine to award fees and costs to litigant whose success benefited unrelated parties by establishing their legal rights); Alan Hirsch & Diane Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation at 51 (2d ed. 2005) ("Although many common fund cases are class actions . . . the common fund doctrine is not limited to class actions.").

(reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund cases.").

District Courts within the Fifth Circuit, including this Court, "regularly use the percentage method blended with a Johnson reasonableness check, and for some it is the 'preferred method.'" Id. at 643 (citations omitted).[4]  In this case, the Court has approved the Settlement Agreement that provides for the Plaintiffs' attorneys' fees to be awarded based upon a percentage of the Settlement Amount.

## B.  A Fee Award Equal To 32% Of The Gross Settlement Amount Is Fair And Reasonable.

The Fee Committee's request to the Court for attorneys' fees in the full amount available for fees is consistent with the express terms of the Settlement Agreement and represents 32% of the gross settlement fund ($23 million) secured from Merck as a direct result of counsel's collective efforts and made available for the benefit of all claimants.  That amount is both fair and reasonable under the specific facts and circumstances of this lengthy, complex litigation.

### 1.  The Percentage Method Must Be Calculated From The Gross Settlement.

"When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefits to the class.  Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the "benefit to class members," the attorney's fees and may include costs of administration)."  Gascho v. Global Fitness Holdings, LLC, 822 F.3d 269, 282 (6th Cir. 2016).  A review of relevant case law establishes that the total benefit to the claimants in this case should be measured by the entire Settlement Amount.

---

[4]      The Fifth Circuit has expressly endorsed this procedure.  Dell, supra, at 644 ("We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the Johnson considerations.")

Like the consumer MDL plaintiffs in this case, class plaintiffs' "right to share in the harvest of the suit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by class representatives and their counsel." Boeing Co., supra, 444 U.S. at 480 (emphasis added). According to the Supreme Court, Boeing's "latent claim" to the money left in the fund after class member claims had been paid did not alter the Court's conclusion that the "present rights" of class members to access that money through a claims process was a benefit to class members. See id. at 482. Thus, the Supreme Court held that the District Court had not abused its discretion by awarding fees to class counsel based on the size of the entire fund as opposed to the portion of it for which claims had been approved. Id. at 477-78.

District and Appellate Courts around the country have followed the Supreme Court's logic in Boeing by awarding percentage fees based upon the maximum benefit available to the class rather than the amount actually paid to class members and/or claimants.[5] For example, in a case involving funds that would not revert back to defendants if unclaimed, the Second Circuit concluded that a District Court abused its discretion by calculating fees strictly based on the dollar amount paid to approved claimants, and expressly rejected the idea that basing an award on the benefit to the class would create a windfall for class counsel. See Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437 (2d Cir. 2007). The Second Circuit explained that "[t]he

---

[5]    The Fifth Circuit's opinion in Strong v. BellSouth Telecomm., Inc., 137 F.3d 844 (5th Cir. 1998) is not on point and certainly does not compel a different result. In Strong, class counsel had already been awarded more than the full lodestar value of their services and were seeking to apply a multiplier. The Fifth Circuit concluded that the District Court did not abuse its discretion by focusing on the $1.5 million of benefits actually distributed to the class rather than the $64 million estimated value of the settlement fund that included coupon-like benefits. Id. at 851-53. Despite acknowledging that in Boeing, supra, the Supreme Court had upheld the District Court's decision to consider the potential awards available rather than the actual claims made, the Fifth Circuit distinguished Boeing because there each member had an "ascertainable claim to part of [the] lump-sum judgment" that could be accessed "simply by proving their individual claims," whereas in Strong the agreement did not establish a fund and included the difficult-to-access "phantom" benefits rather than cash." Id. Thus, far from creating a categorical rule requiring courts to consider only the benefits actually distributed, Strong expressly noted that, unlike here, fees had already been awarded under the lodestar method and explained that "this course of action is not the usual one" and "under the atypical circumstances of this case, the district court did not abuse its discretion in considering the actual results of the settlement." Id. at 853.

entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."  Id.

The Eleventh Circuit reached a similar conclusion in Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1295 (11th Cir. 1999), a class settlement involving a fund where all unclaimed money would in fact revert to the defendant.  There, the Eleventh Circuit affirmed a District Court's award of 30% of the total recovery fund, and rejected the argument that the fee should only have consisted of 30% of the funds claimed, finding instead that the relief was real and available to the class.  Id. at 1296-97.

