IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: VIOXX<br>PRODUCTS LIABILITY LITIGATION<br><br>This Document relates to All Cases | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MDL NO. 1657<br><br>SECTION: L<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE KNOWLES |

**MERCK'S RESPONSE TO THE COMMON BENEFIT FEE AND COST
COMMITTEE'S AGGREGATE FEE PETITION**

Defendant Merck Sharp & Dohme Corp. ("Merck") respectfully submits this brief response to the aggregate fee petition filed by the Common Benefit Fee and Cost Committee (the "Committee").

The Committee's petition seeks an award of fees in the amount of $7,174,419.09 – an amount that dwarfs the approximately $700,000 actually claimed by class members. This request is rooted in the mistaken premise that plaintiffs' counsel's recovery (whether under a percentage or lodestar analysis) should be measured against a purported "benefit" to the class of $23 million – ostensibly because the agreement deems $23 million to be the value of the settlement. (*See* Fee Pet. at 6, 17.)

That is not what the agreement says. Instead, it provides for "a *maximum* payment by Merck of *up to* $23 million." (Settlement Agreement § 2.1 (emphases added).) It further provides that counsel "may apply to the Court for an award of fees and expenses . . . in a total aggregate amount . . . not to exceed 32% of the *maximum of up to* $23 million Settlement Amount (or an aggregate *maximum* amount of up to $7,360,000)." (*Id.* § 14.1 (emphases added).) In other words, the agreement did not define a fixed settlement amount but rather set $23 million as the "maximum" of Merck's potential obligation and further provided that

1220932v1

plaintiffs' counsel could apply for fees not to exceed 32% of the amount Merck actually paid. Consistent with these provisions, this Court previously expressed its "concern" at the fairness hearing for the settlement about how the claims process would play out and expressly decided to reserve resolution of that question until it could "take a look at what the situation is." (Tr. 20:12-18, Dec. 13, 2013.) And after the claims process ran its course, the settlement agreement never resulted in the creation of a fund worth $23 million; instead, based on claims made by class members, the amount paid out was only $700,000.

Plaintiffs' counsel contend that the case law directs the Court to treat a claims-made settlement like the one at issue here as though the maximum amount had been reached. (*See* Fee Pet. at 6-13.) Not so. For one thing, plaintiffs' argument is contrary to the language of the agreement. As just explained, the agreement authorizes a request for fees "not to exceed 32%" based on the actual "payment by Merck." Although the agreement acknowledges that this payment could be "up to" $23 million, that amount was not paid here. Because the settlement agreement speaks directly to the maximum amount plaintiffs may request, the agreement should be construed consistent with its terms. *See, e.g.*, *Republic Ins. Co. v. Hous. Auth. of New Orleans*, No. 08-4748, 2013 WL 1897135, at *4-6 (E.D. La. May 2, 2013) (explaining that settlement agreements are interpreted in accordance with contract interpretation principles, which provide that contracts should be enforced in accordance with "'clear and explicit'" language that leads "'to no absurd consequences'") (citation omitted).

Even absent such language, plaintiffs' argument fails as a matter of law. Plaintiffs argue that the Court must look to the $23 million "maximum" theoretical amount because this amount was a de facto "common fund" that reflected a benefit to the entire class, even if most of the amount went unclaimed, citing the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444

U.S. 472 (1980). (*See* Fee Pet. at 6-7.) To be sure, in *Boeing*, the Supreme Court concluded that the district court should have based attorneys' fees on the amount recovered on behalf of the class, regardless of what amount was actually claimed. But critical to that holding was the fact that the plaintiffs had "recovered a ***determinate fund*** for the benefit of every member of the class" and that the judgment "award[ed] the class a sum certain." 444 U.S. at 479 (emphasis added). It was this characteristic of the settlement – the payment of a fixed amount in advance of paying out individual claims – that allowed the Court to conclude that the common benefit on which fees should be based was the entire recovery and not the amount actually claimed. Indeed, the Court expressly stated: "we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine." *Id.* at 479 n.5.

