UNITED STATES COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This Document relates to All Cases | * | |
| | * | MAGISTRATE JUDGE KNOWLES |

REPLY MEMORANDUM IN SUPPORT OF AGGREGATE FEE
PETITION PURSUANT TO PRE-TRIAL ORDER 59(A)
BY THE COMMON BENEFIT FEE AND COST COMMITTEE

The Common Benefit Fee and Cost Committee (the "Fee Committee"), consistent with the Court's Pre-Trial Order No. 59(A) (PTO 59(A)) [Rec. Doc. 65311], filed its Aggregate Fee Petition ("Fee Petition") [Rec. Doc. 65491] on January 20, 2017, seeking an award of fees in the amount of $7,174,419.09.  Two Objections have been filed – one by Ms. Geneva Meloy (Notice Of Objection To Motion For Attorney's Fees ("Meloy Objection")) [Rec. Doc. 65497], and one by Defendant Merck, Sharp & Dohme Corp. ("Merck") (Merck's Response To The Common Benefit Fee And Cost Committee's Aggregate Fee Petition ("Merck's Response" or "Merck's Objection")) [Rec. Doc. 65503] (collectively, "the Objections").  In response to the Objections and in further support of its Fee Petition, the Fee Committee respectfully states as follows:

**INTRODUCTION**

What is the fair and reasonable amount of attorneys' fees that should be awarded to the Fee Applicants considering that substantial hours in excess of 10,000 hours of attorney time[1]

---

[1] The Certified Public Accounting firm of Phil Garrett, in accordance with Pre-Trial Order 59(A), reviewed and compiled time submissions submitted by common benefit fee applicants pursuant to Pre-Trial Order 6. Mr. Garrett approved 9,631.99 total hours through January 9, 2017 from eight law firms (note twelve different law firms submitted Fee Affidavits and additional hours were noted to have been incurred).  See Fee Petition, Footnote 1 and Exhibit A.

spent prosecuting claims against Merck both in the MDL and various other jurisdictions and successfully negotiating a $23 million nationwide settlement on behalf of the consumer class over the course of more than a decade have been reviewed and approved by the Court appointed Certified Public Accounting firm of Phil Garrett?  Merck says $225,000, which yields an hourly rate of $22.50 per hour.[2]  Beyond being patently unfair and unreasonable, such a miniscule award would be unprecedented and would undoubtedly have a chilling effect on counsel considering whether to file similar class actions in the future.

The Fee Committee's Petition stands in stark contrast to the absurd result endorsed by Merck.  Consistent with the express terms of the Settlement Agreement, the Fee Committee seeks aggregate fees (inclusive of the previously awarded and disbursed costs) in the amount of $7,360,000.  That amount is objectively reasonable, supported by relevant authority, appropriate under the specific facts of the case, and consistent with the important public policies underpinning consumer class actions.  Only two Objections[3] opposing the Fee Petition have been filed – a fact that supports approving the request.  Nonetheless, both Objections plainly suffer from fatal flaws.  First, both Objections should be wholly disregarded by the Court – Merck's Objection is precluded by the plain terms of the Settlement Agreement and Ms. Meloy lacks

---

[2] Merck contends that the Fee Committee should receive a maximum of 32% of only the <u>actual</u> claims paid out to Class Members (approximately $700,000), rather than the entire Settlement Amount of $23 million. For reasons that should be obvious, Merck declines to do the rest of the math.  However, taking 32% of $700,000 yields $225,000 – resulting in an hourly rate of $22.50 for the roughly 10,000 approved hours spent by the Fee Applicants.  The total figure is several thousand more hours when the hours contained in all Fee Applicant Affidavits are considered.  The 10,000 hours represents a conservative figure in reality.  It strains credulity to argue that $22.50 per hour is a reasonable rate for the lengthy and complex work of the quality performed by Plaintiffs' Counsel in this matter.  Query:  What amount was paid to Merck's counsel – both per hour and over the decade plus period of litigation?

