UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | * | MDL NO. 1657 |
| | * | |
| PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| THIS DOCUMENT RELATES | * | JUDGE FALLON |
| TO ALL GOVERNMENT ACTION CASES | * | MAG. JUDGE KNOWLES |
| | * | |
| FILER: Margaret E. Woodward | * | May 1, 2018 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF WEINBERG MOTION TO ESTABLISH PROCEDURES FOR ALLOCATION OF COMMON BENEFIT FEES AND COSTS IN ATTORNEY GENERAL CASES**

MAY IT PLEASE THE COURT:

This memorandum is respectfully submitted on behalf of the Law Offices of Eric Weinberg ("Weinberg") in support of its motion to establish proper procedures for the allocation of common benefit fees and costs in the governmental actions ("AG cases").

**I. Entry of an order is appropriate at this time.**

This motion is submitted despite Weinberg's certainty that this Court will, as it has done in the past, establish on its own motion appropriate procedures for the payment of fees and costs in the AG cases. However, the timing of the Court's action, and hence this motion, has perhaps been accelerated by the PLC's filing of a motion in support of reimbursement of expenses [R. Doc. 65548]. The PLC's pleadings expose multiple substantial issues which warrant consideration by the Court in the fashioning of its order.

Arguably, payment of common benefit expenses and fees in the AG cases is premature. The delivery of common benefits necessarily ended with the remand of the remaining unresolved AG cases to state courts. *See, e.g.,* UT/2:06-cv-00406, R. Doc. 16 (Order of remand for Alaska,

Montana, and Utah). However, the funds available to pay fees and costs remains unknown. As the PLC has acknowledged, the State of Utah, which entered into a Common Benefit agreement with the PSC, has not yet concluded its litigation, making the amount of its contribution uncertain. [R. Doc. 65553, Response to Declaration of Eric H. Weinberg, pp. 4-5]. Likewise, the PSC is currently engaged in litigation with the State of Pennsylvania about whether and to what extent that state should contribute to the common benefit fund. *Id.*

The PLC seeks to bypass the incomplete nature of the fund by asserting that "[t]here are sufficient funds available…to cover the amounts requested in this motion," that is, those expenses of the few firms it has chosen to represent. [R. Doc. 65548-1, p. 2]. The amount and source of the available funds, however, is subject to this Court's review, as are the legitimate claimants to fees and expenses from any available funds.

Should this Court determine that there are funds available to pay common benefit expenses, it is appropriate to pay them at this time, because the accrual of such costs terminated with the remand of state cases, because cost claims tend to be more manageable than fee claims, and because the claimants have been carrying their unreimbursed expenses for many years now. Before any funds may be allocated, however, a process must be established for payment. The PLC's request for payment to a select few overlooks the essential guideline that "[a]llocation means proportion; how does the share lead counsel is taking compare to the shares others are getting?" *In re Vitamins Antitrust Litig.*, 398 F. Supp.2d 209 , 234 (D.D.C. 2005). Its proposed payment in full to only a few of the potential claimants would reduce the limited fund available to pay other claims that may be equally or more meritorious.[1] This Court has previously delivered proportionate allocations of fees and costs by articulating and adhering to due process

---

[1] The PLC motion does not even to propose to pay in full all of the claimants it acknowledges. *See,* R. Doc. 65548-1, p. 4, noting that Mses. Barrios and Cabraser have not accepted its figures.

guidelines for its ultimate awards.

Because the PLC has sought payment of certain expenses, the time is ripe for entry of an order outlining the processes by which expenses will be paid. Rule 54(d) of the Federal Rules of Civil Procedure provides the proper framework for the entry of such an order, and this Court's extensive prior rulings on the subject will doubtless flesh out its structure. As this Court well knows, and as the PLC's motion hints, the process of allocating common benefit expenses is the prequel to an award of common benefit fees, a larger, more subjective, and more complex endeavor. Because there is usually a substantial overlap between the claimants to expenses and fees and because the respective merits of those claims likewise overlap, this Court's order with respect to common benefit expenses may inform its actions with respect to fees.

**II. The source of the AG common benefit fund.**

At the threshold, some determination must be made of the appropriate source(s) of the AG common benefit fund, and concomitantly, its amount. In the past, this Court has determined the size of the fund before the allocation process has commenced. *See*, Order and Reasons, October 19, 2010, and PTO 51. In this case, it appears that some funds will derive from several AG settlements, and others from one or more general escrow account(s) held over from prior Vioxx distributions.

