UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: VIOXX | : | MDL NO. 1657 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION: L |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE KNOWLES |

THIS DOCUMENT RELATES TO ALL CASES

### ORDER & REASONS

Pending before this Court is the Plaintiffs' Liaison Counsel's ("PLC") Motion for Award of Plaintiffs' Common Benefit Reimbursement of Expenses (Attorney General Matters). R. Doc. 65548.

In addressing this issue, the Court has considered the PLC's Motion, the sole declaration in response, as well as discussions and conferences with the Common Benefit Fee and Cost Committee and the Court-appointed CPA. Furthermore, the Court has also reviewed written memoranda and supporting documentation provided by the parties, including numerous affidavits and declarations from Fee Committee members and the Court-appointed CPA who kept track of the time and expenses attorneys used pursuing the Attorney General matters. Lastly, the Court has examined the procedural record and applied its own knowledge of the case accumulated through its active involvement in this litigation since its inception more than thirteen years ago. Accordingly, the Court is fully advised of the matter and is now ready to rule.

I.      BACKGROUND

To put this matter in perspective, a brief overview of this litigation is appropriate. This multidistrict litigation ("MDL") involves the prescription drug Vioxx, known generically as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration ("FDA") approved Vioxx for sale in the United States. Vioxx remained publicly available until September 30, 2004, when Merck withdrew it from the market after data from a clinical trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarctions (heart attacks) and ischemic strokes. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999, and September 30, 2004. Based on this estimate, it was thought that approximately 20 million patients have taken Vioxx in the United States.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") conferred MDL status on Vioxx lawsuits filed in federal court and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.,* 360 F. Supp. 2d 1352 (J.P.M.L. 2005). One month later, on March 18, 2005, this Court held the first status conference in the Vioxx MDL to consider strategies for moving forward with the proceedings. Shortly thereafter, the Court appointed a Plaintiffs' Steering Committee ("PSC") and Defendant's Steering Committee to represent the parties and to meet with the Court monthly to review the status of the litigation.

Suits were also filed in various state courts. Some were removed to federal court and transferred to this Court. Others remained in state court due to lack of diversity. California was the first state to institute a consolidated state court proceeding on October 30, 2002. New Jersey and Texas soon followed suit. This Court coordinated the MDL proceeding with these state courts and worked closely with the state judges. Additionally, a number of state and local governments filed suits against Merck seeking to recover amounts paid for Vioxx prescriptions on behalf of their citizens or civil penalties pursuant to state consumer protection statutes. Soon after these "government action" cases were filed, they were promptly removed to the appropriate federal district courts by Merck, where they remained briefly before being transferred to this Court by the JPML.

Following six "bellwether" trials in this proceeding—as well as trials in state court proceedings in Alabama, California, Illinois, Florida, New Jersey, and Texas—the Negotiating Plaintiffs' Counsel ("NPC") and Merck's counsel engaged in protracted settlement discussions over the course of a year, conducting hundreds of in-person and telephone meetings. On November 9, 2007, two years after the commencement of the MDL proceeding, the parties announced a $4.85 billion Master Settlement Agreement ("MSA") that intended to—and actually did—resolve most Vioxx-related personal injury claims through a resolution program. In its recitals, the MSA expressly states that its purpose was to "establish a pre-funded, structured private 'opt-in' settlement program . . . to resolve . . . claims against Merck involving heart attacks, ischemic strokes and sudden cardiac deaths."

Having settled a large majority of the personal injury cases within this MDL, the Court turned its attention to government action suits filed against Merck. Several government entities had pending litigation in this MDL, including suits brought on behalf of various states, including

but not limited to Alaska, Colorado, Florida, Louisiana, Mississippi, Montana, Pennsylvania, Utah, Oklahoma, and South Carolina. These suits sought damages for monies paid by the state for Vioxx, through the state's Medicaid program. These suits were based around similar claims, namely that each respective state would not have approved payment for Vioxx, through their Medicaid programs, had they known of its cardiovascular risks. After one bellwether trial, the vast majority of these "government action" cases were either settled or remanded.

Special Master Juneau coordinated efforts with the PSC to settle and remand these cases, also known as Attorney General matters. All attorneys working on these matters, as well as any other aspect of the MDL, were directed to submit hours and expenses to the Court-appointed CPA. PTO 6.

> Reimbursement for costs and/or fees for services of all plaintiffs' counsel performing functions in accordance with this order will be set at a time and in a manner established by the Court after due notice to all counsel and after a hearing. The following standards and procedures are to be utilized by any counsel seeking fees and/or expense reimbursement. . . .
>
> All time and expenses submitted must be incurred only for work authorized by the Plaintiffs' Steering Committee. . . .
>
> Time and expense submissions must be submitted timely, on a monthly basis . . . so they can be compiled and submitted to Wegmann-Dazet and the Court. It is therefore essential that each firm, on a monthly basis, timely submit its records for the preceding month.

