## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  VIOXX | * | MDL Docket No. 1657 |
| | * | |
| PRODUCTS LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to All Cases | * | |
| | * | MAG. JUDGE KNOWLES |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### REPLY TO OBJECTION OF ANN B. OLDFATHER TO
### MOTION OF PLAINITFFS' LIAISON COUNSEL FOR DISBURSEMENT
### OF FUNDS (FOR EXPENSES)

**MAY IT PLEASE THE COURT:**

On July 11, 2018, Plaintiffs' Liaison Counsel ("PLC"), Russ M. Herman, filed a Motion for disbursement of Funds (For Expenses) [Rec. Doc. 65563]. On July 23, 2018, Ann B. Oldfather ("Oldfather") filed an Objection to Motion of Plaintiffs' Liaison Counsel for Disbursement of Fund (For Expenses) [Rec. Doc. 65567].  For purposes of this Reply, PLC will treat the Objection of Oldfather to Motion of Plaintiffs' Liaison Counsel for Disbursement of Funds (For Expenses) as a Response Memorandum in Opposition to the Motion of Plaintiffs' Liaison Counsel for Disbursement of Fund (For Expenses) as contemplated by Local Rule 7.5.

The Motion of Plaintiffs' Liaison Counsel for Disbursement of Funds (For Expenses) was filed after review by Philip A. Garrett ("Garrett"), the Court-Appointed CPA, who approved and consented to the motion.  There is no basis or reason to delay submission of the motion.  These are expenses that have been incurred in this MDL and payment has not yet been made.  The payments need to be made promptly and delay will

result in untimely payments.  After the filing of the Motion of Plaintiffs' Liaison Counsel for Disbursement of Funds (For Expenses), PLC was contacted by Oldfather who requested additional documents from PLC.  PLC provided, in response to the request:  (1) the monthly financial report dated May 23, 2018 prepared by Garrett.  This report contains updated current financial information similar to the same type of report previously provided to Oldfather; and (2) an updated spreadsheet or printout of checks written to pay common shared expenses.  Several years ago, Oldfather was provided a spreadsheet/printout that outlined checks through 2012 and Oldfather requested a current update.  PLC determined that the prior spreadsheet/printout through 2012 was not a document prepared by PLC, so in an effort to cooperate, PLC contacted Garrett and determined that Garrett had prepared the original spreadsheet/printout detailing checks of common shared expenses through 2012.  The updated spreadsheet/printout recently prepared by Garrett was promptly provided to Oldfather and reflects disbursements of common shared expenses from 2012 to present.  The other document requested by Oldfather, but not provided, was an updated report concerning Garretson Resolution Group (GRG) containing a list and accounting of particular cases handled or resolved by Oldfather.  PLC advised Oldfather that the report previously provided to her was the most current report which was dated March 28, 2016.  PLC advised that it had not received updates from GRG and that PLC did not have additional materials to provide since PLC was not aware of any additional cases being resolved.  Oldfather took it upon herself to contact GRG directly to ask for more information.

As the Court is well aware, the Vioxx MDL involves the prescription drug Vioxx, known generally as Refecoxib that was designed, manufactured, marketed and distributed by Merck to relieve pain and inflammation.  The FDA approved Vioxx in May 1999 and the drug was withdrawn from the market on September 30, 2004.  Thousands of individuals filed suit and numerous class actions were filed against Merck in state and federal courts throughout the country.  It is estimated that 105 million prescriptions of Vioxx were written between May 1999 and September 2004 and that approximately 20 million patients took Vioxx in the United States.

The Judicial Panel on Multidistrict Litigation created the Vioxx MDL in February 2005 and this Court conducted its first Vioxx status conference in March 2005.  The Court appointed a PSC.  Oldfather was not appointed to the PSC.  There were also various state court Vioxx cases and consolidated state court proceedings occurred in California, New Jersey and Texas, as well as others.  A number of state governments also filed suit to recover amounts paid for Vioxx prescriptions on behalf of their citizens or civil penalties pursuant to state consumer protection statutes.  Bellwether trials took place in the MDL and trials took place in several state venues.  After protracted settlement discussions, on November 9, 2007 a 4.85 billion Master Settlement Agreement was announced to resolve most Vioxx-related personal injury claims through a resolution program.  Once again, Oldfather was not actively involved in the common benefit efforts of the Master Settlement Agreement.

