# THE GETTY LAW GROUP<sub>PLLC</sub>
ATTORNEYS AT LAW

1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 259-1900
Facsimile: (859) 259-1909

Richard A. Getty, Managing Member
Extension 217
E-Mail: rgetty@gettylawgroup.com

Via dello Studio
No. 8
50122 Florence, Italy
Telephone: 011-39-055-290-394
Facsimile: 011-39-055-264-5596

**VIA E-FILING**

September 6, 2018

Hon. Eldon E. Fallon, Judge
United States District Court
Eastern District of Louisiana
500 Poydras Street
New Orleans, Louisiana 70130

    Re:    In re: Vioxx Product Liability Litigation
             Case No. 05-MD-01657/MDL Docket No. 1657 (E.D. La.)
            <u>Response To Letter Brief Submitted By Johnson & Perkins</u>

Dear Judge Fallon:

      I am writing in response to the Letter Brief dated August 27, 2018 and submitted by Dennis Johnson on behalf of the fee request for his firm, Johnson & Perkinson ("J&P").[1] The majority of the Letter Brief is directed in support of J&P's request for a "fair and reasonable fee award and reimbursement of expenses in the consumer class." Yet, in making his argument that J&P is entitled to a certain fee award, Mr. Johnson makes reference to the contributions of the undersigned and his firm, The Getty Law Group, PLLC ("GLG"), and broadly asserts that much of the time GLG expended litigating against Merck and seeking to improve the notice to the class should be excluded from any fee award ultimately approved by the Court.

      While Mr. Johnson is of course entitled to voice his opinion about his firm's role and contribution to the MDL and the Court's consideration and determination of the proper fee allocation in this case, the purpose of this Response is twofold: (1) to briefly highlight GLG's significant contributions to the Vioxx Consumer Class litigation, including the decade-plus Kentucky Litigation, the MDL Settlement, and participation on the Common Benefit Fee and

---

[1] I apologize for my delayed response, but I am still recovering from the triple level spinal fusion I underwent on August 28, 2018 and will likely be out of the office for several weeks.

# THE GETTY LAW GROUP PLLC

Hon. Eldon E. Fallon, Judge
September 6, 2018
Page 2

Cost Committee ("FCC")[2]; and (2) to clarify (to the extent possible) the stated goals and obligations of the Fee Committee in making its fee allocation recommendation.

Regarding GLG's contributions to the consumer class litigation, it must first be noted that GLG filed suit on behalf of a class of Kentucky consumers in October 2004 – before the MDL was even formed. Thereafter, GLG engaged in nearly a decade of difficult litigation with Merck, which included removal to Federal Court, successfully obtaining remand back to the Pike Circuit Court, conducting discovery, surviving Summary Judgment, obtaining class certification, and defending that certification through two trips to the Kentucky Supreme Court on Mandamus Motions filed by Merck against the sitting judge. While the Kentucky Court of Appeals decertified the class, an appeal from that ruling was pending before the Kentucky Supreme Court for approximately seven months when the undersigned agreed to a settlement of the Kentucky litigation and further agreed that the Kentucky proceeding could be folded into the MDL nationwide settlement of the consumer claims. Critically, as part of the settlement of the Kentucky litigation and its inclusion in the MDL nationwide consumer settlement, both Merck's counsel and the Plaintiffs' Steering Committee (Russ Herman and Elizabeth Cabraser) acknowledged in writing GLG's "efforts in helping to achieve a nationwide settlement on behalf of consumers" and agreed not to object to an award of additional fees to GLG from the common benefit fund up to a certain amount. It is my understanding that Merck flatly refused to consider a nationwide settlement unless the Kentucky litigation was included in such a settlement.

Following the settlement of the Kentucky litigation, I actively participated in the MDL proceedings including attending every Status Conference after approval of the settlement. My efforts also included developing and recommending an effective reminder notice campaign as well as other objections aimed to improve notice to and participation by class members. Those objections led to improvements in the notices used and increased the Kentucky claimant level of participation from 28th to 9th in overall claimants. I have also had the honor of serving on the Consumer Claims Fee Committee, participating in nearly every meeting, Status Conference, and hearing. I also strongly advocated for the Fee Committee to seek a substantial fee award consistent with the Settlement Agreement and volunteered to (and in fact did) take the lead role in drafting both the Aggregate Fee Petition ("AFP") and the Reply, the latter of which effectively convinced Merck to withdraw its objection to the AFP. The Court ultimately agreed with the arguments in the AFP that the fee award should be calculated using the percentage of the common fund method and awarded attorneys' fees in the amount of $4,025,000. [See Doc. Rec. 65537].

