**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | : | **MDL NO. 1657** |
| **IN RE:  VIOXX** | : | |
| PRODUCTS LIABILITY LITIGATION | : | **SECTION "L" (4)** |
| | : | |
| | : | **JUDGE FALLON** |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : | | **MAG. JUDGE KNOWLES** |

**THIS DOCUMENT RELATES TO ALL CASES:**

### ORDER RECOMMENDING TERMINATION OF MULTIDISTRICT LITIGATION

Vioxx is the trade name for the prescription drug known generically as Rofecoxib.
Merck, a New Jersey corporation, researched, designed, manufactured, marketed, and distributed
Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid arthritis,
menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug Administration
(FDA) approved Vioxx for sale in the United States. Vioxx remained publicly available until
September 30, 2004, when Merck withdrew it from the market after data from a clinical trial
known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular
thrombotic events such as myocardial infarctions (heart attacks) and ischemic strokes.

Thereafter, thousands of individual suits and numerous class actions were filed against
Merck in state and federal courts throughout the country alleging various products liability, tort,
fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written
in the United States between May 20, 1999, and September 30, 2004. Based on this estimate, it
was thought that approximately 20 million patients have taken Vioxx in the United States.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation (JPML) conferred
MDL status on Vioxx lawsuits filed in federal court and transferred all such cases to this Court to

coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See* In re *Vioxx Prods. Liab. Litig.,* 360 F. Supp. 2d 1352 (J.P.M.L. 2005). One month later, on March 18, 2005, this Court held the first status conference in the Vioxx MDL to consider strategies for moving forward with the proceedings. Shortly thereafter, the Court appointed a Plaintiffs' Steering Committee (PSC) and Defendant's Steering Committee to represent the parties and to meet with the Court once every month to review the status of the litigation.

Suits were filed in various state courts. Some were removed to federal court and transferred to this Court. Others remained in state court due to lack of diversity. On October 30, 2002, California became the first state to institute a consolidated state court proceeding. New Jersey and Texas soon followed. This Court coordinated the MDL proceeding with these state courts and worked closely with the state judges. Additionally, a number of state and local governments filed suits against Merck seeking to recover amounts paid for Vioxx prescriptions on behalf of their citizens or civil penalties pursuant to state consumer protection statutes. Soon after these "government action" cases were filed, they were promptly removed to the appropriate federal district courts by Merck, where they remained briefly before being transferred to this Court by the JPML. Finally, several thousand consumers filed claims seeking return of the purchase price expended for the drug as well as any statutory damages due them.

Following six "bellwether" trials in this proceeding—as well as trials in state court proceedings in Alabama, California, Illinois, Florida, New Jersey, and Texas—the negotiating plaintiffs' counsel (NPC) and Merck's counsel engaged in protracted settlement discussions over the course of a year, conducting hundreds of in-person and telephone meetings. On November 9, 2007, two years after the commencement of the MDL proceeding, the parties announced a $4.85

billion master settlement agreement (MSA) that intended to—and actually did—resolve most Vioxx-related personal injury claims through a resolution program. In its recitals, the MSA expressly states that its purpose was to "establish a pre-funded, structured private 'opt-in' settlement program . . . to resolve . . . claims against Merck involving heart attacks, ischemic strokes and sudden cardiac deaths."

Having settled a large majority of the personal injury cases within this MDL, the Court turned its attention to government actions suits filed against Merck. Several government entities had pending litigation in this MDL, including suits brought on behalf of various states, including but not limited to Alaska, Colorado, Florida, Louisiana, Mississippi, Montana, Pennsylvania, Utah, Oklahoma, and South Carolina. These suits sought damages for monies paid by the state for Vioxx, through the state's Medicaid program. These suits were based around similar claims, namely that each respective state would not have approved payment for Vioxx, through their Medicaid programs, had they known of its cardiovascular risks. After one bellwether trial, the vast majority of these "government action" cases were either settled or remanded.

Finally, the Court was able to turn its attention to the consumer claims. On August 2, 2005, the PSC had filed a Purchase Claims Master Class Action Complaint (Purchase Claims Complaint), naming individual consumers who purchased Vioxx for themselves. R. Doc. 790. The Purchase Claims Complaint sought relief under a myriad of laws, including state consumer protection statutes. *Id.* at 60-75. Plaintiffs in the Purchase Claims complaint took Vioxx, but did not suffer any ill effects from the drug and, therefore, did not qualify for participation in the opt-in settlement program. Nonetheless, Class Members sought recovery for a return of the purchase price of the drug, as well as any medical expenses that were directly related to their Vioxx

prescription. Class Members argued that even though they were not injured, had they known about the negative side effects, they would never have purchased Vioxx.

After substantial settlement negotiations spanning several years, the parties reached a compromise regarding the Consumer Class claims in 2012. The proposed Settlement allocated a common benefit fund of up to $23 million, from which Class Members sought recovery for their total out-of-pocket provable costs for purchasing Vioxx and up to $75.00 in connection with post-withdrawal medical consultation related to Vioxx use or in lieu thereof a one-time payment of $50.00 with proof of a Vioxx prescription. Those amounts, however, were subject to a *pro rata* reduction if all claims, administrative, attorneys' fees, and other costs exceed the $23 million cap.

BrownGreer issued the first Consumer Class notice on August 22, 2014 and received 690 responses, a 29% response rate, of which 83% of those responses cured their problematic claims. The second notice went out on October 23, 2014, and BrownGreer received 344 responses constituting a 20% response rate. Eighty-four percent of those responses cured their ineligible claims.

The final period to cure any deficient claims has closed. As reported by BrownGreer, the final number of claims total 8,757. At this stage in the litigation, Plaintiffs agree that Merck has met all of its obligations under the agreement and all claimants have been paid. The total amount paid to eligible claimants was $698,767.22. The Court continues to work to resolve payment of counsel for the Consumer Claims.

However, as all cases in this MDL have been closed and all funds have been disbursed to claimants, this Court finds that it is now appropriate to close this matter.

Accordingly, this Court recommends to the Judicial Panel on Multidistrict Litigation that the litigation known as In re *Vioxx Products Liability Litigation*, bearing MDL 1657, be terminated. Should the JPML accept this Court's recommendation to terminate this proceeding, the Clerk of the United States District Court for the Eastern District of Louisiana shall close MDL 1657. Likewise, should the JPML accept this Court's recommendation to terminate this multidistrict litigation proceeding, and any party subsequently files in or removes to a United States District court any new claim related to this proceeding, the Court would welcome the transfer of any such action to this Court for further proceedings given the Court's familiarity with this litigation.

IT IS SO ORDERED

New Orleans, Louisiana, this 18th day of September, 2018

_____
UNITED STATES DISTRICT JUDGE