## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|                                | : | MDL NO. 1657 |
|--------------------------------|---|--------------|
| IN RE: VIOXX                   | : |              |
|    PRODUCTS LIABILITY LITIGATION | : | SECTION: L (3) |
|                                | : |              |
|                                | : |              |
|                                | : |              |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | |

**THIS DOCUMENT RELATES TO ALL CASES**

### ORDER & REASONS

Following the Court's September 26, 2018 Order & Reasons setting the appropriate common benefit fee in this consumer class action for the total sum of $4,255,000 or 18% of the $23,000,000 available settlement fund, R. Doc. 65586, the Court directed the Fee Allocation Committee, which consists of those attorneys who most actively performed work in this litigation, to meet with all counsel seeking common benefit fees, afford each an opportunity to justify their fee request with argument and supporting documents, and in due course, to make recommendations as to the appropriate distribution of these funds, R. Doc. 65587. The Committee filed its recommendations on October 18, 2018. R. Doc. 65589. These recommendations were also posted on the Court's website. The Court ordered that any objections thereto be filed within ten days of the posting. R. Doc. 65590. Two objections were filed. R. Docs. 65591, 65592. These objections were set for hearing, and all interested parties were invited to file any briefs or documents supporting or opposing these objections. R. Doc. 65593. The Court heard oral argument on these objections on December 5, 2018, R. Doc. 65600.

In each case in which the Court is called upon to determine the proper allotment of attorney's fees, the Court must first determine what work product most likely produced the

1

favorable result. The goal of this process is to assure, as much as possible, that the attorney's compensation accurately reflects the role each attorney's work effort played in bringing about the favorable result. The amount of time logged or even the nature of the work performed by an attorney seeking compensation does not always justify a higher fee. Each case needs to be analyzed to correlate the work performed with the result achieved. In some cases, trials are the primary factor in producing a result; in other cases, motions on preemption or general causation are the dispositive factors.

In the present matter, there were no trials or case-altering motions. Instead, the favorable settlement and the successful dissemination of the class notice was the result of persistence, skilled negotiation, and creative solutions to challenging issues in the formulation and circulation of a proper notice. These are the factors that, in the Court's view, deserve common benefit compensation in this case. Determining which factors primarily contributed to this favorable result and the value to assign them injects an unavoidable amount of subjectivity in the Court's fee evaluation. The best that can be done to assure the validity of the analysis is to base the subjectivity quotient on sufficient facts and experience and to invite input from those affected. This Court has attempted to strike this balance through a tedious and long, drawn-out process.

### I. BACKGROUND

The Court now has before it the recommendations of the Fee Allocation Committee, the briefs and oral argument of two objectors, the Fee Allocation Committee's response to those objections, and reports from the court-appointed Certified Public Accountant ("CPA"), Philip A. Garrett, detailing the time spent and the nature of the work performed by those seeking a fee for common benefit work. After reviewing these documents, considering the arguments of counsel, and drawing upon the Court's experience and observations accumulated over the course of more

than ten years of close supervision of this litigation, this Court makes the following allocation of common benefit fees for those attorneys who performed common benefit work that contributed to the result in the settlement of the consumer aspect of this litigation.

The Court will address each common benefit applicant in alphabetical order, setting out the amount of the allocation and the factual basis underlying the Court's conclusion.

1. **BARRIOS, KINGSDORF & CASTEIX, LLP ("BKC")**

The CPA's report reflects that BKC has 787.75 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends BKC receive $803,131.25 in fees.

Dawn Barrios lead the Federal/State Committee in the MDL and actively participated in all matters involving consumer claims. She worked as liaison counsel, coordinating the activities of the attorneys for the various state class actions with the MDL action. BKC assisted in the implementation of the Consumer Class Settlement. During the litigation, the firm actively handled briefing and discovery matters and worked closely with class counsel, Russ Herman and Elizabeth Cabraser. The firm communicated on a regular basis with Plaintiffs' counsel and interacted frequently with Merck to coordinate discovery, briefing, and pre-trial matters. The firm also participated in enhancing the notice program to class members to increase participation in the Consumer Class Settlement and worked with BrownGreer to implement the Settlement Program. This firm has been present at status conferences and hearings regarding consumer claims. Based on the common benefit contributions and considering the nature and significance of the work performed by BKC, the Court awards the firm common benefit fees in the amount of $703,131.25.