The Ninth Circuit has also applied Boeing, supra, to determine that—with respect to a class action settlement involving a common fund holding money that would revert to the defendant if unclaimed—the District Court erred by awarding class counsel a fee of only one third of the $10,000 actually claimed rather than a fee of one third of the entire $4.5 million settlement fund or a fee based on a lodestar calculation.  See Williams v. MGM – Pathe Communs. Co., 129 F.3d 1026, 1027 (9th Cir. 1997).

Although the Third Circuit has not expressly considered this issue, it has noted in dicta that it would be imprudent to apply a categorical rule discounting any portion of a common fund that went unclaimed by class members.  See In re Baby Prods. Antitrust Litig., 708 F.3d 163 (3d Cir. 2013).  The Court explained:

> There are a variety of reasons that settlement funds may remain even after an exhaustive claims process—including if the class members' individual damages are simply too small to motivate them to submit claims.  Class counsel should not be penalized for these or other legitimate reasons unrelated to the quality of representation they provided.  Nor do we want to discourage counsel from filing class actions in cases where few claims are likely to be made but the deterrent effect of the class action is equally valuable.

Id. at 178.

Finally, in a very recent opinion, the Sixth Circuit, relying on Boeing, supra, and the preceding precedent, has approved fees awarded based on the percentage method where the District Court measured the benefit to the class as the gross settlement amount, rather than the actual recovery.  See Gascho, supra.  The Sixth Circuit correctly observed that consumer class actions (and consumer MDL cases, like this one) "have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources."  Gascho, supra, at 287 (citing William B. Rubenstein, On What A "Private Attorney General" Is – And Why It Matters, 57 Vand. L. Rev. 2129, 2168 (2004) ("[C]lass counsel's] clients are not just the class members, but the public and the class members; their goal is not just compensation, but deterrence and compensation.")).  The Sixth Circuit thus reasoned that "[i]f we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small)."  Id. (citing Brian T. Fitzpatrick, Do Class Action Lawyers Make Too Little?, 158 U. Pa. L. Rev. 2043, 2047 (2010) (concluding that courts should be primarily concerned with "incentivizing class action lawyers to bring as many cost-justified actions as possible" because "the only function they serve is deterrence"); Hailyn Chen, Comment, Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Actions, 50 UCLA L. Rev. 879, 892 (2003) (arguing that courts should not limit attorneys' fees to a percentage of actual claims because doing so will often "result in a fee that is so small as to prevent class action attorneys from pursuing such cases, which serve primarily a regulatory and deterrent function")); see also Russ Herman & Stephen Herman, Practitioner's Notes: Percentage-of-Benefit Fee Awards In Common Fund Cases, 74 Tul. L. Rev.

2033, 2035 (June 2000) (noting that class actions are "specifically intended to encourage professionals who practice law to act as 'private attorneys general' for the vindication of legal rights by offering financial incentives to both litigants and attorneys to pursue otherwise non-economically viable claims") (citing Phillips Petroleum Co. v. Shutts, 472 US. 797, 809 (1985)). Accordingly, in approving the District Court's fee award, the Sixth Circuit specifically noted that "class counsel provided the valuable service of obtaining substantial relief for each class member who cared to invest the minimal time required to claim it and that in obtaining this relief, counsel undertook a substantial effort for which they deserve compensation." Id. at 288; see also Zink v. First Niagara Bank, N.A., 2016 U.S. Dist. LEXIS 179900, *22 (W.D.N.Y. Dec. 29, 2016) ("[I]n addition to providing just compensation, awards of attorneys' fees . . . serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.") (internal citation and quotation marks omitted).

Taken together, the preceding authority demonstrates that the percentage award method honors the critical policy considerations of class action and MDL consumer cases by awarding percentage fees based upon the total settlement amount available to claimants.  Failure to do so (i.e., awarding only a percentage of the amount actually recovered) operates as a disincentive to counsel, thus undermining the deterrent effect of such consumer cases.  In order to adequately compensate counsel who are willing to take on the significant risks and expenses in pursuing class action and consumer cases, and then simply want to be fairly compensated, the percentage method must be calculated by reference to the entire Settlement Amount available to claimants. See Newberg, § 15:70 ("[L]imiting counsel to a percentage of the class's actual recovery in a claims-made or reversionary fund situation is likely to disgorge significantly less money overall,

providing <u>defendants</u> with what might be characterized as a windfall.  All things being equal, it seems more defensible that class attorneys, rather than defendants, receive the excess, as they will likely reinvest it in future class action cases.") (emphasis in original).