That proviso was critically important, as the U.S. Court of Appeals for the Fifth Circuit clarified in *Strong v. BellSouth Telecommunications Inc.*, 137 F.3d 844 (5th Cir. 1998). That case, like this one, involved the resolution of a class action sounding in consumer fraud by way of an agreement that did not create the "sum certain" type of common benefit fund at issue in *Boeing*. The underlying allegation was that BellSouth had violated antitrust laws by signing up all of its customers for an "inside wire maintenance service plan" (referred to as an "IWMS plan") unless they affirmatively opted out, which was alleged to result in a monopoly by BellSouth of the IWMS plan. *Id.* at 847. The settlement plan provided not for a fixed payment of a sum certain but rather allowed class members to choose between continuing with the plan (in the event that they actually did desire the IWMS plan) or discontinuing the plan and receiving a credit. *Id.*

The settlement agreement would have guaranteed the plaintiffs' counsel $6 million total in fees – $1.5 million in each of *Strong* and three related cases pending in other federal courts. The plaintiffs' counsel defended the request by arguing to the district court that "if every class member were eligible for and elected to receive the credit, BellSouth's liability would amount to approximately $64 million – a sum which plaintiffs' counsel refer[red] to as a $64 million 'common fund.'" *Id.* The district court indicated its concern with the guaranteed fee amount based on its concern that "the $64 million 'common fund' figure was illusory." *Id.* at 848. In response, the parties modified the agreement to give the court discretion over how much to award the plaintiffs' attorneys, with the proviso that any aggregate fee was not to exceed $6 million. After payments were made, and the court concluded that "the actual distribution of class benefits . . . totaled $1,718,594, an amount drastically less than the $64 million that plaintiffs' counsel claimed it had obtained for the class," the district court decided not to award any fees above the $4.5 million in fees that the attorneys had already collected from their three related suits. *Id.* at 851.

On appeal, the plaintiffs' counsel challenged this decision as improper in part because it failed to credit them with creating a benefit worth $64 million to the class. In rejecting this argument, the Fifth Circuit explained that "unlike *Boeing*, **this case does not involve a traditional common fund**." *Id.* at 852 (emphasis added). "In contrast to *Boeing*, in this settlement **no money was paid into escrow or any other account** – in other words, **no fund was established at all in this case**." *Id.* (emphases added). Moreover, the settlement presented class members with a choice of essentially affirming the value of the IWMS plan by continuing with it as an alternative to claiming a credit. For these reasons, coupled with the fact that class members had to prove eligibility for compensation, the Fifth Circuit concluded that "the value of the

4

settlement was contingent," *id.*, and "that the district court acted within its discretion in considering the actual claims awarded," especially in light of the district court's concern that the proffered $64 million number was "illusory." *Id.* at 852-53.

*Strong* applies with full force here. As in that case, there was no "traditional common fund" in this settlement. Instead, there was an agreement that Merck would be liable up to a certain amount, to be ascertained based on the number and nature of claims made. For that reason, Merck was not obligated to deposit $23 million into an "escrow or any other account." In addition, and again like *Strong*, many class members received full value for their Vioxx prescriptions and thus (like the class members who opted to continue with their IWMS plans in *Strong*) may have intentionally decided to affirm the value of their Vioxx prescriptions by not seeking compensation. The Court recognized as much in preliminarily approving the settlement, when it stated that class members "face significant difficulties in proving the substance of their claims, including that they sustained actual economic harm" and that "these Class Members largely include those who have sustained no adverse effects from Vioxx and continued to receive satisfactory benefits for their muscular complaints." (ECF No. 64,784 at 20-21.) Given these considerations, it is clear – and has been clear from the outset – that the value of this settlement has always been "contingent" and does not fit within *Boeing*'s framework.

Plaintiffs' counsel attempt to distinguish *Strong* in a footnote on the ground that counsel there had already been awarded $4.5 million in fees in their other three cases. (Fee Pet. at 7 n.5.) But Merck has not taken the position that plaintiffs' counsel should receive ***zero*** fees for this settlement. It has only argued, consistent with *Strong*, that an important factor to consider for purposes of the 32% cap and the lodestar is that the amount paid to class members is the relevant benefit obtained for the class.

5

Plaintiffs' other authorities do nothing to undermine the Fifth Circuit's conclusion in *Strong*. For example, plaintiffs cite *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) (Fee Pet. at 7), but that case involved a traditional common fund that was paid out in its entirety – partly to class members and partly to third parties under a cy pres distribution. *See* 473 F.3d at 437-38. Plaintiffs also cite *Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) and *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) (per curiam), for the proposition that courts have looked to the entire settlement fund even when remainders would revert to the defendant (Fee Pet. at 8), but in those cases, too, the settlements created fixed common funds of a "sum certain," unlike here. *See Waters*, 190 F.3d at 1295-96 (distinguishing *Strong* on the ground that the settlement in *Waters* established a $40 million common fund); *Williams*, 129 F.3d at 1027 (noting the existence of a $4.5 million fund and settlement language expressly providing for recovery based on the $4.5 million number).