[3] Also before the Court is the Motion of Ann B. Oldfather, Esq. in which she requests the Court to establish common benefit fee and cost award procedures in connection with the unreimbursed common benefit work on the personal injury cases.  [<u>See</u> Rec. Doc. 65498.]  The Fee Committee takes no position on the substance of Ms. Oldfather's Motion other than to note that it relates to a completely separate issue.  The sole task at hand is for the Court to award reasonable attorneys' fees to the Fee Applicants for their work on the consumer class action settlement.

standing. Second, both Objections fail on the merits. For these reasons, and as explained below, the Court should reject both Objections and award the full amount of fees sought by the Fee Committee.

## ARGUMENT

### I. THE COURT SHOULD DISREGARD THE OBJECTIONS.

#### A. Merck's Objection Violates The "Clear Sailing" Provision.

The plain language of the Settlement Agreement precludes Merck from objecting to a request for attorneys' fees up to a certain specific dollar amount. Although the Fee Petition submitted by the Fee Committee seeks an award of attorneys' fees that does not exceed the agreed upon limit, Merck has nonetheless objected to the Fee Petition.

Section 14.1 of the Settlement Agreement provides that Counsel for the Settlement Class "may apply to the Court for an award of fees and expenses to be paid from the Common Fund in a total aggregate amount for all such counsel not to exceed 32% of the maximum of up to $23 million Settlement Amount (or an aggregate maximum amount of $7,360,000)." Settlement Agreement § 14.1. The next sentence states that "Merck agrees not to oppose an application for fees and litigation expenses consistent with that limitation." Id. In other words, Merck expressly agreed not to object to a fee request that seeks an aggregate maximum amount of $7,360,000.

Unfortunately, Merck has done precisely what it agreed not to do.[4] Merck claims throughout its Response that the Settlement Agreement only permits the Fee Applicants to "apply for fees not to exceed 32% of the amount Merck actually paid." Merck Objection at p. 2

---

[4] Apparently recognizing the contradiction between its express agreement and its Objection, Merck offers a conclusory statement in a footnote purporting to justify its current tactic. See Merck Objection at p. 7 n.1. Merck states that it "anticipates" that Plaintiffs' Counsel may argue that Merck is in violation of the clear sailing provision. "Any such argument is clearly wrong," according to Merck, "[b]ecause [its] argument is that plaintiffs have exceeded the limitation set forth in § 14.1[.]" Id. (emphasis in original).

3

(emphasis added). But nowhere in the Settlement Agreement is the potential award of attorneys' fees tied to or limited by the amount of claims actually paid by Merck. Despite paying lip service to basic canons of contract interpretation, Merck is actually engaging in a highly disingenuous game of semantics. Merck's argument hinges on the word "maximum" being used as an adjective (e.g., maximum amount), but as used in § 14.1, "maximum" is a noun. Understood properly, counsel may seek an award "not to exceed 32% of the <u>maximum</u>" (i.e., $23 million).[5] The parenthetical at the end of that sentence confirms this interpretation and simply provides the product of the stated equation – 32% of $23 million is $7,360,000. Taken together, the plain meaning of the Section 14.1 provides that the Fee Applicants can seek an award of up to $7,360,000 without encountering an Objection from Merck.

Merck bargained for and received these express terms regarding the amount available to pay attorney fees and expenses and is bound to that agreement. It is Merck who is obligated to pay the fees – not the class members. What Merck agreed to is <u>res judicata</u> irrespective of how many class members participated in the actual class process and represents a huge benefit to Merck. Now, after having received all the class wide releases and benefits of the settlement, it tries to avoid paying that for which it bargained. Not one word of Merck's present complaints were uttered when the settlement was approved by the Court or at any time thereafter. Merck's belated words of protest should now be seen for what they really are and should be rejected out of hand. Merck's failure to abide by the express terms of the Agreement compels the wholesale rejection of its Objection. Accordingly, because Merck expressly agreed not to challenge a request for fees up to 32% of the maximum Settlement Amount (and because the Fee Petition

---

[5] Obviously, "maximum" and "actual" are not the same thing. Of course, while Merck could have drafted, or at least proposed, language limiting attorneys' fees to a percentage of the actual claims paid to the class members, it did not.

does not seek fees in excess of that amount), Merck's present Objection should be disregarded by the Court.