The PLC references several allegedly available sources of payment for common benefit expenses in the AG matters. It reports that some $419,000 is "being held in a Whitney National Bank- AG Attorney Fee Fund account ('WNBAGAFF')." [R. Doc. 65548-1, n. 3]. It also refers to some $715,000 in the same WNBAGAFF account, "funds previously mentioned regarding the Attorney General settled matters." *Id*. at p. 2. Since no such amount was "previously mentioned," it is unclear whether the $715,000 includes or is in addition to the $419,000; nor has

3

the PLC disclosed the provenance of the extra $300,000 or $715,000. Adding to the confusion, the PLC proposes that its requested reimbursement of expenses "should be accomplished by first utilizing the [$419,000 in funds] that are presently in the WNBAGAFF fund. . . . *Id*. at p. 4. It offers no explanation why the $715,000 reportedly in that account might not be utilized as well.

     Then, the PLC suggests that the Court may also dip into an "escrow account being held by BrownGreer" in the amount of over $6,595,000. That account, says the PLC "is sufficient to pay other claims for time and benefit time and expenses that are *not* related to various Attorney General matters in this Vioxx MDL." *Id*. at n. 1 (emphasis supplied). The PLC advises that it intends to file a motion for distribution of these fees "at a later date." *Id.* But because the PLC proposes to dip into those funds in this very expense allocation, the "later date," apparently, is now.  Indeed, the PLC looks to apply $819,000 from the escrow fund to fund the limited reimbursement requested by its motion. *Id.* at p. 4. The amount, which is supposedly in addition to the $419,000 WNBAGAFF fund– here the PLC drops reference to the reported $715,000 WNBAGAFF fund– would "fund the reimbursement" claimed by the PLC's motion. *Id.* The PLC asks that the requested allocation of more than $1.2 million dollars be applied to a total of $557,000 in held costs and $679,000 in assessments for six firms. *Id*. at p. 2-3. (The PLC also lists 7,870 hours of time for those few claimants whose costs it places at issue. *Id.* Perhaps this is meant only to provide some context for the claim of expenses, for no value is attributed to the reported time, and the motion makes clear that it relates to expenses only.)

     Alleged access to the $6.6 million escrow fund raises several important questions: what is the source of that money; how much of it is available to satisfy claims for common benefits fees and expenses for the AG cases; and are there any other funds that may be applied to this purpose?

Another potential source of expense reimbursement, to which the PLC makes no reference in its memorandum, is the $600,000 paid by Merck to the PSC for its waiver of a jury in the Louisiana AG case that was tried to this Court. No disclosure has been made whether it distributed or deposited those funds. If distributed, they should be credited toward counsel's claims for expenses and fees; if banked, they should be available for that purpose.

Claimants are entitled to know approximately how much is available to pay AG common benefit fees and expenses before undertaking the costly process of litigating their claims; and this Court may wish to streamline the allocation process for a fund that is likely to be considerably smaller than those previously administered in the Vioxx litigation.

**III. The potential claimants to the AG common benefit fund.**

The PLC's motion acknowledges the held costs and assessments of only six firms: Sanford, Cabraser, Dugan, Murray, Barrios and Robinson, *Id*. at p. 2-3. Weinberg's expenses were not included in the motion, and Weinberg therefore filed a responsive declaration reporting over $240,000 in common benefit expenses. [R. Doc. 65551.]

The PLC's opposition to Weinberg's objection was fourfold: first that Weinberg has previously been compensated in the personal injury and TPP litigation; second, that common benefit expenses could only be recovered for work approved by the PSC; third, that Weinberg had not submitted any record of time or expenses to Mr. Garrett in accordance with this Court's orders, and fourth, that Weinberg did work for only one of the states that entered into an agreement to contribute to the common benefit fund, and should recover his costs from that client, not the fund. [Response to Declaration of Eric H. Weinberg, R. Doc. 65553, pp. 4-6.] None of these contentions merit disqualification of Weinberg as a claimant to the AG common benefit fund.

The six firms for whom the PLC requests reimbursement by its motion also received substantial compensation and reimbursement in prior allocations. To the extent that any claimant seeks to double-dip into the AG fund for time or expenses previously awarded, the PLC correctly observes that such claims should be disallowed. However, the PLC has not apparently examined the records of its six favored firms for duplication, and it is premature to exclude Weinberg's claim in its entirety simply because such duplication might exist. In Weinberg's case, the claimed $240,000 in expenses could not be entirely duplicative, for he received only $144,768.90 in compensation of his expenses in the personal injury allocation, *See,* PTO 51, Exh.B, and nothing in the TPP allocation.

The PLC's motion, in arguing that only approved common benefit work is entitled to remuneration, implicitly suggests that Weinberg's work and attendant expenses did not meet this criteria. Weinberg, however, was named co-chair of the AG expert committee and a member of the damages committee by the PSC, and his claimed expenses were performed in furtherance of that common benefit work. See, Exh. A, *en globo*.