PTO 6 at 4-5. The PLC now brings this motion for reimbursement for costs and/or fees for services of plaintiffs' counsel in the Attorney General matters.

### II. Plaintiffs' Liaison Counsel's Motion for Award of Plaintiffs' Common Benefit Reimbursement of Expenses (Attorney General Matters) (R. Doc. 65548)

Plaintiffs' Liaison Counsel brings this motion for award of Plaintiffs' common benefit reimbursement of expenses in Attorney General matters. R. Doc. 65548. The motion is applicable to expenses in Vioxx Attorney General matters only. R. Doc. 65548-1 at 1. Mr. Eric

4

Weinberg has submitted a declaration in response to the motion. R. Doc. 65551. Mr. Weinberg has notified the Court that his firm performed common benefit work and incurred expenses in the Attorney General matters since June 2013. R. Doc. 65551 at 2. Mr. Weinberg notes that his firm is not mentioned in the PLC's motion and requests additional information. R. Doc. 65551 at 1, 4. This notification comes almost thirteen years after the Court first advised attorneys of the procedure for submitting time and expenses in this MDL.

The Court has provided ample direction regarding the proper procedure for submitting time and expenses relevant to the Vioxx MDL. Indeed, Mr. Weinberg has been individually directed to submit his information to the Court-appointed CPA. However, Mr. Weinberg has failed to follow these procedures and the Court-appointed CPA has never received records from Mr. Weinberg.[1] Therefore, it is appropriate that Mr. Weinberg's firm is not considered in the PLC's motion for reimbursement.[2] Accordingly, and based on the documentation provided by the PLC and the Court-appointed CPA, the Court finds that the motion for reimbursement has merit.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Award of Plaintiffs' Common Benefit Reimbursement of Expenses (Attorney General Matters), R. Doc. 65548, is **GRANTED**.

**IT IS FURTHER ORDERED** that Philip Garrett and/or Plaintiffs' Liaison Counsel take the necessary and appropriate steps to withdraw $418,824.66 from the Whitney National Bank-

---

[1] Rather, the only records from Mr. Weinberg were sent after a subpoena and Court order and still were not submitted to the Court-appointed CPA.
[2] Additionally, with regard to those Attorney General cases that have been remanded or remain outside the MDL, payment may only come from the hiring state.

AG Attorney Fee Fund Account, which represents all of the funds on deposit in this account. This will result in this account being closed.

**IT IS FURTHER ORDERED** that Philip Garrett and/or Plaintiffs' Liaison Counsel take the necessary and appropriate steps to withdraw from the BrownGreer (Settlement Administrator) Escrow Account the balance of the funds in the amount of $818,554.48 necessary to reimburse expenses for unreimbursed Vioxx Attorney General held costs and assessments.

**IT IS FURTHER ORDERED** that $1,237,379.14 comprised of the following unreimbursed Vioxx Attorney General held costs and assessments shall be reimbursed:

Held Costs:

| | |
|---|---|
| Shelly Sanford of the Sanford Law Firm | $14,538.33 |
| Elizabeth Cabraser of the Lieff Cabraser firm | $170,376.71 |
| James Dugan of the Dugan Law Firm | $164,001.24 |
| Steven Murray, Jr. of the Murray Law Firm | $209,017.86 |
| Total: | $557,934.14 |

Cash Assessments:

| | |
|---|---|
| Dawn Barrios of the Barrios Kingsdorf Law firm | $ 50,000.00 |
| Mark Robinson of the Robinson Calcagnie Law Firm | $ 50,000.00 |
| Shelly Sanford of the Sanford Law Firm | $ 50,000.00 |
| Elizabeth Cabraser of the Lieff Cabraser firm | $263,945.00 |
| James Dugan of the Dugan Law Firm | $265,500.00 |
| Total: | $679,445.00 |

**IT IS FURTHER ORDERED** that the Court accepts the agreements of Shelly Sanford of the Sanford Law Firm, Mark Robinson of the Robinson Calcagnie Law firm, James Dugan of the Dugan Law Firm, and Steven Murray, Jr. of the Murray Law Firm, that the reimbursement of held costs and assessments shall constitute final compensation and full reimbursement for all work (both time and expenses) that their respective firms may have performed in all Vioxx litigation.

New Orleans, Louisiana, this 1st day of May, 2018.

_____
UNITED STATES DISTRICT COURT JUDGE