After the Court addressed personal injury cases, most of which were resolved in the Master Settlement Agreement, the Court turned its attention government action suits filed against Merck, which involved no less than ten (10) states that sought damages for monies paid by the state for Vioxx, through the state's Medicaid program. After a bellwether trial, a vast majority of these "Government Action" cases were either settled or remanded. Oldfather was not involved in the Government Action cases, which are known as the "Attorney General" matters. The Court also addressed Third-Party Payor claims, which involved 48 private health benefit providers (that is, the TTPs) who filed claims seeking to recover the sums they paid to reimburse thousands of their members for the damages the members sustained from their purchase of Vioxx. These cases were first filed in New Jersey state court, and other TTP actions were later filed and centralized before Judge Carol Higbee. The cases were aggressively litigated for several years and ultimately went to the New Jersey Supreme Court. Thereafter, after several years, cases were consolidated as part of a California Judicial Council Coordinated Proceedings and simultaneously, various TTP cases filed in various federal courts were transferred to this Court as part of the MDL. This Court issued Pre-Trial Order No. 38 and on September 14, 2009, Merck and counsel for the private TTPs executed a Settlement Agreement. Once again, Oldfather was not involved in these TTP cases.

Despite not participating in but a few distinct cases, Oldfather filed with the Court a motion to assert a right to recover a fee from the Consumer cases [Rec. Doc. 65498]. In that filing, Oldfather acknowledges what her role was in the litigation. In Oldfather's

own words as set forth in the motion, Oldfather's role was "Lead Counsel for the PSC for the ineligible or not enrolled claims (see Pre-Trial Order 45) and as Liaison Counsel for the same cases." This acknowledgment by Oldfather accurately depicts her function and role in the entire Vioxx litigation.[1]

Pre-Trial Order No. 45, issued July 13, 2009, set forth the duties and responsibilities that the Court expected of Oldfather in connection with those particular cases. Attached as Exhibit "A" to Pre-Trial Order No. 45 is a list of 113 specific claims that were the subject of Oldfather's appointment. Thereafter, on January 8, 2010, Pre-Trial Order No. 45A was issued which added additional members to the Plaintiffs' Steering Committee, who were to assist Oldfather. On August 20, 2009, the Court issued Pre-Trial Order No. 46 which addressed 116 cases that were subject to "Lone Pine" preliminary case-specific expert reports required by Pre-Trial Order Nos. 28 and 29. Furthermore, on June 14, 2010, the Court issued Pre-Trial Order No. 56 which further addressed the responsibilities of Oldfather "for Ineligible or Not Enrolled Claims" and attached as Exhibit "A" a list of 46 claims that were also subject to Oldfather's responsibility.[2] In total, Oldfather was appointed by the Court to act as Plaintiffs' Liaison Counsel for 165 specific cases each identified in those Pre-Trial Orders. Oldfather

---

[1] Though Oldfather may have represented a few individual claimants that participated in the Master Settlement Agreement, she performed no common benefit work in the personal injury, Consumer, Government Actions/Attorney General, Third-Party Payor portions of this case or other aspects of the MDL, except as referenced above as to 165 specific cases.

[2] Shawn G. Foster also was appointed, but did not appear or submit common benefit hours. Further, Grant L. Davis and Thomas J. Preuss, were named to a PSC for the IE/NE claims and they also did not appear or submit common benefit hours.

volunteered for this appointment and responsibility. Oldfather had no other responsibilities in this MDL. Oldfather had a limited role and the Court, Plaintiffs' Lead Counsel, PLC and Merck's counsel repeatedly addressed this limited role with Oldfather. It was always clear that Oldfather volunteered to handle these 165 cases and took it upon herself, at her own risk, to act as Liaison Counsel for these select few cases.

In an effort to assist Oldfather, the Plaintiffs' Steering Committee ("PSC") granted access to Oldfather so she could obtain materials in PSC depository and work product materials. This was done without any contribution to the common benefit fund or charged against fees for individual cases.

The Court is well aware that Pre-Trial Order No. 6 (PTO 6), dated April 8, 2005, set forth procedures and guidelines for plaintiff's counsel's time and expense submissions and the Court approved the retention of Garrett, to assist and to provide accounting services. The Court's order did not delineate the recordation of time or expenses specific as between the Consumer cases, the Attorney General cases, the TTP cases, the Oldfather 165 cases or work performed by common benefit counsel for specific matters. However, it is very clear that Oldfather's time and expenses that Oldfather reported only should apply to the 165 cases she was responsible for and volunteered to work on as set forth in Pre-Trial Order No. 45. Garrett, in his compilation of time and expense submissions, provided monthly to the Court under seal sets forth categories such as Attorney General, MDL General, and Consumer. Though Oldfather's time is recorded, it is very easy to pull out and isolate the specific work that Oldfather performed in connection with this

6

MDL.   The reports contain information outlining time spent on various matters. Oldfather's time and expenses were submitted, but her time and expenses should have only been incurred for the select few 165 cases she was appointed to represent.  Oldfather should have no time or expenses as a result of common benefit efforts in any other aspect of this MDL.