---

[2] GLG adopts and incorporates its prior submissions to the FCC and the Court, including its Fee Affidavit, that set out in detail GLG's significant contributions to the consumer class litigation.

# THE GETTY LAW GROUP<sub>PLLC</sub>

Hon. Eldon E. Fallon, Judge
September 6, 2018
Page 3

Despite GLG's extensive involvement and contribution to consumer class claims, J&P's Letter Brief appears to suggest that the number of hours expended by GLG (over 2,500) should not be given "full credit" or "weight" in calculating an appropriate fee award because those hours are higher than the fees incurred in litigating for all states in the MDL. See Letter Brief at pp. 8-9. On a similar note, J&P asserts that its 1,374.5 hours of approved time, multiplied by the Court's blended rate of $443.29 per hour, results in a modified lodestar of roughly $610,000 and that it should therefore be awarded a pro rata share of the overall fee award. Both of these assertions, however, seem to misunderstand the relevant factors considered by the Court and the FCC in determining a fee award and making an allocation recommendation, respectively.

The Court did not award fees and the FCC is not tasked with recommending a specific fee allocation based upon a strict lodestar analysis. Indeed, there would be little need for a fee committee at all if the Court were simply going to perform a basic mathematical calculation based upon approved hours and a blended hourly rate. The Court instead directed the Fee Committee to "evaluate the Fee Applicants' common benefit contributions, using objective measures and the FCC's subjective understanding of the relevant contributions of each Fee Applicant" that furthered the Consumer Settlement Agreement and/or otherwise substantially advanced MDL litigation on behalf of all consumers. [See Rec. Doc. 65311, Pre-Trial Order ("PTO") 59(A)]. Some of the "objective measures" include consideration of the Johnson factors, twelve criteria that, in turn, expressly weigh the time and labor required. [See id. at ¶23 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).] The Court further explained however that "[t]he over-arching guideline that the FCC is to consider is the relative common benefit contribution of each Fee Applicant to the outcome of the litigation," including at least nine (9) specific factors. [Id. at p. 11 (emphasis added).] In other words, the hours expended by individual Fee Applicants is certainly an important factor to be considered, but it is only one of many other factors to weigh in determining the relative contributions of the Applicants to the outcome of the litigation.

Here, without divulging or disclosing the privileged and confidential internal deliberations of the Fee Committee[3], the undersigned states his belief that the Fee Committee has complied with the Court's directives, considered all relevant factors, and otherwise performed its obligations in reaching a unanimous fee allocation recommendation. [See Rec. Doc. 65574 (noting that Fee Committee desires to submit a unanimous Allocation Recommendation to the

---

3   J&P recognizes, but also appears to criticize, the confidential nature of the Fee Committee's work, asserting that it had difficulty obtaining information and staying abreast of the progress on fee allocation issues. See J&P Letter Brief at p. 2, n.1. While J&P may take issue with the privileged nature of the Fee Committee's communications and deliberations, the Court's directives in that regard are clear. See PTO 59(A) at ¶5. In addition, it is worth noting that the undersigned returned every phone call from Mr. Johnson and endeavored to keep Mr. Johnson informed about the status of fee issues to the extent possible and within the confines of the confidentiality obligations of Fee Committee members.

# THE GETTY LAW GROUP PLLC

Hon. Eldon E. Fallon, Judge
September 6, 2018
Page 4

Court and discuss further steps and procedures to be taken in connection with that Recommendation).] The undersigned further believes that the number of hours GLG expended – in opposing Merck in the Kentucky litigation, in resolving that litigation to allow for a nationwide settlement, in fighting for and helping improve claimant participation, and in seeking and ultimately obtaining a common benefit fee award – accurately demonstrate GLG's relative common benefit contribution to the outcome of the litigation. Accordingly, I respectfully request that the Court consider the facts recounted above (and set out in more detail in GLG's Fee Affidavit and related submissions) in determining GLG's appropriate fee award in this matter.

Respectfully submitted,

Richard A. Getty

RAG/mwe
ragltr10732