## 2. BINGHAM GREENEBAUM DOLL, LLP ("BGD")

The CPA's report reflects that BGD has reported 2,521.25 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends BGD receive $148,925.00 in fees.

The firm actively prosecuted the *Kantner* state court class action filed in Indiana, which was removed to federal court and remanded to state court in early 2005, prior to the formation of this MDL. Thereafter, BGD actively litigated the *Kantner* action, participating in intensive briefing, filing amended complaints, serving discovery, handling appellate activity, and filing a motion for class certification. BGD also conducted and responded to discovery and retained an economics expert, who provided a model for class-wide economic loss damages.

BGD avers the existence and active prosecution of the *Kantner* action, until the nationwide Consumer Class Settlement, posed a risk for Merck. Most, if not all, of the hours the firm recorded were for work performed in connection with state cases, and not the MDL consumer class action. It is practically impossible to single-out the hours spent advancing the state case that contributed to the settlement of this MDL consumer class action. Moreover, these hours were not contemporaneously reported to the Court and were not contemporaneously vetted. Finally, if the work submitted had any effect on the settlement in the MDL consumer case, it was at best indirect. However, the firm's persistent efforts had some impact on the consumer aspect of this MDL and was a factor in advancing a favorable result. Taking the above into consideration, the Court finds a fair and reasonable common benefit fee for the BGD firm is $178,710.00.

### 3. THE GETTY LAW GROUP, PLLC ("GETTY")

The CPA's report reflects that GETTY has 2,846.20 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends GETTY receive $803,131.25 in fees.

GETTY filed suit on behalf of James Ratliff and a proposed class of Kentucky consumers in October of 2004. Several members of GETTY were involved in the Kentucky consumer related matters. The Kentucky case was removed to federal court and remanded to Pike Circuit State Court. It involved a substantial amount of discovery, motion practice, and appellate briefing. The claims were defended vigorously by Merck. The Kentucky trial court certified a class; the Kentucky court of appeals reversed the trial court and the matter was appealed to the Kentucky Supreme Court. While the appeal was pending before the Kentucky Supreme Court, the matter was resolved and the claims were included in the Consumer Settlement of this MDL.

Prior to the settlement in the MDL, most of GETTY's reported hours were for work performed in the Kentucky state court and not in the MDL consumer class action. Nevertheless, Merck recognized the efforts of GETTY in the Kentucky Consumer Action and its state case became a necessary component for a final settlement agreement. After the settlement in the MDL, GETTY actively participated in increasing the number of claims in the Settlement Program. Richard Getty appeared several times before the MDL Court to assist in ultimate resolution of consumer matters in the MDL. This firm also played a significant role in crafting the class notice and insuring it was widely and properly distributed. GETTY's persistence in the state court action and its work in formulating and disseminating an adequate class notice played a significant role in

the ultimate result in the MDL Consumer Class Action. Taking the above into consideration, the Court finds a fair common benefit compensation for GETTY is $703,131.25.

4. **HARKE CLASBY & BUSHMAN, LLP ("HARKE")**

The CPA's report reflects that HARKE has 97.70 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends HARKE receive $127,650 in fees.

HARKE actively participated in the prosecution of consumer claims in connection with Merck's motions to strike class allegations and dismiss the Florida claims. HARKE filed a Florida consumer class action that eventually became a part of the Vioxx MDL. As with some of the other firms seeking common benefit fees, HARKE logged most of its hours on state claims and not in advancing the MDL consumer class action. The work the firm did in the Florida consumer action may have given some incentive to Defendant, Merck, to resolve the MDL consumer claims, but the firm's work was at best indirect. Taking the above into consideration, the Court finds an appropriate fee for HARKE is $157,435.00.

5. **HERMAN, HERMAN & KATZ, LLC ("HHK")**

The CPA's report reflects that HHK has 552 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends HHK receive $835,043.75 in fees.