> **2.**     **The Specific Facts And Circumstances Of This Case Weigh Heavily In Favor Of Awarding Aggregate Fees As A Percentage Of The Gross Settlement Amount.**

Awarding aggregate fees as a percentage of the gross Settlement Amount is particularly necessary in this case because the Consumer Settlement Agreement represented a nationwide settlement of hundreds of actions, most of which involved claims made under various consumer protection statutes.  In at least eighteen states, an award of reasonable legal fees and costs to the prevailing plaintiff is <u>required</u>,[6] while virtually all of the remaining jurisdictions <u>permit</u> such an award.[7]  And, given the important public policies involved, attorneys' fees awarded under those statutes generally are not limited by the amount of a plaintiff's recovery.  <u>See, e.g.</u>, <u>Justice v. Nassar, Inc.</u>, 2010 U.S. Dist. LEXIS 101138, *4-5 (E.D. Ky. Sept. 23, 2010) (monetary settlements often are small in consumer-protection cases, so the nuisance hurdle must be set low

---

[6]     <u>See</u>, <u>e.g.</u>, Ala. Code 8-19-10(a)(3); Alaska Stat. 45.50.537(a); Ark. Code Ann. 4-88-113(f) (2001); Cal. Civ. Code 1780(e); Colo. Rev. Stat. 6-1-113(2)(b) (2004); Haw. Rev. Stat. Ann. 480-13; Idaho Code 48-608(5); La. Rev. Stat. Ann. 51:1409(A) (2003); Mass. Gen. Laws ch. 93A, 9(4); Nev. Rev. Stat. 41.600(3)(b) (2003); N.H. Rev. Stat. Ann. 358-A-10 (1995); N.J. Stat. Ann. 56:8-19 (2001); N.M. Stat. Ann. 57-12-10(c); Okla. Stat. Ann. tit. 15, 761.1; S.C. Code Ann. 39-5-140(a) (1985); Tex. Bus. & Com. Code Ann. 17.50(d); Wis. Stat. Ann. 100.18(11)(b)(2); Wyo. Stat. Ann. 40-12-108(b) (2005).

[7]     <u>See</u>, <u>e.g.</u>, Conn. Gen. Stat. Ann. 42-110g(d); D.C. Code Ann. 28-3905(k)(1) (2001); Fla. Stat. Ann. 501.2105; Ga. Code 10-1-399(d) (providing for an award of reasonable attorneys' fees and costs unless the plaintiff rejects a reasonable settlement offer); Ind. Code 24-5-0.5-4(a); Kan. Stat. Ann. 50-634(e); Ky. Rev. Stat. 367.220(3); Me. Rev. Stat. Ann. tit. 5, 213(1-A) (providing for an award of reasonable attorneys' fees and costs unless the plaintiff rejected a settlement offer that was more favorable than the judgment); Md. Code Comm. Law 13-408; Mich. Comp. Laws 445.911(2); Minn. Stat. 8.31(3a); Mo. Rev. Stat. 407.025(1); Mont. Code Ann. 30-14-133(3); Neb. Rev. Stat. 59-1609; N.Y. Gen. Bus. Law 349(h), 350-3(3); N.C. Gen. Stat. 75-16.1(1) (authorizing an award of attorneys' fees where a defendant commits a willful violation and refuses to fully resolve the matter); N.D. Cent. Code 51-15-09 (requiring an award of attorneys' fees and costs where a defendant knowingly commits the violation); Ohio Rev. Code 1345.09(F) (requires knowing violation); 73 Pa. Stat. 201-9.2(a); R.I. Gen. Laws 6-13.1-5.2(d); Tenn. Code 47-18-109(e); Utah Code Ann. 13-11-19(5); Vt. Stat. Ann. tit. 9, 2461(b); Va. Code Ann. 59.1-204(B); Wash. Rev. Code 19.86.090; W. Va. Code 46A-5-104.