Plaintiffs' counsel also cite decisions in *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013), and *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016), *pet. for certiorari filed*, for the proposition that their fee must be calculated based on the theoretical maximum recovery in order to ensure that they are adequately compensated and that this class action advances policy concerns such as deterrence. (Fee Pet. at 8-9.) These arguments are not well founded. Plaintiffs' counsel's citation of the Third Circuit's concern about adequately compensating counsel is incomplete because, immediately following that part of the decision quoted by plaintiffs' counsel, the Third Circuit makes clear that district courts have the discretion ***not*** to blindly apply some percentage of recovery to a common fund where, for example, there is a large gap between "the entire settlement amount" and the aggregate value of "individual distributions." 708 F.3d at 178-79. And in *Gascho*, the ostensible policy aims

served by consumer protection statutes were cited only as a valid factor to consider in setting a fee award, and in the end, the court affirmed a fee award that *rejected* the "available benefit" of $15,500,430 secured by a class settlement as the basis for calculating fees where the value of the claims made totaled only $1,593,240.  822 F.3d at 274-76, 288.

In any event, to the extent the decisions on which plaintiffs' counsel rely are in tension with the Fifth Circuit's conclusion in *Strong*, they are not binding and cannot be followed.  *See* 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1803.1 & nn.43-44 (3d ed.) (expressly noting that there is a division in authority on this issue and that the Fifth Circuit has taken a different approach from the one taken by the Second, Ninth and Eleventh Circuits).

In short, plaintiffs' entire petition rests on the erroneous premise that the settlement agreement created a common fund for the class that should be valued at $23 million.  That premise is wrong as a matter of straightforward contract interpretation and Fifth Circuit precedent.  Accordingly, the Court should reject plaintiffs' counsel's petition and base any fee award on the actual value provided to class members of approximately $700,000.[1]

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiffs' counsel's request for fees to the extent it is premised on the "maximum" amount of $23 million specified in the settlement agreement.

---

[1] Merck anticipates that plaintiffs' counsel may argue that Merck is not permitted to challenge their fee application based on the "clear sailing" provision of the agreement, which states that "Merck agrees not to oppose an application for fees and litigation expenses consistent with that limitation" – i.e., the limitation of "32% of the maximum of up to $23 million Settlement Amount (or an aggregate maximum amount of up to $7,360,000)." (Settlement Agreement § 14.1.)  Any such argument is clearly wrong.  Because Merck's argument is that plaintiffs *have* exceeded the limitation set forth in § 14.1, the clear-sailing provision does not bar this objection.

Respectfully submitted,

By: */s/ Dorothy H. Wimberly*
    Phillip A. Wittmann, 13625
    Dorothy H. Wimberly, 18509
    STONE PIGMAN WALTHER
    WITTMANN L.L.C.
    546 Carondelet Street
    New Orleans, Louisiana 70130
    Phone: 504-581-3200
    Fax:   504-581-3361
    *Defendants' Liaison Counsel*

    —and—

    Douglas R. Marvin
    Eva Petko Esber
    M. Elaine Horn
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    Phone: 202-434-5000
    Fax:   202-434-5029

    *Attorneys for Merck Sharp & Dohme Corp.*

1220932v1

**CERTIFICATE OF SERVICE**

      I further certify that the above and foregoing has been served on Liaison Counsel, Russ Herman and Phillip Wittmann, by U.S. Mail and e-mail or by hand delivery and e-mail, upon Liaison Counsel Ann Oldfather by e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre-Trial Order No. 8C, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657, on this 7th day of February, 2017.

                        */s/ Dorothy H. Wimberly*
                        Dorothy H. Wimberly, 18509
                        STONE PIGMAN WALTHER WITTMANN L.L.C.
                        546 Carondelet Street
                        New Orleans, Louisiana  70130
                        Phone:  504-581-3200
                        Fax:     504-581-3361
                        dwimberly@stonepigman.com

                        Defendants' Liaison Counsel