### B. Ms. Meloy Lacks Standing To Object To The Requested Fee Award.

Ms. Meloy has filed her Objections pro se, although she specifically notes that her personal attorney, George W. Cochran,[6] helped her draft that document. However, Ms. Meloy has failed to demonstrate that she is actually a member of the class. She never filed a claim or received a benefit from the Program to disburse settlement payments to class members. And there is no evidence in the record – only Ms. Meloy's unverified statement – that she was even eligible to be a class member. Further, because the claims process has concluded and all payments to eligible Class Members have been made, Ms. Meloy's objection will have no impact, and therefore no conceivable benefit, upon the Class as a whole. In other words, her Objections to the Fee Petition, even if upheld by the Court, will not result in additional money or distributions being made to Class Members and instead will simply revert to Merck. See Settlement Agreement § 3.6 ("In the event there is any residual amount in the Common Fund Escrow Account after the payment of all valid claims, attorney fees and expenses, . . . the residual amount shall be returned to Merck with any interest accrued with respect to such residual amount.").

### II. THE OBJECTIONS LACK MERIT AND SHOULD BE REJECTED.

#### A. Merck's Objection Ignores The Plain Language Of The Settlement Agreement.

Merck's Objection is premised almost entirely upon its disingenuous characterization of the Settlement Agreement. Merck claims that the authorities cited by the Fee Committee in its

---

[6] The Court will recall that Ms. Meloy objected to the preliminary settlement [Doc. Rec. 64712] but only challenged the amount of attorneys' fees – which had yet to be awarded. Nonetheless, she pursued an appeal to the Fifth Circuit with the help of Mr. Cochran. That appeal was voluntarily dismissed on February 23, 2015, shortly before the scheduled oral argument. [See Rec. Doc. 65172, at p. 7].

5

Petition are either inapplicable or distinguishable because the Settlement Agreement in this case did not actually create a common fund. Put simply, this argument cannot be squared with the plain language of the Settlement Agreement.

Section 2 of the Agreement is literally entitled "**COMMON FUND**." The first line under that heading states that "[t]he Parties have agreed to a Common Fund settlement with a maximum payment by Merck of up to $23 million (the "Settlement Amount") . . . ." See Settlement Agreement, § 2.1 (emphasis added). Indeed, there are no less than 16 specific references to the "Common Fund" in the Agreement. That number does not include the 13 separate references to the "Common Fund Escrow Account." See generally id. § 3. Section 3 of the Agreement, in fact, required Merck to make an initial deposit of $6 million into the Common Fund Escrow Account and obligated Merck to make additional contributions in order to satisfy its obligation to pay claims and fees above that amount. See Section 3.5. Merck, of course, makes no reference to any of these provisions. Nor does Merck offer any explanation as to why it repeatedly and consistently described this as a common fund settlement. It is therefore difficult, if not impossible, to reconcile Merck's current argument with the express terms of the Agreement and the obvious intent of the parties.

Every member of the Fee Committee had the same expectation and understanding of the Agreement – that is, the Settlement created a common fund with a maximum payout of $23 million and from which the claims of Class Members as well as attorneys' fees would be deducted. That understanding is further confirmed by the separate agreement entered into between and among Merck, the Plaintiffs' Steering Counsel ("PSC"), and The Getty Law Group, PLLC ("GLG"). That agreement, memorialized by a letter dated November 7, 2013, expressly states that neither Merck nor the PSC "would oppose an award to [GLG] of [attorneys'] fees . . .

6

from the common benefit fund of the existing settlement agreement[.]" See Letter dated November 7, 2013 (emphasis added), attached as Exhibit A, and filed under seal.  Merck's agreement not to oppose GLG's individual fee request in an amount substantially more than Merck contends is an appropriate entire fee for all Fee Applicants only makes sense when read in conjunction with the establishment of a $23 million common fund and when taking into consideration Merck's corresponding agreement not to contest an aggregate fee award of no more than $7,360,000.  In the end, Merck's contention that the Settlement Agreement did not create a common fund fails as a matter of law and must be rejected as directly contrary to the express terms of the Agreement.