By the PLC's own reckoning that only benefits to the contributing states should be compensated, Weinberg's work on behalf of Utah, one of the states contributing to the AG common fund, ought to count for something. In a peculiar contradiction of its own argument, however, the PLC contends that Weinberg should be paid directly by his client, Utah. It does not venture to say why Utah should pay Weinberg for common benefits conferred on it as well as other states under a structure established by the PSC for the benefit of multiple states. Nor does it say why the provision of benefits to other contributing states does not qualify for reimbursement unless the claimant also represented that state, a suggestion that fundamentally conflicts with the very nature of common benefit work.  Nor does the PLC explain why its

6

motion seeks to reimburse the expenses of firms which participated in the unsuccessful Louisiana trial and which therefore contributed little or nothing to the AG common benefit fund. (Let us be clear that we are pointing only to inconsistencies in the PLC argument about the creation of the AG fund, not suggesting the firms in question made no contribution to the common benefit).

Furthermore, the PLC is incorrect in its allegation that Weinberg has not submitted time or expenses in accordance with this Court's orders.  In support of its assertion, the PLC refers to an April 6, 2018 email from Mr. Garrett declaring that "I have looked at the Vioxx database in CCMS and have no record of ever receiving time and/or held costs from the Weinberg Law Firm." [R. Doc. 65553, p. 3 and Exh. B.]  The averral confounded Weinberg, for he exchanged correspondence with Mr. Garrett about his time and expense submissions, obtained passcodes for his postings, made those postings, and copied them to Mr. Garrett.  *See*, Exh. B.  Moreover, the PLC's reliance on Mr. Garrett's erroneous email as proof of Weinberg's alleged failure to submit any time records—to which false allegation the PLC Response devotes extensive attention—appears disingenuous, for Weinberg corresponded with the PLC as well as Mr. Garrett about his submissions.  The PLC cannot have forgotten these exchanges, some of which are attached as Exhibit A to its Response.  [R. Doc. 65553-1, Exh. A.]  Additionally, the PLC acknowledges Weinberg's June 24, 2013 transmission, during the TPP litigation, of a CD containing contemporaneous time entries for the period 2009-2013. [R. Doc. 65553, p. 4 and Exh. D]. That CD included in "Category 3" entries specifically and exclusively relating to the AG litigation.  Thereafter, Weinberg submitted to Mr. Garrett the aforementioned time and expense reports for the period July 2013 to July 2014.  See, Exh. C.  Mistakenly believing that the CD included expenses, Weinberg thought this delivery brought his time and expense

7

submissions up to date with the conclusion of common benefit work upon remand in 2014.  In fact, his time entries were complete; his expense submissions were not.

Weinberg's time submissions were comprehensive, contemporaneously entered, detailed, and complete. His expense submissions were less thorough, with good reason. The PLC's prior response to Weinberg's submissions has been grossly and unfairly dismissive. In both the personal injury and the TPP litigation, the FACs recommended that Weinberg receive no compensation whatsoever for his common benefit contributions. The ultimate awards by this Court of $3,000,000 and $650,000, respectively, spoke not only to the unfairness of the PSC's position, but also to the fact that Weinberg could expect no serious consideration of his claims until such time as the Court established a due process framework for review of his claims beyond the PSC's aegis. That point was driven home by correspondence between Weinberg and Mr. Davis, in which the latter responded to Weinberg's statement that he had other submissions to make by suggesting, "file a motion." See, R. Doc. 65553-1, Exh. A.  While Weinberg did not comply with this Court's directives for monthly postings, and may not have provided complete details of his expense records for every year, the fact that he made substantial efforts to comply certainly put the PLC on notice of his claim for common benefit reimbursement.  And given the PLC's and Mr. Garrett's exaggerated ignorance of the records he indisputably did submit, it is hard to imagine how the PLC has been prejudiced by his failure to produce more records for them to lose.

Weinberg's service on PLC-created committees, including the historically expense-generating experts' committee, his extensive time submissions and partial expense submissions, as well as his PLC-rejected attempt to supply additional documentation provided due notice of Weinberg's claim.  In view of the PSC's historic shunning of Weinberg's submissions, which

the PLC carried forward into its recent motion for reimbursement, he submits that earlier, fuller, or monthly submissions would not have advanced the Court's analysis of a proper allocation, and he prays that the Court enter a scheduling order permitting a fuller presentation of his expenses.

The PLC's failure to address in its motion Weinberg's entitlement to common benefit expense reimbursement suggests that it may have overlooked other claimants as well. A scheduling order inviting the submission of common benefit expenses and fees from all interested claimants would be in order.