Most recently on July 11, 2018, PLC filed with the Court a Motion to Shut Down Website [Rec. Doc. 65562].  PLC also filed with the Court on June 1, 2018, a Motion to Authorize Plaintiffs' Liaison Counsel to Reimburse the Court Appointed CPA [Rec. Doc. 65560].  Though Oldfather has not been involved with these filings, a simple review of recent filings made by PLC will reflect that the Vioxx MDL is not completely over as Oldfather suggests and PLC continues to perform work.[3]

The Motion for Disbursement of Funds filed on July 11, 2018 [Rec. Doc. 65563] specifically seeks to allow PLC to continue with its responsibilities.  Expenses continue to be incurred and ongoing expenses must be paid.  These include, among other things, File & Serve Xpress, the storage of materials, expenses of Garrett, payment of taxes, and other miscellaneous expenses which will include ultimately shutting down the MDL once the Court issues appropriate Orders.  There are presently sufficient funds that can be utilized so that these ongoing expenses can be paid.  Oldfather mistakenly suggests that

---

[3] This Court should be aware that an Order was issued in the Attorney General matter directing that costs be reimbursed [*see* Rec. Doc. 65557, filed May 2, 2018], an Order was issued on June 7, 2018 directing the payment of taxes [Rec. Doc. 65561], TTP unpaid common benefit assessments are still outstanding, the Consumer and MDL General fees have not yet been disbursed and it is believed that there are other various matters that remain open on the Court's docket.

the litigation has been concluded and seeks to minimize the expenses that the Court-Appointed CPA and PLC believe will need to be paid.  The efforts by Oldfather only seek to prolong the time, effort and expense incurred in this MDL.  This Court has received financial reports from Garrett.  Copies of the financial reports have been sent to the PSC and to date, there have not been objections received to any of the expenditures.  Should Oldfather desire to question the Garrett reports and any of the financial matters that date back from the inception of this MDL, a span of fourteen (14) years, then Oldfather should be funding this inquiry at her own expense and not having the PSC incur further costs for time that Oldfather is demanding of the Court-Appointed CPA.  All financial matters have been disclosed to the Court on an ongoing routine basis.  All funds have been accounted for.   The Court-Appointed CPA reviews the check register and reviews every deposit and expense for the account and reports them to the Court and the Court has access to this information.  Since the inception of the MDL, total shared and held costs expenses have been approximately $42 million.  The Court has ordered reimbursement previously of a number of these expenses, including held costs which have been approximately $34 million and shared costs of approximately $8 million.  This information and the support for all of these expenses has been presented to the Court and the Court granted approval for such reimbursements.   All of these expenses have been handled in accordance with Pre-Trial Order No. 6.  The Court-Appointed CPA, Garrett, has overseen all time submissions, as well as held and shared cost submissions.  The PSC has incurred $1,637,539.30 of expenses for accounting services in this matter (Wegmann

Dazet & Co. - $1,398,597.72 and Philip Garrett - $238,941.58) thus far in this MDL. Several law firms have questioned time and expense at various times over the course of the 14 years of this litigation and according to Garrett, no discrepancies have been discovered.  At this point, the Court should confirm all costs having been reviewed and accepted by the Court-Appointed CPA or, alternatively, allow Oldfather to question any cost, in writing, so that Garrett can respond accordingly and further Oldfather should be responsible for the payment of any Garrett time and expenses incurred for such review.

There is no reason for multiple firms to be assessed for ongoing expenses in this MDL at this time.  Most of the law firms have ceased working on Vioxx matters and concluded their efforts in the MDL.  PLC continues to work on Vioxx matters and will continue to do so until the MDL is completed.  PLC's responsibilities have continued since the initial appointment and will continue until PLC is discharged by the Court. These duties have included working on personal injury, TTP, Attorney General, Consumer, Oldfather cases and anything else required by the Court.  This Vioxx MDL

has gone on for multiple years and a substantial amount of the cases have been

concluded.  It is time for the Court to wind-up and conclude this matter.

Respectfully submitted,

Dated: July 30, 2018

/s/ Leonard A. Davis
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 1657*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Liaison Counsel, Ann B. Oldfather, and Phillip Wittmann, by U.S. mail and/or e-mail or by hand delivery and/or e-mail, and upon all parties by electronically uploading the same to LexisNexis File & Serve Advanced in accordance with Pretrial Order No. 8(B), and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 1657 on this 30th day of July, 2018.

/s/ *Leonard A. Davis*
Leonard A. Davis