Russ Herman of HHK was appointed Plaintiffs' Liaison Counsel in Pre-Trial Order No. 2 at the inception of the Vioxx MDL. He was assisted by his partner, Leonard Davis, and was responsible for the organization in ongoing common benefit matters pertaining to the consumers' claims in the MDL. HHK directed and oversaw the activities in the consumer matters in the MDL, which included attending court conferences, handling discovery and the PSC depository, overseeing and coordinating the preparation of consumer claims, participating in briefing matters,

as well as interfacing with all Plaintiff counsel and the Court. HHK solely met with defense counsel and was primarily responsible for negotiating, drafting, and developing the Vioxx Consumer Class Settlement. The firm worked closely with co-class counsel, Elizabeth Cabraser, as well as Dawn Barrios and Richard Getty to implement the Consumer Class Settlement, which included a broad-reaching, state-of-the-art, multi-lingual class notice procedure and used social and broadcast media to reach possible class members. Dawn Barrios was responsible for monitoring and reporting progress and outcomes in state and federal consumer cases, and Elizabeth Cabraser worked with HHK as appointed co-lead counsel for the consumer cases. The firm appeared at all court hearings, made presentations to the Court, and assisted the Claims Administrator, BrownGreer, to successfully resolve the Vioxx Consumer matters. Russ Herman's efforts and skilled negotiation were indispensable in bringing about a fair and appropriate resolution in the consumer aspect of this case. Accordingly, the Court finds an appropriate fee for HHK is $744,978.75.

6. **JOHNSON & PERKINSON ("J&P")**

The CPA's report reflects that J&P has 1,374.50 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends J&P receive $170,200.00 in fees. J&P filed a timely objection to the Committee's recommendation, arguing it was "involved in virtually every substantive aspect of the consumer litigation preceding the settlement." R. Doc. 65592 at 1. It contends its participation in drafting a motion for class certification and an opposition to a motion to dismiss as well as its "participation in Plaintiffs' successful efforts to ward-off Defendant's attempts to have the Court enter Judgment in Defendant's favor" was integral to achieving a successful settlement in this case. *Id.* at 2.

J&P has participated in the MDL essentially since its inception, with its efforts devoted solely to Plaintiffs' economic loss claims, both for Third Party Payers ("TPP") and consumers. As

such, J&P participated in the Purchase Claims Committee and performed assignments under the direction of its Chair, Elizabeth Cabraser. J&P filed class actions on behalf of consumers in Vermont and Massachusetts. These became part of the MDL in 2005. Thereafter, the J&P firm served on the Purchase Claims Committee, participated in drafting the Master Purchase Claims Complaint in the early stages of the MDL, participated in discovery and document analysis, and assisted in the preparation of submissions opposing Merck's motions to dismiss the consumer claims. J&P canvassed all state consumer laws and summarized the requirements for successfully bringing an action in each of the states and the relief which might be available in those states. While J&P's focus was primarily on the Massachusetts and Vermont claims, it also participated in the review and analysis of issues affecting other states' consumer claims. The work of J&P was performed primarily by its main partner, Dennis Johnson, throughout the litigation. Accordingly, the Court finds an appropriate common benefit fee for J&P is $370,200.00.

7. **KELLER, ROHRBACK, LLP ("KELLER ROHRBACK")**

The CPA's report reflects that KELLER ROHRBACK has 642 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends KELLER ROHRBACK receive $148,925.00 in fees.

The participation of KELLER ROHRBACK in the Vioxx consumer litigation began when it filed state-wide medical monitoring consumer class actions in Washington, Arizona, Idaho, and Tennessee. These cases ultimately became part of the Vioxx MDL. KELLER ROHRBACK's early activity included medical monitoring activity. However, after the medical monitoring claims were voluntarily dismissed in the MDL in 2009, KELLER ROHRBACK continued to participate in consumer-specific activities. These included assisting with the briefing and submission in opposition to Defendant's Motion for Judgment on the Pleadings or to Strike Class Allegations in

the Purchase Claims Master Complaint. Thereafter, when the consumer class settlement was reached, KELLER ROHRBACK continued to participate in the consumer settlement claims reminder program, fielding questions from consumer class members and assisting them in filing their claims, which increased both claims and payouts. Most of the hours recorded by this firm were spent in state cases for the medical monitoring claimants. The firm's work in the MDL consumer case occurred for the most part after a settlement was reached and consisted of perfecting and distributing a proper and effective notice. Taking all of the above into consideration the Court finds that an appropriate fee for KELLER ROHRBACK is $178,710.00.