to avoid discouraging private enforcement); Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 164 (Cal. App. 4th Dist. 2006) ("[B]ecause this matter involves an individual plaintiff suing under consumer protection statutes involving mandatory fee-shifting provisions, the legislative policies are in favor of Graciano's recovery of all attorney fees reasonably expended, without limiting the fees to a proportion of her actual recovery."); Pelican Point Operations, L.L.C. v. Carroll Childers Co., 807 So. 2d 1171 (La. App. 1 Cir. Feb. 15, 2002) (noting that "La. Rev. Stat. 51:1409 mandates an award of reasonable attorney fees and costs to the person bringing the action") (emphasis added); Jones v. Gen. Motors Corp., 953 P.2d 1104 (N.M. Ct. App. 1998) (a purchaser of a defective automobile was entitled to recovery of costs and attorney fees associated with a successful lawsuit that he brought against the dealer under the Unfair Practices Act, where, although the purchaser was limited to a recovery of statutory damages under the Act, his recovery of attorney fees and costs were not limited to a percentage of his damages).

In consumer claims litigation, fee awards and consumer claims should not be focused strictly on the dollar value of the ultimate awards. Otherwise, the intended remedial goal of the statutes will be thwarted. See Alexander v. S&M Motors, Inc., 28 S.W. 3d 303, 305 (Ky. 2000) (citation omitted); see also Jones v. Gen. Motors Corp., supra, at 1109 (noting that public policy demands that attorneys be fully compensated in order to encourage them to bring cases under statutes designed to protect the public); Debra E. Wax, Annotation, Award of Attorneys' Fees in Actions Under State Deceptive Trade Practice and Consumer Protection Acts, 35 A.L.R.4th 12, 17 (1985) (observing that the purpose of awarding attorneys' fees and costs under similar statutes is "to encourage the maintenance of private actions, and perhaps in recognition of the fact that attorneys are unwilling to handle most consumer claims because the amounts recoverable are

often too small").  For the same reasons, the Aggregate Fees awarded in this case should not be limited based upon the amount of the claimants' actual recovery.

Further, the Fee Applicants should not, in effect, be punished simply as a function of the lower than anticipated claims recovered by the claimants.  It goes without saying that the level of claims participation is much lower than it would have been had this litigation been resolved much closer in time to the withdrawal of VIOXX from the market by Merck on September 30, 2004.  The settlement with Merck was not achieved until almost ten years later.  By the time the settlement was approved by the Court and the claims process was underway, nearly twelve years had elapsed.  Many of the users of VIOXX at the time the product was withdrawn from the market were in their 50s or 60s, and the ensuing decade almost certainly affected the level of claimant participation due to the death of many VIOXX users.  Other factors likely contributing to the lower recovery include the transitory nature of certain portions of the population and the absence of definitive pharmacy or other records enabling the claims process to reach a significant number of these claimants directly.  The Court will also recall that changes implemented with respect to the methods by which claimants were notified, through various news media, of the possibility of submitting claims, significantly raised the level of participation.  Despite that increased participation, the intervening ten years plus certainly had its effect on the level of participation – a factor which should be seriously considered by the Court.

C.    **The Requested Fee Percentage Is Reasonable And Fair.**

Pursuant to the express terms of the Consumer Settlement Agreement, the instant Aggregate Fee Petition seeks an award of 32% of the Settlement Amount.  That percentage is reasonable and fair.  The Fee Applicants performed work on behalf of consumer clients pursuant to contingency fee agreements that generally provided for attorneys' fees of 33-40% of the

recovery.  Such arrangements are common in the realm of contingency fee litigation.  Further, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."  4 Alba Conte & Herbert Newberg, <u>Newberg On Class Actions</u> § 14:6 at 551 (4th ed. 2002); <u>see also</u> <u>In re Bayou Sorrel</u>, <u>supra</u>, at *12 (awarding 36% of the gross amount recovered).  Thus, an award of 32% is not only reasonable, it is actually less than what the Fee Applicants could have commanded and received on the open market.