      **B.**    **Merck's Efforts To Distinguish Authority Cited By The Fee Committee Are Unconvincing.**

Notwithstanding Merck's violation of its agreement not to object to the fee request and its tortured interpretation of the Settlement Agreement, Merck's effort to distinguish the authority cited in the Fee Committee's Fee Petition is unconvincing. The thrust of Merck's Objection rests upon its mistaken claim that the Fifth Circuit's opinion in Strong v. BellSouth Telecomm., Inc., 137 F.3d 844 (5th Cir. 1998) controls the instant analysis.  Merck, however, overlooks and ignores numerous critical distinctions between this case and Strong.  Most importantly, unlike here, Strong was essentially a coupon settlement where "[n]o fund was established at all in this case." Id. at 852 (emphasis added).  The Fifth Circuit concluded that the purported common fund was illusory because class members were required to continue to purchase products from the defendants to receive credits from the fund – there were no cash payments. Strong, supra, at 852-53. Merck also fails to note that "[t]he parties jointly asked the court, pursuant to the amended Agreement, to award up to $1.5 million [in] additional attorneys' fees based on actual claim information" id. at 851, and that class counsel had already been awarded more than the full

7

lodestar value and were seeking to apply a multiplier. These fundamental differences demonstrate that Strong does not control and, in fact, has no real impact on the analysis at hand.

Merck further erroneously relies on Strong in its attempt to distinguish Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). In Boeing, the Supreme Court explained that class plaintiffs' "right to share in the harvest of the suit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by class representatives and their counsel." Boeing Co., supra, 444 U.S. at 480 (emphasis added). The Court therefore concluded that an attorney who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole, including the unclaimed portion. The Fifth Circuit's opinion in Strong distinguished Boeing, noting:

> In contrast to Boeing, in this settlement no money was paid into escrow or any other account – in other words, no fund was established at all in this case. In fact, the Agreement neither established nor even estimated BellSouth's total liability. Instead, the Agreement provided each class member with the option of either continuing under the plan or cancelling the plan and obtaining a credit. Thus, class members who wanted the service would not receive a credit under the Agreement. In addition, class members who did not meet the eligibility requirements would also not receive a credit.

Strong, supra, at 852 (emphases added).

However, as the emphasized language above demonstrates, this case is significantly more like Boeing than Strong. Indeed, like Boeing, each member of the Class in this case had an "undisputed and mathematically ascertainable claim to part of [the] lump sum judgment" which they could obtain "simply by proving their individual claims against the judgment fund." Boeing Co., supra, 444 U.S. at 479. Conversely, this was not a coupon settlement; Class Counsel has not already been awarded the value of their services under the lodestar method; Merck did in fact deposit $6 million into a Common Fund Escrow Account; the Settlement Agreement expressly stated Merck's maximum liability as $23 million; and, even members who "sustained no adverse

8

effects from Vioxx" were "completely reimburse[d] . . . for the costs they expended on a drug that helped them."[7] See Final Order and Judgment [Rec. Doc. 64784] at p. 21.

Merck's attempt to distinguish the other authority cited by the Fee Committee fares no better. Again, those efforts are largely based on Merck's previously disproven claim about the absence of a common fund. For instance, Merck suggests that Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999), and Williams v. MGM – Pathe Communs. Co., 129 F.3d 1026, 1027 (9th Cir. 1997), created "fixed common funds of a 'sum certain,' unlike here." Merck Objection at p. 6. That assertion rings hollow, however, because the Settlement Agreement expressly states that it is creating a Common Fund settlement with Merck's maximum liability capped at $23 million – which would appear to be a sum certain. Merck does not account for the fact that the Ninth Circuit in the Williams case awarded fees based on the $4.5 million settlement amount even though actual claims totaled only $10,000, and the remainder reverted to the defendant. Williams, supra, at 1027. Interestingly, in addressing arguments similar to those being advanced by Merck, the Ninth Circuit stated that "Defendants here knew, because it was in the settlement agreement, that the class attorneys would seek to recover fees based on the entire