**IV. The appointment of a fee and expense allocation committee, and/or referral to a magistrate or special master.**

In both the personal injury and TPP matters, this Court, correctly anticipating a spate of common benefit claims and supporting documentation, appointed fee allocation committees to assist in the organization, analysis, and resolution of the competing claims. Pursuant to Rule 53(a)(1)(C), the Court also appointed a special master to review the FAC's recommendations and the objections of various claimants.

In the AG matter, if there are only a total of seven firms making claims for expense reimbursement (six identified by the PLC's motion, plus Weinberg), and five firms (four identified by the PLC, plus Weinberg) making claims for common benefit fees, there may be no need for a FAC, nor for oversight by a special master or magistrate. The prior FACs' penchants for recommending disproportionate awards to their members to the detriment of other claimants indicates that in a substantially smaller pool of claimants a FAC might contribute only another costly layer of litigation to the dispute rather any significant benefit. To be sure, in addressing a substantially smaller pool of applicants, some of the work of the prior FACs, such as gathering the testimony of applicants or brokering settlements with claimants, would appear unnecessary.

9

Additionally, the work of the FAC requires compensation, which may unnecessarily subtract funds from an already relatively small fund. For these reasons, the Court may wish to avoid, or at least delay appointing an AG FAC until after it has determined the size of the common benefit fund and the number of claimants. Likewise, depending upon the number of claimants, the court may not need the services of a special master.

If the Court considers the appointment of a FAC, now or later, the most important consideration in the selection of committee members "is achieving efficiency and economy without jeopardizing fairness to the parties." *Manual for Complex Litigation*, Fourth, Federal Judicial Center 2004, p. 25. The *Manual* observes that this objective may best be achieved by ensuring that counsel appointed to a leadership role be "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Id*., at 24.  In search of counsel who might fairly represent claimants to the AG common benefit fund, the Court must look beyond the six firms named in the PLC's motion for reimbursement. As this Court is aware, the majority of those firms made their greatest contribution in the Louisiana AG case, which was tried in 2010 to a verdict in favor of Merck. *See,* Order and Reasons, June 29, 2010.

After the Louisiana loss, the PSC took little interest in the AG cases, with the notable exception of the development of expert witnesses, in which Weinberg was centrally involved. As the Court knows, there had always been serious challenges to its jurisdiction over the state actions, and at the end of 2014, with discovery largely completed, the United States Judicial Panel on MultiDistrict Litigation remanded the remaining actions to their respective states. *See, e.g.,* UT/2:06-cv-00406, R. Doc. 16 (Order of remand for Alaska, Montana, and Utah).  The remands effectively terminated any delivery of common benefit services to the AG cases, for the

PSC had no further agency in the matters.

If, as the PLC contends, common benefit claims are to be restricted to common benefits afforded to Alaska, Utah, Mississippi, Montana, Kentucky, and possibly Pennsylvania, it would fall principally to counsel involved in those states' litigation to establish what benefit they derived from the materials placed at their disposal by the PSC. The firms listed in the PLC's motion may be able to say what benefit they *offered* to the other AG states, but they cannot say what benefit they *conferred.* Consequently, Weinberg suggests that if the Court appoints a FAC, it draw only one member from those listed in the PLC's motion,[2] and two from counsel who worked in multiple states. Weinberg himself, who had a PSC-appointed leadership role in the matter of experts and damages, is deserving of consideration, as those areas were among the most significant common benefit contributions.

## CONCLUSION

The PLC's motion for reimbursement reveals uncertainties about the size and source of the funds available for the payment of common benefit fees and costs, as well as the number and size of claims for such an allocation. Due process calls for the entry of an order establishing appropriate procedures for the submission and review of claims and for the allocation of funds to the claimants.

Respectfully submitted,

/s/ Margaret E. Woodward
_____
MARGARET E. WOODWARD, La. Bar No.13677
1229 N. Tonti Street

---

[2] Included among those firms is one whose grossly inflated submissions, including 27.5-hour time entries in a single day, should act as a disqualifier from service on any FAC. See, Weinberg's Memo for Special Master. [R. Doc.64721-1, *passim* and pp. 43-44.]

11

New Orleans, Louisiana 70119  
(504) 301-4333 office  
(504) 301-4365 fax  
mewno@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Motion to Establish Procedures has been served on Liaison Counsel, Ann Oldfather and Phillip Wittmann, by U.S. Mail and e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pre Trial Order No.8, and that it was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedures established in MDL 1657, on this 1st day of May, 2018.

   /s/Margaret E. Woodward