### 8. LAW OFFICE OF JAMES P. LYLE ("LYLE")

The CPA's report reflects that LYLE has 280.69 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends LYLE receive $148,925.00 in fees.

Mr. Lyle filed a New Mexico State court action on behalf of New Mexico Vioxx consumers, which was removed to federal court and became part of the MDL. Although he did not actively participate in the prosecution of consumer claims in the MDL, he remained vigilant of the New Mexico class members' interests. After the Consumer Class Settlement was negotiated and submitted to this Court for approval, Mr. Lyle appeared and challenged the notice program, which he argued was not sufficient to inform New Mexico class members and provide them an opportunity to participate in the settlement, and noting that it could be improved by adding Spanish language notice and additional notice outlets. The Court and Class counsel recognized the suggestion, and the Court improved and expanded the class action notice program to address these concerns. The result was a marked increase in claims from New Mexico class members. Mr. Lyle

continued to be active with respect to the notice and claims stimulation programs. Based on the above, the Court concludes an appropriate fee for LYLE is $200,000.00.

9. **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP ("LIEFF CABRASER")**

The CPA's report reflects that LIEFF CABRASER has 671.65 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends LIEFF CABRASER receive $813,768.75 in fees.

Elizabeth Cabraser and the LIEFF CABRASER firm have worked on this MDL since its inception. Ms. Cabraser was appointed to serve as a member of the PSC and subsequently to chair the Purchase Claims Committee (which at that time included consumer claims), the AG committee, the Third-Party Payers (TPP) committee, and was ultimately appointed as one of the Settlement Class Counsel for the Consumer Class. LIEFF CABRASER had primary responsibility for the drafting of the Purchase Claims Master Complaint, the defense of that complaint, and the briefing and oral argument of motions to dismiss it. The firm led the opposition to Merck's motions to strike class allegations and to dismiss the consumer claims, the outcome of which was under submission to this Court when the Consumer Class Settlement was reached. As Chair of the Committee dedicated to the consumer claims, Ms. Cabraser worked closely with HHK and authorized and directed the work of other lawyers that related to the prosecution and protection of the consumer class claims from the beginning of these MDL proceedings, through the approval and completed implementation of the Consumer Class Settlement. Ms. Cabraser's involvement ran the gamut from the preparation and filing of the original consumer claims, defense of those claims throughout the MDL proceedings, negotiation, documentation, approval, and defense of the Consumer Class Settlement, together with its notice program, as originally approved and later as expanded, and work devoted to maximizing consumer class member participation and payments

in the settlement, including the Claims Stimulation Campaign. Based on the significant work performed by LIEFF CABRASER, as summarized above, the Court finds an appropriate fee is $723,703.75.

### 10. THE OLDFATHER LAW FIRM ("OLDFATHER")

The CPA's report reflects that OLDFATHER has reported 2,202.25 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends OLDFATHER receive $0.00 in fees. OLDFATHER filed a timely objection to the Committee's recommendation, arguing that its work in another aspect of the Vioxx case had a helpful effect on the consumer class.

Ann B. Oldfather, sole owner and managing attorney of OLDFATHER, requests consideration of payment from the fees awarded in the Consumer Class Settlement for work performed pursuant to her appointment by the Court as liaison and lead counsel for PSC for ineligible or not enrolled claims—the personal injury/wrongful death claims that were not included, or did not participate in, the Master Settlement Agreement. Specifically, she details her work on behalf of the venous thromboembolism ("VTE") Plaintiffs, including discovery, expert and advocacy work—and an eventual settlement—for these challenging claims. She does not contend she performed any work on the consumer class claims, but rather that her work for particular categories of personal injury/wrongful death claimants added to the total value of the MDL litigation. Ms. Oldfather was not assigned to and did not participate in work related to the pleading, briefing, discovery, negotiation, approval, or implementation of the consumer claims in MDL or state courts, or the Consumer Class Settlement itself.