**D.    The Lodestar Cross-Check And *Johnson* Factors Further Support The Requested Fee.**

The lodestar is computed by multiplying the number of hours reasonably expended by the reasonable hourly rate.  <u>See</u> <u>Forbush v. J.C. Penney Co.</u>, 98 F.3d 817, 821 (5th Cir. 1996).  Upon a review of the twelve factors set forth in <u>Johnson</u>, <u>supra</u>, at 717-19, the Court may then apply a multiplier to the lodestar, adjusting the lodestar either upward or downward.  <u>See</u> <u>id.</u>  However, "the lodestar may be adjusted according to a <u>Johnson</u> factor only if that factor is not already taken into account by the lodestar."  <u>Transamerican Natural Gas Corp. v. Zapata P'ship, Ltd. (In re Fender)</u>, 12 F.3d 480, 487 (5th Cir. 1994).

The Court is thoroughly familiar with the following <u>Johnson</u> factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  <u>See</u> <u>Johnson</u>, <u>supra</u>, at 717-19; <u>see also</u> <u>Dell</u>, <u>supra</u>, at 644; <u>In re</u>

14

High Sulfur Content Gasoline Prods. Liab. Litig., 517 F.3d 220, 226 n.6 (5th Cir. 2008); In re

Vioxx Prods. Liab. Litig., 760 F. Supp. 2d 640, 650 (E.D. La. 2011).   Consideration of these

factors supports the Fee Committee's request for an award of attorneys' fees in an amount

consistent with the Consumer Settlement Agreement.

      1.     **Time And Labor Required; Time Limitation Imposed By The Client Or The Circumstances; The Preclusion Of Other Employment By The Attorney Due To Acceptance Of The Case.**

There can be little question that the successful prosecution and settlement of a nationwide

MDL consumer action such as this required significant time and labor for the counsel involved.

The Fee Affidavits attached as Exhibits B-M confirm that the Applicants have spent nearly

18,000 hours working on these consumer claims since its inception.[8]   The total lodestar for all

Applicants, applying an average billing rate of $443.29 per hour for all common benefit time,

yields a figure in excess of $7,900,000.[9]   An award of the remaining portion of the Settlement

Amount ($7,174,419.09) thus results in a negative multiplier 0.89 of the lodestar amount.   While

multipliers in the range of one to four are not uncommon in cases like this, see In re Combustion,

Inc., supra, 968 F. Supp. at 1133, the negative multiplier obtained by the rough lodestar cross-

check in this case provides strong additional support for approving the attorneys' fee request.

In addition, each of the Applicants seeking an award under the Aggregate Fee Petition

pursued litigation either through the MDL process or through separate actions which were

---

[8]    Importantly, the 18,000 hours expended by counsel is a conservative estimate, as the Fee Affidavits were submitted nearly a year ago in January 2016, and at least some of them may require updating before final submission and/or consideration.   That number also does not include the considerable time that the five members of the Fee Committee and its Chair have devoted to their obligations as Committee members, which information will be provided to the Court separately.

[9]    Although, like here, the Court was not provided with the individual billing rates by the Fee Committee members, the Court nonetheless previously calculated a "rough lodestar cross-check" using an average billing rate of $443.29 per hour for the attorneys in the companion Vioxx personal injury litigation.   See In re Vioxx, supra, at 660.   As in that case, the Fee Applicants here "come from states across the country. Thus a more national rate is the appropriate pole star to guide the Court." Id.   A similar, if not higher, rate is appropriate in this case given that the Court's prior determination was made more than six years ago.

litigated outside the MDL process in an effort to obtain recompense for the consumers who used the VIOXX product unknowing of its potential dangers.  Most of these firms are small to medium sized firms who undertook such representation on a contingent fee basis, paid their own costs, and prosecuted these cases for many years without any compensation.  Importantly, those same small and medium-sized firms labored against a large multi-national corporation with a nearly unlimited budget.  During this decade-plus time period, the Fee Applicants' firms were precluded from taking other work to the extent that work was done on the consumer claims pursued by them.

**2.      The Novelty And Difficulty Of The Questions Involved; The "Undesirability" Of The Case.**

This litigation presented novel and difficult issues on a variety of levels.  Beyond the complexity of the substantive claims, there were highly disputed issues at every turn.  Complicated and extensive class certification issues arose in many jurisdictions.  And, as this Court previously observed, "the sheer magnitude of the Vioxx litigation posed its own legal, logistical, and managerial challenges."   In re Vioxx, supra, at 656.   However, despite the complexity and difficulty of this litigation, it did not present any "undesirability," as that term is used within the Johnson framework.  See Johnson, supra, at 719.