---

[7] Somewhat incredibly, Merck suggests that class members who were pleased with their Vioxx prescriptions "may have intentionally decided to affirm the value of their Vioxx prescriptions by not seeking compensation." Merck Objection at p. 5. This is nothing more than pure supposition. While Merck is free to speculate as wildly as it wishes, its theories about the lower than anticipated claims are entitled to no weight. For example, after changes to the notice program were implemented including publishing notice in Spanish, 100% of the New Mexico Consumer Class Claimants accepted the settlement. The participation level increased overall nationwide after a number of notice changes occurred, reflecting anything but apathy. The Court previously approved the Settlement as fair, reasonable, and adequate, concluding that there was "no evidence that the parties engaged in anything other than arm's-length negotiations through qualified counsel." Final Order and Judgment [Rec. Doc. 64784] at p. 19. Further, the Court stated that it was "satisfied that Class Counsel was sufficiently informed to vigorously advocate on the Class' behalf and that it actually did so." Id. These findings are amply supported by the record, which demonstrates, among other things, the extensive efforts that Class Counsel undertook to provide broad notice to Class Members, a simple claims process, and a meaningful opportunity to obtain adequate compensation out of the $23 million settlement fund. Contrary to Merck's assertion, the Court concluded that the Settlement provided adequate compensation to the Class as a whole and specifically was "a good deal" for the Vioxx users who sustained no adverse effects. Id. at p. 21.

$4.5 million fund.  The Defendants [therefore] had some responsibility to negotiate at the outset for a smaller settlement fund if they wished to limit the fees." Id.

Attempting to distinguish the Eleventh Circuit's opinion in Waters, supra, Merck repeats its claim that Waters is different from both this case and Strong because a $40 million common fund was actually created in Waters.  See Merck Objection at p. 6.  Yet, Merck fails to explain how the $40 million fund in Waters differs from the $23 million fund in this case.  In Waters, the defendant agreed to provide the money to fund a settlement of $40 million with which to satisfy the claims of the plaintiff class.  Waters, supra, at 1292.  Like here, the settlement agreement also provided that any money not claimed by the plaintiff class or used to pay fees and expenses would revert to the defendant.  Id.  Notably, the agreement expressly contemplated that plaintiffs' class counsel would apply for attorneys' fees in an amount not to exceed 33-1/3% of the settlement fund and included a "clear sailing" provision in which the defendant agreed not contest the fee award sought by class counsel.  Id. at 1292-93.  The District Court ultimately approved the settlement and awarded plaintiffs' class counsel $13.3 million in attorneys' fees (or 33-1/3% of $40 million).  Id. at 1293.

On appeal, the defendant argued, like Merck here, that the attorneys' fee award should have been based on a percentage of the actual payments made to class members rather than the total fund.  Id. at 1295.  The Eleventh Circuit flatly rejected this argument, noting:

> The fact that there w[as] a reduced number of claimants had no effect at all on the amount each class member received.  That amount, rather, was determined by the total fund accrued.  Negotiating a $40 million gross settlement fund, therefore, created a benefit on behalf of the entire class.

Id. at 1297.  The Court further noted the self-serving nature of the defendants' objection, observing that "even if we were to accept defendants' argument . . . the reversionary nature of the settlement could mean that 90% of the reduction in attorneys' fees would accrue to the

10

benefit of the defendant, in contrast to the 10% which would accrue to the class' interest." Id. at 1298. Consequently, the Eleventh Circuit's conclusion applies with even more force here: Merck's "claimed interest in protecting the class thus, seen in this light, strains credulity." Id. The Court should therefore disregard Merck's Objection and award the Fee Applicants reasonable fees based on the entire $23 million set aside by Merck as the total value of the benefit to the Class.[8]