Ms. Oldfather's submitted time does not include any hours spent directly on the consumer class claims or the Consumer Class Settlement. Instead, the time OLDFATHER logged was for

11

work done in the ineligible and non-enrolled claims, particularly in the venous thromboembolism (VTE) claims. OLDFATHER's work in this portion of the litigation was outstanding and the result achieved in those claims was due solely to her efforts. Nevertheless, her efforts in that portion of this litigation had nothing to do with advancing the consumer claims. Any time logged by OLDFATHER should be accounted for in another portion of this litigation, not in the consumer potion. Accordingly, no portion of the consumer common benefit will be allotted to OLDFATHER.

### 11. SANFORD HEISLER KIMPEL, LLP ("SANFORD")

The CPA's report reflects that SANFORD has 1,518.90 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends SANFORD receive $127,650 in fees, or three percent of the total common benefit fee.

SANFORD requests payment for fees based upon the work of its partner H. Vincent McKnight Jr. in the filing and prosecution of the *Walker* case brought for DC consumers under the DC Consumer Protection Procedures Act and the DC False Claim Act. The *Walker* case was originally filed in the District of Columbia Superior Court, but was subsequently transferred to this MDL. In intensive briefing activity in this Court, the Court initially dismissed the False Claims Act but not the Consumer Fraud Act claim. Mr. McKnight participated actively in briefing and arguing these issues. Mr. McKnight worked closely with Elizabeth Cabraser and Dawn Barrios, on behalf of the consumer class claims in this Court, as the *Walker* action became a focal point for briefing activity to determine whether consumers stated an economic loss claim for their Vioxx payment in the MDL. Against the backdrop of this activity, and before the ultimate ruling by this Court, the Consumer Class Settlement was reached. Based on the above the Court concludes that an appropriate fee for SANFORD is $130,000.00.

### 12. WHITFIELD, BRYSON & MASON LLP ("WBM")

The CPA's report reflects that WBM has 640 hours of uncompensated time in the Consumer matter through March 2018. The Fee Committee recommends WBM receive $127,650.00 in fees, or three percent of the total common benefit fee.

WBM was co-counsel with BGD in the Indiana state court class action *Kantner*, more fully described with respect to BGD's fee application. The *Kantner* action posed a continuous and significant litigation risk to Merck, and thus contributed to the MDL Consumer Class Settlement, which included and released the *Kantner* state court claims. WBM served discovery requests, reviewed documents, retained and conferred with an expert economist with experience in cases involving premium pricing, replied to Merck's motion for judgment on the pleadings, and in general aggressively pursued the state class action. These efforts had an impact on the final result in the MDL consumer class action. Based on the above, the Court finds that an appropriate fee for WBM is $165,000.00.

## II.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the common benefit fees for the consumer portion of the Vioxx litigation shall be allotted to the following firms in the following amounts:

| Firm | Fee |
|---|---|
| BARRIOS, KINGSDORF & CASTEIX, LLP | $703,131.25 |
| BINGHAM GREENEBAUM DOLL, LLP | $178,710.00 |
| THE GETTY LAW GROUP, PLLC | $703,131.25 |
| HARKE CLASBY & BUSHMAN, LLP | $157,435.00 |
| HERMAN, HERMAN & KATZ, LLC | $744,978.75 |
| JOHNSON & PERKINSON | $370,200.00 |
| KELLER, ROHRBACK, LLP | $178,710.00 |
| LAW OFFICE OF JAMES P. LYLE | $200,000.00 |
| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | $723,703.75 |
| THE OLDFATHER LAW FIRM | $0.00 |

| SANFORD HEISLER KIMPEL, LLP | $130,000.00 |
| WHITFIELD, BRYSON & MASON LLP | $165,000.00 |
| **Total:** | $4,255,000.00 |

New Orleans, Louisiana this 17th day of December, 2018.

*[signature]*

Eldon E. Fallon
U.S. District Court Judge