**3.      The Skill Requisite To Perform The Legal Service Properly; The Experience, Reputation, And Ability Of The Attorneys.**

The skill and experience of the Fee Applicants is demonstrated by the superior result achieved in bringing thousands of complex consumer claims cases to a single successful resolution.  The Fee Applicants exercised substantial skill and ability through intensive discovery and pretrial efforts, as well as briefing and arguing discovery and dispositive motions, which contributed to a global settlement.  It must be remembered that while all of the Fee Applicants

16

pursued these complex consumer claims without compensation, the series of firms retained and paid by Merck were compensated at some of the highest hourly rates paid to litigation counsel. In other words, despite facing some of the highest paid and most well-respected opposition within their field, the vigorous pursuit of the common claims placed enough pressure on Merck to obtain a $23 million settlement for the benefit of the claimants.

### 4.      The Customary Fee; Whether The Fee Is Fixed Or Contingent.

"These factors primarily deal with the expectation of plaintiffs' attorneys at the outset of the case when measuring the risks involved and deciding whether to accept the case." Turner v. Murphy Oil USA, Inc., 472 F. Supp. 2d 830, 866 (E.D. La. 2007) (citation omitted).  In other words, these factors effectively "seek to reward the attorney for accepting the risk and achieving successful results."  Id.  Here, the Fee Applicants took on considerable risk in accepting these cases.  That risk is partially accounted for in the contingent fee agreements that nearly all of the Fee Applicants employed and which generally provided for 33—40% of the recovery.  Those percentages mirror the customary contingent fee in similar cases, and the Fee Applicants should be rewarded for accepting the risk inherent in this case and for obtaining successful results.

### 5.      The Amount Involved And The Results Obtained.

The "most critical factor in determining the reasonableness of a fee award is the degree of success obtained." In re Heartland Payment Sys., 851 F. Supp. 2d 1040, 1085 (S.D. Tex. 2012) (citing Farrar v. Hobby, 506 U.S. 103, 114 (1992); Migis v. Pearl Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998)).  The Fee Applicants contributed to a favorable and meaningful global resolution of complex nationwide consumer claims against Merck.  Through their diligence and determination, a $23 million settlement for consumers across the country was achieved. Notwithstanding the less than optimal actual recovery by those claimants, the $23 million

common fund was a meaningful benefit for the prospective claimants and should be considered a highly successful result.  The <u>Manual for Complex Litigation</u> explains that "the factor given the greatest emphasis is the <u>size of the fund created</u>, because 'a common fund is itself the measure of success . . . [and] represents the benchmark from which a reasonable fee will be awarded.'"  <u>Id.</u> at § 24.121, p. 191, n.580 (quoting 3 <u>Newberg</u> § 14-4 (3d ed. 1992) (emphasis added)).

### 6. The Nature And Length Of The Professional Relationship With The Client.

The Fee Applicants submit that this factor is neutral as it relates to the requested percentage because there are few, if any, longstanding client relationships with the claimants.

### 7. <u>Awards In Similar Cases.</u>

Courts around the country routinely award attorneys' fees based upon a percentage of the common fund ranging anywhere from 10 to 50%.  <u>See, e.g.</u>, <u>Walls v. JPMorgan Chase Bank, N.A.</u>, 2016 U.S. Dist. LEXIS 142325, *15-16 (W.D. Ky. Oct. 14, 2016) (noting that "[t]he Sixth Circuit has permitted fee awards ranging from 10 to 50 percent") (citations omitted); <u>Stagi v. AMTRAK</u>, 880 F. Supp. 2d 564, 571 (E.D. Pa. 2012) ("[T]his District's fee awards generally range between nineteen and forty-five percent of the common fund[.]") (citations omitted).  One District Court within the Fifth Circuit, relying on opinions of other courts and the available studies of class action attorneys' fees awards, concluded that "attorneys' fees in the range from 25% to 33.34% have been routinely awarded in class actions."  <u>Shaw v. Toshiba Am. Info. Sys.</u>, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000).  The Court further noted empirical studies demonstrate that fee awards in class actions average around one-third of the recovery, regardless of whether the percentage method or the lodestar method is used.  <u>Id.</u>; <u>see also</u> <u>Newberg</u> § 14:6 at 551.  A sampling of cases from the Fifth Circuit supports the <u>Shaw</u> Court's conclusions.  <u>See, e.g.</u>, <u>In re Shell Oil Refinery</u>, 155 F.R.D. 552 (E.D. La. 1993) (18% of $170 million); <u>In re</u>