### C. Ms. Meloy's Objections Are Conclusory And Lack Merit.

In her Objections, Ms. Meloy advances five, broad but unsupported criticisms of the attorneys' fees requested in the Fee Petition. Specifically, she objects because: (1) she cannot check the reasonableness of class counsel's lodestar because all of the fee declarations have been submitted under seal; (2) she believes there was a lot of duplication of effort and unnecessary work performed by class counsel; (3) extraordinary effort was not required because the Vioxx personal injury MDL had already been settled; (4) the low claims rate justifies a lower fee than requested; and (5) one-third of the settlement fund is too much to pay in a class action. These Objections, which are entirely unsupported by argument or relevant citations to authority, are without merit.[9]

---

[8]   This argument is buttressed by the fact that Vioxx users as a whole have received benefits, through the various class action settlements of the personal injury and third party payor claims, totaling approximately $4.5 billion. Notably, many of the Fee Applicants currently before the Court have received little if anything in terms of attorneys' fees from those other settlements and instead have been pursuing these consumer claims for more than a decade without any reasonable compensation. In the event that the Court values the total benefit to the class at an amount less than the gross Settlement Amount of $23 million, it should still reject Merck's invitation to limit that value to the actual claims paid. Instead, the Court must, at a minimum, consider all of the items listed in § 2.5 (which include the reimbursement of losses by the Class, the costs of notice and administration, and the negotiated attorneys' fees and expenses) in determining the total value to the class.

[9]   "General objections without factual or legal substantiation do not carry weight." DeHoyos v. Allstate Corp., 240 F.R.D. 269, 293 (W.D. Tex. 2007) (citing 4 Newberg on Class Actions § 11:58 (4th ed. 2002); see also Fed. Practice & Pro. § 1797.1 (providing that in class action settlement dispute "[o]nly clearly presented objections . . . will be considered")).

Ms. Meloy's first two objections appear to be based on her unsupported and erroneous contention that the Fee Committee is seeking (or is required to seek) fees based on the lodestar method. She objects that she cannot check the reasonableness of class counsel's lodestar because all of the fee declarations have been submitted under seal. Ms. Meloy also indicates that she "believes" there was a lot of duplication of effort and unnecessary work performed by class counsel. But, Ms. Meloy is not entitled to review the detailed billing records of counsel. See DeHoyos v. Allstate Corp., 240 F.R.D. 269, 336 (W.D. Tex. 2007) (noting that determining proper fees is entrusted to the sound discretion of the Court and that objectors failed to explain how they were qualified to pass judgment on the daily time records of attorneys in a complex, national class action). And her speculation about duplicative effort is insufficient to state a proper objection. See In re Cendant Corp. Litig., 264 F.3d 201, 235 (3d Cir. 2001) (discarding objections to notice which were based on speculation).

Ms. Meloy's remaining objections concern the amount of fees requested. She contends that because the personal injury MDL case had already been settled, no extraordinary effort on the part of class counsel was necessary; that the "low claims rate justifies a lower fee than requested;" and that one-third of the Settlement Amount is "too much to pay in a class action." These claims are contradicted by both the Court's findings in approving the Settlement and applicable case law. First, among the myriad reasons cited in Final Order and Judgment, the Court specifically noted that Class Counsel "vigorously advocate[d]" on the Class' behalf and that the complexity, length and extent of the proceedings (which had progressed for nearly a decade) weighed heavily in favor of approving the Settlement. See Final Order and Judgment [Rec. Doc. 64784] at pp. 19-20.

Further, consistent with the express terms of the Consumer Settlement Agreement, the Fee Petition actually seeks an award of 32% – not 33 1/3% – of the Settlement Amount. That percentage is reasonable and fair. Contingency fee agreements in cases like this typically provide for attorneys' fees of 33-40% of the recovery. In fact, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 4 Alba Conte & Herbert Newberg, Newberg On Class Actions § 14:6 at 551 (4th ed. 2002). Contrary to Ms. Meloy's Objection, the 32% fee request is not only reasonable, it is actually less than what the Fee Applicants could have commanded and received on the open market.