Combustion, 968 F. Supp. 1116 (W.D. La. 1997) (36% of $127 million); In re Lease Oil Antitrust Litig. (No. II), 186 F.R.D. 403 (S.D. Tex. 1999) (25% of more than $190 million); In re Bayou Sorrel, supra, at *12 (36% of gross recovery).  The average 33% recovery remains true outside of the Fifth Circuit as well.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 2009 U.S. Dist. LEXIS 27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (holding that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit" and collecting cases); Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) (an "award of one-third of the fund for attorneys' fees is consistent with fee awards" by district courts in the Third Circuit).

The Settlement Agreement in this case specifically contemplated an award of attorneys' fees and costs[10] equal to 32% of the Settlement Amount.  That percentage is well within the range of awards approved in similar cases, both in this Circuit and around the country.  Further, a 32% award is in fact lower than the average 1/3 recovery established by empirical studies.

All of the claimants that participated in the Settlement that were entitled to be compensated were paid settlement funds in accordance with the Settlement Agreement.  Their recoveries were not reduced to pay any common benefit costs or attorney's fees.  Further, Class Members' settlement funds were not reduced to pay Notice or the claims administration process.  The Settlement Agreement and all of its terms were approved by the Court.  Any objections should have been made prior to final approval and the Fairness Hearing.  Presumably, it was determined that the Notice, claims program and settlement was reasonable, adequate, sufficient and appropriate.

---

[10] Accounting for the previously reimbursed costs in the amount of $185,580.91, an award of the remaining portion of $7,360,000 would translate to an attorneys' fee award closer to 31%.

## **CONCLUSION**

The Fee Applicants spent thousands of hours and hundreds of thousands of dollars over the course of nearly a decade – all in an effort to obtain redress for consumers who used dangerous products marketed to the public without full disclosure of the possible risks.  That commitment ultimately resulted in a nationwide settlement with a $23 million common fund from which individual claimants could be compensated.  But for the skill, effort, and dedication of the counsel involved, the claimants, like most other wronged consumers, would have received no compensation whatsoever because consumer claims virtually always involve amounts too small to justify individual pursuit.

As described above, and consistent with applicable law, the Fee Applicants are entitled to an award of their reasonable attorneys' fees.  The Settlement Agreement expressly contemplates an award of fees and costs equal to 32% of the $23 million common fund, and the Agreement confirms that Merck will not oppose the Applicants' fee request up to that amount.  See Zink, supra, at *12 ("[A]n agreement not oppose an application for fees up to a point is essential to complete of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.") (citations omitted).  Because the entire amount of that common fund represents a real and tangible benefit for the consumers who used Vioxx, the Court should award the Fee Applicants the remainder of the 32% (less the previously paid costs) for their fees.  Such an award is fair and reasonable and consistent with results in similar common fund cases as well as the underlying policy considerations of class action consumer claims.  The reasonableness of this request is further confirmed by application of the Johnson factors and the lodestar cross-check.[11]

---

[11]    However, if the Court concludes that an amount less than the entire remaining portion of the 32% of the common fund should be awarded as attorneys' fees, the Fee Applicants specifically request an opportunity

Based upon the foregoing, the Fee Committee respectfully recommends that the Court set a fee award amount that will accomplish these goals and result in a fair resolution for the Applicants who have requested a common benefit fee award.

Respectfully submitted,

Dated: January 20, 2017

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 165, Co-Lead Class Settlement Counsel*
*Fee Committee Chair*

COMMON BENEFIT FEE AND COST
COMMITTEE:

/s/ Richard A. Getty
RICHARD A. GETTY
Fee Committee Member

/s/ James P. Lyle
JAMES P. LYLE
Fee Committee Member

/s/ Dawn M. Barrios
DAWN M. BARRIOS
Fee Committee Member

/s/ Elizabeth J. Cabraser
ELIZABETH J. CABRASER
Fee Committee Member

---

to argue that any portion not awarded should be made available as a second distribution to claimants and/or for charitable purposes, such as a cy pres distribution.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittman, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 20th day of January, 2017.

/s/ Leonard A. Davis
Leonard A. Davis