## III. THE REQUESTED FEES ARE REASONABLE.

Both Objections can be summarized as asserting that the fees requested in the Fee Petition are somehow unreasonable. The Objections, however, do not withstand even minimal scrutiny. The case law discussed above and in the Fee Petition demonstrates that the percentage of the fund method is the appropriate basis for calculating an attorneys' fee award in this case. Importantly, neither Objection challenges the Fee Committee's request to calculate its fees under the percentage of the common fund method. In settlements with reversionary clauses and claims made procedures, district courts' decisions to award fees based upon the total value of the fund made available to the class have recently been affirmed as within their discretion. See Landsman &Funk, P.C. v. Skinner-Strauss Associates, 639 Fed. App. 880,884 (3rd Cir. 2016), holding that the district court "properly relied on the entire fund as the appropriate benchmark", as opposed to the amount claimed. As many courts and commentators have noted, limiting fees to a percentage of claims made may give defendants a windfall, does not promote the deterrent purpose of class actions, and may incentivize defendants to encumber the claims process. See discussion at 5

Newberg on Class Actions Section 15:70 (5th Ed. 2015 ); and William B. Rubenstein, "Percentage of What?", 1 Class Action Atty's Fee Dig. 63, 64 (2007) (providing reason for setting fee as percentage of available, rather than distributed funds).

The reasonableness of that calculation is confirmed by the rough lodestar cross-check. Again, neither Objection contests in any way the rough lodestar cross-check discussed in the Fee Petition. [Rec. Doc. 65491 at p. 15.] That calculation, which relied on the gross hours submitted by the Fee Applicants, yielded a lodestar amount of nearly $8 million. The fee request of $7,360,000 remains reasonable even when only the approved hours are used in the equation. Multiplying the hours approved by the Garrett firm (9,631.99) by the average billing rate previously used by the Court ($443.29)[10] results in a lodestar of $4,269,764.85. The requested fees of $7,360,000 represents a modest lodestar multiplier of 1.75 – a number near the low end of the range routinely deemed reasonable by Courts in the Fifth Circuit. See, e.g., Buford v. Cargill, Inc., 2012 U.S. Dist. LEXIS 161232, *19 n.1 (W.D. La. Nov. 8, 2012) ("This low multiplier [of 1.78] is reasonable, as it is well within the range of 1 to 4 typically approved by courts within this circuit.") (citing In re Enron Corp. Sec., 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008); In re Heartland Payment Sys., 851 F. Supp. 2d 1040, 1088 n.52 (S.D. Tex. 2012); In re Combustion, 968 F. Supp. 1116, 1133 (W.D. La. 1997)). The lodestar cross-check is meant to control against "windfall fees" and to verify the reasonableness of an award calculated under the percentage method. See In re Enron, supra, at 751. In this case, the lodestar cross-check serves those dual purposes – the requested fee award does not result in a windfall to the Fee Applicants and is, in fact, eminently reasonable. Nothing in either of the Objections alters this conclusion.

---

[10] An hourly rate that pales in comparison to the huge hourly rates (often four or five times or more than the rates noted above) charged by the large national law firms who represent defendants in class actions like this matter.

14

## CONCLUSION

For the reasons stated above and in the Aggregate Fee Petition, the Court should disregard and/or reject the Objections filed by Merck and Ms. Meloy and award reasonable attorneys' fees in an amount equal to 32% of the maximum Settlement Amount of $23 million. Such an award is consistent with applicable case law as well as the important public policies underlying consumer class action cases.

Respectfully submitted,

Dated: February 20, 2017

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 165, Co-Lead Class Settlement Counsel*
*Fee Committee Chair*

COMMON BENEFIT FEE AND COST COMMITTEE:

/s/ Richard A. Getty
RICHARD A. GETTY
Fee Committee Member

/s/ James P. Lyle
JAMES P. LYLE
Fee Committee Member

/s/ Dawn M. Barrios
DAWN M. BARRIOS
Fee Committee Member

/s/ Elizabeth J. Cabraser
ELIZABETH J. CABRASER
Fee Committee Member

15

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittman, by U.S. mail and e-mail or by hand delivery and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 20th day of February, 2017.

      /s/ Leonard A. Davis
      Leonard A. Davis